# EXHIBIT 1

Clerk of the Superior Court
*** Electronically Filed ***
Y. Moralez, Deputy
8/8/2023 11:26:54 AM
Filing ID 16406654

Sean A. Woods (Arizona Bar #028930)
Robert T. Mills (Arizona Bar #018853)
**MILLS + WOODS LAW, PLLC**
5055 North 12th Street, Suite 101
Phoenix, Arizona 85014
Telephone 480.999.4556
docket@millsandwoods.com
swoods@millsandwoods.com
*Attorneys for Plaintiff*

# IN THE MARICOPA COUNTY SUPERIOR COURT

| | |
|---|---|
| SEAN PENA, an individual;<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF PHOENIX, a governmental entity; COUNTY OF MARICOPA, a governmental entity; MICHAEL SULLIVAN, Chief of the Phoenix Police Department; JERI L. WILLIAMS, former Chief of the Phoenix Police Department; DEPUTY MARICOPA COUNTY ATTORNEY JEFFREY ROSEBERRY and JANE DOE ROSEBERRY; MARICOPA COUNTY DEPUTY ATTORNEY CATHERINE FU and JOHN DOE FU; MARICOPA COUNTY DEPUTY ATTORNEY SANDRA ANDERSON and JOHN DOE ANDERSON; MARICOPA COUNTY ATTORNEY SAMANTHA CAPLINGER and JOHN DOE CAPLINGER; MARICOPA COUNTY ATTORNEY MICHAEL BAKER and JANE DOE BAKER; MICHAEL WALKER and JANE DOE WALKER; CYNTHIA RAMIREZ; KRYSTOFFER LEE; LISA GUTIERREZ; JARRETT MAUPIN and JANE DOE MAUPIN; and IESHA STANCIEL and JOHN DOE STANCIEL,<br><br>Defendants. | CASE NO:   **CV2023-012031**<br><br>**COMPLAINT**<br><br>(JURY TRIAL DEMANDED) |

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

Plaintiff Sean Pena ("Sean"), by and through his attorneys, Mills + Woods Law PLLC, for his Complaint against Defendants City OF PHOENIX, a governmental entity; COUNTY OF MARICOPA, a governmental entity; MICHAEL SULLIVAN, Chief of the Phoenix Police Department; JERI L. WILLIAMS, former Chief of the Phoenix Police Department; DEPUTY MARICOPA COUNTY ATTORNEY JEFFREY ROSEBERRY and JANE DOE ROSEBERRY; DEPUTY MARICOPA COUNTY ATTORNEY CATHERINE FU and JOHN DOE FU; DEPUTY MARICOPA COUNTY ATTORNEY SANDRA ANDERSON and JOHN DOE ANDERSON; DEPUTY MARICOPA COUNTY ATTORNEY SAMANTHA CAPLINGER and JOHN DOE CAPLINGER; MICHAEL WALKER and JANE DOE WALKER;   CYNTHIA RAMIREZ; KRYSTOFFER LEE; LISA GUTIERREZ; JARRETT MAUPIN and JANE DOE MAUPIN; and, IESHA STANCIEL and JOHN DOE STANCIEL (collectively "Defendants") alleges and states as follows:

## **INTRODUCTION**

1. Plaintiff Sean Pena ("Sean") was a decorated Phoenix Police Officer dedicated to fighting the fentanyl epidemic in Phoenix Streets.

2. Sean was falsely accused of three sexual assaults while on-duty as a Phoenix Police Officer.

3. Sean's accusers were Defendants Cynthia Ramirez ("Ramirez"), Krystoffer Lee ("Lee") and Lisa Gutierrez ("Gutierrez") (collectively the "Accusers").

4. Ramirez', Lee's and Gutierrez' accusations against Sean were demonstrably false, as would have been revealed by even a cursory investigation by the Phoenix Police Department or the Maricopa County Attorney's Office.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

2

5.     The Accusers were malicious liars who were each highly motivated to make false accusations against Sean. At least two of them profited mightily, receiving hundreds of thousands of dollars each based on their lies.

6.     Despite the Accusers' lack of credibility and the complete lack of any physical evidence supporting the accusations, Defendants pushed the investigation hastily and recklessly, and terminated Sean's employment without just cause.

7.     Defendants knew that Sean had submitted to, and passed, a polygraph examination during which he denied ever having sexual contact with anyone while on duty as a Phoenix Police officer.

8.     Defendants nonetheless initiated and continued a criminal prosecution of Sean, charging him with multiple felonies based on the accusations of Ramirez, Lee and Gutierrez.

9.     Not surprisingly, Sean was found not guilty of all charges

10.    Defendants, and each of them, knowingly participated in a conspiracy to have Sean falsely imprisoned, maliciously prosecuted, defamed, wrongfully fired from the job he loved, and left with his career in law enforcement ruined. Defendants conspired to, and did, inflict severe emotional distress on Sean and violated his constitutional rights.

## THE PARTIES

11.    Plaintiff Sean Pena ("Sean") is an adult individual who resides in Maricopa County, Arizona.

12.    Sean is a former police officer who was employed by the City of Phoenix Police Department.

13.    Sean was a decorated Officer who was assigned, by his choosing, to the toughest beat in Phoenix – the South Mountain Precinct.

MILLS + WOODS LAW, PLLC
5055 North 12h Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

3

14.     As an Officer of the Phoenix Police Department, Sean worked tirelessly to get fentanyl pills off the street.

15.     In his work, Sean developed relationships with Street Sources.

16.     Sean was highly successful in tracing the origins of fentanyl pills and developing an understanding of criminal distribution structures.

17.     Sean's efforts to rid the streets of fentanyl gained him enemies among the dealers, and users, in the South Mountain Precinct. These individuals were anxious to get him out of the way.

18.     Defendant County of Maricopa ("Maricopa") is a governmental entity that acts by and through its officials, employees and agents, including without limitation the Maricopa County Attorneys' Office, and each of the Defendants Sandra Anderson, Samantha Caplinger, Michael Baker, Michael Roseberry, and Catherine Fu.

19.     Defendant City of Phoenix ("COP") is a governmental entity that acts by and through its officials, employees and agents, including without limitation the Phoenix Police Department, and each of the Defendants Michael Sullivan, Jeri L. Williams, Michael Walker, and Allison Steinberger.

20.     Defendant Michael Sullivan ("Sullivan") is Chief of the Phoenix Police Department and is sued in his official and individual capacity. He is tasked with oversight of the Phoenix Police Department and is responsible for all policies and procedures promulgated by the Phoenix Police Department. He is an agent of COP and the Phoenix Police Department, operating in his official and individual capacity in Maricopa County, Arizona.

21.     Defendant Jeri L. Williams ("Williams") was Chief of the Phoenix Police Department from 2016 until 2022. She is sued in her official and individual capacity. She was tasked with oversight of the Phoenix Police Department and was responsible for all

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

policies and procedures promulgated by the Phoenix Police Department. She is an agent of COP and the Phoenix Police Department, operating in her official and individual capacity in Maricopa County, Arizona.

22.     Defendant Jeffrey Roseberry ("Roseberry") is a Deputy Maricopa County Attorney employed by, and serving as an agent of, Maricopa County, Arizona, and the Maricopa County Attorney's office. At all relevant times he was operating in his official and individual capacity in Maricopa County, Arizona.

23.     Defendant Catherine Fu ("Fu") is a Deputy Maricopa County Attorney employed by, and serving as an agent of, Maricopa County, Arizona, and the Maricopa County Attorney's office. At all relevant times she was operating in her official and individual capacity in Maricopa County, Arizona.

24.     Roseberry and Fu conducted the criminal trials and are collectively referred to as the "Trial Prosecutors".

25.     Defendant Sandra Anderson ("Anderson") is a Deputy Maricopa County Attorney employed by, and serving as an agent of, Maricopa County, Arizona, and the Maricopa County Attorney's office. At all relevant times she was operating in her official and individual capacity in Maricopa County, Arizona.

26.     Defendant Samantha Caplinger ("Caplinger") is a Deputy Maricopa County Attorney employed by, and serving as an agent of, Maricopa County, Arizona, and the Maricopa County Attorney's office. At all relevant times she was operating in her official and individual capacity in Maricopa County, Arizona.

27.     Michael Baker ("Baker") is a Maricopa County Attorney employed by, and serving as an agent of, Maricopa County, Arizona, and the Maricopa County Attorney's office. At all relevant times he was operating in his official and individual capacity in Maricopa County, Arizona.

28.     Caplinger, Anderson, and Baker were the prosecutors who presented to the grand juries and are collectively referred to herein as the "Grand Jury Prosecutors".

29.     The Trial Prosecutors and Grand Jury Prosecutors are collectively referred to herein as the "Prosecutors".

30.     Defendant Michael Walker ("Walker") is a Police Detective employed by, and serving as an agent of, COP and the Phoenix Police Department. At all relevant times he was operating in his official and individual capacity in Maricopa County, Arizona.

31.     Defendant Cynthia Ramirez is an individual residing in Maricopa County. All of her acts alleged herein occurred in Maricopa County, Arizona.

32.     Defendant Krystoffer Lee is an individual residing in Maricopa County. All of her acts alleged herein occurred in Maricopa County, Arizona.

33.     Defendant Lisa Gutierrez is an individual residing in Maricopa County. All of her acts alleged herein occurred in Maricopa County, Arizona.

34.     Defendant Jarrett Maupin ("Maupin") is an individual residing in Maricopa County. All of his acts alleged herein occurred in Maricopa County, Arizona.

35.     Defendant Iesha Stanciel ("Stanciel") is an individual residing in Maricopa County. All of her acts alleged herein occurred in Maricopa County, Arizona.

36.     Defendants Roseberry, Fu, Anderson, Caplinger, Baker, Walker,  Maupin and Stanciel were acting for the benefit of their respective marital communities, if any, and therefore their respective marital communities are liable for their actions as set forth herein. Accordingly, Defendants Jane Doe Roseberry, John Doe Fu, John Doe Anderson, John Doe Caplinger, Jane Doe Baker, Jane Doe Walker, Jane Doe Maupin, and John Doe Stanciel are named as Defendants herein.

37.     Defendant COP is vicariously liable under the principle of *respondeat superior* for the actions and inactions of the employees of the Phoenix Police Department

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

6

and any private contractors including those employees or contractors named as defendants in this action, as to any claims that are asserted by Plaintiff as a result of violations of the Arizona Constitution and Arizona common law because, at all relevant times, those Defendants were acting within the course and scope of their employment or contract with COP or entities privately contracted with COP.

38.     Defendant Maricopa is vicariously liable under the principle of *respondeat superior* for the actions and inactions of the employees of the Maricopa County Attorney's Office and any private contractors including those employees or contractors named as defendants in this action, as to any claims that are asserted by Plaintiff as a result of violations of the Arizona Constitution and Arizona common law because, at all relevant times, those Defendants were acting within the course and scope of their employment or contract with Maricopa or entities privately contracted with Maricopa.

39.     For purposes of Plaintiffs' claims arising under Federal law, including without limitation the United States Constitution and 42 U.S.C. §1983 *et seq*., and as may be relevant to Plaintiff's state law claims, at all relevant times described herein, Defendants were acting under color of state law.

## JURISDICTION AND VENUE

40.     Pursuant to 42 U.S.C. §1983 *et seq.*, Plaintiffs bring this action for violations of the United States Constitution, including without limitation the Fourth, Eighth, and Fourteenth Amendments, and Arizona common and statutory laws.

41.     The amount in controversy exceeds the minimal jurisdictional limits of this Court.

42.     To the extent applicable, and without conceding that said statute applies, Plaintiffs have served their Notice of Claim upon Defendants in compliance with A.R.S.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

§12-821.01, *et seq.* More than sixty (60) days have expired since Plaintiffs served their Notice of Claim and Defendants have not responded in any manner to said Notice of Claim.

43.     Pursuant to Article 6, Section 14 of the Arizona Constitution, this court has original subject matter jurisdiction in this Complaint because the claims relate to causes of action, the underlying acts and/or omissions for which, at all times relevant, have caused the events alleged herein to occur with primary effect in Maricopa County, Arizona.

44.     Venue is proper in that the specific acts giving rise to the causes of action alleged herein occurred with primary effect in Maricopa County, Arizona.

## FACTUAL ALLEGATIONS

### CYNTHIA RAMIREZ' FALSE ACCUSATIONS

45.     On or about August 26, 2018, Sean requested that Officer Antonio Felix follow-in on a suspicious vehicle parked in Sherman Park in Phoenix.

46.     When Sean and Officer Felix arrived they found  Ramirez and German Martinez, who had been having sex in the vehicle.

47.     Ramirez lied to the Officers and gave them a false name.

48.     Ramirez had a history of providing false names to police officers on numerous occasions.

49.     The Officers also found Marijuana in the vehicle.

50.     Ramirez later admitted under oath that she was aware at that time that a felony warrant from Yavapai County had been issued for her arrest.

51.     She testified that she was so fearful of arrest that she contacted friends to find out whether there were any police around Sherman Park before she and German went there.

52.     After Martinez gave the Officers Ramirez' correct name, the Officers were able to determine that there was an outstanding felony warrant for Ramirez in Yavapai County. The Officers then arrested Ramirez and took her into custody.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

53.    Officer Felix advised Sean to put gloves on because Ramirez had an apparent infected wound on her body.

54.    Ramirez told Police that she had seen Sean before. She told Detective Walker that she had seen Sean "four days prior when he arrested her friend Christina near 35th Avenue and Washington."

55.    Sean transported Ramirez in his patrol vehicle to be processed at the South Mountain Precinct, and after processing, to the Fourth Avenue Jail in Phoenix.

56.    While in transit, Ramirez was crying and pleaded with Sean to let her go. She said "I can't go to jail." She insisted that she could not get arrested because her baby and her stepmother were waiting for her. She said her stepmother had heart conditions and Ramirez was her only caretaker.

57.    Desperate to avoid jail, Ramirez offered to give Sean oral sex if he would let her go free.

58.    Sean ignored Ramirez' offer.

59.    While in transit to the Fourth Avenue Jail, they had to stop briefly at a railroad crossing on Third Avenue due to the presence of a train. They were stopped at the crossing for only one minute and 39 seconds.

60.    While stopped at the crossing Sean had a telephone conversation with Officer Felix. The conversation lasted approximately 30 seconds.

61.    Ramirez testified that she was furious that Sean had a "smirk" on his face when he dropped her off at the jail.

62.    Ramirez admitted that prior to her arrest, she and Martinez had been doing "speedballs." She described a "speedball" as a mixture of opiates and Methamphetamine.

63.    She admitted that she had used Fentanyl that night.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

64.     She agreed at trial that she had taken a "pretty heavy combo of drugs" prior to her arrest.

65.     She admitted that she was under the influence of drugs during the time that she was transported to the Fourth Avenue Jail.

66.     Ramirez was desperate to obtain release from jail.

67.     She testified that she tried to get the attention of personnel at the 4th Avenue jail, but they all told her to "shut up" because she was still intoxicated or "coming down" and was hallucinating.

68.     It was obvious to the corrections officers and staff at the Fourth Avenue Jail that Ramirez was intoxicated.

69.     Ramirez told medical staff at the jail that Sean had sexually assaulted her while in transit to the jail.

70.     Ramirez also told a nurse at the jail that Sean had not touched her, except for her hair.

71.     A medical staff member reported Ramirez' accusation to the Phoenix Police Department, which immediately began an investigation.

72.     Ramirez told Detective Walker that Sean's patrol vehicle had come to a stop at a railroad crossing. She alleged that while stopped there, Sean had his telephone conversation. She claimed that Sean then told her to show him her breasts, and claims she did. She claimed that Sean then exited the driver's seat of the vehicle, walked back to the rear driver's side, opened the rear driver's side door, and put his erect penis in her mouth for approximately three minutes – all while still stopped in the middle of a public street in Phoenix.

73.     This is clearly a lie.  At the second criminal trial, Maricopa County Superior Court Case # CR2020-128297, on August 8, 2022, the prosecution stipulated to the fact that Sean's car was stopped for exactly one minute and thirty-nine seconds.

74.     Not only was the street public, but there was traffic on it. In fact, surveillance video from a nearby business shows a white car drive past Sean's patrol vehicle at the exact moment he was allegedly standing at the backseat door assaulting Ramirez – a fact that was never presented to a grand jury

75.     Ramirez repeatedly insisted to Detective Walker that after the alleged assault, Sean drove over the railroad tracks and proceeded to the Fourth Avenue jail. When Walker told her that her story didn't add up, she changed her story and said that she laid down in the back after the alleged assault and didn't actually see the route they took to the jail.

76.     When asked at trial whether she thought the accusations against Sean would keep her from getting sentenced on the outstanding warrant, Ramirez responded "Something like that."

77.     At trial, Ramirez testified that Sean had his duty belt on when he "leaned in" to the back seat of his patrol vehicle, put one hand on her head and put his penis in her mouth. Given the configuration of the patrol vehicle, it would have been virtually impossible for Sean to do what Ramirez described.

78.     If the alleged assault had actually occurred, Ramirez would have had clear and ready access to Sean's firearm, Taser, and pepper spray at the time the assault was occurring.

79.     Ramirez testified at trial under oath that Sean had actually ejaculated in her mouth.

80.     Ramirez acknowledged that Sean had been on the phone directly before the alleged assault.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

11

81.     Ramirez told investigators that while approaching the railroad crossing, Sean's patrol vehicle was following a Maricopa County Sheriff's van. She said the van pulled into a private drive, turned around and parked in a lot within view of Sean's patrol vehicle while stopped at the crossing.

82.     The investigators determined that there were no witnesses to the sexual assault alleged by Ramirez.

83.     She claimed that at the time of the alleged assault, Sean's penis was erect and she "did not believe he was circumcised."

84.     She later changed her story again and admitted that she does not know what circumcision means.

85.     She said she did not spit or wipe her face after the alleged assault.

86.     On August 26, 2018 Walker – took circumoral swabs of Ramirez' mouth and buccal swabs of her cheeks.

87.     Walker took it upon himself to do so because a "Forensic Nurse" was unavailable to perform the collection.

88.     DNA lab results from Walker's swabs provided insufficient genetic information and no conclusions could be drawn.

89.     On August 27, 2018,a forensic nurse  took swabs of Ramirez' mouth.

90.     When interviewed, Ramirez told Walkerthat the test results would show Martinez' DNA and Sean's DNA.

91.     The swabs were taken within the recommended time frame to detect biological evidence.

92.     The lab results from the forensic nurse's swabs showed that Martinez' DNA could ***not*** be excluded from the results, but that Sean's DNA was excluded.

Mills + Woods Law, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

93.     Automatic Vehicle Location records of Sean's patrol vehicle showed that the vehicle was stopped at the railroad crossing for only one and a half minutes.

94.     The investigators also obtained video surveillance footage from nearby businesses that confirmed Sean's patrol vehicle was stopped at the railroad crossing for only a minute and a half.

95.     Detective Walker sent Sean a "confrontation" text. Walker texted Sean and pretended to be Ramirez in order to obtain admissions from Sean.

96.     The "confrontation" failed. Sean did not make any admissions during the text conversation.

97.     Sean eventually told the texter (who he believed to be Ramirez) to stop contacting him. Sean then *immediately* reported the text exchange to his supervisor and chain of command.

98.     COP's Police Department closed its investigation of Sean on or about September 1, 2018, finding no corroboration of Ramirez's claims.

99.     The Maricopa County Attorney did not charge or seek an indictment of Sean based on the accusations of Ramirez at that time.

100.    Furthermore, COP's internal Administrative Inquiry (the "Ramirez Inquiry") documentation dated August 28, 2018 specifically stated that "There is no evidence to support the allegation of officer misconduct by Officer Pena."

101.    As Walker told Ramirez at her September 5, 2018 interview:

"The DNA, the video, the surveillance, the time frames –
MS. RAMIREZ: Uh-huh.

DET. WALKER: -- the other officers involved, all these things, do not show, do not corroborate your statements at all. At all.

***

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

DET. WALKER: But remember how I told you we had two profiles come up –

MS. RAMIREZ: Uh-huh.

DET. WALKER: -- with DNA.

MS. RAMIREZ:  Yeah.

DET. WALKER;  Okay?  One of them is definitely Herman.

MS. RAMIREZ: Uh-huh.

DET. WALKER: And the other one is definitely not our officer. We got the results back this week. It is definitely not him."

102.    Although the investigation of Ramirez' accusations was closed, the investigation and Ramirez' claims were no secret. They were well known to many employees of COP and its Police Department.

103.    Word of Ramirez' accusations and the investigation of Sean passed to members of the general public as well.

104.    Ramirez had and continues to have a history of making accusations of sexual assault following drug use.

105.    In 2015 Ramirez' ex-boyfriend took her to Banner Hospital Estrella after she had become unresponsive following use of both methamphetamine and heroin with some other men. Ramirez told nursing staff at the hospital that she might have been sexually assaulted by someone while she was passed out at a Phoenix hotel the previous night.

106.    When police arrived to investigate the possible assault, Ramirez indicated that she did not want to talk about it at that time and ignored them.

107.    In 2017 Ramirez was arrested for possession of a stolen vehicle and possession of a burglary tool.  At the time of her arrest, she had lied to the arresting Officer by giving him a false name.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

108.     In April 2018, Ramirez was arrested for possession of a dangerous drug (methamphetamine) and for an outstanding felony warrant. While in custody she reported to police that she may have been sexually assaulted by a transient man who she met through Facebook. She told the Officer that at her first physical meeting with the man she allowed him to inject her with a mixture of heroin and methamphetamine. She woke up the next morning feeling pain in her vagina. She said that these encounters continued over the course of a "few weeks" and that she did not remember whether she had ever given the man consent or the last time they had sex. She told the Officers that she did not want prosecution.

109.     COP and the Prosecutors knew or consciously and recklessly disregarded all of these facts regarding Ramirez.

110.     Later, in July 2021 COP Police Officers responding to an emergency call found Ramirez unconscious and laying on the ground from a drug overdose. She was transported to a hospital. She later reported to hospital staff that she thought she had been sexually assaulted because she was naked. In fact, the nursing staff had cut her clothes off to facilitate emergency examination and treatment.

111.     In November 2021, Ramirez was arrested for possession of methamphetamine and for an outstanding felony warrant from Maricopa.

112.     Despite the fact that the investigation of Ramirez' accusations had been closed three years earlier for lack of evidence, the Prosecutors in 2021 proceeded to charge Sean with sexual assault of Ramirez.

113.     At the time of Sean's trial, Ramirez was incarcerated for felony possession of a stolen vehicle and she had to be escorted to court by law enforcement personnel.

## KRYSTOFER LEE'S FALSE ACCUSATIONS

114.     Lee has a history of illegal drug use and mental illness.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

15

115.   On or about June 1, 2019, the Arizona Department of Child Safety removed Lee's children from her custody.

116.   Later that same day, Sean, Officer Felix and one other Officer responded to a call for a wellness check on a woman who was wandering in the street and appeared to be extremely intoxicated. They located Lee who fit the description provided by the caller.

117.   Lee was wandering in the street with no shoes on.

118.   Lee's speech was slurred.

119.   Officer Felix testified that when he and Sean found Lee she was wandering around, knocking on doors, yelling and screaming.

120.   In Lee's purse the Officers discovered foil used for smoking fentanyl.  This was drug paraphernalia.

121.   Sean also confirmed that Lee had an outstanding misdemeanor warrant from COP.

122.   Sean told Lee he would let her go if she showed him where she got the fentanyl. She agreed.

123.   Lee told Sean that the dealer's name was "Angel."  Angel was a known violent drug dealer in Sean's beat. Lee told Sean that Angel had started selling drugs out of his cousin's house because he knew Sean was on to him.

124.    Lee was handcuffed with her hands behind her back and with her seatbelt fastened in the back seat of Sean's vehicle as they drove to Angel's location and Lee pointed out the house from which Angel was selling drugs.

125.   Lee then directed Sean to drop her off at 11th Avenue and West Lynne Lane. Sean drove her to that location. Sean then uncuffed Lee and let her out of the back seat. She walked away.

126.   When Sean released Lee, he was parked on a public street.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

16

127.     In October 2019, Lee attended the Arizona State Fair with her friend Iesha Stanciel and Iesha's two children. At the Fair, they met with the Reverend Jarrett Maupin, a well-known activist in Phoenix.

128.     The meeting with Maupin had been planned in advance and was not mere coincidence.

129.     Maupin previously plead guilty to making false statements to the FBI about then Phoenix Mayor Phil Gordon. In the plea agreement dated April 9, 2009, Maupin admitted that he falsely informed the FBI that he had seen evidence of Mayor Gordan engaging in criminal activity, and that he did so "in an effort to smear Mayor Gordon politically, even though I knew at all times there was no truth to the allegations I made to the FBI."

130.     On information and belief, Maupin and Lee discussed the fact that Lee had been taken into custody by Sean. They discussed bringing a lawsuit as a means of getting money from COP.

131.     On information and belief, Maupin introduced Lee to a lawyer with whom Maupin was familiar.

132.     Maupin accompanied Lee to her meetings with the civil lawyer.

133.     On information and belief, Maupin and/or the lawyer advised Lee that in order to bolster the chance of a successful lawsuit, Lee should first make a police report of an alleged assault.

134.     On November 20, 2019, nearly six months after her encounter with Sean, Lee told a Phoenix Police Officer at a Circle K that Sean had touched her breasts and had her masturbate his penis during that encounter.

135.     If Lee's account of the encounter was correct, she would have had easy access to Sean's firearm, Taser and pepper spray at the time it occurred.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

136.     Lee admitted that she was drunk at the time she reported the incident.

137.     The Phoenix Police Department began an investigation of Lee's accusations.

138.     The other Officers who were with Sean when Lee was detained did not recall the encounter and did not recall anything improper on the part of Sean.

139.     After Lee's report, the Phoenix Police Department conducted a canvass of females who had been transported by Sean in the course of his duties from March through November 2019. All persons who they were able to interview gave only positive feedback.

140.     The police investigation revealed no physical evidence corroborating Lee's accusation against Sean. No DNA or semen was found in Sean's patrol vehicle even though Lee claimed Sean had ejaculated while seated in the vehicle.

141.     In fact, Detective Walker emphasized the fact that Sean's vehicle was impounded and evidence examination had been performed. Sean told Walker that there would be no DNA evidence in the vehicle:

DET. WALKER: Okay. It was a first shift car that you were driving that day, that car we've taken and we've put into the crime lab, and we've done some evidence examination on the seat, the steering wheel, and such. The crime lab has the ability to use what's called alternate light sourcing, I'm not sure if you're familiar with it, but –

OFC. PENA: I get it. I know what it is.

DET. WALKER: -- it's essentially black lighting, and they can search for biological- evidence with regards to semen. What do you think about -- is your semen in that car?

OFC. PENA: No.

142.     Lee told the Police detectives investigating her accusation "that she did not wish to press charges because she had 'played a part' in the incident. However, Ms. Lee stated that she would participate in prosecution if other victims were located."

18

143.     At her initial interview by COP investigators on November 20, 2019, she told investigators that she was standing outside the driver's side door of Sean's patrol vehicle and reached through the open window to give him a handjob.

144.     Lee told investigators that she did not want to press charges against Sean.

145.     At her second interview on December 3, 2019, she told investigators that at the time of the alleged assault she was seated in the front driver's seat of Sean's patrol vehicle.

146.     She later admitted at trial that this would have been physically impossible.

147.     Incredibly, none of the Police investigators – including Walker – challenged or pressed Lee on this story or on the fact that it differed dramatically from the story she told just two weeks earlier at her November 20, 2019 interview.

148.     Instead, Walker pressed her at the second interview on whether she would be willing to assist in a prosecution of Sean if there were "multiple victims."

149.     Lee agreed that she would come forward if there were multiple victims.

150.     After the interview, Walker dredged up the old accusations of Ramirez, even though that investigation had long since been closed for lack of evidence, in order to convince Lee that there were in fact "multiple victims."

151.     Walker's actions demonstrate a shocking level of malice and a sadistic manipulation of the alleged "victims."

152.     Upon information and belief, at that time, Lee, Maupin and the civil lawyer were already planning a civil lawsuit for money damages against COP.

153.     On the day she made her report, Lee told police investigators that after Sean dropped her off at the location she requested, she got out of the back seat of the patrol vehicle, walked around to the front driver's side and made small talk with Sean. The driver's door was closed and Sean was seated in the driver's seat. Lee said she reached into

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

19

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

the patrol vehicle through the open window and masturbated Sean to ejaculation. Lee told the police investigators that she then "walked home and she told her friend Iesha Stanciel over the phone about the incident."

154.     On November 21, 2019, Stanciel responded to a police investigator that Lee had called her and related that a police officer had taken out his penis and asked her for oral sex, which she refused. According to the Police Report: "Sgt. Gonzalez asked Stanciel, regarding her earlier statement that the officer asked Lee for oral sex while he was seated in the front seat, if she was aware of Lee actually having any sexual contact with the officer. Stanciel said she doesn't know if anything occurred and wasn't sure Lee would be comfortable enough to share those specifics."

155.     Stanciel told the investigator that "the rest of the details Lee told her that night were blurry to her and she couldn't remember everything said."

156.     Lee told investigators that after leaving Sean's patrol vehicle that evening she went to Stanciel's house and told Stanciel what had occurred between Lee and Sean.

157.     Lee did not go to Stanciel's house on the night of the alleged assault.

158.     Stanciel told investigators that "although she couldn't remember all the details of the conversation with Ms. Lee, she did recall that Ms. Lee told her that the officer transporting her in his vehicle, pulled down his pants and requested oral sex."

159.     Stanciel also told investigators that Lee adamantly denied that she had oral sex or any other type of sex with Sean, stating:

> … I don't want to put words in her mouth, you know, but what I can remember is that the officer pulled his pants down and was telling her to, you know, give him oral sex and stuff. And I – I was asking her, did she do it, you know, what happened. She was, like, I was so scared, but no, I didn't.

160.     Stanciel further stated:

> She said I really need to talk to you, you know, you're the only person I have, and you know, some shit happened. Tell me why I get pulled over by the

police and these mother fuckers, like, **Try** to fucking rape me. (emphasis added).

161.     On or about November 25, 2020. Lee filed a civil Complaint (the "Lee Complaint") against Sean and COP of Phoenix seeking money damages based on her accusations of misconduct on the part of Sean.

162.     In the Complaint, Lee alleged that Sean told Lee to get in the front seat of his patrol vehicle where he "forced [Lee's] head toward his penis and demanded oral sex. [Lee], in fear for her life, ***performed oral sex*** on Defendant Pena." (emphasis added).

163.     On December 1, 2020, Lee, accompanied by Maupin and Stanciel, held a press conference in front of Phoenix Police Headquarters.

164.     At the press conference, Maupin said that Pena had told Lee that "He liked nasty black street bitches."

165.     The reporter asked Maupin if that was really what Pena had said.

166.     Maupin responded "Yes."

167.     This accusation was false. Sean did not tell Lee that "He liked nasty black street bitches."

168.     Maupin then said that Pena was as dangerous as Mark Goudeau – a convicted serial rapist and murderer.

169.     Maupin stated that Lee had first come to him about a year ago.

170.     Maupin stated that Pena forced Lee to engage in sexual acts and endure horrific verbal abuse.

171.     On December 7, 2020, the Phoenix New Times ("PNT") published an article about Lee's accusations against Sean.

172.     According to the article, Lee related to PNT that her encounter with Pena took place while she "was trying to unwind after getting through a stressful day at her job at a local Popeyes and took a quick detour to a convenience store to buy some cigarettes."

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

21

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

173.   In fact, the Arizona Department of Child Safety had taken Lee's children from her that same day.

174.   The Phoenix New Times article continued: "That same night, according to Lee, she would be violent [sic] sexually assaulted by a Phoenix police officer."

175.   The article states that an Officer told her she had a warrant, handcuffed her and put her in the back of "one of the squad cars." The driver, Sean, then "got behind the wheel and asked her to locate the house of a drug dealer. Lee had no idea who Pena was talking about. 'He asked me to find some drug dealer. I can't remember what he said his name was,' she said. 'I don't know who it was.'"

176.   Lee told PNT that she then directed Sean to a "random house close by." No one was home.

177.   Lee then related to PNT that after she led Sean to the "random" house:

"Lee asked if Pena could take her home. He said yes, and they drove off. But Pena didn't take her home. He drove to a nearby vacant lot at 11th Avenue and West Lynne Lane. There, he unhandcuffed Lee, forced her into the passenger seat in the front of the car, and started playing a porn video on his phone. 'He was watching porn. He was pulling his pants down,' Lee said. 'He was putting my head down. He had his hand on his gun. I didn't want to move. I was scared … I was crying.' Pena groped Lee's breasts and tried to put his hands down her pants, she said. 'He was telling me to suck his dick, telling me that I was beautiful, that he wanted it like in the pornos, that he wanted it nasty "like how Black girls do it in porn," Lee said. 'Just some weird stuff you don't expect a cop to be saying.' He started masturbating and forced Lee to give him a hand job. Afterwards, he told her to come back to the same location the next night and that he would 'find and kill' her if she didn't. She bolted from the scene."

178.   Lee told PNT that she then ran to Stanciel's house in a "hysterical" state and told Stanciel what happened.

179.   Stanciel told PNT that "'She was just banging on my door,'… 'She was like "oh my gosh, oh my gosh." She was hyperventilating. She was like "No one is going to believe me'."

180.     Lee told PNT that she took her children to live with her father in Buckeye because she was "too scared to be in Phoenix after the assault."

181.     In fact, the government had already removed Lee's children from her custody.

182.     Despite having knowledge of Lee's and Stanciel's extreme deviations from each previous story, the Prosecutors, COP, Maricopa, Walker, and Chief Williams still moved forward with sham charges against Sean.

183.     Maupin was also featured prominently in the PNT article, stating to PNC that Lee, Ramirez and a "third victim" (Gutierrez) had been "raped" by Sean.

184.     In or about June, 2021, Lee settled her lawsuit against COP.

185.     On information and belief, COP paid Lee $425,000.

186.     Lee then paid a portion of the settlement proceeds to Maupin.

187.     Lee has a history of numerous prior and subsequent incidents of shoplifting.

188.     Upon information and belief, Lee has subsequently been arrested for Burglary tools possession and Drug Paraphernalia-possess/use in Maricopa Superior Court Case # CR2023-102071.

189.     That case was filed on January 18, 2023.

190.     Lee pled to reduced charges of Drug Paraphernalia/Use in Maricopa Superior Court Case # CR2023-110831.

191.     In May 2022, Lee testified at the trial of criminal charges against Sean based upon her accusations.

192.     At the First Trial, Lee testified that the alleged sexual assault consisted of Sean touching her breasts and Lee masturbating Sean through the driver's window of his patrol vehicle.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

193.     On May 19, 2022, a Maricopa jury found Sean **Not Guilty** of the sexual assault alleged by Lee.

194.     Despite Sean's acquittal and Lee's wildly changing accounts of an alleged assault, the Trial Prosecutors decided to call Lee to testify in the Second Trial of charges based on accusations made by Ramirez and Gutierrez.

195.     At the Second Trial, in August 2022, Lee's lies about Sean and her total lack of credibility, all of which was well known to Defendants, were fully exposed for all the world to see. Her story changed dramatically from any previous version.

196.     At Sean's Second Trial on August 1, 2022, Lee testified that she does not recall if Sean had ejaculated.

197.     She further testified that she gave Sean a hand job and was standing between the front door of Sean's Tahoe and the front seat where Sean was seated and that she was somehow pulled into the driver's seat with him.

198.     She further testified that she unzipped Sean's pants for him and could not remember where his utility belt was.

199.     She admitted that "Angel" was a drug dealer from whom she got drugs every week or two.

200.     Incredibly, when confronted about her allegations in the PNT article, Lee stated that the version of events the reporter attributed to her were lies.

201.     Lee admitted that she did not go to Stanciel's house after the alleged assault, even though Stanciel's house is only two blocks away from the location where she had Sean drop her off.

202.     She testified that she knew who Stanciel was, but that Stanciel was "kinda stand-offish."

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

203.     She also admitted that she told Stanciel that the alleged sexual encounter with Sean was partially Lee's fault.

204.     The State did not call Stanciel to testify at the Second Trial.

### LISA GUTIERREZ' FALSE ACCUSATIONS

205.     Gutierrez has a history of engaging in falsehoods and fraud. In 2013, the Arizona Attorney General ("the AG") charged Lisa Gutierrez with Illegally Conducting An Enterprise, Attempted Fraudulent Schemes And Artifices, Computer Tampering, and Forgery. *Grand Jury Indictment, CR2013-002470-073*. The facts underlying the charges showed that Ms. Gutierrez "intentionally presented known forged checks and documents to Walmart, Bashas/Food City and VComm with the intent to defraud those companies for money." *Probable Cause Statement, CR2013-002470-073*. Overall, the scheme resulted in a "total known financial loss" of over $133,000.00. *Id*. The charges against Ms. Gutierrez were dismissed after Ms. Gutierrez completed 50 hours of community service pursuant to a deferred prosecution agreement with the AG. *Pena's Consent To Participate In Deferred Prosecution Program And Acknowledgement, CR2013-002470-073*.

### *A Routine Call*

206.     On or about August 5, 2019, Gutierrez called the Phoenix Police Department and reported that one of her fiancé's friends was using drugs and threatening her at her front doorstep. Sean and Officer Felix responded to the call.

207.     Officer Felix arrived at the scene first and was the lead Officer on the call.

208.     Both Officer Felix and Sean spoke to Gutierrez in front of her house. Neither entered the house at any time.

209.     Officer Felix told Sean to take Gutierrez in his patrol vehicle and have her show him where her fiancé's friend lived.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

210.    Sean objected to transporting Gutierrez in his patrol vehicle due to Ramirez' previous, albeit completely false, accusations. Officer Felix directed Sean to do it anyway, and Sean complied.

211.    Gutierrez rode with Sean in his patrol vehicle to show him where the suspect lived.

212.    Gutierrez sat in back prisoner compartment of Sean's patrol vehicle.

213.    Officer Felix followed in his patrol car, and knocked on the suspect's door. No one answered.

214.    Sean drove Gutierrez back to her house and dropped her off there.

215.    Later, while Sean was working on a Report of the incident, he attempted to call Gutierrez to ask whether she wanted to press charges against the suspect when they found him. She did not answer her phone.

216.    He drove over to Gutierrez' house to ask her and to get additional details regarding the suspect.

217.    As he parked his car across the street from the house, he encountered Gutierrez who was walking home from a store. They spoke briefly. He told her they had not caught the suspect yet.

218.    Gutierrez told Sean that her fiancé was selling Fentanyl and was abusing her. Sean triad to follow up, but she told him she could not talk about it at that moment. She said her fiancé, who "hates cops" was in the house. She told Sean to meet her later in an empty lot near the house and she would give him more details.

### *The Tempe Investigation*

219.    In April 2020, Gutierrez reported to the City of Tempe Police Department that she was assaulted at gunpoint by a drug dealer after she had "found" a red cell phone

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

26

belonging to one of them. She said the drug dealers drove up next to her and said "Bitch, give me your phone." She said they tried to kidnap her but she managed to fight them off.

220.   The Tempe Police Department began an investigation of Gutierrez' allegations.

221.   Three suspects were arrested and taken into custody.

222.   The three suspects said that Gutierrez had actually stolen the cell phone.

223.   In the course of the Tempe investigation, Gutierrez met with Tempe Detective Ratko Aleksis.

224.   Gutierrez spoke with Detective Aleksis numerous times from April through July 2020, and says she had a "relationship" with him.

225.   Detective Aleksis confirmed that their relationship was such that Gutierrez felt comfortable discussing her personal life with him.

226.   Gutierrez also interacted with numerous other Tempe Police Officers during the course of the Tempe Investigation.

### Sean's Indictment Goes Public

227.   On June 19, 2020, COP and the Maricopa Attorney's Office announced that Sean had been indicted for the alleged sexual assaults of Lee and Ramirez.

228.   The indictment and the allegations received widespread coverage in the press and quickly became common knowledge. Word also spread quickly among law enforcement personnel in Phoenix, Tempe and elsewhere.

### Gutierrez Decides That "She Too" Will Accuse Sean

229.   On June 25, 2020 KTAR posted an article detailing the criminal charges against Sean.

230.   On July 23, 2020 at 10:30am, KTAR posted another news article with the headline "Phoenix PD fires officer accused of sex crimes against women in his custody."

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

27

231.     Later that same day at approximately 7:00 P.M. Gutierrez for the first time told Detective Aleksis that she too had been sexually assaulted by Sean.

232.     Despite her "relationship" and comfort felt with Det. Aleksis, Gutierrez never even mentioned her false allegations to Det. Aleksis until the day the news broke that Sean had been fired – after months of communications with Det. Aleksis.

233.     Detective Aleksis testified at trial that Gutierrez told him Sean had come to her house in response to a domestic violence call.

234.     Gutierrez told Detective Aleksis that Sean was "new" and had been "recently assigned to the precinct." He did not follow up to ask Gutierrez how she knew that.

235.     Gutierrez told Detective Aleksis that Sean threatened to arrest her fiancé on an outstanding warrant unless she performed a sex act on Sean.

236.     Gutierrez hired the same civil lawyer who represented Lee.

237.     On information and belief, Maupin encouraged Gutierrez to make accusations against Sean for monetary gain.

238.     Maupin told the PNT that he had spoken with Gutierrez and that Gutierrez "was known to me through the community."

239.     Gutierrez lied under oath at trial when she testified that she did not even know who Jarrett Maupin was.

### COP Investigates Gutierrez' Accusations

240.     Gutierrez was interviewed by Walker.

241.     Gutierrez gave Walker an account of the alleged assault that differed substantially from the one she gave Detective Aleksis.

242.     According to Walker's report, Gutierrez told him that later in the evening after Sean dropped her off at her house she walked to a store to buy milk. She left her young child in the care of her fiancé, whom she later described as "very abusive."

MILLS + WOODS LAW, PLLC
5055 North 12h Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

243.     She claimed that as she was walking back to her house, she heard Sean call her name from his patrol vehicle, which was parked on the same street as her house.

244.     She said she walked over to Sean's patrol vehicle and talked to Sean. The driver's window was down. He told her he had not yet caught the suspect she had identified.

245.     She said she was holding a gallon of milk in one hand when Sean reached through the window, took her other hand, and placed it on his exposed penis. She said she jerked her hand away, and went home.

246.     She said that Sean called her later on and asked her to meet him in a field near her house. So, she left her child and her fiancé at home and went out in the dark of night to meet Sean at the field.

247.     Gutierrez claimed that Sean asked her for oral sex, but she refused. But when he asked her to masturbate him, she did so while he was still seated in the car. She said he touched her breast. She said Sean ejaculated on her breast and dress. She then left and walked home. Sean said nothing to her as she walked away.

248.     She says that she told her fiancé what had happened.

249.     Despite her testimony that she was wearing a dress covered in semen, she also testified that her fiancé did not believe her and called her a "ho."

250.     She testified that she took off the dress and hung it in the bathroom.

251.     She testified that she moved out of the house two or three days later and did not take the dress with her.

252.     She did not make any effort to preserve the dress even though it would have contained the only physical evidence of the alleged sexual assault.

253.     Her fiancé did not report the alleged incident to police or take any other action in response to Gutierrez' claims.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

254.     Gutierrez did not produce to any investigator any article of clothing she was wearing at the time of the alleged assault even though she claimed Sean had ejaculated on her. Apparently, no investigator tried to locate the clothing.

### SEAN PASSES A LIE DETECTOR TEST

255.     In an interview with Sean following Lee's accusations, Walker asked Sean to take a polygraph test. Walker told Sean:

But obviously, if you didn't do these things, and you've got two of these [accusers], a polygraph to say I've never done this, and you come out passing, it's going to be a big thumbs up for the department, okay? That's going to help you, that's going to help them look at this administratively and say, we don't have any evidence to prove it, we don't have anything else to say this happened, and he's taken a polygraph and passed it, he's showing no deception, all right.

256.     On July 6, 2020, Sean submitted to a polygraph examination administered by an independent professional polygraph examiner.

257.     The polygraph examination was conducted in accordance with American Polygraph Association Standards of Practice.

258.     During the course of the examination Sean was asked the following questions and provided the following answers:

"While on duty as an officer, did you ever touch anyone's bare sex organs?
Answer: No
While on duty as an officer, did you ever have bare sex organ contact with anyone else?
Answer: No
While on duty as an officer, did you ever engage in any sex act with someone else?
Answer: No"

259.     The professional polygraph examiner prepared a written report of the examination in which she concluded that "there were **NO SIGNIFICANT REACTIONS INDICATIVE OF DECEPTION.**"

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

260.     While the polygraph took place after the accusations of Ramirez and Lee, it also covered the time period in which Gutierrez claimed she had been assaulted.

261.     On August 5, 2020, one week prior to the second Grand Jury convening to consider charges based on the accusations of Ramirez, Lee and Gutierrez, Sean's criminal attorney, Jess Lorona, emailed a letter to Samantha Caplinger, a Deputy County Attorney with the Maricopa Attorneys' Office.

262.     In the letter, Lorona informed Caplinger that Sean had taken and passed a polygraph test.

263.     Lorona attached to the letter a copy of the polygraph examiner's written report.

264.     In the letter Lorona requested that the Grand Jury be informed that Sean had taken and passed a polygraph.

265.     The Grand Jury Prosecutors did not even mention the polygraph exam to the jurors.

## THE FATALLY FLAWED INVESTIGATION

## UNITED STATES DEPARTMENT OF JUSTICE ANNOUNCES

## INVESTIGATION INTO THE PHOENIX POLICE DEPARTMENT

266.     The United States department of Justice ("USDOJ") announced on August 5, 2021 that it had begun an investigation of the Phoenix Police Department. A portion of the text of the announcement follows:

> Attorney General Merrick B. Garland and Assistant Attorney General Kristen Clarke for the Civil Rights Division announced today that the Justice Department has opened a pattern or practice investigation into the City of Phoenix and the Phoenix Police Department (PhxPD).
>
> This investigation will assess all types of use of force by PhxPD officers, including deadly force. The investigation will also seek to determine

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

whether PhxPD engages in retaliatory activity against people for conduct protected by the First Amendment; whether PhxPD engages in discriminatory policing; and whether PhxPD unlawfully seizes or disposes of the belongings of individuals experiencing homelessness. In addition, the investigation will assess the City and PhxPD's systems and practices for responding to people with disabilities. The investigation will include a comprehensive review of PhxPD policies, training, supervision, and force investigations, as well as PhxPD's systems of accountability, including misconduct complaint intake, investigation, review, disposition, and discipline.

***

The investigation is being conducted pursuant to the Violent Crime Control and Law Enforcement Act of 1994, which prohibits state and local governments from engaging in a pattern or practice of conduct by law enforcement officers that deprives individuals of rights protected by the Constitution or federal law. The statute allows the Department of Justice to remedy such misconduct through civil litigation. This is the seventy-third investigation of a law enforcement agency conducted pursuant to this statute since it was enacted in 1994. The department will be assessing law enforcement practices under the First, Fourth, and Fourteenth Amendments to the United States Constitution, as well as under the Safe Streets Act of 1968; Title VI of the Civil Rights Act of 1964; and Title II of the Americans with Disabilities Act.

*Retrieved February 2, 2023* from https://www.justice.gov/opa/pr/justice-department-announces-investigation-city-phoenix-and-phoenix-police-department

267.   The USDOJ's comprehensive investigation of COP and its Police Department continued through the time of the First Trial and the Second Trial and the time COP denied the appeal of Sean's termination.

268.   COP, Walker, Williams, and the Prosecutors were all aware of the USDOJ investigation and wanted to demonstrate to the USDOJ that they were taking action to root out "bad cops." To that end, Sean's career was sacrificed.

269.   Upon information and belief, the USDOJ investigations heavily influenced both the internal investigation and the prosecution of Sean.

**THE "ME TOO" MOVEMENT**

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

270.     Following exposure of sexual abuse allegations against film producer Harvey Weinstein in October 2017, the so called "Me Too" movement became headline news across the United States.

271.     The Me Too movement sought to bring to light the problem of sexual harassment and abuse, and encouraged people to come forward with personal accounts of such treatment.

272.     According to Wikipedia "Widespread media coverage and discussion of sexual harassment, particularly in Hollywood, led to high-profile terminations from positions held, as well as criticism and backlash."

273.     The Me Too movement ended the careers of many individuals outside Hollywood as well. For example, United States Senator Al Franken of Minnesota resigned on January 2, 2018 after allegations of sexual misconduct were made against him.

274.     COP, Walker, Williams, and the Prosecutors were all well aware of the Me Too movement.

275.     The Me Too movement heavily influenced and biased both the internal investigation and the prosecution of Sean.

276.     In an interview following Ramirez' accusations, Detective Walker actually told Sean that he needed to understand that the accusations came in the midst of the Me Too movement and that was where society was at.

**COP'S SLIPSHOD INVESTIGATION AND RUSH TO JUDGMENT AGAINST SEAN**

277.     COP, Walker, and the Prosecutors all knew that none of the three Accusers was credible.

278.     With respect to Ramirez they knew for example: 1) that she was intoxicated on narcotics and methamphetamine at the time of the alleged assault; 2) that she was desperate to obtain release from custody, and was highly motivated to make up a story

33

about Sean; 3) that there was no DNA evidence supporting her accusation despite the facts that DNA tests were conducted and that she testified under oath that Sean had ejaculated in her mouth; and 4) that Ramirez had a unique history making wild accusations of sexual assault following periods of intoxication.

279.     With respect to Lee they knew for example: 1) that she was extremely intoxicated at the time of the alleged assault; 2) that she was despondent because the State had taken her children away that very day; 3) that she did not report the alleged assault for months after it allegedly happened; 4) that she reported the alleged assault only after meeting with Jarrett Maupin and planning civil litigation against COP; 5) that her account of the alleged assault changed wildly and in contradictory fashion over time; and 6) that, as with Ramirez, there was no physical or DNA evidence supporting her accusations.

280.     With respect to Gutierrez they knew for example: 1) that she had a history of engaging in fraud; 2) that she did not make her accusations against Sean until nearly a year after the alleged assault; 3) that she did not report the alleged assault until after the original indictment of Sean was announced; 4) that she knew Jarrett Maupin and had hired the same civil lawyer as Lee; 5) that there was no DNA evidence supporting her accusations despite the fact that she claimed Sean had ejaculated on her and her dress; and 6) that she was highly motivated by financial gain to press accusations against Sean.

281.     Each of the three Accusers gave accounts of their alleged assaults that changed substantially and directly contradicted their earlier accounts.

282.     Each of the three Accusers was highly motivated to accuse Sean of wrongdoing either to secure their personal freedom or for financial gain, or both.

283.     Both Lee and Gutierrez had a relationship with Jarrett Maupin, and both hired the same civil attorney to seek money damages from COP.

284.     Maupin held a press conference on December 1, 2020 on the steps of Phoenix Police Headquarters on behalf of Lee and Gutierrez. There Maupin made wild accusations of "rape" and cover-up to stir public opinion and provoke monetary settlements with COP.

285.     Maupin received a portion of the proceeds of COP's settlement with Lee.

286.     On information and belief, Maupin received a portion of the proceeds of COP's settlement with Gutierrez.

287.     COP and the Prosecutors ignored the fact that none of the Accusers was credible, and focused instead on the fact that accusations were made.

288.     COP and the Prosecutors disregarded the fact that Sean passed a polygraph test.

289.     In its haste to avoid a continuing public spectacle whipped up by the Accusers and Maupin, COP failed to conduct anything resembling a reasonable or fair investigation of Sean.

290.     For example, COP's internal Administrative Inquiry (the "Ramirez Inquiry") documentation dated August 28, 2018 specifically stated that "There is no evidence to support the allegation of officer misconduct by Officer Pena."

291.     In the Ramirez Inquiry, Sean specifically told investigators that they should retrieve his "patrol vehicle's black box" data to pull seatbelt fastening history.

292.     The "black box" is a feature on all modern vehicles called the Event Data Recorder ("EDR").

293.     A vehicle's EDR records multiple data points to assist accident reconstruction or criminal investigations.

294.     One of the many data points recorded include seat belt fasten data that shows when seatbelts are engaged and when they are disengaged.

MILLS + WOODS LAW, PLLC
5055 North 12h Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

295.     Astonishingly, COP and the State failed to retrieve that crucial data despite being reminded to do so by Sean.

296.     The EDR data was readily available to COP during its investigation because Sean's patrol vehicle was impounded as evidence.

297.     Still, despite having the availability of clearly exculpatory evidence and the findings of the Ramirez Inquiry, COP and the State pressed forward with charges against Sean that they had already decided were unfounded.

298.     COP and the State did so maliciously because they believed that they needed to offer a sacrificial lamb to avoid public backlash.

299.     Among numerous other failures, Walker and COP:

- Failed to obtain surveillance footage from the Fourth Avenue Jail regarding Ramirez' arrival and incarceration there.
- Failed to attempt to recover Gutierrez' dress even though she apparently did not wash or dispose of it.
- Failed to request or obtain phone records from any of the Accusers.
- Failed to obtain any surveillance tape from the store located beside the empty lot where Gutierrez alleged the assault had taken place.
- Failed to conduct any investigation of the relationships between the Accusers.
- Failed to interview Maupin and failed to conduct any investigation of the involvement of Maupin in the accusations made by Lee and Gutierrez.
- Failed to investigate whether Ramirez received any portion of the settlement proceeds COP paid to Lee and Gutierrez.
- Failed to determine whether there were any witnesses to the alleged assaults even though all three allegedly occurred in public places.
- Failed to pull AVL records to confirm Sean's statements that it was not uncommon for him to park his vehicle in certain locations.
- Failed to investigate the "Black Box" in Sean's patrol vehicle to confirm that he was in the driver's seat with the seatbelt fastened during the entire stop at the railroad tracks with Ramirez – despite the fact that Sean specifically requested that they do so.
- Failed to take into consideration that Sean was excluded from DNA evidence taken from Ramirez and that there was no other DNA evidence linking Sean to any of the other Accusers.

36

300.     Moreover, the alleged assaults took place in a very high crime area of Phoenix where drug sales and use were prevalent. Both dealers and users of drugs, especially Fentanyl, in that area were anxious to get rid of Sean and his crusade against such drugs. COP failed to investigate this situation and failed to take it into consideration in the course of its investigation.

301.     COP's investigations of the Accusers' allegations were one-sided and biased against Sean from the beginning.

**COP SETTLES THE CIVIL SUITS BROUGHT BY LEE AND GUTIERREZ FOR HUNDREDS OF THOUSANDS OF DOLLARS EACH WITHOUT CONDUCTING ANY DISCOVERY**

302.     COP reached agreements to settle the lawsuits brought by Lee and Gutierrez for $425,000 each.

303.     COP did not conduct any discovery in the lawsuits, and both cases were dismissed after settlement.

304.     Lee's case was filed originally on November 25, 2020 in the Maricopa Superior Court, Case # CV2020-015466.

305.     Lee's case was removed to the United States District Court of Arizona on December 22, 2020 in case # 2:20-cv-02456.

306.     COP City Council approved settlement to Lee on June 2, 2021 as part of their Formal Meeting on the same date.

307.     The case was dismissed on June 17, 2021 after COP settled with Lee and agreed to pay her four hundred twenty-five thousand dollars ($425,000).

308.     Gutierrez filed her lawsuit in Maricopa Superior Court on June 18, 2021 – one day after Lee's lawsuit had been dismissed.

309.     Gutierrez' lawsuit was removed to the United States District Court of Arizona in case # 2:21-cv-01297.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

310.     Again, no discovery was performed in Gutierrez' case.

311.     In fact, COP did not file any responsive pleading.

312.     COP City Council approved settlement to Gutierrez on November 17, 2021 as part of their Formal Meeting on the same date.

313.     The parties to Gutierrez' case stipulated to dismiss the case on November 30, 2021.

314.     Again, COP paid Gutierrez four hundred twenty-five thousand dollars ($425,000).

315.     COP took no action to dispute the accusations of Lee and Gutierrez.

316.     COP did not investigate the damages alleged by either Lee or Gutierrez, or whether either of those Accusers had sustained any damages.

317.     COP could and would have won both of these lawsuits had it taken them to trial.

## THE PROSECUTION

318.     COP needed to secure criminal convictions of Sean in order to justify its total payments of eight hundred fifty thousand dollars ($850,000) to Lee and Gutierrez.

319.     As discussed herein, Maricopa, COP, the Prosecutors, and Walker lacked probable cause to bring any charges against Sean based on the false accusations of Ramirez, Lee and Gutierrez.

320.     COP had closed its investigation into the accusations of Ramirez due to a lack of evidence.

321.     Walker admitted to Sean that there was no probable cause to bring charges based on Ramirez' accusations. Walker told Sean at a December 4, 2019 interview that the Ramirez case was closed because it "cannot be proved."

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

322.    Neither COP nor the Prosecutors obtained any additional evidence to support Ramirez' accusations.

323.    Even though COP and its investigators had concluded there was no evidence of wrongdoing on the part of Sean and thus no probable cause to charge him based on Ramirez' accusations, they nonetheless chose to proceed with a *criminal prosecution* with a "beyond a reasonable doubt" standard of proof.

324.    Maricopa and the Prosecutors decided to prosecute Sean for alleged sexual assault based on the accusations of Ramirez and Lee.

325.    Maricopa, COP, and the Prosecutors knew they did not have probable cause to arrest or proceed with prosecution based upon the accusations of either Ramirez or Lee.

326.    COP and Walker admittedly had no probable cause with respect to Ramirez's accusations.

327.    Nor did they have probable cause with respect to Lee's accusations. As discussed herein, Lee was heavily intoxicated on fentanyl, a hallucinogenic drug, at the time of her alleged assault, and her story changed substantially every time she spoke about it. Her various descriptions would have made the alleged assault physically impossible. And she had already received a huge payout from COP.

328.    The entirety of the Probable Cause ("PC") statement relied upon by COP, Walker, Maricopa, and the Prosecutors for Ramirez and Lee states:

> On 8/26/18, Victim A (an adult female) reported to Phoenix Police an allegation of sexual assault by the officer who arrested her earlier that day. Victim A was arrested by Officer Sean Pena for an outstanding felony warrant out of Yavapai County after she was stopped in a city park after hours. Pena was the primary unit for this call, with assistance from another officer. Pena transported Victim A to the South Mountain Precinct for prisoner processing, then to the Fourth Avenue Jail. Victim A alleged that Pena forced oral/penile sex while she was handcuffed in the back of his patrol vehicle and they were stopped at the railroad tracks near Third Avenue and Buchanan Street. A sexual assault examination was completed

on Victim A and the evidence sent to the crime lab for processing. Pena's DNA profile was excluded from the profiles found on the evidence swabs. Pena adamantly denied the allegations of sexual assault or having any sexual contact with Victim A. He also stated it was Victim A who offered him oral sex if he would release her. The video surveillance obtained from multiple locations could not corroborate or refute the allegations.

2019-2028342

On 11/20/2019 Victim B (an adult female) reported she was sexually abused by an on-duty Phoenix Police Officer who had contact with her in June 2019. Victim B reported the Officer touched her breasts and had her masturbate his penis when he was alone with her. Victim B was contacted in June 2019 reference a check welfare call (CFS# 19000934327), which was placed on her for wandering around in the street near 23rd and St. Anne Avenues. Victim B was transported from that area by Officer Sean Pena to South 11th Avenue and West Lynne Lane, where the sexual contact allegedly occurred after she was released from his custody. A friend of Victim B's, was interviewed and stated, Victim B called her that night and told her some details of the incident with Pena. AVL records from Pena's patrol vehicle corroborated that he was at the drop-off location for approximately ten minutes. No biological evidence was found in the patrol vehicle upon examination by the crime lab staff. There was no other evidence which would serve to corroborate or refute this allegation. Pena denied the allegations of engaging in any sexual conduct with Victim B.

329.    This PC statement was submitted to the South Mountain Justice Court in Phoenix, Arizona as the basis for Sean's arrest on March 9, 2020.

330.    Both PC statements for Ramirez and Lee state that there was no DNA or other evidence to corroborate the allegations made against Sean.

331.    The State later decided to prosecute Sean based upon the false accusations of Gutierrez.

332.    The PC statement for Gutierrez was a majority of a copy and paste from police reports.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

333.    COP, Walker, Maricopa, and the Prosecutors disregarded the fact that Gutierrez came forward with her allegations only after the Phoenix local news ran a story about Sean's indictments on Lee's and Ramirez' allegations.

334.    Gutierrez' did not report the alleged assault for nearly one year after her encounter with Sean.

335.    The PC statement further states that Gutierrez was able to identify Sean in a photo lineup.

336.    This is unsurprising.

337.    On June 25, 2020 KTAR posted an article detailing the criminal charges against Sean.

338.    On July 23, 2020 at 10:30am, KTAR posted another news article with the headline "Phoenix PD fires officer accused of sex crimes against women in his custody."

339.    Gutierrez' police report to Ratko Aleksis was reported on July 23, 2020 at approximately 7:00 P.M.

340.    Furthermore, the ties between Lee and Gutierrez become clear from the evidence and statements by Maupin that he was working with another Victim to come forward.

341.    Upon information and belief, she already had.

342.    The fix was in and Maupin was able to direct both Lee and Gutierrez to a local attorney for the purposes of filing a civil suit for both against COP and Sean.

**THE MISLEADING GRAND JURY PRESENTATIONS**

343.    A Grand Jury convened on June 19, 2020 to consider charges based upon the accusations of Ramirez and Lee.

344.    Michael Baker and Samantha Caplinger presented to this Grand Jury.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

345.     A second Grand Jury convened on August 12, 2020 to consider charges based upon the accusations of all three of the Accusers.

346.     Grand Jury Prosecutors Samantha Caplinger and Sandra Anderson presented to this Grand Jury.

347.     None of the Accusers was presented separately to a grand jury, instead, their accusations were presented only in combination with the accusations of one or more of the other Accusers.

348.     Sean was precluded from providing his statement to both Grand Juries

349.     The State's only witness to the Grand Juries was Detective Walker.

350.     Walker relayed the false accusations of Ramirez, Lee and Gutierrez, and his investigation.

351.     The Grand Jury Prosecutors did not present to the Grand Jury clearly exculpatory evidence of which the State was aware. For example, the Grand Jury was not presented evidence that:

- Sean passed a polygraph test in which he denied ever having sexual contact with anyone while on duty as a Phoenix Police Officer.
- Both Ramirez and Lee were intoxicated on extremely potent and hallucinogenic drugs at the times they were allegedly assaulted.
- Ramirez had a unique history of making reports of sexual assault following bouts of intoxication.
- Surveillance video showed a white car driving past Sean's patrol vehicle which was stopped on a public street at the exact moment Sean was allegedly standing at the backseat door assaulting Ramirez.
- The accounts of all three Accusers would have necessitated Sean exposing his firearm, his Taser, and his pepper spray to the alleged victim.
- Lee's account of her alleged assault changed substantially from her first to her second interview.
- Lee had just lost her children to DCS and was not only extremely intoxicated but also despondent and angry with authorities at the time of the alleged assault.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

- Lee had gone to the location of the alleged assault in order to buy more fentanyl, and was angry that Sean and the other officers had interrupted her efforts.
- No biological evidence was found in Sean's patrol vehicle upon examination by COP's Police Department Crime Lab. Several items of evidence were examined in the lab for semen and none was found.
- Lee and Gutierrez were motivated by financial gain to make their accusations.
- It would have been physically impossible to commit the alleged assaults based on the statements given by Sean's Accusers.
- Sean was on the phone for at least thirty (30) seconds with his partner, Felix, during the one minute and thirty-nine second stop at the railroad tracks while transporting Ramirez.
- Investigators had failed to check the Black Box in Sean's patrol vehicle to see whether Sean's seatbelt was fastened while parked at the railroad tracks – despite Sean's request that they do so.
- There was extensive media coverage of Sean's first indictment immediately before Gutierrez made her accusations against Sean.
- The DNA results from the Ramirez investigation specifically excluded Sean.

352.    Walker and the Prosecutors presented misleading testimony about the DNA evidence to the Grand Juries for the purpose of obtaining indictments.

353.    The Prosecutors were motivated by the need to justify COP's settlements with Sean's Accusers, by the Me Too movement, and by the USDOJ's investigation.

## **THE CRIMINAL TRIALS**

354.    Sean maintained his innocence throughout the prosecution.

355.    The State went to trial against Sean in May, 2022 on charges of sexual assault based on the accusations of Ramirez, Lee and Gutierrez.

356.    The testimony of the three Accusers at trial differed substantially from the second-hand (hearsay) accounts of their accusations that Walker told the Grand Jury.

357.    At the end of trial the jury found Sean not guilty of sexually assaulting Lee.

358.    The jury did not reach a verdict of the charges based on the accusations of Ramirez and Gutierrez.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

43

359.    The State again went to trial against Sean in August 2022 based on the accusations of Ramirez and Gutierrez.

360.    The testimony given by the three Accusers at the Second Trial differed substantially from the testimony they gave at the First Trial.

361.    In a desperate effort to boost her credibility at the second trial, Gutierrez testified that she had been "reminded" after the first trial that there was another person present at her house when she told her fiancé that she had been assaulted by Sean.

362.    Stunningly, Defendant Roseberry admitted that Gutierrez had told him about this alleged witness at least a week prior to her admission, but he did not disclose this information to counsel for Sean.

363.    During trial defense counsel got access to a text message the alleged witness sent to Gutierrez in which he told her "…I'll be your slave at the snap of a finger."

364.    As an alleged "victim" Gutierrez was allowed to sit through and listen to the testimony of all the witnesses at both trials. She then adjusted her testimony accordingly. After hearing Sean testify at the First trial that she had told him about her violent and abusive fiancé, she insisted at the Second trial that she "never said anything about domestic violence." She went on to testify under oath that her fiancé was "four feet tall" and she wasn't afraid of him.

365.    As noted above, Gutierrez had also told Detective Aleksis that she had contacted the Phoenix Police Department due to domestic violence.

366.    On August 19, 2020, ABC15, a Phoenix ABC News affiliate, posted a story about a woman claiming that she had been sexually assaulted by a Phoenix Police Officer during a traffic stop. The story was updated on November 19, 2020.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

367.   According to the report at some point during the alleged assault, the woman cried out for someone to call the police. The woman said the Officer then slammed her up against her car and said "How you going to call the police on the damn police."

368.   Apparently inspired by the news report, Gutierrez repeatedly insisted at trial "You can't call the police on the police," as if the phrase could cure her lack of credibility.

369.   Ramirez testified that Sean ejaculated in her mouth.

370.   When pressed on details of the alleged assault, Ramirez kept saying over and over again that "It happened real fast" and strenuously resisted providing details.

371.   Lee introduced for the first time a story that Sean had somehow pulled her into the front seat with him with the driver's side door open at the time of the alleged assault. She also admitted that it would be physically impossible for two adults to be seated in the driver's seat at the same time.

372.   At the end of the Second Trial, the jury found Sean not guilty on all charges.

373.   The jury deliberated for only approximately 30 minutes.

## COP WRONGFULLY TERMINATES SEAN'S EMPLOYMENT

374.   According to the Memorandum of Understanding adopted by COP and the Phoenix Police Department, and governing Sean's employment, any reason for termination must meet a "Just Cause" standard.

375.   According to Arizona Revised Statutes 38-1101, "Just Cause" is defined as:

(a) The employer informed the law enforcement officer of the possible disciplinary action resulting from the officer's conduct through agency manuals, employee handbooks, the employer's rules and regulations or other communications to the officer or the conduct was such that the officer should have reasonably known disciplinary action could occur.

(b) The disciplinary action is reasonably related to the standards of conduct for a professional law enforcement officer, the mission of the agency, the orderly, efficient or safe operation of the agency or the officer's fitness for duty.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

(c) The discipline is supported by a ***preponderance of evidence*** that the conduct occurred.
(d) The discipline is not excessive and is reasonably related to the seriousness of the offense and the officer's service record.
(emphasis added).

376.     "Preponderance of evidence" is an even higher standard of proof than probable cause.

377.     COP did not have probable cause to believe Sean was guilty of wrongdoing with respect to either Ramirez or Lee.

378.     COP could not prove wrongdoing on the part of Sean by a preponderance of evidence.

379.     COP fired Sean on July 27, 2020 based on the accusations of Ramirez and Lee.

380.     Sean appealed his termination by COP to the CSB.

381.     In late November and early December 2022, Hearing Officer Peter Reinstein conducted a hearing on Sean's appeal.

382.     At that time COP knew Sean had been acquitted of all charges based upon the false accusations of the three Accusers. COP knew that Sean had passed a polygraph test. But COP had already fired Sean and had paid two of his Accusers $425,000 each.

383.     COP knew that none of the Accusers was credible and that their accusations were false.

384.     COP knew that it did not have just cause to terminate Sean's employment.

385.     COP decided to destroy Sean's career in order to justify the fact that it paid $850,000 pf taxpayer money to two demonstrable liars.

386.     Defendant Chief Jeri Williams testified at the hearing that she had served as the Chief of PPD for six years retiring on October 31, 2022.

387.    Chief Williams further testified that one of her duties as Police Chief included disciplinary decisions.

388.    Chief Williams testified that she conducted a Loudermill Hearing on July 2nd, 2020, to determine the discipline for Sean.

389.    Chief Williams stated that she considered both the SID and PSB investigations in making her decision.

390.    Chief Williams testified that she also considered that the Appellant had been indicted by a Grand Jury.

391.    She stated that she believed that a police officer who had been indicted could not be retained by the department.

392.    Chief Williams stated that the fact that Appellant was ultimately acquitted of the charges would not change her decision given the different standards of proof required.

393.    If fact, the standard of proof applicable to her decision was "preponderance of evidence," which is a different and higher standard of proof than "probable cause."

394.    Chief Williams further testified that she signed the Discipline Notice dated July 27, 2020, wherein Sean was terminated from his employment as a Phoenix police officer.

395.    She believed that the level of discipline imposed was not excessive and reasonably related to the offenses despite the complete lack of evidence and the clearly false and wildly inconsistent statements of Sean's Accusers.

396.    On December 12, 2022, Hearing Officer Reinstein issued a report recommending that the Civil Service Board affirm Sean's termination.

397.    Reinstein's recommendation was unsupported by the evidence and was unsupportable.

398.    Reinstein reached the incredible and stunning conclusion that:

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

Neither Ms. Ramirez nor Ms. Lee possessed a motive for coming forward with their allegations against [Sean]. Ms. Ramirez and Ms. Lee received no benefit from their allegations. Ms. Lee was very reluctant to press her allegations against [Sean].

399.     As discussed herein, COP had already paid Lee $425,000 based on her allegations. That amount of money overcomes a lot of reluctance. Lee was intoxicated on fentanyl at the time of her encounter with Sean.

400.     COP did not even dispute the fact that Ramirez was high on hallucinogenic drugs and was desperate to obtain release from custody when she made her allegations.

401.     Reinstein also concluded that "Ms. Ramirez and Ms. Lee did not recant their allegations even when inconsistencies were pointed out by the investigators."

402.     In fact, as set forth herein, when Ramirez and Lee were confronted with inconsistencies, they simply changed their stories, and in dramatic fashion.

403.     Reinstein concluded that "the status of Ms. Ramirez and Ms. Lee made them relatively easy targets for exploitation." This, of course, simply ignores the fact that by serving as a beat cop in a high crime, drug infested neighborhood, Sean was also an "easy target" for false accusations by users and dealers alike.

404.     On February 22, 2023, following Sean's acquittal of all charges, the CSB voted to nonetheless affirm the termination of his employment.

405.     Only two of the five members of the CSB voted to affirm the termination of Sean's employment. One voted to re-instate Sean's employment. The other two were absent.

406.     Following the affirmation of Sean's termination, the Arizona Peace Officer Standards and Training Board requested that Sean sign a "Consent Agreement" by which he would permanently relinquish his Arizona peace officer certification.

407.     Sean declined to sign it.

48

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

### DEFENDANT CHIEF JERI WILLIAMS' HISTORY OF CONCEALING FACTS AND USING SCAPEGOATS

408.    Jeri Williams and her executive staff – including Assistant Police Chiefs – regularly used Signal, an instant messaging app that provides encrypted messaging and the ability to delete messages with no ability to recover them.

409.    Signal was used by Jeri Williams to discuss lawsuits, or other matters that involved the fabrication of criminal charges against individuals.

410.    In fact, an ABC15 article exposed the use of the Signal application by Jeri Williams and her executive team.

411.    The Phoenix Police Director of Communications Donna Rossi said in August 2022 that, "Chief Williams asked that Signal not be used by her executive team for work-related issues and deleted her app from her phone in 2020. Chief Kurtenbach does not have the app on his work phone."

412.    This was shown to be a false statement by the Phoenix Police Department.

413.    Screenshots of the Signal application being used by Jeri Williams and her executive staff far past 2020 came to light.

414.    One of the purposes for the use of the Signal application was to discuss the fact that COP, the Maricopa County Attorney's Office, and Phoenix Police employees – including Jeri Williams – had participated in a scheme to invent charges against police protestors in 2021.

415.    Mass Liberation Arizona issued a statement regarding this, stating:

> Chief Williams not only lied about deleting the app, she actively used Signal to intentionally destroy evidence long after she claimed to have told her staff not to use the app. Chief Williams is a liar. She absolutely must not be permitted to retire in good standing; she must be fired. She must also be Brady listed immediately. No public official should be using the Signal app, least of all the chief of the nation's deadliest police department.

416.     In response to the scandal, Jeri Williams demoted three Assistant Police Chief to Commanders – using them as scapegoats according to a lawsuit filed in the Maricopa County Superior Court on April 18, 2022.

417.     COP – through Jeri Williams – and Maricopa County – through its employees – adopted practices to invent charges against individuals in the hopes of obtaining criminal convictions for political gain.

418.     This same pattern, practice, and policy was used in the wildly false charges levied against Sean.

419.     This same pattern, practice, and policy was used to "scapegoat" Sean in the wake of the ME TOO pressure put on COP.

420.     As discussed herein, Detective Walker actually told Sean that he needed to understand that the accusations came in the midst of the Me Too movement and that was where society was at.

421.     This is due to the pattern, practice, and policy pushed by Jeri Williams and COP to find scapegoats to offer to the public to avoid public scrutiny.

422.     This pattern, practice, and policy was further emboldened by the fact that COP and Phoenix Police Officer Anthony Armour were directly in the middle of another sexual assault case brought by a member of the public against Armour in the District Court of Arizona case entitled Anderson v. Armour (2:16-cv-03563).

423.     Armour was not terminated.

424.     That case was filed in October 14, 2016 and was heating up towards trial at the time that Sean was fired by Jeri Williams.

**THE AFTERMATH**

425.     As the result of the Defendants' conduct alleged herein, Sean's life was left in ruins.

426.    Sean had been married for only three weeks when Ramirez made her false accusations against Sean.

427.    Sean had intended to serve a full 25 years as a Phoenix Police Officer, and then retire with a pension in the same manner as his father.

428.    Instead, Sean's career in law enforcement was destroyed by Defendants.

429.    His good reputation was ruined.

430.    His ability to earn income to support his family has been severely and irreparably impaired.

431.    His ability to earn his retirement pension was taken away from him.

432.    Following his termination by COP, Sean started a small business selling custom dog houses.

433.    A customer complained to a local television news program, KTVK's Arizona's Family, about Sean's delay in providing a doghouse she had ordered.

434.    In fact, the delay was attributable to the fact that Sean was busy defending himself from the wrongful and malicious prosecution described herein.

435.    Arizona's Family aired the customer's complaint on television, including the customer's statement that she had researched Sean's background and discovered the accusations made by Ramirez, Lee and Guttierez. She cited those accusations as a reason not to do business with Sean. Arizona's Family likewise implied on the broadcast that Sean was an infamous person.

436.    Sean's dog house business was forced to close down.

437.    The Arizona's Family broadcast incident demonstrates in part the extent to which Sean's capacity to earn income has been damaged and impaired by Defendants' conduct.

51

438.     Sean has been forced to seek counseling due to the stress brought on by Defendants' conduct.

439.     Sean has been diagnosed with post-traumatic stress disorder and has been forced to receive treatment as a direct and proximate result of Defendants' conduct.

440.     Sean was paid $27.74 per hour at the time and was also paid overtime.

441.

442.     Sean had fringe benefits including without limitation health insurance, medical expense reimbursement, and vacation leave which would have increased depending on his years of service:
   • 1-5 Years of Service = 8 hours per month (96 hours/year)
   • 6-10 Years of Service = 10 hours per month (120 hours/year)
   • 11-15 Years of Service = 11 hours per month (132 hours/year)
   • 16-20 Years of Service = 13 hours per month (152 hours/year)
   • 21 Years+ = 15 hours per month (180 hours/year)

443.     Many of those benefits would have continued after Sean's retirement.

444.     Sean's lifelong goal was to become a Detective with COP.

445.     Each promotion brings with it a pay increase.

446.     After 25 years, Sean could have retired with a full pension.

447.     According to a 2017 news article from AZCentral.com, the average pension for Phoenix Police employees was approximately $63,000 per year at that time.

448.     That amount will increase substantially by the time Sean reaches retirement age.

449.     Furthermore, Phoenix Police Officers can participate in a deferred retirement option plan ("DROP") by working an additional seven years.

450.     By doing so, they are eligible for an additional lump sum payment.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

451.     Pension payments that would have been paid to a retiree not in the DROP system are deposited into a fund that guarantees a return rate of between approximately 6.6 to 7.4 percent.

452.     Once the DROP participant officially ends his/her employment, the amount deposited plus interest is paid to the employee as a lump sum payment.

453.     After receiving his DROP payment, Sean would have then received his yearly pension for each year thereafter.

### COUNT I – WRONGFUL TERMINATION/BREACH OF EMPLOYMENT AGREEMENT
### (COP)

454.     Sean restates and re-alleges the allegations of Paragraphs 1 through ____ above as if fully set forth herein.

455.     Sean was employed as a Police Officer by COP pursuant to a written agreement called a Memorandum of Understanding ("MOU").

456.     The MOU is an enforceable contract governing the rights and obligations of COP and Sean pertaining to his employment.

457.     Pursuant to the terms of the MOU, COP could terminate Sean's employment only for "just cause."

458.     COP breached the MOU by terminating Sean's employment without just cause.

459.     As a direct result of COP's breach of the MOU, Sean sustained damages in an amount to be proven at trial.

### COUNT II – BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING
### (COP)

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

460.   Plaintiff incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

461.   Sean's employment agreement with COP contained a duty to act fairly and good faith.

462.   This duty required that COP not do anything that would prevent Sean from receiving the benefits of the agreement.

463.   COP breached its duty of good faith and fair dealing by failing to give Sean a fair and reasonable opportunity to demonstrate that the termination of is employment was not supported by just cause, and by ignoring the evidence of Sean's innocence of the accusations made against him.

464.   As a direct result of COP's breach of the duty of good faith and fair dealing, Sean sustained damages in an amount to be proven at trial.

## COUNT III -- MALICIOUS PROSECUTION -- RAMIREZ
### (COP, WALKER, MARICOPA, PROSECUTORS, AND RAMIREZ)

465.   Plaintiff incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

466.   Defendants COP, Walker, County, the Prosecutors and Ramirez instituted and continued criminal proceedings against Sean.

467.   The criminal proceedings ended in favor of Sean with his acquittal on all charges.

468.   The criminal proceedings were brought as a result of false accusations of sexual misconduct made by Ramirez.

469.   Defendants COP, Walker, Maricopa, the Prosecutors and Ramirez did not have probable cause to institute the criminal proceedings against Sean.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

470.     COP, Walker, Maricopa, and the Prosecutors knew or were reckless in not knowing that the accusations of Ramirez were false.

471.     Neither COP, Walker, Maricopa, the Prosecutors, or Ramirez believed in good faith that the accusations were true or that Sean was guilty of the crimes with which he was charged.

472.     A reasonable person under the same or similar circumstances would not have believed that Sean was guilty of the crimes with which he was charged.

473.     COP, Walker, Maricopa, and the Prosecutors were able to secure indictments against Sean only by knowingly presenting to the Grand Jury the false accusations of Ramirez, and by failing to present to the Grand Jury clearly exculpatory evidence demonstrating that the accusations were false and that Ramirez was not credible.

474.     Walker and the Prosecutors presented false and/or misleading testimony to the Grand Juries for the purpose of obtaining indictments.

475.     COP, Walker, Maricopa, the Prosecutors, and Ramirez acted with malice in instituting and continuing criminal proceedings against Sean.

476.     Ramirez' primary motives in making her accusations against Sean was to avoid prosecution and punishment for her own crimes and her personal hatred of Sean.

477.     As discussed herein, COP, Walker, Maricopa, and the Prosecutors were primarily motivated by the desire to create the appearance that they were rooting out "bad cops" without regard to the credibility of the Accusers. They were also motivated to justify COP's payment of hundreds of thousands of dollars to Lee and Gutierrez.

478.     As a direct and proximate result of the criminal prosecution Sean was forced to spend substantial amounts of time and money defending himself. Sean also suffered, among other things, public humiliation, the loss of his career and the permanent impairment

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

of his ability to secure gainful employment. Sean sustained damages in an amount to be proven at trial.

## COUNT IV – MALICIOUS PROSECUTION – LEE
### (COP, WALKER, MARICOPA, PROSECUTORS, AND LEE)

479.     Plaintiff incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

480.     Defendants COP, Walker, Maricopa, the Prosecutors, and Lee instituted and continued criminal proceedings against Sean.

481.     The criminal proceedings ended in favor of Sean with his acquittal on all charges.

482.     The criminal proceedings were brought as a result of false accusations of sexual misconduct made by Lee.

483.     Defendants COP, Walker, Maricopa, the Prosecutors,  and Lee did not have probable cause to institute the criminal proceedings against Sean.

484.     COP, Walker, Maricopa, and the Prosecutors knew or were reckless in not knowing that the accusations of Lee  were false.

485.     Neither COP, Walker, Maricopa, the Prosecutors, or Lee believed in good faith that the accusations were true or that Sean was guilty of the crimes with which he was charged.

486.     A reasonable person under the same or similar circumstances would not have believed that Sean was guilty of the crimes with which he was charged.

487.     COP, Walker, Maricopa, and the Prosecutorswere able to secure indictments against Sean only by knowingly presenting to the Grand Jury the false accusations of Lee, and by failing to present to the Grand Jury clearly exculpatory evidence demonstrating that the accusations were false and that Lee was not credible.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

488.     Walker and the Prosecutors presented false and/or misleading testimony to the Grand Juries for the purpose of obtaining indictments.

489.     COP, Walker, Maricopa, the Prosecutors, and Lee acted with malice in instituting and continuing criminal proceedings against Sean.

490.     Lee's primary motives in making her accusations against Sean was financial gain.

491.     As discussed herein, COP, Walker, Maricopa, and the Prosecutors were primarily motivated by the desire to create the appearance that they were rooting out "bad cops" without regard to the credibility of the Accusers. They were also motivated to justify COP's payment of hundreds of thousands of dollars to Lee and Gutierrez.

492.     As a direct and proximate result of the criminal prosecution Sean was forced to spend substantial amounts of time and money defending himself. Sean also suffered, among other things, public humiliation, the loss of his career and the permanent impairment of his ability to secure gainful employment. Sean sustained damages in an amount to be proven at trial.

## COUNT V – MALICIOUS PROSECUTION – GUTIERREZ
## (COP, WALKER, MARICOPA, PROSECUTORS, AND GUTIERREZ)

493.     Plaintiff incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

494.     Defendants COP, Walker, Maricopa, the Prosecutors, and Gutierrez instituted and continued criminal proceedings against Sean.

495.     The criminal proceedings ended in favor of Sean with his acquittal on all charges.

496.     The criminal proceedings were brought as a result of false accusations of sexual misconduct made by Gutierrez.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

497. Defendants COP, Walker, Maricopa, the Prosecutors, and Gutierrez did not have probable cause to institute the criminal proceedings against Sean.

498. COP, Walker, Maricopa, and the Prosecutors knew or were reckless in not knowing that the accusations of Gutierrez were false.

499. Neither COP, Walker, Maricopa, the Prosecutors, or Gutierrez believed in good faith that the accusations were true or that Sean was guilty of the crimes with which he was charged.

500. A reasonable person under the same or similar circumstances would not have believed that Sean was guilty of the crimes with which he was charged.

501. COP, Walker, Maricopa, and the Prosecutors were able to secure indictments against Sean only by knowingly presenting to the Grand Jury the false accusations of Gutierrez, and by failing to present to the Grand Jury clearly exculpatory evidence demonstrating that the accusations were false and that Gutierrez was not credible.

502. Walker and the Prosecutors presented false and/or misleading testimony to the Grand Juries for the purpose of obtaining indictments.

503. COP, Walker, Maricopa, the Prosecutors, and Gutierrez acted with malice in instituting and continuing criminal proceedings against Sean.

504. Gutierrez' primary motive in making her accusations against Sean was financial gain.

505. As discussed herein, COP, Walker, Maricopa, and the Prosecutors were primarily motivated by the desire to create the appearance that they were rooting out "bad cops" without regard to the credibility of the Accusers. They were also motivated to justify COP's payment of hundreds of thousands of dollars to Lee and Gutierrez.

506. As a direct and proximate result of the criminal prosecution Sean was forced to spend substantial amounts of time and money defending himself. Sean also suffered,

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

among other things, public humiliation, the loss of his career and the permanent impairment of his ability to secure gainful employment. Sean sustained damages in an amount to be proven at trial.

### COUNT VI – ABUSE OF PROCESS -- RAMIREZ
### (COP, WALKER, MARICOPA, PROSECUTORS, AND RAMIREZ)

507.     Plaintiff incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

508.     COP, Walker, Maricopa, the Prosecutors, and Ramirez brought criminal proceedings against Sean in Maricopa County Superior Court.

509.     As alleged herein, COP, Walker, Maricopa, the Prosecutors, and Ramirez used the criminal proceedings primarily to accomplish a purpose for which the process was not designed.

510.     Ramirez' primary motives in making her accusations against Sean was to avoid prosecution and punishment for her own crimes and her personal hatred of Sean.

511.     As discussed herein, COP, Walker, Maricopa, and the Prosecutors were primarily motivated by the desire to create the appearance that they were rooting out "bad cops" without regard to the credibility of the Accusers. They were also motivated to justify COP's payment of hundreds of thousands of dollars to Lee and Gutierrez.

512.     As a direct and proximate result of this misuse of the legal process Sean was forced to spend substantial amounts of time and money defending himself. Sean also suffered, among other things, public humiliation, the loss of his career and the permanent impairment of his ability to secure gainful employment. Sean sustained damages in an amount to be proven at trial.

### COUNT VII – ABUSE OF PROCESS – LEE
### (COP, WALKER, MARICOPA, PROSECUTORS,  AND LEE)

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

513.     Plaintiff incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

514.     COP, Walker, Maricopa, the Prosecutors,   and Lee brought criminal proceedings against Sean in Maricopa County Superior Court.

515.     As alleged herein, COP, Walker, Maricopa, the Prosecutors, and Lee used the criminal proceedings primarily to accomplish a purpose for which the process was not designed.

516.      Lee's primary motive in making her accusations against Sean was financial gain.

517.     As discussed herein, COP, Walker, Maricopa, and the Prosecutors were primarily motivated by the desire to create the appearance that they were rooting out "bad cops" without regard to the credibility of the Accusers. They were also motivated to justify COP's payment of hundreds of thousands of dollars to Lee and Gutierrez.

518.     As a direct and proximate result of this misuse of the legal process Sean was forced to spend substantial amounts of time and money defending himself. Sean also suffered, among other things, public humiliation, the loss of his career and the permanent impairment of his ability to secure gainful employment. Sean sustained damages in an amount to be proven at trial.

## COUNT VIII – ABUSE OF PROCESS – GUTIERREZ
## (COP, WALKER, MARICOPA, PROSECUTORS AND GUTIERREZ)

519.     Plaintiff incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

520.     COP, Walker, Maricopa, the Prosecutors, and Gutierrez brought criminal proceedings against Sean in Maricopa County Superior Court.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

521.     As alleged herein, COP, Walker, Maricopa, the Prosecutors, and Gutierrez used the criminal proceedings primarily to accomplish a purpose for which the process was not designed.

522.      Gutierrez' primary motive in making her accusations against Sean was financial gain.

523.     As discussed herein, COP, Walker, Maricopa, and the Prosecutors were primarily motivated by the desire to create the appearance that they were rooting out "bad cops" without regard to the credibility of the Accusers. They were also motivated to justify COP's payment of hundreds of thousands of dollars to Lee and Gutierrez.

524.     As a direct and proximate result of this misuse of the legal process Sean was forced to spend substantial amounts of time and money defending himself. Sean also suffered, among other things, public humiliation, the loss of his career and the permanent impairment of his ability to secure gainful employment. Sean sustained damages in an amount to be proven at trial.

### COUNT IX – ABUSE OF PROCESS
### (LEE AND GUTIERREZ)

525.     Plaintiff incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

526.     Lee and Gutierrez, brought civil actions against Sean as alleged herein.

527.     The primary purpose of the civil proceedings was to obtain money damages based upon the false accusations of Ramirez, Lee and Gutierrez.

528.     Civil proceedings in Arizona were not designed for such purposes.

529.     Defendants' use of civil proceedings in this manner was wrongful.

530.     Those civil proceedings were motivated by malice in that both Lee and Ramirez were angry that a) Sean had either arrested them or attempted to have them

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

become informants to assist in arresting others; b) Lee had her children removed from her custody by DCS on the very same day that Sean arrested her; and, c) Lee was angry that Sean stopped her from obtaining drugs

531.   The civil proceedings were begun and maintained without probable cause.

532.   The civil proceedings were based on the false accusations of Ramirez, Lee and Gutierrez.

533.   Ramirez, Lee and Gutierrez were not credible.

534.   A reasonable investigation of the claims of Ramirez, Lee and Gutierrez would have demonstrated that the claims were false and that the Accusers were not credible.

535.   The civil proceedings were terminated on June 17, 2021 and December 2, 2021 when the civil actions of Lee and Gutierrez were dismissed with prejudice.

536.   As a direct and proximate result of this misuse of the legal process, Sean suffered, among other things, public humiliation, the loss of his career and the permanent impairment of his ability to secure gainful employment. Sean sustained damages in an amount to be proven at trial.

## COUNT X – TORTIOUS INTERFERENCE WITH CONTRACT AND REASONABLE BUSINESS EXPECTANCY (ALL DEFENDANTS EXCEPT COP)

537.   Plaintiff incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

538.   Each of the Defendants knew that Sean was employed as a Police Officer by COP.

539.   Sean was employed by COP pursuant to a written employment agreement.

540.   Sean had a reasonable expectation of continued employment by COP.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

541.     Each of the Defendants knew that Sean had an employment agreement with COP and/or that he had a reasonable expectancy of continued employment by COP.

542.     Each of the Defendant knowingly and intentionally interfered with Sean's employment agreement with COP and with Sean's reasonable expectancy of continuing employment by COP by the conduct of each alleged herein.

543.     Each of these Defendants' interference was wrongful and without legal privilege or justification.

544.     As a direct and proximate result of Defendants' tortious interference, Sean suffered, among other things, the loss of his employment and career as a Police officer, the permanent impairment of his ability to earn income, public humiliation and emotional distress,and the time and expense associated with defending himself against false claims. Sean sustained damages in an amount to be proven at trial.

## COUNT XI – FALSE ARREST AND IMPRISONMENT 03/09/2020
## (COP AND MARICOPA COUNTY)

545.     Plaintiff incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

546.     COP Police Officers arrested Sean on March 9, 2020 for the alleged sexual assault of Lee.

547.     Sean was booked into the Fourth Avenue Jail, which is operated by the Maricopa County Sheriff's Office.

548.     COP acted intentionally to restrain Sean to an area within COP's control.

549.     Maricopa County acted intentionally to restrain Sean to an area within Maricopa County's control.

550.     Both COP and Maricopa County acted without lawful authority and without Sean's consent.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

551.     The acts of COP and Maricopa County resulted in the direct restraint of Sean's liberty or freedom of movement, either by actual force or from Sean's fear of force.

552.     The acts of COP and Maricopa County would have caused a reasonably prudent person in the same situation as Sean to believe that he was restrained.

553.     Sean was aware of and was harmed by the restraint.

554.     As a direct and proximate result of his false imprisonment by COP and by Maricopa County Sean sustained damages in an amount to be proven at trial.

## COUNT XII – FALSE ARREST AND IMPRISONMENT 7/24/20
## (COP AND MARICOPA)

555.     Plaintiff incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

556.     On July 24, 2020, COP Police Officers arrested Sean for the alleged sexual assault of Gutierrez.

557.     Sean was again booked into the Fourth Avenue Jail.

558.     COP acted intentionally to restrain Sean to an area within COP's control.

559.     Maricopa acted intentionally to restrain Sean to an area within Maricopa County's control.

560.     Both COP and Maricopa acted without lawful authority and without Sean's consent.

561.     The acts of COP and Maricopa resulted in the direct restraint of Sean's liberty or freedom of movement, either by actual force or from Sean's fear of force.

562.     The acts of COP and Maricopa would have caused a reasonably prudent person in the same situation as Sean to believe that he was restrained.

563.     Sean was aware of and was harmed by the restraint.

564.     As a direct and proximate result of his false imprisonment by COP and by Maricopa County Sean sustained damages in an amount to be proven at trial.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

## COUNT XIII – INSTIGATING OR PARTICIPATING IN FALSE ARREST AND IMPRISONMENT
### (ALL DEFENDANTS)

565.     Plaintiff incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

566.     Sean was falsely arrested and falsely imprisoned as alleged herein.

567.     Each Defendant intentionally instigated and/or participated in the unlawful restraint of Sean by his/her/its words and acts alleged herein.

568.     The words of acts of each Defendant directed, requested, invited or encouraged the act of false imprisonment.

569.     Each Defendant participated in the act of false imprisonment by aiding COP and Maricopa County in restraining Sean.

570.     COP participated in the act of false imprisonment by Maricopa by aiding Maricopa County in restraining Sean.

571.     Maricopa participated in the act of false imprisonment by COP by aiding COP in restraining Sean.

572.     As a direct and proximate result of each Defendant's instigation or participation in false arrest and imprisonment, Sean was sustained damages in an amount to be proven at trial.

## COUNT XIV – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (ALL DEFENDANTS)

573.     Plaintiff incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

574.     The conduct of each Defendant alleged herein was extreme and outrageous.

575.     The conduct of each Defendant alleged herein was intentional in that each Defendant sought to cause Sean emotional distress.

65

576. The conduct of each Defendant alleged herein was reckless in that each Defendant was aware of and disregarded the near certainty that the conduct would result in emotional distress.

577. As a direct and proximate result of each Defendant's intentional infliction of emotional distress Sean sustained damages in an amount to be proven at trial.

**COUNT XV – AIDING AND ABETTING**
**(ALL DEFENDANTS)**

578. Plaintiff incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

579. Each Defendant engaged in malicious prosecution, abuse of process, false arrest and imprisonment, and intentional infliction of emotional distress as alleged herein.

580. Each Defendant knew that one or more of the other Defendants were engaging in malicious prosecution, abuse of process, false arrest and imprisonment, and intentional infliction of emotional distress as alleged herein.

581. By the words and acts alleged herein, each Defendant provided substantial assistance and encouragement to such other Defendant or Defendants COP with the intent of promoting the tortious conduct.

582. As a direct and proximate result of each Defendant's aiding and abetting Sean sustained damages in an amount to be proven at trial.

**COUNT XVI – CONSPIRACY**
**(ALL DEFENDANTS)**

583. Plaintiff incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

584. Defendants agreed to engage in a course of conduct to terminate Sean's employment, maliciously prosecute Sean and to defame and inflict emotional distress on him.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

585.     These purposes were unlawful.

586.     Defendants used unlawful means to accomplish these purposes as described herein.

587.     As alleged herein, each of the Defendants performed overt acts in support of the conspiracy and in furtherance of its objectives.

588.     Sean was subjected to unlawful discharge from his employment, malicious prosecution, abuse of process, false arrest and imprisonment and intentional infliction of emotional distress as alleged herein.

589.     In addition, the accusations of sexual misconduct made against Sean alleged herein were false, and Defendants knew they were false.

590.     The accusations of sexual misconduct made by Maupin and Stanciel at the Press Conference and to the PNT as alleged herein were false and outrageous. Defendants knew that these accusations were false.

591.     The allegations of sexual misconduct against Sean were defamatory, and defamatory *per se* in that they were alleged sexual misconduct and disparaged Sean's performance in his job as a Police Officer.

592.     The accusations severely damaged his reputation in the community and impaired his ability to earn income.

593.     As a direct and proximate result of this defamation, Sean sustained damages in an amount to be proven at trial.

594.     By agreeing to engage in the course of conduct to accomplish the unlawful purposes described herein, each Defendant is liable for the tortious conduct of each other Defendant committed in the course of the conspiracy.

595.     As a direct and proximate result of the tortious conduct alleged in this Complaint, Sean sustained damages in an amount to be proven at trial.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

67

1
2
3

### COUNT XVII -- MALICIOUS PROSECUTION IN VIOLATION OF THE FOURTH, FIFTH, AND FOURTEENTH AMENDMENTS AND 42 U.S.C. § 1983 - RAMIREZ
### (COP, MARICOPA, PROSECUTORS, RAMIREZ, WALKER)

4       596.    Plaintiff incorporates the allegations in the foregoing paragraphs as though
5   fully set forth herein.

6       597.    42 U.S.C. § 1983 provides individuals with a cause of action to sue for
7   violations of his or her constitutional rights. The 14th Amendment protects individuals
8   from constitutional violations of State and local authorities. As incorporated by the 14th
9   Amendment, the 4th Amendment protects individuals from malicious prosecution. The
10  Defendants, while acting in their official capacity and individual capacities and under the
11  color of law, violated Sean Pena's rights to freedom from malicious prosecution in regards
12  to Cynthia Ramirez' false allegations.
13

14      598.    COP, Maricopa, the Prosecutors, Ramirez, and Walker acted willfully,
15  knowingly, and with specific intent to deprive Sean Pena of his rights under the Fourth
16  Amendment of the United States Constitution, including his right to be protected from
17  malicious prosecution.

18      599.    COP, Maricopa, the Prosecutors, , Ramirez, and Walker acted unreasonably
19  by failing to have PC to arrest and prosecute Sean as discussed herein.

20      600.    COP, Maricopa, the Prosecutors, , Ramirez, and Walker were able to secure
21  indictments against Sean only by knowingly presenting the perjured testimony of Ramirez
22  to the Grand Jury and by failing to present to the Grand Jury clearly exculpatory evidence
23  demonstrating that the accusations were false and that these Accusers were not credible.
24

25      601.    Walker and the Prosecutors presented false and/or misleading testimony to
26  the Grand Juries for the purpose of obtaining indictments.

27
28

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

602.    COP, Maricopa, the Prosecutors, Ramirez, and Walker acted with malice in instituting and continuing criminal proceedings against Sean.

603.    Ramirez' primary motives in making her accusations against Sean was to avoid prosecution and punishment for her own crimes and her personal hatred of Sean.

604.    As further discussed herein, the real motive to arrest and prosecute Sean was to make an example of a sacrificial lamb during the climate of this nation putting Police Departments under intense scrutiny due to the ME TOO movement, the defund the police movement, and ultimately due to the fact that COP paid both Lee and Gutierrez four hundred twenty-five thousand dollars ($425,000) each in their respective civil suits against COP and Sean and needed to secure his conviction to justify their actions.

605.    This was clearly malicious in nature.

606.    The criminal actions were brought in bad faith, and even when COP, Maricopa, the Prosecutors, Ramirez, and Walker had knowledge of the lies being perpetrated by the Accusers – including Ramirez – they pressed forward with prosecution.

607.    Roseberry hid evidence **during Sean's second trial** that only came to light when Gutierrez let slip on the stand that she had additional potentially exculpatory evidence and that she had given it to the Trial Prosecutors at least a week prior to her testimony.

608.    This is evidence that the prosecution was acting maliciously and in bad faith in continuing to prosecute Sean.

609.    The whole purpose of the prosecution was to save COP from a black eye in public perception.

610.    The prosecution of these criminal charges were not brought for the purpose of bringing the defendant to justice.

611.    Finally, Sean was acquitted of all charges for the allegations of Ramirez on August 15, 2022.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

69

612.     Sean's arrest and prosecution was the direct result of COP's, Maricopa, the Prosecutors', Ramirez', and Walker's actions and inactions.

613.     Additionally, the acts of Defendants and their employees and agents, as set forth above, demonstrate gross and wanton negligence in that each of them knew or had reason to know that their acts individually and collectively created an unreasonable risk of Constitutional violations to Sean's rights, and a high probability that substantial harm would result.

614.     In causing the utter devastation of Sean Pena's life through the malicious prosecution, Defendants and their employees and agents acted with an evil mind and a malignant heart warranting an award of punitive damages.

## COUNT XVIII -- MALICIOUS PROSECUTION IN VIOLATION OF THE FOURTH, FIFTH, AND FOURTEENTH AMENDMENTS AND 42 U.S.C. § 1983 - LEE
## (COP, MARICOPA, PROSECUTORS, LEE, WALKER)

615.     Plaintiff incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

616.     42 U.S.C. § 1983 provides individuals with a cause of action to sue for violations of his or her constitutional rights. The 14th Amendment protects individuals from constitutional violations of State and local authorities. As incorporated by the 14th Amendment, the 4th Amendment protects individuals from malicious prosecution. The Defendants, while acting in their official capacity and individual capacities and under the color of law, violated Sean Pena's rights to freedom from malicious prosecution in regards to Krystofer Lee's false allegations.

617.     COP, Maricopa, the Prosecutors,, Lee, and Walker acted willfully, knowingly, and with specific intent to deprive Sean Pena of his rights under the Fourth

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

Amendment of the United States Constitution, including his right to be protected from malicious prosecution.

618. COP, Maricopa, the Prosecutors,, Lee, and Walker acted unreasonably by failing to have PC to arrest and prosecute Sean as discussed herein.

619. COP, Maricopa, the Prosecutors,, Lee, and Walker were able to secure indictments against Sean only by knowingly presenting the perjured testimony of Lee to the Grand Jury and by failing to present to the Grand Jury clearly exculpatory evidence demonstrating that the accusations were false and that these Accusers were not credible.

620. Walker and the Prosecutors presented false and/or misleading testimony to the Grand Juries for the purpose of obtaining indictments.

621. COP, Maricopa, the Prosecutors,, Lee, and Walker acted with malice in instituting and continuing criminal proceedings against Sean.

622. Lee's primary motives in making her accusations against Sean was to avoid prosecution and punishment for her own crimes and her personal hatred of Sean.

623. As further discussed herein, the real motive to arrest and prosecute Sean was to make an example of a sacrificial lamb during the climate of this nation putting Police Departments under intense scrutiny due to the ME TOO movement, the defund the police movement, and ultimately due to the fact that COP paid both Lee and Gutierrez four hundred twenty-five thousand dollars ($425,000) each in their respective civil suits against COP and Sean and needed to secure his conviction to justify their actions.

624. This was clearly malicious in nature.

625. The criminal actions were brought in bad faith, and even when COP, Maricopa, the Prosecutors,, Lee, and Walker had knowledge of the lies being perpetrated by the Accusers – including Lee – they pressed forward with prosecution.

MILLS + WOODS LAW, PLLC
5055 North 12h Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

626.     Roseberry hid evidence *during Sean's second trial* that only came to light when Gutierrez let slip on the stand that she had additional potentially exculpatory evidence and that she had given it to the prosecutors at least a week prior to her testimony.

627.     This is evidence that the prosecution was acting maliciously and in bad faith in continuing to prosecute Sean.

628.     The whole purpose of the prosecution was to save COP from a black eye in public perception.

629.     The prosecution of these criminal charges were not brought for the purpose of bringing the defendant to justice.

630.     Finally, Sean was acquitted of all charges for the allegations of Lee on May 19, 2022.

631.     Sean's arrest and prosecution was the direct result of COP's, Maricopa's, Prosecutors', Lee's, and Walker's actions and inactions.

632.     Additionally, the acts of Defendants and their employees and agents, as set forth above, demonstrate gross and wanton negligence in that each of them knew or had reason to know that their acts individually and collectively created an unreasonable risk of Constitutional violations to Sean's rights, and a high probability that substantial harm would result.

633.     In causing the utter devastation of Sean Pena's life through the malicious prosecution, Defendants and their employees and agents acted with an evil mind and a malignant heart warranting an award of punitive damages.

**COUNT XIX -- MALICIOUS PROSECUTION IN VIOLATION OF THE FOURTH, FIFTH, AND FOURTEENTH AMENDMENTS AND 42 U.S.C. § 1983 - GUTIERREZ
(COP, MARICOPA, PROSECUTORS, GUTIERREZ, WALKER)**

MILLS + WOODS LAW, PLLC
5055 North 12h Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

634.    Plaintiff incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

635.    42 U.S.C. § 1983 provides individuals with a cause of action to sue for violations of his or her constitutional rights. The 14th Amendment protects individuals from constitutional violations of State and local authorities. As incorporated by the 14th Amendment, the 4th Amendment protects individuals from malicious prosecution. The Defendants, while acting in their official capacity and individual capacities and under the color of law, violated Sean Pena's rights to freedom from malicious prosecution.

636.    COP, Maricopa, the Prosecutors,, Gutierrez, and Walker acted willfully, knowingly, and with specific intent to deprive Sean Pena of his rights under the Fourth Amendment of the United States Constitution, including his right to be protected from malicious prosecution.

637.    COP, Maricopa, the Prosecutors,, Gutierrez, and Walker acted unreasonably by failing to have PC to arrest and prosecute Sean as discussed herein.

638.    COP, Maricopa, the Prosecutors,, Gutierrez, and Walker were able to secure indictments against Sean only by knowingly presenting the perjured testimony of Ramirez, Lee and Gutierrez to the Grand Jury and by failing to present to the Grand Jury clearly exculpatory evidence demonstrating that the accusations were false and that these Accusers were not credible.

639.    Walker and the Prosecutors presented false and/or misleading testimony to the Grand Juries for the purpose of obtaining indictments.

640.    COP, Maricopa, the Prosecutors,, Gutierrez, and Walker acted with malice in instituting and continuing criminal proceedings against Sean.

641.    Gutierrez' primary motives in making her accusations against Sean was to avoid prosecution and punishment for her own crimes and her personal hatred of Sean.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

73

642.     As further discussed herein, the real motive to arrest and prosecute Sean was to make an example of a sacrificial lamb during the climate of this nation putting Police Departments under intense scrutiny due to the ME TOO movement, the defund the police movement, and ultimately due to the fact that COP paid both Lee and Gutierrez four hundred twenty-five thousand dollars ($425,000) each in their respective civil suits against COP and Sean and needed to secure his conviction to justify their actions.

643.     This was clearly malicious in nature.

644.     The criminal actions were brought in bad faith, and even when COP, Maricopa, the Prosecutors,, Gutierrez, and Walker had knowledge of the lies being perpetrated by the Accusers – including Gutierrez – they pressed forward with prosecution.

645.     Roseberry hid evidence *during Sean's second trial* that only came to light when Gutierrez let slip on the stand that she had additional potentially exculpatory evidence and that she had given it to the Trial Prosecutors at least a week prior to her testimony.

646.     This is evidence that the prosecution was acting maliciously and in bad faith in continuing to prosecute Sean.

647.     The whole purpose of the prosecution was to save COP from a black eye in public perception.

648.     The prosecution of these criminal charges were not brought for the purpose of bringing the defendant to justice.

649.     Finally, Sean was acquitted of all charges for the allegations of Gutierrez on August 15, 2022.

650.     Sean's arrest and prosecution was the direct result of COP's, Maricopa's, the Prosecutors', Gutierrez', and Walker's actions and inactions.

651.     Additionally, the acts of Defendants and their employees and agents, as set forth above, demonstrate gross and wanton negligence in that each of them knew or had

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

reason to know that their acts individually and collectively created an unreasonable risk of Constitutional violations to Sean's rights, and a high probability that substantial harm would result.

652.     In causing the utter devastation of Sean Pena's life through the malicious prosecution, Defendants and their employees and agents acted with an evil mind and a malignant heart warranting an award of punitive damages.

## COUNT XX
## MALICIOUS PROSECUTION IN VIOLATION OF THE FOURTH, FIFTH, AND FOURTEENTH AMENDMENTS AND 42 U.S.C. § 1983 – GUTIERREZ – *Monell* – CUSTOM AND PRACTICE
## (COP, SULLIVAN, WILLIAMS)

653.     Plaintiff incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

654.     As previously explained, U.S.C. § 1983 provides individuals with a cause of action to sue for violations of their constitutional rights.

655.     Defendants COP's, Sullivan's, and Williams' acts or failure to act deprived Sean of his constitutional rights.

656.     COP, the Phoenix Police Department, Defendant Sullivan, and Defendant Williams instituted a policy to ignore evidence involving sexual abuse allegations because of the ME TOO movement and for years acted pursuant to their customs and practices, which is an expressly adopted official policy or custom within the Phoenix Police Department.

657.     COP, Sullivan, and Williams were aware of the Phoenix Police Department's history of allowing the invention and fabrication of criminal charges.

658.     The customs and practices of COP, the Phoenix Police Department, Williams and Sullivan show that the invention of criminal charges is not enforced through written policy but established and ratified by custom and practice.

659. Despite the Phoenix Police Department's and COP's ministrations, these techniques and practices to obtain convictions via falsehoods are upon information and belief the norm.

660. If true justice was truly a priority, Sean would still have his job today.

661. The policies and procedures in place have failed and established a police force that has consistently acted with blatant disregard to the public's and Sean's constitutional rights and extreme indifference to the value of his life and livelihood.

662. It is unquestionable that there is a systemic failure by COP, the Phoenix Police Department, Williams and Sullivan that have allowed, supported, and established the commonplace use of scapegoats and invented criminal charges violative of the rights of the citizens of Phoenix, Arizona.

663. Therefore, the established customs and practices led directly to the firing of Sean and the devastation of his life.

664. COP, Williams, and Sullivan are liable for Sean's damages due to its established customs, patterns, and practices.

## JURY TRIAL DEMAND

665. Plaintiffs hereby demand a jury trial in this matter as to all claims and against all Defendants.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs requests that the Court enter judgment against the Defendants and in favor of the Plaintiffs, as follows:

a) For compensatory, general and special damages against each and every Defendant, jointly and severally, in an amount to be proven at trial;

b) For all other non-pecuniary damages as to be proven at trial;

c) For punitive and exemplary damages against Defendants in an amount appropriate to punish the wrongful conduct alleged herein and to deter such conduct in the future;

d) For pre-and post judgment interest to the extent provided by law;

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

e)   For Plaintiffs' incurred costs, including all incurred attorneys' fees and court costs, pursuant to 42 U.S.C. §1988 and as otherwise authorized by any other statute or law; and

f)   For such other relief as this Court may deem proper.

**RESPECTFULLY SUBMITTED** this 8th day of August 2023.

**MILLS + WOODS LAW, PLLC**

By_____ */s/ Sean A. Woods*_____
        Sean A. Woods
        Robert T. Mills
        5055 North 12th Street, Suite 101
        Phoenix, Arizona 85014
        *Attorneys for Plaintiff*

**ORIGINAL** filed this 8th day of August 2023
via AZTurboCourt with the Clerk of the
Maricopa County Superior Court

        */s/ Ben Dangerfield*_____

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

77

# EXHIBIT 2

Clerk of the Superior Court
*** Electronically Filed ***
M. De La Cruz, Deputy
9/7/2023 3:43:06 PM
Filing ID 16560873

Sean A. Woods (Arizona Bar #028930)
Robert T. Mills (Arizona Bar #018853)
**MILLS + WOODS LAW, PLLC**
5055 North 12th Street, Suite 101
Phoenix, Arizona 85014
Telephone 480.999.4556
docket@millsandwoods.com
swoods@millsandwoods.com
*Attorneys for Plaintiff*

**IN THE MARICOPA COUNTY SUPERIOR COURT**

| | |
|---|---|
| SEAN PENA, an individual;<br><br>               Plaintiff,<br><br>  vs.<br><br>CITY OF PHOENIX, a governmental entity; COUNTY OF MARICOPA, a governmental entity; MICHAEL SULLIVAN, Chief of the Phoenix Police Department; JERI L. WILLIAMS, former Chief of the Phoenix Police Department; DEPUTY MARICOPA COUNTY ATTORNEY JEFFREY ROSEBERRY and JANE DOE ROSEBERRY; MARICOPA COUNTY DEPUTY ATTORNEY CATHERINE FU and JOHN DOE FU; MARICOPA COUNTY DEPUTY ATTORNEY SANDRA ANDERSON and JOHN DOE ANDERSON; MARICOPA COUNTY ATTORNEY SAMANTHA CAPLINGER and JOHN DOE CAPLINGER; MARICOPA COUNTY ATTORNEY MICHAEL BAKER and JANE DOE BAKER; MICHAEL WALKER and JANE DOE WALKER; CYNTHIA RAMIREZ; KRYSTOFFER LEE; LISA GUTIERREZ; JARRETT MAUPIN and JANE DOE MAUPIN; and IESHA STANCIEL and JOHN DOE STANCIEL,<br>               Defendants. | **CASE NO:** CV2023-012031<br><br>**FIRST AMENDED COMPLAINT**<br><br><br>(JURY TRIAL DEMANDED) |

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

CITY CLERK DEPT.
2023 SEP 28 PM 2: 29

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

Plaintiff Sean Pena ("Sean"), by and through his attorneys, Mills + Woods Law PLLC, for his Complaint against Defendants City OF PHOENIX, a governmental entity; COUNTY OF MARICOPA, a governmental entity; MICHAEL SULLIVAN, Chief of the Phoenix Police Department; JERI L. WILLIAMS, former Chief of the Phoenix Police Department; DEPUTY MARICOPA COUNTY ATTORNEY JEFFREY ROSEBERRY and JANE DOE ROSEBERRY; DEPUTY MARICOPA COUNTY ATTORNEY CATHERINE FU and JOHN DOE FU; DEPUTY MARICOPA COUNTY ATTORNEY SANDRA ANDERSON and JOHN DOE ANDERSON; DEPUTY MARICOPA COUNTY ATTORNEY SAMANTHA CAPLINGER and JOHN DOE CAPLINGER; MICHAEL WALKER and JANE DOE WALKER;   CYNTHIA RAMIREZ; KRYSTOFFER LEE; LISA GUTIERREZ; JARRETT MAUPIN and JANE DOE MAUPIN; and, IESHA STANCIEL and JOHN DOE STANCIEL (collectively "Defendants") alleges and states as follows:

## **INTRODUCTION**

1.     Plaintiff Sean Pena ("Sean") was a decorated Phoenix Police Officer dedicated to fighting the fentanyl epidemic in Phoenix Streets.

2.     Sean was falsely accused of three sexual assaults while on-duty as a Phoenix Police Officer.

3.     Sean's accusers were Defendants Cynthia Ramirez ("Ramirez"), Krystoffer Lee ("Lee") and Lisa Gutierrez ("Gutierrez") (collectively the "Accusers").

4.     Ramirez', Lee's and Gutierrez' accusations against Sean were demonstrably false, as would have been revealed by even a cursory investigation by the Phoenix Police Department or the Maricopa County Attorney's Office.

5. The Accusers were malicious liars who were each highly motivated to make false accusations against Sean. At least two of them profited mightily, receiving hundreds of thousands of dollars each based on their lies.

6. Despite the Accusers' lack of credibility and the complete lack of any physical evidence supporting the accusations, Defendants pushed the investigation hastily and recklessly, and terminated Sean's employment without just cause.

7. Defendants knew that Sean had submitted to, and passed, a polygraph examination during which he denied ever having sexual contact with anyone while on duty as a Phoenix Police officer.

8. Defendants nonetheless initiated and continued a criminal prosecution of Sean, charging him with multiple felonies based on the accusations of Ramirez, Lee and Gutierrez.

9. Not surprisingly, Sean was found not guilty of all charges

10. Defendants, and each of them, knowingly participated in a conspiracy to have Sean falsely imprisoned, maliciously prosecuted, defamed, wrongfully fired from the job he loved, and left with his career in law enforcement ruined. Defendants conspired to, and did, inflict severe emotional distress on Sean and violated his constitutional rights.

## **THE PARTIES**

11. Plaintiff Sean Pena ("Sean") is an adult individual who resides in Maricopa County, Arizona.

12. Sean is a former police officer who was employed by the City of Phoenix Police Department.

13. Sean was a decorated Officer who was assigned, by his choosing, to the toughest beat in Phoenix – the South Mountain Precinct.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

14.     As an Officer of the Phoenix Police Department, Sean worked tirelessly to get fentanyl pills off the street.

15.     In his work, Sean developed relationships with Street Sources.

16.     Sean was highly successful in tracing the origins of fentanyl pills and developing an understanding of criminal distribution structures.

17.     Sean's efforts to rid the streets of fentanyl gained him enemies among the dealers, and users, in the South Mountain Precinct. These individuals were anxious to get him out of the way.

18.     Defendant County of Maricopa ("Maricopa") is a governmental entity that acts by and through its officials, employees and agents, including without limitation the Maricopa County Attorneys' Office, and each of the Defendants Sandra Anderson, Samantha Caplinger, Michael Baker, Michael Roseberry, and Catherine Fu.

19.     Defendant City of Phoenix ("COP") is a governmental entity that acts by and through its officials, employees and agents, including without limitation the Phoenix Police Department, and each of the Defendants Michael Sullivan, Jeri L. Williams, Michael Walker, and Allison Steinberger.

20.     Defendant Michael Sullivan ("Sullivan") is Chief of the Phoenix Police Department and is sued in his official and individual capacity. He is tasked with oversight of the Phoenix Police Department and is responsible for all policies and procedures promulgated by the Phoenix Police Department. He is an agent of COP and the Phoenix Police Department, operating in his official and individual capacity in Maricopa County, Arizona.

21.     Defendant Jeri L. Williams ("Williams") was Chief of the Phoenix Police Department from 2016 until 2022. She is sued in her official and individual capacity. She was tasked with oversight of the Phoenix Police Department and was responsible for all

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

policies and procedures promulgated by the Phoenix Police Department. She is an agent of COP and the Phoenix Police Department, operating in her official and individual capacity in Maricopa County, Arizona.

22.     Defendant Jeffrey Roseberry ("Roseberry") is a Deputy Maricopa County Attorney employed by, and serving as an agent of, Maricopa County, Arizona, and the Maricopa County Attorney's office. At all relevant times he was operating in his official and individual capacity in Maricopa County, Arizona.

23.     Defendant Catherine Fu ("Fu") is a Deputy Maricopa County Attorney employed by, and serving as an agent of, Maricopa County, Arizona, and the Maricopa County Attorney's office. At all relevant times she was operating in her official and individual capacity in Maricopa County, Arizona.

24.     Roseberry and Fu conducted the criminal trials and are collectively referred to as the "Trial Prosecutors".

25.     Defendant Sandra Anderson ("Anderson") is a Deputy Maricopa County Attorney employed by, and serving as an agent of, Maricopa County, Arizona, and the Maricopa County Attorney's office. At all relevant times she was operating in her official and individual capacity in Maricopa County, Arizona.

26.     Defendant Samantha Caplinger ("Caplinger") is a Deputy Maricopa County Attorney employed by, and serving as an agent of, Maricopa County, Arizona, and the Maricopa County Attorney's office. At all relevant times she was operating in her official and individual capacity in Maricopa County, Arizona.

27.     Michael Baker ("Baker") is a Maricopa County Attorney employed by, and serving as an agent of, Maricopa County, Arizona, and the Maricopa County Attorney's office. At all relevant times he was operating in his official and individual capacity in Maricopa County, Arizona.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

28.     Caplinger, Anderson, and Baker were the prosecutors who presented to the grand juries and are collectively referred to herein as the "Grand Jury Prosecutors".

29.     The Trial Prosecutors and Grand Jury Prosecutors are collectively referred to herein as the "Prosecutors".

30.     Defendant Michael Walker ("Walker") is a Police Detective employed by, and serving as an agent of, COP and the Phoenix Police Department. At all relevant times he was operating in his official and individual capacity in Maricopa County, Arizona.

31.     Defendant Cynthia Ramirez is an individual residing in Maricopa County. All of her acts alleged herein occurred in Maricopa County, Arizona.

32.     Defendant Krystoffer Lee is an individual residing in Maricopa County. All of her acts alleged herein occurred in Maricopa County, Arizona.

33.     Defendant Lisa Gutierrez is an individual residing in Maricopa County. All of her acts alleged herein occurred in Maricopa County, Arizona.

34.     Defendant Jarrett Maupin ("Maupin") is an individual residing in Maricopa County. All of his acts alleged herein occurred in Maricopa County, Arizona.

35.     Defendant Iesha Stanciel ("Stanciel") is an individual residing in Maricopa County. All of her acts alleged herein occurred in Maricopa County, Arizona.

36.     Defendants Roseberry, Fu, Anderson, Caplinger, Baker, Walker,  Maupin and Stanciel were acting for the benefit of their respective marital communities, if any, and therefore their respective marital communities are liable for their actions as set forth herein. Accordingly, Defendants Jane Doe Roseberry, John Doe Fu, John Doe Anderson, John Doe Caplinger, Jane Doe Baker, Jane Doe Walker, Jane Doe Maupin, and John Doe Stanciel are named as Defendants herein.

37.     Defendant COP is vicariously liable under the principle of *respondeat superior* for the actions and inactions of the employees of the Phoenix Police Department

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

6

and any private contractors including those employees or contractors named as defendants in this action, as to any claims that are asserted by Plaintiff as a result of violations of the Arizona Constitution and Arizona common law because, at all relevant times, those Defendants were acting within the course and scope of their employment or contract with COP or entities privately contracted with COP.

38.    Defendant Maricopa is vicariously liable under the principle of *respondeat superior* for the actions and inactions of the employees of the Maricopa County Attorney's Office and any private contractors including those employees or contractors named as defendants in this action, as to any claims that are asserted by Plaintiff as a result of violations of the Arizona Constitution and Arizona common law because, at all relevant times, those Defendants were acting within the course and scope of their employment or contract with Maricopa or entities privately contracted with Maricopa.

39.    For purposes of Plaintiffs' claims arising under Federal law, including without limitation the United States Constitution and 42 U.S.C. §1983 *et seq*., and as may be relevant to Plaintiff's state law claims, at all relevant times described herein, Defendants were acting under color of state law.

## JURISDICTION AND VENUE

40.    Pursuant to 42 U.S.C. §1983 *et seq.*, Plaintiffs bring this action for violations of the United States Constitution, including without limitation the Fourth, Eighth, and Fourteenth Amendments, and Arizona common and statutory laws.

41.    The amount in controversy exceeds the minimal jurisdictional limits of this Court.

42.    To the extent applicable, and without conceding that said statute applies, Plaintiffs have served their Notice of Claim upon Defendants in compliance with A.R.S.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

§12-821.01, *et seq.* More than sixty (60) days have expired since Plaintiffs served their Notice of Claim and Defendants have not responded in any manner to said Notice of Claim.

43.      Pursuant to Article 6, Section 14 of the Arizona Constitution, this court has original subject matter jurisdiction in this Complaint because the claims relate to causes of action, the underlying acts and/or omissions for which, at all times relevant, have caused the events alleged herein to occur with primary effect in Maricopa County, Arizona.

44.      Venue is proper in that the specific acts giving rise to the causes of action alleged herein occurred with primary effect in Maricopa County, Arizona.

## FACTUAL ALLEGATIONS

### CYNTHIA RAMIREZ' FALSE ACCUSATIONS

45.      On or about August 26, 2018, Sean requested that Officer Antonio Felix follow-in on a suspicious vehicle parked in Sherman Park in Phoenix.

46.      When Sean and Officer Felix arrived they found  Ramirez and German Martinez, who had been having sex in the vehicle.

47.      Ramirez lied to the Officers and gave them a false name.

48.      Ramirez had a history of providing false names to police officers on numerous occasions.

49.      The Officers also found Marijuana in the vehicle.

50.      Ramirez later admitted under oath that she was aware at that time that a felony warrant from Yavapai County had been issued for her arrest.

51.      She testified that she was so fearful of arrest that she contacted friends to find out whether there were any police around Sherman Park before she and German went there.

52.      After Martinez gave the Officers Ramirez' correct name, the Officers were able to determine that there was an outstanding felony warrant for Ramirez in Yavapai County. The Officers then arrested Ramirez and took her into custody.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

53.     Officer Felix advised Sean to put gloves on because Ramirez had an apparent infected wound on her body.

54.     Ramirez told Police that she had seen Sean before. She told Detective Walker that she had seen Sean "four days prior when he arrested her friend Christina near 35th Avenue and Washington."

55.     Sean transported Ramirez in his patrol vehicle to be processed at the South Mountain Precinct, and after processing, to the Fourth Avenue Jail in Phoenix.

56.     While in transit, Ramirez was crying and pleaded with Sean to let her go. She said "I can't go to jail." She insisted that she could not get arrested because her baby and her stepmother were waiting for her. She said her stepmother had heart conditions and Ramirez was her only caretaker.

57.     Desperate to avoid jail, Ramirez offered to give Sean oral sex if he would let her go free.

58.     Sean ignored Ramirez' offer.

59.     While in transit to the Fourth Avenue Jail, they had to stop briefly at a railroad crossing on Third Avenue due to the presence of a train. They were stopped at the crossing for only one minute and 39 seconds.

60.     While stopped at the crossing Sean had a telephone conversation with Officer Felix. The conversation lasted approximately 30 seconds.

61.     Ramirez testified that she was furious that Sean had a "smirk" on his face when he dropped her off at the jail.

62.     Ramirez admitted that prior to her arrest, she and Martinez had been doing "speedballs." She described a "speedball" as a mixture of opiates and Methamphetamine.

63.     She admitted that she had used Fentanyl that night.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

9

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

64.    She agreed at trial that she had taken a "pretty heavy combo of drugs" prior to her arrest.

65.    She admitted that she was under the influence of drugs during the time that she was transported to the Fourth Avenue Jail.

66.    Ramirez was desperate to obtain release from jail.

67.    She testified that she tried to get the attention of personnel at the 4th Avenue jail, but they all told her to "shut up" because she was still intoxicated or "coming down" and was hallucinating.

68.    It was obvious to the corrections officers and staff at the Fourth Avenue Jail that Ramirez was intoxicated.

69.    Ramirez told medical staff at the jail that Sean had sexually assaulted her while in transit to the jail.

70.    Ramirez also told a nurse at the jail that Sean had not touched her, except for her hair.

71.    A medical staff member reported Ramirez' accusation to the Phoenix Police Department, which immediately began an investigation.

72.    Ramirez told Detective Walker that Sean's patrol vehicle had come to a stop at a railroad crossing. She alleged that while stopped there, Sean had his telephone conversation. She claimed that Sean then told her to show him her breasts, and claims she did. She claimed that Sean then exited the driver's seat of the vehicle, walked back to the rear driver's side, opened the rear driver's side door, and put his erect penis in her mouth for approximately three minutes – all while still stopped in the middle of a public street in Phoenix.

73.    This is clearly a lie. At the second criminal trial, Maricopa County Superior Court Case # CR2020-128297, on August 8, 2022, the prosecution stipulated to the fact that Sean's car was stopped for exactly one minute and thirty-nine seconds.

74.    Not only was the street public, but there was traffic on it. In fact, surveillance video from a nearby business shows a white car drive past Sean's patrol vehicle at the exact moment he was allegedly standing at the backseat door assaulting Ramirez – a fact that was never presented to a grand jury

75.    Ramirez repeatedly insisted to Detective Walker that after the alleged assault, Sean drove over the railroad tracks and proceeded to the Fourth Avenue jail. When Walker told her that her story didn't add up, she changed her story and said that she laid down in the back after the alleged assault and didn't actually see the route they took to the jail.

76.    When asked at trial whether she thought the accusations against Sean would keep her from getting sentenced on the outstanding warrant, Ramirez responded "Something like that."

77.    At trial, Ramirez testified that Sean had his duty belt on when he "leaned in" to the back seat of his patrol vehicle, put one hand on her head and put his penis in her mouth. Given the configuration of the patrol vehicle, it would have been virtually impossible for Sean to do what Ramirez described.

78.    If the alleged assault had actually occurred, Ramirez would have had clear and ready access to Sean's firearm, Taser, and pepper spray at the time the assault was occurring.

79.    Ramirez testified at trial under oath that Sean had actually ejaculated in her mouth.

80.    Ramirez acknowledged that Sean had been on the phone directly before the alleged assault.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

81.     Ramirez told investigators that while approaching the railroad crossing, Sean's patrol vehicle was following a Maricopa County Sheriff's van. She said the van pulled into a private drive, turned around and parked in a lot within view of Sean's patrol vehicle while stopped at the crossing.

82.     The investigators determined that there were no witnesses to the sexual assault alleged by Ramirez.

83.     She claimed that at the time of the alleged assault, Sean's penis was erect and she "did not believe he was circumcised."

84.     She later changed her story again and admitted that she does not know what circumcision means.

85.     She said she did not spit or wipe her face after the alleged assault.

86.     On August 26, 2018 Walker – took circumoral swabs of Ramirez' mouth and buccal swabs of her cheeks.

87.     Walker took it upon himself to do so because a "Forensic Nurse" was unavailable to perform the collection.

88.     DNA lab results from Walker's swabs provided insufficient genetic information and no conclusions could be drawn.

89.     On August 27, 2018, a forensic nurse  took swabs of Ramirez' mouth.

90.     When interviewed, Ramirez told Walkerthat the test results would show Martinez' DNA and Sean's DNA.

91.     The swabs were taken within the recommended time frame to detect biological evidence.

92.     The lab results from the forensic nurse's swabs showed that Martinez' DNA could *not* be excluded from the results, but that Sean's DNA was excluded.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

93.     Automatic Vehicle Location records of Sean's patrol vehicle showed that the vehicle was stopped at the railroad crossing for only one and a half minutes.

94.     The investigators also obtained video surveillance footage from nearby businesses that confirmed Sean's patrol vehicle was stopped at the railroad crossing for only a minute and a half.

95.     Detective Walker sent Sean a "confrontation" text. Walker texted Sean and pretended to be Ramirez in order to obtain admissions from Sean.

96.     The "confrontation" failed. Sean did not make any admissions during the text conversation.

97.     Sean eventually told the texter (who he believed to be Ramirez) to stop contacting him. Sean then ***immediately*** reported the text exchange to his supervisor and chain of command.

98.     COP's Police Department closed its investigation of Sean on or about September 1, 2018, finding no corroboration of Ramirez's claims.

99.     The Maricopa County Attorney did not charge or seek an indictment of Sean based on the accusations of Ramirez at that time.

100.     Furthermore, COP's internal Administrative Inquiry (the "Ramirez Inquiry") documentation dated August 28, 2018 specifically stated that "There is no evidence to support the allegation of officer misconduct by Officer Pena."

101.     As Walker told Ramirez at her September 5, 2018 interview:

"The DNA, the video, the surveillance, the time frames –
MS. RAMIREZ: Uh-huh.

DET. WALKER: -- the other officers involved, all these things, do not show, do not corroborate your statements at all. At all.

***

13

DET. WALKER: But remember how I told you we had two profiles come up –

MS. RAMIREZ: Uh-huh.

DET. WALKER: -- with DNA.

MS. RAMIREZ: Yeah.

DET. WALKER; Okay? One of them is definitely Herman.

MS. RAMIREZ: Uh-huh.

DET. WALKER: And the other one is definitely not our officer. We got the results back this week. It is definitely not him."

102.     Although the investigation of Ramirez' accusations was closed, the investigation and Ramirez' claims were no secret. They were well known to many employees of COP and its Police Department.

103.     Word of Ramirez' accusations and the investigation of Sean passed to members of the general public as well.

104.     Ramirez had and continues to have a history of making accusations of sexual assault following drug use.

105.     In 2015 Ramirez' ex-boyfriend took her to Banner Hospital Estrella after she had become unresponsive following use of both methamphetamine and heroin with some other men. Ramirez told nursing staff at the hospital that she might have been sexually assaulted by someone while she was passed out at a Phoenix hotel the previous night.

106.     When police arrived to investigate the possible assault, Ramirez indicated that she did not want to talk about it at that time and ignored them.

107.     In 2017 Ramirez was arrested for possession of a stolen vehicle and possession of a burglary tool. At the time of her arrest, she had lied to the arresting Officer by giving him a false name.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

108.     In April 2018, Ramirez was arrested for possession of a dangerous drug (methamphetamine) and for an outstanding felony warrant. While in custody she reported to police that she may have been sexually assaulted by a transient man who she met through Facebook. She told the Officer that at her first physical meeting with the man she allowed him to inject her with a mixture of heroin and methamphetamine. She woke up the next morning feeling pain in her vagina. She said that these encounters continued over the course of a "few weeks" and that she did not remember whether she had ever given the man consent or the last time they had sex. She told the Officers that she did not want prosecution.

109.     COP and the Prosecutors knew or consciously and recklessly disregarded all of these facts regarding Ramirez.

110.     Later, in July 2021 COP Police Officers responding to an emergency call found Ramirez unconscious and laying on the ground from a drug overdose. She was transported to a hospital. She later reported to hospital staff that she thought she had been sexually assaulted because she was naked. In fact, the nursing staff had cut her clothes off to facilitate emergency examination and treatment.

111.     In November 2021, Ramirez was arrested for possession of methamphetamine and for an outstanding felony warrant from Maricopa.

112.     Despite the fact that the investigation of Ramirez' accusations had been closed three years earlier for lack of evidence, the Prosecutors in 2021 proceeded to charge Sean with sexual assault of Ramirez.

113.     At the time of Sean's trial, Ramirez was incarcerated for felony possession of a stolen vehicle and she had to be escorted to court by law enforcement personnel.

## KRYSTOFER LEE'S FALSE ACCUSATIONS

114.     Lee has a history of illegal drug use and mental illness.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

115.     On or about June 1, 2019, the Arizona Department of Child Safety removed Lee's children from her custody.

116.     Later that same day, Sean, Officer Felix and one other Officer responded to a call for a wellness check on a woman who was wandering in the street and appeared to be extremely intoxicated. They located Lee who fit the description provided by the caller.

117.     Lee was wandering in the street with no shoes on.

118.     Lee's speech was slurred.

119.     Officer Felix testified that when he and Sean found Lee she was wandering around, knocking on doors, yelling and screaming.

120.     In Lee's purse the Officers discovered foil used for smoking fentanyl.  This was drug paraphernalia.

121.     Sean also confirmed that Lee had an outstanding misdemeanor warrant from COP.

122.     Sean told Lee he would let her go if she showed him where she got the fentanyl. She agreed.

123.     Lee told Sean that the dealer's name was "Angel."  Angel was a known violent drug dealer in Sean's beat. Lee told Sean that Angel had started selling drugs out of his cousin's house because he knew Sean was on to him.

124.      Lee was handcuffed with her hands behind her back and with her seatbelt fastened in the back seat of Sean's vehicle as they drove to Angel's location and Lee pointed out the house from which Angel was selling drugs.

125.     Lee then directed Sean to drop her off at 11th Avenue and West Lynne Lane. Sean drove her to that location. Sean then uncuffed Lee and let her out of the back seat. She walked away.

126.     When Sean released Lee, he was parked on a public street.

127.     In October 2019, Lee attended the Arizona State Fair with her friend Iesha Stanciel and Iesha's two children. At the Fair, they met with the Reverend Jarrett Maupin, a well-known activist in Phoenix.

128.     The meeting with Maupin had been planned in advance and was not mere coincidence.

129.     Maupin previously plead guilty to making false statements to the FBI about then Phoenix Mayor Phil Gordon. In the plea agreement dated April 9, 2009, Maupin admitted that he falsely informed the FBI that he had seen evidence of Mayor Gordan engaging in criminal activity, and that he did so "in an effort to smear Mayor Gordon politically, even though I knew at all times there was no truth to the allegations I made to the FBI."

130.     On information and belief, Maupin and Lee discussed the fact that Lee had been taken into custody by Sean. They discussed bringing a lawsuit as a means of getting money from COP.

131.     On information and belief, Maupin introduced Lee to a lawyer with whom Maupin was familiar.

132.     Maupin accompanied Lee to her meetings with the civil lawyer.

133.     On information and belief, Maupin and/or the lawyer advised Lee that in order to bolster the chance of a successful lawsuit, Lee should first make a police report of an alleged assault.

134.     On November 20, 2019, nearly six months after her encounter with Sean, Lee told a Phoenix Police Officer at a Circle K that Sean had touched her breasts and had her masturbate his penis during that encounter.

135.     If Lee's account of the encounter was correct, she would have had easy access to Sean's firearm, Taser and pepper spray at the time it occurred.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

17

136.     Lee admitted that she was drunk at the time she reported the incident.

137.     The Phoenix Police Department began an investigation of Lee's accusations.

138.     The other Officers who were with Sean when Lee was detained did not recall the encounter and did not recall anything improper on the part of Sean.

139.     After Lee's report, the Phoenix Police Department conducted a canvass of females who had been transported by Sean in the course of his duties from March through November 2019. All persons who they were able to interview gave only positive feedback.

140.     The police investigation revealed no physical evidence corroborating Lee's accusation against Sean. No DNA or semen was found in Sean's patrol vehicle even though Lee claimed Sean had ejaculated while seated in the vehicle.

141.     In fact, Detective Walker emphasized the fact that Sean's vehicle was impounded and evidence examination had been performed. Sean told Walker that there would be no DNA evidence in the vehicle:

DET. WALKER: Okay. It was a first shift car that you were driving that day, that car we've taken and we've put into the crime lab, and we've done some evidence examination on the seat, the steering wheel, and such. The crime lab has the ability to use what's called alternate light sourcing, I'm not sure if you're familiar with it, but –

OFC. PENA: I get it. I know what it is.

DET. WALKER: -- it's essentially black lighting, and they can search for biological- evidence with regards to semen. What do you think about -- is your semen in that car?

OFC. PENA: No.

142.     Lee told the Police detectives investigating her accusation "that she did not wish to press charges because she had 'played a part' in the incident. However, Ms. Lee stated that she would participate in prosecution if other victims were located."

Mills + Woods Law, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

143.    At her initial interview by COP investigators on November 20, 2019, she told investigators that she was standing outside the driver's side door of Sean's patrol vehicle and reached through the open window to give him a handjob.

144.    Lee told investigators that she did not want to press charges against Sean.

145.    At her second interview on December 3, 2019, she told investigators that at the time of the alleged assault she was seated in the front driver's seat of Sean's patrol vehicle.

146.    She later admitted at trial that this would have been physically impossible.

147.    Incredibly, none of the Police investigators – including Walker – challenged or pressed Lee on this story or on the fact that it differed dramatically from the story she told just two weeks earlier at her November 20, 2019 interview.

148.    Instead, Walker pressed her at the second interview on whether she would be willing to assist in a prosecution of Sean if there were "multiple victims."

149.    Lee agreed that she would come forward if there were multiple victims.

150.    After the interview, Walker dredged up the old accusations of Ramirez, even though that investigation had long since been closed for lack of evidence, in order to convince Lee that there were in fact "multiple victims."

151.    Walker's actions demonstrate a shocking level of malice and a sadistic manipulation of the alleged "victims."

152.    Upon information and belief, at that time, Lee, Maupin and the civil lawyer were already planning a civil lawsuit for money damages against COP.

153.    On the day she made her report, Lee told police investigators that after Sean dropped her off at the location she requested, she got out of the back seat of the patrol vehicle, walked around to the front driver's side and made small talk with Sean. The driver's door was closed and Sean was seated in the driver's seat. Lee said she reached into

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

the patrol vehicle through the open window and masturbated Sean to ejaculation. Lee told the police investigators that she then "walked home and she told her friend Iesha Stanciel over the phone about the incident."

154.    On November 21, 2019, Stanciel responded to a police investigator that Lee had called her and related that a police officer had taken out his penis and asked her for oral sex, which she refused. According to the Police Report: "Sgt. Gonzalez asked Stanciel, regarding her earlier statement that the officer asked Lee for oral sex while he was seated in the front seat, if she was aware of Lee actually having any sexual contact with the officer. Stanciel said she doesn't know if anything occurred and wasn't sure Lee would be comfortable enough to share those specifics."

155.    Stanciel told the investigator that "the rest of the details Lee told her that night were blurry to her and she couldn't remember everything said."

156.    Lee told investigators that after leaving Sean's patrol vehicle that evening she went to Stanciel's house and told Stanciel what had occurred between Lee and Sean.

157.    Lee did not go to Stanciel's house on the night of the alleged assault.

158.    Stanciel told investigators that "although she couldn't remember all the details of the conversation with Ms. Lee, she did recall that Ms. Lee told her that the officer transporting her in his vehicle, pulled down his pants and requested oral sex."

159.    Stanciel also told investigators that Lee adamantly denied that she had oral sex or any other type of sex with Sean, stating:

> … I don't want to put words in her mouth, you know, but what I can remember is that the officer pulled his pants down and was telling her to, you know, give him oral sex and stuff. And I – I was asking her, did she do it, you know, what happened. She was, like, I was so scared, but no, I didn't.

160.    Stanciel further stated:

> She said I really need to talk to you, you know, you're the only person I have, and you know, some shit happened. Tell me why I get pulled over by the

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

police and these mother fuckers, like, ***Try*** to fucking rape me. (emphasis added).

161.     On or about November 25, 2020. Lee filed a civil Complaint (the "Lee Complaint") against Sean and COP of Phoenix seeking money damages based on her accusations of misconduct on the part of Sean.

162.     In the Complaint, Lee alleged that Sean told Lee to get in the front seat of his patrol vehicle where he "forced [Lee's] head toward his penis and demanded oral sex. [Lee], in fear for her life, ***performed oral sex*** on Defendant Pena." (emphasis added).

163.     On December 1, 2020, Lee, accompanied by Maupin and Stanciel, held a press conference in front of Phoenix Police Headquarters.

164.     At the press conference, Maupin said that Pena had told Lee that "He liked nasty black street bitches."

165.     The reporter asked Maupin if that was really what Pena had said.

166.     Maupin responded "Yes."

167.     This accusation was false. Sean did not tell Lee that "He liked nasty black street bitches."

168.     Maupin then said that Pena was as dangerous as Mark Goudeau – a convicted serial rapist and murderer.

169.     Maupin stated that Lee had first come to him about a year ago.

170.     Maupin stated that Pena forced Lee to engage in sexual acts and endure horrific verbal abuse.

171.     On December 7, 2020, the Phoenix New Times ("PNT") published an article about Lee's accusations against Sean.

172.     According to the article, Lee related to PNT that her encounter with Pena took place while she "was trying to unwind after getting through a stressful day at her job at a local Popeyes and took a quick detour to a convenience store to buy some cigarettes."

173.    In fact, the Arizona Department of Child Safety had taken Lee's children from her that same day.

174.    The Phoenix New Times article continued: "That same night, according to Lee, she would be violent [sic] sexually assaulted by a Phoenix police officer."

175.    The article states that an Officer told her she had a warrant, handcuffed her and put her in the back of "one of the squad cars." The driver, Sean, then "got behind the wheel and asked her to locate the house of a drug dealer. Lee had no idea who Pena was talking about. 'He asked me to find some drug dealer. I can't remember what he said his name was,' she said. 'I don't know who it was.'"

176.    Lee told PNT that she then directed Sean to a "random house close by." No one was home.

177.    Lee then related to PNT that after she led Sean to the "random" house:

"Lee asked if Pena could take her home. He said yes, and they drove off. But Pena didn't take her home. He drove to a nearby vacant lot at 11th Avenue and West Lynne Lane. There, he unhandcuffed Lee, forced her into the passenger seat in the front of the car, and started playing a porn video on his phone. 'He was watching porn. He was pulling his pants down,' Lee said. 'He was putting my head down. He had his hand on his gun. I didn't want to move. I was scared … I was crying.' Pena groped Lee's breasts and tried to put his hands down her pants, she said. 'He was telling me to suck his dick, telling me that I was beautiful, that he wanted it like in the pornos, that he wanted it nasty "like how Black girls do it in porn," Lee said. 'Just some weird stuff you don't expect a cop to be saying.' He started masturbating and forced Lee to give him a hand job. Afterwards, he told her to come back to the same location the next night and that he would 'find and kill' her if she didn't. She bolted from the scene."

178.    Lee told PNT that she then ran to Stanciel's house in a "hysterical" state and told Stanciel what happened.

179.    Stanciel told PNT that "'She was just banging on my door,'… 'She was like "oh my gosh, oh my gosh." She was hyperventilating. She was like "No one is going to believe me'."

Mills + Woods Law, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

22

180.     Lee told PNT that she took her children to live with her father in Buckeye because she was "too scared to be in Phoenix after the assault."

181.     In fact, the government had already removed Lee's children from her custody.

182.     Despite having knowledge of Lee's and Stanciel's extreme deviations from each previous story, the Prosecutors, COP, Maricopa, Walker, and Chief Williams still moved forward with sham charges against Sean.

183.     Maupin was also featured prominently in the PNT article, stating to PNC that Lee, Ramirez and a "third victim" (Gutierrez) had been "raped" by Sean.

184.     In or about June, 2021, Lee settled her lawsuit against COP.

185.     On information and belief, COP paid Lee $425,000.

186.     Lee then paid a portion of the settlement proceeds to Maupin.

187.     During a break in testimony at trial, Maupin approached Sean's Defense Counsel and told them outright that he did not believe that Lee was sexually assaulted by Sean despite his ridiculous public outcry and being paid a portion of Lee's settlement from her Civil Lawsuit.

188.     Now, after the filing of this lawsuit, Maupin told the Arizona Republic that it was "absolutely false" that he had taken a portion of Lee's settlement.

189.     Lee has a history of numerous prior and subsequent incidents of shoplifting.

190.     Upon information and belief, Lee has subsequently been arrested for Burglary tools possession and Drug Paraphernalia-possess/use in Maricopa Superior Court Case # CR2023-102071.

191.     That case was filed on January 18, 2023.

192.     Lee pled to reduced charges of Drug Paraphernalia/Use in Maricopa Superior Court Case # CR2023-110831.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

193.    In May 2022, Lee testified at the trial of criminal charges against Sean based upon her accusations.

194.    At the First Trial, Lee testified that the alleged sexual assault consisted of Sean touching her breasts and Lee masturbating Sean through the driver's window of his patrol vehicle.

195.    On May 19, 2022, a Maricopa jury found Sean **Not Guilty** of the sexual assault alleged by Lee.

196.    Despite Sean's acquittal and Lee's wildly changing accounts of an alleged assault, the Trial Prosecutors decided to call Lee to testify in the Second Trial of charges based on accusations made by Ramirez and Gutierrez.

197.    At the Second Trial, in August 2022, Lee's lies about Sean and her total lack of credibility, all of which was well known to Defendants, were fully exposed for all the world to see. Her story changed dramatically from any previous version.

198.    At Sean's Second Trial on August 1, 2022, Lee testified that she does not recall if Sean had ejaculated.

199.    She further testified that she gave Sean a hand job and was standing between the front door of Sean's Tahoe and the front seat where Sean was seated and that she was somehow pulled into the driver's seat with him.

200.    She further testified that she unzipped Sean's pants for him and could not remember where his utility belt was.

201.    She admitted that "Angel" was a drug dealer from whom she got drugs every week or two.

202.    Incredibly, when confronted about her allegations in the PNT article, Lee stated that the version of events the reporter attributed to her were lies.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

203.    Lee admitted that she did not go to Stanciel's house after the alleged assault, even though Stanciel's house is only two blocks away from the location where she had Sean drop her off.

204.    She testified that she knew who Stanciel was, but that Stanciel was "kinda stand-offish."

205.    She also admitted that she told Stanciel that the alleged sexual encounter with Sean was partially Lee's fault.

206.    The State did not call Stanciel to testify at the Second Trial.

## LISA GUTIERREZ' FALSE ACCUSATIONS

207.    Gutierrez has a history of engaging in falsehoods and fraud. In 2013, the Arizona Attorney General ("the AG") charged Lisa Gutierrez with Illegally Conducting An Enterprise, Attempted Fraudulent Schemes And Artifices, Computer Tampering, and Forgery. *Grand Jury Indictment, CR2013-002470-073.* The facts underlying the charges showed that Ms. Gutierrez "intentionally presented known forged checks and documents to Walmart, Bashas/Food City and VComm with the intent to defraud those companies for money." *Probable Cause Statement, CR2013-002470-073.* Overall, the scheme resulted in a "total known financial loss" of over $133,000.00. *Id.* The charges against Ms. Gutierrez were dismissed after Ms. Gutierrez completed 50 hours of community service pursuant to a deferred prosecution agreement with the AG. *Pena's Consent To Participate In Deferred Prosecution Program And Acknowledgement, CR2013-002470-073.*

### *A Routine Call*

208.    On or about August 5, 2019, Gutierrez called the Phoenix Police Department and reported that one of her fiancé's friends was using drugs and threatening her at her front doorstep. Sean and Officer Felix responded to the call.

209.    Officer Felix arrived at the scene first and was the lead Officer on the call.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

210.     Both Officer Felix and Sean spoke to Gutierrez in front of her house. Neither entered the house at any time.

211.     Officer Felix told Sean to take Gutierrez in his patrol vehicle and have her show him where her fiancé's friend lived.

212.     Sean objected to transporting Gutierrez in his patrol vehicle due to Ramirez' previous, albeit completely false, accusations. Officer Felix directed Sean to do it anyway, and Sean complied.

213.     Gutierrez rode with Sean in his patrol vehicle to show him where the suspect lived.

214.     Gutierrez sat in back prisoner compartment of Sean's patrol vehicle.

215.     Officer Felix followed in his patrol car, and knocked on the suspect's door. No one answered.

216.     Sean drove Gutierrez back to her house and dropped her off there.

217.     Later, while Sean was working on a Report of the incident, he attempted to call Gutierrez to ask whether she wanted to press charges against the suspect when they found him. She did not answer her phone.

218.     He drove over to Gutierrez' house to ask her and to get additional details regarding the suspect.

219.     As he parked his car across the street from the house, he encountered Gutierrez who was walking home from a store. They spoke briefly. He told her they had not caught the suspect yet.

220.     Gutierrez told Sean that her fiancé was selling Fentanyl and was abusing her. Sean triad to follow up, but she told him she could not talk about it at that moment. She said her fiancé, who "hates cops" was in the house. She told Sean to meet her later in an empty lot near the house and she would give him more details.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

### *The Tempe Investigation*

221.    In April 2020, Gutierrez reported to the City of Tempe Police Department that she was assaulted at gunpoint by a drug dealer after she had "found" a red cell phone belonging to one of them. She said the drug dealers drove up next to her and said "Bitch, give me your phone." She said they tried to kidnap her but she managed to fight them off.

222.    The Tempe Police Department began an investigation of Gutierrez' allegations.

223.    Three suspects were arrested and taken into custody.

224.    The three suspects said that Gutierrez had actually stolen the cell phone.

225.    In the course of the Tempe investigation, Gutierrez met with Tempe Detective Ratko Aleksis.

226.    Gutierrez spoke with Detective Aleksis numerous times from April through July 2020, and says she had a "relationship" with him.

227.    Detective Aleksis confirmed that their relationship was such that Gutierrez felt comfortable discussing her personal life with him.

228.    Gutierrez also interacted with numerous other Tempe Police Officers during the course of the Tempe Investigation.

### *Sean's Indictment Goes Public*

229.    On June 19, 2020, COP and the Maricopa Attorney's Office announced that Sean had been indicted for the alleged sexual assaults of Lee and Ramirez.

230.    The indictment and the allegations received widespread coverage in the press and quickly became common knowledge. Word also spread quickly among law enforcement personnel in Phoenix, Tempe and elsewhere.

### *Gutierrez Decides That "She Too" Will Accuse Sean*

231.     On June 25, 2020 KTAR posted an article detailing the criminal charges against Sean.

232.     On July 23, 2020 at 10:30am, KTAR posted another news article with the headline "Phoenix PD fires officer accused of sex crimes against women in his custody."

233.     Later that same day at approximately 7:00 P.M. Gutierrez for the first time told Detective Aleksis that she too had been sexually assaulted by Sean.

234.     Despite her "relationship" and comfort felt with Det. Aleksis, Gutierrez never even mentioned her false allegations to Det. Aleksis until the day the news broke that Sean had been fired – after months of communications with Det. Aleksis.

235.     Detective Aleksis testified at trial that Gutierrez told him Sean had come to her house in response to a domestic violence call.

236.     Gutierrez told Detective Aleksis that Sean was "new" and had been "recently assigned to the precinct." He did not follow up to ask Gutierrez how she knew that.

237.     Gutierrez told Detective Aleksis that Sean threatened to arrest her fiancé on an outstanding warrant unless she performed a sex act on Sean.

238.     Gutierrez hired the same civil lawyer who represented Lee.

239.     On information and belief, Maupin encouraged Gutierrez to make accusations against Sean for monetary gain.

240.     Maupin told the PNT that he had spoken with Gutierrez and that Gutierrez "was known to me through the community."

241.     Gutierrez lied under oath at trial when she testified that she did not even know who Jarrett Maupin was.

### *COP Investigates Gutierrez' Accusations*

242.     Gutierrez was interviewed by Walker.

MILLS+WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

243.     Gutierrez gave Walker an account of the alleged assault that differed substantially from the one she gave Detective Aleksis.

244.     According to Walker's report, Gutierrez told him that later in the evening after Sean dropped her off at her house she walked to a store to buy milk. She left her young child in the care of her fiancé, whom she later described as "very abusive."

245.     She claimed that as she was walking back to her house, she heard Sean call her name from his patrol vehicle, which was parked on the same street as her house.

246.     She said she walked over to Sean's patrol vehicle and talked to Sean. The driver's window was down. He told her he had not yet caught the suspect she had identified.

247.     She said she was holding a gallon of milk in one hand when Sean reached through the window, took her other hand, and placed it on his exposed penis. She said she jerked her hand away, and went home.

248.     She said that Sean called her later on and asked her to meet him in a field near her house. So, she left her child and her fiancé at home and went out in the dark of night to meet Sean at the field.

249.     Gutierrez claimed that Sean asked her for oral sex, but she refused. But when he asked her to masturbate him, she did so while he was still seated in the car. She said he touched her breast. She said Sean ejaculated on her breast and dress. She then left and walked home. Sean said nothing to her as she walked away.

250.     She says that she told her fiancé what had happened.

251.     Despite her testimony that she was wearing a dress covered in semen, she also testified that her fiancé did not believe her and called her a "ho."

252.     She testified that she took off the dress and hung it in the bathroom.

253.     She testified that she moved out of the house two or three days later and did not take the dress with her.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

254.     She did not make any effort to preserve the dress even though it would have contained the only physical evidence of the alleged sexual assault.

255.     Her fiancé did not report the alleged incident to police or take any other action in response to Gutierrez' claims.

256.     Gutierrez did not produce to any investigator any article of clothing she was wearing at the time of the alleged assault even though she claimed Sean had ejaculated on her. Apparently, no investigator tried to locate the clothing.

## SEAN PASSES A LIE DETECTOR TEST

257.     In an interview with Sean following Lee's accusations, Walker asked Sean to take a polygraph test. Walker told Sean:

But obviously, if you didn't do these things, and you've got two of these [accusers], a polygraph to say I've never done this, and you come out passing, it's going to be a big thumbs up for the department, okay? That's going to help you, that's going to help them look at this administratively and say, we don't have any evidence to prove it, we don't have anything else to say this happened, and he's taken a polygraph and passed it, he's showing no deception, all right.

258.     On July 6, 2020, Sean submitted to a polygraph examination administered by an independent professional polygraph examiner.

259.     The polygraph examination was conducted in accordance with American Polygraph Association Standards of Practice.

260.     During the course of the examination Sean was asked the following questions and provided the following answers:

"While on duty as an officer, did you ever touch anyone's bare sex organs?
Answer: No
While on duty as an officer, did you ever have bare sex organ contact with anyone else?
Answer: No
While on duty as an officer, did you ever engage in any sex act with someone else?
Answer: No"

Mills + Woods Law, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

261.    The professional polygraph examiner prepared a written report of the examination in which she concluded that "there were **NO SIGNIFICANT REACTIONS INDICATIVE OF DECEPTION.**"

262.    While the polygraph took place after the accusations of Ramirez and Lee, it also covered the time period in which Gutierrez claimed she had been assaulted.

263.    On August 5, 2020, one week prior to the second Grand Jury convening to consider charges based on the accusations of Ramirez, Lee and Gutierrez, Sean's criminal attorney, Jess Lorona, emailed a letter to Samantha Caplinger, a Deputy County Attorney with the Maricopa Attorneys' Office.

264.    In the letter, Lorona informed Caplinger that Sean had taken and passed a polygraph test.

265.    Lorona attached to the letter a copy of the polygraph examiner's written report.

266.    In the letter Lorona requested that the Grand Jury be informed that Sean had taken and passed a polygraph.

267.    The Grand Jury Prosecutors did not even mention the polygraph exam to the jurors.

## THE FATALLY FLAWED INVESTIGATION

### UNITED STATES DEPARTMENT OF JUSTICE ANNOUNCES
### INVESTIGATION INTO THE PHOENIX POLICE DEPARTMENT

268.    The United States department of Justice ("USDOJ") announced on August 5, 2021 that it had begun an investigation of the Phoenix Police Department. A portion of the text of the announcement follows:

> Attorney General Merrick B. Garland and Assistant Attorney General Kristen Clarke for the Civil Rights Division announced today that the Justice

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

31

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

Department has opened a pattern or practice investigation into the City of Phoenix and the Phoenix Police Department (PhxPD).

This investigation will assess all types of use of force by PhxPD officers, including deadly force. The investigation will also seek to determine whether PhxPD engages in retaliatory activity against people for conduct protected by the First Amendment; whether PhxPD engages in discriminatory policing; and whether PhxPD unlawfully seizes or disposes of the belongings of individuals experiencing homelessness. In addition, the investigation will assess the City and PhxPD's systems and practices for responding to people with disabilities. The investigation will include a comprehensive review of PhxPD policies, training, supervision, and force investigations, as well as PhxPD's systems of accountability, including misconduct complaint intake, investigation, review, disposition, and discipline.

\*\*\*

The investigation is being conducted pursuant to the Violent Crime Control and Law Enforcement Act of 1994, which prohibits state and local governments from engaging in a pattern or practice of conduct by law enforcement officers that deprives individuals of rights protected by the Constitution or federal law. The statute allows the Department of Justice to remedy such misconduct through civil litigation. This is the seventy-third investigation of a law enforcement agency conducted pursuant to this statute since it was enacted in 1994. The department will be assessing law enforcement practices under the First, Fourth, and Fourteenth Amendments to the United States Constitution, as well as under the Safe Streets Act of 1968; Title VI of the Civil Rights Act of 1964; and Title II of the Americans with Disabilities Act.

*Retrieved February 2, 2023* from https://www.justice.gov/opa/pr/justice-department-announces-investigation-city-phoenix-and-phoenix-police-department

269.    The USDOJ's comprehensive investigation of COP and its Police Department continued through the time of the First Trial and the Second Trial and the time COP denied the appeal of Sean's termination.

270.    COP, Walker, Williams, and the Prosecutors were all aware of the USDOJ investigation and wanted to demonstrate to the USDOJ that they were taking action to root out "bad cops." To that end, Sean's career was sacrificed.

271.    Upon information and belief, the USDOJ investigations heavily influenced both the internal investigation and the prosecution of Sean.

### THE "ME TOO" MOVEMENT

272.    Following exposure of sexual abuse allegations against film producer Harvey Weinstein in October 2017, the so called "Me Too" movement became headline news across the United States.

273.    The Me Too movement sought to bring to light the problem of sexual harassment and abuse, and encouraged people to come forward with personal accounts of such treatment.

274.    According to Wikipedia "Widespread media coverage and discussion of sexual harassment, particularly in Hollywood, led to high-profile terminations from positions held, as well as criticism and backlash."

275.    The Me Too movement ended the careers of many individuals outside Hollywood as well. For example, United States Senator Al Franken of Minnesota resigned on January 2, 2018 after allegations of sexual misconduct were made against him.

276.    COP, Walker, Williams, and the Prosecutors were all well aware of the Me Too movement.

277.    The Me Too movement heavily influenced and biased both the internal investigation and the prosecution of Sean.

278.    In an interview following Ramirez' accusations, Detective Walker actually told Sean that he needed to understand that the accusations came in the midst of the Me Too movement and that was where society was at.

### COP'S SLIPSHOD INVESTIGATION AND RUSH TO JUDGMENT AGAINST SEAN

279.    COP, Walker, and the Prosecutors all knew that none of the three Accusers was credible.

Mills + Woods Law, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

280.     With respect to Ramirez they knew for example: 1) that she was intoxicated on narcotics and methamphetamine at the time of the alleged assault; 2) that she was desperate to obtain release from custody, and was highly motivated to make up a story about Sean; 3) that there was no DNA evidence supporting her accusation despite the facts that DNA tests were conducted and that she testified under oath that Sean had ejaculated in her mouth; and 4) that Ramirez had a unique history making wild accusations of sexual assault following periods of intoxication.

281.     With respect to Lee they knew for example: 1) that she was extremely intoxicated at the time of the alleged assault; 2) that she was despondent because the State had taken her children away that very day; 3) that she did not report the alleged assault for months after it allegedly happened; 4) that she reported the alleged assault only after meeting with Jarrett Maupin and planning civil litigation against COP; 5) that her account of the alleged assault changed wildly and in contradictory fashion over time; and 6) that, as with Ramirez, there was no physical or DNA evidence supporting her accusations.

282.     With respect to Gutierrez they knew for example: 1) that she had a history of engaging in fraud; 2) that she did not make her accusations against Sean until nearly a year after the alleged assault; 3) that she did not report the alleged assault until after the original indictment of Sean was announced; 4) that she knew Jarrett Maupin and had hired the same civil lawyer as Lee; 5) that there was no DNA evidence supporting her accusations despite the fact that she claimed Sean had ejaculated on her and her dress; and 6) that she was highly motivated by financial gain to press accusations against Sean.

283.     Each of the three Accusers gave accounts of their alleged assaults that changed substantially and directly contradicted their earlier accounts.

284.     Each of the three Accusers was highly motivated to accuse Sean of wrongdoing either to secure their personal freedom or for financial gain, or both.

285.    Both Lee and Gutierrez had a relationship with Jarrett Maupin, and both hired the same civil attorney to seek money damages from COP.

286.    Maupin held a press conference on December 1, 2020 on the steps of Phoenix Police Headquarters on behalf of Lee and Gutierrez. There Maupin made wild accusations of "rape" and cover-up to stir public opinion and provoke monetary settlements with COP.

287.    Maupin received a portion of the proceeds of COP's settlement with Lee.

288.    On information and belief, Maupin received a portion of the proceeds of COP's settlement with Gutierrez.

289.    COP and the Prosecutors ignored the fact that none of the Accusers was credible, and focused instead on the fact that accusations were made.

290.    COP and the Prosecutors disregarded the fact that Sean passed a polygraph test.

291.    In its haste to avoid a continuing public spectacle whipped up by the Accusers and Maupin, COP failed to conduct anything resembling a reasonable or fair investigation of Sean.

292.    For example, COP's internal Administrative Inquiry (the "Ramirez Inquiry") documentation dated August 28, 2018 specifically stated that "There is no evidence to support the allegation of officer misconduct by Officer Pena."

293.    In the Ramirez Inquiry, Sean specifically told investigators that they should retrieve his "patrol vehicle's black box" data to pull seatbelt fastening history.

294.    The "black box" is a feature on all modern vehicles called the Event Data Recorder ("EDR").

295.    A vehicle's EDR records multiple data points to assist accident reconstruction or criminal investigations.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

296.     One of the many data points recorded include seat belt fasten data that shows when seatbelts are engaged and when they are disengaged.

297.     Astonishingly, COP and the State failed to retrieve that crucial data despite being reminded to do so by Sean.

298.     The EDR data was readily available to COP during its investigation because Sean's patrol vehicle was impounded as evidence.

299.     Still, despite having the availability of clearly exculpatory evidence and the findings of the Ramirez Inquiry, COP and the State pressed forward with charges against Sean that they had already decided were unfounded.

300.     COP and the State did so maliciously because they believed that they needed to offer a sacrificial lamb to avoid public backlash.

301.     Among numerous other failures, Walker and COP:

- Failed to obtain surveillance footage from the Fourth Avenue Jail regarding Ramirez' arrival and incarceration there.
- Failed to attempt to recover Gutierrez' dress even though she apparently did not wash or dispose of it.
- Failed to request or obtain phone records from any of the Accusers.
- Failed to obtain any surveillance tape from the store located beside the empty lot where Gutierrez alleged the assault had taken place.
- Failed to conduct any investigation of the relationships between the Accusers.
- Failed to interview Maupin and failed to conduct any investigation of the involvement of Maupin in the accusations made by Lee and Gutierrez.
- Failed to investigate whether Ramirez received any portion of the settlement proceeds COP paid to Lee and Gutierrez.
- Failed to determine whether there were any witnesses to the alleged assaults even though all three allegedly occurred in public places.
- Failed to pull AVL records to confirm Sean's statements that it was not uncommon for him to park his vehicle in certain locations.
- Failed to investigate the "Black Box" in Sean's patrol vehicle to confirm that he was in the driver's seat with the seatbelt fastened

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

during the entire stop at the railroad tracks with Ramirez – despite the fact that Sean specifically requested that they do so.

- Failed to take into consideration that Sean was excluded from DNA evidence taken from Ramirez and that there was no other DNA evidence linking Sean to any of the other Accusers.

302.    Moreover, the alleged assaults took place in a very high crime area of Phoenix where drug sales and use were prevalent. Both dealers and users of drugs, especially Fentanyl, in that area were anxious to get rid of Sean and his crusade against such drugs. COP failed to investigate this situation and failed to take it into consideration in the course of its investigation.

303.    COP's investigations of the Accusers' allegations were one-sided and biased against Sean from the beginning.

## COP SETTLES THE CIVIL SUITS BROUGHT BY LEE AND GUTIERREZ FOR HUNDREDS OF THOUSANDS OF DOLLARS EACH WITHOUT CONDUCTING ANY DISCOVERY

304.    COP reached agreements to settle the lawsuits brought by Lee and Gutierrez for $425,000 each.

305.    COP did not conduct any discovery in the lawsuits, and both cases were dismissed after settlement.

306.    Lee's case was filed originally on November 25, 2020 in the Maricopa Superior Court, Case # CV2020-015466.

307.    Lee's case was removed to the United States District Court of Arizona on December 22, 2020 in case # 2:20-cv-02456.

308.    COP City Council approved settlement to Lee on June 2, 2021 as part of their Formal Meeting on the same date.

309.    The case was dismissed on June 17, 2021 after COP settled with Lee and agreed to pay her four hundred twenty-five thousand dollars ($425,000).

310. Gutierrez filed her lawsuit in Maricopa Superior Court on June 18, 2021 – one day after Lee's lawsuit had been dismissed.

311. Gutierrez' lawsuit was removed to the United States District Court of Arizona in case # 2:21-cv-01297.

312. Again, no discovery was performed in Gutierrez' case.

313. In fact, COP did not file any responsive pleading.

314. COP City Council approved settlement to Gutierrez on November 17, 2021 as part of their Formal Meeting on the same date.

315. The parties to Gutierrez' case stipulated to dismiss the case on November 30, 2021.

316. Again, COP paid Gutierrez four hundred twenty-five thousand dollars ($425,000).

317. COP took no action to dispute the accusations of Lee and Gutierrez.

318. COP did not investigate the damages alleged by either Lee or Gutierrez, or whether either of those Accusers had sustained any damages.

319. COP could and would have won both of these lawsuits had it taken them to trial.

## THE PROSECUTION

320. COP needed to secure criminal convictions of Sean in order to justify its total payments of eight hundred fifty thousand dollars ($850,000) to Lee and Gutierrez.

321. As discussed herein, Maricopa, COP, the Prosecutors, and Walker lacked probable cause to bring any charges against Sean based on the false accusations of Ramirez, Lee and Gutierrez.

322. COP had closed its investigation into the accusations of Ramirez due to a lack of evidence.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

323.    Walker admitted to Sean that there was no probable cause to bring charges based on Ramirez' accusations. Walker told Sean at a December 4, 2019 interview that the Ramirez case was closed because it "cannot be proved."

324.    Neither COP nor the Prosecutors obtained any additional evidence to support Ramirez' accusations.

325.    Even though COP and its investigators had concluded there was no evidence of wrongdoing on the part of Sean and thus no probable cause to charge him based on Ramirez' accusations, they nonetheless chose to proceed with a *criminal prosecution* with a "beyond a reasonable doubt" standard of proof.

326.    Maricopa and the Prosecutors decided to prosecute Sean for alleged sexual assault based on the accusations of Ramirez and Lee.

327.    Maricopa, COP, and the Prosecutors knew they did not have probable cause to arrest or proceed with prosecution based upon the accusations of either Ramirez or Lee.

328.    COP and Walker admittedly had no probable cause with respect to Ramirez's accusations.

329.    Nor did they have probable cause with respect to Lee's accusations. As discussed herein, Lee was heavily intoxicated on fentanyl, a hallucinogenic drug, at the time of her alleged assault, and her story changed substantially every time she spoke about it. Her various descriptions would have made the alleged assault physically impossible. And she had already received a huge payout from COP.

330.    The entirety of the Probable Cause ("PC") statement relied upon by COP, Walker, Maricopa, and the Prosecutuors for Ramirez and Lee states:

> On 8/26/18, Victim A (an adult female) reported to Phoenix Police an allegation of sexual assault by the officer who arrested her earlier that day. Victim A was arrested by Officer Sean Pena for an outstanding felony warrant out of Yavapai County after she was stopped in a city park after hours. Pena was the primary unit for this call, with assistance from another

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

officer. Pena transported Victim A to the South Mountain Precinct for prisoner processing, then to the Fourth Avenue Jail. Victim A alleged that Pena forced oral/penile sex while she was handcuffed in the back of his patrol vehicle and they were stopped at the railroad tracks near Third Avenue and Buchanan Street. A sexual assault examination was completed on Victim A and the evidence sent to the crime lab for processing. Pena's DNA profile was excluded from the profiles found on the evidence swabs. Pena adamantly denied the allegations of sexual assault or having any sexual contact with Victim A. He also stated it was Victim A who offered him oral sex if he would release her. The video surveillance obtained from multiple locations could not corroborate or refute the allegations.

2019-2028342

On 11/20/2019 Victim B (an adult female) reported she was sexually abused by an on-duty Phoenix Police Officer who had contact with her in June 2019. Victim B reported the Officer touched her breasts and had her masturbate his penis when he was alone with her. Victim B was contacted in June 2019 reference a check welfare call (CFS# 19000934327), which was placed on her for wandering around in the street near 23rd and St. Anne Avenues. Victim B was transported from that area by Officer Sean Pena to South 11th Avenue and West Lynne Lane, where the sexual contact allegedly occurred after she was released from his custody. A friend of Victim B's, was interviewed and stated, Victim B called her that night and told her some details of the incident with Pena. AVL records from Pena's patrol vehicle corroborated that he was at the drop-off location for approximately ten minutes. No biological evidence was found in the patrol vehicle upon examination by the crime lab staff. There was no other evidence which would serve to corroborate or refute this allegation. Pena denied the allegations of engaging in any sexual conduct with Victim B.

331.     This PC statement was submitted to the South Mountain Justice Court in Phoenix, Arizona as the basis for Sean's arrest on March 9, 2020.

332.     Both PC statements for Ramirez and Lee state that there was no DNA or other evidence to corroborate the allegations made against Sean.

333.     The State later decided to prosecute Sean based upon the false accusations of Gutierrez.

Mills + Woods Law, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

334.    The PC statement for Gutierrez was a majority of a copy and paste from police reports.

335.    COP, Walker, Maricopa, and the Prosecutors disregarded the fact that Gutierrez came forward with her allegations only after the Phoenix local news ran a story about Sean's indictments on Lee's and Ramirez' allegations.

336.    Gutierrez' did not report the alleged assault for nearly one year after her encounter with Sean.

337.    The PC statement further states that Gutierrez was able to identify Sean in a photo lineup.

338.    This is unsurprising.

339.    On June 25, 2020 KTAR posted an article detailing the criminal charges against Sean.

340.    On July 23, 2020 at 10:30am, KTAR posted another news article with the headline "Phoenix PD fires officer accused of sex crimes against women in his custody."

341.    Gutierrez' police report to Ratko Aleksis was reported on July 23, 2020 at approximately 7:00 P.M.

342.    Furthermore, the ties between Lee and Gutierrez become clear from the evidence and statements by Maupin that he was working with another Victim to come forward.

343.    Upon information and belief, she already had.

344.    The fix was in and Maupin was able to direct both Lee and Gutierrez to a local attorney for the purposes of filing a civil suit for both against COP and Sean.

### THE MISLEADING GRAND JURY PRESENTATIONS

345.    A Grand Jury convened on June 19, 2020 to consider charges based upon the accusations of Ramirez and Lee.

346.     Michael Baker and Samantha Caplinger presented to this Grand Jury.

347.     A second Grand Jury convened on August 12, 2020 to consider charges based upon the accusations of all three of the Accusers.

348.     Grand Jury Prosecutors Samantha Caplinger and Sandra Anderson presented to this Grand Jury.

349.     None of the Accusers was presented separately to a grand jury, instead, their accusations were presented only in combination with the accusations of one or more of the other Accusers.

350.     Sean was precluded from providing his statement to both Grand Juries

351.     The State's only witness to the Grand Juries was Detective Walker.

352.     Walker relayed the false accusations of Ramirez, Lee and Gutierrez, and his investigation.

353.     The Grand Jury Prosecutors did not present to the Grand Jury clearly exculpatory evidence of which the State was aware. For example, the Grand Jury was not presented evidence that:

- Sean passed a polygraph test in which he denied ever having sexual contact with anyone while on duty as a Phoenix Police Officer.
- Both Ramirez and Lee were intoxicated on extremely potent and hallucinogenic drugs at the times they were allegedly assaulted.
- Ramirez had a unique history of making reports of sexual assault following bouts of intoxication.
- Surveillance video showed a white car driving past Sean's patrol vehicle which was stopped on a public street at the exact moment Sean was allegedly standing at the backseat door assaulting Ramirez.
- The accounts of all three Accusers would have necessitated Sean exposing his firearm, his Taser, and his pepper spray to the alleged victim.
- Lee's account of her alleged assault changed substantially from her first to her second interview.
- Lee had just lost her children to DCS and was not only extremely intoxicated but also despondent and angry with authorities at the time of the alleged assault.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

42

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

- Lee had gone to the location of the alleged assault in order to buy more fentanyl, and was angry that Sean and the other officers had interrupted her efforts.
- No biological evidence was found in Sean's patrol vehicle upon examination by COP's Police Department Crime Lab. Several items of evidence were examined in the lab for semen and none was found.
- Lee and Gutierrez were motivated by financial gain to make their accusations.
- It would have been physically impossible to commit the alleged assaults based on the statements given by Sean's Accusers.
- Sean was on the phone for at least thirty (30) seconds with his partner, Felix, during the one minute and thirty-nine second stop at the railroad tracks while transporting Ramirez.
- Investigators had failed to check the Black Box in Sean's patrol vehicle to see whether Sean's seatbelt was fastened while parked at the railroad tracks – despite Sean's request that they do so.
- There was extensive media coverage of Sean's first indictment immediately before Gutierrez made her accusations against Sean.
- The DNA results from the Ramirez investigation specifically excluded Sean.

354.    Walker and the Prosecutors presented misleading testimony about the DNA evidence to the Grand Juries for the purpose of obtaining indictments.

355.    The Prosecutors were motivated by the need to justify COP's settlements with Sean's Accusers, by the Me Too movement, and by the USDOJ's investigation.

## THE CRIMINAL TRIALS

356.    Sean maintained his innocence throughout the prosecution.

357.    The State went to trial against Sean in May, 2022 on charges of sexual assault based on the accusations of Ramirez, Lee and Gutierrez.

358.    The testimony of the three Accusers at trial differed substantially from the second-hand (hearsay) accounts of their accusations that Walker told the Grand Jury.

359.    At the end of trial the jury found Sean not guilty of sexually assaulting Lee.

360.    The jury did not reach a verdict of the charges based on the accusations of Ramirez and Gutierrez.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

361.     The State again went to trial against Sean in August 2022 based on the accusations of Ramirez and Gutierrez.

362.     The testimony given by the three Accusers at the Second Trial differed substantially from the testimony they gave at the First Trial.

363.     In a desperate effort to boost her credibility at the second trial, Gutierrez testified that she had been "reminded" after the first trial that there was another person present at her house when she told her fiancé that she had been assaulted by Sean.

364.     Stunningly, Defendant Roseberry admitted that Gutierrez had told him about this alleged witness at least a week prior to her admission, but he did not disclose this information to counsel for Sean.

365.     During trial defense counsel got access to a text message the alleged witness sent to Gutierrez in which he told her "…I'll be your slave at the snap of a finger."

366.     As an alleged "victim" Gutierrez was allowed to sit through and listen to the testimony of all the witnesses at both trials. She then adjusted her testimony accordingly. After hearing Sean testify at the First trial that she had told him about her violent and abusive fiancé, she insisted at the Second trial that she "never said anything about domestic violence." She went on to testify under oath that her fiancé was "four feet tall" and she wasn't afraid of him.

367.     As noted above, Gutierrez had also told Detective Aleksis that she had contacted the Phoenix Police Department due to domestic violence.

368.     On August 19, 2020, ABC15, a Phoenix ABC News affiliate, posted a story about a woman claiming that she had been sexually assaulted by a Phoenix Police Officer during a traffic stop. The story was updated on November 19, 2020.

44

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

369. According to the report at some point during the alleged assault, the woman cried out for someone to call the police. The woman said the Officer then slammed her up against her car and said "How you going to call the police on the damn police."

370. Apparently inspired by the news report, Gutierrez repeatedly insisted at trial "You can't call the police on the police," as if the phrase could cure her lack of credibility.

371. Ramirez testified that Sean ejaculated in her mouth.

372. When pressed on details of the alleged assault, Ramirez kept saying over and over again that "It happened real fast" and strenuously resisted providing details.

373. Lee introduced for the first time a story that Sean had somehow pulled her into the front seat with him with the driver's side door open at the time of the alleged assault. She also admitted that it would be physically impossible for two adults to be seated in the driver's seat at the same time.

374. At the end of the Second Trial, the jury found Sean not guilty on all charges.

375. The jury deliberated for only approximately 30 minutes.

## COP WRONGFULLY TERMINATES SEAN'S EMPLOYMENT

376. According to the Memorandum of Understanding adopted by COP and the Phoenix Police Department, and governing Sean's employment, any reason for termination must meet a "Just Cause" standard.

377. According to Arizona Revised Statutes 38-1101, "Just Cause" is defined as:

(a) The employer informed the law enforcement officer of the possible disciplinary action resulting from the officer's conduct through agency manuals, employee handbooks, the employer's rules and regulations or other communications to the officer or the conduct was such that the officer should have reasonably known disciplinary action could occur.
(b) The disciplinary action is reasonably related to the standards of conduct for a professional law enforcement officer, the mission of the agency, the orderly, efficient or safe operation of the agency or the officer's fitness for duty.

(c) The discipline is supported by a ***preponderance of evidence*** that the conduct occurred.

(d) The discipline is not excessive and is reasonably related to the seriousness of the offense and the officer's service record.

(emphasis added).

378.   "Preponderance of evidence" is an even higher standard of proof than probable cause.

379.   COP did not have probable cause to believe Sean was guilty of wrongdoing with respect to either Ramirez or Lee.

380.   COP could not prove wrongdoing on the part of Sean by a preponderance of evidence.

381.   COP fired Sean on July 27, 2020 based on the accusations of Ramirez and Lee.

382.   Sean appealed his termination by COP to the CSB.

383.   In late November and early December 2022, Hearing Officer Peter Reinstein conducted a hearing on Sean's appeal.

384.   At that time COP knew Sean had been acquitted of all charges based upon the false accusations of the three Accusers. COP knew that Sean had passed a polygraph test. But COP had already fired Sean and had paid two of his Accusers $425,000 each.

385.   COP knew that none of the Accusers was credible and that their accusations were false.

386.   COP knew that it did not have just cause to terminate Sean's employment.

387.   COP decided to destroy Sean's career in order to justify the fact that it had paid $850,000 pf taxpayer money to two demonstrable liars.

388.   Defendant Chief Jeri Williams testified at the hearing that she had served as the Chief of PPD for six years retiring on October 31, 2022.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

389.    Chief Williams further testified that one of her duties as Police Chief included disciplinary decisions.

390.    Chief Williams testified that she conducted a Loudermill Hearing on July 2nd, 2020, to determine the discipline for Sean.

391.    Chief Williams stated that she considered both the SID and PSB investigations in making her decision.

392.    Chief Williams testified that she also considered that the Appellant had been indicted by a Grand Jury.

393.    She stated that she believed that a police officer who had been indicted could not be retained by the department.

394.    Chief Williams stated that the fact that Appellant was ultimately acquitted of the charges would not change her decision given the different standards of proof required.

395.    If fact, the standard of proof applicable to her decision was "preponderance of evidence," which is a different and higher standard of proof than "probable cause."

396.    Chief Williams further testified that she signed the Discipline Notice dated July 27, 2020, wherein Sean was terminated from his employment as a Phoenix police officer.

397.    She believed that the level of discipline imposed was not excessive and reasonably related to the offenses despite the complete lack of evidence and the clearly false and wildly inconsistent statements of Sean's Accusers.

398.    On December 12, 2022, Hearing Officer Reinstein issued a report recommending that the Civil Service Board affirm Sean's termination.

399.    Reinstein's recommendation was unsupported by the evidence and was unsupportable.

400.    Reinstein reached the incredible and stunning conclusion that:

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

> Neither Ms. Ramirez nor Ms. Lee possessed a motive for coming forward with their allegations against [Sean]. Ms. Ramirez and Ms. Lee received no benefit from their allegations. Ms. Lee was very reluctant to press her allegations against [Sean].

401.     As discussed herein, COP had already paid Lee $425,000 based on her allegations. That amount of money overcomes a lot of reluctance. Lee was intoxicated on fentanyl at the time of her encounter with Sean.

402.     COP did not even dispute the fact that Ramirez was high on hallucinogenic drugs and was desperate to obtain release from custody when she made her allegations.

403.     Reinstein also concluded that "Ms. Ramirez and Ms. Lee did not recant their allegations even when inconsistencies were pointed out by the investigators."

404.     In fact, as set forth herein, when Ramirez and Lee were confronted with inconsistencies, they simply changed their stories, and in dramatic fashion.

405.     Reinstein concluded that "the status of Ms. Ramirez and Ms. Lee made them relatively easy targets for exploitation." This, of course, simply ignores the fact that by serving as a beat cop in a high crime, drug infested neighborhood, Sean was also an "easy target" for false accusations by users and dealers alike.

406.     On February 22, 2023, following Sean's acquittal of all charges, the CSB voted to nonetheless affirm the termination of his employment.

407.     Only two of the five members of the CSB voted to affirm the termination of Sean's employment. One voted to re-instate Sean's employment. The other two were absent.

408.     Following the affirmation of Sean's termination, the Arizona Peace Officer Standards and Training Board requested that Sean sign a "Consent Agreement" by which he would permanently relinquish his Arizona peace officer certification.

409.     Sean declined to sign it.

48

**DEFENDANT CHIEF JERI WILLIAMS' HISTORY OF CONCEALING FACTS AND USING SCAPEGOATS**

410.     Jeri Williams and her executive staff – including Assistant Police Chiefs – regularly used Signal, an instant messaging app that provides encrypted messaging and the ability to delete messages with no ability to recover them.

411.     Signal was used by Jeri Williams to discuss lawsuits, or other matters that involved the fabrication of criminal charges against individuals.

412.     In fact, an ABC15 article exposed the use of the Signal application by Jeri Williams and her executive team.

413.     The Phoenix Police Director of Communications Donna Rossi said in August 2022 that, "Chief Williams asked that Signal not be used by her executive team for work-related issues and deleted her app from her phone in 2020. Chief Kurtenbach does not have the app on his work phone."

414.     This was shown to be a false statement by the Phoenix Police Department.

415.     Screenshots of the Signal application being used by Jeri Williams and her executive staff far past 2020 came to light.

416.     One of the purposes for the use of the Signal application was to discuss the fact that COP, the Maricopa County Attorney's Office, and Phoenix Police employees – including Jeri Williams – had participated in a scheme to invent charges against police protestors in 2021.

417.     Mass Liberation Arizona issued a statement regarding this, stating:

> Chief Williams not only lied about deleting the app, she actively used Signal to intentionally destroy evidence long after she claimed to have told her staff not to use the app. Chief Williams is a liar. She absolutely must not be permitted to retire in good standing; she must be fired. She must also be Brady listed immediately. No public official should be using the Signal app, least of all the chief of the nation's deadliest police department.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

418.     In response to the scandal, Jeri Williams demoted three Assistant Police Chief to Commanders – using them as scapegoats according to a lawsuit filed in the Maricopa County Superior Court on April 18, 2022.

419.     COP – through Jeri Williams – and Maricopa County – through its employees – adopted practices to invent charges against individuals in the hopes of obtaining criminal convictions for political gain.

420.     This same pattern, practice, and policy was used in the wildly false charges levied against Sean.

421.     This same pattern, practice, and policy was used to "scapegoat" Sean in the wake of the ME TOO pressure put on COP.

422.     As discussed herein, Detective Walker actually told Sean that he needed to understand that the accusations came in the midst of the Me Too movement and that was where society was at.

423.     This is due to the pattern, practice, and policy pushed by Jeri Williams and COP to find scapegoats to offer to the public to avoid public scrutiny.

424.     This pattern, practice, and policy was further emboldened by the fact that COP and Phoenix Police Officer Anthony Armour were directly in the middle of another sexual assault case brought by a member of the public against Armour in the District Court of Arizona case entitled Anderson v. Armour (2:16-cv-03563).

425.     Armour was not terminated.

426.     That case was filed in October 14, 2016 and was heating up towards trial at the time that Sean was fired by Jeri Williams.

## THE AFTERMATH

427.     As the result of the Defendants' conduct alleged herein, Sean's life was left in ruins.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

428.    Sean had been married for only three weeks when Ramirez made her false accusations against Sean.

429.    Sean had intended to serve a full 25 years as a Phoenix Police Officer, and then retire with a pension in the same manner as his father.

430.    Instead, Sean's career in law enforcement was destroyed by Defendants.

431.    His good reputation was ruined.

432.    His ability to earn income to support his family has been severely and irreparably impaired.

433.    His ability to earn his retirement pension was taken away from him.

434.    Following his termination by COP, Sean started a small business selling custom dog houses.

435.    A customer complained to a local television news program, KTVK's Arizona's Family, about Sean's delay in providing a doghouse she had ordered.

436.    In fact, the delay was attributable to the fact that Sean was busy defending himself from the wrongful and malicious prosecution described herein.

437.    Arizona's Family aired the customer's complaint on television, including the customer's statement that she had researched Sean's background and discovered the accusations made by Ramirez, Lee and Guttierez. She cited those accusations as a reason not to do business with Sean. Arizona's Family likewise implied on the broadcast that Sean was an infamous person.

438.    Sean's dog house business was forced to close down.

439.    The Arizona's Family broadcast incident demonstrates in part the extent to which Sean's capacity to earn income has been damaged and impaired by Defendants' conduct.

51

440.     Sean has been forced to seek counseling due to the stress brought on by Defendants' conduct.

441.     Sean has been diagnosed with post-traumatic stress disorder and has been forced to receive treatment as a direct and proximate result of Defendants' conduct.

442.     Sean was paid $27.74 per hour at the time and was also paid overtime.

443.

444.     Sean had fringe benefits including without limitation health insurance, medical expense reimbursement, and vacation leave which would have increased depending on his years of service:
   • 1-5 Years of Service = 8 hours per month (96 hours/year)
   • 6-10 Years of Service = 10 hours per month (120 hours/year)
   • 11-15 Years of Service = 11 hours per month (132 hours/year)
   • 16-20 Years of Service = 13 hours per month (152 hours/year)
   • 21 Years+ = 15 hours per month (180 hours/year)

445.     Many of those benefits would have continued after Sean's retirement.

446.     Sean's lifelong goal was to become a Detective with COP.

447.     Each promotion brings with it a pay increase.

448.     After 25 years, Sean could have retired with a full pension.

449.     According to a 2017 news article from AZCentral.com, the average pension for Phoenix Police employees was approximately $63,000 per year at that time.

450.     That amount will increase substantially by the time Sean reaches retirement age.

451.     Furthermore, Phoenix Police Officers can participate in a deferred retirement option plan ("DROP") by working an additional seven years.

452.     By doing so, they are eligible for an additional lump sum payment.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

453.     Pension payments that would have been paid to a retiree not in the DROP system are deposited into a fund that guarantees a return rate of between approximately 6.6 to 7.4 percent.

454.     Once the DROP participant officially ends his/her employment, the amount deposited plus interest is paid to the employee as a lump sum payment.

455.     After receiving his DROP payment, Sean would have then received his yearly pension for each year thereafter.

456.     While engaged in the conduct alleged herein Defendants acted in concert with each other. Defendants are thus jointly and severally liable for Sean's damages. A.R.S. § 12-2506 D(1).

## COUNT I – WRONGFUL TERMINATION/BREACH OF EMPLOYMENT AGREEMENT
## (COP)

457.     Sean restates and re-alleges the allegations of Paragraphs 1 through _____ above as if fully set forth herein.

458.     Sean was employed as a Police Officer by COP pursuant to a written agreement called a Memorandum of Understanding ("MOU").

459.     The MOU is an enforceable contract governing the rights and obligations of COP and Sean pertaining to his employment.

460.     Pursuant to the terms of the MOU, COP could terminate Sean's employment only for "just cause."

461.     COP breached the MOU by terminating Sean's employment without just cause.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

462.     As a direct result of COP's breach of the MOU, Sean sustained damages in an amount to be proven at trial.

## COUNT II – BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING
### (COP)

463.     Plaintiff incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

464.     Sean's employment agreement with COP contained a duty to act fairly and good faith.

465.     This duty required that COP not do anything that would prevent Sean from receiving the benefits of the agreement.

466.     COP breached its duty of good faith and fair dealing by failing to give Sean a fair and reasonable opportunity to demonstrate that the termination of is employment was not supported by just cause, and by ignoring the evidence of Sean's innocence of the accusations made against him.

467.     As a direct result of COP's breach of the duty of good faith and fair dealing, Sean sustained damages in an amount to be proven at trial.

## COUNT III -- MALICIOUS PROSECUTION -- RAMIREZ
### (COP, WALKER, MARICOPA, PROSECUTORS, AND RAMIREZ)

468.     Plaintiff incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

469.     Defendants COP, Walker, County, the Prosecutors and Ramirez instituted and continued criminal proceedings against Sean.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

470.     The criminal proceedings ended in favor of Sean with his acquittal on all charges.

471.     The criminal proceedings were brought as a result of false accusations of sexual misconduct made by Ramirez.

472.     Defendants COP, Walker, Maricopa, the Prosecutors and Ramirez did not have probable cause to institute the criminal proceedings against Sean.

473.     COP, Walker, Maricopa, and the Prosecutors knew or were reckless in not knowing that the accusations of Ramirez were false.

474.     Neither COP, Walker, Maricopa, the Prosecutors, or Ramirez believed in good faith that the accusations were true or that Sean was guilty of the crimes with which he was charged.

475.     A reasonable person under the same or similar circumstances would not have believed that Sean was guilty of the crimes with which he was charged.

476.     COP, Walker, Maricopa, and the Prosecutors were able to secure indictments against Sean only by knowingly presenting to the Grand Jury the false accusations of Ramirez, and by failing to present to the Grand Jury clearly exculpatory evidence demonstrating that the accusations were false and that Ramirez was not credible.

477.     Walker and the Prosecutors presented false and/or misleading testimony to the Grand Juries for the purpose of obtaining indictments.

478.     COP, Walker, Maricopa, the Prosecutors, and Ramirez acted with malice in instituting and continuing criminal proceedings against Sean.

479.     Ramirez' primary motives in making her accusations against Sean was to avoid prosecution and punishment for her own crimes and her personal hatred of Sean.

480.     As discussed herein, COP, Walker, Maricopa, and the Prosecutors were primarily motivated by the desire to create the appearance that they were rooting out "bad

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

cops" without regard to the credibility of the Accusers. They were also motivated to justify COP's payment of hundreds of thousands of dollars to Lee and Gutierrez.

481.     As a direct and proximate result of the criminal prosecution Sean was forced to spend substantial amounts of time and money defending himself. Sean also suffered, among other things, public humiliation, the loss of his career and the permanent impairment of his ability to secure gainful employment. Sean sustained damages in an amount to be proven at trial.

## COUNT IV – MALICIOUS PROSECUTION – LEE
## (COP, WALKER, MARICOPA, PROSECUTORS, AND LEE)

482.     Plaintiff incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

483.     Defendants COP, Walker, Maricopa, the Prosecutors, and Lee instituted and continued criminal proceedings against Sean.

484.     The criminal proceedings ended in favor of Sean with his acquittal on all charges.

485.     The criminal proceedings were brought as a result of false accusations of sexual misconduct made by Lee.

486.     Defendants COP, Walker, Maricopa, the Prosecutors,  and Lee did not have probable cause to institute the criminal proceedings against Sean.

487.     COP, Walker, Maricopa, and the Prosecutors knew or were reckless in not knowing that the accusations of Lee  were false.

488.     Neither COP, Walker, Maricopa, the Prosecutors, or Lee believed in good faith that the accusations were true or that Sean was guilty of the crimes with which he was charged.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

489.     A reasonable person under the same or similar circumstances would not have believed that Sean was guilty of the crimes with which he was charged.

490.     COP, Walker, Maricopa, and the Prosecutorswere able to secure indictments against Sean only by knowingly presenting to the Grand Jury the false accusations of Lee, and by failing to present to the Grand Jury clearly exculpatory evidence demonstrating that the accusations were false and that Lee was not credible.

491.     Walker and the Prosecutors presented false and/or misleading testimony to the Grand Juries for the purpose of obtaining indictments.

492.     COP, Walker, Maricopa, the Prosecutors, and Lee acted with malice in instituting and continuing criminal proceedings against Sean.

493.     Lee's primary motives in making her accusations against Sean was financial gain.

494.     As discussed herein, COP, Walker, Maricopa, and the Prosecutors were primarily motivated by the desire to create the appearance that they were rooting out "bad cops" without regard to the credibility of the Accusers. They were also motivated to justify COP's payment of hundreds of thousands of dollars to Lee and Gutierrez.

495.     As a direct and proximate result of the criminal prosecution Sean was forced to spend substantial amounts of time and money defending himself. Sean also suffered, among other things, public humiliation, the loss of his career and the permanent impairment of his ability to secure gainful employment. Sean sustained damages in an amount to be proven at trial.

## COUNT V – MALICIOUS PROSECUTION – GUTIERREZ
## (COP, WALKER, MARICOPA, PROSECUTORS, AND GUTIERREZ)

496.     Plaintiff incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

497.    Defendants COP, Walker, Maricopa, the Prosecutors, and Gutierrez instituted and continued criminal proceedings against Sean.

498.    The criminal proceedings ended in favor of Sean with his acquittal on all charges.

499.    The criminal proceedings were brought as a result of false accusations of sexual misconduct made by Gutierrez.

500.    Defendants COP, Walker, Maricopa, the Prosecutors, and Gutierrez did not have probable cause to institute the criminal proceedings against Sean.

501.    COP, Walker, Maricopa, and the Prosecutors knew or were reckless in not knowing that the accusations of Gutierrez were false.

502.    Neither COP, Walker, Maricopa, the Prosecutors, or Gutierrez believed in good faith that the accusations were true or that Sean was guilty of the crimes with which he was charged.

503.    A reasonable person under the same or similar circumstances would not have believed that Sean was guilty of the crimes with which he was charged.

504.    COP, Walker, Maricopa, and the Prosecutors were able to secure indictments against Sean only by knowingly presenting to the Grand Jury the false accusations of Gutierrez, and by failing to present to the Grand Jury clearly exculpatory evidence demonstrating that the accusations were false and that Gutierrez was not credible.

505.    Walker and the Prosecutors presented false and/or misleading testimony to the Grand Juries for the purpose of obtaining indictments.

506.    COP, Walker, Maricopa, the Prosecutors, and Gutierrez acted with malice in instituting and continuing criminal proceedings against Sean.

507.    Gutierrez' primary motive in making her accusations against Sean was financial gain.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

508.     As discussed herein, COP, Walker, Maricopa, and the Prosecutors were primarily motivated by the desire to create the appearance that they were rooting out "bad cops" without regard to the credibility of the Accusers. They were also motivated to justify COP's payment of hundreds of thousands of dollars to Lee and Gutierrez.

509.     As a direct and proximate result of the criminal prosecution Sean was forced to spend substantial amounts of time and money defending himself. Sean also suffered, among other things, public humiliation, the loss of his career and the permanent impairment of his ability to secure gainful employment. Sean sustained damages in an amount to be proven at trial.

**COUNT VI – ABUSE OF PROCESS -- RAMIREZ**
**(COP, WALKER, MARICOPA, PROSECUTORS, AND RAMIREZ)**

510.     Plaintiff incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

511.     COP, Walker, Maricopa, the Prosecutors, and Ramirez brought criminal proceedings against Sean in Maricopa County Superior Court.

512.     As alleged herein, COP, Walker, Maricopa, the Prosecutors, and Ramirez used the criminal proceedings primarily to accomplish a purpose for which the process was not designed.

513.     Ramirez' primary motives in making her accusations against Sean was to avoid prosecution and punishment for her own crimes and her personal hatred of Sean.

514.     As discussed herein, COP, Walker, Maricopa, and the Prosecutors were primarily motivated by the desire to create the appearance that they were rooting out "bad cops" without regard to the credibility of the Accusers. They were also motivated to justify COP's payment of hundreds of thousands of dollars to Lee and Gutierrez.

515.     As a direct and proximate result of this misuse of the legal process Sean was forced to spend substantial amounts of time and money defending himself. Sean also

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

suffered, among other things, public humiliation, the loss of his career and the permanent impairment of his ability to secure gainful employment. Sean sustained damages in an amount to be proven at trial.

## COUNT VII – ABUSE OF PROCESS – LEE
## (COP, WALKER, MARICOPA, PROSECUTORS, AND LEE)

516.     Plaintiff incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

517.     COP, Walker, Maricopa, the Prosecutors,  and Lee brought criminal proceedings against Sean in Maricopa County Superior Court.

518.     As alleged herein, COP, Walker, Maricopa, the Prosecutors, and Lee used the criminal proceedings primarily to accomplish a purpose for which the process was not designed.

519.      Lee's primary motive in making her accusations against Sean was financial gain.

520.     As discussed herein, COP, Walker, Maricopa, and the Prosecutors were primarily motivated by the desire to create the appearance that they were rooting out "bad cops" without regard to the credibility of the Accusers. They were also motivated to justify COP's payment of hundreds of thousands of dollars to Lee and Gutierrez.

521.     As a direct and proximate result of this misuse of the legal process Sean was forced to spend substantial amounts of time and money defending himself. Sean also suffered, among other things, public humiliation, the loss of his career and the permanent impairment of his ability to secure gainful employment. Sean sustained damages in an amount to be proven at trial.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

## COUNT VIII – ABUSE OF PROCESS – GUTIERREZ
## (COP, WALKER, MARICOPA, PROSECUTORS AND GUTIERREZ)

522.    Plaintiff incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

523.    COP, Walker, Maricopa, the Prosecutors, and Gutierrez brought criminal proceedings against Sean in Maricopa County Superior Court.

524.    As alleged herein, COP, Walker, Maricopa, the Prosecutors, and Gutierrez used the criminal proceedings primarily to accomplish a purpose for which the process was not designed.

525.    Gutierrez' primary motive in making her accusations against Sean was financial gain.

526.    As discussed herein, COP, Walker, Maricopa, and the Prosecutors were primarily motivated by the desire to create the appearance that they were rooting out "bad cops" without regard to the credibility of the Accusers. They were also motivated to justify COP's payment of hundreds of thousands of dollars to Lee and Gutierrez.

527.    As a direct and proximate result of this misuse of the legal process Sean was forced to spend substantial amounts of time and money defending himself. Sean also suffered, among other things, public humiliation, the loss of his career and the permanent impairment of his ability to secure gainful employment. Sean sustained damages in an amount to be proven at trial.

## COUNT IX – ABUSE OF PROCESS
## (LEE AND GUTIERREZ)

528.    Plaintiff incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

529.    Lee and Gutierrez, brought civil actions against Sean as alleged herein.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

530.    The primary purpose of the civil proceedings was to obtain money damages based upon the false accusations of Ramirez, Lee and Gutierrez.

531.    Civil proceedings in Arizona were not designed for such purposes.

532.    Defendants' use of civil proceedings in this manner was wrongful.

533.    Those civil proceedings were motivated by malice in that both Lee and Ramirez were angry that a) Sean had either arrested them or attempted to have them become informants to assist in arresting others; b) Lee had her children removed from her custody by DCS on the very same day that Sean arrested her; and, c) Lee was angry that Sean stopped her from obtaining drugs

534.    The civil proceedings were begun and maintained without probable cause.

535.    The civil proceedings were based on the false accusations of Ramirez, Lee and Gutierrez.

536.    Ramirez, Lee and Gutierrez were not credible.

537.    A reasonable investigation of the claims of Ramirez, Lee and Gutierrez would have demonstrated that the claims were false and that the Accusers were not credible.

538.    The civil proceedings were terminated on June 17, 2021 and December 2, 2021 when the civil actions of Lee and Gutierrez were dismissed with prejudice.

539.    As a direct and proximate result of this misuse of the legal process, Sean suffered, among other things, public humiliation, the loss of his career and the permanent impairment of his ability to secure gainful employment. Sean sustained damages in an amount to be proven at trial.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

## COUNT X – TORTIOUS INTERFERENCE WITH CONTRACT AND REASONABLE BUSINESS EXPECTANCY
### (ALL DEFENDANTS EXCEPT COP)

540.     Plaintiff incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

541.     Each of the Defendants knew that Sean was employed as a Police Officer by COP.

542.     Sean was employed by COP pursuant to a written employment agreement.

543.     Sean had a reasonable expectation of continued employment by COP.

544.     Each of the Defendants knew that Sean had an employment agreement with COP and/or that he had a reasonable expectancy of continued employment by COP.

545.     Each of the Defendant knowingly and intentionally interfered with Sean's employment agreement with COP and with Sean's reasonable expectancy of continuing employment by COP by the conduct of each alleged herein.

546.     Each of these Defendants' interference was wrongful and without legal privilege or justification.

547.     As a direct and proximate result of Defendants' tortious interference, Sean suffered, among other things, the loss of his employment and career as a Police officer, the permanent impairment of his ability to earn income, public humiliation and emotional distress,and the time and expense associated with defending himself against false claims. Sean sustained damages in an amount to be proven at trial.

## COUNT XI – FALSE ARREST AND IMPRISONMENT 03/09/2020
### (COP AND MARICOPA COUNTY)

548.     Plaintiff incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

549.     COP Police Officers arrested Sean on March 9, 2020 for the alleged sexual assault of Lee.

550.     Sean was booked into the Fourth Avenue Jail, which is operated by the Maricopa County Sheriff's Office.

551.     COP acted intentionally to restrain Sean to an area within COP's control.

552.     Maricopa County acted intentionally to restrain Sean to an area within Maricopa County's control.

553.     Both COP and Maricopa County acted without lawful authority and without Sean's consent.

554.     The acts of COP and Maricopa County resulted in the direct restraint of Sean's liberty or freedom of movement, either by actual force or from Sean's fear of force.

555.     The acts of COP and Maricopa County would have caused a reasonably prudent person in the same situation as Sean to believe that he was restrained.

556.     Sean was aware of and was harmed by the restraint.

557.     As a direct and proximate result of his false imprisonment by COP and by Maricopa County Sean sustained damages in an amount to be proven at trial.

### COUNT XII – FALSE ARREST AND IMPRISONMENT 7/24/20 (COP AND MARICOPA)

558.     Plaintiff incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

559.     On July 24, 2020, COP Police Officers arrested Sean for the alleged sexual assault of Gutierrez.

560.     Sean was again booked into the Fourth Avenue Jail.

561.     COP acted intentionally to restrain Sean to an area within COP's control.

562.     Maricopa acted intentionally to restrain Sean to an area within Maricopa County's control.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

563.    Both COP and Maricopa acted without lawful authority and without Sean's consent.

564.    The acts of COP and Maricopa resulted in the direct restraint of Sean's liberty or freedom of movement, either by actual force or from Sean's fear of force.

565.    The acts of COP and Maricopa would have caused a reasonably prudent person in the same situation as Sean to believe that he was restrained.

566.    Sean was aware of and was harmed by the restraint.

567.    As a direct and proximate result of his false imprisonment by COP and by Maricopa County Sean sustained damages in an amount to be proven at trial.

## COUNT XIII – INSTIGATING OR PARTICIPATING IN FALSE ARREST AND IMPRISONMENT
### (ALL DEFENDANTS)

568.    Plaintiff incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

569.    Sean was falsely arrested and falsely imprisoned as alleged herein.

570.    Each Defendant intentionally instigated and/or participated in the unlawful restraint of Sean by his/her/its words and acts alleged herein.

571.    The words of acts of each Defendant directed, requested, invited or encouraged the act of false imprisonment.

572.    Each Defendant participated in the act of false imprisonment by aiding COP and Maricopa County in restraining Sean.

573.    COP participated in the act of false imprisonment by Maricopa by aiding Maricopa County in restraining Sean.

574.    Maricopa participated in the act of false imprisonment by COP by aiding COP in restraining Sean.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

575.    As a direct and proximate result of each Defendant's instigation or participation in false arrest and imprisonment, Sean was sustained damages in an amount to be proven at trial.

## COUNT XIV – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (ALL DEFENDANTS)

576.    Plaintiff incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

577.    The conduct of each Defendant alleged herein was extreme and outrageous.

578.    The conduct of each Defendant alleged herein was intentional in that each Defendant sought to cause Sean emotional distress.

579.    The conduct of each Defendant alleged herein was reckless in that each Defendant was aware of and disregarded the near certainty that the conduct would result in emotional distress.

580.    As a direct and proximate result of each Defendant's intentional infliction of emotional distress Sean sustained damages in an amount to be proven at trial.

## COUNT XV – AIDING AND ABETTTING
### (ALL DEFENDANTS)

581.    Plaintiff incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

582.    Each Defendant engaged in malicious prosecution, abuse of process, false arrest and imprisonment, and intentional infliction of emotional distress as alleged herein.

583.    Each Defendant knew that one or more of the other Defendants were engaging in malicious prosecution, abuse of process, false arrest and imprisonment, and intentional infliction of emotional distress as alleged herein.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

584.     By the words and acts alleged herein, each Defendant provided substantial assistance and encouragement to such other Defendant or Defendants COP with the intent of promoting the tortious conduct.

585.     As a direct and proximate result of each Defendant's aiding and abetting Sean sustained damages in an amount to be proven at trial.

## COUNT XVI – CONSPIRACY
## (ALL DEFENDANTS)

586.     Plaintiff incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

587.     Defendants agreed to engage in a course of conduct to terminate Sean's employment, maliciously prosecute Sean and to defame and inflict emotional distress on him.

588.     These purposes were unlawful.

589.     Defendants used unlawful means to accomplish these purposes as described herein.

590.     As alleged herein, each of the Defendants performed overt acts in support of the conspiracy and in furtherance of its objectives.

591.     Sean was subjected to unlawful discharge from his employment, malicious prosecution, abuse of process, false arrest and imprisonment and intentional infliction of emotional distress as alleged herein.

592.     In addition, the accusations of sexual misconduct made against Sean alleged herein were false, and Defendants knew they were false.

593.     The accusations of sexual misconduct made by Maupin and Stanciel at the Press Conference and to the PNT as alleged herein were false and outrageous. Defendants knew that these accusations were false.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

594.     The allegations of sexual misconduct against Sean were defamatory, and defamatory *per se* in that they were alleged sexual misconduct and disparaged Sean's performance in his job as a Police Officer.

595.     The accusations severely damaged his reputation in the community and impaired his ability to earn income.

596.     As a direct and proximate result of this defamation, Sean sustained damages in an amount to be proven at trial.

597.     By agreeing to engage in the course of conduct to accomplish the unlawful purposes described herein, each Defendant is liable for the tortious conduct of each other Defendant committed in the course of the conspiracy.

598.     As a direct and proximate result of the tortious conduct alleged in this Complaint, Sean sustained damages in an amount to be proven at trial.

**COUNT XVII -- MALICIOUS PROSECUTION IN VIOLATION OF THE FOURTH, FIFTH, AND FOURTEENTH AMENDMENTS AND 42 U.S.C. § 1983 - RAMIREZ**
**(COP, MARICOPA, PROSECUTORS, RAMIREZ, WALKER)**

599.     Plaintiff incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

600.     42 U.S.C. § 1983 provides individuals with a cause of action to sue for violations of his or her constitutional rights. The 14th Amendment protects individuals from constitutional violations of State and local authorities. As incorporated by the 14th Amendment, the 4th Amendment protects individuals from malicious prosecution. The Defendants, while acting in their official capacity and individual capacities and under the color of law, violated Sean Pena's rights to freedom from malicious prosecution in regards to Cynthia Ramirez' false allegations.

601.     COP, Maricopa, the Prosecutors, Ramirez, and Walker acted willfully, knowingly, and with specific intent to deprive Sean Pena of his rights under the Fourth

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

Amendment of the United States Constitution, including his right to be protected from malicious prosecution.

602.     COP, Maricopa, the Prosecutors, , Ramirez, and Walker acted unreasonably by failing to have PC to arrest and prosecute Sean as discussed herein.

603.     COP, Maricopa, the Prosecutors, , Ramirez, and Walker were able to secure indictments against Sean only by knowingly presenting the perjured testimony of Ramirez to the Grand Jury and by failing to present to the Grand Jury clearly exculpatory evidence demonstrating that the accusations were false and that these Accusers were not credible.

604.     Walker and the Prosecutors presented false and/or misleading testimony to the Grand Juries for the purpose of obtaining indictments.

605.     COP, Maricopa, the Prosecutors, Ramirez, and Walker acted with malice in instituting and continuing criminal proceedings against Sean.

606.     Ramirez' primary motives in making her accusations against Sean was to avoid prosecution and punishment for her own crimes and her personal hatred of Sean.

607.     As further discussed herein, the real motive to arrest and prosecute Sean was to make an example of a sacrificial lamb during the climate of this nation putting Police Departments under intense scrutiny due to the ME TOO movement, the defund the police movement, and ultimately due to the fact that COP paid both Lee and Gutierrez four hundred twenty-five thousand dollars ($425,000) each in their respective civil suits against COP and Sean and needed to secure his conviction to justify their actions.

608.     This was clearly malicious in nature.

609.     The criminal actions were brought in bad faith, and even when COP, Maricopa, the Prosecutors, Ramirez, and Walker had knowledge of the lies being perpetrated by the Accusers – including Ramirez – they pressed forward with prosecution.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

610.     Roseberry hid evidence *during Sean's second trial* that only came to light when Gutierrez let slip on the stand that she had additional potentially exculpatory evidence and that she had given it to the Trial Prosecutors at least a week prior to her testimony.

611.     This is evidence that the prosecution was acting maliciously and in bad faith in continuing to prosecute Sean.

612.     The whole purpose of the prosecution was to save COP from a black eye in public perception.

613.     The prosecution of these criminal charges were not brought for the purpose of bringing the defendant to justice.

614.     Finally, Sean was acquitted of all charges for the allegations of Ramirez on August 15, 2022.

615.     Sean's arrest and prosecution was the direct result of COP's, Maricopa, the Prosecutors', Ramirez', and Walker's actions and inactions.

616.     Additionally, the acts of Defendants and their employees and agents, as set forth above, demonstrate gross and wanton negligence in that each of them knew or had reason to know that their acts individually and collectively created an unreasonable risk of Constitutional violations to Sean's rights, and a high probability that substantial harm would result.

617.     In causing the utter devastation of Sean Pena's life through the malicious prosecution, Defendants and their employees and agents acted with an evil mind and a malignant heart warranting an award of punitive damages.

**COUNT XVIII -- MALICIOUS PROSECUTION IN VIOLATION OF THE FOURTH, FIFTH, AND FOURTEENTH AMENDMENTS AND 42 U.S.C. § 1983 - LEE**
**(COP, MARICOPA, PROSECUTORS, LEE, WALKER)**

618.    Plaintiff incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

619.    42 U.S.C. § 1983 provides individuals with a cause of action to sue for violations of his or her constitutional rights. The 14th Amendment protects individuals from constitutional violations of State and local authorities. As incorporated by the 14th Amendment, the 4th Amendment protects individuals from malicious prosecution. The Defendants, while acting in their official capacity and individual capacities and under the color of law, violated Sean Pena's rights to freedom from malicious prosecution in regards to Krystofer Lee's false allegations.

620.    COP, Maricopa, the Prosecutors,, Lee, and Walker acted willfully, knowingly, and with specific intent to deprive Sean Pena of his rights under the Fourth Amendment of the United States Constitution, including his right to be protected from malicious prosecution.

621.    COP, Maricopa, the Prosecutors,, Lee, and Walker acted unreasonably by failing to have PC to arrest and prosecute Sean as discussed herein.

622.    COP, Maricopa, the Prosecutors,, Lee, and Walker were able to secure indictments against Sean only by knowingly presenting the perjured testimony of Lee to the Grand Jury and by failing to present to the Grand Jury clearly exculpatory evidence demonstrating that the accusations were false and that these Accusers were not credible.

623.    Walker and the Prosecutors presented false and/or misleading testimony to the Grand Juries for the purpose of obtaining indictments.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

71

624.     COP, Maricopa, the Prosecutors,, Lee, and Walker acted with malice in instituting and continuing criminal proceedings against Sean.

625.     Lee's primary motives in making her accusations against Sean was to avoid prosecution and punishment for her own crimes and her personal hatred of Sean.

626.     As further discussed herein, the real motive to arrest and prosecute Sean was to make an example of a sacrificial lamb during the climate of this nation putting Police Departments under intense scrutiny due to the ME TOO movement, the defund the police movement, and ultimately due to the fact that COP paid both Lee and Gutierrez four hundred twenty-five thousand dollars ($425,000) each in their respective civil suits against COP and Sean and needed to secure his conviction to justify their actions.

627.     This was clearly malicious in nature.

628.     The criminal actions were brought in bad faith, and even when COP, Maricopa, the Prosecutors,, Lee, and Walker had knowledge of the lies being perpetrated by the Accusers – including Lee – they pressed forward with prosecution.

629.     Roseberry hid evidence *during Sean's second trial* that only came to light when Gutierrez let slip on the stand that she had additional potentially exculpatory evidence and that she had given it to the prosecutors at least a week prior to her testimony.

630.     This is evidence that the prosecution was acting maliciously and in bad faith in continuing to prosecute Sean.

631.     The whole purpose of the prosecution was to save COP from a black eye in public perception.

632.     The prosecution of these criminal charges were not brought for the purpose of bringing the defendant to justice.

633.     Finally, Sean was acquitted of all charges for the allegations of Lee on May 19, 2022.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

634.     Sean's arrest and prosecution was the direct result of COP's, Maricopa's, Prosecutors', Lee's, and Walker's actions and inactions.

635.     Additionally, the acts of Defendants and their employees and agents, as set forth above, demonstrate gross and wanton negligence in that each of them knew or had reason to know that their acts individually and collectively created an unreasonable risk of Constitutional violations to Sean's rights, and a high probability that substantial harm would result.

636.     In causing the utter devastation of Sean Pena's life through the malicious prosecution, Defendants and their employees and agents acted with an evil mind and a malignant heart warranting an award of punitive damages.

## COUNT XIX -- MALICIOUS PROSECUTION IN VIOLATION OF THE FOURTH, FIFTH, AND FOURTEENTH AMENDMENTS AND 42 U.S.C. § 1983 - GUTIERREZ
### (COP, MARICOPA, PROSECUTORS, GUTIERREZ, WALKER)

637.     Plaintiff incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

638.     42 U.S.C. § 1983 provides individuals with a cause of action to sue for violations of his or her constitutional rights. The 14th Amendment protects individuals from constitutional violations of State and local authorities. As incorporated by the 14th Amendment, the 4th Amendment protects individuals from malicious prosecution. The Defendants, while acting in their official capacity and individual capacities and under the color of law, violated Sean Pena's rights to freedom from malicious prosecution.

639.     COP, Maricopa, the Prosecutors,, Gutierrez, and Walker acted willfully, knowingly, and with specific intent to deprive Sean Pena of his rights under the Fourth Amendment of the United States Constitution, including his right to be protected from malicious prosecution.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

640.    COP, Maricopa, the Prosecutors,, Gutierrez, and Walker acted unreasonably by failing to have PC to arrest and prosecute Sean as discussed herein.

641.    COP, Maricopa, the Prosecutors,, Gutierrez, and Walker were able to secure indictments against Sean only by knowingly presenting the perjured testimony of Ramirez, Lee and Gutierrez to the Grand Jury and by failing to present to the Grand Jury clearly exculpatory evidence demonstrating that the accusations were false and that these Accusers were not credible.

642.    Walker and the Prosecutors presented false and/or misleading testimony to the Grand Juries for the purpose of obtaining indictments.

643.    COP, Maricopa, the Prosecutors,, Gutierrez, and Walker acted with malice in instituting and continuing criminal proceedings against Sean.

644.    Gutierrez' primary motives in making her accusations against Sean was to avoid prosecution and punishment for her own crimes and her personal hatred of Sean.

645.    As further discussed herein, the real motive to arrest and prosecute Sean was to make an example of a sacrificial lamb during the climate of this nation putting Police Departments under intense scrutiny due to the ME TOO movement, the defund the police movement, and ultimately due to the fact that COP paid both Lee and Gutierrez four hundred twenty-five thousand dollars ($425,000) each in their respective civil suits against COP and Sean and needed to secure his conviction to justify their actions.

646.    This was clearly malicious in nature.

647.    The criminal actions were brought in bad faith, and even when COP, Maricopa, the Prosecutors,, Gutierrez, and Walker had knowledge of the lies being perpetrated by the Accusers – including Gutierrez – they pressed forward with prosecution.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

648.     Roseberry hid evidence *during Sean's second trial* that only came to light when Gutierrez let slip on the stand that she had additional potentially exculpatory evidence and that she had given it to the Trial Prosecutors at least a week prior to her testimony.

649.     This is evidence that the prosecution was acting maliciously and in bad faith in continuing to prosecute Sean.

650.     The whole purpose of the prosecution was to save COP from a black eye in public perception.

651.     The prosecution of these criminal charges were not brought for the purpose of bringing the defendant to justice.

652.     Finally, Sean was acquitted of all charges for the allegations of Gutierrez on August 15, 2022.

653.     Sean's arrest and prosecution was the direct result of COP's, Maricopa's, the Prosecutors', Gutierrez', and Walker's actions and inactions.

654.     Additionally, the acts of Defendants and their employees and agents, as set forth above, demonstrate gross and wanton negligence in that each of them knew or had reason to know that their acts individually and collectively created an unreasonable risk of Constitutional violations to Sean's rights, and a high probability that substantial harm would result.

655.     In causing the utter devastation of Sean Pena's life through the malicious prosecution, Defendants and their employees and agents acted with an evil mind and a malignant heart warranting an award of punitive damages.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

## COUNT XX

## MALICIOUS PROSECUTION IN VIOLATION OF THE FOURTH, FIFTH, AND FOURTEENTH AMENDMENTS AND 42 U.S.C. § 1983 – GUTIERREZ – *Monell* – CUSTOM AND PRACTICE
## (COP, SULLIVAN, WILLIAMS)

656.     Plaintiff incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

657.     As previously explained, U.S.C. § 1983 provides individuals with a cause of action to sue for violations of their constitutional rights.

658.     Defendants COP's, Sullivan's, and Williams' acts or failure to act deprived Sean of his constitutional rights.

659.     COP, the Phoenix Police Department, Defendant Sullivan, and Defendant Williams instituted a policy to ignore evidence involving sexual abuse allegations because of the ME TOO movement and for years acted pursuant to their customs and practices, which is an expressly adopted official policy or custom within the Phoenix Police Department.

660.     COP, Sullivan, and Williams were aware of the Phoenix Police Department's history of allowing the invention and fabrication of criminal charges.

661.     The customs and practices of COP, the Phoenix Police Department, Williams and Sullivan show that the invention of criminal charges is not enforced through written policy but established and ratified by custom and practice.

662.     Despite the Phoenix Police Department's and COP's ministrations, these techniques and practices to obtain convictions via falsehoods are upon information and belief the norm.

663.     If true justice was truly a priority, Sean would still have his job today.

664.     The policies and procedures in place have failed and established a police force that has consistently acted with blatant disregard to the public's and Sean's constitutional rights and extreme indifference to the value of his life and livelihood.

665.     It is unquestionable that there is a systemic failure by COP, the Phoenix

Police Department, Williams and Sullivan that have allowed, supported, and established the commonplace use of scapegoats and invented criminal charges violative of the rights of the citizens of Phoenix, Arizona.

666.    Therefore, the established customs and practices led directly to the firing of Sean and the devastation of his life.

667.    COP, Williams, and Sullivan are liable for Sean's damages due to its established customs, patterns, and practices.

## COUNT XXI

## VIOLATION OF PLAINTIFF'S CIVIL RIGHTS UNDER 42 U.S.C. § 1985 - CIVIL CONSPIRACY TO VIOLATE PLAINTIFF'S CIVIL RIGHTS (COP, SULLIVAN, WILLIAMS, MARICOPA, PROSECUTORS, WALKER)

668.    Plaintiff re-alleges and incorporates by reference each and every allegation set forth herein.

669.    At all relevant times, Defendants were acting under color of state law in their actions and inactions.

670.    42 U.S.C. § 1985(3) provides, in pertinent part: If two or more persons in any State...conspire...for the purpose of depriving either directly or indirectly, any person or class of persons of the equal protection of the laws, or of the equal privileges and immunities under the law...in any case of conspiracy set forth in this section, if one or more persons engage therein due, or cause to be done, any act and furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising and rights or privilege of a citizen of the United States, the party so injured or deprived may have an action for recovery of the damages occasioned by such injury or deprivation, against one or more of the conspirators.

671.    Two or more of the Defendants conspired for the purpose of depriving, directly or indirectly, Plaintiff of his rights under both the United States Constitution and the Arizona Constitution, as alleged herein.

672.    As a direct and proximate consequence of Defendants' civil conspiracy,

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

1  Plaintiff has suffered, and will continue to suffer, damages, including but not limited to,

2  physical and/or mental anxiety and anguish in an amount to be proven at trial.

3                                  **COUNT XXII**

4                                  **DEFAMATION**

5                                **(ALL DEFENDANTS)**

6      673.    Sean restates and re-alleges the allegations of all previous Paragraphs of this

7  Amended Complaint as if fully set forth herein.

8      674.    Each of the Defendants COP, Walker, Maricopa, Roseberry, Fu, Maupin,

9  Stanciel, Ramirez, Lee and Gutierrez made false statements of fact about Sean as alleged

   herein; specifically, that he had committed sexual assault.

10     675.    Each of these false statements was defamatory in that it tended to bring Sean

11  into disrepute, contempt or ridicule, or to impeach Sean's honesty, integrity, virtue, or

12  reputation.

13     676.    Each of these false statements was defamatory *per se* in that it imputed to

14  Sean: a) a criminal offense punishable by imprisonment or regarded by public opinion as

15  involving moral turpitude; b) unfitness for the proper conduct of his lawful business, trade,

16  or profession; and c) serious sexual misconduct. Thus, damages are presumed.

17     677.    Each of the Defendants COP, Walker, Maricopa, Roseberry, Fu, Maupin,

18  Stanciel, Ramirez, Lee and Gutierrez made, said or wrote these false statements to a third

19  person.

20     678.    Each of the Defendants COP, Walker, Maricopa, Roseberry, Fu, Maupin,

21  Stanciel, Ramirez, Lee and Gutierrez was negligent in failing to determine the truth of these

22  false statements.

23     679.    At the time that each of the Defendants COP, Walker, Maricopa, Roseberry,

24  Fu, Maupin, Stanciel, Ramirez, Lee and Gutierrez made, said or wrote these false

   statements, he, she or it knew that the statement was false or acted in reckless disregard of

25  whether the statement was true or false. Each of these Defendants had serious doubts as to

26  whether these false statements were true or false, or consciously disregarded whether these

27  false statements was true or false.

28

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

680.     Defendants' false statements caused Sean to be damaged as alleged herein.

**JURY TRIAL DEMAND**

681.     Plaintiffs hereby demand a jury trial in this matter as to all claims and against all Defendants.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs requests that the Court enter judgment against the Defendants and in favor of the Plaintiffs, as follows:

a)  For compensatory, general and special damages against each and every Defendant, jointly and severally, in an amount to be proven at trial;

b)  For all other non-pecuniary damages as to be proven at trial;

c)  For punitive and exemplary damages against Defendants in an amount appropriate to punish the wrongful conduct alleged herein and to deter such conduct in the future;

d)  For pre-and post judgment interest to the extent provided by law;

e)  For Plaintiffs' incurred costs, including all incurred attorneys' fees and court costs, pursuant to 42 U.S.C. §1988 and as otherwise authorized by any other statute or law; and

f)  For such other relief as this Court may deem proper.

**RESPECTFULLY SUBMITTED** this 7th day of September 2023.

**MILLS + WOODS LAW, PLLC**

By_____*/s/ Sean A. Woods*_____
Sean A. Woods
Robert T. Mills
5055 North 12th Street, Suite 101
Phoenix, Arizona 85014
*Attorneys for Plaintiff*

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

1    **ORIGINAL** filed this 7th day of September, 2023
2    via AZTurboCourt with the Clerk of the
     Maricopa County Superior Court
3
4    _____ */s/ Ben Dangerfield* _____
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

# EXHIBIT 3

CORRECTED: Clerk of
Court Clerical Error

CLERK OF THE
SUPERIOR COURT
FILED
T. GARVEY DEP

23 OCT 12 PM 3: 36
10/02/2023

1  T. Scott Legal Support Services
   Gary Steiner  ID# MC 7767
2  (480) 227-7297
   Tscottlegal2007@aol.com
3

4                        **SUPERIOR COURT OF ARIZONA**
                              **MARICOPA COUNTY**
5

6  In re the matter of:                    )
                                           )
7  SEAN PENA,                              )    Case No: CV2023-012031
                                           )
8                                          )
                                           )
9         Plaintiff(s),                    )    **CERTIFICATE OF SERVICE**
                                           )
10 v.                                      )
                                           )
11 CITY OF PHOENIX, et al.,                )
                                           )
12        Defendant(s).                    )
                                           )
13 _____        )

14  1.    I, Gary Steiner, swear that I am currently registered as a Private Process Server pursuant to Rule 4(c)

15        of the Arizona Rules of Civil Procedure. I further swear that on September 28, 2023, I received

16        Summons, First Amended Complaint, Complaint and a Certificate Of Compulsory Arbitration from The

17        Plaintiff(s).

18  2.    I then proceeded to successfully serve the above described documents on the City of Phoenix at 200

19        W. Washington St., 15th Fl., Phoenix, Arizona on September 28, 2023 at approximately 2:25 pm. I

20        asked who could accept service and Jessica Castro, Special Deputy Clerk, said she could. I then

21        verbally identified and served her.

    3.    This is considered to be personal service.
22
    4.    The fee I charged for this service was $85.
23
    I declare under the penalty of perjury that the foregoing is true and correct
24

25  _____                    10/2/23
    Gary Steiner                                 Date
26

27

28                                   Page 1

29

# EXHIBIT 4

CORRECTED 10/02
Court Clerical Error

CLERK OF THE
SUPERIOR COURT
FILED
T. GARVEY DEP

23 OCT 12   PM 3: 36
10/02/2023

1    T. Scott Legal Support Services
     Gary Steiner  ID#  MC 7767
2    (480) 227-7297
     Tscottlegal2007@aol.com
3

4                        **SUPERIOR COURT OF ARIZONA**
                              **MARICOPA COUNTY**
5

6    In re the matter of:                    )
                                             )
7    SEAN PENA,                              )        Case No: CV2023-012031
                                             )
8                                            )
                                             )
9           Plaintiff(s),                    )        **CERTIFICATE OF SERVICE**
                                             )
10   v.                                      )
                                             )
11   CITY OF PHOENIX, et al.,                )
                                             )
12                                           )
            Defendant(s).                    )
13   _____ )

14   1.     I, Gary Steiner, swear that I am currently registered as a Private Process Server pursuant to Rule 4(c)

15          of the Arizona Rules of Civil Procedure. I further swear that on September 28, 2023, I received

16          Summons, First Amended Complaint, Complaint and a Certificate Of Compulsory Arbitration from The

17          Plaintiff(s).

18   2.     I then proceeded to successfully serve the above described documents on the Phoenix Police Chief

19          Michael Sullivan at 200 W. Washington St., 15th Fl., Phoenix, Arizona on September 28, 2023 at

20          approximately 2:25 pm. I asked who could accept service and Jessica Castro, Special Deputy Clerk,

21          said she could. I then verbally identified and served her.

22   3.     This is considered to be personal service.

     4.     The fee I charged for this service was $25.
23

     I declare under the penalty of perjury that the foregoing is true and correct
24

25   _____                          10/2/23
     Gary Steiner                                      Date
26

27

28                                      Page 1

29

# EXHIBIT 5

# In the Superior Court of the State of Arizona
# In and For the County of Maricopa

Clerk of the Superior Court
*** Electronically Filed ***
Y. Moralez, Deputy
8/8/2023 11:26:54 AM
Filing ID 16406655

**Plaintiff's Attorneys:**

Sean Woods - Primary Attorney
Bar Number: 028930, issuing State: AZ
Law Firm: Mills + Woods Law, PLLC
5055 N. 12th St. Suite 101
Phoenix, AZ 85014
Telephone Number: (480)999-4556
Email address: swoods@millsandwoods.com

Robert T. Mills
Bar Number: 018853, issuing State: AZ
Law Firm: Mills + Woods Law, PLLC
Telephone Number: (480)999-4556

**CV2023-012031**

**Plaintiff:**

Sean Pena

**Defendants:**

City of Phoenix

County of Maricopa

Michael Sullivan

Jeri L. Williams

Jeffrey Roseberry

Jane Doe Roseberry

Catherine Fu

John Doe Fu

Sandra Anderson

John Doe Anderson

AZTurboCourt.gov Form Set #8180741

Samantha Caplinger

John Doe Caplinger

Michael Baker

Jane Doe Baker

Michael Walker

Jane Doe Walker

Cynthia Ramirez

Krystoffer Lee

Lisa Gutierrez

Jarrett Maupin

Jane Doe Maupin

Iesha Stanciel

John Doe Stanciel

Discovery Tier t3

Case Category: Other Civil Case Categories
Case Subcategory: Employment Dispute - Other

AZTurboCourt.gov Form Set #81807741

Clerk of the Superior Court
*** Electronically Filed ***
Y. Moralez, Deputy
8/8/2023 1:26:54 AM
Filing ID 16406656

Person/Attorney Filing: Sean Woods
Mailing Address: 5055 N. 12th St. Suite 101
City, State, Zip Code: Phoenix, AZ 85014
Phone Number: (480)999-4556
E-Mail Address: swoods@millsandwoods.com
[ □ ] Representing Self, Without an Attorney
(If Attorney) State Bar Number: 028930, Issuing State: AZ

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF MARICOPA

Sean Pena
Plaintiff(s),

v.

City of Phoenix, et al.
Defendant(s).

Case No.  **CV2023-012031**

**CERTIFICATE OF
COMPULSORY ARBITRATION**

I certify that I am aware of the dollar limits and any other limitations set forth by the
Local Rules of Practice for the Maricopa County Superior Court, and I further certify that
this case IS NOT subject to compulsory arbitration, as provided by Rules 72 through 77 of
the Arizona Rules of Civil Procedure.

RESPECTFULLY SUBMITTED this

By: Sean Woods /s/
Plaintiff/Attorney for Plaintiff

AZturboCourt.gov Form Set #818/0741

Clerk of the Superior Court
*** Electronically Filed ***
Y. Moralez, Deputy
8/8/2023 11:26:54 AM
Filing ID 16406654

Sean A. Woods (Arizona Bar #028930)
Robert T. Mills (Arizona Bar #018853)
**MILLS + WOODS LAW, PLLC**
5055 North 12th Street, Suite 101
Phoenix, Arizona 85014
Telephone 480.999.4556
docket@millsandwoods.com
swoods@millsandwoods.com
*Attorneys for Plaintiff*

## IN THE MARICOPA COUNTY SUPERIOR COURT

| | |
|---|---|
| SEAN PENA, an individual;<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF PHOENIX, a governmental entity; COUNTY OF MARICOPA, a governmental entity; MICHAEL SULLIVAN, Chief of the Phoenix Police Department; JERI L. WILLIAMS, former Chief of the Phoenix Police Department; DEPUTY MARICOPA COUNTY ATTORNEY JEFFREY ROSEBERRY and JANE DOE ROSEBERRY; MARICOPA COUNTY DEPUTY ATTORNEY CATHERINE FU and JOHN DOE FU; MARICOPA COUNTY DEPUTY ATTORNEY SANDRA ANDERSON and JOHN DOE ANDERSON; MARICOPA COUNTY ATTORNEY SAMANTHA CAPLINGER and JOHN DOE CAPLINGER; MARICOPA COUNTY ATTORNEY MICHAEL BAKER and JANE DOE BAKER; MICHAEL WALKER and JANE DOE WALKER; CYNTHIA RAMIREZ; KRYSTOFFER LEE; LISA GUTIERREZ; JARRETT MAUPIN and JANE DOE MAUPIN; and IESHA STANCIEL and JOHN DOE STANCIEL,<br><br>Defendants. | CASE NO:  **CV2023-012031**<br><br>**COMPLAINT**<br><br><br>(JURY TRIAL DEMANDED) |

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

Plaintiff Sean Pena ("Sean"), by and through his attorneys, Mills + Woods Law PLLC, for his Complaint against Defendants City OF PHOENIX, a governmental entity; COUNTY OF MARICOPA, a governmental entity; MICHAEL SULLIVAN, Chief of the Phoenix Police Department; JERI L. WILLIAMS, former Chief of the Phoenix Police Department; DEPUTY MARICOPA COUNTY ATTORNEY JEFFREY ROSEBERRY and JANE DOE ROSEBERRY; DEPUTY MARICOPA COUNTY ATTORNEY CATHERINE FU and JOHN DOE FU; DEPUTY MARICOPA COUNTY ATTORNEY SANDRA ANDERSON and JOHN DOE ANDERSON; DEPUTY MARICOPA COUNTY ATTORNEY SAMANTHA CAPLINGER and JOHN DOE CAPLINGER; MICHAEL WALKER and JANE DOE WALKER;    CYNTHIA RAMIREZ; KRYSTOFFER LEE; LISA GUTIERREZ; JARRETT MAUPIN and JANE DOE MAUPIN; and, IESHA STANCIEL and JOHN DOE STANCIEL (collectively "Defendants") alleges and states as follows:

## **INTRODUCTION**

1.    Plaintiff Sean Pena ("Sean") was a decorated Phoenix Police Officer dedicated to fighting the fentanyl epidemic in Phoenix Streets.

2.    Sean was falsely accused of three sexual assaults while on-duty as a Phoenix Police Officer.

3.    Sean's accusers were Defendants Cynthia Ramirez ("Ramirez"), Krystoffer Lee ("Lee") and Lisa Gutierrez ("Gutierrez") (collectively the "Accusers").

4.    Ramirez', Lee's and Gutierrez' accusations against Sean were demonstrably false, as would have been revealed by even a cursory investigation by the Phoenix Police Department or the Maricopa County Attorney's Office.

5.      The Accusers were malicious liars who were each highly motivated to make false accusations against Sean. At least two of them profited mightily, receiving hundreds of thousands of dollars each based on their lies.

6.      Despite the Accusers' lack of credibility and the complete lack of any physical evidence supporting the accusations, Defendants pushed the investigation hastily and recklessly, and terminated Sean's employment without just cause.

7.      Defendants knew that Sean had submitted to, and passed, a polygraph examination during which he denied ever having sexual contact with anyone while on duty as a Phoenix Police officer.

8.      Defendants nonetheless initiated and continued a criminal prosecution of Sean, charging him with multiple felonies based on the accusations of Ramirez, Lee and Gutierrez.

9.      Not surprisingly, Sean was found not guilty of all charges

10.     Defendants, and each of them, knowingly participated in a conspiracy to have Sean falsely imprisoned, maliciously prosecuted, defamed, wrongfully fired from the job he loved, and left with his career in law enforcement ruined. Defendants conspired to, and did, inflict severe emotional distress on Sean and violated his constitutional rights.

## THE PARTIES

11.     Plaintiff Sean Pena ("Sean") is an adult individual who resides in Maricopa County, Arizona.

12.     Sean is a former police officer who was employed by the City of Phoenix Police Department.

13.     Sean was a decorated Officer who was assigned, by his choosing, to the toughest beat in Phoenix – the South Mountain Precinct.

MILLS + WOODS LAW, PLLC
5055 North 12h Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

3

14.     As an Officer of the Phoenix Police Department, Sean worked tirelessly to get fentanyl pills off the street.

15.     In his work, Sean developed relationships with Street Sources.

16.     Sean was highly successful in tracing the origins of fentanyl pills and developing an understanding of criminal distribution structures.

17.     Sean's efforts to rid the streets of fentanyl gained him enemies among the dealers, and users, in the South Mountain Precinct. These individuals were anxious to get him out of the way.

18.     Defendant County of Maricopa ("Maricopa") is a governmental entity that acts by and through its officials, employees and agents, including without limitation the Maricopa County Attorneys' Office, and each of the Defendants Sandra Anderson, Samantha Caplinger, Michael Baker, Michael Roseberry, and Catherine Fu.

19.     Defendant City of Phoenix ("COP") is a governmental entity that acts by and through its officials, employees and agents, including without limitation the Phoenix Police Department, and each of the Defendants Michael Sullivan, Jeri L. Williams, Michael Walker, and Allison Steinberger.

20.     Defendant Michael Sullivan ("Sullivan") is Chief of the Phoenix Police Department and is sued in his official and individual capacity. He is tasked with oversight of the Phoenix Police Department and is responsible for all policies and procedures promulgated by the Phoenix Police Department. He is an agent of COP and the Phoenix Police Department, operating in his official and individual capacity in Maricopa County, Arizona.

21.     Defendant Jeri L. Williams ("Williams") was Chief of the Phoenix Police Department from 2016 until 2022. She is sued in her official and individual capacity. She was tasked with oversight of the Phoenix Police Department and was responsible for all

4

policies and procedures promulgated by the Phoenix Police Department. She is an agent of COP and the Phoenix Police Department, operating in her official and individual capacity in Maricopa County, Arizona.

22.     Defendant Jeffrey Roseberry ("Roseberry") is a Deputy Maricopa County Attorney employed by, and serving as an agent of, Maricopa County, Arizona, and the Maricopa County Attorney's office. At all relevant times he was operating in his official and individual capacity in Maricopa County, Arizona.

23.     Defendant Catherine Fu ("Fu") is a Deputy Maricopa County Attorney employed by, and serving as an agent of, Maricopa County, Arizona, and the Maricopa County Attorney's office. At all relevant times she was operating in her official and individual capacity in Maricopa County, Arizona.

24.     Roseberry and Fu conducted the criminal trials and are collectively referred to as the "Trial Prosecutors".

25.     Defendant Sandra Anderson ("Anderson") is a Deputy Maricopa County Attorney employed by, and serving as an agent of, Maricopa County, Arizona, and the Maricopa County Attorney's office. At all relevant times she was operating in her official and individual capacity in Maricopa County, Arizona.

26.     Defendant Samantha Caplinger ("Caplinger") is a Deputy Maricopa County Attorney employed by, and serving as an agent of, Maricopa County, Arizona, and the Maricopa County Attorney's office. At all relevant times she was operating in her official and individual capacity in Maricopa County, Arizona.

27.     Michael Baker ("Baker") is a Maricopa County Attorney employed by, and serving as an agent of, Maricopa County, Arizona, and the Maricopa County Attorney's office. At all relevant times he was operating in his official and individual capacity in Maricopa County, Arizona.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

28.     Caplinger, Anderson, and Baker were the prosecutors who presented to the grand juries and are collectively referred to herein as the "Grand Jury Prosecutors".

29.     The Trial Prosecutors and Grand Jury Prosecutors are collectively referred to herein as the "Prosecutors".

30.     Defendant Michael Walker ("Walker") is a Police Detective employed by, and serving as an agent of, COP and the Phoenix Police Department. At all relevant times he was operating in his official and individual capacity in Maricopa County, Arizona.

31.     Defendant Cynthia Ramirez is an individual residing in Maricopa County. All of her acts alleged herein occurred in Maricopa County, Arizona.

32.     Defendant Krystoffer Lee is an individual residing in Maricopa County. All of her acts alleged herein occurred in Maricopa County, Arizona.

33.     Defendant Lisa Gutierrez is an individual residing in Maricopa County. All of her acts alleged herein occurred in Maricopa County, Arizona.

34.     Defendant Jarrett Maupin ("Maupin") is an individual residing in Maricopa County. All of his acts alleged herein occurred in Maricopa County, Arizona.

35.     Defendant Iesha Stanciel ("Stanciel") is an individual residing in Maricopa County. All of her acts alleged herein occurred in Maricopa County, Arizona.

36.     Defendants Roseberry, Fu, Anderson, Caplinger, Baker, Walker,  Maupin and Stanciel were acting for the benefit of their respective marital communities, if any, and therefore their respective marital communities are liable for their actions as set forth herein. Accordingly, Defendants Jane Doe Roseberry, John Doe Fu, John Doe Anderson, John Doe Caplinger, Jane Doe Baker, Jane Doe Walker, Jane Doe Maupin, and John Doe Stanciel are named as Defendants herein.

37.     Defendant COP is vicariously liable under the principle of *respondeat superior* for the actions and inactions of the employees of the Phoenix Police Department

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

6

and any private contractors including those employees or contractors named as defendants in this action, as to any claims that are asserted by Plaintiff as a result of violations of the Arizona Constitution and Arizona common law because, at all relevant times, those Defendants were acting within the course and scope of their employment or contract with COP or entities privately contracted with COP.

38.     Defendant Maricopa is vicariously liable under the principle of *respondeat superior* for the actions and inactions of the employees of the Maricopa County Attorney's Office and any private contractors including those employees or contractors named as defendants in this action, as to any claims that are asserted by Plaintiff as a result of violations of the Arizona Constitution and Arizona common law because, at all relevant times, those Defendants were acting within the course and scope of their employment or contract with Maricopa or entities privately contracted with Maricopa.

39.     For purposes of Plaintiffs' claims arising under Federal law, including without limitation the United States Constitution and 42 U.S.C. §1983 *et seq*., and as may be relevant to Plaintiff's state law claims, at all relevant times described herein, Defendants were acting under color of state law.

## JURISDICTION AND VENUE

40.     Pursuant to 42 U.S.C. §1983 *et seq.*, Plaintiffs bring this action for violations of the United States Constitution, including without limitation the Fourth, Eighth, and Fourteenth Amendments, and Arizona common and statutory laws.

41.     The amount in controversy exceeds the minimal jurisdictional limits of this Court.

42.     To the extent applicable, and without conceding that said statute applies, Plaintiffs have served their Notice of Claim upon Defendants in compliance with A.R.S.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

7

§12-821.01, *et seq.* More than sixty (60) days have expired since Plaintiffs served their Notice of Claim and Defendants have not responded in any manner to said Notice of Claim.

43.     Pursuant to Article 6, Section 14 of the Arizona Constitution, this court has original subject matter jurisdiction in this Complaint because the claims relate to causes of action, the underlying acts and/or omissions for which, at all times relevant, have caused the events alleged herein to occur with primary effect in Maricopa County, Arizona.

44.     Venue is proper in that the specific acts giving rise to the causes of action alleged herein occurred with primary effect in Maricopa County, Arizona.

## FACTUAL ALLEGATIONS

### CYNTHIA RAMIREZ' FALSE ACCUSATIONS

45.     On or about August 26, 2018, Sean requested that Officer Antonio Felix follow-in on a suspicious vehicle parked in Sherman Park in Phoenix.

46.     When Sean and Officer Felix arrived they found  Ramirez and German Martinez, who had been having sex in the vehicle.

47.     Ramirez lied to the Officers and gave them a false name.

48.     Ramirez had a history of providing false names to police officers on numerous occasions.

49.     The Officers also found Marijuana in the vehicle.

50.     Ramirez later admitted under oath that she was aware at that time that a felony warrant from Yavapai County had been issued for her arrest.

51.     She testified that she was so fearful of arrest that she contacted friends to find out whether there were any police around Sherman Park before she and German went there.

52.     After Martinez gave the Officers Ramirez' correct name, the Officers were able to determine that there was an outstanding felony warrant for Ramirez in Yavapai County. The Officers then arrested Ramirez and took her into custody.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

8

53.       Officer Felix advised Sean to put gloves on because Ramirez had an apparent infected wound on her body.

54.       Ramirez told Police that she had seen Sean before. She told Detective Walker that she had seen Sean "four days prior when he arrested her friend Christina near 35th Avenue and Washington."

55.       Sean transported Ramirez in his patrol vehicle to be processed at the South Mountain Precinct, and after processing, to the Fourth Avenue Jail in Phoenix.

56.       While in transit, Ramirez was crying and pleaded with Sean to let her go. She said "I can't go to jail." She insisted that she could not get arrested because her baby and her stepmother were waiting for her. She said her stepmother had heart conditions and Ramirez was her only caretaker.

57.       Desperate to avoid jail, Ramirez offered to give Sean oral sex if he would let her go free.

58.       Sean ignored Ramirez' offer.

59.       While in transit to the Fourth Avenue Jail, they had to stop briefly at a railroad crossing on Third Avenue due to the presence of a train. They were stopped at the crossing for only one minute and 39 seconds.

60.       While stopped at the crossing Sean had a telephone conversation with Officer Felix. The conversation lasted approximately 30 seconds.

61.       Ramirez testified that she was furious that Sean had a "smirk" on his face when he dropped her off at the jail.

62.       Ramirez admitted that prior to her arrest, she and Martinez had been doing "speedballs." She described a "speedball" as a mixture of opiates and Methamphetamine.

63.       She admitted that she had used Fentanyl that night.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

9

64.      She agreed at trial that she had taken a "pretty heavy combo of drugs" prior to her arrest.

65.      She admitted that she was under the influence of drugs during the time that she was transported to the Fourth Avenue Jail.

66.      Ramirez was desperate to obtain release from jail.

67.      She testified that she tried to get the attention of personnel at the 4th Avenue jail, but they all told her to "shut up" because she was still intoxicated or "coming down" and was hallucinating.

68.      It was obvious to the corrections officers and staff at the Fourth Avenue Jail that Ramirez was intoxicated.

69.      Ramirez told medical staff at the jail that Sean had sexually assaulted her while in transit to the jail.

70.      Ramirez also told a nurse at the jail that Sean had not touched her, except for her hair.

71.      A medical staff member reported Ramirez' accusation to the Phoenix Police Department, which immediately began an investigation.

72.      Ramirez told Detective Walker that Sean's patrol vehicle had come to a stop at a railroad crossing. She alleged that while stopped there, Sean had his telephone conversation. She claimed that Sean then told her to show him her breasts, and claims she did. She claimed that Sean then exited the driver's seat of the vehicle, walked back to the rear driver's side, opened the rear driver's side door, and put his erect penis in her mouth for approximately three minutes – all while still stopped in the middle of a public street in Phoenix.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

10

73.     This is clearly a lie.  At the second criminal trial, Maricopa County Superior Court Case # CR2020-128297, on August 8, 2022, the prosecution stipulated to the fact that Sean's car was stopped for exactly one minute and thirty-nine seconds.

74.     Not only was the street public, but there was traffic on it. In fact, surveillance video from a nearby business shows a white car drive past Sean's patrol vehicle at the exact moment he was allegedly standing at the backseat door assaulting Ramirez – a fact that was never presented to a grand jury

75.     Ramirez repeatedly insisted to Detective Walker that after the alleged assault, Sean drove over the railroad tracks and proceeded to the Fourth Avenue jail. When Walker told her that her story didn't add up, she changed her story and said that she laid down in the back after the alleged assault and didn't actually see the route they took to the jail.

76.     When asked at trial whether she thought the accusations against Sean would keep her from getting sentenced on the outstanding warrant, Ramirez responded "Something like that."

77.     At trial, Ramirez testified that Sean had his duty belt on when he "leaned in" to the back seat of his patrol vehicle, put one hand on her head and put his penis in her mouth. Given the configuration of the patrol vehicle, it would have been virtually impossible for Sean to do what Ramirez described.

78.     If the alleged assault had actually occurred, Ramirez would have had clear and ready access to Sean's firearm, Taser, and pepper spray at the time the assault was occurring.

79.     Ramirez testified at trial under oath that Sean had actually ejaculated in her mouth.

80.     Ramirez acknowledged that Sean had been on the phone directly before the alleged assault.

11

81.     Ramirez told investigators that while approaching the railroad crossing, Sean's patrol vehicle was following a Maricopa County Sheriff's van. She said the van pulled into a private drive, turned around and parked in a lot within view of Sean's patrol vehicle while stopped at the crossing.

82.     The investigators determined that there were no witnesses to the sexual assault alleged by Ramirez.

83.     She claimed that at the time of the alleged assault, Sean's penis was erect and she "did not believe he was circumcised."

84.     She later changed her story again and admitted that she does not know what circumcision means.

85.     She said she did not spit or wipe her face after the alleged assault.

86.     On August 26, 2018 Walker – took circumoral swabs of Ramirez' mouth and buccal swabs of her cheeks.

87.     Walker took it upon himself to do so because a "Forensic Nurse" was unavailable to perform the collection.

88.     DNA lab results from Walker's swabs provided insufficient genetic information and no conclusions could be drawn.

89.     On August 27, 2018,a forensic nurse  took swabs of Ramirez' mouth.

90.     When interviewed, Ramirez told Walkerthat the test results would show Martinez' DNA and Sean's DNA.

91.     The swabs were taken within the recommended time frame to detect biological evidence.

92.     The lab results from the forensic nurse's swabs showed that Martinez' DNA could *not* be excluded from the results, but that Sean's DNA was excluded.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

93.     Automatic Vehicle Location records of Sean's patrol vehicle showed that the vehicle was stopped at the railroad crossing for only one and a half minutes.

94.     The investigators also obtained video surveillance footage from nearby businesses that confirmed Sean's patrol vehicle was stopped at the railroad crossing for only a minute and a half.

95.     Detective Walker sent Sean a "confrontation" text. Walker texted Sean and pretended to be Ramirez in order to obtain admissions from Sean.

96.     The "confrontation" failed. Sean did not make any admissions during the text conversation.

97.     Sean eventually told the texter (who he believed to be Ramirez) to stop contacting him. Sean then *immediately* reported the text exchange to his supervisor and chain of command.

98.     COP's Police Department closed its investigation of Sean on or about September 1, 2018, finding no corroboration of Ramirez's claims.

99.     The Maricopa County Attorney did not charge or seek an indictment of Sean based on the accusations of Ramirez at that time.

100.     Furthermore, COP's internal Administrative Inquiry (the "Ramirez Inquiry") documentation dated August 28, 2018 specifically stated that "There is no evidence to support the allegation of officer misconduct by Officer Pena."

101.     As Walker told Ramirez at her September 5, 2018 interview:

"The DNA, the video, the surveillance, the time frames –
MS. RAMIREZ: Uh-huh.

DET. WALKER: -- the other officers involved, all these things, do not show, do not corroborate your statements at all. At all.

***

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

13

DET. WALKER: But remember how I told you we had two profiles come up –

MS. RAMIREZ: Uh-huh.

DET. WALKER: -- with DNA.

MS. RAMIREZ:  Yeah.

DET. WALKER;  Okay?  One of them is definitely Herman.

MS. RAMIREZ: Uh-huh.

DET. WALKER: And the other one is definitely not our officer. We got the results back this week. It is definitely not him."

102.     Although the investigation of Ramirez' accusations was closed, the investigation and Ramirez' claims were no secret. They were well known to many employees of COP and its Police Department.

103.     Word of Ramirez' accusations and the investigation of Sean passed to members of the general public as well.

104.     Ramirez had and continues to have a history of making accusations of sexual assault following drug use.

105.     In 2015 Ramirez' ex-boyfriend took her to Banner Hospital Estrella after she had become unresponsive following use of both methamphetamine and heroin with some other men. Ramirez told nursing staff at the hospital that she might have been sexually assaulted by someone while she was passed out at a Phoenix hotel the previous night.

106.     When police arrived to investigate the possible assault, Ramirez indicated that she did not want to talk about it at that time and ignored them.

107.     In 2017 Ramirez was arrested for possession of a stolen vehicle and possession of a burglary tool.  At the time of her arrest, she had lied to the arresting Officer by giving him a false name.

14

108.     In April 2018, Ramirez was arrested for possession of a dangerous drug (methamphetamine) and for an outstanding felony warrant. While in custody she reported to police that she may have been sexually assaulted by a transient man who she met through Facebook. She told the Officer that at her first physical meeting with the man she allowed him to inject her with a mixture of heroin and methamphetamine. She woke up the next morning feeling pain in her vagina. She said that these encounters continued over the course of a "few weeks" and that she did not remember whether she had ever given the man consent or the last time they had sex. She told the Officers that she did not want prosecution.

109.     COP and the Prosecutors knew or consciously and recklessly disregarded all of these facts regarding Ramirez.

110.     Later, in July 2021 COP Police Officers responding to an emergency call found Ramirez unconscious and laying on the ground from a drug overdose. She was transported to a hospital. She later reported to hospital staff that she thought she had been sexually assaulted because she was naked. In fact, the nursing staff had cut her clothes off to facilitate emergency examination and treatment.

111.     In November 2021, Ramirez was arrested for possession of methamphetamine and for an outstanding felony warrant from Maricopa.

112.     Despite the fact that the investigation of Ramirez' accusations had been closed three years earlier for lack of evidence, the Prosecutors in 2021 proceeded to charge Sean with sexual assault of Ramirez.

113.     At the time of Sean's trial, Ramirez was incarcerated for felony possession of a stolen vehicle and she had to be escorted to court by law enforcement personnel.

## KRYSTOFER LEE'S FALSE ACCUSATIONS

114.     Lee has a history of illegal drug use and mental illness.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

15

115.    On or about June 1, 2019, the Arizona Department of Child Safety removed Lee's children from her custody.

116.    Later that same day, Sean, Officer Felix and one other Officer responded to a call for a wellness check on a woman who was wandering in the street and appeared to be extremely intoxicated. They located Lee who fit the description provided by the caller.

117.    Lee was wandering in the street with no shoes on.

118.    Lee's speech was slurred.

119.    Officer Felix testified that when he and Sean found Lee she was wandering around, knocking on doors, yelling and screaming.

120.    In Lee's purse the Officers discovered foil used for smoking fentanyl.  This was drug paraphernalia.

121.    Sean also confirmed that Lee had an outstanding misdemeanor warrant from COP.

122.    Sean told Lee he would let her go if she showed him where she got the fentanyl. She agreed.

123.    Lee told Sean that the dealer's name was "Angel."  Angel was a known violent drug dealer in Sean's beat. Lee told Sean that Angel had started selling drugs out of his cousin's house because he knew Sean was on to him.

124.     Lee was handcuffed with her hands behind her back and with her seatbelt fastened in the back seat of Sean's vehicle as they drove to Angel's location and Lee pointed out the house from which Angel was selling drugs.

125.    Lee then directed Sean to drop her off at 11th Avenue and West Lynne Lane. Sean drove her to that location. Sean then uncuffed Lee and let her out of the back seat. She walked away.

126.    When Sean released Lee, he was parked on a public street.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

127. In October 2019, Lee attended the Arizona State Fair with her friend Iesha Stanciel and Iesha's two children. At the Fair, they met with the Reverend Jarrett Maupin, a well-known activist in Phoenix.

128. The meeting with Maupin had been planned in advance and was not mere coincidence.

129. Maupin previously plead guilty to making false statements to the FBI about then Phoenix Mayor Phil Gordon. In the plea agreement dated April 9, 2009, Maupin admitted that he falsely informed the FBI that he had seen evidence of Mayor Gordan engaging in criminal activity, and that he did so "in an effort to smear Mayor Gordon politically, even though I knew at all times there was no truth to the allegations I made to the FBI."

130. On information and belief, Maupin and Lee discussed the fact that Lee had been taken into custody by Sean. They discussed bringing a lawsuit as a means of getting money from COP.

131. On information and belief, Maupin introduced Lee to a lawyer with whom Maupin was familiar.

132. Maupin accompanied Lee to her meetings with the civil lawyer.

133. On information and belief, Maupin and/or the lawyer advised Lee that in order to bolster the chance of a successful lawsuit, Lee should first make a police report of an alleged assault.

134. On November 20, 2019, nearly six months after her encounter with Sean, Lee told a Phoenix Police Officer at a Circle K that Sean had touched her breasts and had her masturbate his penis during that encounter.

135. If Lee's account of the encounter was correct, she would have had easy access to Sean's firearm, Taser and pepper spray at the time it occurred.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

136.      Lee admitted that she was drunk at the time she reported the incident.

137.      The Phoenix Police Department began an investigation of Lee's accusations.

138.      The other Officers who were with Sean when Lee was detained did not recall the encounter and did not recall anything improper on the part of Sean.

139.      After Lee's report, the Phoenix Police Department conducted a canvass of females who had been transported by Sean in the course of his duties from March through November 2019. All persons who they were able to interview gave only positive feedback.

140.      The police investigation revealed no physical evidence corroborating Lee's accusation against Sean. No DNA or semen was found in Sean's patrol vehicle even though Lee claimed Sean had ejaculated while seated in the vehicle.

141.      In fact, Detective Walker emphasized the fact that Sean's vehicle was impounded and evidence examination had been performed. Sean told Walker that there would be no DNA evidence in the vehicle:

DET. WALKER: Okay. It was a first shift car that you were driving that day, that car we've taken and we've put into the crime lab, and we've done some evidence examination on the seat, the steering wheel, and such. The crime lab has the ability to use what's called alternate light sourcing, I'm not sure if you're familiar with it, but –

OFC. PENA: I get it. I know what it is.

DET. WALKER: -- it's essentially black lighting, and they can search for biological- evidence with regards to semen. What do you think about -- is your semen in that car?

OFC. PENA: No.

142.      Lee told the Police detectives investigating her accusation "that she did not wish to press charges because she had 'played a part' in the incident. However, Ms. Lee stated that she would participate in prosecution if other victims were located."

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

18

143.     At her initial interview by COP investigators on November 20, 2019, she told investigators that she was standing outside the driver's side door of Sean's patrol vehicle and reached through the open window to give him a handjob.

144.     Lee told investigators that she did not want to press charges against Sean.

145.     At her second interview on December 3, 2019, she told investigators that at the time of the alleged assault she was seated in the front driver's seat of Sean's patrol vehicle.

146.     She later admitted at trial that this would have been physically impossible.

147.     Incredibly, none of the Police investigators – including Walker – challenged or pressed Lee on this story or on the fact that it differed dramatically from the story she told just two weeks earlier at her November 20, 2019 interview.

148.     Instead, Walker pressed her at the second interview on whether she would be willing to assist in a prosecution of Sean if there were "multiple victims."

149.     Lee agreed that she would come forward if there were multiple victims.

150.     After the interview, Walker dredged up the old accusations of Ramirez, even though that investigation had long since been closed for lack of evidence, in order to convince Lee that there were in fact "multiple victims."

151.     Walker's actions demonstrate a shocking level of malice and a sadistic manipulation of the alleged "victims."

152.     Upon information and belief, at that time, Lee, Maupin and the civil lawyer were already planning a civil lawsuit for money damages against COP.

153.     On the day she made her report, Lee told police investigators that after Sean dropped her off at the location she requested, she got out of the back seat of the patrol vehicle, walked around to the front driver's side and made small talk with Sean. The driver's door was closed and Sean was seated in the driver's seat. Lee said she reached into

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

19

the patrol vehicle through the open window and masturbated Sean to ejaculation. Lee told the police investigators that she then "walked home and she told her friend Iesha Stanciel over the phone about the incident."

154.    On November 21, 2019, Stanciel responded to a police investigator that Lee had called her and related that a police officer had taken out his penis and asked her for oral sex, which she refused. According to the Police Report: "Sgt. Gonzalez asked Stanciel, regarding her earlier statement that the officer asked Lee for oral sex while he was seated in the front seat, if she was aware of Lee actually having any sexual contact with the officer. Stanciel said she doesn't know if anything occurred and wasn't sure Lee would be comfortable enough to share those specifics."

155.    Stanciel told the investigator that "the rest of the details Lee told her that night were blurry to her and she couldn't remember everything said."

156.    Lee told investigators that after leaving Sean's patrol vehicle that evening she went to Stanciel's house and told Stanciel what had occurred between Lee and Sean.

157.    Lee did not go to Stanciel's house on the night of the alleged assault.

158.    Stanciel told investigators that "although she couldn't remember all the details of the conversation with Ms. Lee, she did recall that Ms. Lee told her that the officer transporting her in his vehicle, pulled down his pants and requested oral sex."

159.    Stanciel also told investigators that Lee adamantly denied that she had oral sex or any other type of sex with Sean, stating:

> … I don't want to put words in her mouth, you know, but what I can remember is that the officer pulled his pants down and was telling her to, you know, give him oral sex and stuff. And I – I was asking her, did she do it, you know, what happened. She was, like, I was so scared, but no, I didn't.

160.    Stanciel further stated:

> She said I really need to talk to you, you know, you're the only person I have, and you know, some shit happened. Tell me why I get pulled over by the

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

police and these mother fuckers, like, **Try** to fucking rape me. (emphasis added).

161.     On or about November 25, 2020. Lee filed a civil Complaint (the "Lee Complaint") against Sean and COP of Phoenix seeking money damages based on her accusations of misconduct on the part of Sean.

162.     In the Complaint, Lee alleged that Sean told Lee to get in the front seat of his patrol vehicle where he "forced [Lee's] head toward his penis and demanded oral sex. [Lee], in fear for her life, ***performed oral sex*** on Defendant Pena." (emphasis added).

163.     On December 1, 2020, Lee, accompanied by Maupin and Stanciel, held a press conference in front of Phoenix Police Headquarters.

164.     At the press conference, Maupin said that Pena had told Lee that "He liked nasty black street bitches."

165.     The reporter asked Maupin if that was really what Pena had said.

166.     Maupin responded "Yes."

167.     This accusation was false. Sean did not tell Lee that "He liked nasty black street bitches."

168.     Maupin then said that Pena was as dangerous as Mark Goudeau – a convicted serial rapist and murderer.

169.     Maupin stated that Lee had first come to him about a year ago.

170.     Maupin stated that Pena forced Lee to engage in sexual acts and endure horrific verbal abuse.

171.     On December 7, 2020, the Phoenix New Times ("PNT") published an article about Lee's accusations against Sean.

172.     According to the article, Lee related to PNT that her encounter with Pena took place while she "was trying to unwind after getting through a stressful day at her job at a local Popeyes and took a quick detour to a convenience store to buy some cigarettes."

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

173.     In fact, the Arizona Department of Child Safety had taken Lee's children from her that same day.

174.     The Phoenix New Times article continued: "That same night, according to Lee, she would be violent [sic] sexually assaulted by a Phoenix police officer."

175.     The article states that an Officer told her she had a warrant, handcuffed her and put her in the back of "one of the squad cars." The driver, Sean, then "got behind the wheel and asked her to locate the house of a drug dealer. Lee had no idea who Pena was talking about. 'He asked me to find some drug dealer. I can't remember what he said his name was,' she said. 'I don't know who it was.'"

176.     Lee told PNT that she then directed Sean to a "random house close by." No one was home.

177.     Lee then related to PNT that after she led Sean to the "random" house:

"Lee asked if Pena could take her home. He said yes, and they drove off. But Pena didn't take her home. He drove to a nearby vacant lot at 11th Avenue and West Lynne Lane. There, he unhandcuffed Lee, forced her into the passenger seat in the front of the car, and started playing a porn video on his phone. 'He was watching porn. He was pulling his pants down,' Lee said. 'He was putting my head down. He had his hand on his gun. I didn't want to move. I was scared … I was crying.' Pena groped Lee's breasts and tried to put his hands down her pants, she said. 'He was telling me to suck his dick, telling me that I was beautiful, that he wanted it like in the pornos, that he wanted it nasty "like how Black girls do it in porn," Lee said. 'Just some weird stuff you don't expect a cop to be saying.' He started masturbating and forced Lee to give him a hand job. Afterwards, he told her to come back to the same location the next night and that he would 'find and kill' her if she didn't. She bolted from the scene."

178.     Lee told PNT that she then ran to Stanciel's house in a "hysterical" state and told Stanciel what happened.

179.     Stanciel told PNT that "'She was just banging on my door,'… 'She was like "oh my gosh, oh my gosh." She was hyperventilating. She was like "No one is going to believe me'."

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

22

180.     Lee told PNT that she took her children to live with her father in Buckeye because she was "too scared to be in Phoenix after the assault."

181.     In fact, the government had already removed Lee's children from her custody.

182.     Despite having knowledge of Lee's and Stanciel's extreme deviations from each previous story, the Prosecutors, COP, Maricopa, Walker, and Chief Williams still moved forward with sham charges against Sean.

183.     Maupin was also featured prominently in the PNT article, stating to PNC that Lee, Ramirez and a "third victim" (Gutierrez) had been "raped" by Sean.

184.     In or about June, 2021, Lee settled her lawsuit against COP.

185.     On information and belief, COP paid Lee $425,000.

186.     Lee then paid a portion of the settlement proceeds to Maupin.

187.     Lee has a history of numerous prior and subsequent incidents of shoplifting.

188.     Upon information and belief, Lee has subsequently been arrested for Burglary tools possession and Drug Paraphernalia-possess/use in Maricopa Superior Court Case # CR2023-102071.

189.     That case was filed on January 18, 2023.

190.     Lee pled to reduced charges of Drug Paraphernalia/Use in Maricopa Superior Court Case # CR2023-110831.

191.     In May 2022, Lee testified at the trial of criminal charges against Sean based upon her accusations.

192.     At the First Trial, Lee testified that the alleged sexual assault consisted of Sean touching her breasts and Lee masturbating Sean through the driver's window of his patrol vehicle.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

23

193.    On May 19, 2022, a Maricopa jury found Sean **Not Guilty** of the sexual assault alleged by Lee.

194.    Despite Sean's acquittal and Lee's wildly changing accounts of an alleged assault, the Trial Prosecutors decided to call Lee to testify in the Second Trial of charges based on accusations made by Ramirez and Gutierrez.

195.    At the Second Trial, in August 2022, Lee's lies about Sean and her total lack of credibility, all of which was well known to Defendants, were fully exposed for all the world to see. Her story changed dramatically from any previous version.

196.    At Sean's Second Trial on August 1, 2022, Lee testified that she does not recall if Sean had ejaculated.

197.    She further testified that she gave Sean a hand job and was standing between the front door of Sean's Tahoe and the front seat where Sean was seated and that she was somehow pulled into the driver's seat with him.

198.    She further testified that she unzipped Sean's pants for him and could not remember where his utility belt was.

199.    She admitted that "Angel" was a drug dealer from whom she got drugs every week or two.

200.    Incredibly, when confronted about her allegations in the PNT article, Lee stated that the version of events the reporter attributed to her were lies.

201.    Lee admitted that she did not go to Stanciel's house after the alleged assault, even though Stanciel's house is only two blocks away from the location where she had Sean drop her off.

202.    She testified that she knew who Stanciel was, but that Stanciel was "kinda stand-offish."

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

24

203.    She also admitted that she told Stanciel that the alleged sexual encounter with Sean was partially Lee's fault.

204.    The State did not call Stanciel to testify at the Second Trial.

### LISA GUTIERREZ' FALSE ACCUSATIONS

205.    Gutierrez has a history of engaging in falsehoods and fraud. In 2013, the Arizona Attorney General ("the AG") charged Lisa Gutierrez with Illegally Conducting An Enterprise, Attempted Fraudulent Schemes And Artifices, Computer Tampering, and Forgery. *Grand Jury Indictment, CR2013-002470-073*. The facts underlying the charges showed that Ms. Gutierrez "intentionally presented known forged checks and documents to Walmart, Bashas/Food City and VComm with the intent to defraud those companies for money." *Probable Cause Statement, CR2013-002470-073*. Overall, the scheme resulted in a "total known financial loss" of over $133,000.00. *Id*. The charges against Ms. Gutierrez were dismissed after Ms. Gutierrez completed 50 hours of community service pursuant to a deferred prosecution agreement with the AG. *Pena's Consent To Participate In Deferred Prosecution Program And Acknowledgement, CR2013-002470-073*.

### *A Routine Call*

206.    On or about August 5, 2019, Gutierrez called the Phoenix Police Department and reported that one of her fiancé's friends was using drugs and threatening her at her front doorstep. Sean and Officer Felix responded to the call.

207.    Officer Felix arrived at the scene first and was the lead Officer on the call.

208.    Both Officer Felix and Sean spoke to Gutierrez in front of her house. Neither entered the house at any time.

209.    Officer Felix told Sean to take Gutierrez in his patrol vehicle and have her show him where her fiancé's friend lived.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

210.     Sean objected to transporting Gutierrez in his patrol vehicle due to Ramirez' previous, albeit completely false, accusations. Officer Felix directed Sean to do it anyway, and Sean complied.

211.     Gutierrez rode with Sean in his patrol vehicle to show him where the suspect lived.

212.     Gutierrez sat in back prisoner compartment of Sean's patrol vehicle.

213.     Officer Felix followed in his patrol car, and knocked on the suspect's door. No one answered.

214.     Sean drove Gutierrez back to her house and dropped her off there.

215.     Later, while Sean was working on a Report of the incident, he attempted to call Gutierrez to ask whether she wanted to press charges against the suspect when they found him. She did not answer her phone.

216.     He drove over to Gutierrez' house to ask her and to get additional details regarding the suspect.

217.     As he parked his car across the street from the house, he encountered Gutierrez who was walking home from a store. They spoke briefly. He told her they had not caught the suspect yet.

218.     Gutierrez told Sean that her fiancé was selling Fentanyl and was abusing her. Sean triad to follow up, but she told him she could not talk about it at that moment. She said her fiancé, who "hates cops" was in the house. She told Sean to meet her later in an empty lot near the house and she would give him more details.

### *The Tempe Investigation*

219.     In April 2020, Gutierrez reported to the City of Tempe Police Department that she was assaulted at gunpoint by a drug dealer after she had "found" a red cell phone

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

26

belonging to one of them. She said the drug dealers drove up next to her and said "Bitch, give me your phone." She said they tried to kidnap her but she managed to fight them off.

220.     The Tempe Police Department began an investigation of Gutierrez' allegations.

221.     Three suspects were arrested and taken into custody.

222.     The three suspects said that Gutierrez had actually stolen the cell phone.

223.     In the course of the Tempe investigation, Gutierrez met with Tempe Detective Ratko Aleksis.

224.     Gutierrez spoke with Detective Aleksis numerous times from April through July 2020, and says she had a "relationship" with him.

225.     Detective Aleksis confirmed that their relationship was such that Gutierrez felt comfortable discussing her personal life with him.

226.     Gutierrez also interacted with numerous other Tempe Police Officers during the course of the Tempe Investigation.

### Sean's Indictment Goes Public

227.     On June 19, 2020, COP and the Maricopa Attorney's Office announced that Sean had been indicted for the alleged sexual assaults of Lee and Ramirez.

228.     The indictment and the allegations received widespread coverage in the press and quickly became common knowledge. Word also spread quickly among law enforcement personnel in Phoenix, Tempe and elsewhere.

### Gutierrez Decides That "She Too" Will Accuse Sean

229.     On June 25, 2020 KTAR posted an article detailing the criminal charges against Sean.

230.     On July 23, 2020 at 10:30am, KTAR posted another news article with the headline "Phoenix PD fires officer accused of sex crimes against women in his custody."

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

231.     Later that same day at approximately 7:00 P.M. Gutierrez for the first time told Detective Aleksis that she too had been sexually assaulted by Sean.

232.     Despite her "relationship" and comfort felt with Det. Aleksis, Gutierrez never even mentioned her false allegations to Det. Aleksis until the day the news broke that Sean had been fired – after months of communications with Det. Aleksis.

233.     Detective Aleksis testified at trial that Gutierrez told him Sean had come to her house in response to a domestic violence call.

234.     Gutierrez told Detective Aleksis that Sean was "new" and had been "recently assigned to the precinct." He did not follow up to ask Gutierrez how she knew that.

235.     Gutierrez told Detective Aleksis that Sean threatened to arrest her fiancé on an outstanding warrant unless she performed a sex act on Sean.

236.     Gutierrez hired the same civil lawyer who represented Lee.

237.     On information and belief, Maupin encouraged Gutierrez to make accusations against Sean for monetary gain.

238.     Maupin told the PNT that he had spoken with Gutierrez and that Gutierrez "was known to me through the community."

239.     Gutierrez lied under oath at trial when she testified that she did not even know who Jarrett Maupin was.

### *COP Investigates Gutierrez' Accusations*

240.     Gutierrez was interviewed by Walker.

241.     Gutierrez gave Walker an account of the alleged assault that differed substantially from the one she gave Detective Aleksis.

242.     According to Walker's report, Gutierrez told him that later in the evening after Sean dropped her off at her house she walked to a store to buy milk. She left her young child in the care of her fiancé, whom she later described as "very abusive."

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

243.     She claimed that as she was walking back to her house, she heard Sean call her name from his patrol vehicle, which was parked on the same street as her house.

244.     She said she walked over to Sean's patrol vehicle and talked to Sean. The driver's window was down. He told her he had not yet caught the suspect she had identified.

245.     She said she was holding a gallon of milk in one hand when Sean reached through the window, took her other hand, and placed it on his exposed penis. She said she jerked her hand away, and went home.

246.     She said that Sean called her later on and asked her to meet him in a field near her house. So, she left her child and her fiancé at home and went out in the dark of night to meet Sean at the field.

247.     Gutierrez claimed that Sean asked her for oral sex, but she refused. But when he asked her to masturbate him, she did so while he was still seated in the car. She said he touched her breast. She said Sean ejaculated on her breast and dress. She then left and walked home. Sean said nothing to her as she walked away.

248.     She says that she told her fiancé what had happened.

249.     Despite her testimony that she was wearing a dress covered in semen, she also testified that her fiancé did not believe her and called her a "ho."

250.     She testified that she took off the dress and hung it in the bathroom.

251.     She testified that she moved out of the house two or three days later and did not take the dress with her.

252.     She did not make any effort to preserve the dress even though it would have contained the only physical evidence of the alleged sexual assault.

253.     Her fiancé did not report the alleged incident to police or take any other action in response to Gutierrez' claims.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

29

254.    Gutierrez did not produce to any investigator any article of clothing she was wearing at the time of the alleged assault even though she claimed Sean had ejaculated on her. Apparently, no investigator tried to locate the clothing.

### SEAN PASSES A LIE DETECTOR TEST

255.    In an interview with Sean following Lee's accusations, Walker asked Sean to take a polygraph test. Walker told Sean:

But obviously, if you didn't do these things, and you've got two of these [accusers], a polygraph to say I've never done this, and you come out passing, it's going to be a big thumbs up for the department, okay? That's going to help you, that's going to help them look at this administratively and say, we don't have any evidence to prove it, we don't have anything else to say this happened, and he's taken a polygraph and passed it, he's showing no deception, all right.

256.    On July 6, 2020, Sean submitted to a polygraph examination administered by an independent professional polygraph examiner.

257.    The polygraph examination was conducted in accordance with American Polygraph Association Standards of Practice.

258.    During the course of the examination Sean was asked the following questions and provided the following answers:

"While on duty as an officer, did you ever touch anyone's bare sex organs?
Answer:  No
While on duty as an officer, did you ever have bare sex organ contact with anyone else?
Answer:  No
While on duty as an officer, did you ever engage in any sex act with someone else?
Answer:  No"

259.    The professional polygraph examiner prepared a written report of the examination in which she concluded that "there were **NO SIGNIFICANT REACTIONS INDICATIVE OF DECEPTION.**"

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

260.     While the polygraph took place after the accusations of Ramirez and Lee, it also covered the time period in which Gutierrez claimed she had been assaulted.

261.     On August 5, 2020, one week prior to the second Grand Jury convening to consider charges based on the accusations of Ramirez, Lee and Gutierrez, Sean's criminal attorney, Jess Lorona, emailed a letter to Samantha Caplinger, a Deputy County Attorney with the Maricopa Attorneys' Office.

262.     In the letter, Lorona informed Caplinger that Sean had taken and passed a polygraph test.

263.     Lorona attached to the letter a copy of the polygraph examiner's written report.

264.     In the letter Lorona requested that the Grand Jury be informed that Sean had taken and passed a polygraph.

265.     The Grand Jury Prosecutors did not even mention the polygraph exam to the jurors.

## THE FATALLY FLAWED INVESTIGATION

## UNITED STATES DEPARTMENT OF JUSTICE ANNOUNCES
## INVESTIGATION INTO THE PHOENIX POLICE DEPARTMENT

266.     The United States department of Justice ("USDOJ") announced on August 5, 2021 that it had begun an investigation of the Phoenix Police Department. A portion of the text of the announcement follows:

> Attorney General Merrick B. Garland and Assistant Attorney General Kristen Clarke for the Civil Rights Division announced today that the Justice Department has opened a pattern or practice investigation into the City of Phoenix and the Phoenix Police Department (PhxPD).
>
> This investigation will assess all types of use of force by PhxPD officers, including deadly force. The investigation will also seek to determine

31

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

whether PhxPD engages in retaliatory activity against people for conduct protected by the First Amendment; whether PhxPD engages in discriminatory policing; and whether PhxPD unlawfully seizes or disposes of the belongings of individuals experiencing homelessness. In addition, the investigation will assess the City and PhxPD's systems and practices for responding to people with disabilities. The investigation will include a comprehensive review of PhxPD policies, training, supervision, and force investigations, as well as PhxPD's systems of accountability, including misconduct complaint intake, investigation, review, disposition, and discipline.

\*\*\*

The investigation is being conducted pursuant to the Violent Crime Control and Law Enforcement Act of 1994, which prohibits state and local governments from engaging in a pattern or practice of conduct by law enforcement officers that deprives individuals of rights protected by the Constitution or federal law. The statute allows the Department of Justice to remedy such misconduct through civil litigation. This is the seventy-third investigation of a law enforcement agency conducted pursuant to this statute since it was enacted in 1994. The department will be assessing law enforcement practices under the First, Fourth, and Fourteenth Amendments to the United States Constitution, as well as under the Safe Streets Act of 1968; Title VI of the Civil Rights Act of 1964; and Title II of the Americans with Disabilities Act.

*Retrieved February 2, 2023* from https://www.justice.gov/opa/pr/justice-department-announces-investigation-city-phoenix-and-phoenix-police-department

267.     The USDOJ's comprehensive investigation of COP and its Police Department continued through the time of the First Trial and the Second Trial and the time COP denied the appeal of Sean's termination.

268.     COP, Walker, Williams, and the Prosecutors were all aware of the USDOJ investigation and wanted to demonstrate to the USDOJ that they were taking action to root out "bad cops." To that end, Sean's career was sacrificed.

269.     Upon information and belief, the USDOJ investigations heavily influenced both the internal investigation and the prosecution of Sean.

**THE "ME TOO" MOVEMENT**

32

270.     Following exposure of sexual abuse allegations against film producer Harvey Weinstein in October 2017, the so called "Me Too" movement became headline news across the United States.

271.     The Me Too movement sought to bring to light the problem of sexual harassment and abuse, and encouraged people to come forward with personal accounts of such treatment.

272.     According to Wikipedia "Widespread media coverage and discussion of sexual harassment, particularly in Hollywood, led to high-profile terminations from positions held, as well as criticism and backlash."

273.     The Me Too movement ended the careers of many individuals outside Hollywood as well. For example, United States Senator Al Franken of Minnesota resigned on January 2, 2018 after allegations of sexual misconduct were made against him.

274.     COP, Walker, Williams, and the Prosecutors were all well aware of the Me Too movement.

275.     The Me Too movement heavily influenced and biased both the internal investigation and the prosecution of Sean.

276.     In an interview following Ramirez' accusations, Detective Walker actually told Sean that he needed to understand that the accusations came in the midst of the Me Too movement and that was where society was at.

**COP'S SLIPSHOD INVESTIGATION AND RUSH TO JUDGMENT AGAINST SEAN**

277.     COP, Walker, and the Prosecutors all knew that none of the three Accusers was credible.

278.     With respect to Ramirez they knew for example: 1) that she was intoxicated on narcotics and methamphetamine at the time of the alleged assault; 2) that she was desperate to obtain release from custody, and was highly motivated to make up a story

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

33

about Sean; 3) that there was no DNA evidence supporting her accusation despite the facts that DNA tests were conducted and that she testified under oath that Sean had ejaculated in her mouth; and 4) that Ramirez had a unique history making wild accusations of sexual assault following periods of intoxication.

279.    With respect to Lee they knew for example: 1) that she was extremely intoxicated at the time of the alleged assault; 2) that she was despondent because the State had taken her children away that very day; 3) that she did not report the alleged assault for months after it allegedly happened; 4) that she reported the alleged assault only after meeting with Jarrett Maupin and planning civil litigation against COP; 5) that her account of the alleged assault changed wildly and in contradictory fashion over time; and 6) that, as with Ramirez, there was no physical or DNA evidence supporting her accusations.

280.    With respect to Gutierrez they knew for example: 1) that she had a history of engaging in fraud; 2) that she did not make her accusations against Sean until nearly a year after the alleged assault; 3) that she did not report the alleged assault until after the original indictment of Sean was announced; 4) that she knew Jarrett Maupin and had hired the same civil lawyer as Lee; 5) that there was no DNA evidence supporting her accusations despite the fact that she claimed Sean had ejaculated on her and her dress; and 6) that she was highly motivated by financial gain to press  accusations against Sean.

281.    Each of the three Accusers gave accounts of their alleged assaults that changed substantially and directly contradicted their earlier accounts.

282.    Each of the three Accusers was highly motivated to accuse Sean of wrongdoing either to secure their personal freedom or for financial gain, or both.

283.    Both Lee and Gutierrez had a relationship with Jarrett Maupin, and both hired the same civil attorney to seek money damages from COP.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

284.     Maupin held a press conference on December 1, 2020 on the steps of Phoenix Police Headquarters on behalf of Lee and Gutierrez. There Maupin made wild accusations of "rape" and cover-up to stir public opinion and provoke monetary settlements with COP.

285.     Maupin received a portion of the proceeds of COP's settlement with Lee.

286.     On information and belief, Maupin received a portion of the proceeds of COP's settlement with Gutierrez.

287.     COP and the Prosecutors ignored the fact that none of the Accusers was credible, and focused instead on the fact that accusations were made.

288.     COP and the Prosecutors disregarded the fact that Sean passed a polygraph test.

289.     In its haste to avoid a continuing public spectacle whipped up by the Accusers and Maupin, COP failed to conduct anything resembling a reasonable or fair investigation of Sean.

290.     For example, COP's internal Administrative Inquiry (the "Ramirez Inquiry") documentation dated August 28, 2018 specifically stated that "There is no evidence to support the allegation of officer misconduct by Officer Pena."

291.     In the Ramirez Inquiry, Sean specifically told investigators that they should retrieve his "patrol vehicle's black box" data to pull seatbelt fastening history.

292.     The "black box" is a feature on all modern vehicles called the Event Data Recorder ("EDR").

293.     A vehicle's EDR records multiple data points to assist accident reconstruction or criminal investigations.

294.     One of the many data points recorded include seat belt fasten data that shows when seatbelts are engaged and when they are disengaged.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

295.     Astonishingly, COP and the State failed to retrieve that crucial data despite being reminded to do so by Sean.

296.     The EDR data was readily available to COP during its investigation because Sean's patrol vehicle was impounded as evidence.

297.     Still, despite having the availability of clearly exculpatory evidence and the findings of the Ramirez Inquiry, COP and the State pressed forward with charges against Sean that they had already decided were unfounded.

298.     COP and the State did so maliciously because they believed that they needed to offer a sacrificial lamb to avoid public backlash.

299.     Among numerous other failures, Walker and COP:

- Failed to obtain surveillance footage from the Fourth Avenue Jail regarding Ramirez' arrival and incarceration there.
- Failed to attempt to recover Gutierrez' dress even though she apparently did not wash or dispose of it.
- Failed to request or obtain phone records from any of the Accusers.
- Failed to obtain any surveillance tape from the store located beside the empty lot where Gutierrez alleged the assault had taken place.
- Failed to conduct any investigation of the relationships between the Accusers.
- Failed to interview Maupin and failed to conduct any investigation of the involvement of Maupin in the accusations made by Lee and Gutierrez.
- Failed to investigate whether Ramirez received any portion of the settlement proceeds COP paid to Lee and Gutierrez.
- Failed to determine whether there were any witnesses to the alleged assaults even though all three allegedly occurred in public places.
- Failed to pull AVL records to confirm Sean's statements that it was not uncommon for him to park his vehicle in certain locations.
- Failed to investigate the "Black Box" in Sean's patrol vehicle to confirm that he was in the driver's seat with the seatbelt fastened during the entire stop at the railroad tracks with Ramirez – despite the fact that Sean specifically requested that they do so.
- Failed to take into consideration that Sean was excluded from DNA evidence taken from Ramirez and that there was no other DNA evidence linking Sean to any of the other Accusers.

300.    Moreover, the alleged assaults took place in a very high crime area of Phoenix where drug sales and use were prevalent. Both dealers and users of drugs, especially Fentanyl, in that area were anxious to get rid of Sean and his crusade against such drugs. COP failed to investigate this situation and failed to take it into consideration in the course of its investigation.

301.    COP's investigations of the Accusers' allegations were one-sided and biased against Sean from the beginning.

**COP SETTLES THE CIVIL SUITS BROUGHT BY LEE AND GUTIERREZ FOR HUNDREDS OF THOUSANDS OF DOLLARS EACH WITHOUT CONDUCTING ANY DISCOVERY**

302.    COP reached agreements to settle the lawsuits brought by Lee and Gutierrez for $425,000 each.

303.    COP did not conduct any discovery in the lawsuits, and both cases were dismissed after settlement.

304.    Lee's case was filed originally on November 25, 2020 in the Maricopa Superior Court, Case # CV2020-015466.

305.    Lee's case was removed to the United States District Court of Arizona on December 22, 2020 in case # 2:20-cv-02456.

306.    COP City Council approved settlement to Lee on June 2, 2021 as part of their Formal Meeting on the same date.

307.    The case was dismissed on June 17, 2021 after COP settled with Lee and agreed to pay her four hundred twenty-five thousand dollars ($425,000).

308.    Gutierrez filed her lawsuit in Maricopa Superior Court on June 18, 2021 – one day after Lee's lawsuit had been dismissed.

309.    Gutierrez' lawsuit was removed to the United States District Court of Arizona in case # 2:21-cv-01297.

37

310.     Again, no discovery was performed in Gutierrez' case.

311.     In fact, COP did not file any responsive pleading.

312.     COP City Council approved settlement to Gutierrez on November 17, 2021 as part of their Formal Meeting on the same date.

313.     The parties to Gutierrez' case stipulated to dismiss the case on November 30, 2021.

314.     Again, COP paid Gutierrez four hundred twenty-five thousand dollars ($425,000).

315.     COP took no action to dispute the accusations of Lee and Gutierrez.

316.     COP did not investigate the damages alleged by either Lee or Gutierrez, or whether either of those Accusers had sustained any damages.

317.     COP could and would have won both of these lawsuits had it taken them to trial.

## THE PROSECUTION

318.     COP needed to secure criminal convictions of Sean in order to justify its total payments of eight hundred fifty thousand dollars ($850,000) to Lee and Gutierrez.

319.     As discussed herein, Maricopa, COP, the Prosecutors, and Walker lacked probable cause to bring any charges against Sean based on the false accusations of Ramirez, Lee and Gutierrez.

320.     COP had closed its investigation into the accusations of Ramirez due to a lack of evidence.

321.     Walker admitted to Sean that there was no probable cause to bring charges based on Ramirez' accusations. Walker told Sean at a December 4, 2019 interview that the Ramirez case was closed because it "cannot be proved."

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

322.     Neither COP nor the Prosecutors obtained any additional evidence to support Ramirez' accusations.

323.     Even though COP and its investigators had concluded there was no evidence of wrongdoing on the part of Sean and thus no probable cause to charge him based on Ramirez' accusations, they nonetheless chose to proceed with a *criminal prosecution* with a "beyond a reasonable doubt" standard of proof.

324.     Maricopa and the Prosecutors decided to prosecute Sean for alleged sexual assault based on the accusations of Ramirez and Lee.

325.     Maricopa, COP, and the Prosecutors knew they did not have probable cause to arrest or proceed with prosecution based upon the accusations of either Ramirez or Lee.

326.     COP and Walker admittedly had no probable cause with respect to Ramirez's accusations.

327.     Nor did they have probable cause with respect to Lee's accusations. As discussed herein, Lee was heavily intoxicated on fentanyl, a hallucinogenic drug, at the time of her alleged assault, and her story changed substantially every time she spoke about it. Her various descriptions would have made the alleged assault physically impossible. And she had already received a huge payout from COP.

328.     The entirety of the Probable Cause ("PC") statement relied upon by COP, Walker, Maricopa, and the Prosectuors for Ramirez and Lee states:

> On 8/26/18, Victim A (an adult female) reported to Phoenix Police an allegation of sexual assault by the officer who arrested her earlier that day. Victim A was arrested by Officer Sean Pena for an outstanding felony warrant out of Yavapai County after she was stopped in a city park after hours. Pena was the primary unit for this call, with assistance from another officer. Pena transported Victim A to the South Mountain Precinct for prisoner processing, then to the Fourth Avenue Jail. Victim A alleged that Pena forced oral/penile sex while she was handcuffed in the back of his patrol vehicle and they were stopped at the railroad tracks near Third Avenue and Buchanan Street. A sexual assault examination was completed

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

on Victim A and the evidence sent to the crime lab for processing. Pena's DNA profile was excluded from the profiles found on the evidence swabs. Pena adamantly denied the allegations of sexual assault or having any sexual contact with Victim A. He also stated it was Victim A who offered him oral sex if he would release her. The video surveillance obtained from multiple locations could not corroborate or refute the allegations.

2019-2028342

On 11/20/2019 Victim B (an adult female) reported she was sexually abused by an on-duty Phoenix Police Officer who had contact with her in June 2019. Victim B reported the Officer touched her breasts and had her masturbate his penis when he was alone with her. Victim B was contacted in June 2019 reference a check welfare call (CFS# 19000934327), which was placed on her for wandering around in the street near 23rd and St. Anne Avenues. Victim B was transported from that area by Officer Sean Pena to South 11th Avenue and West Lynne Lane, where the sexual contact allegedly occurred after she was released from his custody. A friend of Victim B's, was interviewed and stated, Victim B called her that night and told her some details of the incident with Pena. AVL records from Pena's patrol vehicle corroborated that he was at the drop-off location for approximately ten minutes. No biological evidence was found in the patrol vehicle upon examination by the crime lab staff. There was no other evidence which would serve to corroborate or refute this allegation. Pena denied the allegations of engaging in any sexual conduct with Victim B.

329.    This PC statement was submitted to the South Mountain Justice Court in Phoenix, Arizona as the basis for Sean's arrest on March 9, 2020.

330.    Both PC statements for Ramirez and Lee state that there was no DNA or other evidence to corroborate the allegations made against Sean.

331.    The State later decided to prosecute Sean based upon the false accusations of Gutierrez.

332.    The PC statement for Gutierrez was a majority of a copy and paste from police reports.

40

333.    COP, Walker, Maricopa, and the Prosecutors disregarded the fact that Gutierrez came forward with her allegations only after the Phoenix local news ran a story about Sean's indictments on Lee's and Ramirez' allegations.

334.    Gutierrez' did not report the alleged assault for nearly one year after her encounter with Sean.

335.    The PC statement further states that Gutierrez was able to identify Sean in a photo lineup.

336.    This is unsurprising.

337.    On June 25, 2020 KTAR posted an article detailing the criminal charges against Sean.

338.    On July 23, 2020 at 10:30am, KTAR posted another news article with the headline "Phoenix PD fires officer accused of sex crimes against women in his custody."

339.    Gutierrez' police report to Ratko Aleksis was reported on July 23, 2020 at approximately 7:00 P.M.

340.    Furthermore, the ties between Lee and Gutierrez become clear from the evidence and statements by Maupin that he was working with another Victim to come forward.

341.    Upon information and belief, she already had.

342.    The fix was in and Maupin was able to direct both Lee and Gutierrez to a local attorney for the purposes of filing a civil suit for both against COP and Sean.

**THE MISLEADING GRAND JURY PRESENTATIONS**

343.    A Grand Jury convened on June 19, 2020 to consider charges based upon the accusations of Ramirez and Lee.

344.    Michael Baker and Samantha Caplinger presented to this Grand Jury.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

345.     A second Grand Jury convened on August 12, 2020 to consider charges based upon the accusations of all three of the Accusers.

346.     Grand Jury Prosecutors Samantha Caplinger and Sandra Anderson presented to this Grand Jury.

347.     None of the Accusers was presented separately to a grand jury, instead, their accusations were presented only in combination with the accusations of one or more of the other Accusers.

348.     Sean was precluded from providing his statement to both Grand Juries

349.     The State's only witness to the Grand Juries was Detective Walker.

350.     Walker relayed the false accusations of Ramirez, Lee and Gutierrez, and his investigation.

351.     The Grand Jury Prosecutors did not present to the Grand Jury clearly exculpatory evidence of which the State was aware. For example, the Grand Jury was not presented evidence that:

- Sean passed a polygraph test in which he denied ever having sexual contact with anyone while on duty as a Phoenix Police Officer.
- Both Ramirez and Lee were intoxicated on extremely potent and hallucinogenic drugs at the times they were allegedly assaulted.
- Ramirez had a unique history of making reports of sexual assault following bouts of intoxication.
- Surveillance video showed a white car driving past Sean's patrol vehicle which was stopped on a public street at the exact moment Sean was allegedly standing at the backseat door assaulting Ramirez.
- The accounts of all three Accusers would have necessitated Sean exposing his firearm, his Taser, and his pepper spray to the alleged victim.
- Lee's account of her alleged assault changed substantially from her first to her second interview.
- Lee had just lost her children to DCS and was not only extremely intoxicated but also despondent and angry with authorities at the time of the alleged assault.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

42

- Lee had gone to the location of the alleged assault in order to buy more fentanyl, and was angry that Sean and the other officers had interrupted her efforts.
- No biological evidence was found in Sean's patrol vehicle upon examination by COP's Police Department Crime Lab. Several items of evidence were examined in the lab for semen and none was found.
- Lee and Gutierrez were motivated by financial gain to make their accusations.
- It would have been physically impossible to commit the alleged assaults based on the statements given by Sean's Accusers.
- Sean was on the phone for at least thirty (30) seconds with his partner, Felix, during the one minute and thirty-nine second stop at the railroad tracks while transporting Ramirez.
- Investigators had failed to check the Black Box in Sean's patrol vehicle to see whether Sean's seatbelt was fastened while parked at the railroad tracks – despite Sean's request that they do so.
- There was extensive media coverage of Sean's first indictment immediately before Gutierrez made her accusations against Sean.
- The DNA results from the Ramirez investigation specifically excluded Sean.

352.     Walker and the Prosecutors presented misleading testimony about the DNA evidence to the Grand Juries for the purpose of obtaining indictments.

353.     The Prosecutors were motivated by the need to justify COP's settlements with Sean's Accusers, by the Me Too movement, and by the USDOJ's investigation.

## THE CRIMINAL TRIALS

354.     Sean maintained his innocence throughout the prosecution.

355.     The State went to trial against Sean in May, 2022 on charges of sexual assault based on the accusations of Ramirez, Lee and Gutierrez.

356.     The testimony of the three Accusers at trial differed substantially from the second-hand (hearsay) accounts of their accusations that Walker told the Grand Jury.

357.     At the end of trial the jury found Sean not guilty of sexually assaulting Lee.

358.     The jury did not reach a verdict of the charges based on the accusations of Ramirez and Gutierrez.

43

359.     The State again went to trial against Sean in August 2022 based on the accusations of Ramirez and Gutierrez.

360.     The testimony given by the three Accusers at the Second Trial differed substantially from the testimony they gave at the First Trial.

361.     In a desperate effort to boost her credibility at the second trial, Gutierrez testified that she had been "reminded" after the first trial that there was another person present at her house when she told her fiancé that she had been assaulted by Sean.

362.     Stunningly, Defendant Roseberry admitted that Gutierrez had told him about this alleged witness at least a week prior to her admission, but he did not disclose this information to counsel for Sean.

363.     During trial defense counsel got access to a text message the alleged witness sent to Gutierrez in which he told her "…I'll be your slave at the snap of a finger."

364.     As an alleged "victim" Gutierrez was allowed to sit through and listen to the testimony of all the witnesses at both trials. She then adjusted her testimony accordingly. After hearing Sean testify at the First trial that she had told him about her violent and abusive fiancé, she insisted at the Second trial that she "never said anything about domestic violence."  She went on to testify under oath that her fiancé was "four feet tall" and she wasn't afraid of him.

365.     As noted above, Gutierrez had also told Detective Aleksis that she had contacted the Phoenix Police Department due to domestic violence.

366.     On August 19, 2020, ABC15, a Phoenix ABC News affiliate, posted a story about a woman claiming that she had been sexually assaulted by a Phoenix Police Officer during a traffic stop. The story was updated on November 19, 2020.

367.     According to the report at some point during the alleged assault, the woman cried out for someone to call the police. The woman said the Officer then slammed her up against her car and said "How you going to call the police on the damn police."

368.     Apparently inspired by the news report, Gutierrez repeatedly insisted at trial "You can't call the police on the police," as if the phrase could  cure her lack of credibility.

369.     Ramirez testified that Sean ejaculated in her mouth.

370.     When pressed on details of the alleged assault, Ramirez kept saying over and over again that "It happened real fast" and strenuously resisted providing details.

371.     Lee introduced for the first time a story that Sean had somehow pulled her into the front seat with him with the driver's side door open at the time of the alleged assault. She also admitted that it would be physically impossible for two adults to be seated in the driver's seat at the same time.

372.     At the end of the Second Trial, the jury found Sean not guilty on all charges.

373.     The jury deliberated for only approximately 30 minutes.

## COP WRONGFULLY TERMINATES SEAN'S EMPLOYMENT

374.     According to the Memorandum of Understanding adopted by COP and the Phoenix Police Department, and governing Sean's employment, any reason for termination must meet a "Just Cause" standard.

375.     According to Arizona Revised Statutes 38-1101, "Just Cause" is defined as:

(a) The employer informed the law enforcement officer of the possible disciplinary action resulting from the officer's conduct through agency manuals, employee handbooks, the employer's rules and regulations or other communications to the officer or the conduct was such that the officer should have reasonably known disciplinary action could occur.
(b) The disciplinary action is reasonably related to the standards of conduct for a professional law enforcement officer, the mission of the agency, the orderly, efficient or safe operation of the agency or the officer's fitness for duty.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

(c) The discipline is supported by a ***preponderance of evidence*** that the conduct occurred.

(d) The discipline is not excessive and is reasonably related to the seriousness of the offense and the officer's service record.

(emphasis added).

376.     "Preponderance of evidence" is an even higher standard of proof than probable cause.

377.     COP did not have probable cause to believe Sean was guilty of wrongdoing with respect to either Ramirez or Lee.

378.     COP could not prove wrongdoing on the part of Sean by a preponderance of evidence.

379.     COP fired Sean on July 27, 2020 based on the accusations of Ramirez and Lee.

380.     Sean appealed his termination by COP to the CSB.

381.     In late November and early December 2022, Hearing Officer Peter Reinstein conducted a hearing on Sean's appeal.

382.     At that time COP knew Sean had been acquitted of all charges based upon the false accusations of the three Accusers. COP knew that Sean had passed a polygraph test. But COP had already fired Sean and had paid two of his Accusers $425,000 each.

383.     COP knew that none of the Accusers was credible and that their accusations were false.

384.     COP knew that it did not have just cause to terminate Sean's employment.

385.     COP decided to destroy Sean's career in order to justify the fact that it had paid $850,000 pf taxpayer money to two demonstrable liars.

386.     Defendant Chief Jeri Williams testified at the hearing that she had served as the Chief of PPD for six years retiring on October 31, 2022.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

387.     Chief Williams further testified that one of her duties as Police Chief included disciplinary decisions.

388.     Chief Williams testified that she conducted a Loudermill Hearing on July 2nd, 2020, to determine the discipline for Sean.

389.     Chief Williams stated that she considered both the SID and PSB investigations in making her decision.

390.     Chief Williams testified that she also considered that the Appellant had been indicted by a Grand Jury.

391.     She stated that she believed that a police officer who had been indicted could not be retained by the department.

392.     Chief Williams stated that the fact that Appellant was ultimately acquitted of the charges would not change her decision given the different standards of proof required.

393.     If fact, the standard of proof applicable to her decision was "preponderance of evidence," which is a different and higher standard of proof than "probable cause."

394.     Chief Williams further testified that she signed the Discipline Notice dated July 27, 2020, wherein Sean was terminated from his employment as a Phoenix police officer.

395.     She believed that the level of discipline imposed was not excessive and reasonably related to the offenses despite the complete lack of evidence and the clearly false and wildly inconsistent statements of Sean's Accusers.

396.     On December 12, 2022, Hearing Officer Reinstein issued a report recommending that the Civil Service Board affirm Sean's termination.

397.     Reinstein's recommendation was unsupported by the evidence and was unsupportable.

398.     Reinstein reached the incredible and stunning conclusion that:

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

47

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

> Neither Ms. Ramirez nor Ms. Lee possessed a motive for coming forward with their allegations against [Sean]. Ms. Ramirez and Ms. Lee received no benefit from their allegations. Ms. Lee was very reluctant to press her allegations against [Sean].

399.    As discussed herein, COP had already paid Lee $425,000 based on her allegations. That amount of money overcomes a lot of reluctance. Lee was intoxicated on fentanyl at the time of her encounter with Sean.

400.    COP did not even dispute the fact that Ramirez was high on hallucinogenic drugs and was desperate to obtain release from custody when she made her allegations.

401.    Reinstein also concluded that "Ms. Ramirez and Ms. Lee did not recant their allegations even when inconsistencies were pointed out by the investigators."

402.    In fact, as set forth herein, when Ramirez and Lee were confronted with inconsistencies, they simply changed their stories, and in dramatic fashion.

403.    Reinstein concluded that "the status of Ms. Ramirez and Ms. Lee made them relatively easy targets for exploitation." This, of course, simply ignores the fact that by serving as a beat cop in a high crime, drug infested neighborhood, Sean was also an "easy target" for false accusations by users and dealers alike.

404.    On February 22, 2023, following Sean's acquittal of all charges, the CSB voted to nonetheless affirm the termination of his employment.

405.    Only two of the five members of the CSB voted to affirm the termination of Sean's employment. One voted to re-instate Sean's employment. The other two were absent.

406.    Following the affirmation of Sean's termination, the Arizona Peace Officer Standards and Training Board requested that Sean sign a "Consent Agreement" by which he would permanently relinquish his Arizona peace officer certification.

407.    Sean declined to sign it.

48

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

**DEFENDANT CHIEF JERI WILLIAMS' HISTORY OF CONCEALING FACTS AND USING SCAPEGOATS**

408.     Jeri Williams and her executive staff – including Assistant Police Chiefs – regularly used Signal, an instant messaging app that provides encrypted messaging and the ability to delete messages with no ability to recover them.

409.     Signal was used by Jeri Williams to discuss lawsuits, or other matters that involved the fabrication of criminal charges against individuals.

410.     In fact, an ABC15 article exposed the use of the Signal application by Jeri Williams and her executive team.

411.     The Phoenix Police Director of Communications Donna Rossi said in August 2022 that, "Chief Williams asked that Signal not be used by her executive team for work-related issues and deleted her app from her phone in 2020. Chief Kurtenbach does not have the app on his work phone."

412.     This was shown to be a false statement by the Phoenix Police Department.

413.     Screenshots of the Signal application being used by Jeri Williams and her executive staff far past 2020 came to light.

414.     One of the purposes for the use of the Signal application was to discuss the fact that COP, the Maricopa County Attorney's Office, and Phoenix Police employees – including Jeri Williams – had participated in a scheme to invent charges against police protestors in 2021.

415.     Mass Liberation Arizona issued a statement regarding this, stating:

> Chief Williams not only lied about deleting the app, she actively used Signal to intentionally destroy evidence long after she claimed to have told her staff not to use the app. Chief Williams is a liar. She absolutely must not be permitted to retire in good standing; she must be fired. She must also be Brady listed immediately. No public official should be using the Signal app, least of all the chief of the nation's deadliest police department.

49

416.     In response to the scandal, Jeri Williams demoted three Assistant Police Chief to Commanders – using them as scapegoats according to a lawsuit filed in the Maricopa County Superior Court on April 18, 2022.

417.     COP – through Jeri Williams – and Maricopa County – through its employees – adopted practices to invent charges against individuals in the hopes of obtaining criminal convictions for political gain.

418.     This same pattern, practice, and policy was used in the wildly false charges levied against Sean.

419.     This same pattern, practice, and policy was used to "scapegoat" Sean in the wake of the ME TOO pressure put on COP.

420.     As discussed herein, Detective Walker actually told Sean that he needed to understand that the accusations came in the midst of the Me Too movement and that was where society was at.

421.     This is due to the pattern, practice, and policy pushed by Jeri Williams and COP to find scapegoats to offer to the public to avoid public scrutiny.

422.     This pattern, practice, and policy was further emboldened by the fact that COP and Phoenix Police Officer Anthony Armour were directly in the middle of another sexual assault case brought by a member of the public against Armour in the District Court of Arizona case entitled Anderson v. Armour (2:16-cv-03563).

423.     Armour was not terminated.

424.     That case was filed in October 14, 2016 and was heating up towards trial at the time that Sean was fired by Jeri Williams.

## THE AFTERMATH

425.     As the result of the Defendants' conduct alleged herein, Sean's life was left in ruins.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

426.     Sean had been married for only three weeks when Ramirez made her false accusations against Sean.

427.     Sean had intended to serve a full 25 years as a Phoenix Police Officer, and then retire with a pension in the same manner as his father.

428.     Instead, Sean's career in law enforcement was destroyed by Defendants.

429.     His good reputation was ruined.

430.     His ability to earn income to support his family has been severely and irreparably impaired.

431.     His ability to earn his retirement pension was taken away from him.

432.     Following his termination by COP, Sean started a small business selling custom dog houses.

433.     A customer complained to a local television news program, KTVK's Arizona's Family, about Sean's delay in providing a doghouse she had ordered.

434.     In fact, the delay was attributable to the fact that Sean was busy defending himself from the wrongful and malicious prosecution described herein.

435.     Arizona's Family aired the customer's complaint on television, including the customer's statement that she had researched Sean's background and discovered the accusations made by Ramirez, Lee and Guttierez. She cited those accusations as a reason not to do business with Sean. Arizona's Family likewise implied on the broadcast that Sean was an infamous person.

436.     Sean's dog house business was forced to close down.

437.     The Arizona's Family broadcast incident demonstrates in part the extent to which Sean's capacity to earn income has been damaged and impaired by Defendants' conduct.

438.    Sean has been forced to seek counseling due to the stress brought on by Defendants' conduct.

439.    Sean has been diagnosed with post-traumatic stress disorder and has been forced to receive treatment as a direct and proximate result of Defendants' conduct.

440.    Sean was paid $27.74 per hour at the time and was also paid overtime.

441.

442.    Sean had fringe benefits including without limitation health insurance, medical expense reimbursement, and vacation leave which would have increased depending on his years of service:

- 1-5 Years of Service = 8 hours per month (96 hours/year)
- 6-10 Years of Service = 10 hours per month (120 hours/year)
- 11-15 Years of Service = 11 hours per month (132 hours/year)
- 16-20 Years of Service = 13 hours per month (152 hours/year)
- 21 Years+ = 15 hours per month (180 hours/year)

443.    Many of those benefits would have continued after Sean's retirement.

444.    Sean's lifelong goal was to become a Detective with COP.

445.    Each promotion brings with it a pay increase.

446.    After 25 years, Sean could have retired with a full pension.

447.    According to a 2017 news article from AZCentral.com, the average pension for Phoenix Police employees was approximately $63,000 per year at that time.

448.    That amount will increase substantially by the time Sean reaches retirement age.

449.    Furthermore, Phoenix Police Officers can participate in a deferred retirement option plan ("DROP") by working an additional seven years.

450.    By doing so, they are eligible for an additional lump sum payment.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

451.     Pension payments that would have been paid to a retiree not in the DROP system are deposited into a fund that guarantees a return rate of between approximately 6.6 to 7.4 percent.

452.     Once the DROP participant officially ends his/her employment, the amount deposited plus interest is paid to the employee as a lump sum payment.

453.     After receiving his DROP payment, Sean would have then received his yearly pension for each year thereafter.

### COUNT I – WRONGFUL TERMINATION/BREACH OF EMPLOYMENT AGREEMENT
### (COP)

454.     Sean restates and re-alleges the allegations of Paragraphs 1 through ____ above as if fully set forth herein.

455.     Sean was employed as a Police Officer by COP pursuant to a written agreement called a Memorandum of Understanding ("MOU").

456.     The MOU is an enforceable contract governing the rights and obligations of COP and Sean pertaining to his employment.

457.     Pursuant to the terms of the MOU, COP could terminate Sean's employment only for "just cause."

458.     COP breached the MOU by terminating Sean's employment without just cause.

459.     As a direct result of COP's breach of the MOU, Sean sustained damages in an amount to be proven at trial.

### COUNT II – BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING
### (COP)

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

53

460.     Plaintiff incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

461.     Sean's employment agreement with COP contained a duty to act fairly and good faith.

462.     This duty required that COP not do anything that would prevent Sean from receiving the benefits of the agreement.

463.     COP breached its duty of good faith and fair dealing by failing to give Sean a fair and reasonable opportunity to demonstrate that the termination of is employment was not supported by just cause, and by ignoring the evidence of Sean's innocence of the accusations made against him.

464.     As a direct result of COP's breach of the duty of good faith and fair dealing, Sean sustained damages in an amount to be proven at trial.

### COUNT III -- MALICIOUS PROSECUTION -- RAMIREZ (COP, WALKER, MARICOPA, PROSECUTORS, AND RAMIREZ)

465.     Plaintiff incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

466.     Defendants COP, Walker, County, the Prosecutors and Ramirez instituted and continued criminal proceedings against Sean.

467.     The criminal proceedings ended in favor of Sean with his acquittal on all charges.

468.     The criminal proceedings were brought as a result of false accusations of sexual misconduct made by Ramirez.

469.     Defendants COP, Walker, Maricopa, the Prosecutors and Ramirez did not have probable cause to institute the criminal proceedings against Sean.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

470.     COP, Walker, Maricopa, and the Prosecutors knew or were reckless in not knowing that the accusations of Ramirez were false.

471.     Neither COP, Walker, Maricopa, the Prosecutors, or Ramirez believed in good faith that the accusations were true or that Sean was guilty of the crimes with which he was charged.

472.     A reasonable person under the same or similar circumstances would not have believed that Sean was guilty of the crimes with which he was charged.

473.     COP, Walker, Maricopa, and the Prosecutors were able to secure indictments against Sean only by knowingly presenting to the Grand Jury the false accusations of Ramirez, and by failing to present to the Grand Jury clearly exculpatory evidence demonstrating that the accusations were false and that Ramirez was not credible.

474.     Walker and the Prosecutors presented false and/or misleading testimony to the Grand Juries for the purpose of obtaining indictments.

475.     COP, Walker, Maricopa, the Prosecutors, and Ramirez acted with malice in instituting and continuing criminal proceedings against Sean.

476.     Ramirez' primary motives in making her accusations against Sean was to avoid prosecution and punishment for her own crimes and her personal hatred of Sean.

477.     As discussed herein, COP, Walker, Maricopa, and the Prosecutors were primarily motivated by the desire to create the appearance that they were rooting out "bad cops" without regard to the credibility of the Accusers. They were also motivated to justify COP's payment of hundreds of thousands of dollars to Lee and Gutierrez.

478.     As a direct and proximate result of the criminal prosecution Sean was forced to spend substantial amounts of time and money defending himself. Sean also suffered, among other things, public humiliation, the loss of his career and the permanent impairment

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

of his ability to secure gainful employment. Sean sustained damages in an amount to be proven at trial.

## COUNT IV – MALICIOUS PROSECUTION – LEE
## (COP, WALKER, MARICOPA, PROSECUTORS, AND LEE)

479.     Plaintiff incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

480.     Defendants COP, Walker, Maricopa, the Prosecutors, and Lee instituted and continued criminal proceedings against Sean.

481.     The criminal proceedings ended in favor of Sean with his acquittal on all charges.

482.     The criminal proceedings were brought as a result of false accusations of sexual misconduct made by Lee.

483.     Defendants COP, Walker, Maricopa, the Prosecutors,  and Lee did not have probable cause to institute the criminal proceedings against Sean.

484.     COP, Walker, Maricopa, and the Prosecutors knew or were reckless in not knowing that the accusations of Lee  were false.

485.     Neither COP, Walker, Maricopa, the Prosecutors, or Lee believed in good faith that the accusations were true or that Sean was guilty of the crimes with which he was charged.

486.     A reasonable person under the same or similar circumstances would not have believed that Sean was guilty of the crimes with which he was charged.

487.     COP, Walker, Maricopa, and the Prosecutorswere able to secure indictments against Sean only by knowingly presenting to the Grand Jury the false accusations of Lee, and by failing to present to the Grand Jury clearly exculpatory evidence demonstrating that the accusations were false and that Lee was not credible.

488.    Walker and the Prosecutors presented false and/or misleading testimony to the Grand Juries for the purpose of obtaining indictments.

489.    COP, Walker, Maricopa, the Prosecutors, and Lee acted with malice in instituting and continuing criminal proceedings against Sean.

490.    Lee's primary motives in making her accusations against Sean was financial gain.

491.    As discussed herein, COP, Walker, Maricopa, and the Prosecutors were primarily motivated by the desire to create the appearance that they were rooting out "bad cops" without regard to the credibility of the Accusers. They were also motivated to justify COP's payment of hundreds of thousands of dollars to Lee and Gutierrez.

492.    As a direct and proximate result of the criminal prosecution Sean was forced to spend substantial amounts of time and money defending himself. Sean also suffered, among other things, public humiliation, the loss of his career and the permanent impairment of his ability to secure gainful employment. Sean sustained damages in an amount to be proven at trial.

## COUNT V – MALICIOUS PROSECUTION – GUTIERREZ
## (COP, WALKER, MARICOPA, PROSECUTORS, AND GUTIERREZ)

493.    Plaintiff incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

494.    Defendants COP, Walker, Maricopa, the Prosecutors, and Gutierrez instituted and continued criminal proceedings against Sean.

495.    The criminal proceedings ended in favor of Sean with his acquittal on all charges.

496.    The criminal proceedings were brought as a result of false accusations of sexual misconduct made by Gutierrez.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

497.     Defendants COP, Walker, Maricopa, the Prosecutors, and Gutierrez did not have probable cause to institute the criminal proceedings against Sean.

498.     COP, Walker, Maricopa, and the Prosecutors knew or were reckless in not knowing that the accusations of Gutierrez were false.

499.     Neither COP, Walker, Maricopa, the Prosecutors, or Gutierrez believed in good faith that the accusations were true or that Sean was guilty of the crimes with which he was charged.

500.     A reasonable person under the same or similar circumstances would not have believed that Sean was guilty of the crimes with which he was charged.

501.     COP, Walker, Maricopa, and the Prosecutors were able to secure indictments against Sean only by knowingly presenting to the Grand Jury the false accusations of Gutierrez, and by failing to present to the Grand Jury clearly exculpatory evidence demonstrating that the accusations were false and that Gutierrez was not credible.

502.     Walker and the Prosecutors presented false and/or misleading testimony to the Grand Juries for the purpose of obtaining indictments.

503.     COP, Walker, Maricopa, the Prosecutors, and Gutierrez acted with malice in instituting and continuing criminal proceedings against Sean.

504.     Gutierrez' primary motive in making her accusations against Sean was financial gain.

505.     As discussed herein, COP, Walker, Maricopa, and the Prosecutors were primarily motivated by the desire to create the appearance that they were rooting out "bad cops" without regard to the credibility of the Accusers. They were also motivated to justify COP's payment of hundreds of thousands of dollars to Lee and Gutierrez.

506.     As a direct and proximate result of the criminal prosecution Sean was forced to spend substantial amounts of time and money defending himself. Sean also suffered,

among other things, public humiliation, the loss of his career and the permanent impairment of his ability to secure gainful employment. Sean sustained damages in an amount to be proven at trial.

### COUNT VI – ABUSE OF PROCESS -- RAMIREZ
### (COP, WALKER, MARICOPA, PROSECUTORS, AND RAMIREZ)

507.     Plaintiff incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

508.     COP, Walker, Maricopa, the Prosecutors, and Ramirez brought criminal proceedings against Sean in Maricopa County Superior Court.

509.     As alleged herein, COP, Walker, Maricopa, the Prosecutors, and Ramirez used the criminal proceedings primarily to accomplish a purpose for which the process was not designed.

510.     Ramirez' primary motives in making her accusations against Sean was to avoid prosecution and punishment for her own crimes and her personal hatred of Sean.

511.     As discussed herein, COP, Walker, Maricopa, and the Prosecutors were primarily motivated by the desire to create the appearance that they were rooting out "bad cops" without regard to the credibility of the Accusers. They were also motivated to justify COP's payment of hundreds of thousands of dollars to Lee and Gutierrez.

512.     As a direct and proximate result of this misuse of the legal process Sean was forced to spend substantial amounts of time and money defending himself. Sean also suffered, among other things, public humiliation, the loss of his career and the permanent impairment of his ability to secure gainful employment. Sean sustained damages in an amount to be proven at trial.

### COUNT VII – ABUSE OF PROCESS – LEE
### (COP, WALKER, MARICOPA, PROSECUTORS,  AND LEE)

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

59

513.     Plaintiff incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

514.     COP, Walker, Maricopa, the Prosecutors,   and Lee brought criminal proceedings against Sean in Maricopa County Superior Court.

515.     As alleged herein, COP, Walker, Maricopa, the Prosecutors, and Lee used the criminal proceedings primarily to accomplish a purpose for which the process was not designed.

516.      Lee's primary motive in making her accusations against Sean was financial gain.

517.     As discussed herein, COP, Walker, Maricopa, and the Prosecutors were primarily motivated by the desire to create the appearance that they were rooting out "bad cops" without regard to the credibility of the Accusers. They were also motivated to justify COP's payment of hundreds of thousands of dollars to Lee and Gutierrez.

518.     As a direct and proximate result of this misuse of the legal process Sean was forced to spend substantial amounts of time and money defending himself. Sean also suffered, among other things, public humiliation, the loss of his career and the permanent impairment of his ability to secure gainful employment. Sean sustained damages in an amount to be proven at trial.

## COUNT VIII – ABUSE OF PROCESS – GUTIERREZ
## (COP, WALKER, MARICOPA, PROSECUTORS AND GUTIERREZ)

519.     Plaintiff incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

520.     COP, Walker, Maricopa, the Prosecutors, and Gutierrez brought criminal proceedings against Sean in Maricopa County Superior Court.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

521.     As alleged herein, COP, Walker, Maricopa, the Prosecutors, and Gutierrez used the criminal proceedings primarily to accomplish a purpose for which the process was not designed.

522.     Gutierrez' primary motive in making her accusations against Sean was financial gain.

523.     As discussed herein, COP, Walker, Maricopa, and the Prosecutors were primarily motivated by the desire to create the appearance that they were rooting out "bad cops" without regard to the credibility of the Accusers. They were also motivated to justify COP's payment of hundreds of thousands of dollars to Lee and Gutierrez.

524.     As a direct and proximate result of this misuse of the legal process Sean was forced to spend substantial amounts of time and money defending himself. Sean also suffered, among other things, public humiliation, the loss of his career and the permanent impairment of his ability to secure gainful employment. Sean sustained damages in an amount to be proven at trial.

## COUNT IX – ABUSE OF PROCESS
## (LEE AND GUTIERREZ)

525.     Plaintiff incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

526.     Lee and Gutierrez, brought civil actions against Sean as alleged herein.

527.     The primary purpose of the civil proceedings was to obtain money damages based upon the false accusations of Ramirez, Lee and Gutierrez.

528.     Civil proceedings in Arizona were not designed for such purposes.

529.     Defendants' use of civil proceedings in this manner was wrongful.

530.     Those civil proceedings were motivated by malice in that both Lee and Ramirez were angry that a) Sean had either arrested them or attempted to have them

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

61

become informants to assist in arresting others; b) Lee had her children removed from her custody by DCS on the very same day that Sean arrested her; and, c) Lee was angry that Sean stopped her from obtaining drugs

531.    The civil proceedings were begun and maintained without probable cause.

532.    The civil proceedings were based on the false accusations of Ramirez, Lee and Gutierrez.

533.    Ramirez, Lee and Gutierrez were not credible.

534.    A reasonable investigation of the claims of Ramirez, Lee and Gutierrez would have demonstrated that the claims were false and that the Accusers were not credible.

535.    The civil proceedings were terminated on June 17, 2021 and December 2, 2021 when the civil actions of Lee and Gutierrez were dismissed with prejudice.

536.    As a direct and proximate result of this misuse of the legal process, Sean suffered, among other things, public humiliation, the loss of his career and the permanent impairment of his ability to secure gainful employment. Sean sustained damages in an amount to be proven at trial.

### COUNT X – TORTIOUS INTERFERENCE WITH CONTRACT AND REASONABLE BUSINESS EXPECTANCY (ALL DEFENDANTS EXCEPT COP)

537.    Plaintiff incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

538.    Each of the Defendants knew that Sean was employed as a Police Officer by COP.

539.    Sean was employed by COP pursuant to a written employment agreement.

540.    Sean had a reasonable expectation of continued employment by COP.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

541.     Each of the Defendants knew that Sean had an employment agreement with COP and/or that he had a reasonable expectancy of continued employment by COP.

542.     Each of the Defendant knowingly and intentionally interfered with Sean's employment agreement with COP and with Sean's reasonable expectancy of continuing employment by COP by the conduct of each alleged herein.

543.     Each of these Defendants' interference was wrongful and without legal privilege or justification.

544.     As a direct and proximate result of Defendants' tortious interference, Sean suffered, among other things, the loss of his employment and career as a Police officer, the permanent impairment of his ability to earn income, public humiliation and emotional distress,and the time and expense associated with defending himself against false claims. Sean sustained damages in an amount to be proven at trial.

### COUNT XI – FALSE ARREST AND IMPRISONMENT 03/09/2020
### (COP AND MARICOPA COUNTY)

545.     Plaintiff incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

546.     COP Police Officers arrested Sean on March 9, 2020 for the alleged sexual assault of Lee.

547.     Sean was booked into the Fourth Avenue Jail, which is operated by the Maricopa County Sheriff's Office.

548.     COP acted intentionally to restrain Sean to an area within COP's control.

549.     Maricopa County acted intentionally to restrain Sean to an area within Maricopa County's control.

550.     Both COP and Maricopa County acted without lawful authority and without Sean's consent.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

551.     The acts of COP and Maricopa County resulted in the direct restraint of Sean's liberty or freedom of movement, either by actual force or from Sean's fear of force.

552.     The acts of COP and Maricopa County would have caused a reasonably prudent person in the same situation as Sean to believe that he was restrained.

553.     Sean was aware of and was harmed by the restraint.

554.     As a direct and proximate result of his false imprisonment by COP and by Maricopa County Sean sustained damages in an amount to be proven at trial.

## COUNT XII – FALSE ARREST AND IMPRISONMENT 7/24/20
## (COP AND MARICOPA)

555.     Plaintiff incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

556.     On July 24, 2020, COP Police Officers arrested Sean for the alleged sexual assault of Gutierrez.

557.     Sean was again booked into the Fourth Avenue Jail.

558.     COP acted intentionally to restrain Sean to an area within COP's control.

559.     Maricopa acted intentionally to restrain Sean to an area within Maricopa County's control.

560.     Both COP and Maricopa acted without lawful authority and without Sean's consent.

561.     The acts of COP and Maricopa resulted in the direct restraint of Sean's liberty or freedom of movement, either by actual force or from Sean's fear of force.

562.     The acts of COP and Maricopa would have caused a reasonably prudent person in the same situation as Sean to believe that he was restrained.

563.     Sean was aware of and was harmed by the restraint.

564.     As a direct and proximate result of his false imprisonment by COP and by Maricopa County Sean sustained damages in an amount to be proven at trial.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

## COUNT XIII – INSTIGATING OR PARTICIPATING IN FALSE ARREST AND IMPRISONMENT
### (ALL DEFENDANTS)

565.     Plaintiff incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

566.     Sean was falsely arrested and falsely imprisoned as alleged herein.

567.     Each Defendant intentionally instigated and/or participated in the unlawful restraint of Sean by his/her/its words and acts alleged herein.

568.     The words of acts of each Defendant directed, requested, invited or encouraged the act of false imprisonment.

569.     Each Defendant participated in the act of false imprisonment by aiding COP and Maricopa County in restraining Sean.

570.     COP participated in the act of false imprisonment by Maricopa by aiding Maricopa County in restraining Sean.

571.     Maricopa participated in the act of false imprisonment by COP by aiding COP in restraining Sean.

572.     As a direct and proximate result of each Defendant's instigation or participation in false arrest and imprisonment, Sean was sustained damages in an amount to be proven at trial.

## COUNT XIV – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (ALL DEFENDANTS)

573.     Plaintiff incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

574.     The conduct of each Defendant alleged herein was extreme and outrageous.

575.     The conduct of each Defendant alleged herein was intentional in that each Defendant sought to cause Sean emotional distress.

576.     The conduct of each Defendant alleged herein was reckless in that each Defendant was aware of and disregarded the near certainty that the conduct would result in emotional distress.

577.     As a direct and proximate result of each Defendant's intentional infliction of emotional distress Sean sustained damages in an amount to be proven at trial.

### COUNT XV – AIDING AND ABETTING
### (ALL DEFENDANTS)

578.     Plaintiff incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

579.     Each Defendant engaged in malicious prosecution, abuse of process, false arrest and imprisonment, and intentional infliction of emotional distress as alleged herein.

580.     Each Defendant knew that one or more of the other Defendants were engaging in malicious prosecution, abuse of process, false arrest and imprisonment, and intentional infliction of emotional distress as alleged herein.

581.     By the words and acts alleged herein, each Defendant provided substantial assistance and encouragement to such other Defendant or Defendants COP with the intent of promoting the tortious conduct.

582.     As a direct and proximate result of each Defendant's aiding and abetting Sean sustained damages in an amount to be proven at trial.

### COUNT XVI – CONSPIRACY
### (ALL DEFENDANTS)

583.     Plaintiff incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

584.     Defendants agreed to engage in a course of conduct to terminate Sean's employment, maliciously prosecute Sean and to defame and inflict emotional distress on him.

66

585.     These purposes were unlawful.

586.     Defendants used unlawful means to accomplish these purposes as described herein.

587.     As alleged herein, each of the Defendants performed overt acts in support of the conspiracy and in furtherance of its objectives.

588.     Sean was subjected to unlawful discharge from his employment, malicious prosecution, abuse of process, false arrest and imprisonment and intentional infliction of emotional distress as alleged herein.

589.     In addition, the accusations of sexual misconduct made against Sean alleged herein were false, and Defendants knew they were false.

590.     The accusations of sexual misconduct made by Maupin and Stanciel at the Press Conference and to the PNT as alleged herein were false and outrageous. Defendants knew that these accusations were false.

591.     The allegations of sexual misconduct against Sean were defamatory, and defamatory *per se* in that they were alleged sexual misconduct and disparaged Sean's performance in his job as a Police Officer.

592.     The accusations severely damaged his reputation in the community and impaired his ability to earn income.

593.     As a direct and proximate result of this defamation, Sean sustained damages in an amount to be proven at trial.

594.     By agreeing to engage in the course of conduct to accomplish the unlawful purposes described herein, each Defendant is liable for the tortious conduct of each other Defendant committed in the course of the conspiracy.

595.     As a direct and proximate result of the tortious conduct alleged in this Complaint, Sean sustained damages in an amount to be proven at trial.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

## COUNT XVII -- MALICIOUS PROSECUTION IN VIOLATION OF THE FOURTH, FIFTH, AND FOURTEENTH AMENDMENTS AND 42 U.S.C. § 1983 - RAMIREZ
### (COP, MARICOPA, PROSECUTORS, RAMIREZ, WALKER)

596.    Plaintiff incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

597.    42 U.S.C. § 1983 provides individuals with a cause of action to sue for violations of his or her constitutional rights. The 14th Amendment protects individuals from constitutional violations of State and local authorities. As incorporated by the 14th Amendment, the 4th Amendment protects individuals from malicious prosecution. The Defendants, while acting in their official capacity and individual capacities and under the color of law, violated Sean Pena's rights to freedom from malicious prosecution in regards to Cynthia Ramirez' false allegations.

598.    COP, Maricopa, the Prosecutors, Ramirez, and Walker acted willfully, knowingly, and with specific intent to deprive Sean Pena of his rights under the Fourth Amendment of the United States Constitution, including his right to be protected from malicious prosecution.

599.    COP, Maricopa, the Prosecutors, , Ramirez, and Walker acted unreasonably by failing to have PC to arrest and prosecute Sean as discussed herein.

600.    COP, Maricopa, the Prosecutors, , Ramirez, and Walker were able to secure indictments against Sean only by knowingly presenting the perjured testimony of Ramirez to the Grand Jury and by failing to present to the Grand Jury clearly exculpatory evidence demonstrating that the accusations were false and that these Accusers were not credible.

601.    Walker and the Prosecutors presented false and/or misleading testimony to the Grand Juries for the purpose of obtaining indictments.

602.    COP, Maricopa, the Prosecutors, Ramirez, and Walker acted with malice in instituting and continuing criminal proceedings against Sean.

603.    Ramirez' primary motives in making her accusations against Sean was to avoid prosecution and punishment for her own crimes and her personal hatred of Sean.

604.    As further discussed herein, the real motive to arrest and prosecute Sean was to make an example of a sacrificial lamb during the climate of this nation putting Police Departments under intense scrutiny due to the ME TOO movement, the defund the police movement, and ultimately due to the fact that COP paid both Lee and Gutierrez four hundred twenty-five thousand dollars ($425,000) each in their respective civil suits against COP and Sean and needed to secure his conviction to justify their actions.

605.    This was clearly malicious in nature.

606.    The criminal actions were brought in bad faith, and even when COP, Maricopa, the Prosecutors, Ramirez, and Walker had knowledge of the lies being perpetrated by the Accusers – including Ramirez – they pressed forward with prosecution.

607.    Roseberry hid evidence ***during Sean's second trial*** that only came to light when Gutierrez let slip on the stand that she had additional potentially exculpatory evidence and that she had given it to the Trial Prosecutors at least a week prior to her testimony.

608.    This is evidence that the prosecution was acting maliciously and in bad faith in continuing to prosecute Sean.

609.    The whole purpose of the prosecution was to save COP from a black eye in public perception.

610.    The prosecution of these criminal charges were not brought for the purpose of bringing the defendant to justice.

611.    Finally, Sean was acquitted of all charges for the allegations of Ramirez on August 15, 2022.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

612.    Sean's arrest and prosecution was the direct result of COP's, Maricopa, the Prosecutors', Ramirez', and Walker's actions and inactions.

613.    Additionally, the acts of Defendants and their employees and agents, as set forth above, demonstrate gross and wanton negligence in that each of them knew or had reason to know that their acts individually and collectively created an unreasonable risk of Constitutional violations to Sean's rights, and a high probability that substantial harm would result.

614.    In causing the utter devastation of Sean Pena's life through the malicious prosecution, Defendants and their employees and agents acted with an evil mind and a malignant heart warranting an award of punitive damages.

## COUNT XVIII -- MALICIOUS PROSECUTION IN VIOLATION OF THE FOURTH, FIFTH, AND FOURTEENTH AMENDMENTS AND 42 U.S.C. § 1983 - LEE
## (COP, MARICOPA, PROSECUTORS, LEE, WALKER)

615.    Plaintiff incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

616.    42 U.S.C. § 1983 provides individuals with a cause of action to sue for violations of his or her constitutional rights. The 14th Amendment protects individuals from constitutional violations of State and local authorities. As incorporated by the 14th Amendment, the 4th Amendment protects individuals from malicious prosecution. The Defendants, while acting in their official capacity and individual capacities and under the color of law, violated Sean Pena's rights to freedom from malicious prosecution in regards to Krystofer Lee's false allegations.

617.    COP, Maricopa, the Prosecutors,, Lee, and Walker acted willfully, knowingly, and with specific intent to deprive Sean Pena of his rights under the Fourth

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

Amendment of the United States Constitution, including his right to be protected from malicious prosecution.

618.    COP, Maricopa, the Prosecutors,, Lee, and Walker acted unreasonably by failing to have PC to arrest and prosecute Sean as discussed herein.

619.    COP, Maricopa, the Prosecutors,, Lee, and Walker were able to secure indictments against Sean only by knowingly presenting the perjured testimony of Lee to the Grand Jury and by failing to present to the Grand Jury clearly exculpatory evidence demonstrating that the accusations were false and that these Accusers were not credible.

620.    Walker and the Prosecutors presented false and/or misleading testimony to the Grand Juries for the purpose of obtaining indictments.

621.    COP, Maricopa, the Prosecutors,, Lee, and Walker acted with malice in instituting and continuing criminal proceedings against Sean.

622.    Lee's primary motives in making her accusations against Sean was to avoid prosecution and punishment for her own crimes and her personal hatred of Sean.

623.    As further discussed herein, the real motive to arrest and prosecute Sean was to make an example of a sacrificial lamb during the climate of this nation putting Police Departments under intense scrutiny due to the ME TOO movement, the defund the police movement, and ultimately due to the fact that COP paid both Lee and Gutierrez four hundred twenty-five thousand dollars ($425,000) each in their respective civil suits against COP and Sean and needed to secure his conviction to justify their actions.

624.    This was clearly malicious in nature.

625.    The criminal actions were brought in bad faith, and even when COP, Maricopa, the Prosecutors,, Lee, and Walker had knowledge of the lies being perpetrated by the Accusers – including Lee – they pressed forward with prosecution.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

626.     Roseberry hid evidence ***during Sean's second trial*** that only came to light when Gutierrez let slip on the stand that she had additional potentially exculpatory evidence and that she had given it to the prosecutors at least a week prior to her testimony.

627.     This is evidence that the prosecution was acting maliciously and in bad faith in continuing to prosecute Sean.

628.     The whole purpose of the prosecution was to save COP from a black eye in public perception.

629.     The prosecution of these criminal charges were not brought for the purpose of bringing the defendant to justice.

630.     Finally, Sean was acquitted of all charges for the allegations of Lee on May 19, 2022.

631.     Sean's arrest and prosecution was the direct result of COP's, Maricopa's, Prosecutors', Lee's, and Walker's actions and inactions.

632.     Additionally, the acts of Defendants and their employees and agents, as set forth above, demonstrate gross and wanton negligence in that each of them knew or had reason to know that their acts individually and collectively created an unreasonable risk of Constitutional violations to Sean's rights, and a high probability that substantial harm would result.

633.     In causing the utter devastation of Sean Pena's life through the malicious prosecution, Defendants and their employees and agents acted with an evil mind and a malignant heart warranting an award of punitive damages.

### COUNT XIX -- MALICIOUS PROSECUTION IN VIOLATION OF THE FOURTH, FIFTH, AND FOURTEENTH AMENDMENTS AND 42 U.S.C. § 1983 - GUTIERREZ (COP, MARICOPA, PROSECUTORS, GUTIERREZ, WALKER)

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

634.    Plaintiff incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

635.    42 U.S.C. § 1983 provides individuals with a cause of action to sue for violations of his or her constitutional rights. The 14th Amendment protects individuals from constitutional violations of State and local authorities. As incorporated by the 14th Amendment, the 4th Amendment protects individuals from malicious prosecution. The Defendants, while acting in their official capacity and individual capacities and under the color of law, violated Sean Pena's rights to freedom from malicious prosecution.

636.    COP, Maricopa, the Prosecutors,, Gutierrez, and Walker acted willfully, knowingly, and with specific intent to deprive Sean Pena of his rights under the Fourth Amendment of the United States Constitution, including his right to be protected from malicious prosecution.

637.    COP, Maricopa, the Prosecutors,, Gutierrez, and Walker acted unreasonably by failing to have PC to arrest and prosecute Sean as discussed herein.

638.    COP, Maricopa, the Prosecutors,, Gutierrez, and Walker were able to secure indictments against Sean only by knowingly presenting the perjured testimony of Ramirez, Lee and Gutierrez to the Grand Jury and by failing to present to the Grand Jury clearly exculpatory evidence demonstrating that the accusations were false and that these Accusers were not credible.

639.    Walker and the Prosecutors presented false and/or misleading testimony to the Grand Juries for the purpose of obtaining indictments.

640.    COP, Maricopa, the Prosecutors,, Gutierrez, and Walker acted with malice in instituting and continuing criminal proceedings against Sean.

641.    Gutierrez' primary motives in making her accusations against Sean was to avoid prosecution and punishment for her own crimes and her personal hatred of Sean.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

73

642.     As further discussed herein, the real motive to arrest and prosecute Sean was to make an example of a sacrificial lamb during the climate of this nation putting Police Departments under intense scrutiny due to the ME TOO movement, the defund the police movement, and ultimately due to the fact that COP paid both Lee and Gutierrez four hundred twenty-five thousand dollars ($425,000) each in their respective civil suits against COP and Sean and needed to secure his conviction to justify their actions.

643.     This was clearly malicious in nature.

644.     The criminal actions were brought in bad faith, and even when COP, Maricopa, the Prosecutors,, Gutierrez, and Walker had knowledge of the lies being perpetrated by the Accusers – including Gutierrez – they pressed forward with prosecution.

645.     Roseberry hid evidence ***during Sean's second trial*** that only came to light when Gutierrez let slip on the stand that she had additional potentially exculpatory evidence and that she had given it to the Trial Prosecutors at least a week prior to her testimony.

646.     This is evidence that the prosecution was acting maliciously and in bad faith in continuing to prosecute Sean.

647.     The whole purpose of the prosecution was to save COP from a black eye in public perception.

648.     The prosecution of these criminal charges were not brought for the purpose of bringing the defendant to justice.

649.     Finally, Sean was acquitted of all charges for the allegations of Gutierrez on August 15, 2022.

650.     Sean's arrest and prosecution was the direct result of COP's, Maricopa's, the Prosecutors', Gutierrez', and Walker's actions and inactions.

651.     Additionally, the acts of Defendants and their employees and agents, as set forth above, demonstrate gross and wanton negligence in that each of them knew or had

74

reason to know that their acts individually and collectively created an unreasonable risk of Constitutional violations to Sean's rights, and a high probability that substantial harm would result.

652.    In causing the utter devastation of Sean Pena's life through the malicious prosecution, Defendants and their employees and agents acted with an evil mind and a malignant heart warranting an award of punitive damages.

**COUNT XX**

**MALICIOUS PROSECUTION IN VIOLATION OF THE FOURTH, FIFTH, AND FOURTEENTH AMENDMENTS AND 42 U.S.C. § 1983 – GUTIERREZ – *Monell* – CUSTOM AND PRACTICE**

**(COP, SULLIVAN, WILLIAMS)**

653.    Plaintiff incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

654.    As previously explained, U.S.C. § 1983 provides individuals with a cause of action to sue for violations of their constitutional rights.

655.    Defendants COP's, Sullivan's, and Williams' acts or failure to act deprived Sean of his constitutional rights.

656.    COP, the Phoenix Police Department, Defendant Sullivan, and Defendant Williams instituted a policy to ignore evidence involving sexual abuse allegations because of the ME TOO movement and for years acted pursuant to their customs and practices, which is an expressly adopted official policy or custom within the Phoenix Police Department.

657.    COP, Sullivan, and Williams were aware of the Phoenix Police Department's history of allowing the invention and fabrication of criminal charges.

658.    The customs and practices of COP, the Phoenix Police Department, Williams and Sullivan show that the invention of criminal charges is not enforced through written policy but established and ratified by custom and practice.

659.     Despite the Phoenix Police Department's and COP's ministrations, these techniques and practices to obtain convictions via falsehoods are upon information and belief the norm.

660.     If true justice was truly a priority, Sean would still have his job today.

661.     The policies and procedures in place have failed and established a police force that has consistently acted with blatant disregard to the public's and Sean's constitutional rights and extreme indifference to the value of his life and livelihood.

662.     It is unquestionable that there is a systemic failure by COP, the Phoenix Police Department, Williams and Sullivan that have allowed, supported, and established the commonplace use of scapegoats and invented criminal charges violative of the rights of the citizens of Phoenix, Arizona.

663.     Therefore, the established customs and practices led directly to the firing of Sean and the devastation of his life.

664.     COP, Williams, and Sullivan are liable for Sean's damages due to its established customs, patterns, and practices.

## JURY TRIAL DEMAND

665.     Plaintiffs hereby demand a jury trial in this matter as to all claims and against all Defendants.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs requests that the Court enter judgment against the Defendants and in favor of the Plaintiffs, as follows:

a)  For compensatory, general and special damages against each and every Defendant, jointly and severally, in an amount to be proven at trial;

b)  For all other non-pecuniary damages as to be proven at trial;

c)  For punitive and exemplary damages against Defendants in an amount appropriate to punish the wrongful conduct alleged herein and to deter such conduct in the future;

d)  For pre-and post judgment interest to the extent provided by law;

e)    For Plaintiffs' incurred costs, including all incurred attorneys' fees and court costs, pursuant to 42 U.S.C. §1988 and as otherwise authorized by any other statute or law; and

f)    For such other relief as this Court may deem proper.

**RESPECTFULLY SUBMITTED** this 8th day of August 2023.

**MILLS + WOODS LAW, PLLC**

By _____*/s/ Sean A. Woods*_____
        Sean A. Woods
        Robert T. Mills
        5055 North 12th Street, Suite 101
        Phoenix, Arizona 85014
        *Attorneys for Plaintiff*

**ORIGINAL** filed this 8th day of August 2023
via AZTurboCourt with the Clerk of the
Maricopa County Superior Court

_____*/s/ Ben Dangerfield*_____

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

77

Clerk of the Superior Court
*** Electronically Filed ***
Y. Moralez, Deputy
8/8/2023 11:26:54 AM
Filing ID 16406663

Person/Attorney Filing: Sean Woods
Mailing Address: 5055 N. 12th St. Suite 101
City, State, Zip Code: Phoenix, AZ 85014
Phone Number: (480)999-4556
E-Mail Address: swoods@millsandwoods.com
[  ] Representing Self, Without an Attorney
(If Attorney) State Bar Number: 028930, Issuing State: AZ

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
IN AND FOR THE COUNTY OF MARICOPA

Sean Pena
Plaintiff(s),
v.
City of Phoenix, et al.
Defendant(s).

Case No.  **CV2023-012031**

**SUMMONS**

To: Catherine Fu

**WARNING: THIS AN OFFICIAL DOCUMENT FROM THE COURT THAT
AFFECTS YOUR RIGHTS.  READ THIS SUMMONS CAREFULLY. IF YOU DO
NOT UNDERSTAND IT, CONTACT AN ATTORNEY FOR LEGAL ADVICE.**

1.  A lawsuit has been filed against you. A copy of the lawsuit and other court papers were
    served on you with this Summons.

2.  If you do not want a judgment taken against you without your input, you must file an
    Answer in writing with the Court, and you must pay the required filing fee. To file your
    Answer, take or send the papers to Clerk of the Superior Court, 201 W. Jefferson,
    Phoenix, Arizona 85003 or electronically file your Answer through one of Arizona's
    approved electronic filing systems at http://www.azcourts.gov/efilinginformation.
    Mail a copy of the Answer to the other party, the Plaintiff, at the address listed on the top
    of this Summons.
    Note: If you do not file electronically you will not have electronic access to the documents
    in this case.

3.  If this Summons and the other court papers were served on you within the State of
    Arizona, your Answer must be filed within TWENTY (20) CALENDAR DAYS from the
    date of service, not counting the day of service. If this Summons and the other court papers
    were served on you outside the State of Arizona, your Answer must be filed within
    THIRTY (30) CALENDAR DAYS from the date of service, not counting the day of
    service.

Requests for reasonable accommodation for persons with disabilities must be made to the court by parties at least 3 working days in advance of a scheduled court proceeding.

GIVEN under my hand and the Seal of the Superior Court of the State of Arizona in and for the County of  MARICOPA

SIGNED AND SEALED this Date: *August 08, 2023*

*JEFF FINE*
Clerk of Superior Court

By: *Y. MORALEZ*
Deputy Clerk



Requests for an interpreter for persons with limited English proficiency must be made to the division assigned to the case by the party needing the interpreter and/or translator or his/her counsel at least ten (10) judicial days in advance of a scheduled court proceeding.

If you would like legal advice from a lawyer, contact Lawyer Referral Service at 602-257-4434 or https://maricopabar.org. Sponsored by the Maricopa County Bar Association.

AZturboCourt.gov Form Set #8180741

2

Clerk of the Superior Court
*** Electronically Filed ***
Y. Moralez, Deputy
8/8/2023 11:26:54 AM
Filing ID 16426657

Person/Attorney Filing: Sean Woods
Mailing Address: 5055 N. 12th St. Suite 101
City, State, Zip Code: Phoenix, AZ 85014
Phone Number: (480)999-4556
E-Mail Address: swoods@millsandwoods.com
[ ] Representing Self, Without an Attorney
(If Attorney) State Bar Number: 028930, Issuing State: AZ

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF MARICOPA

Sean Pena
Plaintiff(s),
v.
City of Phoenix, et al.
Defendant(s).

Case No. **CV2023-012031**

**SUMMONS**

To: City of Phoenix

**WARNING: THIS AN OFFICIAL DOCUMENT FROM THE COURT THAT
AFFECTS YOUR RIGHTS.  READ THIS SUMMONS CAREFULLY. IF YOU DO
NOT UNDERSTAND IT, CONTACT AN ATTORNEY FOR LEGAL ADVICE.**

1. A lawsuit has been filed against you. A copy of the lawsuit and other court papers were
   served on you with this Summons.

2. If you do not want a judgment taken against you without your input, you must file an
   Answer in writing with the Court, and you must pay the required filing fee. To file your
   Answer, take or send the papers to Clerk of the Superior Court, 201 W. Jefferson,
   Phoenix, Arizona 85003 or electronically file your Answer through one of Arizona's
   approved electronic filing systems at http://www.azcourts.gov/efilinginformation.
   Mail a copy of the Answer to the other party, the Plaintiff, at the address listed on the top
   of this Summons.
   Note: If you do not file electronically you will not have electronic access to the documents
   in this case.

3. If this Summons and the other court papers were served on you within the State of
   Arizona, your Answer must be filed within TWENTY (20) CALENDAR DAYS from the
   date of service, not counting the day of service. If this Summons and the other court papers
   were served on you outside the State of Arizona, your Answer must be filed within
   THIRTY (30) CALENDAR DAYS from the date of service, not counting the day of
   service.

AZturboCourt.gov Form Set #8180741

Requests for reasonable accommodation for persons with disabilities must be made to the court by parties at least 3 working days in advance of a scheduled court proceeding.

GIVEN under my hand and the Seal of the Superior Court of the State of Arizona in and for the County of  MARICOPA

SIGNED AND SEALED this Date: *August 08, 2023*

*JEFF FINE*
Clerk of Superior Court

By: *Y. MORALEZ*
Deputy Clerk



Requests for an interpreter for persons with limited English proficiency must be made to the division assigned to the case by the party needing the interpreter and/or translator or his/her counsel at least ten (10) judicial days in advance of a scheduled court proceeding.

If you would like legal advice from a lawyer, contact Lawyer Referral Service at 602-257-4434 or https://maricopabar.org. Sponsored by the Maricopa County Bar Association.

AZturboCourt.gov Form Set #8180741

2

Clerk of the Superior Court
*** Electronically Filed ***
Y. Moralez, Deputy
8/8/2023 11:26:54 AM
Filing ID 16406658

Person/Attorney Filing: Sean Woods
Mailing Address: 5055 N. 12th St. Suite 101
City, State, Zip Code: Phoenix, AZ 85014
Phone Number: (480)999-4556
E-Mail Address: swoods@millsandwoods.com
[  ] Representing Self, Without an Attorney
(If Attorney) State Bar Number: 028930, Issuing State: AZ

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
IN AND FOR THE COUNTY OF MARICOPA

Sean Pena
Plaintiff(s),
v.
City of Phoenix, et al.
Defendant(s).

Case No.  **CV2023-012031**

**SUMMONS**

To: County of Maricopa

**WARNING: THIS AN OFFICIAL DOCUMENT FROM THE COURT THAT AFFECTS YOUR RIGHTS.  READ THIS SUMMONS CAREFULLY. IF YOU DO NOT UNDERSTAND IT, CONTACT AN ATTORNEY FOR LEGAL ADVICE.**

1. A lawsuit has been filed against you. A copy of the lawsuit and other court papers were served on you with this Summons.

2. If you do not want a judgment taken against you without your input, you must file an Answer in writing with the Court, and you must pay the required filing fee. To file your Answer, take or send the papers to Clerk of the Superior Court, 201 W. Jefferson, Phoenix, Arizona 85003 or electronically file your Answer through one of Arizona's approved electronic filing systems at http://www.azcourts.gov/efilinginformation. Mail a copy of the Answer to the other party, the Plaintiff, at the address listed on the top of this Summons.
Note: If you do not file electronically you will not have electronic access to the documents in this case.

3. If this Summons and the other court papers were served on you within the State of Arizona, your Answer must be filed within TWENTY (20) CALENDAR DAYS from the date of service, not counting the day of service. If this Summons and the other court papers were served on you outside the State of Arizona, your Answer must be filed within THIRTY (30) CALENDAR DAYS from the date of service, not counting the day of service.

Requests for reasonable accommodation for persons with disabilities must be made to the court by parties at least 3 working days in advance of a scheduled court proceeding.

GIVEN under my hand and the Seal of the Superior Court of the State of Arizona in and for the County of  MARICOPA

SIGNED AND SEALED this Date: *August 08, 2023*

*JEFF FINE*
Clerk of Superior Court

By: *Y. MORALEZ*
Deputy Clerk



Requests for an interpreter for persons with limited English proficiency must be made to the division assigned to the case by the party needing the interpreter and/or translator or his/her counsel at least ten (10) judicial days in advance of a scheduled court proceeding.

If you would like legal advice from a lawyer, contact Lawyer Referral Service at 602-257-4434 or https://maricopabar.org. Sponsored by the Maricopa County Bar Association.

AZturboCourt.gov Form Set #8180741

2

Clerk of the Superior Court
*** Electronically Filed ***
Y. Moralez, Deputy
8/8/2023 11:26:54 AM
Filing ID 16406673

Person/Attorney Filing: Sean Woods
Mailing Address: 5055 N. 12th St. Suite 101
City, State, Zip Code: Phoenix, AZ 85014
Phone Number: (480)999-4556
E-Mail Address: swoods@millsandwoods.com
[  ] Representing Self, Without an Attorney
(If Attorney) State Bar Number: 028930, Issuing State: AZ

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF MARICOPA

Sean Pena
Plaintiff(s),
v.
City of Phoenix, et al.
Defendant(s).

Case No.  **CV2023-012031**

**SUMMONS**

To: Cynthia Ramirez

**WARNING: THIS AN OFFICIAL DOCUMENT FROM THE COURT THAT AFFECTS YOUR RIGHTS.  READ THIS SUMMONS CAREFULLY. IF YOU DO NOT UNDERSTAND IT, CONTACT AN ATTORNEY FOR LEGAL ADVICE.**

1.  A lawsuit has been filed against you. A copy of the lawsuit and other court papers were served on you with this Summons.

2.  If you do not want a judgment taken against you without your input, you must file an Answer in writing with the Court, and you must pay the required filing fee. To file your Answer, take or send the papers to Clerk of the Superior Court, 201 W. Jefferson, Phoenix, Arizona 85003 or electronically file your Answer through one of Arizona's approved electronic filing systems at http://www.azcourts.gov/efilinginformation.
    Mail a copy of the Answer to the other party, the Plaintiff, at the address listed on the top of this Summons.
    Note: If you do not file electronically you will not have electronic access to the documents in this case.

3.  If this Summons and the other court papers were served on you within the State of Arizona, your Answer must be filed within TWENTY (20) CALENDAR DAYS from the date of service, not counting the day of service. If this Summons and the other court papers were served on you outside the State of Arizona, your Answer must be filed within THIRTY (30) CALENDAR DAYS from the date of service, not counting the day of service.

Requests for reasonable accommodation for persons with disabilities must be made to the court by parties at least 3 working days in advance of a scheduled court proceeding.

GIVEN under my hand and the Seal of the Superior Court of the State of Arizona in and for the County of  MARICOPA

SIGNED AND SEALED this Date: *August 08, 2023*

*JEFF FINE*
Clerk of Superior Court

By: *Y. MORALEZ*
Deputy Clerk



Requests for an interpreter for persons with limited English proficiency must be made to the division assigned to the case by the party needing the interpreter and/or translator or his/her counsel at least ten (10) judicial days in advance of a scheduled court proceeding.

If you would like legal advice from a lawyer, contact Lawyer Referral Service at 602-257-4434 or https://maricopabar.org. Sponsored by the Maricopa County Bar Association.

AZturboCourt.gov Form Set #8180741

2

Clerk of the Superior Court
*** Electronically Filed ***
Y. Moralez, Deputy
8/8/2023 11:26:54 AM
Filing ID 16406678

Person/Attorney Filing: Sean Woods
Mailing Address: 5055 N. 12th St. Suite 101
City, State, Zip Code: Phoenix, AZ 85014
Phone Number: (480)999-4556
E-Mail Address: swoods@millsandwoods.com
[  ] Representing Self, Without an Attorney
(If Attorney) State Bar Number: 028930, Issuing State: AZ

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| Sean Pena<br>Plaintiff(s),<br>v.<br>City of Phoenix, et al.<br>Defendant(s). | Case No.  **CV2023-012031**<br><br>**SUMMONS** |

To: Iesha Stanciel

**WARNING: THIS AN OFFICIAL DOCUMENT FROM THE COURT THAT AFFECTS YOUR RIGHTS.  READ THIS SUMMONS CAREFULLY. IF YOU DO NOT UNDERSTAND IT, CONTACT AN ATTORNEY FOR LEGAL ADVICE.**

1. A lawsuit has been filed against you. A copy of the lawsuit and other court papers were served on you with this Summons.

2. If you do not want a judgment taken against you without your input, you must file an Answer in writing with the Court, and you must pay the required filing fee. To file your Answer, take or send the papers to Clerk of the Superior Court, 201 W. Jefferson, Phoenix, Arizona 85003 or electronically file your Answer through one of Arizona's approved electronic filing systems at http://www.azcourts.gov/efilinginformation. Mail a copy of the Answer to the other party, the Plaintiff, at the address listed on the top of this Summons.
Note: If you do not file electronically you will not have electronic access to the documents in this case.

3. If this Summons and the other court papers were served on you within the State of Arizona, your Answer must be filed within TWENTY (20) CALENDAR DAYS from the date of service, not counting the day of service. If this Summons and the other court papers were served on you outside the State of Arizona, your Answer must be filed within THIRTY (30) CALENDAR DAYS from the date of service, not counting the day of service.

Requests for reasonable accommodation for persons with disabilities must be made to the court by parties at least 3 working days in advance of a scheduled court proceeding.

GIVEN under my hand and the Seal of the Superior Court of the State of Arizona in and for the County of  MARICOPA

SIGNED AND SEALED this Date: *August 08, 2023*

*JEFF FINE*
Clerk of Superior Court

By: *Y. MORALEZ*
Deputy Clerk



Requests for an interpreter for persons with limited English proficiency must be made to the division assigned to the case by the party needing the interpreter and/or translator or his/her counsel at least ten (10) judicial days in advance of a scheduled court proceeding.

If you would like legal advice from a lawyer, contact Lawyer Referral Service at 602-257-4434 or https://maricopabar.org. Sponsored by the Maricopa County Bar Association.

AZturboCourt.gov Form Set #8180741

2

Clerk of the Superior Court
*** Electronically Filed ***
Y. Moralez, Deputy
8/8/2023 11:26:54 AM
Filing ID 16406670

Person/Attorney Filing: Sean Woods
Mailing Address: 5055 N. 12th St. Suite 101
City, State, Zip Code: Phoenix, AZ 85014
Phone Number: (480)999-4556
E-Mail Address: swoods@millsandwoods.com
[  ] Representing Self, Without an Attorney
(If Attorney) State Bar Number: 028930, Issuing State: AZ

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF MARICOPA

Sean Pena
Plaintiff(s),
v.
City of Phoenix, et al.
Defendant(s).

Case No. **CV2023-012031**

**SUMMONS**

To: Jane Doe Baker

**WARNING: THIS AN OFFICIAL DOCUMENT FROM THE COURT THAT AFFECTS YOUR RIGHTS.  READ THIS SUMMONS CAREFULLY. IF YOU DO NOT UNDERSTAND IT, CONTACT AN ATTORNEY FOR LEGAL ADVICE.**

1.  A lawsuit has been filed against you. A copy of the lawsuit and other court papers were served on you with this Summons.

2.  If you do not want a judgment taken against you without your input, you must file an Answer in writing with the Court, and you must pay the required filing fee. To file your Answer, take or send the papers to Clerk of the Superior Court, 201 W. Jefferson, Phoenix, Arizona 85003 or electronically file your Answer through one of Arizona's approved electronic filing systems at http://www.azcourts.gov/efilinginformation.
    Mail a copy of the Answer to the other party, the Plaintiff, at the address listed on the top of this Summons.
    Note: If you do not file electronically you will not have electronic access to the documents in this case.

3.  If this Summons and the other court papers were served on you within the State of Arizona, your Answer must be filed within TWENTY (20) CALENDAR DAYS from the date of service, not counting the day of service. If this Summons and the other court papers were served on you outside the State of Arizona, your Answer must be filed within THIRTY (30) CALENDAR DAYS from the date of service, not counting the day of service.

Requests for reasonable accommodation for persons with disabilities must be made to the court by parties at least 3 working days in advance of a scheduled court proceeding.

GIVEN under my hand and the Seal of the Superior Court of the State of Arizona in and for the County of  MARICOPA

SIGNED AND SEALED this Date: *August 08, 2023*

*JEFF FINE*
Clerk of Superior Court

By: *Y. MORALEZ*
Deputy Clerk



Requests for an interpreter for persons with limited English proficiency must be made to the division assigned to the case by the party needing the interpreter and/or translator or his/her counsel at least ten (10) judicial days in advance of a scheduled court proceeding.

If you would like legal advice from a lawyer, contact Lawyer Referral Service at 602-257-4434 or https://maricopabar.org. Sponsored by the Maricopa County Bar Association.

AZturboCourt.gov Form Set #8180741

2

Clerk of the Superior Court
*** Electronically Filed ***
Y. Moralez, Deputy
8/8/2023 11:26:54 AM
Filing ID 16406677

Person/Attorney Filing: Sean Woods
Mailing Address: 5055 N. 12th St. Suite 101
City, State, Zip Code: Phoenix, AZ 85014
Phone Number: (480)999-4556
E-Mail Address: swoods@millsandwoods.com
[  ] Representing Self, Without an Attorney
(If Attorney) State Bar Number: 028930, Issuing State: AZ

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
IN AND FOR THE COUNTY OF MARICOPA

Sean Pena
Plaintiff(s),
v.
City of Phoenix, et al.
Defendant(s).

Case No.  **CV2023-012031**

**SUMMONS**

To: Jane Doe Maupin

**WARNING: THIS AN OFFICIAL DOCUMENT FROM THE COURT THAT AFFECTS YOUR RIGHTS.  READ THIS SUMMONS CAREFULLY. IF YOU DO NOT UNDERSTAND IT, CONTACT AN ATTORNEY FOR LEGAL ADVICE.**

1. A lawsuit has been filed against you. A copy of the lawsuit and other court papers were served on you with this Summons.

2. If you do not want a judgment taken against you without your input, you must file an Answer in writing with the Court, and you must pay the required filing fee. To file your Answer, take or send the papers to <u>Clerk of the Superior Court, 201 W. Jefferson, Phoenix, Arizona 85003 or electronically file your Answer through one of Arizona's approved electronic filing systems at http://www.azcourts.gov/efilinginformation.</u> Mail a copy of the Answer to the other party, the Plaintiff, at the address listed on the top of this Summons.
Note: If you do not file electronically you will not have electronic access to the documents in this case.

3. If this Summons and the other court papers were served on you within the State of Arizona, your Answer must be filed within TWENTY (20) CALENDAR DAYS from the date of service, not counting the day of service. If this Summons and the other court papers were served on you outside the State of Arizona, your Answer must be filed within THIRTY (30) CALENDAR DAYS from the date of service, not counting the day of service.

Requests for reasonable accommodation for persons with disabilities must be made to the court by parties at least 3 working days in advance of a scheduled court proceeding.

GIVEN under my hand and the Seal of the Superior Court of the State of Arizona in and for the County of  MARICOPA

SIGNED AND SEALED this Date: *August 08, 2023*

*JEFF FINE*
Clerk of Superior Court

By: *Y. MORALEZ*
Deputy Clerk



Requests for an interpreter for persons with limited English proficiency must be made to the division assigned to the case by the party needing the interpreter and/or translator or his/her counsel at least ten (10) judicial days in advance of a scheduled court proceeding.

If you would like legal advice from a lawyer, contact Lawyer Referral Service at 602-257-4434 or https://maricopabar.org. Sponsored by the Maricopa County Bar Association.

Clerk of the Superior Court
*** Electronically Filed ***
Y. Moralez, Deputy
8/8/2023 11:26:54 AM
Filing ID 16406662

Person/Attorney Filing: Sean Woods
Mailing Address: 5055 N. 12th St. Suite 101
City, State, Zip Code: Phoenix, AZ 85014
Phone Number: (480)999-4556
E-Mail Address: swoods@millsandwoods.com
[  ] Representing Self, Without an Attorney
(If Attorney) State Bar Number: 028930, Issuing State: AZ

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF MARICOPA

Sean Pena
Plaintiff(s),
v.
City of Phoenix, et al.
Defendant(s).

Case No. **CV2023-012031**

**SUMMONS**

To: Jane Doe Roseberry

**WARNING: THIS AN OFFICIAL DOCUMENT FROM THE COURT THAT AFFECTS YOUR RIGHTS.  READ THIS SUMMONS CAREFULLY. IF YOU DO NOT UNDERSTAND IT, CONTACT AN ATTORNEY FOR LEGAL ADVICE.**

1.  A lawsuit has been filed against you. A copy of the lawsuit and other court papers were served on you with this Summons.

2.  If you do not want a judgment taken against you without your input, you must file an Answer in writing with the Court, and you must pay the required filing fee. To file your Answer, take or send the papers to Clerk of the Superior Court, 201 W. Jefferson, Phoenix, Arizona 85003 or electronically file your Answer through one of Arizona's approved electronic filing systems at http://www.azcourts.gov/efilinginformation. Mail a copy of the Answer to the other party, the Plaintiff, at the address listed on the top of this Summons.
    Note: If you do not file electronically you will not have electronic access to the documents in this case.

3.  If this Summons and the other court papers were served on you within the State of Arizona, your Answer must be filed within TWENTY (20) CALENDAR DAYS from the date of service, not counting the day of service. If this Summons and the other court papers were served on you outside the State of Arizona, your Answer must be filed within THIRTY (30) CALENDAR DAYS from the date of service, not counting the day of service.

Requests for reasonable accommodation for persons with disabilities must be made to the court by parties at least 3 working days in advance of a scheduled court proceeding.

GIVEN under my hand and the Seal of the Superior Court of the State of Arizona in and for the County of  MARICOPA

SIGNED AND SEALED this Date: *August 08, 2023*

*JEFF FINE*
Clerk of Superior Court

By: *Y. MORALEZ*
Deputy Clerk



Requests for an interpreter for persons with limited English proficiency must be made to the division assigned to the case by the party needing the interpreter and/or translator or his/her counsel at least ten (10) judicial days in advance of a scheduled court proceeding.

If you would like legal advice from a lawyer, contact Lawyer Referral Service at 602-257-4434 or https://maricopabar.org. Sponsored by the Maricopa County Bar Association.

AZturboCourt.gov Form Set #8180741

2

Clerk of the Superior Court
*** Electronically Filed ***
Y. Moralez, Deputy
8/8/2023 11:26:54 AM
Filing ID 16406672

Person/Attorney Filing: Sean Woods
Mailing Address: 5055 N. 12th St. Suite 101
City, State, Zip Code: Phoenix, AZ 85014
Phone Number: (480)999-4556
E-Mail Address: swoods@millsandwoods.com
[  ] Representing Self, Without an Attorney
(If Attorney) State Bar Number: 028930, Issuing State: AZ

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF MARICOPA

Sean Pena
Plaintiff(s),
v.
City of Phoenix, et al.
Defendant(s).

Case No. **CV2023-012031**

**SUMMONS**

To: Jane Doe Walker

**WARNING: THIS AN OFFICIAL DOCUMENT FROM THE COURT THAT AFFECTS YOUR RIGHTS.  READ THIS SUMMONS CAREFULLY. IF YOU DO NOT UNDERSTAND IT, CONTACT AN ATTORNEY FOR LEGAL ADVICE.**

1. A lawsuit has been filed against you. A copy of the lawsuit and other court papers were served on you with this Summons.

2. If you do not want a judgment taken against you without your input, you must file an Answer in writing with the Court, and you must pay the required filing fee. To file your Answer, take or send the papers to Clerk of the Superior Court, 201 W. Jefferson, Phoenix, Arizona 85003 or electronically file your Answer through one of Arizona's approved electronic filing systems at http://www.azcourts.gov/efilinginformation.
Mail a copy of the Answer to the other party, the Plaintiff, at the address listed on the top of this Summons.
Note: If you do not file electronically you will not have electronic access to the documents in this case.

3. If this Summons and the other court papers were served on you within the State of Arizona, your Answer must be filed within TWENTY (20) CALENDAR DAYS from the date of service, not counting the day of service. If this Summons and the other court papers were served on you outside the State of Arizona, your Answer must be filed within THIRTY (30) CALENDAR DAYS from the date of service, not counting the day of service.

Requests for reasonable accommodation for persons with disabilities must be made to the court by parties at least 3 working days in advance of a scheduled court proceeding.

GIVEN under my hand and the Seal of the Superior Court of the State of Arizona in and for the County of  MARICOPA

SIGNED AND SEALED this Date: *August 08, 2023*

*JEFF FINE*
Clerk of Superior Court

By: *Y. MORALEZ*
Deputy Clerk



Requests for an interpreter for persons with limited English proficiency must be made to the division assigned to the case by the party needing the interpreter and/or translator or his/her counsel at least ten (10) judicial days in advance of a scheduled court proceeding.

If you would like legal advice from a lawyer, contact Lawyer Referral Service at 602-257-4434 or https://maricopabar.org. Sponsored by the Maricopa County Bar Association.

AZturboCourt.gov Form Set #8180741

2

Clerk of the Superior Court
*** Electronically Filed ***
Y. Moralez, Deputy
8/8/2023 11:26:54 AM
Filing ID 16406676

Person/Attorney Filing: Sean Woods
Mailing Address: 5055 N. 12th St. Suite 101
City, State, Zip Code: Phoenix, AZ 85014
Phone Number: (480)999-4556
E-Mail Address: swoods@millsandwoods.com
[ ] Representing Self, Without an Attorney
(If Attorney) State Bar Number: 028930, Issuing State: AZ

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
IN AND FOR THE COUNTY OF MARICOPA

Sean Pena
Plaintiff(s),
v.
City of Phoenix, et al.
Defendant(s).

Case No.  **CV2023-012031**

**SUMMONS**

To: Jarrett Maupin

**WARNING: THIS AN OFFICIAL DOCUMENT FROM THE COURT THAT AFFECTS YOUR RIGHTS.  READ THIS SUMMONS CAREFULLY. IF YOU DO NOT UNDERSTAND IT, CONTACT AN ATTORNEY FOR LEGAL ADVICE.**

1.  A lawsuit has been filed against you. A copy of the lawsuit and other court papers were served on you with this Summons.

2.  If you do not want a judgment taken against you without your input, you must file an Answer in writing with the Court, and you must pay the required filing fee. To file your Answer, take or send the papers to Clerk of the Superior Court, 201 W. Jefferson, Phoenix, Arizona 85003 or electronically file your Answer through one of Arizona's approved electronic filing systems at http://www.azcourts.gov/efilinginformation. Mail a copy of the Answer to the other party, the Plaintiff, at the address listed on the top of this Summons.
    Note: If you do not file electronically you will not have electronic access to the documents in this case.

3.  If this Summons and the other court papers were served on you within the State of Arizona, your Answer must be filed within TWENTY (20) CALENDAR DAYS from the date of service, not counting the day of service. If this Summons and the other court papers were served on you outside the State of Arizona, your Answer must be filed within THIRTY (30) CALENDAR DAYS from the date of service, not counting the day of service.

Requests for reasonable accommodation for persons with disabilities must be made to the court by parties at least 3 working days in advance of a scheduled court proceeding.

GIVEN under my hand and the Seal of the Superior Court of the State of Arizona in and for the County of  MARICOPA

SIGNED AND SEALED this Date: *August 08, 2023*

*JEFF FINE*
Clerk of Superior Court

By: *Y. MORALEZ*
Deputy Clerk



Requests for an interpreter for persons with limited English proficiency must be made to the division assigned to the case by the party needing the interpreter and/or translator or his/her counsel at least ten (10) judicial days in advance of a scheduled court proceeding.

If you would like legal advice from a lawyer, contact Lawyer Referral Service at 602-257-4434 or https://maricopabar.org. Sponsored by the Maricopa County Bar Association.

AZturboCourt.gov Form Set #8180741

2

Clerk of the Superior Court
*** Electronically Filed ***
Y. Moralez, Deputy
8/8/2023 11:26:54 AM
Filing ID 16406661

Person/Attorney Filing: Sean Woods
Mailing Address: 5055 N. 12th St. Suite 101
City, State, Zip Code: Phoenix, AZ 85014
Phone Number: (480)999-4556
E-Mail Address: swoods@millsandwoods.com
[  ] Representing Self, Without an Attorney
(If Attorney) State Bar Number: 028930, Issuing State: AZ

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
IN AND FOR THE COUNTY OF MARICOPA

Sean Pena
Plaintiff(s),
v.
City of Phoenix, et al.
Defendant(s).

Case No.  **CV2023-012031**

**SUMMONS**

To: Jeffrey Roseberry

**WARNING: THIS AN OFFICIAL DOCUMENT FROM THE COURT THAT AFFECTS YOUR RIGHTS.  READ THIS SUMMONS CAREFULLY. IF YOU DO NOT UNDERSTAND IT, CONTACT AN ATTORNEY FOR LEGAL ADVICE.**

1. A lawsuit has been filed against you. A copy of the lawsuit and other court papers were served on you with this Summons.

2. If you do not want a judgment taken against you without your input, you must file an Answer in writing with the Court, and you must pay the required filing fee. To file your Answer, take or send the papers to Clerk of the Superior Court, 201 W. Jefferson, Phoenix, Arizona 85003 or electronically file your Answer through one of Arizona's approved electronic filing systems at http://www.azcourts.gov/efilinginformation. Mail a copy of the Answer to the other party, the Plaintiff, at the address listed on the top of this Summons.
Note: If you do not file electronically you will not have electronic access to the documents in this case.

3. If this Summons and the other court papers were served on you within the State of Arizona, your Answer must be filed within TWENTY (20) CALENDAR DAYS from the date of service, not counting the day of service. If this Summons and the other court papers were served on you outside the State of Arizona, your Answer must be filed within THIRTY (30) CALENDAR DAYS from the date of service, not counting the day of service.

Requests for reasonable accommodation for persons with disabilities must be made to the court by parties at least 3 working days in advance of a scheduled court proceeding.

GIVEN under my hand and the Seal of the Superior Court of the State of Arizona in and for the County of  MARICOPA

SIGNED AND SEALED this Date: *August 08, 2023*

*JEFF FINE*
Clerk of Superior Court

By: *Y. MORALEZ*
Deputy Clerk



Requests for an interpreter for persons with limited English proficiency must be made to the division assigned to the case by the party needing the interpreter and/or translator or his/her counsel at least ten (10) judicial days in advance of a scheduled court proceeding.

If you would like legal advice from a lawyer, contact Lawyer Referral Service at 602-257-4434 or https://maricopabar.org. Sponsored by the Maricopa County Bar Association.

AZturboCourt.gov Form Set #8180741

Clerk of the Superior Court
*** Electronically Filed ***
Y. Moralez, Deputy
8/8/2023 11:26:54 AM
Filing ID 16406666

Person/Attorney Filing: Sean Woods
Mailing Address: 5055 N. 12th St. Suite 101
City, State, Zip Code: Phoenix, AZ 85014
Phone Number: (480)999-4556
E-Mail Address: swoods@millsandwoods.com
[  ] Representing Self, Without an Attorney
(If Attorney) State Bar Number: 028930, Issuing State: AZ

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
IN AND FOR THE COUNTY OF MARICOPA

Sean Pena
Plaintiff(s),
v.
City of Phoenix, et al.
Defendant(s).

Case No.  **CV2023-012031**

**SUMMONS**

To: John Doe Anderson

**WARNING: THIS AN OFFICIAL DOCUMENT FROM THE COURT THAT AFFECTS YOUR RIGHTS.  READ THIS SUMMONS CAREFULLY. IF YOU DO NOT UNDERSTAND IT, CONTACT AN ATTORNEY FOR LEGAL ADVICE.**

1.  A lawsuit has been filed against you. A copy of the lawsuit and other court papers were served on you with this Summons.

2.  If you do not want a judgment taken against you without your input, you must file an Answer in writing with the Court, and you must pay the required filing fee. To file your Answer, take or send the papers to Clerk of the Superior Court, 201 W. Jefferson, Phoenix, Arizona 85003 or electronically file your Answer through one of Arizona's approved electronic filing systems at http://www.azcourts.gov/efilinginformation. Mail a copy of the Answer to the other party, the Plaintiff, at the address listed on the top of this Summons.
    Note: If you do not file electronically you will not have electronic access to the documents in this case.

3.  If this Summons and the other court papers were served on you within the State of Arizona, your Answer must be filed within TWENTY (20) CALENDAR DAYS from the date of service, not counting the day of service. If this Summons and the other court papers were served on you outside the State of Arizona, your Answer must be filed within THIRTY (30) CALENDAR DAYS from the date of service, not counting the day of service.

Requests for reasonable accommodation for persons with disabilities must be made to the court by parties at least 3 working days in advance of a scheduled court proceeding.

GIVEN under my hand and the Seal of the Superior Court of the State of Arizona in and for the County of  MARICOPA

SIGNED AND SEALED this Date: *August 08, 2023*

*JEFF FINE*
Clerk of Superior Court

By: *Y. MORALEZ*
Deputy Clerk



Requests for an interpreter for persons with limited English proficiency must be made to the division assigned to the case by the party needing the interpreter and/or translator or his/her counsel at least ten (10) judicial days in advance of a scheduled court proceeding.

If you would like legal advice from a lawyer, contact Lawyer Referral Service at 602-257-4434 or https://maricopabar.org. Sponsored by the Maricopa County Bar Association.

AZturboCourt.gov Form Set #8180741

Clerk of the Superior Court
*** Electronically Filed ***
Y. Moralez, Deputy
8/8/2023 11:26:54 AM
Filing ID 16406668

Person/Attorney Filing: Sean Woods
Mailing Address: 5055 N. 12th St. Suite 101
City, State, Zip Code: Phoenix, AZ 85014
Phone Number: (480)999-4556
E-Mail Address: swoods@millsandwoods.com
[  ] Representing Self, Without an Attorney
(If Attorney) State Bar Number: 028930, Issuing State: AZ

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF MARICOPA

Sean Pena
Plaintiff(s),
v.
City of Phoenix, et al.
Defendant(s).

Case No. **CV2023-012031**

**SUMMONS**

To: John Doe Caplinger

**WARNING: THIS AN OFFICIAL DOCUMENT FROM THE COURT THAT AFFECTS YOUR RIGHTS.  READ THIS SUMMONS CAREFULLY. IF YOU DO NOT UNDERSTAND IT, CONTACT AN ATTORNEY FOR LEGAL ADVICE.**

1. A lawsuit has been filed against you. A copy of the lawsuit and other court papers were served on you with this Summons.

2. If you do not want a judgment taken against you without your input, you must file an Answer in writing with the Court, and you must pay the required filing fee. To file your Answer, take or send the papers to <u>Clerk of the Superior Court, 201 W. Jefferson, Phoenix, Arizona 85003 or electronically file your Answer through one of Arizona's approved electronic filing systems at http://www.azcourts.gov/efilinginformation.</u>
   Mail a copy of the Answer to the other party, the Plaintiff, at the address listed on the top of this Summons.
   Note: If you do not file electronically you will not have electronic access to the documents in this case.

3. If this Summons and the other court papers were served on you within the State of Arizona, your Answer must be filed within TWENTY (20) CALENDAR DAYS from the date of service, not counting the day of service. If this Summons and the other court papers were served on you outside the State of Arizona, your Answer must be filed within THIRTY (30) CALENDAR DAYS from the date of service, not counting the day of service.

Requests for reasonable accommodation for persons with disabilities must be made to the court by parties at least 3 working days in advance of a scheduled court proceeding.

GIVEN under my hand and the Seal of the Superior Court of the State of Arizona in and for the County of  MARICOPA

SIGNED AND SEALED this Date: *August 08, 2023*

*JEFF FINE*
Clerk of Superior Court

By: *Y. MORALEZ*
Deputy Clerk



Requests for an interpreter for persons with limited English proficiency must be made to the division assigned to the case by the party needing the interpreter and/or translator or his/her counsel at least ten (10) judicial days in advance of a scheduled court proceeding.

If you would like legal advice from a lawyer, contact Lawyer Referral Service at 602-257-4434 or https://maricopabar.org. Sponsored by the Maricopa County Bar Association.

AZturboCourt.gov Form Set #8180741

Clerk of the Superior Court
*** Electronically Filed ***
Y. Moralez, Deputy
8/8/2023 11:26:54 AM
Filing ID 16406664

Person/Attorney Filing: Sean Woods
Mailing Address: 5055 N. 12th St. Suite 101
City, State, Zip Code: Phoenix, AZ 85014
Phone Number: (480)999-4556
E-Mail Address: swoods@millsandwoods.com
[  ] Representing Self, Without an Attorney
(If Attorney) State Bar Number: 028930, Issuing State: AZ

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
IN AND FOR THE COUNTY OF MARICOPA

Sean Pena
Plaintiff(s),
v.
City of Phoenix, et al.
Defendant(s).

Case No.  **CV2023-012031**

**SUMMONS**

To: John Doe Fu

**WARNING: THIS AN OFFICIAL DOCUMENT FROM THE COURT THAT AFFECTS YOUR RIGHTS.  READ THIS SUMMONS CAREFULLY. IF YOU DO NOT UNDERSTAND IT, CONTACT AN ATTORNEY FOR LEGAL ADVICE.**

1.  A lawsuit has been filed against you. A copy of the lawsuit and other court papers were served on you with this Summons.

2.  If you do not want a judgment taken against you without your input, you must file an Answer in writing with the Court, and you must pay the required filing fee. To file your Answer, take or send the papers to Clerk of the Superior Court, 201 W. Jefferson, Phoenix, Arizona 85003 or electronically file your Answer through one of Arizona's approved electronic filing systems at http://www.azcourts.gov/efilinginformation. Mail a copy of the Answer to the other party, the Plaintiff, at the address listed on the top of this Summons.
    Note: If you do not file electronically you will not have electronic access to the documents in this case.

3.  If this Summons and the other court papers were served on you within the State of Arizona, your Answer must be filed within TWENTY (20) CALENDAR DAYS from the date of service, not counting the day of service. If this Summons and the other court papers were served on you outside the State of Arizona, your Answer must be filed within THIRTY (30) CALENDAR DAYS from the date of service, not counting the day of service.

Requests for reasonable accommodation for persons with disabilities must be made to the court by parties at least 3 working days in advance of a scheduled court proceeding.

GIVEN under my hand and the Seal of the Superior Court of the State of Arizona in and for the County of  MARICOPA

SIGNED AND SEALED this Date: *August 08, 2023*

*JEFF FINE*
Clerk of Superior Court

By: *Y. MORALEZ*
Deputy Clerk



Requests for an interpreter for persons with limited English proficiency must be made to the division assigned to the case by the party needing the interpreter and/or translator or his/her counsel at least ten (10) judicial days in advance of a scheduled court proceeding.

If you would like legal advice from a lawyer, contact Lawyer Referral Service at 602-257-4434 or https://maricopabar.org. Sponsored by the Maricopa County Bar Association.

AZturboCourt.gov Form Set #8180741

Clerk of the Superior Court
*** Electronically Filed ***
Y. Moralez, Deputy
8/8/2023 11:26:54 AM
Filing ID 16406679

Person/Attorney Filing: Sean Woods
Mailing Address: 5055 N. 12th St. Suite 101
City, State, Zip Code: Phoenix, AZ 85014
Phone Number: (480)999-4556
E-Mail Address: swoods@millsandwoods.com
[  ] Representing Self, Without an Attorney
(If Attorney) State Bar Number: 028930, Issuing State: AZ

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
IN AND FOR THE COUNTY OF MARICOPA

Sean Pena
Plaintiff(s),
v.
City of Phoenix, et al.
Defendant(s).

Case No.  **CV2023-012031**

**SUMMONS**

To: John Doe Stanciel

**WARNING: THIS AN OFFICIAL DOCUMENT FROM THE COURT THAT AFFECTS YOUR RIGHTS.  READ THIS SUMMONS CAREFULLY. IF YOU DO NOT UNDERSTAND IT, CONTACT AN ATTORNEY FOR LEGAL ADVICE.**

1. A lawsuit has been filed against you. A copy of the lawsuit and other court papers were served on you with this Summons.

2. If you do not want a judgment taken against you without your input, you must file an Answer in writing with the Court, and you must pay the required filing fee. To file your Answer, take or send the papers to Clerk of the Superior Court, 201 W. Jefferson, Phoenix, Arizona 85003 or electronically file your Answer through one of Arizona's approved electronic filing systems at http://www.azcourts.gov/efilinginformation. Mail a copy of the Answer to the other party, the Plaintiff, at the address listed on the top of this Summons.
Note: If you do not file electronically you will not have electronic access to the documents in this case.

3. If this Summons and the other court papers were served on you within the State of Arizona, your Answer must be filed within TWENTY (20) CALENDAR DAYS from the date of service, not counting the day of service. If this Summons and the other court papers were served on you outside the State of Arizona, your Answer must be filed within THIRTY (30) CALENDAR DAYS from the date of service, not counting the day of service.

Requests for reasonable accommodation for persons with disabilities must be made to the court by parties at least 3 working days in advance of a scheduled court proceeding.

GIVEN under my hand and the Seal of the Superior Court of the State of Arizona in and for the County of  MARICOPA

SIGNED AND SEALED this Date: *August 08, 2023*

*JEFF FINE*
Clerk of Superior Court

By: *Y. MORALEZ*
Deputy Clerk



Requests for an interpreter for persons with limited English proficiency must be made to the division assigned to the case by the party needing the interpreter and/or translator or his/her counsel at least ten (10) judicial days in advance of a scheduled court proceeding.

If you would like legal advice from a lawyer, contact Lawyer Referral Service at 602-257-4434 or https://maricopabar.org. Sponsored by the Maricopa County Bar Association.

AZturboCourt.gov Form Set #8180741

Clerk of the Superior Court
*** Electronically Filed ***
Y. Moralez, Deputy
8/8/2023 11:26:54 AM
Filing ID 16406674

Person/Attorney Filing: Sean Woods
Mailing Address: 5055 N. 12th St. Suite 101
City, State, Zip Code: Phoenix, AZ 85014
Phone Number: (480)999-4556
E-Mail Address: swoods@millsandwoods.com
[  ] Representing Self, Without an Attorney
(If Attorney) State Bar Number: 028930, Issuing State: AZ

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
IN AND FOR THE COUNTY OF MARICOPA

Sean Pena
Plaintiff(s),
v.
City of Phoenix, et al.
Defendant(s).

Case No.  **CV2023-012031**

**SUMMONS**

To: Krystoffer Lee

**WARNING: THIS AN OFFICIAL DOCUMENT FROM THE COURT THAT AFFECTS YOUR RIGHTS.  READ THIS SUMMONS CAREFULLY. IF YOU DO NOT UNDERSTAND IT, CONTACT AN ATTORNEY FOR LEGAL ADVICE.**

1.  A lawsuit has been filed against you. A copy of the lawsuit and other court papers were served on you with this Summons.

2.  If you do not want a judgment taken against you without your input, you must file an Answer in writing with the Court, and you must pay the required filing fee. To file your Answer, take or send the papers to Clerk of the Superior Court, 201 W. Jefferson, Phoenix, Arizona 85003 or electronically file your Answer through one of Arizona's approved electronic filing systems at http://www.azcourts.gov/efilinginformation. Mail a copy of the Answer to the other party, the Plaintiff, at the address listed on the top of this Summons.
    Note: If you do not file electronically you will not have electronic access to the documents in this case.

3.  If this Summons and the other court papers were served on you within the State of Arizona, your Answer must be filed within TWENTY (20) CALENDAR DAYS from the date of service, not counting the day of service. If this Summons and the other court papers were served on you outside the State of Arizona, your Answer must be filed within THIRTY (30) CALENDAR DAYS from the date of service, not counting the day of service.

Requests for reasonable accommodation for persons with disabilities must be made to the court by parties at least 3 working days in advance of a scheduled court proceeding.

GIVEN under my hand and the Seal of the Superior Court of the State of Arizona in and for the County of  MARICOPA

SIGNED AND SEALED this Date: *August 08, 2023*

*JEFF FINE*
Clerk of Superior Court

By: *Y. MORALEZ*
Deputy Clerk



Requests for an interpreter for persons with limited English proficiency must be made to the division assigned to the case by the party needing the interpreter and/or translator or his/her counsel at least ten (10) judicial days in advance of a scheduled court proceeding.

If you would like legal advice from a lawyer, contact Lawyer Referral Service at 602-257-4434 or https://maricopabar.org. Sponsored by the Maricopa County Bar Association.

Clerk of the Superior Court
*** Electronically Filed ***
Y. Moralez, Deputy
8/8/2023 11:26:54 AM
Filing ID 16406675

Person/Attorney Filing: Sean Woods
Mailing Address: 5055 N. 12th St. Suite 101
City, State, Zip Code: Phoenix, AZ 85014
Phone Number: (480)999-4556
E-Mail Address: swoods@millsandwoods.com
[  ] Representing Self, Without an Attorney
(If Attorney) State Bar Number: 028930, Issuing State: AZ

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF MARICOPA

|  |  |
|---|---|
| Sean Pena<br>Plaintiff(s),<br>v.<br>City of Phoenix, et al.<br>Defendant(s). | Case No. **CV2023-012031**<br><br>**SUMMONS** |

To: Lisa Gutierrez

**WARNING: THIS AN OFFICIAL DOCUMENT FROM THE COURT THAT AFFECTS YOUR RIGHTS.  READ THIS SUMMONS CAREFULLY. IF YOU DO NOT UNDERSTAND IT, CONTACT AN ATTORNEY FOR LEGAL ADVICE.**

1. A lawsuit has been filed against you. A copy of the lawsuit and other court papers were served on you with this Summons.

2. If you do not want a judgment taken against you without your input, you must file an Answer in writing with the Court, and you must pay the required filing fee. To file your Answer, take or send the papers to <u>Clerk of the Superior Court, 201 W. Jefferson, Phoenix, Arizona 85003 or electronically file your Answer through one of Arizona's approved electronic filing systems at http://www.azcourts.gov/efilinginformation.</u> Mail a copy of the Answer to the other party, the Plaintiff, at the address listed on the top of this Summons.
Note: If you do not file electronically you will not have electronic access to the documents in this case.

3. If this Summons and the other court papers were served on you within the State of Arizona, your Answer must be filed within TWENTY (20) CALENDAR DAYS from the date of service, not counting the day of service. If this Summons and the other court papers were served on you outside the State of Arizona, your Answer must be filed within THIRTY (30) CALENDAR DAYS from the date of service, not counting the day of service.

Requests for reasonable accommodation for persons with disabilities must be made to the court by parties at least 3 working days in advance of a scheduled court proceeding.

GIVEN under my hand and the Seal of the Superior Court of the State of Arizona in and for the County of  MARICOPA

SIGNED AND SEALED this Date: *August 08, 2023*

*JEFF FINE*
Clerk of Superior Court

By: *Y. MORALEZ*
Deputy Clerk



Requests for an interpreter for persons with limited English proficiency must be made to the division assigned to the case by the party needing the interpreter and/or translator or his/her counsel at least ten (10) judicial days in advance of a scheduled court proceeding.

If you would like legal advice from a lawyer, contact Lawyer Referral Service at 602-257-4434 or https://maricopabar.org. Sponsored by the Maricopa County Bar Association.

AZturboCourt.gov Form Set #8180741

2

Clerk of the Superior Court
*** Electronically Filed ***
Y. Moralez, Deputy
8/8/2023 11:26:54 AM
Filing ID 16406669

Person/Attorney Filing: Sean Woods
Mailing Address: 5055 N. 12th St. Suite 101
City, State, Zip Code: Phoenix, AZ 85014
Phone Number: (480)999-4556
E-Mail Address: swoods@millsandwoods.com
[  ] Representing Self, Without an Attorney
(If Attorney) State Bar Number: 028930, Issuing State: AZ

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF MARICOPA

Sean Pena
Plaintiff(s),
v.
City of Phoenix, et al.
Defendant(s).

Case No. **CV2023-012031**

**SUMMONS**

To: Michael Baker

**WARNING: THIS AN OFFICIAL DOCUMENT FROM THE COURT THAT AFFECTS YOUR RIGHTS.  READ THIS SUMMONS CAREFULLY. IF YOU DO NOT UNDERSTAND IT, CONTACT AN ATTORNEY FOR LEGAL ADVICE.**

1. A lawsuit has been filed against you. A copy of the lawsuit and other court papers were served on you with this Summons.

2. If you do not want a judgment taken against you without your input, you must file an Answer in writing with the Court, and you must pay the required filing fee. To file your Answer, take or send the papers to <u>Clerk of the Superior Court, 201 W. Jefferson, Phoenix, Arizona 85003 or electronically file your Answer through one of Arizona's approved electronic filing systems at http://www.azcourts.gov/efilinginformation.</u>
Mail a copy of the Answer to the other party, the Plaintiff, at the address listed on the top of this Summons.
Note: If you do not file electronically you will not have electronic access to the documents in this case.

3. If this Summons and the other court papers were served on you within the State of Arizona, your Answer must be filed within TWENTY (20) CALENDAR DAYS from the date of service, not counting the day of service. If this Summons and the other court papers were served on you outside the State of Arizona, your Answer must be filed within THIRTY (30) CALENDAR DAYS from the date of service, not counting the day of service.

Requests for reasonable accommodation for persons with disabilities must be made to the court by parties at least 3 working days in advance of a scheduled court proceeding.

GIVEN under my hand and the Seal of the Superior Court of the State of Arizona in and for the County of  MARICOPA

SIGNED AND SEALED this Date: *August 08, 2023*

*JEFF FINE*
Clerk of Superior Court

By: *Y. MORALEZ*
Deputy Clerk



Requests for an interpreter for persons with limited English proficiency must be made to the division assigned to the case by the party needing the interpreter and/or translator or his/her counsel at least ten (10) judicial days in advance of a scheduled court proceeding.

If you would like legal advice from a lawyer, contact Lawyer Referral Service at 602-257-4434 or https://maricopabar.org. Sponsored by the Maricopa County Bar Association.

AZturboCourt.gov Form Set #8180741

Clerk of the Superior Court
*** Electronically Filed ***
Y. Moralez, Deputy
8/8/2023 11:26:54 AM
Filing ID 16406671

Person/Attorney Filing: Sean Woods
Mailing Address: 5055 N. 12th St. Suite 101
City, State, Zip Code: Phoenix, AZ 85014
Phone Number: (480)999-4556
E-Mail Address: swoods@millsandwoods.com
[  ] Representing Self, Without an Attorney
(If Attorney) State Bar Number: 028930, Issuing State: AZ

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
IN AND FOR THE COUNTY OF MARICOPA

Sean Pena
Plaintiff(s),
v.
City of Phoenix, et al.
Defendant(s).

Case No. **CV2023-012031**

**SUMMONS**

To: Michael Walker

**WARNING: THIS AN OFFICIAL DOCUMENT FROM THE COURT THAT AFFECTS YOUR RIGHTS.  READ THIS SUMMONS CAREFULLY. IF YOU DO NOT UNDERSTAND IT, CONTACT AN ATTORNEY FOR LEGAL ADVICE.**

1. A lawsuit has been filed against you. A copy of the lawsuit and other court papers were served on you with this Summons.

2. If you do not want a judgment taken against you without your input, you must file an Answer in writing with the Court, and you must pay the required filing fee. To file your Answer, take or send the papers to Clerk of the Superior Court, 201 W. Jefferson, Phoenix, Arizona 85003 or electronically file your Answer through one of Arizona's approved electronic filing systems at http://www.azcourts.gov/efilinginformation.
Mail a copy of the Answer to the other party, the Plaintiff, at the address listed on the top of this Summons.
Note: If you do not file electronically you will not have electronic access to the documents in this case.

3. If this Summons and the other court papers were served on you within the State of Arizona, your Answer must be filed within TWENTY (20) CALENDAR DAYS from the date of service, not counting the day of service. If this Summons and the other court papers were served on you outside the State of Arizona, your Answer must be filed within THIRTY (30) CALENDAR DAYS from the date of service, not counting the day of service.

Requests for reasonable accommodation for persons with disabilities must be made to the court by parties at least 3 working days in advance of a scheduled court proceeding.

GIVEN under my hand and the Seal of the Superior Court of the State of Arizona in and for the County of  MARICOPA

SIGNED AND SEALED this Date: *August 08, 2023*

*JEFF FINE*
Clerk of Superior Court

By: *Y. MORALEZ*
Deputy Clerk



Requests for an interpreter for persons with limited English proficiency must be made to the division assigned to the case by the party needing the interpreter and/or translator or his/her counsel at least ten (10) judicial days in advance of a scheduled court proceeding.

If you would like legal advice from a lawyer, contact Lawyer Referral Service at 602-257-4434 or https://maricopabar.org. Sponsored by the Maricopa County Bar Association.

AZturboCourt.gov Form Set #8180741

Clerk of the Superior Court
*** Electronically Filed ***
Y. Moralez, Deputy
8/8/2023 11:26:54 AM
Filing ID 16406667

Person/Attorney Filing: Sean Woods
Mailing Address: 5055 N. 12th St. Suite 101
City, State, Zip Code: Phoenix, AZ 85014
Phone Number: (480)999-4556
E-Mail Address: swoods@millsandwoods.com
[  ] Representing Self, Without an Attorney
(If Attorney) State Bar Number: 028930, Issuing State: AZ

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
IN AND FOR THE COUNTY OF MARICOPA

Sean Pena
Plaintiff(s),
v.
City of Phoenix, et al.
Defendant(s).

Case No. **CV2023-012031**

**SUMMONS**

To: Samantha Caplinger

**WARNING: THIS AN OFFICIAL DOCUMENT FROM THE COURT THAT AFFECTS YOUR RIGHTS.  READ THIS SUMMONS CAREFULLY. IF YOU DO NOT UNDERSTAND IT, CONTACT AN ATTORNEY FOR LEGAL ADVICE.**

1. A lawsuit has been filed against you. A copy of the lawsuit and other court papers were served on you with this Summons.

2. If you do not want a judgment taken against you without your input, you must file an Answer in writing with the Court, and you must pay the required filing fee. To file your Answer, take or send the papers to Clerk of the Superior Court, 201 W. Jefferson, Phoenix, Arizona 85003 or electronically file your Answer through one of Arizona's approved electronic filing systems at http://www.azcourts.gov/efilinginformation.
Mail a copy of the Answer to the other party, the Plaintiff, at the address listed on the top of this Summons.
Note: If you do not file electronically you will not have electronic access to the documents in this case.

3. If this Summons and the other court papers were served on you within the State of Arizona, your Answer must be filed within TWENTY (20) CALENDAR DAYS from the date of service, not counting the day of service. If this Summons and the other court papers were served on you outside the State of Arizona, your Answer must be filed within THIRTY (30) CALENDAR DAYS from the date of service, not counting the day of service.

Requests for reasonable accommodation for persons with disabilities must be made to the court by parties at least 3 working days in advance of a scheduled court proceeding.

GIVEN under my hand and the Seal of the Superior Court of the State of Arizona in and for the County of  MARICOPA

SIGNED AND SEALED this Date: *August 08, 2023*

*JEFF FINE*
Clerk of Superior Court

By: *Y. MORALEZ*
Deputy Clerk



Requests for an interpreter for persons with limited English proficiency must be made to the division assigned to the case by the party needing the interpreter and/or translator or his/her counsel at least ten (10) judicial days in advance of a scheduled court proceeding.

If you would like legal advice from a lawyer, contact Lawyer Referral Service at 602-257-4434 or https://maricopabar.org. Sponsored by the Maricopa County Bar Association.

AZturboCourt.gov Form Set #8180741

2

Clerk of the Superior Court
*** Electronically Filed ***
Y. Moralez, Deputy
8/8/2023 11:26:54 AM
Filing ID 16406665

Person/Attorney Filing: Sean Woods
Mailing Address: 5055 N. 12th St. Suite 101
City, State, Zip Code: Phoenix, AZ 85014
Phone Number: (480)999-4556
E-Mail Address: swoods@millsandwoods.com
[  ] Representing Self, Without an Attorney
(If Attorney) State Bar Number: 028930, Issuing State: AZ

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF MARICOPA

Sean Pena
Plaintiff(s),
v.
City of Phoenix, et al.
Defendant(s).

Case No.  **CV2023-012031**

**SUMMONS**

To: Sandra Anderson

**WARNING: THIS AN OFFICIAL DOCUMENT FROM THE COURT THAT AFFECTS YOUR RIGHTS.  READ THIS SUMMONS CAREFULLY. IF YOU DO NOT UNDERSTAND IT, CONTACT AN ATTORNEY FOR LEGAL ADVICE.**

1.  A lawsuit has been filed against you. A copy of the lawsuit and other court papers were served on you with this Summons.

2.  If you do not want a judgment taken against you without your input, you must file an Answer in writing with the Court, and you must pay the required filing fee. To file your Answer, take or send the papers to Clerk of the Superior Court, 201 W. Jefferson, Phoenix, Arizona 85003 or electronically file your Answer through one of Arizona's approved electronic filing systems at http://www.azcourts.gov/efilinginformation.
Mail a copy of the Answer to the other party, the Plaintiff, at the address listed on the top of this Summons.
Note: If you do not file electronically you will not have electronic access to the documents in this case.

3.  If this Summons and the other court papers were served on you within the State of Arizona, your Answer must be filed within TWENTY (20) CALENDAR DAYS from the date of service, not counting the day of service. If this Summons and the other court papers were served on you outside the State of Arizona, your Answer must be filed within THIRTY (30) CALENDAR DAYS from the date of service, not counting the day of service.

Requests for reasonable accommodation for persons with disabilities must be made to the court by parties at least 3 working days in advance of a scheduled court proceeding.

GIVEN under my hand and the Seal of the Superior Court of the State of Arizona in and for the County of  MARICOPA

SIGNED AND SEALED this Date: *August 08, 2023*

*JEFF FINE*
Clerk of Superior Court

By: *Y. MORALEZ*
Deputy Clerk



Requests for an interpreter for persons with limited English proficiency must be made to the division assigned to the case by the party needing the interpreter and/or translator or his/her counsel at least ten (10) judicial days in advance of a scheduled court proceeding.

If you would like legal advice from a lawyer, contact Lawyer Referral Service at 602-257-4434 or https://maricopabar.org. Sponsored by the Maricopa County Bar Association.

AZturboCourt.gov Form Set #8180741

Clerk of the Superior Court
*** Electronically Filed ***
Y. Moralez, Deputy
8/8/2023 11:26:54 AM
Filing ID 16406659

Person/Attorney Filing: Sean Woods
Mailing Address: 5055 N. 12th St. Suite 101
City, State, Zip Code: Phoenix, AZ 85014
Phone Number: (480)999-4556
E-Mail Address: swoods@millsandwoods.com
[ ] Representing Self, Without an Attorney
(If Attorney) State Bar Number: 028930, Issuing State: AZ

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
IN AND FOR THE COUNTY OF MARICOPA

Sean Pena
Plaintiff(s),
v.
City of Phoenix, et al.
Defendant(s).

Case No.  **CV2023-012031**

**SUMMONS**

To: Michael Sullivan

**WARNING: THIS AN OFFICIAL DOCUMENT FROM THE COURT THAT AFFECTS YOUR RIGHTS.  READ THIS SUMMONS CAREFULLY. IF YOU DO NOT UNDERSTAND IT, CONTACT AN ATTORNEY FOR LEGAL ADVICE.**

1. A lawsuit has been filed against you. A copy of the lawsuit and other court papers were served on you with this Summons.

2. If you do not want a judgment taken against you without your input, you must file an Answer in writing with the Court, and you must pay the required filing fee. To file your Answer, take or send the papers to <u>Clerk of the Superior Court, 201 W. Jefferson, Phoenix, Arizona 85003 or electronically file your Answer through one of Arizona's approved electronic filing systems at http://www.azcourts.gov/efilinginformation.</u>
   Mail a copy of the Answer to the other party, the Plaintiff, at the address listed on the top of this Summons.
   Note: If you do not file electronically you will not have electronic access to the documents in this case.

3. If this Summons and the other court papers were served on you within the State of Arizona, your Answer must be filed within TWENTY (20) CALENDAR DAYS from the date of service, not counting the day of service. If this Summons and the other court papers were served on you outside the State of Arizona, your Answer must be filed within THIRTY (30) CALENDAR DAYS from the date of service, not counting the day of service.

Requests for reasonable accommodation for persons with disabilities must be made to the court by parties at least 3 working days in advance of a scheduled court proceeding.

GIVEN under my hand and the Seal of the Superior Court of the State of Arizona in and for the County of  MARICOPA

SIGNED AND SEALED this Date: *August 08, 2023*

*JEFF FINE*
Clerk of Superior Court

By: *Y. MORALEZ*
Deputy Clerk



Requests for an interpreter for persons with limited English proficiency must be made to the division assigned to the case by the party needing the interpreter and/or translator or his/her counsel at least ten (10) judicial days in advance of a scheduled court proceeding.

If you would like legal advice from a lawyer, contact Lawyer Referral Service at 602-257-4434 or https://maricopabar.org. Sponsored by the Maricopa County Bar Association.

AZturboCourt.gov Form Set #8180741

Clerk of the Superior Court
*** Electronically Filed ***
Y. Moralez, Deputy
8/8/2023 11:26:54 AM
Filing ID 16406660

Person/Attorney Filing: Sean Woods
Mailing Address: 5055 N. 12th St. Suite 101
City, State, Zip Code: Phoenix, AZ 85014
Phone Number: (480)999-4556
E-Mail Address: swoods@millsandwoods.com
[  ] Representing Self, Without an Attorney
(If Attorney) State Bar Number: 028930, Issuing State: AZ

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| Sean Pena<br>Plaintiff(s),<br>v.<br>City of Phoenix, et al.<br>Defendant(s). | Case No. **CV2023-012031**<br><br>**SUMMONS** |

To: Jeri L. Williams

**WARNING: THIS AN OFFICIAL DOCUMENT FROM THE COURT THAT AFFECTS YOUR RIGHTS.  READ THIS SUMMONS CAREFULLY. IF YOU DO NOT UNDERSTAND IT, CONTACT AN ATTORNEY FOR LEGAL ADVICE.**

1. A lawsuit has been filed against you. A copy of the lawsuit and other court papers were served on you with this Summons.

2. If you do not want a judgment taken against you without your input, you must file an Answer in writing with the Court, and you must pay the required filing fee. To file your Answer, take or send the papers to <u>Clerk of the Superior Court, 201 W. Jefferson, Phoenix, Arizona 85003 or electronically file your Answer through one of Arizona's approved electronic filing systems at http://www.azcourts.gov/efilinginformation.</u>
Mail a copy of the Answer to the other party, the Plaintiff, at the address listed on the top of this Summons.
Note: If you do not file electronically you will not have electronic access to the documents in this case.

3. If this Summons and the other court papers were served on you within the State of Arizona, your Answer must be filed within TWENTY (20) CALENDAR DAYS from the date of service, not counting the day of service. If this Summons and the other court papers were served on you outside the State of Arizona, your Answer must be filed within THIRTY (30) CALENDAR DAYS from the date of service, not counting the day of service.

Requests for reasonable accommodation for persons with disabilities must be made to the court by parties at least 3 working days in advance of a scheduled court proceeding.

GIVEN under my hand and the Seal of the Superior Court of the State of Arizona in and for the County of  MARICOPA

SIGNED AND SEALED this Date: *August 08, 2023*

*JEFF FINE*
Clerk of Superior Court

By: *Y. MORALEZ*
Deputy Clerk



Requests for an interpreter for persons with limited English proficiency must be made to the division assigned to the case by the party needing the interpreter and/or translator or his/her counsel at least ten (10) judicial days in advance of a scheduled court proceeding.

If you would like legal advice from a lawyer, contact Lawyer Referral Service at 602-257-4434 or https://maricopabar.org. Sponsored by the Maricopa County Bar Association.

AZturboCourt.gov Form Set #8180741

Clerk of the Superior Court
*** Electronically Filed ***
M. De La Cruz, Deputy
9/7/2023 3:43:06 PM
Filing ID 16560873

Sean A. Woods (Arizona Bar #028930)
Robert T. Mills (Arizona Bar #018853)
**MILLS + WOODS LAW, PLLC**
5055 North 12th Street, Suite 101
Phoenix, Arizona 85014
Telephone 480.999.4556
docket@millsandwoods.com
swoods@millsandwoods.com
*Attorneys for Plaintiff*

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

## IN THE MARICOPA COUNTY SUPERIOR COURT

| | |
|---|---|
| SEAN PENA, an individual; | **CASE NO:** CV2023-012031 |
| Plaintiff, | **FIRST AMENDED COMPLAINT** |
| vs. | |
| CITY OF PHOENIX, a governmental entity; COUNTY OF MARICOPA, a governmental entity; MICHAEL SULLIVAN, Chief of the Phoenix Police Department; JERI L. WILLIAMS, former Chief of the Phoenix Police Department; DEPUTY MARICOPA COUNTY ATTORNEY JEFFREY ROSEBERRY and JANE DOE ROSEBERRY; MARICOPA COUNTY DEPUTY ATTORNEY CATHERINE FU and JOHN DOE FU; MARICOPA COUNTY DEPUTY ATTORNEY SANDRA ANDERSON and JOHN DOE ANDERSON; MARICOPA COUNTY ATTORNEY SAMANTHA CAPLINGER and JOHN DOE CAPLINGER; MARICOPA COUNTY ATTORNEY MICHAEL BAKER and JANE DOE BAKER; MICHAEL WALKER and JANE DOE WALKER; CYNTHIA RAMIREZ; KRYSTOFFER LEE; LISA GUTIERREZ; JARRETT MAUPIN and JANE DOE MAUPIN; and IESHA STANCIEL and JOHN DOE STANCIEL, | (JURY TRIAL DEMANDED) |
| Defendants. | |

CITY CLERK DEPT.
2023 SEP 28 PM 2: 29

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

Plaintiff Sean Pena ("Sean"), by and through his attorneys, Mills + Woods Law PLLC, for his Complaint against Defendants City OF PHOENIX, a governmental entity; COUNTY OF MARICOPA, a governmental entity; MICHAEL SULLIVAN, Chief of the Phoenix Police Department; JERI L. WILLIAMS, former Chief of the Phoenix Police Department; DEPUTY MARICOPA COUNTY ATTORNEY JEFFREY ROSEBERRY and JANE DOE ROSEBERRY; DEPUTY MARICOPA COUNTY ATTORNEY CATHERINE FU and JOHN DOE FU; DEPUTY MARICOPA COUNTY ATTORNEY SANDRA ANDERSON and JOHN DOE ANDERSON; DEPUTY MARICOPA COUNTY ATTORNEY SAMANTHA CAPLINGER and JOHN DOE CAPLINGER; MICHAEL WALKER and JANE DOE WALKER;    CYNTHIA RAMIREZ; KRYSTOFFER LEE; LISA GUTIERREZ; JARRETT MAUPIN and JANE DOE MAUPIN; and, IESHA STANCIEL and JOHN DOE STANCIEL (collectively "Defendants") alleges and states as follows:

## **INTRODUCTION**

1.    Plaintiff Sean Pena ("Sean") was a decorated Phoenix Police Officer dedicated to fighting the fentanyl epidemic in Phoenix Streets.

2.    Sean was falsely accused of three sexual assaults while on-duty as a Phoenix Police Officer.

3.    Sean's accusers were Defendants Cynthia Ramirez ("Ramirez"), Krystoffer Lee ("Lee") and Lisa Gutierrez ("Gutierrez") (collectively the "Accusers").

4.    Ramirez', Lee's and Gutierrez' accusations against Sean were demonstrably false, as would have been revealed by even a cursory investigation by the Phoenix Police Department or the Maricopa County Attorney's Office.

2

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

5. The Accusers were malicious liars who were each highly motivated to make false accusations against Sean. At least two of them profited mightily, receiving hundreds of thousands of dollars each based on their lies.

6. Despite the Accusers' lack of credibility and the complete lack of any physical evidence supporting the accusations, Defendants pushed the investigation hastily and recklessly, and terminated Sean's employment without just cause.

7. Defendants knew that Sean had submitted to, and passed, a polygraph examination during which he denied ever having sexual contact with anyone while on duty as a Phoenix Police officer.

8. Defendants nonetheless initiated and continued a criminal prosecution of Sean, charging him with multiple felonies based on the accusations of Ramirez, Lee and Gutierrez.

9. Not surprisingly, Sean was found not guilty of all charges

10. Defendants, and each of them, knowingly participated in a conspiracy to have Sean falsely imprisoned, maliciously prosecuted, defamed, wrongfully fired from the job he loved, and left with his career in law enforcement ruined. Defendants conspired to, and did, inflict severe emotional distress on Sean and violated his constitutional rights.

## THE PARTIES

11. Plaintiff Sean Pena ("Sean") is an adult individual who resides in Maricopa County, Arizona.

12. Sean is a former police officer who was employed by the City of Phoenix Police Department.

13. Sean was a decorated Officer who was assigned, by his choosing, to the toughest beat in Phoenix – the South Mountain Precinct.

3

14.     As an Officer of the Phoenix Police Department, Sean worked tirelessly to get fentanyl pills off the street.

15.     In his work, Sean developed relationships with Street Sources.

16.     Sean was highly successful in tracing the origins of fentanyl pills and developing an understanding of criminal distribution structures.

17.     Sean's efforts to rid the streets of fentanyl gained him enemies among the dealers, and users, in the South Mountain Precinct. These individuals were anxious to get him out of the way.

18.     Defendant County of Maricopa ("Maricopa") is a governmental entity that acts by and through its officials, employees and agents, including without limitation the Maricopa County Attorneys' Office, and each of the Defendants Sandra Anderson, Samantha Caplinger, Michael Baker, Michael Roseberry, and Catherine Fu.

19.     Defendant City of Phoenix ("COP") is a governmental entity that acts by and through its officials, employees and agents, including without limitation the Phoenix Police Department, and each of the Defendants Michael Sullivan, Jeri L. Williams, Michael Walker, and Allison Steinberger.

20.     Defendant Michael Sullivan ("Sullivan") is Chief of the Phoenix Police Department and is sued in his official and individual capacity. He is tasked with oversight of the Phoenix Police Department and is responsible for all policies and procedures promulgated by the Phoenix Police Department. He is an agent of COP and the Phoenix Police Department, operating in his official and individual capacity in Maricopa County, Arizona.

21.     Defendant Jeri L. Williams ("Williams") was Chief of the Phoenix Police Department from 2016 until 2022. She is sued in her official and individual capacity. She was tasked with oversight of the Phoenix Police Department and was responsible for all

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

4

policies and procedures promulgated by the Phoenix Police Department. She is an agent of COP and the Phoenix Police Department, operating in her official and individual capacity in Maricopa County, Arizona.

22.     Defendant Jeffrey Roseberry ("Roseberry") is a Deputy Maricopa County Attorney employed by, and serving as an agent of, Maricopa County, Arizona, and the Maricopa County Attorney's office. At all relevant times he was operating in his official and individual capacity in Maricopa County, Arizona.

23.     Defendant Catherine Fu ("Fu") is a Deputy Maricopa County Attorney employed by, and serving as an agent of, Maricopa County, Arizona, and the Maricopa County Attorney's office. At all relevant times she was operating in her official and individual capacity in Maricopa County, Arizona.

24.     Roseberry and Fu conducted the criminal trials and are collectively referred to as the "Trial Prosecutors".

25.     Defendant Sandra Anderson ("Anderson") is a Deputy Maricopa County Attorney employed by, and serving as an agent of, Maricopa County, Arizona, and the Maricopa County Attorney's office. At all relevant times she was operating in her official and individual capacity in Maricopa County, Arizona.

26.     Defendant Samantha Caplinger ("Caplinger") is a Deputy Maricopa County Attorney employed by, and serving as an agent of, Maricopa County, Arizona, and the Maricopa County Attorney's office. At all relevant times she was operating in her official and individual capacity in Maricopa County, Arizona.

27.     Michael Baker ("Baker") is a Maricopa County Attorney employed by, and serving as an agent of, Maricopa County, Arizona, and the Maricopa County Attorney's office. At all relevant times he was operating in his official and individual capacity in Maricopa County, Arizona.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

5

28.     Caplinger, Anderson, and Baker were the prosecutors who presented to the grand juries and are collectively referred to herein as the "Grand Jury Prosecutors".

29.     The Trial Prosecutors and Grand Jury Prosecutors are collectively referred to herein as the "Prosecutors".

30.     Defendant Michael Walker ("Walker") is a Police Detective employed by, and serving as an agent of, COP and the Phoenix Police Department. At all relevant times he was operating in his official and individual capacity in Maricopa County, Arizona.

31.     Defendant Cynthia Ramirez is an individual residing in Maricopa County. All of her acts alleged herein occurred in Maricopa County, Arizona.

32.     Defendant Krystoffer Lee is an individual residing in Maricopa County. All of her acts alleged herein occurred in Maricopa County, Arizona.

33.     Defendant Lisa Gutierrez is an individual residing in Maricopa County. All of her acts alleged herein occurred in Maricopa County, Arizona.

34.     Defendant Jarrett Maupin ("Maupin") is an individual residing in Maricopa County. All of his acts alleged herein occurred in Maricopa County, Arizona.

35.     Defendant Iesha Stanciel ("Stanciel") is an individual residing in Maricopa County. All of her acts alleged herein occurred in Maricopa County, Arizona.

36.     Defendants Roseberry, Fu, Anderson, Caplinger, Baker, Walker, Maupin and Stanciel were acting for the benefit of their respective marital communities, if any, and therefore their respective marital communities are liable for their actions as set forth herein. Accordingly, Defendants Jane Doe Roseberry, John Doe Fu, John Doe Anderson, John Doe Caplinger, Jane Doe Baker, Jane Doe Walker, Jane Doe Maupin, and John Doe Stanciel are named as Defendants herein.

37.     Defendant COP is vicariously liable under the principle of *respondeat superior* for the actions and inactions of the employees of the Phoenix Police Department

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

6

and any private contractors including those employees or contractors named as defendants in this action, as to any claims that are asserted by Plaintiff as a result of violations of the Arizona Constitution and Arizona common law because, at all relevant times, those Defendants were acting within the course and scope of their employment or contract with COP or entities privately contracted with COP.

38.    Defendant Maricopa is vicariously liable under the principle of *respondeat superior* for the actions and inactions of the employees of the Maricopa County Attorney's Office and any private contractors including those employees or contractors named as defendants in this action, as to any claims that are asserted by Plaintiff as a result of violations of the Arizona Constitution and Arizona common law because, at all relevant times, those Defendants were acting within the course and scope of their employment or contract with Maricopa or entities privately contracted with Maricopa.

39.    For purposes of Plaintiffs' claims arising under Federal law, including without limitation the United States Constitution and 42 U.S.C. §1983 *et seq*., and as may be relevant to Plaintiff's state law claims, at all relevant times described herein, Defendants were acting under color of state law.

## JURISDICTION AND VENUE

40.    Pursuant to 42 U.S.C. §1983 *et seq.*, Plaintiffs bring this action for violations of the United States Constitution, including without limitation the Fourth, Eighth, and Fourteenth Amendments, and Arizona common and statutory laws.

41.    The amount in controversy exceeds the minimal jurisdictional limits of this Court.

42.    To the extent applicable, and without conceding that said statute applies, Plaintiffs have served their Notice of Claim upon Defendants in compliance with A.R.S.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

§12-821.01, *et seq.* More than sixty (60) days have expired since Plaintiffs served their Notice of Claim and Defendants have not responded in any manner to said Notice of Claim.

43.     Pursuant to Article 6, Section 14 of the Arizona Constitution, this court has original subject matter jurisdiction in this Complaint because the claims relate to causes of action, the underlying acts and/or omissions for which, at all times relevant, have caused the events alleged herein to occur with primary effect in Maricopa County, Arizona.

44.     Venue is proper in that the specific acts giving rise to the causes of action alleged herein occurred with primary effect in Maricopa County, Arizona.

## FACTUAL ALLEGATIONS

### CYNTHIA RAMIREZ' FALSE ACCUSATIONS

45.     On or about August 26, 2018, Sean requested that Officer Antonio Felix follow-in on a suspicious vehicle parked in Sherman Park in Phoenix.

46.     When Sean and Officer Felix arrived they found  Ramirez and German Martinez, who had been having sex in the vehicle.

47.     Ramirez lied to the Officers and gave them a false name.

48.     Ramirez had a history of providing false names to police officers on numerous occasions.

49.     The Officers also found Marijuana in the vehicle.

50.     Ramirez later admitted under oath that she was aware at that time that a felony warrant from Yavapai County had been issued for her arrest.

51.     She testified that she was so fearful of arrest that she contacted friends to find out whether there were any police around Sherman Park before she and German went there.

52.     After Martinez gave the Officers Ramirez' correct name, the Officers were able to determine that there was an outstanding felony warrant for Ramirez in Yavapai County. The Officers then arrested Ramirez and took her into custody.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

53.     Officer Felix advised Sean to put gloves on because Ramirez had an apparent infected wound on her body.

54.     Ramirez told Police that she had seen Sean before. She told Detective Walker that she had seen Sean "four days prior when he arrested her friend Christina near 35th Avenue and Washington."

55.     Sean transported Ramirez in his patrol vehicle to be processed at the South Mountain Precinct, and after processing, to the Fourth Avenue Jail in Phoenix.

56.     While in transit, Ramirez was crying and pleaded with Sean to let her go. She said "I can't go to jail." She insisted that she could not get arrested because her baby and her stepmother were waiting for her. She said her stepmother had heart conditions and Ramirez was her only caretaker.

57.     Desperate to avoid jail, Ramirez offered to give Sean oral sex if he would let her go free.

58.     Sean ignored Ramirez' offer.

59.     While in transit to the Fourth Avenue Jail, they had to stop briefly at a railroad crossing on Third Avenue due to the presence of a train. They were stopped at the crossing for only one minute and 39 seconds.

60.     While stopped at the crossing Sean had a telephone conversation with Officer Felix. The conversation lasted approximately 30 seconds.

61.     Ramirez testified that she was furious that Sean had a "smirk" on his face when he dropped her off at the jail.

62.     Ramirez admitted that prior to her arrest, she and Martinez had been doing "speedballs." She described a "speedball" as a mixture of opiates and Methamphetamine.

63.     She admitted that she had used Fentanyl that night.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

9

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

64.     She agreed at trial that she had taken a "pretty heavy combo of drugs" prior to her arrest.

65.     She admitted that she was under the influence of drugs during the time that she was transported to the Fourth Avenue Jail.

66.     Ramirez was desperate to obtain release from jail.

67.     She testified that she tried to get the attention of personnel at the 4th Avenue jail, but they all told her to "shut up" because she was still intoxicated or "coming down" and was hallucinating.

68.     It was obvious to the corrections officers and staff at the Fourth Avenue Jail that Ramirez was intoxicated.

69.     Ramirez told medical staff at the jail that Sean had sexually assaulted her while in transit to the jail.

70.     Ramirez also told a nurse at the jail that Sean had not touched her, except for her hair.

71.     A medical staff member reported Ramirez' accusation to the Phoenix Police Department, which immediately began an investigation.

72.     Ramirez told Detective Walker that Sean's patrol vehicle had come to a stop at a railroad crossing. She alleged that while stopped there, Sean had his telephone conversation. She claimed that Sean then told her to show him her breasts, and claims she did. She claimed that Sean then exited the driver's seat of the vehicle, walked back to the rear driver's side, opened the rear driver's side door, and put his erect penis in her mouth for approximately three minutes – all while still stopped in the middle of a public street in Phoenix.

Mills + Woods Law, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

73.     This is clearly a lie. At the second criminal trial, Maricopa County Superior Court Case # CR2020-128297, on August 8, 2022, the prosecution stipulated to the fact that Sean's car was stopped for exactly one minute and thirty-nine seconds.

74.     Not only was the street public, but there was traffic on it. In fact, surveillance video from a nearby business shows a white car drive past Sean's patrol vehicle at the exact moment he was allegedly standing at the backseat door assaulting Ramirez – a fact that was never presented to a grand jury

75.     Ramirez repeatedly insisted to Detective Walker that after the alleged assault, Sean drove over the railroad tracks and proceeded to the Fourth Avenue jail. When Walker told her that her story didn't add up, she changed her story and said that she laid down in the back after the alleged assault and didn't actually see the route they took to the jail.

76.     When asked at trial whether she thought the accusations against Sean would keep her from getting sentenced on the outstanding warrant, Ramirez responded "Something like that."

77.     At trial, Ramirez testified that Sean had his duty belt on when he "leaned in" to the back seat of his patrol vehicle, put one hand on her head and put his penis in her mouth. Given the configuration of the patrol vehicle, it would have been virtually impossible for Sean to do what Ramirez described.

78.     If the alleged assault had actually occurred, Ramirez would have had clear and ready access to Sean's firearm, Taser, and pepper spray at the time the assault was occurring.

79.     Ramirez testified at trial under oath that Sean had actually ejaculated in her mouth.

80.     Ramirez acknowledged that Sean had been on the phone directly before the alleged assault.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

81.     Ramirez told investigators that while approaching the railroad crossing, Sean's patrol vehicle was following a Maricopa County Sheriff's van. She said the van pulled into a private drive, turned around and parked in a lot within view of Sean's patrol vehicle while stopped at the crossing.

82.     The investigators determined that there were no witnesses to the sexual assault alleged by Ramirez.

83.     She claimed that at the time of the alleged assault, Sean's penis was erect and she "did not believe he was circumcised."

84.     She later changed her story again and admitted that she does not know what circumcision means.

85.     She said she did not spit or wipe her face after the alleged assault.

86.     On August 26, 2018 Walker – took circumoral swabs of Ramirez' mouth and buccal swabs of her cheeks.

87.     Walker took it upon himself to do so because a "Forensic Nurse" was unavailable to perform the collection.

88.     DNA lab results from Walker's swabs provided insufficient genetic information and no conclusions could be drawn.

89.     On August 27, 2018, a forensic nurse  took swabs of Ramirez' mouth.

90.     When interviewed, Ramirez told Walkerthat the test results would show Martinez' DNA and Sean's DNA.

91.     The swabs were taken within the recommended time frame to detect biological evidence.

92.     The lab results from the forensic nurse's swabs showed that Martinez' DNA could *not* be excluded from the results, but that Sean's DNA was excluded.

93.     Automatic Vehicle Location records of Sean's patrol vehicle showed that the vehicle was stopped at the railroad crossing for only one and a half minutes.

94.     The investigators also obtained video surveillance footage from nearby businesses that confirmed Sean's patrol vehicle was stopped at the railroad crossing for only a minute and a half.

95.     Detective Walker sent Sean a "confrontation" text. Walker texted Sean and pretended to be Ramirez in order to obtain admissions from Sean.

96.     The "confrontation" failed. Sean did not make any admissions during the text conversation.

97.     Sean eventually told the texter (who he believed to be Ramirez) to stop contacting him. Sean then *immediately* reported the text exchange to his supervisor and chain of command.

98.     COP's Police Department closed its investigation of Sean on or about September 1, 2018, finding no corroboration of Ramirez's claims.

99.     The Maricopa County Attorney did not charge or seek an indictment of Sean based on the accusations of Ramirez at that time.

100.    Furthermore, COP's internal Administrative Inquiry (the "Ramirez Inquiry") documentation dated August 28, 2018 specifically stated that "There is no evidence to support the allegation of officer misconduct by Officer Pena."

101.    As Walker told Ramirez at her September 5, 2018 interview:

"The DNA, the video, the surveillance, the time frames –
MS. RAMIREZ: Uh-huh.

DET. WALKER: -- the other officers involved, all these things, do not show, do not corroborate your statements at all. At all.

                                        ***

DET. WALKER: But remember how I told you we had two profiles come up –

MS. RAMIREZ: Uh-huh.

DET. WALKER: -- with DNA.

MS. RAMIREZ: Yeah.

DET. WALKER; Okay? One of them is definitely Herman.

MS. RAMIREZ: Uh-huh.

DET. WALKER: And the other one is definitely not our officer. We got the results back this week. It is definitely not him."

102.    Although the investigation of Ramirez' accusations was closed, the investigation and Ramirez' claims were no secret. They were well known to many employees of COP and its Police Department.

103.    Word of Ramirez' accusations and the investigation of Sean passed to members of the general public as well.

104.    Ramirez had and continues to have a history of making accusations of sexual assault following drug use.

105.    In 2015 Ramirez' ex-boyfriend took her to Banner Hospital Estrella after she had become unresponsive following use of both methamphetamine and heroin with some other men. Ramirez told nursing staff at the hospital that she might have been sexually assaulted by someone while she was passed out at a Phoenix hotel the previous night.

106.    When police arrived to investigate the possible assault, Ramirez indicated that she did not want to talk about it at that time and ignored them.

107.    In 2017 Ramirez was arrested for possession of a stolen vehicle and possession of a burglary tool. At the time of her arrest, she had lied to the arresting Officer by giving him a false name.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

108.     In April 2018, Ramirez was arrested for possession of a dangerous drug (methamphetamine) and for an outstanding felony warrant. While in custody she reported to police that she may have been sexually assaulted by a transient man who she met through Facebook. She told the Officer that at her first physical meeting with the man she allowed him to inject her with a mixture of heroin and methamphetamine. She woke up the next morning feeling pain in her vagina. She said that these encounters continued over the course of a "few weeks" and that she did not remember whether she had ever given the man consent or the last time they had sex. She told the Officers that she did not want prosecution.

109.     COP and the Prosecutors knew or consciously and recklessly disregarded all of these facts regarding Ramirez.

110.     Later, in July 2021 COP Police Officers responding to an emergency call found Ramirez unconscious and laying on the ground from a drug overdose. She was transported to a hospital. She later reported to hospital staff that she thought she had been sexually assaulted because she was naked. In fact, the nursing staff had cut her clothes off to facilitate emergency examination and treatment.

111.     In November 2021, Ramirez was arrested for possession of methamphetamine and for an outstanding felony warrant from Maricopa.

112.     Despite the fact that the investigation of Ramirez' accusations had been closed three years earlier for lack of evidence, the Prosecutors in 2021 proceeded to charge Sean with sexual assault of Ramirez.

113.     At the time of Sean's trial, Ramirez was incarcerated for felony possession of a stolen vehicle and she had to be escorted to court by law enforcement personnel.

### KRYSTOFER LEE'S FALSE ACCUSATIONS

114.     Lee has a history of illegal drug use and mental illness.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

15

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

115.     On or about June 1, 2019, the Arizona Department of Child Safety removed Lee's children from her custody.

116.     Later that same day, Sean, Officer Felix and one other Officer responded to a call for a wellness check on a woman who was wandering in the street and appeared to be extremely intoxicated. They located Lee who fit the description provided by the caller.

117.     Lee was wandering in the street with no shoes on.

118.     Lee's speech was slurred.

119.     Officer Felix testified that when he and Sean found Lee she was wandering around, knocking on doors, yelling and screaming.

120.     In Lee's purse the Officers discovered foil used for smoking fentanyl.  This was drug paraphernalia.

121.     Sean also confirmed that Lee had an outstanding misdemeanor warrant from COP.

122.     Sean told Lee he would let her go if she showed him where she got the fentanyl. She agreed.

123.     Lee told Sean that the dealer's name was "Angel."  Angel was a known violent drug dealer in Sean's beat. Lee told Sean that Angel had started selling drugs out of his cousin's house because he knew Sean was on to him.

124.      Lee was handcuffed with her hands behind her back and with her seatbelt fastened in the back seat of Sean's vehicle as they drove to Angel's location and Lee pointed out the house from which Angel was selling drugs.

125.     Lee then directed Sean to drop her off at 11th Avenue and West Lynne Lane. Sean drove her to that location. Sean then uncuffed Lee and let her out of the back seat. She walked away.

126.     When Sean released Lee, he was parked on a public street.

127.    In October 2019, Lee attended the Arizona State Fair with her friend Iesha Stanciel and Iesha's two children. At the Fair, they met with the Reverend Jarrett Maupin, a well-known activist in Phoenix.

128.    The meeting with Maupin had been planned in advance and was not mere coincidence.

129.    Maupin previously plead guilty to making false statements to the FBI about then Phoenix Mayor Phil Gordon. In the plea agreement dated April 9, 2009, Maupin admitted that he falsely informed the FBI that he had seen evidence of Mayor Gordan engaging in criminal activity, and that he did so "in an effort to smear Mayor Gordon politically, even though I knew at all times there was no truth to the allegations I made to the FBI."

130.    On information and belief, Maupin and Lee discussed the fact that Lee had been taken into custody by Sean. They discussed bringing a lawsuit as a means of getting money from COP.

131.    On information and belief, Maupin introduced Lee to a lawyer with whom Maupin was familiar.

132.    Maupin accompanied Lee to her meetings with the civil lawyer.

133.    On information and belief, Maupin and/or the lawyer advised Lee that in order to bolster the chance of a successful lawsuit, Lee should first make a police report of an alleged assault.

134.    On November 20, 2019, nearly six months after her encounter with Sean, Lee told a Phoenix Police Officer at a Circle K that Sean had touched her breasts and had her masturbate his penis during that encounter.

135.    If Lee's account of the encounter was correct, she would have had easy access to Sean's firearm, Taser and pepper spray at the time it occurred.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

136.     Lee admitted that she was drunk at the time she reported the incident.

137.     The Phoenix Police Department began an investigation of Lee's accusations.

138.     The other Officers who were with Sean when Lee was detained did not recall the encounter and did not recall anything improper on the part of Sean.

139.     After Lee's report, the Phoenix Police Department conducted a canvass of females who had been transported by Sean in the course of his duties from March through November 2019. All persons who they were able to interview gave only positive feedback.

140.     The police investigation revealed no physical evidence corroborating Lee's accusation against Sean. No DNA or semen was found in Sean's patrol vehicle even though Lee claimed Sean had ejaculated while seated in the vehicle.

141.     In fact, Detective Walker emphasized the fact that Sean's vehicle was impounded and evidence examination had been performed. Sean told Walker that there would be no DNA evidence in the vehicle:

DET. WALKER: Okay. It was a first shift car that you were driving that day, that car we've taken and we've put into the crime lab, and we've done some evidence examination on the seat, the steering wheel, and such. The crime lab has the ability to use what's called alternate light sourcing, I'm not sure if you're familiar with it, but –

OFC. PENA: I get it. I know what it is.

DET. WALKER: -- it's essentially black lighting, and they can search for biological- evidence with regards to semen. What do you think about -- is your semen in that car?

OFC. PENA: No.

142.     Lee told the Police detectives investigating her accusation "that she did not wish to press charges because she had 'played a part' in the incident. However, Ms. Lee stated that she would participate in prosecution if other victims were located."

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

18

143.     At her initial interview by COP investigators on November 20, 2019, she told investigators that she was standing outside the driver's side door of Sean's patrol vehicle and reached through the open window to give him a handjob.

144.     Lee told investigators that she did not want to press charges against Sean.

145.     At her second interview on December 3, 2019, she told investigators that at the time of the alleged assault she was seated in the front driver's seat of Sean's patrol vehicle.

146.     She later admitted at trial that this would have been physically impossible.

147.     Incredibly, none of the Police investigators – including Walker – challenged or pressed Lee on this story or on the fact that it differed dramatically from the story she told just two weeks earlier at her November 20, 2019 interview.

148.     Instead, Walker pressed her at the second interview on whether she would be willing to assist in a prosecution of Sean if there were "multiple victims."

149.     Lee agreed that she would come forward if there were multiple victims.

150.     After the interview, Walker dredged up the old accusations of Ramirez, even though that investigation had long since been closed for lack of evidence, in order to convince Lee that there were in fact "multiple victims."

151.     Walker's actions demonstrate a shocking level of malice and a sadistic manipulation of the alleged "victims."

152.     Upon information and belief, at that time, Lee, Maupin and the civil lawyer were already planning a civil lawsuit for money damages against COP.

153.     On the day she made her report, Lee told police investigators that after Sean dropped her off at the location she requested, she got out of the back seat of the patrol vehicle, walked around to the front driver's side and made small talk with Sean. The driver's door was closed and Sean was seated in the driver's seat. Lee said she reached into

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

the patrol vehicle through the open window and masturbated Sean to ejaculation. Lee told the police investigators that she then "walked home and she told her friend Iesha Stanciel over the phone about the incident."

154.    On November 21, 2019, Stanciel responded to a police investigator that Lee had called her and related that a police officer had taken out his penis and asked her for oral sex, which she refused. According to the Police Report: "Sgt. Gonzalez asked Stanciel, regarding her earlier statement that the officer asked Lee for oral sex while he was seated in the front seat, if she was aware of Lee actually having any sexual contact with the officer. Stanciel said she doesn't know if anything occurred and wasn't sure Lee would be comfortable enough to share those specifics."

155.    Stanciel told the investigator that "the rest of the details Lee told her that night were blurry to her and she couldn't remember everything said."

156.    Lee told investigators that after leaving Sean's patrol vehicle that evening she went to Stanciel's house and told Stanciel what had occurred between Lee and Sean.

157.    Lee did not go to Stanciel's house on the night of the alleged assault.

158.    Stanciel told investigators that "although she couldn't remember all the details of the conversation with Ms. Lee, she did recall that Ms. Lee told her that the officer transporting her in his vehicle, pulled down his pants and requested oral sex."

159.    Stanciel also told investigators that Lee adamantly denied that she had oral sex or any other type of sex with Sean, stating:

> … I don't want to put words in her mouth, you know, but what I can remember is that the officer pulled his pants down and was telling her to, you know, give him oral sex and stuff. And I – I was asking her, did she do it, you know, what happened. She was, like, I was so scared, but no, I didn't.

160.    Stanciel further stated:

> She said I really need to talk to you, you know, you're the only person I have, and you know, some shit happened. Tell me why I get pulled over by the

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

police and these mother fuckers, like, ***Try*** to fucking rape me. (emphasis added).

161.    On or about November 25, 2020. Lee filed a civil Complaint (the "Lee Complaint") against Sean and COP of Phoenix seeking money damages based on her accusations of misconduct on the part of Sean.

162.    In the Complaint, Lee alleged that Sean told Lee to get in the front seat of his patrol vehicle where he "forced [Lee's] head toward his penis and demanded oral sex. [Lee], in fear for her life, ***performed oral sex*** on Defendant Pena." (emphasis added).

163.    On December 1, 2020, Lee, accompanied by Maupin and Stanciel, held a press conference in front of Phoenix Police Headquarters.

164.    At the press conference, Maupin said that Pena had told Lee that "He liked nasty black street bitches."

165.    The reporter asked Maupin if that was really what Pena had said.

166.    Maupin responded "Yes."

167.    This accusation was false. Sean did not tell Lee that "He liked nasty black street bitches."

168.    Maupin then said that Pena was as dangerous as Mark Goudeau – a convicted serial rapist and murderer.

169.    Maupin stated that Lee had first come to him about a year ago.

170.    Maupin stated that Pena forced Lee to engage in sexual acts and endure horrific verbal abuse.

171.    On December 7, 2020, the Phoenix New Times ("PNT") published an article about Lee's accusations against Sean.

172.    According to the article, Lee related to PNT that her encounter with Pena took place while she "was trying to unwind after getting through a stressful day at her job at a local Popeyes and took a quick detour to a convenience store to buy some cigarettes."

Mills + Woods Law, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

173.     In fact, the Arizona Department of Child Safety had taken Lee's children from her that same day.

174.     The Phoenix New Times article continued: "That same night, according to Lee, she would be violent [sic] sexually assaulted by a Phoenix police officer."

175.     The article states that an Officer told her she had a warrant, handcuffed her and put her in the back of "one of the squad cars." The driver, Sean, then "got behind the wheel and asked her to locate the house of a drug dealer. Lee had no idea who Pena was talking about. 'He asked me to find some drug dealer. I can't remember what he said his name was,' she said. 'I don't know who it was.'"

176.     Lee told PNT that she then directed Sean to a "random house close by." No one was home.

177.     Lee then related to PNT that after she led Sean to the "random" house:

"Lee asked if Pena could take her home. He said yes, and they drove off. But Pena didn't take her home. He drove to a nearby vacant lot at 11th Avenue and West Lynne Lane. There, he unhandcuffed Lee, forced her into the passenger seat in the front of the car, and started playing a porn video on his phone. 'He was watching porn. He was pulling his pants down,' Lee said. 'He was putting my head down. He had his hand on his gun. I didn't want to move. I was scared … I was crying.' Pena groped Lee's breasts and tried to put his hands down her pants, she said. 'He was telling me to suck his dick, telling me that I was beautiful, that he wanted it like in the pornos, that he wanted it nasty "like how Black girls do it in porn," Lee said. 'Just some weird stuff you don't expect a cop to be saying.' He started masturbating and forced Lee to give him a hand job. Afterwards, he told her to come back to the same location the next night and that he would 'find and kill' her if she didn't. She bolted from the scene."

178.     Lee told PNT that she then ran to Stanciel's house in a "hysterical" state and told Stanciel what happened.

179.     Stanciel told PNT that "'She was just banging on my door,'… 'She was like "oh my gosh, oh my gosh." She was hyperventilating. She was like "No one is going to believe me'."

22

180.    Lee told PNT that she took her children to live with her father in Buckeye because she was "too scared to be in Phoenix after the assault."

181.    In fact, the government had already removed Lee's children from her custody.

182.    Despite having knowledge of Lee's and Stanciel's extreme deviations from each previous story, the Prosecutors, COP, Maricopa, Walker, and Chief Williams still moved forward with sham charges against Sean.

183.    Maupin was also featured prominently in the PNT article, stating to PNC that Lee, Ramirez and a "third victim" (Gutierrez) had been "raped" by Sean.

184.    In or about June, 2021, Lee settled her lawsuit against COP.

185.    On information and belief, COP paid Lee $425,000.

186.    Lee then paid a portion of the settlement proceeds to Maupin.

187.    During a break in testimony at trial, Maupin approached Sean's Defense Counsel and told them outright that he did not believe that Lee was sexually assaulted by Sean despite his ridiculous public outcry and being paid a portion of Lee's settlement from her Civil Lawsuit.

188.    Now, after the filing of this lawsuit, Maupin told the Arizona Republic that it was "absolutely false" that he had taken a portion of Lee's settlement.

189.    Lee has a history of numerous prior and subsequent incidents of shoplifting.

190.    Upon information and belief, Lee has subsequently been arrested for Burglary tools possession and Drug Paraphernalia-possess/use in Maricopa Superior Court Case # CR2023-102071.

191.    That case was filed on January 18, 2023.

192.    Lee pled to reduced charges of Drug Paraphernalia/Use in Maricopa Superior Court Case # CR2023-110831.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

193.    In May 2022, Lee testified at the trial of criminal charges against Sean based upon her accusations.

194.    At the First Trial, Lee testified that the alleged sexual assault consisted of Sean touching her breasts and Lee masturbating Sean through the driver's window of his patrol vehicle.

195.    On May 19, 2022, a Maricopa jury found Sean **Not Guilty** of the sexual assault alleged by Lee.

196.    Despite Sean's acquittal and Lee's wildly changing accounts of an alleged assault, the Trial Prosecutors decided to call Lee to testify in the Second Trial of charges based on accusations made by Ramirez and Gutierrez.

197.    At the Second Trial, in August 2022, Lee's lies about Sean and her total lack of credibility, all of which was well known to Defendants, were fully exposed for all the world to see. Her story changed dramatically from any previous version.

198.    At Sean's Second Trial on August 1, 2022, Lee testified that she does not recall if Sean had ejaculated.

199.    She further testified that she gave Sean a hand job and was standing between the front door of Sean's Tahoe and the front seat where Sean was seated and that she was somehow pulled into the driver's seat with him.

200.    She further testified that she unzipped Sean's pants for him and could not remember where his utility belt was.

201.    She admitted that "Angel" was a drug dealer from whom she got drugs every week or two.

202.    Incredibly, when confronted about her allegations in the PNT article, Lee stated that the version of events the reporter attributed to her were lies.

Mills + Woods Law, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

203.    Lee admitted that she did not go to Stanciel's house after the alleged assault, even though Stanciel's house is only two blocks away from the location where she had Sean drop her off.

204.    She testified that she knew who Stanciel was, but that Stanciel was "kinda stand-offish."

205.    She also admitted that she told Stanciel that the alleged sexual encounter with Sean was partially Lee's fault.

206.    The State did not call Stanciel to testify at the Second Trial.

## LISA GUTIERREZ' FALSE ACCUSATIONS

207.    Gutierrez has a history of engaging in falsehoods and fraud. In 2013, the Arizona Attorney General ("the AG") charged Lisa Gutierrez with Illegally Conducting An Enterprise, Attempted Fraudulent Schemes And Artifices, Computer Tampering, and Forgery. *Grand Jury Indictment, CR2013-002470-073.* The facts underlying the charges showed that Ms. Gutierrez "intentionally presented known forged checks and documents to Walmart, Bashas/Food City and VComm with the intent to defraud those companies for money." *Probable Cause Statement, CR2013-002470-073.* Overall, the scheme resulted in a "total known financial loss" of over $133,000.00. *Id.* The charges against Ms. Gutierrez were dismissed after Ms. Gutierrez completed 50 hours of community service pursuant to a deferred prosecution agreement with the AG. *Pena's Consent To Participate In Deferred Prosecution Program And Acknowledgement, CR2013-002470-073.*

### A Routine Call

208.    On or about August 5, 2019, Gutierrez called the Phoenix Police Department and reported that one of her fiancé's friends was using drugs and threatening her at her front doorstep. Sean and Officer Felix responded to the call.

209.    Officer Felix arrived at the scene first and was the lead Officer on the call.

Mills + Woods Law, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

210.     Both Officer Felix and Sean spoke to Gutierrez in front of her house. Neither entered the house at any time.

211.     Officer Felix told Sean to take Gutierrez in his patrol vehicle and have her show him where her fiancé's friend lived.

212.     Sean objected to transporting Gutierrez in his patrol vehicle due to Ramirez' previous, albeit completely false, accusations. Officer Felix directed Sean to do it anyway, and Sean complied.

213.     Gutierrez rode with Sean in his patrol vehicle to show him where the suspect lived.

214.     Gutierrez sat in back prisoner compartment of Sean's patrol vehicle.

215.     Officer Felix followed in his patrol car, and knocked on the suspect's door. No one answered.

216.     Sean drove Gutierrez back to her house and dropped her off there.

217.     Later, while Sean was working on a Report of the incident, he attempted to call Gutierrez to ask whether she wanted to press charges against the suspect when they found him. She did not answer her phone.

218.     He drove over to Gutierrez' house to ask her and to get additional details regarding the suspect.

219.     As he parked his car across the street from the house, he encountered Gutierrez who was walking home from a store. They spoke briefly. He told her they had not caught the suspect yet.

220.     Gutierrez told Sean that her fiancé was selling Fentanyl and was abusing her. Sean triad to follow up, but she told him she could not talk about it at that moment. She said her fiancé, who "hates cops" was in the house. She told Sean to meet her later in an empty lot near the house and she would give him more details.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

### *The Tempe Investigation*

221.     In April 2020, Gutierrez reported to the City of Tempe Police Department that she was assaulted at gunpoint by a drug dealer after she had "found" a red cell phone belonging to one of them. She said the drug dealers drove up next to her and said "Bitch, give me your phone." She said they tried to kidnap her but she managed to fight them off.

222.     The Tempe Police Department began an investigation of Gutierrez' allegations.

223.     Three suspects were arrested and taken into custody.

224.     The three suspects said that Gutierrez had actually stolen the cell phone.

225.     In the course of the Tempe investigation, Gutierrez met with Tempe Detective Ratko Aleksis.

226.     Gutierrez spoke with Detective Aleksis numerous times from April through July 2020, and says she had a "relationship" with him.

227.     Detective Aleksis confirmed that their relationship was such that Gutierrez felt comfortable discussing her personal life with him.

228.     Gutierrez also interacted with numerous other Tempe Police Officers during the course of the Tempe Investigation.

### *Sean's Indictment Goes Public*

229.     On June 19, 2020, COP and the Maricopa Attorney's Office announced that Sean had been indicted for the alleged sexual assaults of Lee and Ramirez.

230.     The indictment and the allegations received widespread coverage in the press and quickly became common knowledge. Word also spread quickly among law enforcement personnel in Phoenix, Tempe and elsewhere.

### *Gutierrez Decides That "She Too" Will Accuse Sean*

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

27

231.     On June 25, 2020 KTAR posted an article detailing the criminal charges against Sean.

232.     On July 23, 2020 at 10:30am, KTAR posted another news article with the headline "Phoenix PD fires officer accused of sex crimes against women in his custody."

233.     Later that same day at approximately 7:00 P.M. Gutierrez for the first time told Detective Aleksis that she too had been sexually assaulted by Sean.

234.     Despite her "relationship" and comfort felt with Det. Aleksis, Gutierrez never even mentioned her false allegations to Det. Aleksis until the day the news broke that Sean had been fired – after months of communications with Det. Aleksis.

235.     Detective Aleksis testified at trial that Gutierrez told him Sean had come to her house in response to a domestic violence call.

236.     Gutierrez told Detective Aleksis that Sean was "new" and had been "recently assigned to the precinct." He did not follow up to ask Gutierrez how she knew that.

237.     Gutierrez told Detective Aleksis that Sean threatened to arrest her fiancé on an outstanding warrant unless she performed a sex act on Sean.

238.     Gutierrez hired the same civil lawyer who represented Lee.

239.     On information and belief, Maupin encouraged Gutierrez to make accusations against Sean for monetary gain.

240.     Maupin told the PNT that he had spoken with Gutierrez and that Gutierrez "was known to me through the community."

241.     Gutierrez lied under oath at trial when she testified that she did not even know who Jarrett Maupin was.

### COP Investigates Gutierrez' Accusations

242.     Gutierrez was interviewed by Walker.

MILLS+WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

243.     Gutierrez gave Walker an account of the alleged assault that differed substantially from the one she gave Detective Aleksis.

244.     According to Walker's report, Gutierrez told him that later in the evening after Sean dropped her off at her house she walked to a store to buy milk. She left her young child in the care of her fiancé, whom she later described as "very abusive."

245.     She claimed that as she was walking back to her house, she heard Sean call her name from his patrol vehicle, which was parked on the same street as her house.

246.     She said she walked over to Sean's patrol vehicle and talked to Sean. The driver's window was down. He told her he had not yet caught the suspect she had identified.

247.     She said she was holding a gallon of milk in one hand when Sean reached through the window, took her other hand, and placed it on his exposed penis. She said she jerked her hand away, and went home.

248.     She said that Sean called her later on and asked her to meet him in a field near her house. So, she left her child and her fiancé at home and went out in the dark of night to meet Sean at the field.

249.     Gutierrez claimed that Sean asked her for oral sex, but she refused. But when he asked her to masturbate him, she did so while he was still seated in the car. She said he touched her breast. She said Sean ejaculated on her breast and dress. She then left and walked home. Sean said nothing to her as she walked away.

250.     She says that she told her fiancé what had happened.

251.     Despite her testimony that she was wearing a dress covered in semen, she also testified that her fiancé did not believe her and called her a "ho."

252.     She testified that she took off the dress and hung it in the bathroom.

253.     She testified that she moved out of the house two or three days later and did not take the dress with her.

254.    She did not make any effort to preserve the dress even though it would have contained the only physical evidence of the alleged sexual assault.

255.    Her fiancé did not report the alleged incident to police or take any other action in response to Gutierrez' claims.

256.    Gutierrez did not produce to any investigator any article of clothing she was wearing at the time of the alleged assault even though she claimed Sean had ejaculated on her. Apparently, no investigator tried to locate the clothing.

## SEAN PASSES A LIE DETECTOR TEST

257.    In an interview with Sean following Lee's accusations, Walker asked Sean to take a polygraph test. Walker told Sean:

But obviously, if you didn't do these things, and you've got two of these [accusers], a polygraph to say I've never done this, and you come out passing, it's going to be a big thumbs up for the department, okay? That's going to help you, that's going to help them look at this administratively and say, we don't have any evidence to prove it, we don't have anything else to say this happened, and he's taken a polygraph and passed it, he's showing no deception, all right.

258.    On July 6, 2020, Sean submitted to a polygraph examination administered by an independent professional polygraph examiner.

259.    The polygraph examination was conducted in accordance with American Polygraph Association Standards of Practice.

260.    During the course of the examination Sean was asked the following questions and provided the following answers:

"While on duty as an officer, did you ever touch anyone's bare sex organs?
Answer: No
While on duty as an officer, did you ever have bare sex organ contact with anyone else?
Answer: No
While on duty as an officer, did you ever engage in any sex act with someone else?
Answer: No"

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

261.    The professional polygraph examiner prepared a written report of the examination in which she concluded that "there were **NO SIGNIFICANT REACTIONS INDICATIVE OF DECEPTION.**"

262.    While the polygraph took place after the accusations of Ramirez and Lee, it also covered the time period in which Gutierrez claimed she had been assaulted.

263.    On August 5, 2020, one week prior to the second Grand Jury convening to consider charges based on the accusations of Ramirez, Lee and Gutierrez, Sean's criminal attorney, Jess Lorona, emailed a letter to Samantha Caplinger, a Deputy County Attorney with the Maricopa Attorneys' Office.

264.    In the letter, Lorona informed Caplinger that Sean had taken and passed a polygraph test.

265.    Lorona attached to the letter a copy of the polygraph examiner's written report.

266.    In the letter Lorona requested that the Grand Jury be informed that Sean had taken and passed a polygraph.

267.    The Grand Jury Prosecutors did not even mention the polygraph exam to the jurors.

## THE FATALLY FLAWED INVESTIGATION
### UNITED STATES DEPARTMENT OF JUSTICE ANNOUNCES
### INVESTIGATION INTO THE PHOENIX POLICE DEPARTMENT

268.    The United States department of Justice ("USDOJ") announced on August 5, 2021 that it had begun an investigation of the Phoenix Police Department. A portion of the text of the announcement follows:

Attorney General Merrick B. Garland and Assistant Attorney General Kristen Clarke for the Civil Rights Division announced today that the Justice

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

31

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

Department has opened a pattern or practice investigation into the City of Phoenix and the Phoenix Police Department (PhxPD).

This investigation will assess all types of use of force by PhxPD officers, including deadly force. The investigation will also seek to determine whether PhxPD engages in retaliatory activity against people for conduct protected by the First Amendment; whether PhxPD engages in discriminatory policing; and whether PhxPD unlawfully seizes or disposes of the belongings of individuals experiencing homelessness. In addition, the investigation will assess the City and PhxPD's systems and practices for responding to people with disabilities. The investigation will include a comprehensive review of PhxPD policies, training, supervision, and force investigations, as well as PhxPD's systems of accountability, including misconduct complaint intake, investigation, review, disposition, and discipline.

\*\*\*

The investigation is being conducted pursuant to the Violent Crime Control and Law Enforcement Act of 1994, which prohibits state and local governments from engaging in a pattern or practice of conduct by law enforcement officers that deprives individuals of rights protected by the Constitution or federal law. The statute allows the Department of Justice to remedy such misconduct through civil litigation. This is the seventy-third investigation of a law enforcement agency conducted pursuant to this statute since it was enacted in 1994. The department will be assessing law enforcement practices under the First, Fourth, and Fourteenth Amendments to the United States Constitution, as well as under the Safe Streets Act of 1968; Title VI of the Civil Rights Act of 1964; and Title II of the Americans with Disabilities Act.

*Retrieved February 2, 2023* from https://www.justice.gov/opa/pr/justice-department-announces-investigation-city-phoenix-and-phoenix-police-department

269. The USDOJ's comprehensive investigation of COP and its Police Department continued through the time of the First Trial and the Second Trial and the time COP denied the appeal of Sean's termination.

270. COP, Walker, Williams, and the Prosecutors were all aware of the USDOJ investigation and wanted to demonstrate to the USDOJ that they were taking action to root out "bad cops." To that end, Sean's career was sacrificed.

271.     Upon information and belief, the USDOJ investigations heavily influenced both the internal investigation and the prosecution of Sean.

## THE "ME TOO" MOVEMENT

272.     Following exposure of sexual abuse allegations against film producer Harvey Weinstein in October 2017, the so called "Me Too" movement became headline news across the United States.

273.     The Me Too movement sought to bring to light the problem of sexual harassment and abuse, and encouraged people to come forward with personal accounts of such treatment.

274.     According to Wikipedia "Widespread media coverage and discussion of sexual harassment, particularly in Hollywood, led to high-profile terminations from positions held, as well as criticism and backlash."

275.     The Me Too movement ended the careers of many individuals ·outside Hollywood as well. For example, United States Senator Al Franken of Minnesota resigned on January 2, 2018 after allegations of sexual misconduct were made against him.

276.     COP, Walker, Williams, and the Prosecutors were all well aware of the Me Too movement.

277.     The Me Too movement heavily influenced and biased both the internal investigation and the prosecution of Sean.

278.     In an interview following Ramirez' accusations, Detective Walker actually told Sean that he needed to understand that the accusations came in the midst of the Me Too movement and that was where society was at.

## COP'S SLIPSHOD INVESTIGATION AND RUSH TO JUDGMENT AGAINST SEAN

279.     COP, Walker, and the Prosecutors all knew that none of the three Accusers was credible.

Mills + Woods Law, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

280.     With respect to Ramirez they knew for example: 1) that she was intoxicated on narcotics and methamphetamine at the time of the alleged assault; 2) that she was desperate to obtain release from custody, and was highly motivated to make up a story about Sean; 3) that there was no DNA evidence supporting her accusation despite the facts that DNA tests were conducted and that she testified under oath that Sean had ejaculated in her mouth; and 4) that Ramirez had a unique history making wild accusations of sexual assault following periods of intoxication.

281.     With respect to Lee they knew for example: 1) that she was extremely intoxicated at the time of the alleged assault; 2) that she was despondent because the State had taken her children away that very day; 3) that she did not report the alleged assault for months after it allegedly happened; 4) that she reported the alleged assault only after meeting with Jarrett Maupin and planning civil litigation against COP; 5) that her account of the alleged assault changed wildly and in contradictory fashion over time; and 6) that, as with Ramirez, there was no physical or DNA evidence supporting her accusations.

282.     With respect to Gutierrez they knew for example: 1) that she had a history of engaging in fraud; 2) that she did not make her accusations against Sean until nearly a year after the alleged assault; 3) that she did not report the alleged assault until after the original indictment of Sean was announced; 4) that she knew Jarrett Maupin and had hired the same civil lawyer as Lee; 5) that there was no DNA evidence supporting her accusations despite the fact that she claimed Sean had ejaculated on her and her dress; and 6) that she was highly motivated by financial gain to press  accusations against Sean.

283.     Each of the three Accusers gave accounts of their alleged assaults that changed substantially and directly contradicted their earlier accounts.

284.     Each of the three Accusers was highly motivated to accuse Sean of wrongdoing either to secure their personal freedom or for financial gain, or both.

Mills + Woods Law, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

285.     Both Lee and Gutierrez had a relationship with Jarrett Maupin, and both hired the same civil attorney to seek money damages from COP.

286.     Maupin held a press conference on December 1, 2020 on the steps of Phoenix Police Headquarters on behalf of Lee and Gutierrez. There Maupin made wild accusations of "rape" and cover-up to stir public opinion and provoke monetary settlements with COP.

287.     Maupin received a portion of the proceeds of COP's settlement with Lee.

288.     On information and belief, Maupin received a portion of the proceeds of COP's settlement with Gutierrez.

289.     COP and the Prosecutors ignored the fact that none of the Accusers was credible, and focused instead on the fact that accusations were made.

290.     COP and the Prosecutors disregarded the fact that Sean passed a polygraph test.

291.     In its haste to avoid a continuing public spectacle whipped up by the Accusers and Maupin, COP failed to conduct anything resembling a reasonable or fair investigation of Sean.

292.     For example, COP's internal Administrative Inquiry (the "Ramirez Inquiry") documentation dated August 28, 2018 specifically stated that "There is no evidence to support the allegation of officer misconduct by Officer Pena."

293.     In the Ramirez Inquiry, Sean specifically told investigators that they should retrieve his "patrol vehicle's black box" data to pull seatbelt fastening history.

294.     The "black box" is a feature on all modern vehicles called the Event Data Recorder ("EDR").

295.     A vehicle's EDR records multiple data points to assist accident reconstruction or criminal investigations.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

296.     One of the many data points recorded include seat belt fasten data that shows when seatbelts are engaged and when they are disengaged.

297.     Astonishingly, COP and the State failed to retrieve that crucial data despite being reminded to do so by Sean.

298.     The EDR data was readily available to COP during its investigation because Sean's patrol vehicle was impounded as evidence.

299.     Still, despite having the availability of clearly exculpatory evidence and the findings of the Ramirez Inquiry, COP and the State pressed forward with charges against Sean that they had already decided were unfounded.

300.     COP and the State did so maliciously because they believed that they needed to offer a sacrificial lamb to avoid public backlash.

301.     Among numerous other failures, Walker and COP:

- Failed to obtain surveillance footage from the Fourth Avenue Jail regarding Ramirez' arrival and incarceration there.
- Failed to attempt to recover Gutierrez' dress even though she apparently did not wash or dispose of it.
- Failed to request or obtain phone records from any of the Accusers.
- Failed to obtain any surveillance tape from the store located beside the empty lot where Gutierrez alleged the assault had taken place.
- Failed to conduct any investigation of the relationships between the Accusers.
- Failed to interview Maupin and failed to conduct any investigation of the involvement of Maupin in the accusations made by Lee and Gutierrez.
- Failed to investigate whether Ramirez received any portion of the settlement proceeds COP paid to Lee and Gutierrez.
- Failed to determine whether there were any witnesses to the alleged assaults even though all three allegedly occurred in public places.
- Failed to pull AVL records to confirm Sean's statements that it was not uncommon for him to park his vehicle in certain locations.
- Failed to investigate the "Black Box" in Sean's patrol vehicle to confirm that he was in the driver's seat with the seatbelt fastened

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

36

during the entire stop at the railroad tracks with Ramirez – despite the fact that Sean specifically requested that they do so.

- Failed to take into consideration that Sean was excluded from DNA evidence taken from Ramirez and that there was no other DNA evidence linking Sean to any of the other Accusers.

302.    Moreover, the alleged assaults took place in a very high crime area of Phoenix where drug sales and use were prevalent. Both dealers and users of drugs, especially Fentanyl, in that area were anxious to get rid of Sean and his crusade against such drugs. COP failed to investigate this situation and failed to take it into consideration in the course of its investigation.

303.    COP's investigations of the Accusers' allegations were one-sided and biased against Sean from the beginning.

**COP SETTLES THE CIVIL SUITS BROUGHT BY LEE AND GUTIERREZ FOR HUNDREDS OF THOUSANDS OF DOLLARS EACH WITHOUT CONDUCTING ANY DISCOVERY**

304.    COP reached agreements to settle the lawsuits brought by Lee and Gutierrez for $425,000 each.

305.    COP did not conduct any discovery in the lawsuits, and both cases were dismissed after settlement.

306.    Lee's case was filed originally on November 25, 2020 in the Maricopa Superior Court, Case # CV2020-015466.

307.    Lee's case was removed to the United States District Court of Arizona on December 22, 2020 in case # 2:20-cv-02456.

308.    COP City Council approved settlement to Lee on June 2, 2021 as part of their Formal Meeting on the same date.

309.    The case was dismissed on June 17, 2021 after COP settled with Lee and agreed to pay her four hundred twenty-five thousand dollars ($425,000).

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

310.     Gutierrez filed her lawsuit in Maricopa Superior Court on June 18, 2021 – one day after Lee's lawsuit had been dismissed.

311.     Gutierrez' lawsuit was removed to the United States District Court of Arizona in case # 2:21-cv-01297.

312.     Again, no discovery was performed in Gutierrez' case.

313.     In fact, COP did not file any responsive pleading.

314.     COP City Council approved settlement to Gutierrez on November 17, 2021 as part of their Formal Meeting on the same date.

315.     The parties to Gutierrez' case stipulated to dismiss the case on November 30, 2021.

316.     Again, COP paid Gutierrez four hundred twenty-five thousand dollars ($425,000).

317.     COP took no action to dispute the accusations of Lee and Gutierrez.

318.     COP did not investigate the damages alleged by either Lee or Gutierrez, or whether either of those Accusers had sustained any damages.

319.     COP could and would have won both of these lawsuits had it taken them to trial.

**THE PROSECUTION**

320.     COP needed to secure criminal convictions of Sean in order to justify its total payments of eight hundred fifty thousand dollars ($850,000) to Lee and Gutierrez.

321.     As discussed herein, Maricopa, COP, the Prosecutors, and Walker lacked probable cause to bring any charges against Sean based on the false accusations of Ramirez, Lee and Gutierrez.

322.     COP had closed its investigation into the accusations of Ramirez due to a lack of evidence.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

323.     Walker admitted to Sean that there was no probable cause to bring charges based on Ramirez' accusations. Walker told Sean at a December 4, 2019 interview that the Ramirez case was closed because it "cannot be proved."

324.     Neither COP nor the Prosecutors obtained any additional evidence to support Ramirez' accusations.

325.     Even though COP and its investigators had concluded there was no evidence of wrongdoing on the part of Sean and thus no probable cause to charge him based on Ramirez' accusations, they nonetheless chose to proceed with a *criminal prosecution* with a "beyond a reasonable doubt" standard of proof.

326.     Maricopa and the Prosecutors decided to prosecute Sean for alleged sexual assault based on the accusations of Ramirez and Lee.

327.     Maricopa, COP, and the Prosecutors knew they did not have probable cause to arrest or proceed with prosecution based upon the accusations of either Ramirez or Lee.

328.     COP and Walker admittedly had no probable cause with respect to Ramirez's accusations.

329.     Nor did they have probable cause with respect to Lee's accusations. As discussed herein, Lee was heavily intoxicated on fentanyl, a hallucinogenic drug, at the time of her alleged assault, and her story changed substantially every time she spoke about it. Her various descriptions would have made the alleged assault physically impossible. And she had already received a huge payout from COP.

330.     The entirety of the Probable Cause ("PC") statement relied upon by COP, Walker, Maricopa, and the Prosecutors for Ramirez and Lee states:

> On 8/26/18, Victim A (an adult female) reported to Phoenix Police an allegation of sexual assault by the officer who arrested her earlier that day. Victim A was arrested by Officer Sean Pena for an outstanding felony warrant out of Yavapai County after she was stopped in a city park after hours. Pena was the primary unit for this call, with assistance from another

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

officer. Pena transported Victim A to the South Mountain Precinct for prisoner processing, then to the Fourth Avenue Jail. Victim A alleged that Pena forced oral/penile sex while she was handcuffed in the back of his patrol vehicle and they were stopped at the railroad tracks near Third Avenue and Buchanan Street. A sexual assault examination was completed on Victim A and the evidence sent to the crime lab for processing. Pena's DNA profile was excluded from the profiles found on the evidence swabs. Pena adamantly denied the allegations of sexual assault or having any sexual contact with Victim A. He also stated it was Victim A who offered him oral sex if he would release her. The video surveillance obtained from multiple locations could not corroborate or refute the allegations.

2019-2028342

On 11/20/2019 Victim B (an adult female) reported she was sexually abused by an on-duty Phoenix Police Officer who had contact with her in June 2019. Victim B reported the Officer touched her breasts and had her masturbate his penis when he was alone with her. Victim B was contacted in June 2019 reference a check welfare call (CFS# 19000934327), which was placed on her for wandering around in the street near 23rd and St. Anne Avenues. Victim B was transported from that area by Officer Sean Pena to South 11th Avenue and West Lynne Lane, where the sexual contact allegedly occurred after she was released from his custody. A friend of Victim B's, was interviewed and stated, Victim B called her that night and told her some details of the incident with Pena. AVL records from Pena's patrol vehicle corroborated that he was at the drop-off location for approximately ten minutes. No biological evidence was found in the patrol vehicle upon examination by the crime lab staff. There was no other evidence which would serve to corroborate or refute this allegation. Pena denied the allegations of engaging in any sexual conduct with Victim B.

331.    This PC statement was submitted to the South Mountain Justice Court in Phoenix, Arizona as the basis for Sean's arrest on March 9, 2020.

332.    Both PC statements for Ramirez and Lee state that there was no DNA or other evidence to corroborate the allegations made against Sean.

333.    The State later decided to prosecute Sean based upon the false accusations of Gutierrez.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

334.   The PC statement for Gutierrez was a majority of a copy and paste from police reports.

335.   COP, Walker, Maricopa, and the Prosecutors disregarded the fact that Gutierrez came forward with her allegations only after the Phoenix local news ran a story about Sean's indictments on Lee's and Ramirez' allegations.

336.   Gutierrez' did not report the alleged assault for nearly one year after her encounter with Sean.

337.   The PC statement further states that Gutierrez was able to identify Sean in a photo lineup.

338.   This is unsurprising.

339.   On June 25, 2020 KTAR posted an article detailing the criminal charges against Sean.

340.   On July 23, 2020 at 10:30am, KTAR posted another news article with the headline "Phoenix PD fires officer accused of sex crimes against women in his custody."

341.   Gutierrez' police report to Ratko Aleksis was reported on July 23, 2020 at approximately 7:00 P.M.

342.   Furthermore, the ties between Lee and Gutierrez become clear from the evidence and statements by Maupin that he was working with another Victim to come forward.

343.   Upon information and belief, she already had.

344.   The fix was in and Maupin was able to direct both Lee and Gutierrez to a local attorney for the purposes of filing a civil suit for both against COP and Sean.

## THE MISLEADING GRAND JURY PRESENTATIONS

345.   A Grand Jury convened on June 19, 2020 to consider charges based upon the accusations of Ramirez and Lee.

41

346.     Michael Baker and Samantha Caplinger presented to this Grand Jury.

347.     A second Grand Jury convened on August 12, 2020 to consider charges based upon the accusations of all three of the Accusers.

348.     Grand Jury Prosecutors Samantha Caplinger and Sandra Anderson presented to this Grand Jury.

349.     None of the Accusers was presented separately to a grand jury, instead, their accusations were presented only in combination with the accusations of one or more of the other Accusers.

350.     Sean was precluded from providing his statement to both Grand Juries

351.     The State's only witness to the Grand Juries was Detective Walker.

352.     Walker relayed the false accusations of Ramirez, Lee and Gutierrez, and his investigation.

353.     The Grand Jury Prosecutors did not present to the Grand Jury clearly exculpatory evidence of which the State was aware. For example, the Grand Jury was not presented evidence that:

- Sean passed a polygraph test in which he denied ever having sexual contact with anyone while on duty as a Phoenix Police Officer.
- Both Ramirez and Lee were intoxicated on extremely potent and hallucinogenic drugs at the times they were allegedly assaulted.
- Ramirez had a unique history of making reports of sexual assault following bouts of intoxication.
- Surveillance video showed a white car driving past Sean's patrol vehicle which was stopped on a public street at the exact moment Sean was allegedly standing at the backseat door assaulting Ramirez.
- The accounts of all three Accusers would have necessitated Sean exposing his firearm, his Taser, and his pepper spray to the alleged victim.
- Lee's account of her alleged assault changed substantially from her first to her second interview.
- Lee had just lost her children to DCS and was not only extremely intoxicated but also despondent and angry with authorities at the time of the alleged assault.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

- Lee had gone to the location of the alleged assault in order to buy more fentanyl, and was angry that Sean and the other officers had interrupted her efforts.
- No biological evidence was found in Sean's patrol vehicle upon examination by COP's Police Department Crime Lab. Several items of evidence were examined in the lab for semen and none was found.
- Lee and Gutierrez were motivated by financial gain to make their accusations.
- It would have been physically impossible to commit the alleged assaults based on the statements given by Sean's Accusers.
- Sean was on the phone for at least thirty (30) seconds with his partner, Felix, during the one minute and thirty-nine second stop at the railroad tracks while transporting Ramirez.
- Investigators had failed to check the Black Box in Sean's patrol vehicle to see whether Sean's seatbelt was fastened while parked at the railroad tracks – despite Sean's request that they do so.
- There was extensive media coverage of Sean's first indictment immediately before Gutierrez made her accusations against Sean.
- The DNA results from the Ramirez investigation specifically excluded Sean.

354.   Walker and the Prosecutors presented misleading testimony about the DNA evidence to the Grand Juries for the purpose of obtaining indictments.

355.   The Prosecutors were motivated by the need to justify COP's settlements with Sean's Accusers, by the Me Too movement, and by the USDOJ's investigation.

## THE CRIMINAL TRIALS

356.   Sean maintained his innocence throughout the prosecution.

357.   The State went to trial against Sean in May, 2022 on charges of sexual assault based on the accusations of Ramirez, Lee and Gutierrez.

358.   The testimony of the three Accusers at trial differed substantially from the second-hand (hearsay) accounts of their accusations that Walker told the Grand Jury.

359.   At the end of trial the jury found Sean not guilty of sexually assaulting Lee.

360.   The jury did not reach a verdict of the charges based on the accusations of Ramirez and Gutierrez.

361.    The State again went to trial against Sean in August 2022 based on the accusations of Ramirez and Gutierrez.

362.    The testimony given by the three Accusers at the Second Trial differed substantially from the testimony they gave at the First Trial.

363.    In a desperate effort to boost her credibility at the second trial, Gutierrez testified that she had been "reminded" after the first trial that there was another person present at her house when she told her fiancé that she had been assaulted by Sean.

364.    Stunningly, Defendant Roseberry admitted that Gutierrez had told him about this alleged witness at least a week prior to her admission, but he did not disclose this information to counsel for Sean.

365.    During trial defense counsel got access to a text message the alleged witness sent to Gutierrez in which he told her "...I'll be your slave at the snap of a finger."

366.    As an alleged "victim" Gutierrez was allowed to sit through and listen to the testimony of all the witnesses at both trials. She then adjusted her testimony accordingly. After hearing Sean testify at the First trial that she had told him about her violent and abusive fiancé, she insisted at the Second trial that she "never said anything about domestic violence." She went on to testify under oath that her fiancé was "four feet tall" and she wasn't afraid of him.

367.    As noted above, Gutierrez had also told Detective Aleksis that she had contacted the Phoenix Police Department due to domestic violence.

368.    On August 19, 2020, ABC15, a Phoenix ABC News affiliate, posted a story about a woman claiming that she had been sexually assaulted by a Phoenix Police Officer during a traffic stop. The story was updated on November 19, 2020.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

44

369.    According to the report at some point during the alleged assault, the woman cried out for someone to call the police. The woman said the Officer then slammed her up against her car and said "How you going to call the police on the damn police."

370.    Apparently inspired by the news report, Gutierrez repeatedly insisted at trial "You can't call the police on the police," as if the phrase could cure her lack of credibility.

371.    Ramirez testified that Sean ejaculated in her mouth.

372.    When pressed on details of the alleged assault, Ramirez kept saying over and over again that "It happened real fast" and strenuously resisted providing details.

373.    Lee introduced for the first time a story that Sean had somehow pulled her into the front seat with him with the driver's side door open at the time of the alleged assault. She also admitted that it would be physically impossible for two adults to be seated in the driver's seat at the same time.

374.    At the end of the Second Trial, the jury found Sean not guilty on all charges.

375.    The jury deliberated for only approximately 30 minutes.

## COP WRONGFULLY TERMINATES SEAN'S EMPLOYMENT

376.    According to the Memorandum of Understanding adopted by COP and the Phoenix Police Department, and governing Sean's employment, any reason for termination must meet a "Just Cause" standard.

377.    According to Arizona Revised Statutes 38-1101, "Just Cause" is defined as:

(a) The employer informed the law enforcement officer of the possible disciplinary action resulting from the officer's conduct through agency manuals, employee handbooks, the employer's rules and regulations or other communications to the officer or the conduct was such that the officer should have reasonably known disciplinary action could occur.
(b) The disciplinary action is reasonably related to the standards of conduct for a professional law enforcement officer, the mission of the agency, the orderly, efficient or safe operation of the agency or the officer's fitness for duty.

Mills + Woods Law, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

(c) The discipline is supported by a ***preponderance of evidence*** that the conduct occurred.

(d) The discipline is not excessive and is reasonably related to the seriousness of the offense and the officer's service record.

(emphasis added).

378.    "Preponderance of evidence" is an even higher standard of proof than probable cause.

379.    COP did not have probable cause to believe Sean was guilty of wrongdoing with respect to either Ramirez or Lee.

380.    COP could not prove wrongdoing on the part of Sean by a preponderance of evidence.

381.    COP fired Sean on July 27, 2020 based on the accusations of Ramirez and Lee.

382.    Sean appealed his termination by COP to the CSB.

383.    In late November and early December 2022, Hearing Officer Peter Reinstein conducted a hearing on Sean's appeal.

384.    At that time COP knew Sean had been acquitted of all charges based upon the false accusations of the three Accusers. COP knew that Sean had passed a polygraph test. But COP had already fired Sean and had paid two of his Accusers $425,000 each.

385.    COP knew that none of the Accusers was credible and that their accusations were false.

386.    COP knew that it did not have just cause to terminate Sean's employment.

387.    COP decided to destroy Sean's career in order to justify the fact that it had paid $850,000 pf taxpayer money to two demonstrable liars.

388.    Defendant Chief Jeri Williams testified at the hearing that she had served as the Chief of PPD for six years retiring on October 31, 2022.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

46

389.    Chief Williams further testified that one of her duties as Police Chief included disciplinary decisions.

390.    Chief Williams testified that she conducted a Loudermill Hearing on July 2nd, 2020, to determine the discipline for Sean.

391.    Chief Williams stated that she considered both the SID and PSB investigations in making her decision.

392.    Chief Williams testified that she also considered that the Appellant had been indicted by a Grand Jury.

393.    She stated that she believed that a police officer who had been indicted could not be retained by the department.

394.    Chief Williams stated that the fact that Appellant was ultimately acquitted of the charges would not change her decision given the different standards of proof required.

395.    If fact, the standard of proof applicable to her decision was "preponderance of evidence," which is a different and higher standard of proof than "probable cause."

396.    Chief Williams further testified that she signed the Discipline Notice dated July 27, 2020, wherein Sean was terminated from his employment as a Phoenix police officer.

397.    She believed that the level of discipline imposed was not excessive and reasonably related to the offenses despite the complete lack of evidence and the clearly false and wildly inconsistent statements of Sean's Accusers.

398.    On December 12, 2022, Hearing Officer Reinstein issued a report recommending that the Civil Service Board affirm Sean's termination.

399.    Reinstein's recommendation was unsupported by the evidence and was unsupportable.

400.    Reinstein reached the incredible and stunning conclusion that:

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

> Neither Ms. Ramirez nor Ms. Lee possessed a motive for coming forward with their allegations against [Sean]. Ms. Ramirez and Ms. Lee received no benefit from their allegations. Ms. Lee was very reluctant to press her allegations against [Sean].

401.    As discussed herein, COP had already paid Lee $425,000 based on her allegations. That amount of money overcomes a lot of reluctance. Lee was intoxicated on fentanyl at the time of her encounter with Sean.

402.    COP did not even dispute the fact that Ramirez was high on hallucinogenic drugs and was desperate to obtain release from custody when she made her allegations.

403.    Reinstein also concluded that "Ms. Ramirez and Ms. Lee did not recant their allegations even when inconsistencies were pointed out by the investigators."

404.    In fact, as set forth herein, when Ramirez and Lee were confronted with inconsistencies, they simply changed their stories, and in dramatic fashion.

405.    Reinstein concluded that "the status of Ms. Ramirez and Ms. Lee made them relatively easy targets for exploitation." This, of course, simply ignores the fact that by serving as a beat cop in a high crime, drug infested neighborhood, Sean was also an "easy target" for false accusations by users and dealers alike.

406.    On February 22, 2023, following Sean's acquittal of all charges, the CSB voted to nonetheless affirm the termination of his employment.

407.    Only two of the five members of the CSB voted to affirm the termination of Sean's employment. One voted to re-instate Sean's employment. The other two were absent.

408.    Following the affirmation of Sean's termination, the Arizona Peace Officer Standards and Training Board requested that Sean sign a "Consent Agreement" by which he would permanently relinquish his Arizona peace officer certification.

409.    Sean declined to sign it.

48

## DEFENDANT CHIEF JERI WILLIAMS' HISTORY OF CONCEALING FACTS AND USING SCAPEGOATS

410.     Jeri Williams and her executive staff – including Assistant Police Chiefs – regularly used Signal, an instant messaging app that provides encrypted messaging and the ability to delete messages with no ability to recover them.

411.     Signal was used by Jeri Williams to discuss lawsuits, or other matters that involved the fabrication of criminal charges against individuals.

412.     In fact, an ABC15 article exposed the use of the Signal application by Jeri Williams and her executive team.

413.     The Phoenix Police Director of Communications Donna Rossi said in August 2022 that, "Chief Williams asked that Signal not be used by her executive team for work-related issues and deleted her app from her phone in 2020. Chief Kurtenbach does not have the app on his work phone."

414.     This was shown to be a false statement by the Phoenix Police Department.

415.     Screenshots of the Signal application being used by Jeri Williams and her executive staff far past 2020 came to light.

416.     One of the purposes for the use of the Signal application was to discuss the fact that COP, the Maricopa County Attorney's Office, and Phoenix Police employees – including Jeri Williams – had participated in a scheme to invent charges against police protestors in 2021.

417.     Mass Liberation Arizona issued a statement regarding this, stating:

> Chief Williams not only lied about deleting the app, she actively used Signal to intentionally destroy evidence long after she claimed to have told her staff not to use the app. Chief Williams is a liar. She absolutely must not be permitted to retire in good standing; she must be fired. She must also be Brady listed immediately. No public official should be using the Signal app, least of all the chief of the nation's deadliest police department.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

418.     In response to the scandal, Jeri Williams demoted three Assistant Police Chief to Commanders – using them as scapegoats according to a lawsuit filed in the Maricopa County Superior Court on April 18, 2022.

419.     COP – through Jeri Williams – and Maricopa County – through its employees – adopted practices to invent charges against individuals in the hopes of obtaining criminal convictions for political gain.

420.     This same pattern, practice, and policy was used in the wildly false charges levied against Sean.

421.     This same pattern, practice, and policy was used to "scapegoat" Sean in the wake of the ME TOO pressure put on COP.

422.     As discussed herein, Detective Walker actually told Sean that he needed to understand that the accusations came in the midst of the Me Too movement and that was where society was at.

423.     This is due to the pattern, practice, and policy pushed by Jeri Williams and COP to find scapegoats to offer to the public to avoid public scrutiny.

424.     This pattern, practice, and policy was further emboldened by the fact that COP and Phoenix Police Officer Anthony Armour were directly in the middle of another sexual assault case brought by a member of the public against Armour in the District Court of Arizona case entitled Anderson v. Armour (2:16-cv-03563).

425.     Armour was not terminated.

426.     That case was filed in October 14, 2016 and was heating up towards trial at the time that Sean was fired by Jeri Williams.

### THE AFTERMATH

427.     As the result of the Defendants' conduct alleged herein, Sean's life was left in ruins.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

428.    Sean had been married for only three weeks when Ramirez made her false accusations against Sean.

429.    Sean had intended to serve a full 25 years as a Phoenix Police Officer, and then retire with a pension in the same manner as his father.

430.    Instead, Sean's career in law enforcement was destroyed by Defendants.

431.    His good reputation was ruined.

432.    His ability to earn income to support his family has been severely and irreparably impaired.

433.    His ability to earn his retirement pension was taken away from him.

434.    Following his termination by COP, Sean started a small business selling custom dog houses.

435.    A customer complained to a local television news program, KTVK's Arizona's Family, about Sean's delay in providing a doghouse she had ordered.

436.    In fact, the delay was attributable to the fact that Sean was busy defending himself from the wrongful and malicious prosecution described herein.

437.    Arizona's Family aired the customer's complaint on television, including the customer's statement that she had researched Sean's background and discovered the accusations made by Ramirez, Lee and Guttierez. She cited those accusations as a reason not to do business with Sean. Arizona's Family likewise implied on the broadcast that Sean was an infamous person.

438.    Sean's dog house business was forced to close down.

439.    The Arizona's Family broadcast incident demonstrates in part the extent to which Sean's capacity to earn income has been damaged and impaired by Defendants' conduct.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

51

440.     Sean has been forced to seek counseling due to the stress brought on by Defendants' conduct.

441.     Sean has been diagnosed with post-traumatic stress disorder and has been forced to receive treatment as a direct and proximate result of Defendants' conduct.

442.     Sean was paid $27.74 per hour at the time and was also paid overtime.

443.

444.     Sean had fringe benefits including without limitation health insurance, medical expense reimbursement, and vacation leave which would have increased depending on his years of service:
- 1-5 Years of Service = 8 hours per month (96 hours/year)
- 6-10 Years of Service = 10 hours per month (120 hours/year)
- 11-15 Years of Service = 11 hours per month (132 hours/year)
- 16-20 Years of Service = 13 hours per month (152 hours/year)
- 21 Years+ = 15 hours per month (180 hours/year)

445.     Many of those benefits would have continued after Sean's retirement.

446.     Sean's lifelong goal was to become a Detective with COP.

447.     Each promotion brings with it a pay increase.

448.     After 25 years, Sean could have retired with a full pension.

449.     According to a 2017 news article from AZCentral.com, the average pension for Phoenix Police employees was approximately $63,000 per year at that time.

450.     That amount will increase substantially by the time Sean reaches retirement age.

451.     Furthermore, Phoenix Police Officers can participate in a deferred retirement option plan ("DROP") by working an additional seven years.

452.     By doing so, they are eligible for an additional lump sum payment.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

52

453.     Pension payments that would have been paid to a retiree not in the DROP system are deposited into a fund that guarantees a return rate of between approximately 6.6 to 7.4 percent.

454.     Once the DROP participant officially ends his/her employment, the amount deposited plus interest is paid to the employee as a lump sum payment.

455.     After receiving his DROP payment, Sean would have then received his yearly pension for each year thereafter.

456.     While engaged in the conduct alleged herein Defendants acted in concert with each other. Defendants are thus jointly and severally liable for Sean's damages. A.R.S. § 12-2506 D(1).

## COUNT I – WRONGFUL TERMINATION/BREACH OF EMPLOYMENT AGREEMENT
### (COP)

457.     Sean restates and re-alleges the allegations of Paragraphs 1 through ____ above as if fully set forth herein.

458.     Sean was employed as a Police Officer by COP pursuant to a written agreement called a Memorandum of Understanding ("MOU").

459.     The MOU is an enforceable contract governing the rights and obligations of COP and Sean pertaining to his employment.

460.     Pursuant to the terms of the MOU, COP could terminate Sean's employment only for "just cause."

461.     COP breached the MOU by terminating Sean's employment without just cause.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

53

462.     As a direct result of COP's breach of the MOU, Sean sustained damages in an amount to be proven at trial.

## COUNT II – BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING
### (COP)

463.     Plaintiff incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

464.     Sean's employment agreement with COP contained a duty to act fairly and good faith.

465.     This duty required that COP not do anything that would prevent Sean from receiving the benefits of the agreement.

466.     COP breached its duty of good faith and fair dealing by failing to give Sean a fair and reasonable opportunity to demonstrate that the termination of is employment was not supported by just cause, and by ignoring the evidence of Sean's innocence of the accusations made against him.

467.     As a direct result of COP's breach of the duty of good faith and fair dealing, Sean sustained damages in an amount to be proven at trial.

## COUNT III -- MALICIOUS PROSECUTION -- RAMIREZ
### (COP, WALKER, MARICOPA, PROSECUTORS, AND RAMIREZ)

468.     Plaintiff incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

469.     Defendants COP, Walker, County, the Prosecutors and Ramirez instituted and continued criminal proceedings against Sean.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

54

470.     The criminal proceedings ended in favor of Sean with his acquittal on all charges.

471.     The criminal proceedings were brought as a result of false accusations of sexual misconduct made by Ramirez.

472.     Defendants COP, Walker, Maricopa, the Prosecutors and Ramirez did not have probable cause to institute the criminal proceedings against Sean.

473.     COP, Walker, Maricopa, and the Prosecutors knew or were reckless in not knowing that the accusations of Ramirez were false.

474.     Neither COP, Walker, Maricopa, the Prosecutors, or Ramirez believed in good faith that the accusations were true or that Sean was guilty of the crimes with which he was charged.

475.     A reasonable person under the same or similar circumstances would not have believed that Sean was guilty of the crimes with which he was charged.

476.     COP, Walker, Maricopa, and the Prosecutors were able to secure indictments against Sean only by knowingly presenting to the Grand Jury the false accusations of Ramirez, and by failing to present to the Grand Jury clearly exculpatory evidence demonstrating that the accusations were false and that Ramirez was not credible.

477.     Walker and the Prosecutors presented false and/or misleading testimony to the Grand Juries for the purpose of obtaining indictments.

478.     COP, Walker, Maricopa, the Prosecutors, and Ramirez acted with malice in instituting and continuing criminal proceedings against Sean.

479.     Ramirez' primary motives in making her accusations against Sean was to avoid prosecution and punishment for her own crimes and her personal hatred of Sean.

480.     As discussed herein, COP, Walker, Maricopa, and the Prosecutors were primarily motivated by the desire to create the appearance that they were rooting out "bad

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

cops" without regard to the credibility of the Accusers. They were also motivated to justify COP's payment of hundreds of thousands of dollars to Lee and Gutierrez.

481.    As a direct and proximate result of the criminal prosecution Sean was forced to spend substantial amounts of time and money defending himself. Sean also suffered, among other things, public humiliation, the loss of his career and the permanent impairment of his ability to secure gainful employment. Sean sustained damages in an amount to be proven at trial.

### COUNT IV – MALICIOUS PROSECUTION – LEE
### (COP, WALKER, MARICOPA, PROSECUTORS, AND LEE)

482.    Plaintiff incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

483.    Defendants COP, Walker, Maricopa, the Prosecutors, and Lee instituted and continued criminal proceedings against Sean.

484.    The criminal proceedings ended in favor of Sean with his acquittal on all charges.

485.    The criminal proceedings were brought as a result of false accusations of sexual misconduct made by Lee.

486.    Defendants COP, Walker, Maricopa, the Prosecutors,  and Lee did not have probable cause to institute the criminal proceedings against Sean.

487.    COP, Walker, Maricopa, and the Prosecutors knew or were reckless in not knowing that the accusations of Lee  were false.

488.    Neither COP, Walker, Maricopa, the Prosecutors, or Lee believed in good faith that the accusations were true or that Sean was guilty of the crimes with which he was charged.

489.     A reasonable person under the same or similar circumstances would not have believed that Sean was guilty of the crimes with which he was charged.

490.     COP, Walker, Maricopa, and the Prosecutors were able to secure indictments against Sean only by knowingly presenting to the Grand Jury the false accusations of Lee, and by failing to present to the Grand Jury clearly exculpatory evidence demonstrating that the accusations were false and that Lee was not credible.

491.     Walker and the Prosecutors presented false and/or misleading testimony to the Grand Juries for the purpose of obtaining indictments.

492.     COP, Walker, Maricopa, the Prosecutors, and Lee acted with malice in instituting and continuing criminal proceedings against Sean.

493.     Lee's primary motives in making her accusations against Sean was financial gain.

494.     As discussed herein, COP, Walker, Maricopa, and the Prosecutors were primarily motivated by the desire to create the appearance that they were rooting out "bad cops" without regard to the credibility of the Accusers. They were also motivated to justify COP's payment of hundreds of thousands of dollars to Lee and Gutierrez.

495.     As a direct and proximate result of the criminal prosecution Sean was forced to spend substantial amounts of time and money defending himself. Sean also suffered, among other things, public humiliation, the loss of his career and the permanent impairment of his ability to secure gainful employment. Sean sustained damages in an amount to be proven at trial.

## COUNT V – MALICIOUS PROSECUTION – GUTIERREZ
## (COP, WALKER, MARICOPA, PROSECUTORS, AND GUTIERREZ)

496.     Plaintiff incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

Mills + Woods Law, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

497.    Defendants COP, Walker, Maricopa, the Prosecutors, and Gutierrez instituted and continued criminal proceedings against Sean.

498.    The criminal proceedings ended in favor of Sean with his acquittal on all charges.

499.    The criminal proceedings were brought as a result of false accusations of sexual misconduct made by Gutierrez.

500.    Defendants COP, Walker, Maricopa, the Prosecutors, and Gutierrez did not have probable cause to institute the criminal proceedings against Sean.

501.    COP, Walker, Maricopa, and the Prosecutors knew or were reckless in not knowing that the accusations of Gutierrez were false.

502.    Neither COP, Walker, Maricopa, the Prosecutors, or Gutierrez believed in good faith that the accusations were true or that Sean was guilty of the crimes with which he was charged.

503.    A reasonable person under the same or similar circumstances would not have believed that Sean was guilty of the crimes with which he was charged.

504.    COP, Walker, Maricopa, and the Prosecutors were able to secure indictments against Sean only by knowingly presenting to the Grand Jury the false accusations of Gutierrez, and by failing to present to the Grand Jury clearly exculpatory evidence demonstrating that the accusations were false and that Gutierrez was not credible.

505.    Walker and the Prosecutors presented false and/or misleading testimony to the Grand Juries for the purpose of obtaining indictments.

506.    COP, Walker, Maricopa, the Prosecutors, and Gutierrez acted with malice in instituting and continuing criminal proceedings against Sean.

507.    Gutierrez' primary motive in making her accusations against Sean was financial gain.

508.     As discussed herein, COP, Walker, Maricopa, and the Prosecutors were primarily motivated by the desire to create the appearance that they were rooting out "bad cops" without regard to the credibility of the Accusers. They were also motivated to justify COP's payment of hundreds of thousands of dollars to Lee and Gutierrez.

509.     As a direct and proximate result of the criminal prosecution Sean was forced to spend substantial amounts of time and money defending himself. Sean also suffered, among other things, public humiliation, the loss of his career and the permanent impairment of his ability to secure gainful employment. Sean sustained damages in an amount to be proven at trial.

## COUNT VI – ABUSE OF PROCESS -- RAMIREZ
## (COP, WALKER, MARICOPA, PROSECUTORS, AND RAMIREZ)

510.     Plaintiff incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

511.     COP, Walker, Maricopa, the Prosecutors, and Ramirez brought criminal proceedings against Sean in Maricopa County Superior Court.

512.     As alleged herein, COP, Walker, Maricopa, the Prosecutors, and Ramirez used the criminal proceedings primarily to accomplish a purpose for which the process was not designed.

513.     Ramirez' primary motives in making her accusations against Sean was to avoid prosecution and punishment for her own crimes and her personal hatred of Sean.

514.     As discussed herein, COP, Walker, Maricopa, and the Prosecutors were primarily motivated by the desire to create the appearance that they were rooting out "bad cops" without regard to the credibility of the Accusers. They were also motivated to justify COP's payment of hundreds of thousands of dollars to Lee and Gutierrez.

515.     As a direct and proximate result of this misuse of the legal process Sean was forced to spend substantial amounts of time and money defending himself. Sean also

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

suffered, among other things, public humiliation, the loss of his career and the permanent impairment of his ability to secure gainful employment. Sean sustained damages in an amount to be proven at trial.

## COUNT VII – ABUSE OF PROCESS – LEE
## (COP, WALKER, MARICOPA, PROSECUTORS, AND LEE)

516.     Plaintiff incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

517.     COP, Walker, Maricopa, the Prosecutors,   and Lee brought criminal proceedings against Sean in Maricopa County Superior Court.

518.     As alleged herein, COP, Walker, Maricopa, the Prosecutors, and Lee used the criminal proceedings primarily to accomplish a purpose for which the process was not designed.

519.      Lee's primary motive in making her accusations against Sean was financial gain.

520.     As discussed herein, COP, Walker, Maricopa, and the Prosecutors were primarily motivated by the desire to create the appearance that they were rooting out "bad cops" without regard to the credibility of the Accusers. They were also motivated to justify COP's payment of hundreds of thousands of dollars to Lee and Gutierrez.

521.     As a direct and proximate result of this misuse of the legal process Sean was forced to spend substantial amounts of time and money defending himself. Sean also suffered, among other things, public humiliation, the loss of his career and the permanent impairment of his ability to secure gainful employment. Sean sustained damages in an amount to be proven at trial.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

## COUNT VIII – ABUSE OF PROCESS – GUTIERREZ
## (COP, WALKER, MARICOPA, PROSECUTORS AND GUTIERREZ)

522.     Plaintiff incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

523.     COP, Walker, Maricopa, the Prosecutors, and Gutierrez brought criminal proceedings against Sean in Maricopa County Superior Court.

524.     As alleged herein, COP, Walker, Maricopa, the Prosecutors, and Gutierrez used the criminal proceedings primarily to accomplish a purpose for which the process was not designed.

525.     Gutierrez' primary motive in making her accusations against Sean was financial gain.

526.     As discussed herein, COP, Walker, Maricopa, and the Prosecutors were primarily motivated by the desire to create the appearance that they were rooting out "bad cops" without regard to the credibility of the Accusers. They were also motivated to justify COP's payment of hundreds of thousands of dollars to Lee and Gutierrez.

527.     As a direct and proximate result of this misuse of the legal process Sean was forced to spend substantial amounts of time and money defending himself. Sean also suffered, among other things, public humiliation, the loss of his career and the permanent impairment of his ability to secure gainful employment. Sean sustained damages in an amount to be proven at trial.

## COUNT IX – ABUSE OF PROCESS
## (LEE AND GUTIERREZ)

528.     Plaintiff incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

529.     Lee and Gutierrez, brought civil actions against Sean as alleged herein.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

530.     The primary purpose of the civil proceedings was to obtain money damages based upon the false accusations of Ramirez, Lee and Gutierrez.

531.     Civil proceedings in Arizona were not designed for such purposes.

532.     Defendants' use of civil proceedings in this manner was wrongful.

533.     Those civil proceedings were motivated by malice in that both Lee and Ramirez were angry that a) Sean had either arrested them or attempted to have them become informants to assist in arresting others; b) Lee had her children removed from her custody by DCS on the very same day that Sean arrested her; and, c) Lee was angry that Sean stopped her from obtaining drugs

534.     The civil proceedings were begun and maintained without probable cause.

535.     The civil proceedings were based on the false accusations of Ramirez, Lee and Gutierrez.

536.     Ramirez, Lee and Gutierrez were not credible.

537.     A reasonable investigation of the claims of Ramirez, Lee and Gutierrez would have demonstrated that the claims were false and that the Accusers were not credible.

538.     The civil proceedings were terminated on June 17, 2021 and December 2, 2021 when the civil actions of Lee and Gutierrez were dismissed with prejudice.

539.     As a direct and proximate result of this misuse of the legal process, Sean suffered, among other things, public humiliation, the loss of his career and the permanent impairment of his ability to secure gainful employment. Sean sustained damages in an amount to be proven at trial.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

## COUNT X – TORTIOUS INTERFERENCE WITH CONTRACT AND REASONABLE BUSINESS EXPECTANCY (ALL DEFENDANTS EXCEPT COP)

540.     Plaintiff incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

541.     Each of the Defendants knew that Sean was employed as a Police Officer by COP.

542.     Sean was employed by COP pursuant to a written employment agreement.

543.     Sean had a reasonable expectation of continued employment by COP.

544.     Each of the Defendants knew that Sean had an employment agreement with COP and/or that he had a reasonable expectancy of continued employment by COP.

545.     Each of the Defendant knowingly and intentionally interfered with Sean's employment agreement with COP and with Sean's reasonable expectancy of continuing employment by COP by the conduct of each alleged herein.

546.     Each of these Defendants' interference was wrongful and without legal privilege or justification.

547.     As a direct and proximate result of Defendants' tortious interference, Sean suffered, among other things, the loss of his employment and career as a Police officer, the permanent impairment of his ability to earn income, public humiliation and emotional distress,and the time and expense associated with defending himself against false claims. Sean sustained damages in an amount to be proven at trial.

## COUNT XI – FALSE ARREST AND IMPRISONMENT 03/09/2020 (COP AND MARICOPA COUNTY)

548.     Plaintiff incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

549.    COP Police Officers arrested Sean on March 9, 2020 for the alleged sexual assault of Lee.

550.    Sean was booked into the Fourth Avenue Jail, which is operated by the Maricopa County Sheriff's Office.

551.    COP acted intentionally to restrain Sean to an area within COP's control.

552.    Maricopa County acted intentionally to restrain Sean to an area within Maricopa County's control.

553.    Both COP and Maricopa County acted without lawful authority and without Sean's consent.

554.    The acts of COP and Maricopa County resulted in the direct restraint of Sean's liberty or freedom of movement, either by actual force or from Sean's fear of force.

555.    The acts of COP and Maricopa County would have caused a reasonably prudent person in the same situation as Sean to believe that he was restrained.

556.    Sean was aware of and was harmed by the restraint.

557.    As a direct and proximate result of his false imprisonment by COP and by Maricopa County Sean sustained damages in an amount to be proven at trial.

## COUNT XII – FALSE ARREST AND IMPRISONMENT 7/24/20 (COP AND MARICOPA)

558.    Plaintiff incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

559.    On July 24, 2020, COP Police Officers arrested Sean for the alleged sexual assault of Gutierrez.

560.    Sean was again booked into the Fourth Avenue Jail.

561.    COP acted intentionally to restrain Sean to an area within COP's control.

562.    Maricopa acted intentionally to restrain Sean to an area within Maricopa County's control.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

563.     Both COP and Maricopa acted without lawful authority and without Sean's consent.

564.     The acts of COP and Maricopa resulted in the direct restraint of Sean's liberty or freedom of movement, either by actual force or from Sean's fear of force.

565.     The acts of COP and Maricopa would have caused a reasonably prudent person in the same situation as Sean to believe that he was restrained.

566.     Sean was aware of and was harmed by the restraint.

567.     As a direct and proximate result of his false imprisonment by COP and by Maricopa County Sean sustained damages in an amount to be proven at trial.

## COUNT XIII – INSTIGATING OR PARTICIPATING IN FALSE ARREST AND IMPRISONMENT
### (ALL DEFENDANTS)

568.     Plaintiff incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

569.     Sean was falsely arrested and falsely imprisoned as alleged herein.

570.     Each Defendant intentionally instigated and/or participated in the unlawful restraint of Sean by his/her/its words and acts alleged herein.

571.     The words of acts of each Defendant directed, requested, invited or encouraged the act of false imprisonment.

572.     Each Defendant participated in the act of false imprisonment by aiding COP and Maricopa County in restraining Sean.

573.     COP participated in the act of false imprisonment by Maricopa by aiding Maricopa County in restraining Sean.

574.     Maricopa participated in the act of false imprisonment by COP by aiding COP in restraining Sean.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

575.    As a direct and proximate result of each Defendant's instigation or participation in false arrest and imprisonment, Sean was sustained damages in an amount to be proven at trial.

## COUNT XIV – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## (ALL DEFENDANTS)

576.    Plaintiff incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

577.    The conduct of each Defendant alleged herein was extreme and outrageous.

578.    The conduct of each Defendant alleged herein was intentional in that each Defendant sought to cause Sean emotional distress.

579.    The conduct of each Defendant alleged herein was reckless in that each Defendant was aware of and disregarded the near certainty that the conduct would result in emotional distress.

580.    As a direct and proximate result of each Defendant's intentional infliction of emotional distress Sean sustained damages in an amount to be proven at trial.

## COUNT XV – AIDING AND ABETTTING
## (ALL DEFENDANTS)

581.    Plaintiff incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

582.    Each Defendant engaged in malicious prosecution, abuse of process, false arrest and imprisonment, and intentional infliction of emotional distress as alleged herein.

583.    Each Defendant knew that one or more of the other Defendants were engaging in malicious prosecution, abuse of process, false arrest and imprisonment, and intentional infliction of emotional distress as alleged herein.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

584. By the words and acts alleged herein, each Defendant provided substantial assistance and encouragement to such other Defendant or Defendants COP with the intent of promoting the tortious conduct.

585. As a direct and proximate result of each Defendant's aiding and abetting Sean sustained damages in an amount to be proven at trial.

## COUNT XVI – CONSPIRACY
## (ALL DEFENDANTS)

586. Plaintiff incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

587. Defendants agreed to engage in a course of conduct to terminate Sean's employment, maliciously prosecute Sean and to defame and inflict emotional distress on him.

588. These purposes were unlawful.

589. Defendants used unlawful means to accomplish these purposes as described herein.

590. As alleged herein, each of the Defendants performed overt acts in support of the conspiracy and in furtherance of its objectives.

591. Sean was subjected to unlawful discharge from his employment, malicious prosecution, abuse of process, false arrest and imprisonment and intentional infliction of emotional distress as alleged herein.

592. In addition, the accusations of sexual misconduct made against Sean alleged herein were false, and Defendants knew they were false.

593. The accusations of sexual misconduct made by Maupin and Stanciel at the Press Conference and to the PNT as alleged herein were false and outrageous. Defendants knew that these accusations were false.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

594.    The allegations of sexual misconduct against Sean were defamatory, and defamatory *per se* in that they were alleged sexual misconduct and disparaged Sean's performance in his job as a Police Officer.

595.    The accusations severely damaged his reputation in the community and impaired his ability to earn income.

596.    As a direct and proximate result of this defamation, Sean sustained damages in an amount to be proven at trial.

597.    By agreeing to engage in the course of conduct to accomplish the unlawful purposes described herein, each Defendant is liable for the tortious conduct of each other Defendant committed in the course of the conspiracy.

598.    As a direct and proximate result of the tortious conduct alleged in this Complaint, Sean sustained damages in an amount to be proven at trial.

## COUNT XVII -- MALICIOUS PROSECUTION IN VIOLATION OF THE FOURTH, FIFTH, AND FOURTEENTH AMENDMENTS AND 42 U.S.C. § 1983 - RAMIREZ
## (COP, MARICOPA, PROSECUTORS, RAMIREZ, WALKER)

599.    Plaintiff incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

600.    42 U.S.C. § 1983 provides individuals with a cause of action to sue for violations of his or her constitutional rights. The 14th Amendment protects individuals from constitutional violations of State and local authorities. As incorporated by the 14th Amendment, the 4th Amendment protects individuals from malicious prosecution. The Defendants, while acting in their official capacity and individual capacities and under the color of law, violated Sean Pena's rights to freedom from malicious prosecution in regards to Cynthia Ramirez' false allegations.

601.    COP, Maricopa, the Prosecutors, Ramirez, and Walker acted willfully, knowingly, and with specific intent to deprive Sean Pena of his rights under the Fourth

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

Amendment of the United States Constitution, including his right to be protected from malicious prosecution.

602.     COP, Maricopa, the Prosecutors, , Ramirez, and Walker acted unreasonably by failing to have PC to arrest and prosecute Sean as discussed herein.

603.     COP, Maricopa, the Prosecutors, , Ramirez, and Walker were able to secure indictments against Sean only by knowingly presenting the perjured testimony of Ramirez to the Grand Jury and by failing to present to the Grand Jury clearly exculpatory evidence demonstrating that the accusations were false and that these Accusers were not credible.

604.     Walker and the Prosecutors presented false and/or misleading testimony to the Grand Juries for the purpose of obtaining indictments.

605.     COP, Maricopa, the Prosecutors, Ramirez, and Walker acted with malice in instituting and continuing criminal proceedings against Sean.

606.     Ramirez' primary motives in making her accusations against Sean was to avoid prosecution and punishment for her own crimes and her personal hatred of Sean.

607.     As further discussed herein, the real motive to arrest and prosecute Sean was to make an example of a sacrificial lamb during the climate of this nation putting Police Departments under intense scrutiny due to the ME TOO movement, the defund the police movement, and ultimately due to the fact that COP paid both Lee and Gutierrez four hundred twenty-five thousand dollars ($425,000) each in their respective civil suits against COP and Sean and needed to secure his conviction to justify their actions.

608.     This was clearly malicious in nature.

609.     The criminal actions were brought in bad faith, and even when COP, Maricopa, the Prosecutors, Ramirez, and Walker had knowledge of the lies being perpetrated by the Accusers – including Ramirez – they pressed forward with prosecution.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

610.     Roseberry hid evidence ***during Sean's second trial*** that only came to light when Gutierrez let slip on the stand that she had additional potentially exculpatory evidence and that she had given it to the Trial Prosecutors at least a week prior to her testimony.

611.     This is evidence that the prosecution was acting maliciously and in bad faith in continuing to prosecute Sean.

612.     The whole purpose of the prosecution was to save COP from a black eye in public perception.

613.     The prosecution of these criminal charges were not brought for the purpose of bringing the defendant to justice.

614.     Finally, Sean was acquitted of all charges for the allegations of Ramirez on August 15, 2022.

615.     Sean's arrest and prosecution was the direct result of COP's, Maricopa, the Prosecutors', Ramirez', and Walker's actions and inactions.

616.     Additionally, the acts of Defendants and their employees and agents, as set forth above, demonstrate gross and wanton negligence in that each of them knew or had reason to know that their acts individually and collectively created an unreasonable risk of Constitutional violations to Sean's rights, and a high probability that substantial harm would result.

617.     In causing the utter devastation of Sean Pena's life through the malicious prosecution, Defendants and their employees and agents acted with an evil mind and a malignant heart warranting an award of punitive damages.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

## COUNT XVIII -- MALICIOUS PROSECUTION IN VIOLATION OF THE FOURTH, FIFTH, AND FOURTEENTH AMENDMENTS AND 42 U.S.C. § 1983 - LEE
## (COP, MARICOPA, PROSECUTORS, LEE, WALKER)

618.     Plaintiff incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

619.     42 U.S.C. § 1983 provides individuals with a cause of action to sue for violations of his or her constitutional rights. The 14th Amendment protects individuals from constitutional violations of State and local authorities. As incorporated by the 14th Amendment, the 4th Amendment protects individuals from malicious prosecution. The Defendants, while acting in their official capacity and individual capacities and under the color of law, violated Sean Pena's rights to freedom from malicious prosecution in regards to Krystofer Lee's false allegations.

620.     COP, Maricopa, the Prosecutors,, Lee, and Walker acted willfully, knowingly, and with specific intent to deprive Sean Pena of his rights under the Fourth Amendment of the United States Constitution, including his right to be protected from malicious prosecution.

621.     COP, Maricopa, the Prosecutors,, Lee, and Walker acted unreasonably by failing to have PC to arrest and prosecute Sean as discussed herein.

622.     COP, Maricopa, the Prosecutors,, Lee, and Walker were able to secure indictments against Sean only by knowingly presenting the perjured testimony of Lee to the Grand Jury and by failing to present to the Grand Jury clearly exculpatory evidence demonstrating that the accusations were false and that these Accusers were not credible.

623.     Walker and the Prosecutors presented false and/or misleading testimony to the Grand Juries for the purpose of obtaining indictments.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

624.    COP, Maricopa, the Prosecutors,, Lee, and Walker acted with malice in instituting and continuing criminal proceedings against Sean.

625.    Lee's primary motives in making her accusations against Sean was to avoid prosecution and punishment for her own crimes and her personal hatred of Sean.

626.    As further discussed herein, the real motive to arrest and prosecute Sean was to make an example of a sacrificial lamb during the climate of this nation putting Police Departments under intense scrutiny due to the ME TOO movement, the defund the police movement, and ultimately due to the fact that COP paid both Lee and Gutierrez four hundred twenty-five thousand dollars ($425,000) each in their respective civil suits against COP and Sean and needed to secure his conviction to justify their actions.

627.    This was clearly malicious in nature.

628.    The criminal actions were brought in bad faith, and even when COP, Maricopa, the Prosecutors,, Lee, and Walker had knowledge of the lies being perpetrated by the Accusers – including Lee – they pressed forward with prosecution.

629.    Roseberry hid evidence *during Sean's second trial* that only came to light when Gutierrez let slip on the stand that she had additional potentially exculpatory evidence and that she had given it to the prosecutors at least a week prior to her testimony.

630.    This is evidence that the prosecution was acting maliciously and in bad faith in continuing to prosecute Sean.

631.    The whole purpose of the prosecution was to save COP from a black eye in public perception.

632.    The prosecution of these criminal charges were not brought for the purpose of bringing the defendant to justice.

633.    Finally, Sean was acquitted of all charges for the allegations of Lee on May 19, 2022.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

634.     Sean's arrest and prosecution was the direct result of COP's, Maricopa's, Prosecutors', Lee's, and Walker's actions and inactions.

635.     Additionally, the acts of Defendants and their employees and agents, as set forth above, demonstrate gross and wanton negligence in that each of them knew or had reason to know that their acts individually and collectively created an unreasonable risk of Constitutional violations to Sean's rights, and a high probability that substantial harm would result.

636.     In causing the utter devastation of Sean Pena's life through the malicious prosecution, Defendants and their employees and agents acted with an evil mind and a malignant heart warranting an award of punitive damages.

## COUNT XIX -- MALICIOUS PROSECUTION IN VIOLATION OF THE FOURTH, FIFTH, AND FOURTEENTH AMENDMENTS AND 42 U.S.C. § 1983 - GUTIERREZ (COP, MARICOPA, PROSECUTORS, GUTIERREZ, WALKER)

637.     Plaintiff incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

638.     42 U.S.C. § 1983 provides individuals with a cause of action to sue for violations of his or her constitutional rights. The 14th Amendment protects individuals from constitutional violations of State and local authorities. As incorporated by the 14th Amendment, the 4th Amendment protects individuals from malicious prosecution. The Defendants, while acting in their official capacity and individual capacities and under the color of law, violated Sean Pena's rights to freedom from malicious prosecution.

639.     COP, Maricopa, the Prosecutors,, Gutierrez, and Walker acted willfully, knowingly, and with specific intent to deprive Sean Pena of his rights under the Fourth Amendment of the United States Constitution, including his right to be protected from malicious prosecution.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

640. COP, Maricopa, the Prosecutors,, Gutierrez, and Walker acted unreasonably by failing to have PC to arrest and prosecute Sean as discussed herein.

641. COP, Maricopa, the Prosecutors,, Gutierrez, and Walker were able to secure indictments against Sean only by knowingly presenting the perjured testimony of Ramirez, Lee and Gutierrez to the Grand Jury and by failing to present to the Grand Jury clearly exculpatory evidence demonstrating that the accusations were false and that these Accusers were not credible.

642. Walker and the Prosecutors presented false and/or misleading testimony to the Grand Juries for the purpose of obtaining indictments.

643. COP, Maricopa, the Prosecutors,, Gutierrez, and Walker acted with malice in instituting and continuing criminal proceedings against Sean.

644. Gutierrez' primary motives in making her accusations against Sean was to avoid prosecution and punishment for her own crimes and her personal hatred of Sean.

645. As further discussed herein, the real motive to arrest and prosecute Sean was to make an example of a sacrificial lamb during the climate of this nation putting Police Departments under intense scrutiny due to the ME TOO movement, the defund the police movement, and ultimately due to the fact that COP paid both Lee and Gutierrez four hundred twenty-five thousand dollars ($425,000) each in their respective civil suits against COP and Sean and needed to secure his conviction to justify their actions.

646. This was clearly malicious in nature.

647. The criminal actions were brought in bad faith, and even when COP, Maricopa, the Prosecutors,, Gutierrez, and Walker had knowledge of the lies being perpetrated by the Accusers – including Gutierrez – they pressed forward with prosecution.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

648.     Roseberry hid evidence *during Sean's second trial* that only came to light when Gutierrez let slip on the stand that she had additional potentially exculpatory evidence and that she had given it to the Trial Prosecutors at least a week prior to her testimony.

649.     This is evidence that the prosecution was acting maliciously and in bad faith in continuing to prosecute Sean.

650.     The whole purpose of the prosecution was to save COP from a black eye in public perception.

651.     The prosecution of these criminal charges were not brought for the purpose of bringing the defendant to justice.

652.     Finally, Sean was acquitted of all charges for the allegations of Gutierrez on August 15, 2022.

653.     Sean's arrest and prosecution was the direct result of COP's, Maricopa's, the Prosecutors', Gutierrez', and Walker's actions and inactions.

654.     Additionally, the acts of Defendants and their employees and agents, as set forth above, demonstrate gross and wanton negligence in that each of them knew or had reason to know that their acts individually and collectively created an unreasonable risk of Constitutional violations to Sean's rights, and a high probability that substantial harm would result.

655.     In causing the utter devastation of Sean Pena's life through the malicious prosecution, Defendants and their employees and agents acted with an evil mind and a malignant heart warranting an award of punitive damages.

Mills + Woods Law, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

## COUNT XX

## MALICIOUS PROSECUTION IN VIOLATION OF THE FOURTH, FIFTH, AND FOURTEENTH AMENDMENTS AND 42 U.S.C. § 1983 – GUTIERREZ – *Monell* – CUSTOM AND PRACTICE
## (COP, SULLIVAN, WILLIAMS)

656.    Plaintiff incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

657.    As previously explained, U.S.C. § 1983 provides individuals with a cause of action to sue for violations of their constitutional rights.

658.    Defendants COP's, Sullivan's, and Williams' acts or failure to act deprived Sean of his constitutional rights.

659.    COP, the Phoenix Police Department, Defendant Sullivan, and Defendant Williams instituted a policy to ignore evidence involving sexual abuse allegations because of the ME TOO movement and for years acted pursuant to their customs and practices, which is an expressly adopted official policy or custom within the Phoenix Police Department.

660.    COP, Sullivan, and Williams were aware of the Phoenix Police Department's history of allowing the invention and fabrication of criminal charges.

661.    The customs and practices of COP, the Phoenix Police Department, Williams and Sullivan show that the invention of criminal charges is not enforced through written policy but established and ratified by custom and practice.

662.    Despite the Phoenix Police Department's and COP's ministrations, these techniques and practices to obtain convictions via falsehoods are upon information and belief the norm.

663.    If true justice was truly a priority, Sean would still have his job today.

664.    The policies and procedures in place have failed and established a police force that has consistently acted with blatant disregard to the public's and Sean's constitutional rights and extreme indifference to the value of his life and livelihood.

665.    It is unquestionable that there is a systemic failure by COP, the Phoenix

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

Police Department, Williams and Sullivan that have allowed, supported, and established the commonplace use of scapegoats and invented criminal charges violative of the rights of the citizens of Phoenix, Arizona.

666.    Therefore, the established customs and practices led directly to the firing of Sean and the devastation of his life.

667.    COP, Williams, and Sullivan are liable for Sean's damages due to its established customs, patterns, and practices.

## COUNT XXI
## VIOLATION OF PLAINTIFF'S CIVIL RIGHTS UNDER 42 U.S.C. § 1985 -
## CIVIL CONSPIRACY TO VIOLATE PLAINTIFF'S CIVIL RIGHTS
## (COP, SULLIVAN, WILLIAMS, MARICOPA, PROSECUTORS, WALKER)

668.    Plaintiff re-alleges and incorporates by reference each and every allegation set forth herein.

669.    At all relevant times, Defendants were acting under color of state law in their actions and inactions.

670.    42 U.S.C. § 1985(3) provides, in pertinent part: If two or more persons in any State...conspire...for the purpose of depriving either directly or indirectly, any person or class of persons of the equal protection of the laws, or of the equal privileges and immunities under the law...in any case of conspiracy set forth in this section, if one or more persons engage therein due, or cause to be done, any act and furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising and rights or privilege of a citizen of the United States, the party so injured or deprived may have an action for recovery of the damages occasioned by such injury or deprivation, against one or more of the conspirators.

671.    Two or more of the Defendants conspired for the purpose of depriving, directly or indirectly, Plaintiff of his rights under both the United States Constitution and the Arizona Constitution, as alleged herein.

672.    As a direct and proximate consequence of Defendants' civil conspiracy,

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

Plaintiff has suffered, and will continue to suffer, damages, including but not limited to, physical and/or mental anxiety and anguish in an amount to be proven at trial.

## COUNT XXII
## DEFAMATION
## (ALL DEFENDANTS)

673.     Sean restates and re-alleges the allegations of all previous Paragraphs of this Amended Complaint as if fully set forth herein.

674.     Each of the Defendants COP, Walker, Maricopa, Roseberry, Fu, Maupin, Stanciel, Ramirez, Lee and Gutierrez made false statements of fact about Sean as alleged herein; specifically, that he had committed sexual assault.

675.     Each of these false statements was defamatory in that it tended to bring Sean into disrepute, contempt or ridicule, or to impeach Sean's honesty, integrity, virtue, or reputation.

676.     Each of these false statements was defamatory *per se* in that it imputed to Sean: a) a criminal offense punishable by imprisonment or regarded by public opinion as involving moral turpitude; b) unfitness for the proper conduct of his lawful business, trade, or profession; and c) serious sexual misconduct. Thus, damages are presumed.

677.     Each of the Defendants COP, Walker, Maricopa, Roseberry, Fu, Maupin, Stanciel, Ramirez, Lee and Gutierrez made, said or wrote these false statements to a third person.

678.     Each of the Defendants COP, Walker, Maricopa, Roseberry, Fu, Maupin, Stanciel, Ramirez, Lee and Gutierrez was negligent in failing to determine the truth of these false statements.

679.     At the time that each of the Defendants COP, Walker, Maricopa, Roseberry, Fu, Maupin, Stanciel, Ramirez, Lee and Gutierrez made, said or wrote these false statements, he, she or it knew that the statement was false or acted in reckless disregard of whether the statement was true or false. Each of these Defendants had serious doubts as to whether these false statements were true or false, or consciously disregarded whether these false statements was true or false.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

680.     Defendants' false statements caused Sean to be damaged as alleged herein.

## JURY TRIAL DEMAND

681.     Plaintiffs hereby demand a jury trial in this matter as to all claims and against all Defendants.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs requests that the Court enter judgment against the Defendants and in favor of the Plaintiffs, as follows:

a)   For compensatory, general and special damages against each and every Defendant, jointly and severally, in an amount to be proven at trial;

b)   For all other non-pecuniary damages as to be proven at trial;

c)   For punitive and exemplary damages against Defendants in an amount appropriate to punish the wrongful conduct alleged herein and to deter such conduct in the future;

d)   For pre-and post judgment interest to the extent provided by law;

e)   For Plaintiffs' incurred costs, including all incurred attorneys' fees and court costs, pursuant to 42 U.S.C. §1988 and as otherwise authorized by any other statute or law; and

f)   For such other relief as this Court may deem proper.

**RESPECTFULLY SUBMITTED** this 7th day of September 2023.

MILLS + WOODS LAW, PLLC

By    /s/ Sean A. Woods
Sean A. Woods
Robert T. Mills
5055 North 12th Street, Suite 101
Phoenix, Arizona 85014
*Attorneys for Plaintiff*

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

1   **ORIGINAL** filed this 7th day of September, 2023
2   via AZTurboCourt with the Clerk of the
    Maricopa County Superior Court

4   _____ */s/ Ben Dangerfield* _____

Mills + Woods Law, PLLC
5055 North 12th Street, Ste 101
Phoenix, AZ 85014
Telephone: 480.999.4556

CORRECTED: Clerk of
Court Clerical Error

CLERK OF THE
SUPERIOR COURT
FILED
T. GARVEY, DEP

23 OCT 12 PM 3: 36
10/02/2023

1  T. Scott Legal Support Services
   Gary Steiner  ID#  MC 7767
2  (480) 227-7297
   Tscottlegal2007@aol.com
3

4              **SUPERIOR COURT OF ARIZONA**
                    **MARICOPA COUNTY**
5

6  In re the matter of:                    )
                                           )
7  SEAN PENA,                              )      Case No: CV2023-012031
                                           )
8                                          )
                                           )
9          Plaintiff(s),                   )      **CERTIFICATE OF SERVICE**
                                           )
10  v.                                     )
                                           )
11  CITY OF PHOENIX, et al.,               )
                                           )
12          Defendant(s).                  )
                                           )
13  _____   )

14  1.      I, Gary Steiner, swear that I am currently registered as a Private Process Server pursuant to Rule 4(c)

15          of the Arizona Rules of Civil Procedure. I further swear that on September 28, 2023, I received

16          Summons, First Amended Complaint, Complaint and a Certificate Of Compulsory Arbitration from The

17          Plaintiff(s).

18  2.      I then proceeded to successfully serve the above described documents on Catherine Fu at Maricopa

19          County Attorney's Office at 225 W. Madison, Phoenix, Arizona on September 28, 2023 at approximately

20          3:00 pm. I asked who could accept service and Debbie Mackenzie, Supervisor, said she could. I then

21          verbally identified and served her.

22  3.      This is considered to be personal service.

23  4.      The fee I charged for this service was $25.

24  I declare under the penalty of perjury that the foregoing is true and correct

25  _Gary Steiner_ (signature)                    10/2/23

26  Gary Steiner                                   Date

27

28                              Page 1

29

CORRECTED: Clerk of
Court Clerical Error

CLERK OF THE
SUPERIOR COURT
FILED
T. GARVEY DEP

23 OCT 12 PM 3: 36

10/02/2023

T. Scott Legal Support Services
Gary Steiner ID# MC 7767
(480) 227-7297
Tscottlegal2007@aol.com

## SUPERIOR COURT OF ARIZONA
## MARICOPA COUNTY

In re the matter of:                    )
                                        )
SEAN PENA,                              )        Case No: CV2023-012031
                                        )
                                        )
            Plaintiff(s),               )        **CERTIFICATE OF SERVICE**
                                        )
v.                                      )
                                        )
CITY OF PHOENIX, et al.,                )
                                        )
            Defendant(s).               )
        _____        )

1.      I, Gary Steiner, swear that I am currently registered as a Private Process Server pursuant to Rule 4(c)

        of the Arizona Rules of Civil Procedure. I further swear that on September 28, 2023, I received

        Summons, First Amended Complaint, Complaint and a Certificate Of Compulsory Arbitration from The

        Plaintiff(s).

2.      I then proceeded to successfully serve the above described documents on the City of Phoenix at 200

        W. Washington St., 15th Fl., Phoenix, Arizona on September 28, 2023 at approximately 2:25 pm. I

        asked who could accept service and Jessica Castro, Special Deputy Clerk, said she could. I then

        verbally identified and served her.

3.      This is considered to be personal service.

4.      The fee I charged for this service was $85.

I declare under the penalty of perjury that the foregoing is true and correct

_____                        10/2/23
Gary Steiner                                      Date

Page 1

CORRECTED: Clerk of
Court Clerical Error

CLERK OF THE
SUPERIOR COURT
FILED
T. GARVEY, DEP

23 OCT 12  PM 3:36
10/02/2023

1  T. Scott Legal Support Services
   Gary Steiner  ID# MC 7767
2  (480) 227-7297
   Tscottlegal2007@aol.com
3

4                    **SUPERIOR COURT OF ARIZONA**
                        **MARICOPA COUNTY**
5

6  In re the matter of:                  )
                                         )
7  SEAN PENA,                            )        Case No: CV2023-012031
                                         )
8                                        )
                                         )
9          Plaintiff(s),                 )        **CERTIFICATE OF SERVICE**
                                         )
10 v.                                    )
                                         )
11 CITY OF PHOENIX, et al.,              )
                                         )
12         Defendant(s).                 )
                                         )
13 _____)

14   1.     I, Gary Steiner, swear that I am currently registered as a Private Process Server pursuant to Rule 4(c)

15          of the Arizona Rules of Civil Procedure. I further swear that on September 28, 2023, I received

16          Summons, First Amended Complaint, Complaint and a Certificate Of Compulsory Arbitration from The

17          Plaintiff(s).

18   2.     I then proceeded to successfully serve the above described documents on the Maricopa County Board

19          of Supervisors at 301 W. Jefferson, 10th Fl., Phoenix, Arizona on September 28, 2023 at approximately

20          2:38 pm. I asked who could accept service and Deborah Corwin, Special Deputy Clerk, said she could. I

21          then verbally identified and served her.

     3.     This is considered to be personal service.
22
     4.     The fee I charged for this service was $85.
23
     I declare under the penalty of perjury that the foregoing is true and correct
24

25   _____                    _10/2/23_
     Gary Steiner                                  Date
26

27

28                                      Page 1

29

CORRECTED: Clerk of
Court Clerical Error



CLERK OF THE
SUPERIOR COURT
FILED
T. GARVEY DEP

~~23 OCT 12~~ PM 3: 36

10/02/2023

T. Scott Legal Support Services
Gary Steiner  ID#  MC 7767
(480) 227-7297
Tscottlegal2007@aol.com

## SUPERIOR COURT OF ARIZONA
## MARICOPA COUNTY

In re the matter of:                         )
                                             )
SEAN PENA,                                   )        Case No: CV2023-012031
                                             )
                                             )
           Plaintiff(s),                     )        **CERTIFICATE OF SERVICE**
                                             )
v.                                           )
                                             )
CITY OF PHOENIX, et al.,                     )
                                             )
           Defendant(s).                     )
_____    )

1.      I, Gary Steiner, swear that I am currently registered as a Private Process Server pursuant to Rule 4(c)
        of the Arizona Rules of Civil Procedure. I further swear that on September 28, 2023, I received
        <u>Summons, First Amended Complaint, Complaint and a Certificate Of Compulsory Arbitration</u> from The
        Plaintiff(s).

2.      I then proceeded to successfully serve the above described documents on Jeffrey Roseberry at
        Maricopa County Attorney's Office at 225 W. Madison, Phoenix, Arizona on September 28, 2023 at
        approximately 3:00 pm. I asked who could accept service and Debbie Mackenzie, Supervisor, said she
        could. I then verbally identified and served her.

3.      This is considered to be personal service.

4.      The fee I charged for this service was $85.

I declare under the penalty of perjury that the foregoing is true and correct

Gary Steiner                                          10/2/23

Gary Steiner                                          Date

CORRECTED 23-cv
Court Clerical Error

CLERK OF THE
SUPERIOR COURT
FILED
T. GARVEY DEP

23 OCT 12  PM 3: 36

10/02/2023

1  T. Scott Legal Support Services
   Gary Steiner  ID# MC 7767
2  (480) 227-7297
3  Tscottlegal2007@aol.com

4                      **SUPERIOR COURT OF ARIZONA**
                           **MARICOPA COUNTY**
5

6  In re the matter of:                    )
                                           )
7  SEAN PENA,                              )        Case No: CV2023-012031
                                           )
8                                          )
                                           )
9           Plaintiff(s),                  )        **CERTIFICATE OF SERVICE**
                                           )
10 v.                                      )
                                           )
11 CITY OF PHOENIX, et al.,                )
                                           )
12                                         )
            Defendant(s).                  )
13 _____ )

14  1.      I, Gary Steiner, swear that I am currently registered as a Private Process Server pursuant to Rule 4(c)

15          of the Arizona Rules of Civil Procedure. I further swear that on September 28, 2023, I received

16          Summons, First Amended Complaint, Complaint and a Certificate Of Compulsory Arbitration from The

17          Plaintiff(s).

18  2.      I then proceeded to successfully serve the above described documents on Michael Baker at Maricopa

19          County Attorney's Office at 225 W. Madison, Phoenix, Arizona on September 28, 2023 at approximately

20          3:00 pm. I asked who could accept service and Debbie Mackenzie, Supervisor, said she could. I then

21          verbally identified and served her.

22  3.      This is considered to be personal service.

23  4.      The fee I charged for this service was $25.

    I declare under the penalty of perjury that the foregoing is true and correct

24

25  _____                    _____10/2/23_____
    Gary Steiner                                Date
26

27

28                                      Page 1
29

CORRECTED 10/12/23
Court Clerical Error

CLERK OF THE
SUPERIOR COURT
FILED
T. GARVEY, DEP

23 OCT 12  PM 3: 35
10/02/2023

1  T. Scott Legal Support Services
   Gary Steiner  ID#  MC 7767
2  (480) 227-7297
   Tscottlegal2007@aol.com
3

4              **SUPERIOR COURT OF ARIZONA**
                      **MARICOPA COUNTY**
5

6  In re the matter of:                    )
                                           )
7  SEAN PENA,                              )    Case No: CV2023-012031
                                           )
8                                          )
                                           )
9          Plaintiff(s),                   )    **CERTIFICATE OF SERVICE**
                                           )
10 v.                                      )
                                           )
11 CITY OF PHOENIX, et al.,                )
                                           )
12                                         )
           Defendant(s).                   )
13 ─────────────────────────────           )

14   1.    I, Gary Steiner, swear that I am currently registered as a Private Process Server pursuant to Rule 4(c)

15         of the Arizona Rules of Civil Procedure. I further swear that on September 28, 2023, I received

16         Summons, First Amended Complaint, Complaint and a Certificate Of Compulsory Arbitration from The

17         Plaintiff(s).

18   2.    I then proceeded to successfully serve the above described documents on the Phoenix Police Chief

19         Michael Sullivan at 200 W. Washington St., 15th Fl., Phoenix, Arizona on September 28, 2023 at

20         approximately 2:25 pm. I asked who could accept service and Jessica Castro, Special Deputy Clerk,

21         said she could. I then verbally identified and served her.

     3.    This is considered to be personal service.
22
     4.    The fee I charged for this service was $25.
23
     I declare under the penalty of perjury that the foregoing is true and correct
24

25   _____                    10/2/23
     Gary Steiner                                      Date
26

27

28                                    Page 1

29

CORRECTED: Clerk of
Court Clerical Error

CLERK OF THE
SUPERIOR COURT
FILED
T. GARVEY, DEP

23 OCT 12  PM 3: 36
10/02/2023

1
2
3

T. Scott Legal Support Services
Gary Steiner  ID# MC 7767
(480) 227-7297
Tscottlegal2007@aol.com

4

**SUPERIOR COURT OF ARIZONA**
**MARICOPA COUNTY**

5

6   In re the matter of:                          )
                                                  )
7   SEAN PENA,                                     )          Case No: CV2023-012031
                                                  )
8                                                  )
                                                  )
9           Plaintiff(s),                          )          **CERTIFICATE OF SERVICE**
                                                  )
10  v.                                             )
                                                  )
11  CITY OF PHOENIX, et al.,                       )
                                                  )
12          Defendant(s).                          )
                                                  )
13  ─────────────────────────                      )

14      1.      I, Gary Steiner, swear that I am currently registered as a Private Process Server pursuant to Rule 4(c)

15          of the Arizona Rules of Civil Procedure. I further swear that on September 28, 2023, I received

16          Summons, First Amended Complaint, Complaint and a Certificate Of Compulsory Arbitration from The

17          Plaintiff(s).

18      2.      I then proceeded to successfully serve the above described documents on Sandra Anderson at

19          Maricopa County Attorney's Office at 225 W. Madison, Phoenix, Arizona on September 28, 2023 at

20          approximately 3:00 pm. I asked who could accept service and Debbie Mackenzie, Supervisor, said she

21          could. I then verbally identified and served her.

22      3.      This is considered to be personal service.

23      4.      The fee I charged for this service was $25.

24      I declare under the penalty of perjury that the foregoing is true and correct

25                                                              10/3/23

    Gary Steiner                                             Date

26

27

28                                  Page 1

29

# EXHIBIT 6

1  Kathleen L. Wieneke, Bar #011139
   Christina Retts, Bar #023798
2  WIENEKE LAW GROUP, PLC
   1225 West Washington Street, Suite 313
3  Tempe, Arizona 85288
   Telephone: (602) 715-1868
4  Fax: (602) 455-1109
   Email: kwieneke@wienekelawgroup.com
5  Email: cretts@wienekelawgroup.com

6  *Attorneys for Defendants City of Phoenix and
   Sullivan*

7

8          **SUPERIOR COURT OF THE STATE OF ARIZONA**

9                  **COUNTY OF MARICOPA**

10 SEAN PENA, an individual;              NO. CV2023-012031

11                 Plaintiff,             **NOTICE OF FILING NOTICE OF
                                          REMOVAL**
12 vs.
                                          (Assigned to the Honorable John
13 CITY OF PHOENIX, a governmental entity; Hannah)
   COUNTY OF MARICOPA, a governmental
14 entity; MICHAEL SULLIVAN, Chief of the
   Phoenix Police Department; JERI L.
15 WILLIAMS, former Chief of the Phoenix
   Police Department; DEPUTY MARICOPA
16 COUNTY ATTORNEY JEFFREY
   ROSEBERRY and JANE DOE
17 ROSEBERRY; MARICOPA COUNTY
   DEPUTY ATTORNEY CATHERINE FU
18 and JOHN DOE FU; MARICOPA
   COUNTY DEPUTY ATTORNEY
19 SANDRA ANDERSON and JOHN DOE
   ANDERSON; MARICOPA COUNTY
20 ATTORNEY SAMANTHA CAPLINGER
   and JOHN DOE CAPLINGER; MARICOPA
21 COUNTY ATTORNEY MICHAEL BAKER
   and JANE DOE BAKER; MICHAEL
22 WALKER and JANE DOE WALKER;
   CYNTHIA RAMIREZ; KRYSTOFFER
23 LEE; LISA GUTIERREZ; JARRETT
   MAUPIN and JANE DOE MAUPIN; and
24 IESHA STANCIEL and JOHN DOE
   STANCIEL,
25
                   Defendants.
26

27

28

1       Pursuant to 28 U.S.C. § 1441 *et seq.*, Defendants City of Phoenix and Sullivan notify

2  this Court that they have filed a Notice of Removal of this action to the United States District

3  Court for the District of Arizona.[1] A copy of the Notice of Removal (exclusive of exhibits),

4  filed on October 16, 2023, is attached as Exhibit 1.

5

6

       DATED this 16th day of October 2023.

7

8                      WIENEKE LAW GROUP, PLC

9               By:   */s/ Christina Retts*_____

10                       Kathleen L. Wieneke
                            Christina Retts

11                       1225 West Washington Street, Suite 313
                       Tempe, Arizona 85288

12                       *Attorneys for Defendants City of Phoenix and*

13                       *Sullivan*

14

15  **ORIGINAL e-filed via AZTurboCourt this**
   **16th day of October 2023.**

16

17  **On this same date, a true COPY of the foregoing was**
   **served via AZTurboCourt (per Arizona Supreme Court**

18  **Administrative Order 2014-23) to:**

19  Sean A. Woods
   Robert T. Mills

20  MILL + WOODS LAW, PLLC
   5055 North 12th Street, Suite 101

21  Phoenix, Arizona 85014
   *Attorneys for Plaintiff*

22

23  By:   */s/ Mica Mahler*_____

24

25

26

27
       [1] Undersigned counsel will be representing Defendants Walker and Williams, who

28  have not been served.

                              2