# EXHIBIT 1



 1225 W. Washington St., Suite 313
Tempe, Arizona 85288

 602.715.1868

 www.wienekelawgroup.com

October 18, 2023

**<u>VIA ELECTRONIC MAIL</u>**

Sean A. Woods
Robert T. Mills
MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, Arizona 85014
*Attorneys for Plaintiff*

Maxine S. Mak
Deputy County Attorney
RACHEL H. MITCHELL
MARICOPA COUNTY ATTORNEY
225 West Madison Street
Phoenix, Arizona 85003
*Attorneys for Defendants Maricopa County Board of Supervisors, Roseberry, Baker, Anderson, and Fu*

**<u>Re:</u>**   ***<u>Pena v. City of Phoenix, et al.</u>***
***<u>United States District Court - Arizona</u>***
***<u>No. 2:23-cv-02156-SPL--JZB</u>***

Counsel,

The purpose of this correspondence is to meet and confer, pursuant to LR12.1, to address deficiencies with Plaintiff's First Amended Complaint ("FAC"). Please let us know if you are amenable to amendment and whether you will agree to dismiss any of the claims outlined below. If you believe a further telephone conference would be fruitful, please provide your availability for the same.

## I.   Chief Sullivan is Not a Proper Defendant.

Chief Sullivan is not a proper Defendant in this litigation. Chief Sullivan was not sworn in until October 28, 2022. Because he was not the Chief at the time of the acts alleged in the litigation, he cannot be sued in his individual or official capacity.  Plaintiff alleges that he was terminated on July 27, 2020 (more than two years before Chief Sullivan was sworn in). FAC ¶ 396. The criminal cases concluded on May 19, 2022 and August 15, 2022—both before Chief Sullivan became Chief. FAC ¶¶ 195 & 614.

There is no *respondeat* superior liability under Section 1983, *Polk County v. Dodson*, 454 U.S. 312, 325 (1981) ("Section 1983 will not support a claim based on a *respondeat superior* theory of liability.") Plaintiff cannot prove Chief Sullivan's personal participation in the allegations that preceded his arrival at the City by more than two years. Similarly, Chief Sullivan cannot be held responsible for policies/customs that were in place before his arrival.



October 18, 2023
Page 2

Likewise, Chief Sullivan is not the policy maker for the City of Phoenix. *See Puente v. City of Phoenix*, 2022 U.S. Dist. LEXIS 21489 (D. Ariz. 2022) (noting that Chief Williams is not the final policymaker for the City under the City Code, Phoenix City Charter, Ch. III §§ 1, 2).

In addition, naming Chief Sullivan on an official capacity claim is redundant of naming the City of Phoenix.  An official capacity suit is to "be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Therefore, "if individuals are being sued in their official capacity as municipal officials and the municipal entity itself is also being sued, then the claims against the individuals are duplicative and should be dismissed." *Vance v. County of Santa Clara*, 928 F. Supp. 993, 996 (N.D. Cal. 1996).

We request that Plaintiff agree to voluntarily dismiss all claims asserted against Chief Sullivan.

## II.   Notice of Claim and Statute of Limitations—Insufficiency of Facts and Timeliness.

Plaintiff asserts that he was arrested on March 9, 2020, for the sexual assault of Ms. Lee. FAC ¶ 549. Plaintiff asserts that he was arrested on July 24, 2020, for the sexual assault of Ms. Gutierrez. FAC ¶ 559. He alleges that the first grand jury convened on June 19, 2020, related to the accusations of Ramirez and Lee. FAC ¶ 345.  He alleges that he was terminated on July 27, 2020. FAC ¶ 396. Plaintiff filed his Civil Service appeal on July 30, 2020.  *See* NOC. The second grand jury convened on August 12, 2020. FAC ¶¶ 263, 345. The criminal case related to Ms. Lee concluded on May 19, 2022. FAC ¶ 195.  The criminal case related to Ms. Ramirez and Ms. Gutierrez concluded on August 15, 2022. FAC ¶ 614. In his lawsuit, Plaintiff details the claimed economic damages that he suffered, which were not ever set forth or calculated in his Notice of Claim. FAC ¶¶ 427-455, Cf. Notice of Claim.

Plaintiff served his notice of claim on the City Clerk on February 10, 2023. Because the majority of Plaintiff's state law claims accrued more than 180 days before Plaintiff served his notice of claim—under A.R.S. § 12-821.01(A)—they must be dismissed. *Humphrey v. State*, 466 P.3d 368, 375, ¶ 22 (Ariz. App. 2020) ("But the 2010 notice was filed more than two years after the date of the accident, which it was not timely if Plaintiffs cause of action accrued before May 2, 2010.") *See also Falcon v. Maricopa County*, 144 P.3d 1254, 1256, ¶ 10 (Ariz. 2006) ("Actual notice and substantial compliance do not excuse failure to comply with the statutory requirements of A.R.S. § 12-821.01(A)."). In addition, Plaintiff was required to file suit within one year after the cause of action accrued, a deadline he did not meet for all of the claims except for the malicious prosecution claim for Ramirez and Gutierrez.

Moreover, the Notice of Claim statute requires Plaintiff to set forth the relevant facts supporting his sum certain. Yet, Plaintiff made a lump sum demand of $1.75 million to individuals employed by three different entities—the City of Phoenix, Tempe, and Maricopa County. This lump sum is not sufficient to apprise each entity regarding the sum certain for their employee's alleged conduct.



October 18, 2023
Page 3

Plaintiff's demand also contains no facts related to the calculation of any economic damages due to his termination—yet he possesses these facts as they are detailed in his lawsuit. *See Deer Valley Unif. Sch. Dist. No. 97 v. Houser*, 214 Ariz. 293 (2007); A.R.S. § 12-821.01(A). Plaintiff's Notice of Claim contains no demand for lost wages, no calculation of the claimed lost wages, nothing about how long he claimed he would work, no information about his hourly pay, no calculation of fringe benefits calculations, and no factual information about his anticipated pension and/or DROP benefits. He also did not include any facts relating to his novel argument that the MOU gave him additional contract rights and that the City allegedly breached the MOU. Because Plaintiff failed to comply with the Notice of Claim's requirements for his employment claims, Count I (wrongful termination/breach of employment agreement) and Count II (breach of the covenant of good faith and fair dealing) must also be dismissed for failure to set forth facts supporting the sum certain.

A.     False Arrest and False Imprisonment (Counts XI, XII, and XIII)

In Count XI, Plaintiff asserts false arrest and false imprisonment claims stemming from Plaintiff's March 9, 2020 arrest. FAC at ¶ 549. Under Arizona law however, a claim for false arrest or imprisonment accrues on the date of the arrest. *Hansen v. Stoll*, 636 P.2d 1236, 1242 (Ariz. App. 1981); *Rondelli v. County of Pima*, 586 P.2d 1295, 1297 (Ariz. App. 1978). Since Plaintiff affirmatively alleges he was arrested on March 9, 2020, his NOC is 2 ½ years late. Similarly, he was required to file suit for this arrest/imprisonment by March 9, 2021. The same logic applies to Count XII, his NOC is untimely for the July 24, 2020 arrest by nearly two years. He was required to file suit for this arrest/imprisonment by July 24, 2021. Notably, although he does not allege when he was released from jail, we do not believe that he spent any significant time in jail (verses posting bond). False imprisonment necessarily ends at the time the imprisonment ends. Because the NOC was not timely served and the lawsuit was not timely filed within one year of accrual, these claims must be dismissed.

Additionally, a finding of probable cause defeats false arrest and false imprisonment claims. *Lacy v. County of Maricopa*, 631 F. Supp. 2d 1183, 1193 (D. Ariz. 2008) ("Probable cause to arrest or detain is an absolute defense to any claim under § 1983 against police officers for wrongful arrest or false imprisonment.") The probable cause statement Plaintiff incorporated into his FAC includes the following relevant facts: "an adult female claimed she was sexually assaulted by a Phoenix Police officer who arrested her that day. While the officer denied assaulting her, he did claim she offered him oral sex if he would release her. Then, a year later, another unrelated individual reported that Plaintiff sexually assaulted her after dropping her off. A friend of the second individual reported that the second victim told her some of the details of the incident. Finally, the AVL records from the officer's vehicle indicate he was in the vicinity of where the second individual was dropped off for ten minutes." FAC at ¶ 330.

As Plaintiff admits, the probable cause statements submitted to the South Mountain Justice Court acknowledge: (1) "Pena's DNA profile was excluded from the profiles found on the evidence swabs," (2) "Pena adamantly denied the allegations of sexual assault or having any sexual contact with Victim A," (3) "[t]he video surveillance obtained from multiple locations could not



October 18, 2023
Page 4

corroborate or refute the allegations," (4) "[n]o biological evidence was found in the patrol vehicle upon examination by the crime lab staff," (5) "[t]here was no other evidence which would serve to corroborate or refute this allegation," and (6) "Pena denied the allegations of engaging in any sexual conduct with Victim B." FAC at ¶¶ 330-332.

Probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018). This standard "is not a high bar." *Id*. Additionally, "[t]he magistrate's determination of probable cause is treated with great deference and is not reviewed de novo." *United States v. Alexander*, 761 F.2d 1294, 1300 (9th Cir. 1985), citing *Illinois v. Gates*, 462 U.S. 213, 236 (1983). Even with the mitigating/exculpatory facts identified in the PC statement itself, an objective reviewing magistrate could find a "probability or substantial chance" of criminal activity.

Although Plaintiff attempts to shoehorn the accusers' allegedly conflicting allegations, trial testimony, and the civil actions filed by Lee and Gutierrez into his false arrest and imprisonment allegations, the accusers' testimony and civil settlements only occurred after Plaintiff's arrest. They could not negate the March/July 2020 probable cause findings because they did not exist yet. *See Dural v. City & Cnty of Honolulu*, 2023 U.S. Dist. LEXIS 27171 (D.Hawaii 2023) (reliance on events occurring subsequent to an arrest can neither support nor invalidate the existence of probable cause). And importantly, probable cause under the Fourth Amendment requires only "sufficient probability, not certainty." *Hill v. California*, 401 U.S. 797, 804 (1971). That exculpatory evidence may exist is insufficient to defeat a finding of probable cause. *See Baker v. McCollan*, 443 U.S. 137, 145-46 (1979) ("[W]e do not think a sheriff executing an arrest warrant is required by the Constitution to investigate independently every claim of innocence"). And, finally, a grand jury indictment is prima facie evidence of probable cause.  Restatement § 664(2); *see Hobbs v. City of Long Beach*, 534 F. App'x 648, 649 (9th Cir. 2013) (citing § 664(2) for the proposition that "[a] grand jury indictment is prima facie evidence of probable cause"); *Reams*, 701 P.2d at 601 (noting "the position of the Restatement with respect to the relevance of an indictment to the issue of probable cause in an action for malicious prosecution.").

In Count XIII, Plaintiff alleges Defendants "intentionally instigated and/or participated in the unlawful restraint of Sean by his/her/its words and acts alleged herein." (First Amended Complaint at ¶ 570). Since this purported claim is derivative of Plaintiff's false arrest/imprisonment claims, it too is untimely under A.R.S. § 12-821.01. In addition to the untimeliness, there is no tort of "intentionally instigating or participating."  This is a claim that is duplicative of the false arrest/imprisonment claim.

### B.   Wrongful Termination and Breach of Good Faith and Fair Dealing

Similarly, a wrongful termination claim accrues at the time Plaintiff was terminated. *See Scorzo v. Arizona Medical Board*, No. 1 CA-CV 15-0730, 2017 Ariz. App. Unpub. LEXIS 90, at*5, ¶ 9 (Jan. 26, 2017) (concluding a wrongful termination claim accrued "when the Board terminated their employment in 2011.") *See also Bresser v. Menta Group*, 934 F. Supp. 2d 1150,



October 18, 2023
Page 5

1160 (D. Ariz. 2013) (finding plaintiffs' suit untimely under the discovery rule where they filed suit more than one year after termination). The exception under A.R.S. § 12-821.01(C) for dispute resolution or administrative claim processes only applies when the administrative claims process is mandatory. *Andress v. City of Chandler*, 7 P.3d 121, 123, ¶ 11 (Ariz. App. 2000) ("[W]e interpret A.R.S. § 12-821.01(C) as merely extending the time to serve a notice of claim when alternative dispute or administrative review procedures must or should be exhausted before the filing of a complaint."). Plaintiff's pursuit of remedies under the Memorandum of Understanding (MOU) did not toll the statute of limitations on his contract claims. *Haggerty v. American Airlines*, 102 Fed.Appx. 623, 625 (9th Cir. 2004), *cert. denied* 543 U.S. 1161 (2005). Plaintiff's right to sue under Arizona's Employment Protection Act is a statutory right independent of his contractual rights under the collective bargaining agreement; his claims under the AEPA were fully available to him upon termination. *Id.*

Per Plaintiff's First Amended Complaint, the City of Phoenix fired Plaintiff on July 27, 2020. (First Amended Complaint at ¶ 381). As with Count XII, Counts I and II are untimely by nearly two years. *See* A.R.S. § 12-821 (one year statute of limitations) and A.R.S. § 12-541 (one year statute of limitations).

C.    Abuse of Process

Plaintiff's abuse of process claims (Counts VII, VIII, IX) accrued once he knew he had been harmed, and even if the process had not concluded. *See Cruz v. City of Tucson*, 243 Ariz. 69, 74 ¶¶ 21-22 (App. 2017). Where Plaintiff claims that the process should never have been initiated against him, his claims necessarily accrued at the time of the grand jury indictments—more than 2 ½ years before he served his Notice of Claim and more than three years before he filed suit.

D.    Intentional Infliction of Emotional Distress

Plaintiff's intentional infliction of emotional distress claim (Count XIV) is tied to his arrest and the criminal case. He asserts that he was innocent. As a result, his cause of action accrued at the time he was arrested for the crimes—in 2020.

E.    Aiding and Abetting

Arizona recognizes aiding and abetting as embodied in Restatement § 876(b), *i.e.*, "that a person who aids and abets a tortfeasor is himself liable for the resulting harm to a third person." *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund*, 201 Ariz. 474, 485 (2002). Claims of aiding and abetting tortious conduct require proof of three elements: "(1) the primary tortfeasor must commit a tort that causes injury to the plaintiff; (2) the defendant must know that the primary tortfeasor's conduct constitutes a breach of duty; and (3) the defendant must substantially assist or encourage the primary tortfeasor in the achievement of the breach." *Id.*



October 18, 2023
Page 6

In Count XV, Plaintiff merely rehashes the torts that were allegedly perpetrated—malicious prosecution, abuse of process, false arrest and imprisonment, and intentional infliction of emotional distress—and claims generically that all of the Defendants aided and abetted one another. Yet, where the underlying tort is untimely asserted, there cannot be any timely claim of "aiding and abetting" of that same tort. Notably, none of the City Defendants are alleged to be the primary tortfeasor. Instead, the crux of Plaintiff's claims is that the City and County Defendants should not have believed Gutierrez, Lee, and Rameriez and should have instead believed the Plaintiff. Credibility determinations, however, are to be made by a jury, not by investigators or prosecutors.

To the extent that Plaintiff criticizes the presentation to the grand jury of the accuser's accusations, those claims accrued at the time of the presentation to the grand jury—years before the NOC was served and lawsuit filed. There are no factual allegations that the City Defendants had any ability to read the future to know that there would be future arrests of the accusers, that those arrests would even be admissible in the criminal cases, or that the accusers would allegedly change their testimony years after the arrests. *See* Ariz.R.Evid. 404(b); FAC 110-111, 190-192. Moreover, to the extent that this claim is based upon any alleged false testimony by anyone, it fails based upon the immunity set forth in *Rehburg* (as discussed in further detail below).

F.     Malicious Prosecution

The prosecution related to Ms. Lee terminated on May 19, 2022. Plaintiff did not timely file a Notice of Claim within 180 days of the not guilty verdict, nor did he file his lawsuit by May 19, 2023.

**III.    Rule 8 Violations—Improper Reference to Settlements and other Inflammatory Irrelevant Allegations.**

Plaintiff improperly references the settlements that the City entered into with two of the accusers (the third did not file suit). *See* Fed.R.Civ.Pro. 408 (settlement evidence is not admissible "to prove liability or invalidity of the claim or its amount."). In those two civil cases, the City was separately sued for direct claims and Plaintiff has no standing to challenge the settlements, or the City's reasoning for entering into the same. *Nordstrom v. Ryan*, No. CV 15-02176-PHX-DGC, 2019 U.S. Dist. LEXIS 81730 at *7-8 (D. Ariz. May 15, 2019) (nonparty inmates lacked standing to enforce a settlement agreement between the Arizona Department of Corrections, Rehabilitation, and Reentry and an individual inmate). Plaintiff's assertion that the City would have won the cases had it elected to try them is (1) entirely conclusory and (2) irrelevant to the City's decision to settle. This is particularly the case where the settlements contained no admission of liability. Plaintiff's speculative beliefs about the City's investigation, analysis, and the future events (that he would be acquitted verses found guilty) are not relevant to any of the claims and are highly prejudicial. All references to the settlements should be removed.



October 18, 2023
Page 7

References to the polygraph should similarly be removed. FAC ¶¶ 7, 257-267, 290, 353, 384. Polygraph examinations are not admissible in state or federal courts. Plaintiff's theory about the polygraph directly conflicts with controlling authority. *See United States v. Scheffer*, 523 U.S. 303, 317 (1998) (the military's per se rule excluding polygraph evidence does not violate a defendant's rights under the Fifth or Sixth Amendments). In *Hansen v. Chon-Lopez*, 252 Ariz. 250, 256 (Ariz.App. 2021), the court noted that "it is well settled in Arizona that polygraph evidence is unreliable and, absent a stipulation by the parties, categorically inadmissible at trial 'for any purpose.'" The *Hansen* court examined Arizona's historical cases and long-standing recognition that "polygraph tests continue to be 'unreliable and admission of their results risks usurping the role of the jury,' deficiencies that make such evidence inadmissible under *Daubert*." *Id*. The *Hansen* court went on to confirm that polygraph evidence should not be presented at grand jury and disagreed that such evidence is "clearly exculpatory;" "[w]e hold that a species of evidence our courts have deemed both unreliable and persuasive cannot be sufficient to deter a grand jury from finding probable cause, just as the state should not be permitted to use such evidence to establish it. We are not alone in so holding. The majority of states do not permit polygraph evidence to be introduced to grand juries." *Id*. Here, the fact that Plaintiff allegedly passed a polygraph is irrelevant. The *Hansen* court held, as a matter of law, that a polygraph is not "clearly exculpatory" as alleged by Plaintiff. None of his tort claims can be based upon any alleged failures to consider evidence that has been deemed to be unreliable in court. Similarly, while Plaintiff criticizes the fact that he was not afforded the opportunity to present at the grand jury, there is no statutory right to such presentation, particularly where the requested presentation is of polygraph results. *See* A.R.S. § 21-412.

Similarly, references to the DOJ investigation are likewise irrelevant and inflammatory. Plaintiff was arrested, indicted, and terminated more than a year prior to the DOJ's August 5, 2021, announcement of investigation.

## IV.    Immunity for Grand Jury Testimony

Plaintiff asserts that the City of Phoenix and Detective Walker "were able to secure indictments against Sean only by knowingly presenting to the grand jury the false accusations of Ramirez." FAC at ¶ 476. Plaintiff reiterates this claim in his Section 1983 malicious prosecution claim in Count XVII. FAC at ¶ 603. He makes the same claims concerning Lee's grand jury testimony in Counts IV and XVIII. *Id*. at ¶¶ 490, 622. Plaintiff also makes this claim about Gutierrez's grand jury testimony in Counts V and XIX. *Id*. at ¶¶ 504, 641.

The Supreme Court, however, has unambiguously held that witnesses are absolutely immune from liability for statements made to the grand jury. *Rehberg v. Paulk*, 566 U.S. 356, 369 (2012) ("This means that a grand jury witness has absolute immunity from any § 1983 claim based on the witness' testimony.") "This rule may not be circumvented by claiming that a grand jury witness conspired to present false testimony or by using evidence of the witness' testimony to support any other §1983 claim concerning the initiation or maintenance of a prosecution." *Id*. The Arizona



October 18, 2023
Page 8

Court of Appeals recognized a similar rule under state law. *Spooner v. City of Phoenix*, 435 P.3d 462, 465-66, ¶ 6 (Ariz. App. 2018).

*Rehberg* and *Spooner* are fatal not just to Plaintiff's malicious prosecution claims under Counts III, IV, V, XVII, XVIII, and XIX, but also to his civil conspiracy claims under Counts XVI and XXI, because *Rehberg* immunity extends to conspiracy claims as well.

## V.      Malicious Prosecution (State Law—Counts III, IV, V; Federal Law—XVII, XVII, XIX)

Malicious prosecution claims—under both state and federal law- require Plaintiff to prove that the City/Walker/Williams/Sullivan initiated a criminal prosecution without probable cause that terminated in his favor and caused him damages. *See Slade v. City of Phoenix*, 112 Ariz. 298, 300 (1975). Even where an officer is involved in investigating a case, "a malicious prosecution action will not lie where a prosecuting attorney is left to judge the propriety of proceeding with the charge and acts on his own initiative in doing so." *Walsh v. Eberlein*, 114 Ariz. 342, 345 (App. 1976). Federal courts have also recognized that "filing a criminal complaint immunizes investigating officers from damages suffered thereafter because it is presumed that the prosecutor filing the complaint exercised independent judgment." *Newman v. County of Orange*, 457 F.3d 991, 993 (9th Cir. 2006) (cleaned up). Thus, "[t]he plaintiff bears the burden of producing evidence to rebut such presumption." *Id.*; *see also Rehberg*, 566 U.S. at 371–72 ("It would thus be anomalous to permit a police officer who testifies before a grand jury to be sued for maliciously procuring an unjust prosecution when it is the prosecutor, who is shielded by absolute immunity, who is actually responsible for the decision to prosecute.").

As it relates to the federal MP claims, these claims may only be brought under the Fourth Amendment. There is no separate Fifth Amendment violation or Fourteenth Amendment violation pled. It is unnecessary to plead the Fifth and Fourteenth Amendments as a basis of applicability for local government action.  In addition, Plaintiff may not assert a Section 1983 claim for malicious prosecution unless there is not an adequate remedy within the state system, or he asserts that the malicious prosecution was designed to deprive the plaintiff of a constitutional right. *See Brez v. Kelman*, 773 F.2d 1026, 1031 (9th Cir. 1985).  Neither of these apply here and the MP claim under federal law should be dismissed on this basis alone.

Here, the City/Walker/Williams/Sullivan were not prosecutors and probable cause is established by the indictment. Plaintiff may not base this claim on the presentation of testimony at the grand jury, or trial, nor on the failure to present unreliable polygraph evidence at the grand jury (as discussed above).

## VI.      Abuse of Process (Counts VI, VII, VIII).

To prove an abuse of process claim, Plaintiff must prove a misuse of a "judicially sanctioned" process.  *Crackel v. Allstate Ins. Co.*, 208 Ariz. 252 (Ariz. Ct. App. 2004).  Additionally, some



October 18, 2023
Page 9

courts have gone even further and required that such a claim be premised on conduct that occurs during a judicial process that has already been initiated. *See Fappani v. Bratton*, 243 Ariz. 306 (Ariz. Ct. App. 2017) (claim requires that the defendant used a judicial process during civil litigation or criminal prosecution). This tort requires that misuse of the process is "done under the authority of the Court." *See Udd v. City of Phoenix*, 2018 U.S. Dist LEXIS 215872 (D.Ariz. 2018).

In addition, Plaintiff must establish (1) primary motive and (2) improper purpose.  *Pataky v. City of Phoenix*, 2009 U.S. Dist. LEXIS 114037 (D.Ariz. 2009).  There can be no abuse of process claim when the defendant uses the process for its authorized or intended purpose, "even though with bad intentions, or if there is an incidental motive of spite. Or an ulterior purpose to benefit the defendant. Thus, the entirely justified prosecution of another on a criminal charge…does not become abuse of process merely because the instigator dislikes the accused and enjoys doing him harm." *Id*. at * 18-19.  For improper purpose, the Plaintiff must show that "in using the court process, the defendant took an action that could not logically be explained without reference to the defendant's improper motives." *Crackel*, 92 P.3d at 889.

In *Pataky*, the plaintiff alleged that the Defendants instigated an investigation and search warrant in retaliation for his First Amendment critical blog postings and in retaliation for his litigation against officers in a separate matter.  The Court held that these allegations failed to satisfy the primary motive requirement as he "failed to allege more than mere speculation to support his assertion that Harris or the City used court processes with an improper intent, and that retaliation was not merely an incidental motivation." *Id*. The Court also noted "allegations of retaliation do not constitute an improper purpose," particularly if supported by probable cause.  *See also Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (citing *Twombly*, 550 U.S. at 555) (labels and conclusions do not meet the requirements of Rule 8).

In *Udd*, the plaintiff made a claim for abuse of process  after he was investigated for using a third-party's parking pass, categorized as a suspect in the incident report, referred to the City Prosecutor's Office, and then the charges were referred to a different agency.  *Id.*  In granting the Motion to Dismiss, the Court held that none of the acts alleged were "done under the authority of the court." In reaching this holding, the Court also cited *Fappani*, 407 P.3 at 83, for the proposition that "[a] prosecutor has discretion to prosecute such cases as he or she deems appropriate…Demanding that the county attorney prosecute a criminal violation without more, does not implicate judicial process."

In *Fappani,* the Court addressed a dispute between two neighbors, which involved one of the neighbors repeatedly engaging in a "long history of hostility and animosity" culminating in multiple calls to the Sheriff, demands to the County Attorney to prosecute noise violations, and citations that were ultimately part of a bench trial with a not guilty finding. 243 Ariz. at 308-9. The Court upheld a ruling dismissing an abuse of process claim on a 12(b)(6) Motion, finding that there was no judicial process involved.  The Court made the following findings that are also applicable to this case: (1) pre-prosecution statements to law enforcement officers have absolute immunity—both for defamation claims and for abuse of process; (2) "contacting law enforcement to complain



October 18, 2023
Page 10

about a neighbor's conduct is not use of a judicial process;" (3) "the mere report to police of possible criminal activity does not constitute legal process;" (4) a prosecutor "has discretion to prosecute such cases as he or she deems appropriate; thus, whether a case is prosecuted is not controlled by the victim or anyone else"; (5) demonstrating improper purposes requires a heightened showing of a form of coercion or extortion and that this could not be met where the plaintiff, as a property owner, wished to preserve his or her property value by trying to prevent unlawful practices on adjacent property. *Id.*

Here, Plaintiffs alleges the City, Williams, and Detective Walker engaged in abuse of process because they were "motivated by the desire to create the appearance that they were rooting out 'bad cops' without regard to the credibility of the Accusers. They were also motivated to justify COP's payment of hundreds of thousands of dollars to Lee and Gutierrez." FAC at ¶¶ 514, 526. These allegations are entirely conclusory, do not involve judicial process, and disregard the timeline of events in this case—Plaintiff was arrested and criminally charged more than a year prior to the settlements. After-the-fact settlements can hardly be the motivation for prior arrests. Moreover, settling litigation is not an improper purpose, nor is the settlement itself a judicial process.

Under Federal Rule of Civil Procedure 8, a court may not accept "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). Plaintiff failed to identify facts that established either the City or Detective Walker were motivated to arrest Plaintiff by a desire to root out "bad cops." Plaintiff's bald assertion that they were is not enough. *Moss v. United States Secret Service*, 572 F.3d 962, 970 (9th Cir. 2009) ("The bald allegations of impermissible motive on the Agents' part, standing alone, is conclusory and is therefore not entitled to an assumption of truth.")

Plaintiff also asserts additional after-the-fact irrelevant information that is unrelated to any judicial process—that the City and Detective Walker "were all aware of the USDOJ investigation and wanted to demonstrate to the USDOJ that they were taking action to root out 'bad cops." To that end, Sean's career was sacrificed." FAC at ¶ 270. Plaintiff also alleges "[u]pon information and belief, the USDOJ investigations heavily influenced both the internal investigation and the prosecution of Sean." *Id.* at ¶ 271. But the press release Plaintiff incorporates into the First Amended Complaint is, by Plaintiff's admission, dated August 5, 2021. *Id.* at ¶ 268. This is more than a year after Plaintiff's March 9, 2020 and July 24, 2020 arrests and his July 27, 2020 termination. The USDOJ investigation therefore could not possibly have had any impact on the decision to arrest Plaintiff. The DOJ investigation does not move Plaintiff's claim of motivated activity from "conceivable to plausible" such that Plaintiff may simply rely on "information and belief" to support his allegations. *Park v. Thompson*, 851 F.3d 910, 928-29 (9th Cir. 2017) (civil conspiracy claim plausible on information and belief where plaintiff adequately pled parallel facts indicating collusion between a witness and the district attorney's office).

Plaintiff has filed to identify any involved judicial process and any heightened motive similar to coercion or extorsion. Plaintiff does not explain how the City's settlement adversely impacted his



October 18, 2023
Page 11

criminal proceedings. Indeed, settlement ensured that his deposition was not taken during the pending criminal case. Testimony at the grand jury and/or trial cannot be utilized as the basis for this claim as it is subject to immunity pursuant to *Rehburg*.

## VII.     Intentional Infliction of Emotional Distress (Count XIV)

Plaintiff's allegations fail to meet the elements of IIED. Under Arizona law, there are three elements to a claim for IIED: (1) "the conduct by the defendant must be 'extreme' and 'outrageous'"; (2) "the defendant must either intend to cause emotional distress or recklessly disregard the near certainty that such distress will result from his conduct"; and (3) "severe emotional distress must indeed occur as a result of defendant's conduct." *Udd v. City of Phoenix*, 2018 U.S. Dist LEXIS 215872 (D.Ariz. 2018). "[C]onduct necessary to sustain an intentional infliction claim falls at the very extreme edge of the spectrum of possible conduct." It 'must completely violate human dignity. The conduct must strike to the very core of one's being, threatening to shatter the frame upon which one's emotional fabric is hung.'" *Id*. In *Udd*, the court found that "[r]easonable persons could not find that investigating and recommending prosecution of individuals, where there is at least a modicum of evidence suggesting they have violated internal policy or law, constitutes conduct that "completely violate[s] human dignity" and "strike[s] to the very core of one's being, threatening to shatter the frame upon which one's emotional fabric is hung.'" The same reasoning holds true in this case. Detective Walker's probable cause statement was fair and balanced.  He could not include information unknown to him at the time—such as claimed changes in the testimony at trial (that would not happen until years later).  Nor is the PC statement the appropriate place to outline purported character flaws of the complaining parties. Credibility determinations are to be made by a jury.

## VIII.    *Monell*- Malicious Prosecution (Count XX).

Plaintiff's *Monell* claim against the City is deficient for several reasons. First, "liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). Plaintiff failed to plead practices of sufficient duration, frequency, and consistency to constitute a *Monell* claim.

First, Plaintiff refers extensively to unproven allegations that Phoenix Police Chief Jeri Williams "participated in a scheme to invent charges against police protestors in 2021." FAC at ¶ 416. However, these claims postdate Plaintiff's March and July 2020 arrests. Plaintiff does not allege that he was a protester, or engaged in anti-law enforcement speech, or that he was targeted because of his race and/or speech. This pending litigation (the Acton/Ratnam case) bears no relationship to the claims that he asserts. Because Plaintiff must prove the alleged policy, practice, or custom was "a moving force behind a violation of constitutional rights," *Doughtery v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011), acts that postdate the events in question necessary cannot establish either



October 18, 2023
Page 12

(1) the existence of a policy at the time, or (2) that the policy was the "moving force" behind the alleged constitutional violation.

Second, Plaintiff suggests the *Anderson v. Armour* case further shows that the City had a policy of "find[ing] scapegoats to offer to the public to avoid public scrutiny." FAC at ¶ 423. Yet, as Plaintiff acknowledges, the City did not terminate Armour despite a civil lawsuit filed against him. *Id.* at ¶ 425. This alone defeats the notion that the City had a policy of offering up officers as scapegoats to the general public; in fact, the City defended that claim at trial and prevailed. *Anderson v. Armour*, 2021 U.S. App. LEXIS 37155 (9th Cir. Dec. 16, 2021). Far from establishing a pattern of practice of "offering up scapegoats," the *Armour* case suggests the opposite.

Third, the two claimed predicate examples Plaintiff points to for his policy and practice claim are so factually dissimilar that they cannot establish the existence of a policy or custom. *See Hernandez v. City of Napa*, 781 F. Supp. 2d 975, 1002 (N.D. Cal. 2011) (noting "two unrelated, isolated citizen's complaints relating to off-duty officers (both factually very dissimilar from the circumstances in this case) are insufficient to establish the existence of a municipal policy or custom that led to Plaintiff's arrest.")

In essence, Plaintiff's *Monell* claim amounts to an assertion that the City has a policy of not using inadmissible 404(b) evidence and an accuser's character to pre-judge their assertions of sexual abuse. This is not an actionable *Monell* claim. Under Plaintiff's theory, he would have detectives making credibility determinations based upon the accuser's character, where the rules of evidence sharply curtail what is admissible to rebut sexual assault claims. *Cf. Doe v. Gwinnet County Pub. Schs.*, 2019 U.S. Dist. LEXIS 238339 (N.D.Ga. 2019) (finding sufficient allegations of violation of equal protection rights and failure to train where officers failed to address reports of sexual assault and engaged in victim blaming questions and interrogation); *O'Shea v. Agustana Coll.*, 593 F.Supp. 3d 838 (C.D.Ill. 2022) (finding that a plaintiff stated a claim for retaliation based upon her report of sexual harassment where the investigator sought out humiliating information about her past and attempted to discredit her character, noting that this would dissuade a victim from bringing a complaint in the first place).

## IX.    Civil Conspiracy- 1985 (Count XXI)

Plaintiff makes bald and conclusory allegations of conspiracy, which are insufficient to show a meeting of the minds and invidious discrimination based upon race. To state a claim for civil conspiracy, Plaintiffs must prove: (1) the existence of a conspiracy, (2) a purpose of depriving a person or class of persons equal protection of the laws, and (3) an act in furtherance of the alleged conspiracy. *Scott v. Ross*, 140 F.3d 1275, 1284 (9th Cir. 1998). A conspiracy under § 1985(3) must involve racial or otherwise class-based discriminatory animus. *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 267-8 (1993). A conspiracy cannot be based upon conduct for which any form of immunity applies, including testimonial immunity (section D above) and prosecutorial immunity. *Caldeira v. Cty. of Kauai*, 866 F.2d 1175, 1182 (9th Cir. 1989) ("The absence of a section 1983 deprivation of rights precludes a section 1985 conspiracy claim predicated on the



October 18, 2023
Page 13

same allegations."); *Medrano v. Acosta*, 2021 U.S. Dist. LEXIS 221724 (C.D.Cal. 2021) (collecting cases holding that if immunity applies plaintiff is barred from pursuing a § 1985 claim). In addition, employees of the Phoenix Police Department cannot "conspire" with each other. *Donahoe v. Arpaio*, 869 F. Supp. 2d 1020, 1074-75 (D. Ariz. 2012); *Milke v. City of Phoenix*, 2016 U.S. Dist. LEXIS 171649 at *40-41 (D. Ariz. Jan. 8, 2016); *Truta v. Las Vegas Metro. Police Dep't*, No. 11-CV-1614 JCM (GWF), 2014 U.S. Dist. LEXIS 66922 at *12-15 (D. Nev. May 15, 2014).

Plaintiff does not identify any facts establishing a meeting of the minds to pursue an unconstitutional purpose **based upon race**. *Bennett v. Cty. of Shasta*, 2016 U.S. Dist. LEXIS 91439, at *9 (E.D. Cal. July 13, 2016) ("Membership in a 'class of one' is plainly insufficient to entitle Plaintiff to relief under § 198[5](3).").

## X.     Defamation (Count XXII)

Plaintiff's First Amended Complaint fails to identify the alleged defamatory statements made by the City and/or its employees.  Plaintiff does not identify when these statements were made, in what context, or what statements he specifically attributes to the City. Specificity matters, because an entity receives absolute immunity for statements made during judicial proceedings. *Green Acres Trust v. London*, 688 P.2d 617, 621 (1984) ("In various settings, Arizona courts have applied the absolute privilege to defame in connection with judicial proceedings.")[1] If the supposedly defamatory statements were made during Plaintiff's criminal trials or before the grand jury, the City is absolutely immune from liability for those statements. Similarly, if the defamatory statements were made in the context of the civil case, those statements are likewise privileged.

Count XXII does not identify any specific defamatory statements, instead generally alleging that Defendants said "he had committed sexual assault." FAC at ¶ 674. We have identified no statements Plaintiff attributed to a City official or the City itself. A party is entitled to a more definite statement when the pleading is "so vague or ambiguous that the opposing party cannot respond, even with a simple denial, in good faith or without prejudice to himself." *Cellars v. Pacific Coast Packaging, Inc.*, 189 F.R.D. 575, 578 (N.D. Cal. 1999). The City cannot realistically defend itself from Plaintiff's defamation allegations without knowing what it supposedly said that constituted defamation and when the City or its agents supposedly made the alleged defamatory statements, which very likely are also time barred.

In addition, individuals who report information to police are immune from liability as set forth in *Ledvina*—even if what they report to the police is false. Thus, an officer's recounting of an accuser's report to the police is insulated from liability. *Ledvina v. Cerasani*, 146 P.3d 70, 75 (Ariz.

---

[1] Additionally, we note that the nongovernmental defendants retain absolute immunity for statements they made to law enforcement officers when reporting their allegations. *Ledvina v. Cerasani*, 146 P.3d 70, 75-76, ¶¶ 15-16 (Ariz. App. 2006) (holding "Mr. Cerasani was entitled to an absolute privilege respecting his report to the police.").



October 18, 2023
Page 14

App. 2006). "When statements are absolutely privileged, the speaker is immune from civil liability and courts do not inquire into the declarant's motives or whether the statements were made in good faith." *Id.* at 72.

**XI.    Miscellaneous**

Although Plaintiff refers to Allison Steinberger as an agent of the Phoenix Police Department (FAC at ¶ 19), Steinberger makes no further appearances anywhere in the First Amended Complaint. Her continued reference in the First Amended Complaint is gratuitous and unnecessary.

Plaintiff refers repeatedly to statements made to Detective Ratko Aleksis and how Gutierrez's statements to him supposedly differ from statements she made to Detective Walker. (FAC at ¶¶ 225-227, 233-237, 367). But Detective Aleksis worked for the Tempe Police Department at all times relevant to this litigation, and Plaintiff does not allege Detective Walker was somehow aware of these conversations during his investigation. These "facts" are similarly irrelevant.

Should claims be dismissed based upon the arguments raised above, the City may pursue attorney fees based upon A.R.S. § 12-341.01, A.R.S. § 12-349, and/or 28 U.S.C. § 1927.

Very truly yours,

Christina Retts

CR/mm

# EXHIBIT 2



MILLS +
WOODS LAW pllc
LITIGATION • TECHNOLOGY • BUSINESS

CITY CLERK DEPT.

2023 FEB 10 PM 4: 14

February 10, 2023

**VIA PROCESS SERVER AND CERTIFIED MAIL**

City of Phoenix
Risk Management Division
200 W. Washington St. 15th Fl.,
Phoenix, Arizona 85003
Email: mailbox.city.clerk.department@phoenix.gov

City of Phoenix
City Clerk Department
200 W. Washington Street, 15th Floor
Phoenix, Arizona 85003
Email: mailbox.city.clerk.department@phoenix.gov

City of Tempe
City Clerk
City Hall, 31 E. 5th St.,
Tempe, AZ 85281

Chief Michael Sullivan
620 W. Washington St.
Phoenix, Arizona 85003

Former Chief Jeri L. Williams
620 W. Washington St.
Phoenix, Arizona 85003

Lieutenant Lois Weiss
620 W. Washington St.
Phoenix, Arizona 85003

Jeffrey Roseberry
Maricopa County Attorney's Office
225 W Madison St, Phoenix, AZ 85003

Catherine Fu
Maricopa County Attorney's Office
225 W Madison St, Phoenix, AZ 85003

Michael Walker #09051
620 W. Washington St.
Phoenix, Arizona 85003

Sergeant Amy Breitzman
620 W. Washington St.
Phoenix, Arizona 85003

Sergeant Fabian Gonzalez (#07985),
620 W. Washington St.
Phoenix, Arizona 85003

Sergeant Allison Steinberger
620 W. Washington St.
Phoenix, Arizona 85003

Officer Milos Momcilov (#10499)
620 W. Washington St.
Phoenix, Arizona 85003

Tara Zuckerbrow
City Clerk Department
200 W. Washington Street, 15th Floor
Phoenix, Arizona 85003

Ratko Aleksis #22070,
Tempe Police Department
120 E 5th St, Tempe, AZ 85281



**Re:** ___Notice of Claim For Sean Pena___

Pursuant to A.R.S. § 12-821.01, this Notice of Claim ("NOC") is submitted on behalf of Sean Pena ("Pena") to the City of Phoenix, the City of Phoenix Police Department, then-Chief of Police Jeri Williams, current Chief of Police Michael Sullivan, the City of Phoenix and its council members, Detectives, Consultants, and Officers, including:

- Prosecutor Jeffrey Roseberry
- Prosecutor Catherine Fu
- City of Phoenix
- City of Tempe
- Then-Chief of Police, Jeri L. Williams, Phoenix Police Department
- Chief of Police Michael Sullivan, Phoenix Police Department
- Lieutenant Lois Weiss, Phoenix Police Department
- Michael Walker 09051, Phoenix Police Department
- Sergeant Amy Breitzman, Phoenix Police Department
- Sergeant Fabian Gonzalez (#07985), Phoenix Police Department
- Sergeant Allison Steinberger, Phoenix Police Department
- Officer Milos Momcilov (#10499), Phoenix Police Department
- Tara Zuckerbrow
- Ratko Aleksis #22070, Tempe Police Department

(the above listed entities and individuals are collectively, the "Offenders").

This NOC arises out of the conduct of the public entities above as well as individuals acting under the color of law for claims including without limitation wrongful termination, harassment, violations of Pena's Civil Rights under both Arizona law and under the United States Constitution – particularly his Fourth, Fifth, and Fourteenth Amendment rights, false arrest, false imprisonment, defamation, abuse of process, malicious prosecution, negligence, gross negligence, negligent training/hiring/supervision, and for Intentional Infliction of Emotional Distress.

___THIS NOTICE OF CLAIM IS BEING SUBMITTED BASED ON THE INFORMATION MADE AVAILABLE BY THE PHOENIX POLICE DEPARTMENT. THE PHOENIX POLICE DEPARTMENT IS THE SOLE CUSTODIAN OF ALL RECORDS PERTAINING TO POLICIES, PROCEDURES, AND THE MURDEROUS AND NEGLIGENT ACTIONS OF PHOENIX POLICE OFFICERS.___

___THROUGH A PUBLIC RECORDS REQUEST, THE PHOENIX POLICE DEPARTMENT HAS NOT PROVIDED THE FULL NAMES OF ALL POTENTIAL OFFICERS RESPONSIBLE FOR THE ACTS AND OMISSIONS DETAILED HEREIN. THEREFORE, THE CLAIMANTS RESERVE THE RIGHT TO AMEND THEIR NOTICE OF CLAIM OR COMPLAINT IN A COURT OF COMPETENT JURISDICTION BASED ON THE LACK OF INFORMATION CURRENTLY IN THE PHOENIX POLICE DEPARTMENT'S SOLE CUSTODY AND CONTROL BEING WITHHELD BASED ON EQUITABLE LEGAL THEORIES INCLUDING THE DISCOVERY RULE.___



MILLS +
WOODS LAW PLLC
LITIGATION • TECHNOLOGY • BUSINESS

## I.    FACTUAL BASIS DEMONSTRATING LIABILITY

Sean Pena was falsely accused of three sexual assaults while on-duty as a Phoenix Police Officer. The accusers were Cynthia Ramirez ("Ramirez"), Krystoffer Lee ("Lee"), and Lisa Gutierrez ("Gutierrez") (collectively, the "Accusers"). These accusations were demonstrably false and would have been quickly disregarded had the Phoenix Police Department done *any* semblance of an investigation.

Instead, the Offenders ignored exculpatory evidence, pushed the investigation hastily and recklessly, and terminated Pena's employment without probable cause, justification, or otherwise – even under the least stringent standards of review and evidence. Each and every one of the Offenders participated in a civil conspiracy resulting in intentional emotional distress to Pena, causing him to become falsely imprisoned, maliciously prosecuted him, abused Court Process, defamed him, and violated Pena's constitutional rights as well as causing his wrongful termination.

Sean was a decorated Phoenix Police Department Officer assigned – by his choosing – to the toughest beat in Phoenix, the South Mountain Precinct. Sean had worked tirelessly to get fentanyl pills off the street. In his work, he developed relationships with Street Sources. He was highly successful in tracing the origins of fentanyl pills and developing an understanding of criminal distribution structures.

One of the false accusers Sean arrested was Cynthia Ramirez. Little did Sean know that decision would change his life forever. The following is a timeline of events:

- August 26, 2018 – Victim A – Cynthia Ramirez makes allegations.

- August 27, 2018 – SID interviews Ramirez.

- August 28, 2018 – PSB closed inquiry. They could not corroborate Ramirez' statements and allegations.

- August 31, 2018 – SID interviews Ramirez.

- August 31, 2018 – SID interviews Sean Pena.

- CASE CLOSED FOR UNSUBSTANTIATION.

- June 1, 2019 – Victim B – Krystoffer Lee. The News portrayed Sean as a Sexual Abuser and put his mugshot everywhere.

- August 5-6, 2019 – Victim C – Lisa Gutierrez.

- March – November 2019 – Detectives canvas 18 females that Pena had transported. Only four were located. All four gave positive feedback regarding Pena.

- November 20, 2019 – Steinberger was informed of Krystoffer Lee allegations and became concerned that she had "messed up" the investigation into Ramirez' allegations.





**MILLS +
WOODS LAW** PLLC
LITIGATION • TECHNOLOGY • BUSINESS

- November 20, 2019 - Lieutenant Fabian Gonzales assisted in the PSB investigation of Pena. He conducted an interview of Krystoffer Lee.

- November 21, 2019 – Iesha Stanciel interviewed.

- December 2, 2019 – Pena put on home assignment.

- December 3, 2019 – Detective Beverly Jansen and Detective Walker contact Krystoffer Lee at her place of work.

- December 4, 2019 – Interview with Pena and SID Detective Walker re: Lee allegations.

- December 6, 2019 – Antonio Felix told detectives that he could not recall the incident.

- March 9, 2020 – SID investigation submitted to Maricopa County Attorney's Office for felony prosecution.

- March 27, 2020 – SID provided PSB investigators with the results of their investigation.

- April 10, 2020 – Pena received a Notice of Investigation from PSB and was interviewed on the same day.

- April 13, 2020 – PSB conducted interview of Officer Antonio Felix. Felix told investigators he has more recall of the June 1, 2019 events. He told investigators that Lee seemed like she was under the influence of Percocet. He did not remember anything about offers of sexual favors. He remembered that Lee had told Pena she would show him the location where she was getting her drugs and that Pena would transport her to that location.

- June 19, 2020 – Indictment handed up charging Pena with Sexual Assault, a class 2 Felony and two counts of Unlawful Sexual Conduct, class 5 felonies. [these charges were Lee and Ramirez only].

- June 25, 2020 – Notice of Loudermill Hearing.

- July 2, 2020 – Loudermill Hearing.

- July 26, 2020 - Dismissed following Loudermill Hearing.

- July 27, 2020 – Pena terminated by Phoenix Police Department. Signed by Jeri Williams.

- July 30, 2020 – Pena filed appeal.

- August 3, 2020 – Pena added to Brady List.

- August 15, 2022 – Pena acquitted *by jury* of all charges in Superior Court.


480.999.4556 | millsandwoods.com
5055 N. 12th St. STE 101, Phoenix, Arizona 85014





MILLS +
WOODS LAW PLLC
LITIGATION • TECHNOLOGY • BUSINESS

- November 15-17, 2022; December 2, 2022; December 7, 2022 – Civil Service Appeal Hearing.

## II.   CLAIMS MADE BY ACCUSERS

The following are contentions and allegations made by purported "victims" of Sean Pena. The summaries are pulled from the records available at this time. The first "victim," Cynthia Ramirez, reported in August of 2018 that she had been assaulted by Pena earlier that night while he was transporting her to jail after she was arrested. While transporting Ramirez to jail, Pena stopped at a train crossing. Pena got out of the car, opened the door, and pulled Ramirez towards him. He took his penis out of his pants and put it in her mouth.

The second "victim," Krystoffer Lee ("Lee"), was contacted by a check welfare call placed on her after she was seen walking in the street with no shoes. She was found to be extremely intoxicated and when identifying her Pena found that she had a misdemeanor warrant for shoplifting. She was also in possession of drug paraphernalia including burnt tin foil and straws. She admitted to using fentanyl. When questioned by Pena where she was getting her drugs, she voluntarily offered the name of a known drug dealer. She agreed to show the drug house to Pena ECT. Lee then later reported that Pena had sexually assaulted her.

Pena previously went to trial for similar acts with a third "victim," Lisa Gutierrez ("Lisa"). Lisa reported in November 2019 that she had been assaulted by Pena on June 2019. In reality, Lisa had called phoenix police to report a person using drugs on her porch and threatening her with a machete. Later, she reported this to Tempe Detective Ratko Alexis, after she was found to be in possession of a drug dealers' phone. The drug dealer traced their phone to her while she was on the phone with the police and was assaulted with a deadly weapon along with attempted kidnapping but she was able to 'fight them off.'

### A.   KRYSTOFER LEE

According to police reports, Lee told police that Pena sexually assaulted her. During the investigation, Phoenix Police pulled DNA samples. NO DNA / SEMEN WAS FOUND IN POLICE VEHICLE.





Lee's Previous Police Contacts Include:

## POLICE CONTACTS

| | |
|---|---|
| 10/24/2013 2013-1906177- 4520 E Baseline Rd.- 487V: Listed as victim. | Note: Devin McCoy was also listed as victim as the vehicle belonged to both parties. |
| 9/3/2014 2014-1530180- 331 W Grant St. #34- 487: Listed as victim SP listed: Darnell Elbert | Note: ID, Social Security Card, cash taken by Subject that was allowed to stay the night. |
| 2/9/2019 2019-230689- 3427 S 84th Ln.- FI Card: Listed as Suspicious person. | Note: Ms. Lee was employed as a caregiver at a group home and had not reported to work. She left those in her care, unattended. When questioned about where she was by the |
| | administrators, she was not truthful. The administrators wanted the incident documented. |
| 3/8/2019 2019-397611- 1607 W Bethany Home Rd.- FI Card: Listed as Suspicious person. | Note: Ms. Lee was caught shoplifting food items. The items were recovered, and Ms. Lee was trespassed from all Wal-marts. |
| 3/9/2019 2019-403107- 1825 W Bell Rd. -487B: Listed as suspect. | Note: Ms. Lee was cited and released for shoplifting and trespassing. |
| 4/7/2019 2019-586309- 5715 N 19th Ave.- 487B: Listed as suspect. | Note: Ms. Lee was arrested for shoplifting at a Target store. |
| 6/1/2019 2019-929004- 7th Ave/Southern Ave- FI Card: Listed as suspicious person. | Note: At 00:33 Ms. Lee approached a Phoenix Police officer for assistance as she had been kicked out of her residence by her boyfriend, following a verbal argument. Ms. Lee had her 2-year-old son with her at the time. Phoenix Fire responded to transport her son to a friend, at Ms. Lee's request. Ms. Lee was transported to Lark. |
| 6/1/2019 2019-934327- 23rd Ave./St. Anne Ave.- 900 | Note: A call for service was generated for a heavily intoxicated female wandering around. Ms. Lee was contacted and given a courtesy transport to 7th Ave/Romley and then to 11th Ave/Southern. |
| 8/30/2019 2019-1503385- 5715 N 19th Ave.- 487B: Listed as suspect. | Note: Ms. Lee was arrested for shoplifting at a Target store. In addition, she was booked for 2 outstanding warrants. |



**B.** Lisa Gutierrez

Lisa claimed that Pena sexually assaulted her. This was obviously false.

Lisa Gutierrez is an individual with a history of falsehoods and fraud. In 2013, the Arizona Attorney General ("the AG") charged Lisa Gutierrez with Illegally Conducting An Enterprise, Attempted Fraudulent Schemes And Artifices, Computer Tampering, and Forgery. *Grand Jury Indictment, CR2013-002470-073.* The facts underlying the charges showed that Ms. Gutierrez "intentionally presented known forged checks and documents to Walmart, Bashas/Food City and VComm with the intent to defraud those companies for money." *Probable Cause Statement, CR2013-002470-073.* Overall, the scheme resulted in a "total known financial loss" of over $133,000.00. *Id.* The charges against Ms. Gutierrez were dismissed after Ms. Gutierrez completed 50 hours of community service pursuant to a deferred prosecution agreement with the AG. *Pena's Consent To Participate In Deferred Prosecution Program And Acknowledgement, CR2013-002470-073.*

**C.** Cynthia Ramirez

Ramirez claimed that Pena sexually assaulted her. This was obviously false.

### 1.    DNA RESULTS EXCLUDE OFFICER PENA

LAB RESULTS:

THE LAB RESULTS FOUND A MIXED DNA PROFILE, THE MAJOR CONTRIBUTOR OF WHICH WAS GERMAN MARTINEZ. OFFICER PENA'S DNA PROFILE DID NOT MATCH THE PARTIAL UNKNOWN PROFILE.  OFFICER PENA WAS EXCLUDED BY THE LAB AS THE CONTRIBUTOR OF THE UNKNOWN DNA PROFILE.

CONCLUSION:

THERE IS INSUFFICIENT EVIDENCE TO CORROBORATE THE ALLEGATION OF SEXUAL ASSAULT FOR THE FOLLOWING REASONS: THERE ARE NO KNOWN WITNESSES TO THE ASSAULT, NO VIDEO SURVEILLANCE CAPTURED THE ALLEGED INCIDENT, OFFICER PENA'S DNA PROFILE WAS EXCLUDED FROM THE EVIDENCE, AND OFFICER PENA DENIED THE ALLEGATIONS.  THIS INVESTIGATION WILL BE CLOSED.

### 2.    RAMIREZ' PRIOR POLICE CONTACTS:

Ramirez had claimed sexual assault by various perpetrators prior to falsely accusing Pena:



## MILLS + WOODS LAW PLLC
LITIGATION • TECHNOLOGY • BUSINESS

## POLICE CONTACTS

| | |
|---|---|
| 11/12/2010 2010-1636672-2238 W Sequoia Dr.- 601J: Listed as missing. | Note: Ms. Ramirez left the group home to go to school and did not return. |
| 11/26/2015 2015-2273006-1624 N Black Canyon Ac. 261: Listed as victim | Note: Ms. Ramirez disclosed to nursing staff that she was the victim of a sexual assault. However, she refused to speak when officers arrived. |
| 7/28/2017 2017-1313883- 3137 W Buckeye Rd.- FI Card: Listed as IL. | Note: The mother of a 17-year-old male called to report her son's behavior and asked officers to search the bedroom they shared. Officers were told that the juvenile had been across the way with a neighbor. When they went to knock, Ms. Ramirez answered the door and advised that her boyfriend was not home. |
| 8/11/2017 2017-1401410- 3137 W Buckeye Rd. #134B- 245: Listed as Victim. | Note: An unknown male broke through the door and pulled Ms. Ramirez out of the shower and shook her before assaulting a juvenile male that was also present in the trailer. A 2nd male was also present but slept through the incident. |
| 10/14/17 2017-1806699 3644 W Latham St. -487V: Listed as suspect. | Note: Ms. Ramirez was stopped and arrested for driving a stolen vehicle. |
| 4/4/2018 2018-590369- 3124 E Washington St.- 237D: Listed as suspect. | Note: Ms. Ramirez was arrested for possession and an outstanding felony warrant. |
| 4/6/2018 2018-603522- 2836 E Van Buren St.- FI Card: Listed as RP. | Note: Ms. Ramirez reported that she may have been sexually assaulted by a transient male she met on Facebook. She could not recall whether she gave consent and declined to prosecute. |
| 8/26/2018 2018-1511569-Prop Supp. | Note: Supplement generated to document Ms. Ramirez's impounded properly. |
| 1/22/2019 2019-126628- 1623 N 59th Ave.- 487: Listed as victim. | Note: Ms. Ramirez is listed as a victim due to her identification documents being found on a male subject during an arrest. It is unknown if Ms. Ramirez was contacted regarding the incident. |



MILLS +
WOODS LAW PLLC
LITIGATION • TECHNOLOGY • BUSINESS

**III.     INDIVIDUAL OFFENDERS' ACTIONS**

**A.     DETECTIVE MICHAEL WALKER INVESTIGATION**

Walker claimed his DNA swabs were preserved (they were not). Detective Walker testified that Ramirez described Pena's penis as uncircumcised but could not define what circumcision meant. Walker found many inconsistencies, failed to preserve evidence, and just closed his investigation in an attempt to cover-up the fact he had not performed a quality investigation.

**1.     DNA Swabs obtained:**

ON 9/7/18 AT 1310 HOURS, I RETRIEVED THE BUCCAL SWABS IMPOUNDED UNDER 51000526302 AND REIMPOUNDED THEM UNDER 51000529613. THE SWABS WERE IMPOUNDED INCORRECTLY UNDER THE FIRST INVOICE.

ON 8/26/18 AT APPROXIMATELY 2245 HOURS, I OBTAINED CIRCUMORAL SWABS (INVOICE 51000523439) FROM CYNTHIA RAMIREZ TO ANALYZE FOR POSSIBLE BIOLOGICAL EVIDENCE RELATED TO THE SEXUAL ASSAULT ALLEGATION. I ALSO OBTAINED BUCCAL SWABS FROM RAMIREZ FOR PURPOSES OF A VICTIM PROFILE STANDARD (INVOICE 51000523441). THIS EVIDENCE WAS OBTAINED AS THIS TIME DUE TO THE UNAVAILABILITY OF A FORENSIC NURSE TO RESPOND FOR A SEXUAL ASSAULT EXAMINATION.

ON 8/27/18 AT APPROXIMATELY 1600 HOURS, CYNTHIA RAMIREZ SUBMITTED TO A SEXUAL ASSAULT EXAMINATION BY A FORENSIC NURSE WITH HONORHEALTH. THE EXAM TOOK PLACE AT THE ESTRELLA JAIL (2939 W. DURANGO ST.). THE EVIDENCE FROM THAT EXAMINATION WAS IMPOUNDED BY DET. THERIAULT, INVOICE 51000524497.

**2.     DNA RESULTS**

It should be noted that Detective Walker testified that he pulled his own swabs for DNA purposes from Ramirez and Pena on the night of the accusation by Ramirez, but that his swabs were never analyzed. The DNA tech threw them out. The only DNA tested was from a Nurse's swab. During the investigation and subsequent trial, the Offenders acted like Walker's DNA evidence was preserved – when it had not been. Regardless, the following are the results of DNA tests performed by the Nurse. They are negative. In fact, Pena was excluded as major contributor and the results could only be ascribed to a male profile. It is also of note that Ramirez had sexual relations with her boyfriend that same night.

A possible mixed YSTR DNA profile was obtained from the non-sperm fraction of the circumoral swabs (51000524497). Assuming a single haplotype, the major component of this possible mixed DNA profile matches the YSTR DNA profile from German Trujillo Martinez (51000524479). Therefore, neither German Trujillo Martinez nor any of his paternally related male relatives, barring mutations, can be excluded as the contributor of this DNA. This major profile has been observed in the US YSTR haplotype database and is not expected to occur more frequently than 1 in at least 520 individuals. Due to limited genetic information, no conclusions were drawn as to the source of the possible additional allelic activity.

Partial, mixed YSTR DNA results were obtained from the non-sperm fraction of the circumoral swabs (51000523439). Due to the limited genetic information and complexity of these results, no conclusions were drawn.

Sean Pena (51000529613) is excluded as the major contributor to the possible mixed YSTR DNA profile obtained from the non-sperm fraction of the circumoral swabs (51000524497).



**MILLS +
WOODS LAW** PLLC
LITIGATION • TECHNOLOGY • BUSINESS

Despite all this, Detective Walker continued to push that charges should be filed against Pena. Thus, he caused intentional emotional distress to Pena, caused him to become falsely imprisoned, maliciously prosecuted him, abused Court Process, defamed him, and violated Pena's constitutional rights as well as causing his wrongful termination.

**B.**     Then-Chief of Police, Jeri L. Williams

By refusing to consider the actual evidence, and instead relying on the totality of the circumstantial evidence, and rendering her decision to terminate Pena, Williams caused intentional emotional distress to Pena, caused him to become falsely imprisoned, maliciously prosecuted him, abused Court Process, defamed him, and violated Pena's constitutional rights as well as causing his wrongful termination.

**C.**     Chief of Police Michael Sullivan

By refusing to overturn Williams' previous decision – despite mountains of evidence proving Pena's innocence, Sullivan caused intentional emotional distress to Pena, caused intentional emotional distress to Pena, caused him to become falsely imprisoned, maliciously prosecuted him, abused Court Process, defamed him, and violated Pena's constitutional rights as well as causing his wrongful termination.

**D.**     Lieutenant Lois Weiss

By failing to properly investigate the claims presented to her as the PSB lead investigator, and by further providing recommendations to the City and other Offenders that Pena had likely committed the assaults that he was falsely accused of, Weiss caused intentional emotional distress to Pena, caused intentional emotional distress to Pena, caused him to become falsely imprisoned, maliciously prosecuted him, abused Court Process, defamed him, and violated Pena's constitutional rights as well as causing his wrongful termination.

**E.**     Sergeant Fabian Gonzalez (#07985)

During the Loudermill hearing, various officers testified against Sean Pena.

LT. Gonzales testified that there were some discrepancies as to Ms. Lee's allegations and what Stanciel had stated Ms. Lee told her about the incident. Gonzales testified that he felt that made them more credible, because it showed him they had not rehearsed their stories. If their stories had lined up it would be "too much of a coincidence." PSB concluded that Pena violated Operations Orders 1.1.2.C(1), 1.1.2C(3), 3.13.6.B(5), 3.13.6.B(5), 3.13.5.B(3), 3.18 (Addendum A) 3.D(2), and 3.18 (Addendum A) 4(C). Gonzales had other evidence he could have considered – such as the lack of physical proof and no DNA confirmation. Yet, he moved forward recommending charges be pressed. Thus, he caused intentional emotional distress to Pena, caused him to become falsely imprisoned, maliciously prosecuted him, abused Court Process, defamed him, and violated Pena's constitutional rights as well as causing his wrongful termination.

**F.**     Sergeant Allison Steinberger

Sergeant Allison Steinberger testified that she was a PSB investigator assigned to conduct the investigation of Sean Pena. She was assigned the case in August 2018 after Ramirez' complaint. The investigation was





MILLS +
WOODS LAW PLLC
LITIGATION • TECHNOLOGY • BUSINESS

paused while SID conducted its investigation. She testified that PSB relied on SID documents and findings and she allowed Pena to be charged with internal violations which led to criminal charges despite the lack of any physical evidence. Thus, she caused intentional emotional distress to Pena, caused him to become falsely imprisoned, maliciously prosecuted him, abused Court Process, defamed him, and violated Pena's constitutional rights as well as causing his wrongful termination.

**G.**    Officer Milos Momcilov (#10499)

Officer Milos Momcilov intentionally lied about his relationship status with Sean Pena. Pena and Momcilov were friends – Pena even helped him move to his new home and had dinners with their respective families. He lied to Detective Walker about how well he knew Pena. His actions and omissions caused intentional emotional distress to Pena, caused him to become falsely imprisoned, maliciously prosecuted him, abused Court Process, defamed him, and violated Pena's constitutional rights as well as causing his wrongful termination.

**H.**    Tara Zuckerbrow

DNA expert intentionally misrepresented the DNA results to the jury in Pena's criminal trial. Thus, she caused intentional emotional distress to Pena, caused him to become falsely imprisoned, maliciously prosecuted him, abused Court Process, defamed him, and violated Pena's constitutional rights as well as causing his wrongful termination.

**I.**    Jeffrey Roseberry and Catherine Fu

Roseberry and Fu were the prosecutors assigned to Pena's case. They intentionally withheld potentially exculpatory information from Pena and his attorneys. They had no basis other than weak circumstantial evidence to even pursue the claims against Pena. Thus, they caused him to become falsely imprisoned, maliciously prosecuted him, abused Court Process, defamed him, and violated Pena's constitutional rights as well as causing his wrongful termination.

**J.**    Ratko Aleksis

Ratko is a Tempe Police Detective who intentionally disregarded Lisa Gutierrez' involvement with the theft of a drug dealer's cell phone. This was then hid from investigators because upon information and belief he wanted Lisa to seem more credible – to Pena's detriment. By his acts and omissions he caused intentional emotional distress to Pena, caused him to become falsely imprisoned, maliciously prosecuted him, abused Court Process, defamed him, and violated Pena's constitutional rights as well as causing his wrongful termination.

## IV.    FULL ACQUITTAL OF ALL CHARGES IN LESS THAN 30 MINUTES

The jury found that Ramirez, Lee, and Gutierrez were not credible. During the trial, too many inconsistencies came to light during testimony. During his criminal case, Pena's attorneys discovered connections between the accusers and Iesha Stanciel. Iesha Stanciel is local Civil Rights' "activist" Jarret Maupin's girlfriend. It was also discovered that some of the accusers paid Mr. Maupin a percentage of the monies received by them from the City of Phoenix.





**MILLS +**
**WOODS LAW** PLLC
LITIGATION • TECHNOLOGY • BUSINESS

A simple look into Stanciel and her connections with the accusers and Maupin would have led to the discovery that there may have been ulterior motivation by the accusers – that is, that they were told they could obtain a monetary settlement from the City.

Furthermore, there were many missteps taken by the investigation team and the prosecution team. For instance, Lee and the Prosecutors had hid text messages from Lee to another friend colloquially named "Topher." In those text messages, Topher basically told Lee that he would do anything for her because he was her "slave."

This created a major issue during trial on August 2, 2022. Under cross examination Lee stated that her friend "Christopher" was present at her home after the sexual assault when she told her boyfriend. She had testified she did not remember Christopher being at her house until recently when he reminded her he was there. Lee also testified for the first time that Christopher walked through the dirt where the assault took place. These facts had never been testified to prior to this trial or given in any investigative interview of Lee.

Lee testified that she told the prosecutor about remembering Christopher being at her home. The prosecutor avowed that Lee told the prosecutor that she told a friend who believed her. The prosecutor did not inquire further, nor did he disclose this to defense. Lee did not tell the prosecutor about Christopher walking though the dirt lot.

It was also discovered that Gutierrez had a long history of fraud.

On August 15, 2022, the Jury determined what should have been been determined by the Offenders on day one – that Pena was  NOT GUILTY for all counts against him.

## V.    CONCLUSION

Had the Offenders done any real homework at the time, they would have known that the accusers either had a history of making false accusations or had convictions for fraud. Had the Offenders looked into the relationship with Jarrett Maupin and Iesha Stanciel, they would have been able to connect the dots to discover that the accusers were working together to extract a settlement from the City.

They did in fact settle with the City. Under information and believe, the City settled with each accuser for over four hundred thousand dollars ($400,000) *each.* The City was willing to pay upwards of over a million dollars to false accusers. The City then terminated Sean Pena's employment and upheld that termination as of February 9, 2023 – despite the mountains of evidence showing Pena did not commit these acts. Sean has now lost out on his salary, his career, and his retirement benefits.

The Offenders had one thing on their minds: National public perception of police departments had reached a low. Therefore, they did not properly investigate the claims against Pena, which led directly to the sham kangaroo court that Pena faced in trying to keep his employment.





MILLS +
WOODS LAW PLLC
LITIGATION • TECHNOLOGY • BUSINESS

## VI.    SPECIFIC AMOUNT FOR WHICH THIS CLAIM CAN BE SETTLED

Pena is fully prepared to engage in litigation to resolve his claims as demonstrated herein, in which case he stands to be awarded, with the inclusion of punitive damages, millions of dollars in damages. However, at this time he is willing to settle any and all claims he has or may have against the offenders in return for a payment of $1,750,000.    Please contact me at the telephone number and address below or via email at swoods@millsandwoods.com to discuss this matter further.

Regards,

MILLS + WOODS LAW

Sean A. Woods

SAW:bed

# EXHIBIT 3

## <u>Chart of Claims and Legal Defenses/Deficiencies</u>

| Count | Notice of Claim Deficiency | Barred by One Year Statute of Limitations | Probable Cause Defense | Immunity Defense | Other Defenses |
|---|---|---|---|---|---|
| Count I- Wrongful Termination/Breach of Employment Agreement | Yes- untimely; no sum certain specific to COP Defendants; no facts related to employment damages | Yes | | | *Defendants are not addressing the merits at this time |
| Count II- Breach of the Covenant of Good Faith and Fair Dealing | Yes—untimely; no sum certain specific to COP Defendants; no facts related to employment damages | Yes | | | *Defendants are not addressing the merits at this time |
| Count III- Malicious Prosecution—Ramirez | Yes—no sum certain specific to COP Defendants | No. | Yes | Yes | COP Defendants did not prosecute; No malice. |
| Count IV- Malicious Prosecution-Lee | Yes- untimely and no sum certain specific to COP Defendants | Yes | Yes | Yes | COP Defendants did not prosecute; No malice. |
| Count V- Malicious Prosecution-Gutierrez | Yes- No sum certain specific to COP Defendants | No | Yes | Yes | COP Defendants did not prosecute; No malice. |
| Count VI- Abuse of Process-Ramirez | Yes- untimely and no sum certain specific to COP Defendants | Yes | Yes (defeats ulterior purpose) | Yes | No judicial process for certain allegations; no coercion or extortion; |
| Count VII- Abuse of Process-Lee | Yes- untimely and no sum certain specific to COP Defendants | Yes | Yes (defeats ulterior purpose) | Yes | No judicial process for certain allegations; no coercion or extorsion |
| Count VIII- Abuse of | Yes- untimely and no sum | Yes | Yes (defeats | Yes | No judicial process for |

| | | | | | |
|---|---|---|---|---|---|
| Process- Gutierrez | certain specific to COP Defendants | | ulterior purpose) | | certain allegations; no coercion or extortion |
| Count IX- Abuse of Process- Lee and Gutierrez | Yes- untimely and no sum certain specific to COP Defendants | Yes | Yes (defeats ulterior purpose) | Yes | No judicial process for certain allegations; no coercion or extortion |
| Count XI- False Arrest and Imprisonment 3/09/2020 | Yes- untimely and no sum certain specific to COP Defendants | Yes | Yes | Yes | Damages for claim terminates when held over pursuant to process (i.e. Grand Jury) |
| Count XII- False arrest and Imprisonment 7/24/20 | Yes- untimely and no sum certain specific to COP Defendants | Yes | Yes | Yes | Damages for claim terminates when held over pursuant to process (i.e. Grand Jury) |
| Count XIII- Instigating or Participating in False Arrest And Imprisonment | Yes- untimely and no sum certain specific to COP Defendants | Yes | Yes | Yes | Damages for claim terminates when held over pursuant to process (i.e. Grand Jury) |
| Count XIV- IIED | Yes- untimely and no sum certain specific to Defendants | Yes | Yes | Yes | No extreme and outrageous conduct beyond the bounds of decency. |
| Count XV- Aiding and Abetting | Yes- untimely and no sum certain specific to Defendants | Yes | Yes | Yes | Fails where the underlying claims fail |
| Count XVI- Conspiracy | Yes-untimely and no sum certain specific to Defendants | Yes | Yes | Yes | Is not a stand-alone tort; intracorporate conspiracy doctrine bars |

| | | | | | claim for conduct within the entity. |
|---|---|---|---|---|---|
| Count XVII- Malicious Prosecution- 42 U.S.C. § 1983- Ramirez | No | No | Yes | Yes | Federal claim unavailable when there is an adequate remedy at state law; COP Defendants did not prosecute; No malice. |
| Count XVII- Malicious Prosecution- 42 U.S.C. § 1983- Lee | No | No | Yes | Yes | Federal claim unavailable when there is an adequate remedy at state law; COP Defendants did not prosecute; No malice. |
| Count XIX- Malicious Prosecution- 42 U.S.C. § 1983- Gutierrez | No | No | Yes | Yes | Federal claim unavailable when there is an adequate remedy at state law; COP Defendants did not prosecute; No malice. |
| Count XX- Malicious Prosecution- Gutierrez- *Monell* | No | No | Yes. | Yes | Federal claim unavailable when there is an adequate remedy at state law; COP Defendants did not prosecute; No malice; Fails to State a Claim |
| Count XXI- 42 U.S.C. § 1985- Conspiracy to Violate Civil Rights | No | No | Yes | Yes | COP Defendants did not prosecute; Underlying Claims Fail; |

| | | | | | |
|---|---|---|---|---|---|
| | | | | | Fails to State a Claim; No allegation of Race Based Discrimination |
| Count XXII-Defamation | Yes-untimely and no sum certain specific to Defendants | Yes | Yes | Yes | Fails to Identify any Defamatory Statements by the COP Defendants; Requires Actual Malice; Cannot be Opinion; No knowledge of falsity. |