1   Kathleen L. Wieneke, Bar #011139
    Christina Retts, Bar #023798
2   WIENEKE LAW GROUP, PLC
    1225 West Washington Street, Suite 313
3   Tempe, Arizona 85288
    Telephone: (602) 715-1868
4   Fax: (602) 455-1109
    Email: kwieneke@wienekelawgroup.com
5   Email: cretts@wienekelawgroup.com

6   *Attorneys for Defendants City of Phoenix and Sullivan*

7

8               **UNITED STATES DISTRICT COURT**

9                    **DISTRICT OF ARIZONA**

10  Sean Pena, an individual;                    NO. 2:23-cv-02156-SPL

11                          Plaintiff,      **DEFENDANTS CITY OF PHOENIX
                                            AND SULLIVAN'S MOTION TO
12  vs.                                     DISMISS AND CERTIFICATE OF
                                            CONFERRAL**
13  City of Phoenix, a governmental entity;
    County of Maricopa, a governmental entity;
14  Michael Sullivan, Chief of the Phoenix
    Police Department; Jeri L. Williams, former
15  Chief of the Phoenix Police Department;
    Deputy Maricopa County Attorney Jeffrey
16  Roseberry and Jane Doe Roseberry;
    Maricopa County Deputy Attorney Catherine
17  Fu and John Doe Fu; Maricopa County
    Deputy Attorney Sandra Anderson and John
18  Doe Anderson; Maricopa County Attorney
    Samantha Caplinger and John Doe
19  Caplinger; Maricopa County Attorney
    Michael Baker and Jane Doe Baker; Michael
20  Walker; and Jane Doe Walker; Cynthia
    Ramirez; Krystoffer Lee; Lisa Gutierrez;
21  Jarrett Maupin and Jane Doe Maupin; and
    Iesha Stanciel and John Doe Stanciel,
22
                            Defendants.
23

24          In the summer of 2020, Plaintiff was arrested and then indicted for the sexual assault

25  of three unrelated women. The fact that he was ultimately acquitted has no bearing on the

26  existence of probable cause—which defeats his untimely claims. *See Borunda v. Richmond*,

27  885 F.2d 1384, 1389 & n.3 (9th Cir. 1988) ("The state's failure to prove guilt beyond a

reasonable doubt does not mean in connection with the arrests that it did not meet the lesser probable cause standard…"). The City Defendants[1] did not prosecute Plaintiff. Plaintiff's acquittal was not binding on any subsequent employment decisions, as the relevant standard there is preponderance of the evidence—not guilt beyond a reasonable doubt.

The far-fetched tale of conspiracy that Plaintiff tries to weave relies upon events for which absolute immunity applies—testimonial, crime victim, prosecutorial, and judicial.[2] Plaintiff seeks to prop up this conspiratorial tale with irrelevant events occurring months, if not years, after his arrest. Even though Plaintiff was arrested after a Grand Jury indictment on August 12, 2020 (First Amended Complaint (Doc. 1-1 at 80-159) ("FAC") ¶ 347), he speciously claims that "prosecutors were motivated to justify COP's [civil] settlements with Sean's Accusers, by the MeToo movement, and by the USDOJ's ["United States Department of Justice"] investigation." (FAC ¶ 355). Yet, Plaintiff acknowledges that: (1) two of his "accusers" filed separate civil lawsuits after his indictment (FAC ¶ 306, Nov. 25, 2020; FAC ¶ 310, June 18, 2021); (2) the December 1, 2020, press conference where Defendant Lee allegedly made false statements with Defendant Rev. Maupin was months after Plaintiff's arrest[3] (FAC ¶ 163); (3) the civil cases were not settled until the summer of 2021 (FAC ¶ 308, June 2, 2021; FAC ¶ 314, November 17, 2021), and (4) the DOJ announced an investigation in August of 2021 (FAC ¶¶ 268-271). These after-the-fact events are wholly irrelevant, inflammatory, and reference to them violates Rule 8.

---

[1] Former Chief Williams, Detective Walker is now Sergeant Walker, and Chief Sullivan (sworn in after the events in this lawsuit).

[2] *See Ledvina v. Cerasani,* 213 Ariz. 569, ¶ 14 (App. 2006) (absolute immunity to citizen crime victims' statements to the police); *Green Acres Tr. v. London*, 141 Ariz. 609, 612 (1984) (judicial proceedings privilege); *Rehberg v. Paulk*, 566 U.S. 356, 369 (2012) (immunity for testifying witnesses)*; Garmon v. County of Los Angeles*, 828 F.3d 837, 842-43 (9th Cir. 2016) (prosecutors are entitled to prosecutorial immunity "when performing functions 'intimately associated with the judicial phase of the criminal process.'"). This immunity also applies to the victims.

[3] The Court can hardly accept the implausible contention that the City was conspiring with Defendant Rev. Maupin, given his long history of outspoken criticism of the City and its officers.

Plaintiff has thrown everything at the wall, including credibility attacks on the victims[4], reliance on inadmissible Rule 404(b) "bad act" evidence, and inadmissible polygraph results—hoping that something might stick. See *Hansen v. Chon-Lopez*, 501 P.3d 762, 769, ¶ 21 (Ariz. App. 2021) ("We hold that [polygraph] evidence our courts have determined both unreliable and persuasive cannot be sufficient to deter a grand jury from finding probable cause."). This lawsuit seeks to flip our criminal justice system on its head, placing upon the police the obligation to act as the final arbiter of truth, conducting trials on the merits instead of making probable cause determinations. *Cf. Baker v. McCollan*, 443 U.S. 137, 145 (1979) (the constitution does not require error-free investigations as "[t]he ultimate determination of such claims of innocence is placed in the hands of the judge and the jury.").

In cases involving competing evidence and credibility questions, it is the criminal jury's responsibility to make determinations of fact—through the lens of rigorous cross-examination. It is not a law enforcement officer's job to decide that a victim's account should be disregarded because she was allegedly intoxicated or had used drugs in the past, has problems in her life, or has an unrelated criminal history. This is victim blaming and police departments and colleges have been sued for engaging in it. *See Wright v. City of Philadelphia*, No. 01-6160, 2007 WL 951421, 2007 U.S. Dist. LEXIS 21725, *10 (E.D. Pa. Mar. 27, 2007) (addressing claims that there was a *Monell* custom and policy of victim blaming, and/or shunting or unfounded claims of sexual assault). Allowing this case to move forward would endorse the creation of a class of women who could never even reach the halls of justice, those who have not had perfect lives and conduct—a class of women that are undoubtedly the most disadvantaged and vulnerable in our population. The

---

[4] Defendants Lee, Gutierrez, and Ramirez, as the complaining parties in the police reports, were identified as victims in the criminal proceedings and retain victim rights. As a result, they will be identified as such in this pleading.

1  Defendants' Motion to Dismiss should be granted in its entirety, without leave to amend

2  because of futility.[5]

3  **I.    FACTUAL BACKGROUND**

4          On August 26, 2018, Plaintiff arrested Ramirez after she was found having sex in a

5  vehicle. (FAC ¶¶ 45-46). Plaintiff transported her to jail, and upon arrival, she reported to

6  jail staff that Plaintiff had sexually assaulted her. (FAC ¶ 69). When interviewed, Ramirez

7  told Detective Walker that the vehicle came to a stop at a railroad crossing, Plaintiff asked

8  her to show him her breasts, he walked to the rear driver's side, and put his erect penis in

9  her mouth. (FAC ¶ 72). Video footage was retrieved from a nearby business which allowed

10  Defendant Walker to determine the vehicle stopped at the crossing for one minute and 39

11  seconds (but did not show the patrol vehicle) and, thus, could not corroborate or refute the

12  allegations. (FAC ¶¶ 94, 330). In the probable cause statement, Detective Walker noted that

13  Plaintiff was excluded from the results of a DNA test taken after a sexual assault

14  examination. (*Id*. at ¶ 330).

15          On June 1, 2019, Plaintiff had police contact with Lee and found drug paraphernalia

16  in her purse. He told her he would let her go if she showed him where she bought drugs,

17  and then transported her to the drug house and let her out of the vehicle. (FAC ¶¶ 115-116,

18  122, 125, 330). On November 20, 2019, Lee reported to a Phoenix police officer that

19  Plaintiff "had touched her breasts and had her masturbate his penis during that encounter."

20  (FAC ¶ 134). She told investigators that she gave Plaintiff a hand job. (FAC ¶ 143).

21  Defendant Stanciel told police that "Lee had called her and related that a police officer had

22  taken out his penis and asked her for oral sex, which she refused." (FAC ¶ 154). Plaintiff

23  was arrested on March 9, 2020, and charged with the sexual assault of Ms. Lee. (FAC ¶

24  549).

25

26  _____

27          [5] Defendants certify conferral prior to filing this Motion to Dismiss, in the form of
lengthy meet and confer correspondence, sent on October 18, 2023. *See* Ex. 1. Defendants
sent follow up correspondence about the meet and confer on October 26, 2023, October 27,

28  2023, and Novembre 6, 2023.

On August 5, 2019, Plaintiff responded to a call from Gutierrez that she was being threatened. (FAC ¶ 208). Plaintiff admits to transporting Gutierrez but claims he did so after voicing his opposition because of the earlier accusations that had been made against him. (FAC ¶ 212). Despite Plaintiff's professed fear of false reports, he later initiated a phone call to Gutierrez—which she did not answer—prompting him to drive alone back to her house. (FAC ¶¶ 217-219). When Plaintiff arrived, she allegedly reported abuse by her fiancé and told him to meet her later in an empty lot. (FAC ¶ 220). Gutierrez later reported to a Tempe officer that Plaintiff sexually assaulted her and threatened to arrest her fiancé on an outstanding warrant. (FAC ¶¶ 235-237). Defendant Walker interviewed Gutierrez, who reported that Plaintiff called her and asked her to meet him in the empty field, and then when she did, Plaintiff sexually assaulted her there. (FAC ¶¶ 244-249). Plaintiff was arrested on July 24, 2020 and charged with the sexual assault of Gutierrez. (FAC ¶ 559).

The first grand jury convened on June 19, 2020 related to the accusations of Ramirez and Lee. (FAC ¶ 345); *See State v. Pena*, Case No. CR2020-001770 (Maricopa Cnty. Sup. Ct.).[6] The second grand jury convened on August 5, 2020 related to the accusations of Ramirrez, Lee, and Gutierrez. (FAC ¶ 263, 345); *See State v. Pena,* Case No. CR2020-128297 (Maricopa Cnty. Sup. Ct.). The Grand Jury did not consider information from Plaintiff's attorney that he had allegedly passed a polygraph. (FAC ¶ 264-267).

Plaintiff was terminated from City employment on July 27, 2020. (FAC ¶ 381). Plaintiff filed his Civil Service appeal on July 30, 2020. *See* NOC, Ex. 2.[7] The criminal case related to Ms. Lee concluded on May 19, 2022. (FAC ¶ 195).  The criminal case related to

---

[6] This Court may take judicial notice of filings in state court under Fed. R. Evid. 201. *Hammitt v. Lumber Liquidators, Inc.*, 19 F. Supp. 3d 989, 1004 (S.D. Cal. 2014).

[7] The Court may consider the Notice of Claim because it is referenced in the Plaintiff's Complaint and therefore not outside the pleadings. (FAC ¶ 42). *See Marder v. Lopez*, 450 F.3d 445 (9th Cir. 2006) (considering evidence if: the complaint refers to it; the document is central to the claims; and no party questions the authenticity).  The Notice of Claim is also a public record. *See Intri-Plex Technologies, Inc. v. Crest Group, Inc*., 499 F.3d 1048 (9th Cir. 2007) (court may take judicial notice of matters of public record without converting a pleading to a motion for summary judgment); *Phoenix Newspapers, Inc. v. Ellis*, 215 Ariz. 268 (Ariz.Ct.App. 2007) (notice of claim is a public record).

Ms. Ramirez and Ms. Gutierrez concluded on August 15, 2022. (FAC ¶ 614). Plaintiff served his Notice of Claim on the City Clerk on February 10, 2023—more than 2 ½ years after his initial arrest. *See* Ex. 2. Plaintiff filed his lawsuit in Maricopa County Superior Court on August 8, 2023—almost 3 years after his initial arrest. (Doc. 1-1 at 168).

The FAC is replete with irrelevant claims that the victims changed their stories during the criminal trial (FAC ¶¶ 197, 202, 241)—facts clearly unknowable at the time of the arrest two years earlier.  Moreover, witnesses have absolute immunity for testimony under *Rehberg v. Paulk*, 566 U.S. 356 (2012) and no claim can be based upon any testimony—whether at grand jury, or trial.

In addition to the arguments below, because of the number of claims and legal defenses involved, the City Defendants have prepared a table of claims and defenses for clarity and the Court's convenience. The table is attached as Ex. 3.

## II.    LAW AND ARGUMENT

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Twombly*, 550 U.S. at 570). Plausibility is more than a "sheer possibility that a defendant has acted unlawfully." *Id*. If the allegations in a complaint "are so general that they encompass a wide swath of conduct, much of it innocent," they are not plausible. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008). In reviewing a Rule 12(b)(6) motion, a court need not accept as true "conclusory statements" or "legal conclusions," *Iqbal*, 556 U.S. at 678, nor must it draw "unreasonable inferences" or "unwarranted deductions of fact," *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Similarly, a complaint must not contain inflammatory, immaterial facts, or accusations. *See Donahoe v. Arpaio*, No. CV-10-2756-PHX-NVW, 2011 WL 5119008 (D. Ariz. Oct. 28, 2011) (addressing inappropriateness of citation to inflammatory accusations, including newspaper sources).

**A.     Plaintiff Failed to Comply with the Notice of Claim Statute: Improper Sum Certain, Lack of Facts Supporting the Sum Certain, and Untimeliness (Requiring Dismissal of Counts I-XIV[8]).**

In Arizona, a party with claims against a public entity must file a Notice of Claim ("NOC") within one hundred eighty (180) days "after the cause of action accrues." A.R.S. § 12-821.01(A). "Any claim that is not filed within one hundred eighty days after the cause of action accrues is barred and no action may be maintained thereon." *Id*. For the purposes of the statute, "a cause of action accrues when the damaged party realizes he or she has been damaged and knows or reasonably should know the cause, source, act, event, instrumentality or condition that caused or contributed to the damage." A.R.S. § 12-821.01(B). "A plaintiff need not know all the facts underlying a cause of action to trigger accrual. But the plaintiff must at least possess a minimum requisite of knowledge sufficient to identify that a wrong occurred and caused injury." *Thompson v. Pima County*, 243 P.3d 1024, 1028, ¶ 12 (Ariz. App. 2010) (emphasis original) (internal quotation marks omitted). A plaintiff's NOC must strictly comply with the requirements of Section 12-821.01(A). *Falcon ex rel. Sandoval v. Maricopa Cnty*., 144 P.3d 1254, 1256, ¶ 10 (Ariz. 2006) ("Actual notice and substantial compliance do not excuse failure to comply with the statutory requirements"); *Simon v. Maricopa Med. Ctr*., 234 P.3d 623, 630, ¶ 23 (Ariz. App. 2010); *see also Deer Valley Unified Sch. Dist. No. 97 v. Houser*, 152 P.3d 490, 493, ¶¶ 8-9 (Ariz. 2007) (the language of A.R.S. § 12-821.01(A) is "clear and unequivocal" and therefore courts must give "determinative" effect to the statute's terms.).

In addition to timeliness, A.R.S. § 12-821.01 requires that the NOC contain "facts sufficient to permit the public entity or public employee to understand the basis upon which liability is claimed."  *See* A.R.S. § 12-821.01(A).  The NOC must "also contain a specific amount for which the claim can be settled and the facts supporting the amount." *Id.* The

---

[8] The only claims that are <u>not</u> untimely based on the statute of limitations are Count III (malicious prosecution for Ramirez) and Count V (malicious prosecution for Gutierrez) because the criminal cases for these victims ended on August 15, 2022, and Plaintiff filed suit on August 8, 2023. (*See* Doc. 1, p. 168). These claims are barred for other reasons, however, including an improper lump sum certain made against multiple defendants from different agencies.

notice of claim statute is "clear and unequivocal," and the failure to comply with any aspect of the statute prevents a plaintiff's claim from going forward. *Deer Valley*, 152 P.3d at 493, ¶ 9. A claimant's failure to comply with this requirement is not excused by actual notice or substantial compliance. *Falcon*, 144 P.3d at 1256, ¶ 10.

The purpose of the notice of claim statute is threefold: (1) it allows the public entity to investigate and assess its potential liability; (2) it permits the entity to consider the possibility of settling the claim before litigation; and (3) it assists the entity in its financial planning and budgeting. *Id.* at 492; *Martineau v. Maricopa Cnty.*, 86 P.3d 912, 915-16, ¶ 19 (Ariz. App. 2004). These underlying purposes help to "ensure that claimants will not demand unfounded amounts that constitute 'quick unrealistic exaggerated demands.'" *Deer Valley*, 152 P.3d at 493, ¶ 9. Absent a factual explanation of how the claimant supports his claims and settlement demand, public entities like the school district in *Deer Valley* are unable to realistically evaluate the claim and determine whether to settle or proceed with litigation.

**1.      The Sum Certain and the Facts Supporting It Were Deficient.**

Plaintiff's NOC was directed to three separate entities (COP, Maricopa County, and Tempe) and their employees. Despite advancing differing theories of liability on claims that are subject to comparative fault as between different agencies' employees, Plaintiff made a single demand of $1,750,000.00 to settle his claims. This is clearly insufficient. Plaintiff was required to separate out his demand to provide sufficient notice to each agency.

Plaintiff's lump sum demand to the different agencies (Tempe and Maricopa County did not even employ him) contains no facts supporting damages on his wrongful termination and breach of contract claims (Counts I & II); *Deer Valley*, 152 P.3d at 493, ¶ 9 (claimants must "explain the amounts identified in the claim by providing the government entity with a factual foundation to permit the entity to evaluate the amount claimed."). Plaintiff fails to set forth any facts supporting the novel theory that the City breached its Memorandum of Understanding (MOU) with Plaintiff's union by terminating his employment. In addition, the FAC alleges economic damages Plaintiff claims to have suffered that are not in his

NOC. (FAC ¶¶ 427-455, *Cf.* Ex. 2.). His NOC contains no demand for lost wages; no calculation of lost wages, anticipated years of work, hourly pay, fringe benefits; and no factual information about his anticipated pension and/or DROP benefits.

### 2. Plaintiff Failed to Timely Comply with the Notice of Claim Statute or the One-Year Statute of Limitations Applying to Counts I-II, IV (malicious prosecution-Lee), & VI- XVI.

Plaintiff served his NOC on the City Clerk on February 10, 2023. Because the majority of Plaintiff's state law claims accrued more than 180 days before Plaintiff served his NOC, they must be dismissed pursuant to A.R.S. § 12-821.01(A). *Humphrey v. State*, 466 P.3d 368, 375, ¶ 22 (Ariz. App. 2020) ("But the 2010 notice was filed more than two years after the date of the accident, which it was not timely if Plaintiffs cause of action accrued before May 2, 2010."); *Falcon*, 144 P.3d at 1256, ¶ 10 ("Actual notice and substantial compliance do not excuse failure to comply with the statutory requirements of A.R.S. § 12-821.01(A)."). In addition, Plaintiff was required to file suit within one year after the cause of action accrued, so the one-year statute of limitations also bars Counts I-II, IV, VI-XVI. *See* A.R.S. § 12-821, A.R.S. § 12-541.

***False Arrest and Imprisonment (Counts XI, XII, and XIII):*** To state a claim for false arrest, Plaintiff must show that Defendants arrested him without probable cause. *See Gravelet-Blondin v. Shelton,* 728 F.3d 1086, 1097 (9th Cir. 2013). Under Arizona law, a claim for false arrest or imprisonment accrues on the date of the arrest. *Hansen v. Stoll*, 636 P.2d 1236, 1242 (Ariz. App. 1981); *Rondelli v. County of Pima*, 586 P.2d 1295, 1297 (Ariz. App. 1978). In addition, "[r]eflective of the fact that false imprisonment consists of detention without legal process, a false imprisonment ends once the victim becomes held pursuant to such process—when, for example, he [or she] is bound over by a magistrate or arraigned on charges." *Wallace v. Kato*, 549 U.S. 384, 389 (2007) (citing authority).

In Count XI, Plaintiff asserts false arrest and false imprisonment claims stemming from his March 9, 2020 arrest. (FAC at ¶ 549). His NOC is more than two years late. Similarly, he was required to file suit for this arrest/imprisonment by March 9, 2021. The same logic applies to Count XII, meaning his NOC is untimely for the July 24, 2020 arrest

by nearly two years. He was required to file suit for this arrest/imprisonment by July 24, 2021. Count XIII is a made-up claim titled "instigating or participating in false arrest and imprisonment," which likewise is untimely as it is based upon the two arrests discussed above. Notably, although Plaintiff does not allege when he was released from jail (or if he ever was held in jail verses being released on bond), the alleged false imprisonment ended when the Plaintiff was indicted by Grand Jury, which he admits first occurred on June 19, 2020, with additional charges added at a second Grand Jury on August 12, 2020. (FAC ¶¶ 345, 347). False imprisonment necessarily ends at the time the imprisonment ends, which was years before the NOC was served and the lawsuit filed.

*Wrongful Termination (Count I) and Breach of Good Faith and Fair Dealing (Count II):* Plaintiff alleges that the City of Phoenix fired him on July 27, 2020. (FAC ¶ 381). Counts I and II are untimely by nearly two years. *See* A.R.S. § 12-821 (one year statute of limitations) and A.R.S. § 12-541 (one year statute of limitations). A wrongful termination claim accrues at the time Plaintiff was terminated. *See Scorzo v. Arizona Medical Board*, No. 1 CA-CV 15-0730, 2017 Ariz. App. Unpub. LEXIS 90, at *5, ¶ 9 (Jan. 26, 2017) (concluding that plaintiffs' wrongful termination claim accrued "when the Board terminated their employment in 2011."); *Bresser v. Menta Group*, 934 F. Supp. 2d 1150, 1160 (D. Ariz. 2013) (finding plaintiffs' suit untimely under the discovery rule because they filed suit more than one year after termination). The exception under A.R.S. § 12-821.01(C) for dispute resolution or administrative claim processes only applies when the administrative claims process is mandatory. *See Andress v. City of Chandler*, 7 P.3d 121, 123, ¶ 11 (Ariz. App. 2000) ("[W]e interpret A.R.S. § 12-821.01(C) as merely extending the time to serve a notice of claim when alternative dispute or administrative review procedures must or should be exhausted before the filing of a complaint."). Plaintiff's pursuit of remedies under the MOU did not toll the statute of limitations on his contract claims. *Haggerty v. American Airlines*, 102 F. App'x. 623, 625 (9th Cir. 2004), *cert. denied* 543 U.S. 1161 (2005). Plaintiff's right to sue under Arizona's Employment Protection Act is a statutory right independent of his

contractual rights under the collective bargaining agreement; his claims under the AEPA were fully available to him upon termination. *Id.*

**Abuse of Process:** Plaintiff's abuse of process claims (Counts VII, VIII, IX) accrued once he knew he had been harmed, even if the process had not yet concluded. *See Cruz v. City of Tucson*, 243 Ariz. 69, 74 ¶¶ 21-22 (App. 2017). Where Plaintiff claims that the process should never have been initiated against him, his claims necessarily accrued at the time of the grand jury indictments—more than 2 ½ years before he served his Notice of Claim and more than three years before he filed suit.

**Intentional Infliction of Emotional Distress ("IIED") (Count XIV):** Plaintiff's IIED claim is tied to his arrest and assertions that he is innocent.  As a result, his cause of action accrued at the time he was arrested for the crimes—in 2020.

**Aiding and Abetting (Count XV):** Arizona recognizes aiding and abetting as embodied in Restatement § 876(b), *i.e.*, "that a person who aids and abets a tortfeasor is himself liable for the resulting harm to a third person." *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund*, 38 P.3d 12, 23, ¶ 31 (Ariz. 2002). Claims of aiding and abetting tortious conduct require proof of three elements: "(1) the primary tortfeasor must commit a tort that causes injury to the plaintiff; (2) the defendant must know that the primary tortfeasor's conduct constitutes a breach of duty; and (3) the defendant must substantially assist or encourage the primary tortfeasor in the achievement of the breach." *Id.* at 23, ¶ 34. In Count XV, Plaintiff merely rehashes the torts that were allegedly perpetrated—malicious prosecution, abuse of process, false arrest and imprisonment, and IIED—and claims generically that all of the Defendants aided and abetted one another.  Yet, where the underlying tort is untimely asserted, there cannot be any timely claim of "aiding and abetting" of that same tort.  Notably, none of the City Defendants are alleged to be the primary tortfeasor. Instead, the crux of Plaintiff's claims is that the City and County Defendants should not have believed Gutierrez, Lee, and Rameriez and should have instead believed the Plaintiff.  Credibility determinations, however, are to be made by a jury, not by investigators or prosecutors.

To the extent that Plaintiff criticizes the presentation to the grand jury of the accuser's accusations, those claims accrued at the time of the presentation to the grand jury—years before the NOC was served and lawsuit filed.  Plaintiff does not and cannot allege that the City Defendants had any ability to read the future to know that there would be future arrests of the accusers, that those arrests would even be admissible in the criminal cases, or that the accusers would allegedly change their testimony years after the arrests. (*See* Ariz. R. Evid. 404(b); FAC ¶¶ 110-111, 190-192). Moreover, to the extent that this claim is based upon any alleged false testimony by anyone, it fails based upon the immunity set forth in *Rehberg* (as discussed in further detail below).

**Malicious Prosecution- Lee (Count IV):** The prosecution related to Lee terminated on May 19, 2022, yet Plaintiff did not timely file a Notice of Claim within 180 days of the not guilty verdict, nor did he file his lawsuit by May 19, 2023.

**B.     Chief Sullivan Is Not a Proper Defendant.**

Chief Sullivan is not a proper Defendant, for either an individual capacity or official capacity claim, because he was not the Chief at the time of the acts alleged. Chief Sullivan was not sworn in until October 28, 2022.[9]  Plaintiff alleges that he was terminated on July 27, 2020 (more than two years before Chief Sullivan was sworn in). (FAC ¶ 396). Plaintiff's criminal cases concluded on May 19, 2022 and August 15, 2022—both before the Chief's arrival. (FAC ¶¶ 195 & 614). There is no *respondeat* superior liability under Section 1983. *Polk County v. Dodson*, 454 U.S. 312, 325 (1981) ("Section 1983 will not support a claim based on a *respondeat superior* theory of liability."). Plaintiff cannot prove Chief Sullivan's personal participation in allegations that pre-dated his arrival by more than two years. Chief Sullivan also cannot be held responsible for alleged policies/customs that were in place before his arrival. Even now, Chief Sullivan is not the policy maker for the City of Phoenix. *See Puente v. City of Phoenix*, No. CV-18-02779-PHX-JJT, 2022 WL357351, 2022 U.S. Dist. LEXIS 21489, *49 (D. Ariz. 2022) (noting that Chief Williams

---

[9] *See* https://www.youtube.com/watch?v=WVV6pCcX5GU, swearing in ceremony.

is not the final policymaker for the City under the City Code, Phoenix City Charter, Ch. III §§ 1, 2). Finally, naming both the City of Phoenix and Chief Sullivan on an official capacity claim is redundant.  An official capacity suit is to "be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Therefore, "if individuals are being sued in their official capacity as municipal officials and the municipal entity itself is also being sued, then the claims against the individuals are duplicative and should be dismissed." *Vance v. County of Santa Clara*, 928 F. Supp. 993, 996 (N.D. Cal. 1996).

### C. Rule 8 Violations—Improper Reference to Settlements and Other Inflammatory and Irrelevant Allegations.

Plaintiff improperly references the City's settlements with Lee and Gutierrez, occurring nearly a year after the Plaintiff was arrested and wholly irrelevant to probable cause. *See* Fed. R. Evid. 408 (settlement evidence is not admissible "to prove liability or invalidity of the claim or its amount."). Plaintiff has no standing to challenge the settlements—where no liability was admitted—or the City's reasoning for entering into them. *Nordstrom v. Ryan*, No. CV 15-02176-PHX-DGC, 2019 WL 2304039, 2019 U.S. Dist. LEXIS 81730 at *7-8 (D. Ariz. May 15, 2019) (nonparty inmates lacked standing to enforce a settlement agreement between the Arizona Department of Corrections, Rehabilitation, and Reentry and an individual inmate). Plaintiff's belief that the City would have won the cases had it elected to try them is (1) entirely conclusory and (2) immaterial to his criminal cases. (FAC ¶ 319). Plaintiff's speculative beliefs about the City's investigation, analysis, and future events (that he would be acquitted verses found guilty) are not relevant to any of the claims and are highly prejudicial. *Dansby v. Buck*, 373 P.2d 1, 8 (Ariz. 1962) ("It has always been the policy of the law to favor compromise and settlement; and it is especially important to sustain that principle in this age of voluminous litigation…"). All references to the settlements should be rejected as a basis for any claims.

Plaintiff's polygraph allegations should also be rejected. (FAC ¶¶ 7, 257-267, 290, 353, 384).  Polygraph examinations are not admissible. *See United States v. Scheffer*, 523 U.S. 303, 317 (1998) (the military's per se rule excluding polygraph evidence does not

violate a defendant's rights under the Fifth or Sixth Amendments). In *Hansen v. Chon-Lopez*, the Arizona Court of Appeals noted that "it is well settled in Arizona that polygraph evidence is unreliable and, absent a stipulation by the parties, categorically inadmissible at trial 'for any purpose.'" 501 P.3d at 768, ¶ 18. *Hansen* examined Arizona's historical cases and long-standing recognition that "polygraph tests continue to be 'unreliable and admission of their results risks usurping the role of the jury,' deficiencies that make such evidence inadmissible under *Daubert*." *Id. Hansen* confirmed that polygraph evidence should not be presented at grand jury and disagreed that such evidence is "clearly exculpatory:

> We hold that a species of evidence our courts have deemed both unreliable and persuasive cannot be sufficient to deter a grand jury from finding probable cause, just as the state should not be permitted to use such evidence to establish it. We are not alone in so holding. The majority of states do not permit polygraph evidence to be introduced to grand juries.

*Id*. at 769, ¶ 21. That Plaintiff allegedly passed a polygraph is irrelevant and not "clearly exculpatory." Plaintiff's tort claims cannot be based on failure of the grand jury to be presented with unreliable and inadmissible evidence. Similarly, while Plaintiff criticizes the fact that he could not present to the grand jury, there is no statutory right to such presentation. *See* A.R.S. § 21-412.

Similarly, references to the DOJ investigation are irrelevant and inflammatory. Plaintiff was arrested, indicted, and terminated more than a year prior to the DOJ's August 5, 2021 announcement of its investigation. (FAC ¶¶ 268-271). Even if the DOJ investigation was initiated before these events, evidence of it would not be admissible in this case. *See Talley v. Burt*, No. 16-cv-01318, 2019 WL 5842857, 2019 U.S. Dist. LEXIS 194272 (W.D. Pa. Nov. 7, 2019) (granting motion in limine to exclude DOJ memoranda as irrelevant); *Gill v. Magan*, No. C19-860 MJP, 2021 WL 1589521, 2021 U.S. Dist. LEXIS 78744 (W.D. Wash. 2021) (granting motion in limine to exclude reference to the DOJ investigation into the Seattle Police Department's practices, findings, and consent decree with the DOJ).

14

Finally, Plaintiff refers repeatedly to statements made to Tempe Detective Ratko Aleksis and how Gutierrez's statements to him supposedly differ from statements she made to Detective Walker. (FAC at ¶¶ 225-227, 233-237, 367). But Detective Aleksis worked for the Tempe Police Department and Plaintiff does not allege Detective Walker was somehow aware of these conversations during his investigation. These "facts" are similarly irrelevant.

### D.   Probable Cause Bars Counts III-XXII.

Whether a given state of facts constitutes probable cause is always a question of law to be determined by the court. *Slade v. City of Phoenix*, 541 P.2d 550 (Ariz. 1975). Probable cause "is not a high bar," *Kaley v. United States*, 571 U.S. 320, 338 (2014), and "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018). The determination is based on the information the officer had at the time of the arrest, not on facts obtained later. *John v. City of El Monte*, 515 F.3d 936, 940 (9th Cir. 2008). "[It] is not the rule that police must investigate a defendant's legal defenses prior to making an arrest." *O'Doan v. Sanford*, 991 F.3d 1027, 1040 (9th Cir. 2021). Probable cause "does not depend on whether the suspect actually committed a crime," and "can well exist (and often does) even though ultimately, a jury is not persuaded that there is proof beyond a reasonable doubt." *See Yousefian v. City of Glendale,* 779 F.3d 1010, 1014 (9th Cir. 2015). The probable cause standard is not a subjective standard but an objective one. *See State v. Penderson*, 424 P.2d 810 (Ariz. 1967).

"In deciding whether probable cause exists, an officer is 'not required to sift through conflicting evidence or resolve issues of credibility, so long as the totality of the circumstances present a sufficient basis for believing that an offense has been committed.'" *Ermini v. Scott*, 249 F. Supp. 3d 1253, 1271 (M.D. Fla. 2017); *see also Borgman v. Kedley*, 646 F.3d 518, 523 (9th Cir. 2011) ("Officers may rely on the veracity of information supplied by the victim of a crime.")l *Rana v. Jenkins*, No. CV 23-4223 DSF, 2023 U.S. Dist. LEXIS 140007, *6 n.2 (C.D. Cal. Aug. 10, 2023) ("No Ninth Circuit precedent suggests that a witness's testimony can have so many credibility problems as to 'obliterate' probable cause."). "Law enforcement are not required to accept a suspect's story as true,

and even a plausible explanation does not 'in any sense require the officer to forego arrest pending further investigation if the facts as initially discovered provide probable cause.'" *Nordlund v. Eubank*, No. 20-cv-00085-JMK, 2021 WL 6050674, 2021 U.S. Dist. LEXIS 242753, *9 (D. Alaska Dec. 21, 2021); *see also Rohde v. City of Roseburg*, 137 F.3d 1142, 1143 (9th Cir. 1998) (probable cause existed for an arrest even though the arrestee protested his innocence and offered a reasonable explanation for the allegedly illegal conduct).

That Plaintiff was not convicted of a crime is irrelevant and inadmissible in this subsequent civil case to prove that probable cause was lacking for his arrest because the burden of proof in a criminal case is entirely different from that in a civil case. *Baker*, 443 U.S. at 145 ("The Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide a cause of action for every defendant acquitted — indeed, for every suspect released."); *In re Pima County Juv. Dependency Action No. 118537*, 185 Ariz. 912 P.2d 1306, 1308 (App. 1994) ("That the father was acquitted of those charges only means that the state failed to establish the elements of the offenses beyond a reasonable doubt. Because the burden of proof in a dependency proceeding is only a preponderance of the evidence, the acquittal is of no consequence.")

Here, none of the Defendants possessed knowledge of facts or circumstances conclusively establishing that the sexual assaults <u>did not</u> occur and, instead, possessed knowledge that a fair probability existed of criminal activity. (FAC ¶¶ 55 (transported Ramirez alone), 125 (alone with Lee), 248 (alone in a field with Gutierrez). *See Walz v. Randall*, 2 F.4th 1091, 1104 (8th Cir. 2021) (affirming finding of probable cause on claim of sexual assault when "[b]etween the only two firsthand witnesses, the deputies credited [the victim]. We disagree that the deputies in this case failed to conduct 'a reasonably thorough investigation' as required under [*Kuehl v. Burtis*, 173 F.3d 646 (8th Cir. 1999)]."). The City Defendants were not present when the events occurred, body camera footage did not exist to document the interactions/transport, and independent third-party witness were not available to corroborate or refute the allegations as described by the victims.

16

Indeed, this was not a situation where the Plaintiff claimed that he never had any contact with Gutierrez, Lee, or Ramirez; he instead disputed the unlawful nature of the conduct. *United States v. Harness*, 453 F.3d 752 (6th Cir. 2006) (arrest was supported by probable cause where police had spoken directly to the victim, "nothing about the allegation itself cast doubt on the victim's reliability," and other witnesses confirmed that there was a "window of time within which the alleged sexual assault could have occurred."). For example, although Plaintiff claims that the victim's stories were not to be believed because of their relative access to his duty belt (FAC ¶ 135), this does not prove one way or another whether the events occurred. Equally plausible is that a larger man—in a position of authority—would not have a reasonable fear that a smaller woman would choose to risk her life by trying to access the weapons secured on his duty belt.

Likewise, although Plaintiff now contends that Defendant Lee was too intoxicated to believe, he makes a point of explaining that he was willing to release her if she disclosed information about where she obtained the drugs. (FAC ¶¶ 122-125). In other words, she was coherent and reliable enough to provide actionable information to Plaintiff to identify a drug dealer, yet was not to be believed when she reported to other officers that she herself was a victim. *Lallemand v. University of R. I.*, 9 F.3d 214, 216 (1st Cir. 1993) (concluding that the victim's alcohol consumption did not undercut probable cause because her identification of the suspect was positive, and there was "no suggestion that she was incoherent or vague when she gave her statements to police"). Similarly, Plaintiff admits that he called Gutierrez (but did not record the call) and met her in a field (but did not have any type of recording device). Although he now contends that he would not transport a woman alone given Ramirez's previous allegations, the fact that he agreed to meet Gutierrez alone without any form of recording device supports probable cause to arrest.

Plaintiff's allegations boil down to criticisms that the Defendants chose not to believe him over competing evidence, which is insufficient to defeat probable cause. *See Brockinton v. City of Sherwood*, 503 F.3d 667, 672 (8th Cir. 2007) (granting qualified immunity when, in the face of inconsistent accounts, an officer credited an alleged victim's

17

story and made an arrest on that basis); *Hawkins v. Gage Cnty.*, 759 F.3d 951, 957 (8th Cir. 2014) ("False accusations of sexual assault create a difficult situation for police. Just as the officers were required to respect [the suspect's] rights, they also were expected to address [the alleged victim's] allegations and purported threats against her and to respect her rights.")

Plaintiff has not pointed to any available information—at the time of the arrests and grand jury presentations—that was clearly exculpatory. *See Davis v. City of Apopka*, 356 F. Supp. 3d 1366, 1375-76 (M.D. Fla. 2018) (in a murder case where the suspect alleged self-defense, the police chief lacked knowledge of evidence and could not have done more to "obtain easily available information conclusively establishing that Plaintiff's use of force was not unlawful.").

**E.      Immunity For Grand Jury Testimony (Requiring Dismissal of Counts III, IV, V, XIV, XV, XVI, XVII, XVIII, XXI, XIX, and XXII).**

Plaintiff makes numerous assertions that Defendant Walker provided misleading testimony at the grand jury. But Plaintiff merely criticizes the fact that Defendant Walker repeated what the victims told police in their interviews; there is no allegation that he reported what they said incorrectly. (FAC at ¶¶ 476-477, 490-491, 504-505, 622-623, 641-642). Plaintiff also takes issue with the testimony of Lee, Gutierrez and Ramirez at trial. (*Id.* at ¶¶ 61, 67, 77, 79, 193-205, 241, 251-253, 358, 362, 363, 366, 371). The Supreme Court, however, has unambiguously held that witnesses are absolutely immune from liability for grand jury and trial testimony. *Rehberg,* 566 U.S. at 369 ("…a grand jury witness has absolute immunity from any § 1983 claim based on the witness' testimony."); *Malley v. Briggs*, 475 U.S. 335 (1996) (live trial testimony). "This rule may not be circumvented by claiming that a grand jury witness conspired to present false testimony or by using evidence of the witness' testimony to support any other §1983 claim concerning the initiation or maintenance of a prosecution." *Id*. The Arizona Court of Appeals recognized a similar rule under state law. *Spooner v. City of Phoenix*, 435 P.3d 462, 465-66, ¶ 6 (Ariz. App. 2018). *Rehberg* and *Spooner* are fatal not just to Plaintiff's malicious

prosecution claims under Counts III, IV, V, XVII, XVIII, and XIX, but to all claims that are based upon testimony.  These include aiding and abetting under Count XV, intentional infliction under Count XIV, and the civil conspiracy claims under Counts XVI and XXI. Finally, while Plaintiff baldly claims that unidentified statements were defamatory (Count XXII), he may not base his defamation claim on any testimony either.

### F.    The Abuse of Process Claims Fail (Counts VI, VII, VIII).

To prove an abuse of process claim, Plaintiff must prove a misuse of a "judicially sanctioned" process. *Crackel v. Allstate Ins. Co.*, 92 P.3d 882, 887, ¶ 14 (Ariz. App. 2004). Proof of abuse of process requires some act beyond the initiation of litigation.  *Joseph v. Markovitz*, 551 P.2d 571, 574 (App. 1976) ("There is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions."); *Fappani v. Bratton*, 407 P.3d 78, 81, ¶ 10 (Ariz. App. 2017) (claim requires that the defendant used a judicial process during civil litigation or criminal prosecution). This tort requires that misuse of the process is "done under the authority of the Court." *See Udd v. City of Phoenix*, 2018 WL 6727267, 2018 U.S. Dist. LEXIS 215872 (D. Ariz. Dec. 21, 2018). The abuse of process claims cannot be based upon reports from victims to police, which is not an act done under the authority of the court.

In addition, Plaintiff must establish (1) primary motive and (2) improper purpose.[10] *Pataky v. City of Phoenix*, No. CV-09-01483-PHX-JAT, 2009 U.S. Dist. LEXIS 114037 (D. Ariz. Dec. 7, 2009). There can be no abuse of process claim when the defendant uses the process for its authorized or intended purpose, "even though with bad intentions, or if there is an incidental motive of spite. Or an ulterior purpose to benefit the defendant. Thus, the entirely justified prosecution of another on a criminal charge…does not become abuse of process merely because the instigator dislikes the accused and enjoys doing him harm." *Id*. at *18-19.  For improper purpose, the Plaintiff must show that "in using the court process, the defendant took an action that could not logically be explained without reference

---

[10] Defendants contend that probable cause and the indictment defeat the improper purpose prong.

to the defendant's improper motives." *Crackel*, 92 P.3d at 889, ¶ 19.

In *Pataky*, the plaintiff alleged that the defendants instigated an investigation and search warrant in retaliation for his First Amendment critical blog postings and his litigation against officers in a separate matter.  The Court held that these allegations failed to satisfy the primary motive requirement because the plaintiff "failed to allege more than mere speculation to support his assertion that Harris or the City used court processes with an improper intent, and that retaliation was not merely an incidental motivation." *Id*. The Court also noted that "allegations of retaliation do not constitute an improper purpose," particularly if supported by probable cause. *See also Iqbal*, 556 U.S. at 678 (labels and conclusions do not meet the requirements of Rule 8).

In *Udd*, the plaintiff made a claim for abuse of process after he was investigated for using a third-party's parking pass, categorized as a suspect in the incident report, referred to the City Prosecutor's Office, and then referred to a different agency for prosecution.  *Id.* In granting the City's motion to dismiss, the Court held that none of the acts alleged were "done under the authority of the court." In reaching this holding, the Court also cited *Fappani*, 407 P.3d at 83, ¶ 15, for the proposition that "[a] prosecutor has discretion to prosecute such cases as he or she deems appropriate…Demanding that the county attorney prosecute a criminal violation without more, does not implicate judicial process."

*Fappani* was a lawsuit between two neighbors alleging that one of the neighbors repeatedly engaged in a "long history of hostility and animosity" culminating in multiple calls to the Sheriff, demands to the County Attorney to prosecute noise violations, and citations that were ultimately part of a bench trial with a not guilty finding. 407 P.3d at 80-81, ¶¶ 3-5. The court upheld a ruling dismissing an abuse of process claim on a Rule 12(b)(6) motion, finding that there was no judicial process involved.  The court made the following findings that are also applicable to this case: (1) pre-prosecution statements to law enforcement officers have absolute immunity—both for defamation claims and for abuse of process, *id.* at 82, ¶ 12; (2) "contacting law enforcement to complain about a neighbor's conduct is not use of a judicial process," *id.*; (3) "the mere report to police of

possible criminal activity does not constitute legal process," *id.* at 82, ¶ 14; (4) a prosecutor "has discretion to prosecute such cases as he or she deems appropriate; thus, whether a case is prosecuted is not controlled by the victim or anyone else," *id.* at 83, ¶ 15; (5) demonstrating improper purposes requires a heightened showing of a form of coercion or extortion and that this could not be met where the plaintiff, as a property owner, wished to preserve his or her property value by trying to prevent unlawful practices on adjacent property. *Id.* at 84, ¶ 18.

Here, Plaintiff alleges that the City Defendants engaged in abuse of process because "[t]hey were also motivated to justify COP's payment of hundreds of thousands of dollars to Lee and Gutierrez." (FAC at ¶¶ 514, 526). These allegations are entirely conclusory and disregard the timeline of events in this case—Plaintiff was arrested and criminally charged more than a year prior to the settlements. After-the-fact settlements can hardly be the motivation for prior arrests. Moreover, settling litigation is not an improper purpose, nor is the settlement itself a judicial process. *Moss v. United States Secret Service*, 572 F.3d 962, 970 (9th Cir. 2009) ("The bald allegations of impermissible motive on the Agents' part, standing alone, is conclusory and is therefore not entitled to an assumption of truth.") Finally, the settlements did not adversely impact the criminal trial (and in fact avoided a civil deposition during the pending criminal case).

Plaintiff also bases his abuse of process claim on the allegation that the City Defendants "were all aware of the USDOJ investigation and wanted to demonstrate to the USDOJ that they were taking action to root out 'bad cops." To that end, Sean's career was sacrificed." (FAC at ¶ 270.) Plaintiff further alleges that "[u]pon information and belief, the USDOJ investigations heavily influenced both the internal investigation and the prosecution of Sean." (*Id.* at ¶ 271). But the press release related to the DOJ, by Plaintiff's own admission, was dated August 5, 2021. (*Id.* at ¶ 268). This is more than a year after Plaintiff's March 9, 2020 and July 24, 2020 arrests and his July 27, 2020 termination. The DOJ investigation therefore could not possibly have had any impact on the decision to arrest

Plaintiff.[11] The DOJ investigation is also not legal process and does not move Plaintiff's claim of motivated activity from "conceivable to plausible" such that Plaintiff may simply rely on "information and belief" to support his allegations. *Park v. Thompson*, 851 F.3d 910, 928-29 (9th Cir. 2017) (civil conspiracy claim plausible on information and belief where plaintiff adequately pled parallel facts indicating collusion between a witness and the district attorney's office).

The only court process that Plaintiff identifies is trial testimony, which is absolutely immune under *Rehberg*. In addition, Plaintiff fails to identify any motive similar to coercion or extortion, which is required to state a claim. Investigating crimes and reports of misconduct by its employees is not coercion or extortion.

### G.   The Intentional Infliction of Emotional Distress ("IIED") Claim Fails (Count XIV).

In addition to being barred by *Rehberg* immunity and litigation privilege related to the allegations of settlements in the civil cases, Plaintiff's allegations fail to meet the elements of IIED. Under Arizona law, there are three elements to a claim for IIED: (1) "the conduct by the defendant must be 'extreme' and 'outrageous'"; (2) "the defendant must either intend to cause emotional distress or recklessly disregard the near certainty that such distress will result from his conduct"; and (3) "severe emotional distress must indeed occur as a result of defendant's conduct." *Udd v. City of Phoenix*, 2018 U.S. Dist. LEXIS 215872, *26-27. "[C]onduct necessary to sustain an intentional infliction claim falls at the very extreme edge of the spectrum of possible conduct." It 'must completely violate human dignity. The conduct must strike to the very core of one's being, threatening to shatter the frame upon which one's emotional fabric is hung.'" *Id*. Arizona courts have noted that "[i]t is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress." *Mintz v. Bell Atl. Sys. Leasing Int'l*, 905 P.2d 559, 563 (Ariz. App.

---

[11] The City Defendants are not responsible for criminal charging decisions, which are made by the prosecutor.

1  1995). In the Rule 12(b)(6) context, the "trial court is to act as a gatekeeper" to determine

2  whether the alleged actions meet the standard. *Id.*

3       In *Udd*, the Court addressed a claim by a former City of Phoenix law enforcement

4  officer that he was subject to improper investigations, referral for prosecution, and false

5  statements about his guilt. The Court found that "[r]easonable persons could not find that

6  investigating and recommending prosecution of individuals, where there is at least a

7  modicum of evidence suggesting they have violated internal policy or law, constitutes

8  conduct that "completely violate[s] human dignity" and "strike[s] to the very core of one's

9  being, threatening to shatter the frame upon which one's emotional fabric is hung.'" 2018

10 U.S. Dist. LEXIS 215872, *30.  The court further noted that, as in *Mintz*, the Department

11 "arguably had a 'legitimate business purpose' for its actions in ensuring that its employees

12 abide by internal policies and the law and are punished for any violations.'" *Id.*; *Nelson v.*

13 *Phoenix Resort Corp.*, 888 P.2d 1375, 1386 (Ariz. App. 1994) (having armed security escort

14 employee out of premises in middle of night, allowing employee to use bathroom on way

15 out only if accompanied into stall by armed escorts, and firing employee in lobby in front

16 of coworkers and media was not extreme and outrageous).

17      In assessing whether police conduct is extreme or outrageous, courts recognize that

18 a plaintiff's rights may come secondary to a reasonable exercise of the police power. In

19 *Rosenberg v. Martin*, 478 F.2d 520 (2d Cir. 1973), the court held that a fugitive's privacy

20 rights must yield to the public interest in his apprehension and the consequent publication

21 of anything that might be helpful toward that end. Similarly, in *Rondelli v. Cnty. of Pima*,

22 120 Ariz. 483 (App. 1978), the court rejected an IIED claim made by a plaintiff who alleged

23 that he was falsely arrested and imprisoned, stereotyped as "Mafiosi," detained with his

24 family for an hour without explanation, searched and handcuffed in full view of motorists

25 on a street frequently used by neighbors and friends, and treated as a dangerous criminal.

26      Here, the City of Phoenix has a legitimate business purpose in ensuring that its

27 employees have not violated the law. Detective Walker's probable cause statement—used

28 to support the initial arrest—was fair and balanced in recounting the allegations and in

noting that additional evidence "could not corroborate or refute" the allegations. (FAC ¶ 330). Plaintiff does not claim that Defendants Ramirez, Gutierrez, and Lee did not actually make the allegations that Detective Walker attributed to them in the police report, or at grand jury. Instead, Plaintiff agrees that the allegations were made, but apparently expected the Defendants to outline the character flaws, sexual proclivities, history of drug use, and prior arrests of the complaining parties. *Cf.* Fed. R. Evid. 404(b); 412.

In seeking to impugn the character of the victims, Plaintiff also relies on events occurring months and years after the arrest, criminal charging, and grand jury presentation—which are all irrelevant. (FAC ¶¶ 108-111 (Ramirez criminal history and drug use); 115-116 (Lee child custody and drug use); 163 & 182 (Lee, Dec. 1, 2020 press conference after arrest); 184 (Lee settlement, June 2021); 190-193 (Lee 2023 arrest); 196-187 & 202 (Lee 2022 trial testimony); 207 (Gutierrez deferred prosecution, 2013); 241 (Gutierrez 2022 trial testimony); 257-267, 353 (post-arrest inadmissible polygraph); 268-271 (August 2021 DOJ investigation); 304-320 & 355 (settlements); 356-375 (2022 criminal trial).

Similarly, the civil settlements are also irrelevant and Plaintiff seeks to turn on its head the public policy favoring settlement. Restatement (Second) of Torts § 587 (1977) (absolute privilege in litigation for defamation); *Messina v. Fontana*, 260 F. Supp. 2d 173, 179 (D.C. Cir. 2003) ("Private and amicable resolution of disputes is to be encouraged, not discouraged, as would happen if every lawyer's letter could provoke a defamation suit."). Further, Arizona recognizes "absolute immunity for all statements made in furtherance of judicial proceedings," which in a criminal case is guided, in part, by the Victim's Bill of Rights in Article 2, Section 2.1 of the Arizona Constitution. *Ledvina v. Cerasani*, 146 P.3d 70, 73-74, ¶¶ 7, 14 (Ariz. App. 2006); *see also Green Acres Trust v. London*, 688 P.2d 617, 621 (Ariz. 1984) (discussing judicial-proceeding privilege). Thus, Plaintiff cannot base his claims on statements of the victims, which represent the core of his claims.

**H.   The Malicious Prosecution Claims Fail (State Law—Counts III, IV, V; Federal law- Counts XVII, XVIII, XIX, and XX).**

Malicious prosecution claims—under both state and federal law—require Plaintiff to prove that the City Defendants initiated a criminal prosecution without probable cause that terminated in his favor and caused him damages. *See Slade*, 541 P.2d at 552. Even where an officer is involved in investigating a case, "a malicious prosecution action will not lie where a prosecuting attorney is left to judge the propriety of proceeding with the charge and acts on his own initiative in doing so." *Walsh v. Eberlein*, 560 P.2d 1249, 1252 (Ariz. App. 1976). Federal courts have also recognized that "filing a criminal complaint immunizes investigating officers from damages suffered thereafter because it is presumed that the prosecutor filing the complaint exercised independent judgment." *Newman v. County of Orange*, 457 F.3d 991, 993 (9th Cir. 2006) (cleaned up). Thus, "[t]he plaintiff bears the burden of producing evidence to rebut such presumption." *Id.*; *see also Rehberg*, 566 U.S. at 371–72 ("It would thus be anomalous to permit a police officer who testifies before a grand jury to be sued for maliciously procuring an unjust prosecution when it is the prosecutor, who is shielded by absolute immunity, who is actually responsible for the decision to prosecute.").

Here, the City Defendants were not prosecutors and probable cause is established by the indictment as set forth above. Plaintiff may not base this claim on the presentation of testimony at the grand jury, or trial, nor on the failure to present unreliable polygraph evidence at the grand jury (as discussed above).

### 1.   Because an Adequate Remedy Exists Under State Law, the Federal Claims Fail.

Plaintiff may not assert a Section 1983 claim for malicious prosecution unless there is either not an adequate remedy within the state system, or he asserts that the malicious prosecution was designed to deprive the plaintiff of a constitutional right.[12] *See Brez v.*

---

[12] Plaintiff brings his federal claim under the Fourth, Fifth, and Fourteenth Amendments.  It is unnecessary to plead the Fifth and Fourteenth Amendments as a basis of applicability to local governments.  These claims may only be brought under the Fourth Amendment.

*Kelman*, 773 F.2d 1026, 1031 (9th Cir. 1985). "Malicious prosecution, by itself, does not constitute a due process violation; to prevail [a plaintiff] must show the defendants prosecuted [him] with malice and without probable cause, and that they did so for the purpose of denying [him] equal protection or another specific constitutional right." *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir. 1995). Here, there is a state tort of malicious prosecution and Plaintiff has not alleged an equal protection violation. As a result, the MP claim under federal law should be dismissed on this basis alone.[13]

## I.    Plaintiff's Federal Malicious Prosecution *Monell* Claim (Count XX) Is Not Properly Pled.

Plaintiff's *Monell* claim against the City is deficient for several reasons. First, "liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). Plaintiff failed to plead practices of sufficient duration, frequency, and consistency to constitute a *Monell* claim.

First, Plaintiff refers extensively to unproven allegations that Phoenix Police Chief Jeri Williams "participated in a scheme to invent charges against police protestors in 2021." (FAC at ¶ 416). However, these claims postdate Plaintiff's March and July 2020 arrests. Plaintiff does not allege that he was a protester, or engaged in anti-law enforcement speech, or was targeted because of his race and/or speech. The pending litigation regarding these matters bears no relationship to the claims Plaintiff asserts. Because Plaintiff must prove that the alleged policy, practice, or custom was "a moving force behind a violation of constitutional rights," *Doughtery v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011), acts that postdate the events in question necessary cannot establish either (1) the existence of a

---

[13] The victims are not state actors under Section 1983 and the federal claims against them should be dismissed. *See Bollfrass v. City of Phoenix*, No. CV-19-04014, 2020 U.S. Dist. LEXIS 110051 (D. Ariz. June 23, 2020) (*sua sponte* noting the inadequacy of alleging a Section 1983 claim against a victim in a housing complex run by the City who called police to report an altercation and moved to obtain an injunction against harassment).

policy at the time, or (2) that the policy was the "moving force" behind the alleged constitutional violation.

Second, Plaintiff suggests that the *Anderson v. Armour* case further shows that the City had a policy of "find[ing] scapegoats to offer to the public to avoid public scrutiny." (FAC at ¶ 423). Yet, as Plaintiff acknowledges, the City did not terminate Armour despite a civil lawsuit filed against him. (*Id.* at ¶ 425). This alone defeats the notion that the City had a policy of offering up officers as scapegoats to the general public; in fact, the City defended that claim at trial and prevailed. *Anderson v. Armour*, 2021 U.S. App. LEXIS 37155 (9th Cir. Dec. 16, 2021). Far from establishing a pattern or practice of "offering up scapegoats," the *Armour* case suggests the opposite.

Third, the two claimed predicate examples Plaintiff points to for his policy and practice claim are so factually dissimilar that they cannot establish the existence of a policy or custom. *See Hernandez v. City of Napa*, 781 F. Supp. 2d 975, 1002 (N.D. Cal. 2011) (noting "two unrelated, isolated citizen's complaints relating to off-duty officers (both factually very dissimilar from the circumstances in this case) are insufficient to establish the existence of a municipal policy or custom that led to Plaintiff's arrest.")

In essence, Plaintiff's *Monell* claim amounts to an assertion that the City has a policy of not using inadmissible 404(b) evidence and an accuser's character to pre-judge their assertions of sexual abuse. This is not an actionable *Monell* claim. Under Plaintiff's theory, he would have detectives making credibility determinations based upon the accuser's character, where the rules of evidence sharply curtail what is admissible to rebut sexual assault claims. *Cf. O'Shea v. Augustana Coll.*, 593 F. Supp. 3d 838 (C.D. Ill. 2022) (finding that a plaintiff stated a claim for retaliation based upon her report of sexual harassment where the investigator sought out humiliating information about her past and attempted to discredit her character, noting that this would dissuade a victim from bringing a complaint in the first place); *Doe v. Gwinnet County Pub. Schs.*, No. 18-cv-05278-SCJ, 2019 U.S. Dist. LEXIS 238339 (N.D. Ga. 2019) (finding sufficient allegations of violation of equal

1  protection rights and failure to train where officers failed to address reports of sexual assault

2  and engaged in victim blaming questions and interrogation);

3  **J.      Plaintiff's 42 U.S.C. § 1985 Conspiracy Claim Fails (Count XXI).**

4  Plaintiff makes bald and conclusory allegations of conspiracy, which are insufficient

5  to show a meeting of the minds and invidious discrimination based upon race. To state a

6  claim for civil conspiracy, Plaintiffs must prove: (1) the existence of a conspiracy, (2) a

7  purpose of depriving a person or class of persons equal protection of the laws, and (3) an

8  act in furtherance of the alleged conspiracy. *Scott v. Ross*, 140 F.3d 1275, 1284 (9th Cir.

9  1998). A conspiracy under § 1985(3) must involve racial or otherwise class-based

10  discriminatory animus. *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 267-8

11  (1993). A conspiracy cannot be based upon conduct for which any form of immunity

12  applies, including testimonial immunity (section D above) and prosecutorial immunity.

13  *Caldeira v. Cnty. of Kauai*, 866 F.2d 1175, 1182 (9th Cir. 1989) ("The absence of a section

14  1983 deprivation of rights precludes a section 1985 conspiracy claim predicated on the same

15  allegations."); *Medrano v. Acosta*, No. 18-cv-10108-MCS (SP), 2021 U.S. Dist. LEXIS

16  221724 (C.D. Cal. Sept. 27, 2021) (collecting cases holding that if immunity applies,

17  plaintiff is barred from pursuing a § 1985 claim). In addition, employees of the Phoenix

18  Police Department cannot "conspire" with each other. *Donahoe v. Arpaio*, 869 F. Supp. 2d

19  1020, 1074-75 (D. Ariz. 2012); *Milke v. City of Phoenix*, No. CV-15-00462-PHX-ROS,

20  2016 U.S. Dist. LEXIS 171649 at *40-41 (D. Ariz. Jan. 8, 2016); *Truta v. Las Vegas Metro.*

21  *Police Dep't*, No. 11-CV-1614 JCM (GWF), 2014 U.S. Dist. LEXIS 66922 at *12-15 (D.

22  Nev. May 15, 2014). Plaintiff does not identify any facts establishing a meeting of the minds

23  to pursue an unconstitutional purpose **<u>based upon race</u>**. *Bennett v. Cnty. of Shasta*, No. 15-

24  cv-01764-MCE-CMK, 2016 U.S. Dist. LEXIS 91439, at *9 (E.D. Cal. July 13, 2016)

25  ("Membership in a 'class of one' is plainly insufficient to entitle Plaintiff to relief under §

26  198[5](3).").

27

28

1

**K.**     **The Defamation Claim Fails (Count XXII).**

2     Plaintiff's FAC fails to identify the alleged defamatory statements made by the City

3   and/or its employees. *McHenry v. Renne*, 84 F.3d 1172, 1179 (9th Cir. 1996) (Rule 8 is not

4   satisfied when "one cannot determine from the complaint who is being sued, for what relief,

5   and on what theory, with enough detail to guide discovery."). Plaintiff does not identify

6   when these statements were made, in what context, or what statements he specifically

7   attributes to the City. Specificity matters, because an entity receives absolute immunity for

8   statements made during judicial proceedings. *Green Acres*, 688 P.2d at 621 ("In various

9   settings, Arizona courts have applied the absolute privilege to defame in connection with

10   judicial proceedings.")[14] If the supposedly defamatory statements were made during

11   Plaintiff's criminal trials or before the grand jury, the City is absolutely immune from

12   liability for those statements. Similarly, if the defamatory statements were made in the

13   context of a civil case, those statements are likewise privileged.

14     In addition, individuals who report information to police are immune from liability

15   as set forth in *Ledvina*—even if what they report to the police is false. Thus, an officer's

16   recounting of an accuser's report to the police is insulated from liability. *Ledvina*, 146 P.3d

17   at 75, ¶ 13. "When statements are absolutely privileged, the speaker is immune from civil

18   liability and courts do not inquire into the declarant's motives or whether the statements

19   were made in good faith." *Id.* at 72. The district court recently reiterated this reasoning in

20   *Outley v. Moir*, which arose out of the pursuit and arrest of the plaintiff by Tempe police

21   officers. *Outley*, No. CV-19-0019-PHX-JAT (JFM), 2021 U.S. Dist. LEXIS 24368 (D.

22   Ariz. Feb. 8, 2021). The plaintiff brought a defamation claim arising from the officers'

23   statements that Plaintiff crashed into them. *Id.* at *5. The court noted that "[a]s for the police

24   reports themselves, Arizona extends absolute immunity to those making reports in

25

26   _____
   [14] The nongovernmental defendants retain absolute immunity for statements they
27   made to law enforcement officers when reporting their allegations. *Ledvina*, 146 P.3d at 75-
   76, ¶¶ 15-16 (holding "Mr. Cerasani was entitled to an absolute privilege respecting his
   report to the police."). The claims against the victims should not proceed based upon
28   *Ledvina* immunity.

anticipation of judicial proceedings." *Id.* at *30-31. The *Outley* court held that the purportedly defamatory statements—which included police reports, testimony, and an officer's victim impact statement—were absolutely privileged. *Id.* at *28, 30-31; *Green Acres*, 688 P.2d at 621 (participants in judicial proceedings are entitled to absolute immunity).

## III.   CONCLUSION

Defendants' Motion to Dismiss should be granted, without leave to amend, based upon the legal bars to proceeding with the claims. Adding facts cannot cure the timeliness problems, Notice of Claim deficiencies, immunities existing under the law, or the existence of probable cause as a bar to most of the claims. In addition, Defendants believe that fees are warranted pursuant to 28 U.S.C. § 1927, 42 U.S.C. § 1988, A.R.S. § 12-349, A.R.S. § 12-341.01(A) & (C), because of the legal barriers argued above.[15] *Neeley v. Arizona*, No. CV-19-05899-PHX-DJH, 2021 U.S. Dist. LEXIS 207504 (D. Ariz. Oct. 26, 2021) (awarding fees for claims barred by prosecutorial immunity); *Yates v. Mack*, No. 20-00131-KD-B, 2022 U.S. Dist. LEXIS 112793 (S.D. Ala. June 27, 2022) (awarding fees to defendants in an ADA and Section 1983 claim after ruling in defendants' favor on a motion to dismiss).

DATED this 8th day of November 2023.

WIENEKE LAW GROUP, PLC

By:   */s/ Christina Retts*

Kathleen L. Wieneke
Christina Retts
1225 West Washington Street, Suite 313
Tempe, Arizona 85288
*Attorneys for Defendants City of Phoenix and Sullivan*

---

[15] Should this Court agree that the claims lack merit, Defendants will submit a fee application following any such ruling.

1

## <u>CERTIFICATE OF SERVICE</u>

2

I hereby certify that on November 8, 2023, I electronically transmitted the attached

3

document to the Clerk's Office using the CM/ECF System for filing and transmittal of a

4

Notice of Electronic Filing to the following CM/ECF registrants:

5

6
Sean A. Woods
Robert T. Mills

7
MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101

8
Phoenix, Arizona 85014

9
*Attorneys for Plaintiff*

10
Maxine S. Mak
Deputy County Attorney

11
RACHEL H. MITCHELL
MARICOPA COUNTY ATTORNEY

12
225 West Madison Street

13
Phoenix, Arizona 85003
*Attorneys for Defendants Maricopa County Board of Supervisors, Roseberry,*

14
*Baker, Anderson, and Fu*

15

I hereby certify that on this same date, I served the attached document by U.S. Mail,

16

postage prepaid, on the following, who is a registered participant of the CM/ECF System:

17

18
N/A

19
By:   */s/ Mica Mahler*

20

21

22

23

24

25

26

27

28

31