Robert T. Mills (Arizona Bar #018853)
Sean A. Woods (Arizona Bar #028930)
**MILLS + WOODS LAW, PLLC**
5055 North 12th Street, Suite 101
Phoenix, Arizona 85014
Telephone 480.999.4556
docket@millsandwoods.com
swoods@millsandwoods.com
*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Sean Pena, an individual,<br><br>              Plaintiff,<br><br>vs.<br><br>City of Phoenix, a governmental entity; County of Maricopa, a governmental entity; Michael Sullivan, Chief of the Phoenix Police Department; Jeri L. Williams, former Chief of the Phoenix Police Department; Deputy Maricopa County Attorney Jeffrey Roseberry and Jane Doe Roseberry; Maricopa County Deputy Attorney Catherine Fu and John Doe Fu; Maricopa County Deputy Attorney Sandra Anderson and John Doe Anderson; Maricopa County Attorney Samantha Caplinger and John Doe Caplinger; Maricopa County Attorney Michael Baker and Jane Doe Baker; Michael Walker; and Jane Doe Walker; Cynthia Ramirez; Krystoffer Lee; Lisa Gutierrez; Jarrett Maupin and Jane Doe Maupin; and Iesha Stanciel and John Doe Stanciel,<br><br>              Defendants. | Case No.: CV-23-02156-PHX-SPL<br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS CITY OF PHOENIX AND SULLIVAN'S MOTION TO DISMISS**<br><br>(Assigned to the Honorable Steven P. Logan) |

Through counsel undersigned, Plaintiff submits his response to the DEFENDANTS CITY OF PHOENIX AND SULLIVAN'S (the "City Defendants") MOTION TO

DISMISS (the "Motion") (Doc. 25). Defendants Maricopa County, Jeffrey Roseberry, Catherine Fu, Sandra Anderson, Samantha Caplinger, and Michael Baker (the "County Defendants") filed a joinder (the "Joinder") with the City Defendants as to the following sections of Defendant City of Phoenix's Motion to Dismiss: II.A; II.A.1; II.A.2 related to False Arrest and Imprisonment (Counts XI, XII, XIII), Abuse of Process (Counts VII, VIII, IX), Intentional Infliction of Emotional Distress (Count XIV), Aiding and Abetting (Count XV), Malicious Prosecution (Count IV); II.D-H, J, K.

Plaintiff has filed contemporaneously with this response his voluntary dismissal without prejudice of the following counts: Count XI, XII, XIII, (false imprisonment claims) and Count XXII as to the City Defendants. Plaintiff has also filed contemporaneously with this Response his voluntary dismissal without prejudice of Michael Sullivan as to all claims and voluntary dismissal without prejudice of Plaintiff's claims against the County, Fu, Roseberry, Anderson, Baker, and Caplinger.

Plaintiff has also filed contemporaneously a voluntary dismissal without prejudice of certain claims against Defendants Krystofer Lee, Lisa Gutierrez, Cynthia Ramirez, Jarrett Maupin, and Iesha Stanciel as to Counts XVII, XVIII, and XIX insomuch as Plaintiff's First Amended Complaint ("FAC") improperly attributes those causes of actions to them.

## I.   <u>LEGAL STANDARD</u>

The legal standard for Motions to Dismiss pursuant to Rule 12(b)(6) are regularly cited and well known to this Court.  "[T]o survive a motion to dismiss, a party must allege 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *In re Fitness Holdings Int'l, Inc.*, 714 F.3d 1141, 1144 (9th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678). "[A]ll well-pleaded allegations of material fact in the complaint are accepted as true and are construed in the light most favorable to the non-moving party." *Id.* at 1144-45 (citation

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

omitted). The task when ruling on a motion to dismiss "is to evaluate whether the claims alleged [plausibly] can be asserted as a matter of law." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004);

When resolving a Motion to Dismiss, a Court must accept as true all factual allegations in the complaint and construe those allegations, as well as the reasonable inferences that can be drawn from them, in the light most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). Further, in the context of a motion to dismiss, the court properly resolves any doubts in the plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969).

The probability of success at trial should not be considered, as "a well-pleaded complaint may proceed even if it appears that a recovery is very remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007) (internal citation omitted). Facts plead are assumed to be true, as "Rule 12(b)(6) does not countenance … dismissals based on a judge's disbelief of a complaint's factual allegations." *Id*. "If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6). Plaintiff's complaint may be dismissed only when defendant's plausible alternative explanation is so convincing that plaintiff's explanation is implausible." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).  Consequently, motions to dismiss are disfavored and are to be granted only if there is no cognizable factual or legal basis for the claim."The court should freely give leave to amend when justice so requires." Fed. R. Civ. P. 15(a)(2). The Supreme Court has held that "this mandate is to be heeded." *Forman v. Davis*, 371 U.S. 178, 182 (1962). Moreover, "if the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claims on the merits." *Id*. Arizona appellate courts have held that "[l]eave to amend is discretionary, but amendments will be liberally allowed; trial on the merits of the claim is favored, and amendment will be permitted unless there has been undue delay, dilatory action or undue prejudice." *E.g., Owen v. Superior Court*, 133

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

Ariz. 75, 79 (1982).In this case, there would be no undue delay by result of further amendment. The case has been pending for less than four (4) months, there were consolidated answer dates set, and the remaining defendants were just served this week.

## II.   PLAINTIFF DID NOT FAIL TO COMPLY WITH THE NOTICE OF CLAIM STATUTE

Defendants first argue that Plaintiff's Notice of Claim – delivery of which is uncontested – fails to meet the statutory scheme under A.R.S. § 12-821.01(A). Their argument is that the "sum certain" was not allocated and split amongst different entities/defendants. This fails as a matter of law. The Arizona Court of Appeals grappled with this issue in 2018 in *Donovan v. Yavapai Cmty. Coll. Dist., 423 P.3d 403 (Ariz. Ct. App. 2018)*. In *Donovan*, the Defendant argued that a single demand for a sum certain "'clearly suggested' that it was the total settlement amount for multiple causes of action against multiple entities, and that the notice of claim was insufficient because it failed to specify a lesser amount for which Yavapai College alone could settle." *Id.* at 406. However, the *Donovan* Court held that:

> the offer that Donovan would "accept the sum of $450,000 as full and final settlement" established that sum as "*a definite and exact amount*" that Yavapai College could pay to "completely satisfy its liability." Yollin , 219 Ariz. at 29, ¶ 12, 191 P.3d at 1045. No more is required. *Id.* ; *see also Deer Valley* , 214 Ariz. at 296, ¶ 9, 152 P.3d at 493 (describing the sum certain requirement as an instruction "to include a particular and certain amount of money that, if agreed to by the government entity, will settle the claim").

*Id.* (emphasis added).

Furthermore, *Donovan* instructs that:

> The notice of claim statute does not require that the proffered settlement amount be objectively reasonable; it simply requires a statement of a specific settlement amount with supporting facts. *Deer Valley* , 214 Ariz. at 296, ¶ 9, 152 P.3d at 493. When a claimant demands an amount that the public entity deems unreasonable, nothing prevents the public entity from attempting to negotiate settlement for a lesser amount or from collaborating with other parties to reach a global settlement. But by virtue of a proper notice of claim, the public entity remains assured that, for the specific amount stated (reasonable or otherwise), it can satisfy its liability.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

Because Donovan's notice of claim provided a definite and exact amount for which Yavapai College could settle, the superior court erred by concluding that the notice of claim failed to satisfy the requirements of § 12–821.01(A) and by entering summary judgment in favor of Yavapai College on that basis.

*Id.*

Plaintiff did just that. In his Notice of Claim, he stated:

Pena is fully prepared to engage in litigation to resolve his claims as demonstrated herein, in which case he stands to be awarded, with the inclusion of punitive damages, millions of dollars in damages. However, at this time he is willing to settle any and all claims he has or may have against the offenders in return for a payment of $1,750,000.

Mot. Ex. 2. p. 13.

A.   <u>**NO LACK OF FACTS SUPPORTING SUM CERTAIN**</u>

Defendants next argue that Plaintiff did not provide facts to back up his sum certain. All that is required in a Notice of Claim is that the claimant provide factual allegations to support his claims. *See Backus v. State*, 220 Ariz. 101, 106-07 (Ariz. 2009). Plaintiff provided voluminous facts to support his claims. In addition, Plaintiff made it clear that "***Sean has now lost out on his salary, his career, and his retirement benefits.***" *NOC P. 12* (emphasis added). Defendants cite *Deer Valley Unified School v. Houser*, 214 Ariz. 293 (Ariz. 2007) for the proposition that Plaintiff did not provide a proper sum certain nor did Plaintiff provide background factual allegations to support his NOC. However, Defendants ignore the fact that in *Deer Valley*, the Court found that the plaintiff's "repeated use of qualifying language makes it impossible to ascertain the precise amount for which the District could have settled her claim." *Id.* at 296. In *Deer Valley,* the plaintiff defined her:

"economic damages as being 'approximately $35,000.00 per year or more going forward over the next 18 years.' McDonald also refers to a raise of $6,000 and notes that she anticipated "similar appropriate pay increases" over the next eighteen years. Her letter then states that her damages for emotional distress and harm to her reputation are "no less than" $300,000 and $200,000, respectively."

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

5

The *Deer Valley* court held that "[t]hese statements simply do not define a specific amount that McDonald would have accepted to resolve her dispute with the District." *Id.* The Court finally held that "Therefore, '[i]n light of this substantial variation in potential value and the absence of any clear aggregate claim amount in her letter, the amounts identified in [plaintiff's] letter cannot be considered 'specific.'" *Id.* As discussed above, Plaintiff provided a clear aggregate claim amount in his NOC. There were no qualifications put on that amount. There is no substantial variation in the amount that Plaintiff would have settled for. The *Deer Valley* case does not support the argument that Plaintiff's NOC was invalid. Even if it did, the Arizona Supreme Court has held:

> that a claimant complies with the supporting-facts requirement of § 12-821.01.A by providing the factual foundation that the claimant regards as adequate to permit the public entity to evaluate the specific amount claimed. This standard does not require a claimant to provide an exhaustive list of facts; as long as a claimant provides facts to support the amount claimed, he has complied with the supporting-facts requirement of the statute, and courts should not scrutinize the claimant's description of facts to determine the "sufficiency" of the factual disclosure.

*Backus v. State*, 220 Ariz. 101, 106-07 (Ariz. 2009).

Plaintiff's NOC included the fact that Plaintiff was terminated. Plaintiff's NOC laid out the facts known to him at the time that supported his position that he should not have been terminated. He further provided specific information about the individuals' actions that he believed caused him harm as well as the specific legal claims that he might bring against them. Plaintiff's NOC met all the requirements in the statute and Defendants' arguments against necessarily fail.

    **B.**    **THE NOC WAS NOT UNTIMELY AS TO HIS STATE LAW CLAIMS FOR WRONGFUL TERMINATION, BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING, MALICIOUS PROSECUTION, ABUSE OF PROCESS, TORTIOUS INTERFERENCE WITH CONTRACT AND REASONABLE BUSINESS EXPECTANCY, IIED,**

Mills + Woods Law, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

### 1.   <u>Wrongful Termination (Count I)</u>

Defendants argue that Plaintiff's claims for wrongful termination and Breach of the Covenant of Good Faith and Fair Dealing accrued on July 27, 2020. This is wrong. Plaintiff's claim for wrongful termination arguably did not accrue until February 2023. This is when – after exhausting his administrative remedies – the City determined with finality that Plaintiff's employment was terminated. Plaintiff filed a timely appeal to the CSBThrough his attorney, Plaintiff requested an open-ended continuance for his appeal pending resolution of his criminal charges on August 25, 2020. The City Attorney did not oppose the continuance.[1] In fact, after Plaintiff's criminal trials resolved in his favor, it was only then that the CSB appeal hearing's stay was lifted. To be clear, the City agreed to postpone a final determination pending his criminal charges resolution as long as Plaintiff waived his rights to back pay. Parties can agree to extend deadlines for filing of a notice of claim under A.R.S. § 12-821.01(c). It follows that if Plaintiff and City Defendants agreed to stay any pursuit of remedies, with Plaintiff giving up his back pay, that the date of his termination was extended to the very day that the stay/continuance ended. With his employment decision in limbo for two years, it would be impossible for Plaintiff to have sued for wrongful termination. Once the criminal proceedings terminated in favor of Plaintiff, he was able to continue his employment appeal and move to the finality of the CSBDecision. The final determination did not come until February 2023. The findings of the presiding judge came in December 2022, but had to reach final approval to become final.

In fact, in Plaintiff's discipline notice provided by the City of Phoenix Human Resources Department, it clearly states that Plaintiff is "Entitled to Appeal Rights"[2]

---

[1] If this Court grants leave to amend, Plaintiff will update his allegations to include these facts.

[2] As in FN1, Plaintiff – if the Court so grants – will amend to update his allegations to include this fact.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

1

2

**2.      THE MALICIOUS PROSECUTION CLAIMS DO NOT FAIL AS UNTIMELY (STATE LAW – COUNTS III-V; FEDERAL LAW COUNTS XVII-XX)**

3

A claim for Malicious Prosecution:

4

5

6

7

8

accrues only once the underlying criminal proceedings have resolved in the plaintiff's favor." *McDonough v. Smith*, 139 S. Ct. 2149, 2156 (2019). "Common-law malicious prosecution requires showing, in part, that a defendant instigated a criminal proceeding with improper purpose and without probable cause. Restatement (Second) of Torts § 653; see also Dobbs § 586, at 388–389; Prosser & Keeton § 119, at 871."

9

*McDonough v. Smith*, 139 S. Ct. 2149, 2156 (2019).

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Additionally, "[t]his favorable-termination requirement, the Court explained, applies whenever 'a judgment in favor of the plaintiff would necessarily imply' that his prior conviction or sentence was invalid." *Id.* at 2157. Plaintiff's cause of action for malicious prosecution could not have accrued until August 15, 2022 – when he was found not guilty of the accusations of Cynthia Ramirez and Lisa Gutierrez. Plaintiff served his NOC on February 10, 2023 within the 180 days under A.R.S. § 12-821.01, and filed his lawsuit on August 8, 2023, within the one year requirement under A.R.S. § xxxx. While he was found not guilty of the accusations of Krystofer Lee in May, 2022, his claims for malicious prosecution are still within the proper timelines. Defendants called Krystofer Lee to testify at Plaintiff's second trial. They had her there to support their charges levied based on the accusations of Gutierrez and Ramirez. She was used as a tool – and willingly did so – by the Defendants in all aspects of the prosecution of the second trial – despite all Defendants knowing full well that Plaintiff was acquitted of all charges against him based on Krystofer Lee. In fact, during closing arguments, the prosecutors continually claimed that Plaintiff should be convicted because there were three accusers. Defendants knew full well that they were trying to convict Plaintiff by use of Krystofer Lee to bootstrap a conviction.

27

28

Accordingly, because of Defendants' own actions in using Krystofer Lee to attempt to prove something that had already been decided by a jury, Plaintiff's accrual date for his

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

claims based on Krystofer Lee should follow the same date as that for Ramirez and Gutierrez.

### 3. Aiding and Abetting

The City Defendants argument that Aiding and Abetting (Count XV) fails based on statute of limitations, is incorrect. Even if the only claim that existed was for malicious prosecution, as discussed herein, that claim was brought timely. They further argue that the crux of Plaintiff's claims is that the City Defendants should not have believed Gutierrez, Lee, and Rameriez (sic) and should have instead believed the Plaintiff. That is not what was pled. Plaintiff pled that Each Defendant engaged in malicious prosecution, abuse of process, false arrest and imprisonment, and intentional infliction of emotional distress as alleged herein; That Each Defendant knew that one or more of the other Defendants were engaging in malicious prosecution, abuse of process, false arrest and imprisonment, and intentional infliction of emotional distress as alleged herein; and, that By the words and acts alleged herein, each Defendant provided substantial assistance and encouragement to such other Defendant or Defendants COP with the intent of promoting the tortious conduct. FAC ¶¶ 582-584. Their argument fails and the MTD on this count should be denied.

### III. NO RULE 8 VIOLATIONS

The Defendants request an extreme remedy of full dismissal of Plaintiff's Amended Complaint because – in their minds – the Amended Complaint is violative of Fed. R. Civ. P. 8. While Rule 8 requires a short and plain statement, other cases have required that a plaintiff must plead sufficient factual allegations to support claims and show that the claims are "plausible." [CITE]. In a 2023 decision this Court grappled with a similar issue. In *Wostrel v. Arizona*, No. CV-22-00312-PHX-DLR (D. Ariz. Feb. 28, 2023), the Defendant argued that the complaint's allegations were:

> "scattered" throughout a long complaint and are "verbose." The Court
> disagrees. This is a multi-year, multi-defendant, multi-claim case, justifying
> at least a modicum of complexity. And notably, the allegations were not so

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

scattered and verbose that [defendant] could not locate and succinctly list them in less than two pages. (Doc. 41 at 3-4.) The FAC did not flout Rule 8's short and plain statement requirement.

*Wostrel v. Arizona*, No. CV-22-00312-PHX-DLR, at *9-10 (D. Ariz. Feb. 28, 2023)

Similarly, this is a highly factually intensive case. There have been years of actions committed by Defendants to arrest, charge, and attempt to convict Plaintiff on false charges that they knew about. Plaintiff had to endure the specter of confinement in prison for over two years. Two criminal trials were held alleging Plaintiff committed sexual assault against multiple people. The criminal cases involved highly technical evidence. Plaintiff has to be able to set out all of the factors and factual allegations to support his claims. Without sifting through the voluminous mountains of evidence, and if Defendants were correct, Plaintiff would be faced with submitting allegations that would be entirely conclusory in nature. Plaintiff chose the route that provides the breadth of what was available to Plaintiff which would inform this Court of the background as to why Plaintiff is making the claims he made. Furthermore, Defendants had absolutely zero problem laying out their Motion to Dismiss to match the claims in Plaintiffs First Amended Complaint.

A case like this is one that is subject to intense scrutiny because of highly fact-intensive inquiries under doctrines including without limitation Qualified Immunity, Prosecutorial Immunity, and Witness Immunity. Without very specific facts pled in great detail, the Court would be faced with the prospect of not having enough information to properly evaluate Plaintiff's allegations – allegations based on actual documentary evidence. Plaintiffs recognize that the Amended Complaint is verbose, but Plaintiffs need to meet their duty to provide this Court with the factual allegations supporting their claims. That is, in fact, what Plaintiffs have done.

Plaintiffs have not crafted a confusing or conclusory Amended Complaint. Plaintiffs in this case did not attach numerous exhibits or create an addenda at all – let alone 24 pages worth as in *Nevijel v. North Coast Life Ins. Co.*, 651 F.2d 671, 674 (9th Cir. 1981). Plaintiffs' introduction to the First Amended Complaint is less than one (1) page long.

Plaintiff's "Parties" section is approximately four (4) pages long. Plaintiff's "Factual Allegations" section is approximately forty-three (43) pages long – a large portion of which provides actual citations to the documentary evidence to show that Plaintiff is not just making conclusory allegations. The supporting information is necessary to show how Plaintiff got from point A to Z.  The supporting information includes the already discussed DOJ investigation, the Jeri Williams Signal scandal, the Me Too movement, and quotes from police reports, media, and citations from transcripts of the Grand Jury and criminal trials. Finally, In this case, 26 of the 78 (53-79) substantive pages are dedicated to the Counts brought by Plaintiff.

This case has been pending for less than four (4) months – including the original filing, service of process, the extensions granted, and the organization required to allow for a unified answer date. Plaintiff has accommodated schedules, and have filed one Amended Complaint as a matter of right. Finally, as discussed herein, Plaintiff has agreed to and did dismiss certain claims (False Imprisonment and Defamation) to narrow the scope of the claims and parties.

There are less drastic alternatives to a dismissal with prejudice. While the Federal Rules have changed slightly since the *Nevijel* case was decided in 1981, the case is still instructive:

> These less drastic alternatives include allowing further amended complaints, allowing additional time, or insisting that appellant associate experienced counsel. "Courts have been reluctant to impose the ultimate sanction of dismissal with prejudice" because rule 41(b) is a harsh remedy, and "sometimes the fault lies with the attorney rather than the litigant." *Schmidt v. Herrmann, supra* at 1223; *Industrial Building Materials, Inc. v. Interchemical Corp., supra; Flaksa v. Little River Marine Const. Co.*,389 F.2d 885 (5th Cir.), *cert. denied*, 392 U.S. 928, 88 S.Ct. 2287, 20 L.Ed.2d 1387 (1968); *Von Poppenheim v. Portland Boxing and Wrestling Comm., supra.* It is clear, though, that aggravated circumstances may make dismissal with prejudice under rule 41(b) appropriate. *Schmidt v. Herrmann, supra; Von Poppenheim v. Portland Boxing and Wrestling Comm., supra; Agnew v. Moody, supra; and Corcoran v. Yorty, supra.*

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

1 *Nevijel v. North Coast Life Ins. Co.,* 651 F.2d 671, 674 (9th Cir. 1981).

2     **A.**    **<u>Settlements</u>**

3       Defendants argue that Plaintiff cannot reference the settlements between Lisa

4 Gutierrez and the City of Phoenix; and, between Krystofer Lee and the City of Phoenix

5 (the "Settlements") because of Fed. R. Evid. 408 and case law. Plaintiff is not challenging

6 the Settlements. Plaintiff is not attempting to use the Settlements to prove the City's

7 liability to Lisa Gutierrez or Krystofer Lee.  Instead, Plaintiff is using the Settlements to

8 demonstrate that the City was highly motivated to obtain a conviction of Plaintiff in order

9 to attempt justify its payment of $900,000 of taxpayer money to these individuals without

10 even conducting discovery and before Plaintiff had even been tried. These unjustified

11 settlements demonstrate extreme and improper bias and motivation on the part of the City.

12 In fact, Rule 408 carves out exceptions under subsection (b):

13

14       (b) EXCEPTIONS. The court may admit this evidence for another purpose,
such as proving a witness's bias or prejudice, negating a contention of undue

15       delay, or proving an effort to obstruct a criminal investigation or prosecution.

16 Fed. R. Evid. 408(b).

17

18       Furthermore, "[u]nder Federal Rule of Evidence 201, a court may take judicial

19 notice of "matters of public record." *Mack v. South Bay Beer Distrib.*, 798 F.2d 1279, 1282

20 (9th Cir. 1986). "But a court may not take judicial notice of a fact that is "subject to a

21 reasonable dispute." Fed.R.Evid. 201(b); Lee, 250 F.3d at 689. *Neal v. State*, No. CIV 07-

22 8025-PCT-SMM, at *3 (D. Ariz. July 11, 2007). The huge Settlements between Lee,

23 Gutierrez, and the City are directly relevant to show bias or prejudice, and to show that

24 Plaintiff's criminal prosecution was tainted and/or obstructed by false testimony which

25 Plaintiff contends Lee and Gutierrez provided and the City Defendants Defendants ratified

26 by knowingly presenting and eliciting such testimony during Plaintiff's criminal trials.

27       Additionally, the Settlements are a matter of public record in Arizona. They were

28 widely reported in the media as well. The Settlements occurred in 2021 – nearly a full year

before his first criminal trial. Plaintiff contends that the Settlements created even more incentive and motivation for Defendants to continue to press forward regardless of the false information that they knew about. Especially at a motion to dismiss stage, without continued discovery, the Court must take Plaintiff's allegations as true and deny Defendants Motion to Dismiss on this basis.

**B.      DOJ**

Defendants also argue that reference to the DOJ investigation is improper. This is also an invalid argument for reasons similar to the references to the Settlements. Background information – even after-the-fact – is important to establish the underpinnings by which the Defendants felt further pressure to continue their prosecution of Plaintiff. Plaintiff alleges that because of the DOJ investigation, any inkling of doubt at the hands of the City Defendants was completely suppressed and that they needed a "sacrificial lamb" to offer to the DOJ as evidence that the City was addressing situations that created a black eye for the City and could cause the DOJ to make adverse findings against the City. The DOJ references further go to the weight of the allegations that the City engaged in patterns and practices that were improper and unconstitutional. The DOJ investigation started in August 2021, but was not an investigation into future actions of the City and its officers – instead it was an investigation that looked and continue to looks into the historical data and practices of the City and its Police Department. The allegations are important to establish those theories.

**C.      Ratko Aleksis / Tempe**

Finally, as to Ratko Aleksis, Defendants disingenuously argue that Plaintiff advances a theory that Aleksis' conversations with Lisa Gutierrez should have been attributed to Walker. In actuality, Plaintiff references these conversations to establish that Ms. Gutierrez had been working with Aleksis for months yet never told Aleksis that she had been assaulted – until the news broke that Plaintiff was arrested with charges of sexual assault on other individuals. The allegations are important as Plaintiff believes and alleges

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

13

that Ms. Gutierrez manufactured her allegations to "piggy-back" on Lee's and Ramirez' accusations.

### D.    POLYGRAPH EXAMINATION

Defendants argue that Plaintiff cannot use allegations of a pass or failure of a polygraph examination. The argument ignores the fact that City Defendants specifically requested that Plaintiff submit to a polygraph exam, and admitted that the results would be relevant to the determination of probable cause. Plaintiff alleges that Walker told Plaintiff:

> But obviously, if you didn't do these things, and you've got two of these [accusers], a polygraph to say I've never done this, and you come out passing, ***it's going to be a big thumbs up for the department***, okay? ***That's going to help you***, that's going to help them look at this administratively and say, ***we don't have any evidence to prove it, we don't have anything else to say this happened, and he's taken a polygraph and passed it***, he's showing no deception, all right.

FAC ¶ 257.

Walker directly told Plaintiff that if he passed a polygraph that it would be "a big thumbs up for the department" while he was working out whether to submit a probable cause statement. The reliability of the polygraph examination is beside the point. Walker admitted that it was relevant to the determination of probable cause and whether to charge Plaintiff. Plaintiff in fact submitted to and passed a polygraph examination, yet City Defendants refused to consider it despite specifically requesting he take an examination. Had Plaintiff failed an examination, the City Defendants would have used that fact to support their probable cause statement.

Plaintiff's polygraph examination and the results thereof also goes directly to malice and bad faith on the part of the City Defendants and should be allowed to show the same.

### IV.    PROBABLE CAUSE DOES NOT BAR COUNTS III-XXII BECAUSE PROBABLE CAUSE DOES NOT EXIST FOR THESE COUNTS

The City frankly admitted that there was no probable cause to arrest or prosecute Pena based on the accusations of Ramirez. The City Defendants all knew that the City's own internal Administrative Inquiry into the Ramirez allegations found "**There is no**

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

1   **evidence to support the allegation of officer misconduct by Officer Pena**.”

2   Accordingly, the investigation was closed in 2018. Defendants later charged Pena with

3   sexually assaulting Ramirez only *after* Lee made facially incredible accusations against

4   Pena, and despite the lack of *any* additional evidence that existed at the time of the City's

5   investigation regarding Ramirez or "at the time of the arrests and grand jury presentations"

6   (City's MTD at p. 18) that Pena had assaulted Ramirez.

7        This was because Ramirez could not even keep her false statements straight

8   throughout the investigation. Ramirez lied to Plaintiff and his partner when they initially

9   stopped her and provided a false name. FAC ¶ 46. It was her "boyfriend" who eventually

10  gave Plaintiff and his partner Ramirez' actual name. *Id.* at 52. Ramirez told Police that she

11  had seen Sean before. She told Detective Walker that she had seen Sean "four days prior

12  when he arrested her friend Christina near 35th Avenue and Washington." *Id.* at 54. She

13  told Plaintiff that she would give him oral sex if he let her go. *Id.* at 57. After she realized

14  she was not being released, she then concocted her story that Plaintiff had assaulted her.

15  *Id.* at 69. Ramirez also told a nurse at the jail that Sean had not touched her, except for her

16  hair. *Id.* at 70. Ramirez told Detective Walker that Sean's patrol vehicle had come to a stop

17  at a railroad crossing. She alleged that while stopped there, Sean had his telephone

18  conversation. She claimed that Sean then told her to show him her breasts, and claims she

19  did. She claimed that Sean then exited the driver's seat of the vehicle, walked back to the

20  rear driver's side, opened the rear driver's side door, and put his erect penis in her mouth

21  *for approximately three minutes* – all while still stopped in the middle of a public street in

22  Phoenix. *Id.* at 72. At the second criminal trial, Maricopa County Superior Court Case #

23  CR2020-128297, on August 8, 2022, the prosecution *stipulated* to the fact that Plaintiff's

24  car was stopped for exactly one minute and thirty-nine seconds. *Id.* at 73. Plaintiff further

25  alleges that surveillance video from a nearby business showed a white car drive past

26  Plaintiff's patrol vehicle at the exact moment he was allegedly standing at the backseat

27  door assaulting Ramirez – a fact that was never presented to a grand jury. *Id.* at 74.

28

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

Plaintiff alleges – and the evidence including transcripts, recorded interviews, and Walker's own reports show that Ramirez repeatedly insisted to Detective Walker that after the alleged assault, Plaointiff drove over the railroad tracks and proceeded to the Fourth Avenue jail. When **Walker** told her that her story didn't add up, she changed her story and said that she laid down in the back after the alleged assault and didn't actually see the route they took to the jail. *Id.* at 75. Plaintiff alleges that Ramirez told investigators many different versions of what happened. *Id.* at ¶¶ 77, 81, 83, 84, 90. Furthermore, Walker himself told Ramirez that her story did not "add up." *Id.* at 101. Walker told Ramirez that "And the other one is definitely not our officer. We got the results back this week. It is definitely not him." *Id.* Walker even tried to pretend to be Ramirez with a "confrontation text" to Plaintiff's phone, but Plaintiff had no idea what "she" was talking about. *Id.* at ¶¶ 94-97.

The City Defendants absolutely knew that there was *never* probable cause to arrest or prosecute Pena for allegedly assaulting Ramirez. Defendants also knew that there was no probable cause with respect to the Lee and Gutierrez accusations as well. In fact the Prosecution, as demonstrated by the trial transcript, was not focused on the credibility of any of the accusations, but rather on the fact that there were three accusers. Even after a jury acquitted Pena of Lee's accusations, Defendants nonetheless paraded Lee in front of a subsequent jury hoping to convince it that she was telling the truth. Of course her version of the alleged assault bore no resemblance to the account she gave at the first trial, and the jury didn't buy it either.  In fact, in an interview she gave to the Phoenix New Times she gave a radically different account of the alleged assault.

Incredibly, Defendants now argue that probable cause bars nineteen (19) counts  of the Complaint.   The argument is specious at best. Plaintiff alleges that there was no probable cause to arrest him regarding Krystofer Lee's, Lisa Gutierrez', and Cynthia Ramirez' criminal allegations. At a bare minimum, Defendants did not have probable cause regarding Cynthia Ramirez. Plaintiff properly alleges that the City Defendants did not find probable cause to charge Plaintiff with Ramirez' allegations. This is true. Plaintiff alleges

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

that the City Defendants could not find corroborating evidence to support Ramirez' claims. Plaintiff further alleges that the City Defendants found that there was no DNA evidence to support Ramirez' claims – in fact, it specifically excluded Plaintiff from the DNA profile. Furthermore, Plaintiff alleges that the timing of Plaintiff's transport of Ramirez made it impossible for a sexual assault to occur. Plaintiff also alleges that other vehicles drove by Plaintiff's patrol vehicle when the alleged assault was claimed to have taken place. Plaintiff alleges that during the one minute thirty-nine second stop that he was on the phone with his partner for at least thirty (30) seconds. Plaintiff further alleges that there was clearly exculpatory evidence that was disregarded or not even looked into – even though Plaintiff specifically requested the investigators pull the "black box" data from his vehicle that would have shown Plaintiff never disengaged his seat belt. Walker and the investigators did not retrieve that data.

Detective (now Sergeant) Walker's probable cause statement in regards to Ramirez stated in its entirety:

> On 8/26/18, Victim A (an adult female) reported to Phoenix Police an allegation of sexual assault by the officer who arrested her earlier that day. Victim A was arrested by Officer Sean Pena for an outstanding felony warrant out of Yavapai County after she was stopped in a city park after hours. Pena was the primary unit for this call, with assistance from another officer. Pena transported Victim A to the South Mountain Precinct for prisoner processing, then to the Fourth Avenue Jail. Victim A alleged that Pena forced oral/penile sex while she was handcuffed in the back of his patrol vehicle and they were stopped at the railroad tracks near Third Avenue and Buchanan Street. A sexual assault examination was completed on Victim A and the evidence sent to the crime lab for processing. Pena's DNA profile was excluded from the profiles found on the evidence swabs. Pena adamantly denied the allegations of sexual assault or having any sexual contact with Victim A. He also stated it was Victim A who offered him oral sex if he would release her. The video surveillance obtained from multiple locations could not corroborate or refute the allegations.

FAC ¶ 330.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

Walker – despite knowing full well that the investigation was closed because there was no evidence to support the allegations – still submitted a probable cause statement for Ramirez. City Defendants argue that because Plaintiff had actual contact with Lee, Ramirez, and Gutierrez, that probable cause must exist when it becomes basically a "he said, she said" situation and that Plaintiff is disputing the unlawful nature of the conduct. Mot. P 17.  They cite to *United States v. Harness*, 453 F.3d 752 (6th Cir. 2006) (arrest was supported by probable cause where police had spoken directly to the victim, "nothing about the allegation itself cast doubt on the victim's reliability," and other witnesses confirmed that there was a "window of time within which the alleged sexual assault could have occurred.").

However, in that same case, the Court held that:

> The existence of probable cause, quite familiarly, depends on "whether, at the moment the arrest was made, . . . the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [defendant] had committed or was committing an offense."*Beck v. Ohio*,379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964).

*U.S. v. Harness*, 453 F.3d 752, 754 (6th Cir. 2006)

As discussed herein, Plaintiff has alleged that the investigation into the allegations made by Lee, Ramirez, and Gutierrez yielded wholly untrustworthy information that was not sufficient to "warrant a prudent man in believing [defendant] had committed or was committing an offense." *Id.* The investigation results were available to all City Defendants Defendants in this case. Plaintiff alleges that City Defendants used misleading and false information to obtain a Grand Jury indictment and to pursue criminal charges. Plaintiff further alleges that the probable cause statement relied upon by City Defendants did not show probable cause. Plaintiff alleges that there was absolutely no probable cause to arrest Plaintiff on any of the accusations There was no additional evidence following the closure of the internal investigation related to Ramirez. Absolutely none exists. Prior to the

submission of the probable cause statement, the entirety of the evidence was considered by multiple investigators and found to have no weight whatsoever.

That's it. Despite having multiple investigators conclude that Plaintiff could not have done the alleged acts in 2018, City Defendants still charged forward with no probable cause. This – as explained herein and in the FAC – was motivated with malice and in bad faith. FAC ¶¶ 142-151.

Later, Lee made allegations that she was assaulted. Plaintiff alleged that Lee had motive to lie and was angry at Plaintiff for preventing her from buying more drugs. Plaintiff alleges that Lee's story changed wildly depending on who she was talking to. FAC ¶¶ 142-160, 281.  Plaintiff alleges that the City all knew these facts. Even after that, Gutierrez "came forward" to claim she was also assaulted – approximately one year after the alleged assault took place. Plaintiff alleges that she only did so after the news reported that Plaintiff was fired for the claims of Lee and Ramirez. FAC ¶¶ 231-233. Plaintiff alleges that the story she gave to Ratko Aleksis differed from the story she told Detective Walker. *Id.* at 243-249. Plaintiff alleges that City Defendants ignored this information. Plaintiff alleges that City Defendants knew they were going to present and did in fact present misleading testimony to the Grand Jury. FAC ¶ 354.

The Arizona District Court has held that:

"[i]n the context of malicious prosecution, probable cause is defined as 'a reasonable ground of suspicion, supported by circumstances sufficient to warrant an ordinarily prudent man in believing the accused is guilty of the offeI.... The test generally applied is: upon the appearances presented to the defendant, would a reasonably prudent man have instituted or continued the proceeding?' " *Gonzales v. City of Phoenix,* 203 Ariz. 152, 155, 52 P.3d 184, 187 (2002) (quoting *McClinton v. Rice,* 76 Ariz. 358, 367, 265 P.2d 425, 431 (1953)).

*Donahoe v. Arpaio*, 986 F. Supp. 2d 1091, 1104 (D. Ariz. 2013).

Furthermore, "[t]he question of probable cause is generally one for the court." *Id.* (internal citations omitted). However, at a Motion to Dismiss stage, it is not time for the

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

Court to weigh the evidence. Instead, it is up to the Court to merely rule on whether or not the allegations made by Plaintiff are plausible. Regardless, *Donahoe* also instructs that:

> [i]f, however, the evidence is conflicting, so that on one conclusion as to the facts drawn therefrom probable cause exists, while from another it does not, it is then for the jury to determine the true state of facts and to apply the law as laid down by the court to those facts." S*arwark Motor Sales, Inc. v. Woolridge*,88 Ariz. 173, 177, 354 P.2d 34, 36 (1960). Summary judgment is appropriate if a reasonable jury could not find an absence of probable cause based on the undisputed facts. *See, e.g., Gasho v. United States*, 39 F.3d 1420, 1[42]8 (9th Cir.1994).

*Id.*

The Arizona Supreme Court also defines probable cause .as:

> 'a reasonable ground of suspicion, supported by circumstances sufficient to warrant an ordinarily prudent man in believing the accused is guilty of the offense. . . . The test generally applied is: upon the appearances presented to the defendant, would a reasonably prudent man have instituted or continued the proce"ding?" *McClinton v. Rice*, 76 Ariz. 358, 367, 265 P.2d 425, 431 (1953) (citations omitted).

*Gonzales v. City of Phoenix*, 203 Ariz. 152, 155 (Ariz. 2002).

In *Merrit*, a decision in the District Court of Arizona, the Court held that:

> [i]n the absence of legal authority to the contrary, Arizona courts follow the Restatement (Second) of "orts." *Sprint'Commc'ns Co., L.P. v. W. Innovations, Inc.* , 618 F. Supp. 2d 1101, 1119 (D. Ariz. Mar. 9, 2009) ; *see Roberson v. United States* , 382 F.2d 714, 718 n· 4 (9th Cir. 1967) (same); Espinoza v. Schulenburg , 212 Ariz. 215, 129 P.3d 937, 939 (2006) (same). The Restatement teaches that an indictment is prima facie evidence of probable c"use: "The indictment of the accused by a grand jury is evidence that the person who initiated the proceedings had probable cause for initiating"them." Restatement § 664(2); *see Hobbs v. City of Long Beach*, 534 '. App'x 648, [64]9 (9th Cir. 2013) (citing § 644(2) for the proposition"that "[a] grand jury indictment is prima facie evidence of probable"cause"); *Reams*, 701 P.2d at 601 (n"ting "the position of the Restatement with respect to the relevance of an indictment to the issue of probable cause in an action for malicious prose"ution").

*Merritt v. Arizona*, 425 F. Supp. 3d 1201, 1217 (D. Ariz. 2019).

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

The *Merrit* Court further held that "Plaintiff must come forward with enough evidence for a reasonable jury to find that Defendants falsified the evidence used to obtain the indictment ***or otherwise acted with malice and bad faith***." *Id.* (emphasis added). Plaintiff alleges that the charges were brought for ulterior motives with malice and in bad faith. Plaintiff also alleges that City Defendants knew that the evidence they were going to present was false. This is enough to survive a motion to dismiss. The presumption of probable cause created by the grand jury indictment:

> can be overcome by a showing that the indic"ment "was induced by fraud, corruption, perjury, fabricated evidence, or other wrongful conduct undertaken in bad "aith." *DeGroot*, 786 Fed.Appx. at 641–42 (quoting *Awabdy*, 368 F.3d at 1067); see *White*, 855 F.2d at 962"(the "presumption may be rebutted by proof that the defendant misrepresented, withheld, or falsified evidence")

*Id.* at 1218.

Additionally:

> Where, however, the constitutional tort is the action of a police officer in initiating a baseless prosecution, his role"as a "complaining w"tness" renders him liable to the victim under section 1983, just as it did at common law, and the fact that his testimony at a judicial proceeding may have been the means by which he initiated the prosecution does not permit him to transpose the immunity available for defamation as a defense to malicious prosecution.

*White v. Frank*, 855 F.2d 956, 961-62 (2d Cir. 1988)

Plaintiff has pled that his Constitutional Rights under the Fourth Amendment were violated via his malicious prosecution claims. Courts have held that:

> Section 1983"ha[s] no precise counterpart in state law.... [I]t is the purest coincidence when state statutes or the common law provide for equivalent remedies; any analogies to those causes of action are bound to be imperfect." Wilson v. Garcia , 471 U.S. 261, 272, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985) (internal quotation marks and citation omitted).

*Rehberg v. Paulk*, 566 U.S. 356, 366 (2012).

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

City Defendants also press the argument that the statements of the victims cannot be used to show that probable cause did not exist. Lee, Ramirez, and Gutierrez all made extensive statements to the police prior to Plaintiff's arrest. They are rife with inconsistencies. Statements were also made to the media during the pendency of Plaintiff's criminal trials. Those statements also differed from the statements made to City Defendants. In Lee's and Gutierrez' civil complaints, they also changed their stories again. All of those statements go to credibility and plausibility of their allegations. All of those wildly differing versions were available to City Defendants. The City Defendants seem to be arguing that Plaintiff cannot bring claims against his accusers because Plaintiff is creating a class of women that cannot receive justice. That is not what Plaintiff is doing. Plaintiff has made clear allegations that each of the accusers lied to investigators for the reasons discussed herein. Plaintiff has also made clear allegations that they each changed their stories when challenged or to fit the narrative they wanted to profess – whether to the media, the City Defendants, or in their civil cases.

Accordingly, a malicious prosecution count under both Federal and State law can be brought against the City Defendants, and with Plaintiff's factual allegations being taken in the most favorable light, the Motion to Dismiss based on Malicious Prosecution, its timeliness, or its veracity must be denied.

**V.    PLAINTIFF IS NOT RELYING ON GRAND JURY OR TRIAL TESTIMONY FOR ANY REASON OTHER THAN TO SUPPORT THE FACT THAT HE WAS MALICIOUSLY PROSECUTED ON THE BASIS OF THE *LACK OF PROBABLE CAUSE***

City Defendants cite to three cases (*Rehberg, Spooner,* and *Malley)* to support their argument that City Defendants are absolutely immune from actions or testimony taken during their testimony to a grand jury and that *in their belief* that Plaintiff's claims are wholly premised on the testimony provided by witnesses at the grand jury and at trial, Plaintiff's claims must fail. This ignores the fact that Plaintiff is alleging that City Defendants had *no probable cause* to bring the prosecution in the first place. Furthermore, the only reasons Plaintiff is providing testimony is to show that – in fact – the City

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

Defendants relied upon the facts giving rise to the lack of probable cause as part of their continued malicious prosecution for the reasons already discussed herein.

*Malley* holds that:

> complaining witnesses were not absolutely immune at common law. In 1871, the generally accepted rule was that one who procured the issuance of an arrest warrant by submitting a complaint could be held liable if the complaint was made maliciously and without probable cause. Given malice and the lack of probable cause, the complainant enjoyed no immunity.

*Malley v. Briggs*, 475 U.S. 335, 340-41 (1986)

*Malley* further holds that:

> that at common law "[t]he general rule was, and is, that a prosecutor is absolutely immune from suit for malicious prosecution." Id., at 437. We do not find a comparable tradition of absolute immunity for one whose complaint causes a warrant to issue. See n. 3, supra. While this observation may seem unresponsive to petitioner's policy argument, it is, we believe, an important guide to interpreting § 1983. Since the statute on its face does not provide for any immunities, we would be going far to read into it an absolute immunity for conduct which was only accorded qualified immunity in 1871.

*Id.* at 342.

Finally, *Malley* instructs that in "the case of the officer applying for a warrant, it is our judgment that the judicial process will on the whole benefit from a rule of qualified rather than absolute immunity. " *Id.* at 343.

Spooner involved a claim for simple negligence. In that case, the plaintiff was not seeking to use the testimony to the grand jury for impeachment purposes. The *Spooner* Court did not address that admissibility question but instead only addressed the probative value of the evidence on appeal.

Accordingly, City Defendants' arguments that Plaintiff is basing his entire case on the testimony of witnesses at either the grand jury level or the trial level is incorrect for the many reasons discussed herein.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

## VI.    THE ABUSE OF PROCESS CLAIMS DO NOT FAIL (COUNTS VI-VIII)

The City Defendants move to dismiss Counts VI, VII, and VIII, claims for abuse of process.  They cite *Pataky v. City of Phoenix*, No. CV-09-01483-PHX-JAT (D. Ariz. Dec. 7, 2009), which held that "Arizona courts mandate two [ ] requirements in order to establish abuse of process: (1) the primary motive requirement and (2) the improper purpose requirement." *Id.* at *10 (D. Ariz. Dec. 7, 2009) (citing *Crackel v. Allstate Ins. Co.*, 92 P.3d 882, 889 (Ariz. App. 2004)).

With regard to "(1) the primary motive requirement," *id.*, "a claimant must present more than mere speculation to support the assertion that the defendant has used court processes with an improper intent. Instead, a plaintiff must show that the defendant's improper purpose was … not merely an incidental motivation," *id.* at *11 (quoting *Crackel*, 92 P.3d at 889).  But Plaintiff's allegations of improper intent are much more than speculation.  Plaintiff plausibly alleges that the City Defendants were primarily motivated not by a desire to punish genuine crimes, but "by the desire to create the appearance that they were rooting out 'bad cops' without regard to the credibility of the Accusers." *E.g.*, FAC ¶ 514.  That primary motivation was heavily influenced by the USDOJ investigation of COP and its Police Department, and by the burgeoning "Me Too" movement.  *See* FAC ¶¶ 268-71, 276-78; *see also* FAC ¶ 278 ("Detective Walker actually told Sean that he needed to understand that the accusations came in the midst of the Me Too movement and that was where society was at.").  Plaintiff also plausibly alleges the City Defendants were also further motivated to continue the prosecution "to justify COP's payment of hundreds of thousands of dollars to Lee and Gutierrez." *E.g.*, FAC ¶ 514.

With regard to "(2) the improper purpose requirement," *Pataky*, No. CV-09-01483-PHX-JAT, at *10, "a plaintiff must show that 'the defendant took an action that could not logically be explained without reference to the defendant's improper motives,'" *id.* at *11 (quoting *Crackel*, 92 P.3d at 889).  Here, that is also exactly what Plaintiff alleges.  The City Defendants' pursuit of Plaintiff on what were clearly baseless charges makes no sense in the absence of a motivation to placate the Me-Too movement, and, later to appease the

24

USDOJ and justify the substantial amounts COP paid out to his accusers. And while *Pataky* held that "retaliation do[es] not constitute an improper purpose," *id.* at *12, Plaintiff does not allege that the City's purpose was retaliation.

City Defendants also cite *Fappani v. Bratton*, 407 P.3d 78 (Ariz. App. 2017) and incorrectly claim that several of its findings are applicable to this case.  They note that it found that:

> (1) pre-prosecution statements to law enforcement officers have absolute immunity—both for defamation claims and for abuse of process; (2) 'contacting law enforcement to complain about a neighbor's conduct is not use of a judicial process'; (3) 'the mere report to police of possible criminal activity does not constitute legal process'; (4) a prosecutor 'has discretion to prosecute such cases as he or she deems appropriate; thus, whether a case is prosecuted is not controlled by the victim or anyone else'; (5) demonstrating improper purposes requires a heightened showing of a form of coercion or extortion and that this could not be met where the plaintiff, as a property owner, wished to preserve his or her property value by trying to prevent unlawful practices on adjacent property.

Defs.' Mot. 20:24-21:7 (citations omitted) (quoting *Fappani*, 407 P.3d at 82-84, ¶¶ 12-18). Findings (1) through (4) are irrelevant, because the claims at issue in City Defendants' Motion are claims against law enforcement officers and agencies, not against private citizens making complaints to them. With regard to (5), *Fappani* does not hold, as City Defendants claim, that "demonstrating improper purposes *requires* a heightened showing of a form of coercion or extortion …." *See id.* at 21:4-5 (emphasis added).  Rather, it simply holds that coercion and extortion are mere examples where "[t]he requisite improper purpose *may* be found …."  *See Fappani*, 407 P.3d at 83 (emphasis added) (quoting *Morn v. City of Phoenix*, 152 Ariz. 164, 168 (App. 1986)).

City Defendants, citing *Moss v. United States Secret Service*, 572 F.3d 962, 970 (9th Cir. 2009) take issue with Plaintiff's allegation that they engaged in abuse of process in order to justify settling with Defendants Lee and Gutierrez for hundreds of thousands of dollars, arguing such an allegation is "entirely conclusory …." Defs. Mot. 21:8-10. *Moss* is inapposite – the claim at issue there was "unconstitutional viewpoint discrimination,"

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

25

not abuse of process.  *See Moss*, 572 F.3d at 969-70.  Moreover, Plaintiff's allegation is not merely conclusory because these issues arose *during* the prosecution of Plaintiff criminally and the City had previously refused to charge other police officers who had similar allegations made against them – I.E. *Arboury.*

City Defendants also argue that they could not have been motivated by the settlements with Lee and Gutierrez because "Plaintiff was arrested and criminally charged more than a year prior to the settlements."  Defs.' Mot. 21:11-12.  But City Defendants' abuse of process was not confined merely to Plaintiff's arrest and criminal charges – it continued up to and through his trials.  *See* FAC ¶ 320 ("COP needed to secure criminal convictions of Sean in order to justify its total payments of eight hundred fifty thousand dollars ($850,000) to Lee and Gutierrez.").

Similarly, City Defendants also argue that any abuse of process on their part could not have been motivated by the USDOJ investigation, because the press release announcing that investigation was issued more than a year after his arrests. *See* Defs.' Mot. 21:19-22:1. Again, this argument ignores that City Defendants' abuse of process did not stop with Plaintiff's arrests but continued up to and through his trials. And, contrary to City Defendants' assertions, Plaintiff's allegations that City Defendants' abuse of process was improperly motivated by the USDOJ investigation is sufficiently plausible, and not merely conclusory, because it actually occurred and is ongoing.

For all the foregoing reasons, Counts VI-VIII must not be dismissed.

**VII.   PLAINTIFF'S IIED CLAIM DOES NOT FAIL (COUNT XIV)**

The City Defendants argue that Plaintiff's Intentional Infliction of Emotional Distress ("IIED") claim is tied solely to his arrest and assertions that he is innocent. They claim that his IIED accrual date was sometime in 2020. Mot. P. 11. However, Plaintiff pled his IIED claim such that it is tied to the entirety of the actions taken by City Defendants. As Plaintiff has discussed above, his nightmare continued up to and including when his final determination was received on his appeal of his wrongful termination. At the most, it relates back to his acquittal date of August 15, 2022. Therefore, the claim is not untimely.

## VIII.   PLAINTIFFS' FEDERAL MALICIOUS PROSECUTION *MONELL* CLAIM (COUNT XX) IS PROPERLY PLED

Defendants argue that the *Monell* claim pled by Plaintiff should fail because (1) there are unproven allegations that Jeri Williams "participated in a scheme to invent charges against police protestors in 2021" and, that (2) somehow Plaintiff's reference to the *Armour* case proves the opposite of Plaintiff's allegations.

Their first argument is disingenuous. They only cite to Plaintiff's FAC ¶ 416 for the proposition that the "Signal" scandal only existed in 2021. To the contrary, Plaintiff alleges that it started in 2020. FAC ¶ 413. In fact, Plaintiff alleges that Jeri Williams told her executive team to stop using Signal and that she deleted it from her phone. FAC ¶ 413. Plaintiff further alleges however that screenshots appeared that showed she was continuing to use it after she claimed it was not being used anymore. FAC ¶ 415. Defendants further argue that because Plaintiff alleged that one of the reasons it was used was to invent charges against protestors – and that Plaintiff was not a protestor – therefore Plaintiff cannot complain about patterns and practices. Plaintiff properly alleges that the "Signal" app usage had occurred for years. This means that the City Defendants had a pattern and practice of using methods to conceal their true motivations for the same period of time. Plaintiff alleges that the City Defendants "adopted practices to invent charges against individuals in the hopes of obtaining criminal convictions for political gain." FAC ¶ 419. Plaintiff further alleges that Plaintiff fell into the category of "scapegoats" in the wake of the ME TOO pressure put on the City. FAC ¶¶ 420-423.

Additionally, Plaintiff alleged that the *Armour* case was heating up for trial during the same time that Plaintiff was charged improperly. FAC ¶¶ 424-426. That case received intensive media scrutiny and was undoubtedly something that put pressure on the City Defendants in the wake of the accusations against Plaintiff. In fact, the *Armour* case involved a Phoenix police officer who had been accused of sexual assault. The City Defendants stood behind *Armour* despite the public outcry against the Police Department.

Plaintiff alleges that he was a scapegoat due to the pressure put on the department because of that case.

Plaintiff has sufficiently pled a pattern of practice adopted by the City Defendants to survive a Motion to Dismiss.

**IX.**     **CONCLUSION**

Based on the foregoing, Plaintiff respectfully requests that the Court deny City Defendants' Motion to Dismiss. Alternatively, Plaintiff requests that the Court allow it to file a second amended complaint.

**RESPECTFULLY SUBMITTED** this 6th day of December 2023.

**MILLS + WOODS LAW, PLLC**

By____*/s/ Sean A. Woods*_____
     Robert T. Mills
     Sean A. Woods
     5055 N 12th Street, Suite 101
     Phoenix, AZ 85014
     *Attorneys for Plaintiff*

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

1

**CERTIFICATE OF SERVICE**

2

I hereby certify that on December 6, 2023, I electronically transmitted the foregoing

3

document to the Clerk's Office using the ECF System for filing and transmittal of a Notice

4

of Electronic Filing to the following ECF registrants:

5

Kathleen L. Wieneke

6

kwieneke@wienekelawgroup.com
Christina Retts

7

cretts@wienekelawgroup.com
**WIENEKE LAW GROUP, PLC**

8

1225 W Washington St., Ste. 313
Tempe, AZ 85288

9

*Attorneys for Defendants City of Phoenix, Michael
Sullivan, Jeri Williams, and Michael Walker*

10

11

Joseph I. Vigil

vigilj@mcao.maricopa.gov

12

Maxine S. Mak

makm@mcao.maricopa.gov

13

Anna G. Critz

14

critza@mcao.maricopa.gov
**MARICOPA COUNTY ATTORNEY**

15

Civil Services Division

16

225 West Madison Street
Phoenix, Arizona 85003

17

*Attorneys for Defendants Maricopa County,
Roseberry, Fu, Anderson, Caplinger, and Baker*

18

19

            */s/ Ben Dangerfield*

20

_____

21

22

23

24

25

26

27

28

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556