Kathleen L. Wieneke, Bar #011139
Christina Retts, Bar #023798
WIENEKE LAW GROUP, PLC
1225 West Washington Street, Suite 313
Tempe, Arizona 85288
Telephone: (602) 715-1868
Fax: (602) 455-1109
Email: kwieneke@wienekelawgroup.com
Email: cretts@wienekelawgroup.com

*Attorneys for Defendants City of Phoenix, Walker, and Williams*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Sean Pena, an individual;<br><br>                              Plaintiff,<br><br>vs.<br><br>City of Phoenix, a governmental entity; County of Maricopa, a governmental entity; Michael Sullivan, Chief of the Phoenix Police Department; Jeri L. Williams, former Chief of the Phoenix Police Department; Deputy Maricopa County Attorney Jeffrey Roseberry and Jane Doe Roseberry; Maricopa County Deputy Attorney Catherine Fu and John Doe Fu; Maricopa County Deputy Attorney Sandra Anderson and John Doe Anderson; Maricopa County Attorney Samantha Caplinger and John Doe Caplinger; Maricopa County Attorney Michael Baker and Jane Doe Baker; Michael Walker; and Jane Doe Walker; Cynthia Ramirez; Krystoffer Lee; Lisa Gutierrez; Jarrett Maupin and Jane Doe Maupin; and Iesha Stanciel and John Doe Stanciel,<br><br>                              Defendants. | NO. 2:23-cv-02156-SPL<br><br>**DEFENDANTS CITY OF PHOENIX, WILLIAMS, AND WALKER'S MOTION TO DISMISS AND CERTIFICATE OF CONFERRAL** |

In the summer of 2020, Plaintiff was arrested and then indicted for the sexual assault of three unrelated women. The fact that he was ultimately acquitted has no bearing on the existence of probable cause—which defeats his untimely claims. *See Borunda v. Richmond*, 885 F.2d 1384, 1389 & n.3 (9th Cir. 1988) ("The state's failure to prove guilt beyond a reasonable doubt does not mean in connection with the arrests that it did not meet the lesser

probable cause standard…"). The City Defendants[1] did not prosecute Plaintiff. Plaintiff's acquittal was not binding in Plaintiff's subsequent Civil Service hearing, as the relevant standard there is preponderance of the evidence—not guilt beyond a reasonable doubt.

The far-fetched tale of conspiracy that Plaintiff tries to weave relies upon events for which absolute immunity applies—testimonial, crime victim, prosecutorial, and judicial.[2] Plaintiff seeks to prop up this conspiratorial tale with irrelevant events occurring months, if not years, after his arrest. Even though Plaintiff was arrested after a Grand Jury indictment on August 12, 2020 (First Amended Complaint (Doc. 1-1 at 80-159) ("FAC") ¶ 347), he speciously claims that "prosecutors were motivated to justify COP's [civil] settlements with Sean's Accusers, by the MeToo movement, and by the USDOJ's ["United States Department of Justice"] investigation." (FAC ¶ 355). Yet, Plaintiff acknowledges that: (1) two of his "accusers" filed separate civil lawsuits after his indictment (FAC ¶ 306, Nov. 25, 2020; FAC ¶ 310, June 18, 2021); (2) the December 1, 2020, press conference where Defendant Lee allegedly made false statements with Defendant Rev. Maupin was months after Plaintiff's arrest[3] (FAC ¶ 163); (3) the civil cases were not settled until the summer of

---

[1] Former Chief Williams, Detective Walker is now Sergeant Walker, and the City. Defendants certify conferral prior to filing this Motion to Dismiss, in the form of lengthy meet and confer correspondence, sent on October 18, 2023. *See* Ex. 1. Defendants sent follow up correspondence about the meet and confer on October 26, 2023, October 27, 2023, and November 6, 2023. The City and Chief Sullivan then filed a Motion to Dismiss. In Response, Plaintiff agreed to voluntary dismissal of all claims against Chief Sullivan and only some claims against the City. (Doc. 37). This Court then entered an Order denying the City's Motion to Dismiss as moot in light of the dismissal. (Doc. 42). The City Defendants are refiling this Motion to Dismiss to address the remaining claims that were not dismissed against the City and to address claims against Walker and Williams, and have removed all arguments that are moot given the voluntary dismissal. Defendants sent additional meet and confer correspondence on December 9, 2023.

[2] *See Ledvina v. Cerasani,* 213 Ariz. 569, ¶ 14 (App. 2006) (absolute immunity to citizen crime victims' statements to the police); *Green Acres Tr. v. London*, 141 Ariz. 609, 612 (1984) (judicial proceedings privilege); *Rehberg v. Paulk*, 566 U.S. 356, 369 (2012) (immunity for testifying witnesses)*; Garmon v. County of Los Angeles*, 828 F.3d 837, 842-43 (9th Cir. 2016) (prosecutors are entitled to prosecutorial immunity "when performing functions 'intimately associated with the judicial phase of the criminal process.'"). This immunity also applies to the victims.

[3] The Court can hardly accept the implausible contention that the City was conspiring with Defendant Rev. Maupin, given his long history of outspoken criticism of the City and its officers.

2021 (FAC ¶ 308, June 2, 2021; FAC ¶ 314, November 17, 2021), and (4) the DOJ announced an investigation in August of 2021 (FAC ¶¶ 268-271). These after-the-fact events are wholly irrelevant, inflammatory, and reference to them violates Rule 8.

Plaintiff has thrown everything at the wall, including credibility attacks on the victims[4], reliance on inadmissible Rule 404(b) "bad act" evidence, and inadmissible polygraph results—hoping that something might stick. See *Hansen v. Chon-Lopez*, 501 P.3d 762, 769, ¶ 21 (Ariz. App. 2021) ("We hold that [polygraph] evidence our courts have determined both unreliable and persuasive cannot be sufficient to deter a grand jury from finding probable cause."). This lawsuit seeks to flip our criminal justice system on its head, placing upon the police the obligation to act as the final arbiter of truth, conducting trials on the merits instead of making probable cause determinations. *Cf. Baker v. McCollan*, 443 U.S. 137, 145 (1979) (the constitution does not require error-free investigations as "[t]he ultimate determination of such claims of innocence is placed in the hands of the judge and the jury.").

In cases involving competing evidence and credibility questions, it is the criminal jury's responsibility to make determinations of fact—through the lens of rigorous cross-examination. It is not a law enforcement officer's job to decide that a victim's account should be disregarded because she was allegedly intoxicated or had used drugs in the past, has problems in her life, or has an unrelated criminal history. This is victim blaming and police departments and colleges have been sued for engaging in it. *See Wright v. City of Philadelphia*, No. 01-6160, 2007 WL 951421, 2007 U.S. Dist. LEXIS 21725, *10 (E.D. Pa. Mar. 27, 2007) (addressing claims that there was a *Monell* custom and policy of victim blaming, and/or shunting or unfounded claims of sexual assault). Allowing this case to move forward would endorse the creation of a class of women who could never even reach the halls of justice, those who have not had perfect lives and conduct—a class of women

---

[4] Defendants Lee, Gutierrez, and Ramirez, as the complaining parties in the police reports, were identified as victims in the criminal proceedings and retain victim rights. As a result, they will be identified as such in this pleading.

that are undoubtedly the most disadvantaged and vulnerable in our population. The Defendants' Motion to Dismiss should be granted in its entirety, without leave to amend because of futility.

## I.    FACTUAL BACKGROUND

On August 26, 2018, Plaintiff arrested Ramirez after she was found having sex in a vehicle. (FAC ¶¶ 45-46). Plaintiff transported her to jail, and upon arrival, she reported to jail staff that Plaintiff had sexually assaulted her. (FAC ¶ 69). When interviewed, Ramirez told Detective Walker that the vehicle came to a stop at a railroad crossing, Plaintiff asked her to show him her breasts, he walked to the rear driver's side, and put his erect penis in her mouth. (FAC ¶ 72). Video footage was retrieved from a nearby business which allowed Defendant Walker to determine the vehicle stopped at the crossing for one minute and 39 seconds (but did not show the patrol vehicle) and, thus, could not corroborate or refute the allegations. (FAC ¶¶ 94, 330). In the probable cause statement, Detective Walker noted that Plaintiff was excluded from the results of a DNA test taken after a sexual assault examination. (*Id*. at ¶ 330).

On June 1, 2019, Plaintiff had police contact with Lee and found drug paraphernalia in her purse. He told her he would let her go if she showed him where she bought drugs, and then transported her to the drug house and let her out of the vehicle. (FAC ¶¶ 115-116, 122, 125, 330). On November 20, 2019, Lee reported to a Phoenix police officer that Plaintiff "had touched her breasts and had her masturbate his penis during that encounter." (FAC ¶ 134). She told investigators that she gave Plaintiff a hand job. (FAC ¶ 143). Defendant Stanciel told police that "Lee had called her and related that a police officer had taken out his penis and asked her for oral sex, which she refused." (FAC ¶ 154). Plaintiff was arrested on March 9, 2020, and charged with the sexual assault of Ms. Lee. (FAC ¶ 549).

On August 5, 2019, Plaintiff responded to a call from Gutierrez that she was being threatened. (FAC ¶ 208). Plaintiff admits to transporting Gutierrez but claims he did so after voicing his opposition because of the earlier accusations that had been made against him.

(FAC ¶ 212). Despite Plaintiff's professed fear of false reports, he later initiated a phone call to Gutierrez—which she did not answer—prompting him to drive alone back to her house. (FAC ¶¶ 217-219). When Plaintiff arrived, she allegedly reported abuse by her fiancé and told him to meet her later in an empty lot. (FAC ¶ 220). Gutierrez later reported to a Tempe officer that Plaintiff sexually assaulted her and threatened to arrest her fiancé on an outstanding warrant. (FAC ¶¶ 235-237). Defendant Walker interviewed Gutierrez, who reported that Plaintiff called her and asked her to meet him in the empty field, and then when she did, Plaintiff sexually assaulted her there. (FAC ¶¶ 244-249). Plaintiff was arrested on July 24, 2020 and charged with the sexual assault of Gutierrez. (FAC ¶ 559).

The first grand jury convened on June 19, 2020 related to the accusations of Ramirez and Lee. (FAC ¶ 345); *See State v. Pena*, Case No. CR2020-001770 (Maricopa Cnty. Sup. Ct.).[5] The second grand jury convened on August 5, 2020 related to the accusations of Ramirez, Lee, and Gutierrez. (FAC ¶ 263, 345); *See State v. Pena,* Case No. CR2020-128297 (Maricopa Cnty. Sup. Ct.). The Grand Jury did not consider information from Plaintiff's attorney that he had allegedly passed a polygraph. (FAC ¶ 264-267).

Plaintiff was terminated from City employment on July 27, 2020. (FAC ¶ 381). Plaintiff filed his Civil Service appeal on July 30, 2020. *See* NOC, Ex. 2.[6] The criminal case related to Ms. Lee concluded on May 19, 2022. (FAC ¶ 195).  The criminal case related to Ms. Ramirez and Ms. Gutierrez concluded on August 15, 2022. (FAC ¶ 614). Plaintiff served his Notice of Claim on the City Clerk on February 10, 2023—more than 2 ½ years after his initial arrest. *See* Ex. 2. Plaintiff filed his lawsuit in Maricopa County Superior

---

[5] This Court may take judicial notice of filings in state court under Fed. R. Evid. 201. *Hammitt v. Lumber Liquidators, Inc.*, 19 F. Supp. 3d 989, 1004 (S.D. Cal. 2014).

[6] The Court may consider the Notice of Claim because it is referenced in the Plaintiff's Complaint and therefore not outside the pleadings. (FAC ¶ 42). *See Marder v. Lopez*, 450 F.3d 445 (9th Cir. 2006) (considering evidence if: the complaint refers to it; the document is central to the claims; and no party questions the authenticity).  The Notice of Claim is also a public record. *See Intri-Plex Technologies, Inc. v. Crest Group, Inc*., 499 F.3d 1048 (9th Cir. 2007) (court may take judicial notice of matters of public record without converting a pleading to a motion for summary judgment); *Phoenix Newspapers, Inc. v. Ellis*, 215 Ariz. 268 (Ariz. App. 2007) (notice of claim is a public record).

Court on August 8, 2023—almost 3 years after his initial arrest. (Doc. 1-1 at 168).

The FAC is replete with irrelevant claims that the victims changed their stories during the criminal trial (FAC ¶¶ 197, 202, 241)—facts clearly unknowable at the time of the arrest two years earlier.  Moreover, witnesses have absolute immunity for testimony under *Rehberg v. Paulk*, 566 U.S. 356 (2012) and no claim can be based upon any testimony—whether at grand jury, or trial.

In addition to the arguments below, because of the number of claims and legal defenses involved, the City Defendants have prepared a table of claims and defenses for clarity and the Court's convenience. The table is attached as Ex. 3. Plaintiff has agreed to voluntary dismissal of a number of claims and Defendants. (Doc. 37). Plaintiff voluntarily dismissed all claims against Maricopa County and the prosecutors. (Id.). Despite these dismissals, Plaintiff now claims that the City Defendants were prosecutors, which they are not.

## II.     LAW AND ARGUMENT

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Twombly*, 550 U.S. at 570). Plausibility is more than a "sheer possibility that a defendant has acted unlawfully." *Id*. If the allegations in a complaint "are so general that they encompass a wide swath of conduct, much of it innocent," they are not plausible. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008). In reviewing a Rule 12(b)(6) motion, a court need not accept as true "conclusory statements" or "legal conclusions," *Iqbal*, 556 U.S. at 678, nor must it draw "unreasonable inferences" or "unwarranted deductions of fact," *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Similarly, a complaint must not contain inflammatory, immaterial facts, or accusations. *See Donahoe v. Arpaio*, No. CV-10-2756-PHX-NVW, 2011 WL 5119008 (D. Ariz. Oct. 28, 2011) (addressing inappropriateness of citation to inflammatory accusations, including newspaper sources).

### A.     Plaintiff Failed to Comply with the Notice of Claim Statute: Improper Sum Certain, Lack of Facts Supporting the Sum Certain, and

**Untimeliness (Requiring Dismissal of Counts I-VIII, XIV, XV, XVI[7]).**

In Arizona, a party with claims against a public entity must file a Notice of Claim ("NOC") within one hundred eighty (180) days "after the cause of action accrues." A.R.S. § 12-821.01(A). "Any claim that is not filed within one hundred eighty days after the cause of action accrues is barred and no action may be maintained thereon." *Id*. For the purposes of the statute, "a cause of action accrues when the damaged party realizes he or she has been damaged and knows or reasonably should know the cause, source, act, event, instrumentality or condition that caused or contributed to the damage." A.R.S. § 12-821.01(B). "A plaintiff need not know all the facts underlying a cause of action to trigger accrual. But the plaintiff must at least possess a minimum requisite of knowledge sufficient to identify that a wrong occurred and caused injury." *Thompson v. Pima County*, 243 P.3d 1024, 1028, ¶ 12 (Ariz. App. 2010) (emphasis original) (internal quotation marks omitted). A plaintiff's NOC must strictly comply with the requirements of Section 12-821.01(A). *Falcon ex rel. Sandoval v. Maricopa Cnty.*, 144 P.3d 1254, 1256, ¶ 10 (Ariz. 2006) ("Actual notice and substantial compliance do not excuse failure to comply with the statutory requirements"); *Simon v. Maricopa Med. Ctr.*, 234 P.3d 623, 630, ¶ 23 (Ariz. App. 2010); *see also Deer Valley Unified Sch. Dist. No. 97 v. Houser*, 152 P.3d 490, 493, ¶¶ 8-9 (Ariz. 2007) (the language of A.R.S. § 12-821.01(A) is "clear and unequivocal" and therefore courts must give "determinative" effect to the statute's terms.).

In addition to timeliness, A.R.S. § 12-821.01 requires that the NOC contain "facts sufficient to permit the public entity or public employee to understand the basis upon which liability is claimed." *See* A.R.S. § 12-821.01(A). The NOC must "also contain a specific amount for which the claim can be settled and the facts supporting the amount." *Id.* The notice of claim statute is "clear and unequivocal," and the failure to comply with any aspect

---

[7] The only claims that are <u>not</u> untimely based on the statute of limitations are Count III (malicious prosecution for Ramirez) and Count V (malicious prosecution for Gutierrez) because the criminal cases for these victims ended on August 15, 2022, and Plaintiff filed suit on August 8, 2023. (*See* Doc. 1, p. 168). These claims are barred for other reasons, however, including an improper lump sum certain made against multiple defendants from different agencies.

of the statute prevents a plaintiff's claim from going forward. *Deer Valley*, 152 P.3d at 493, ¶ 9. A claimant's failure to comply with this requirement is not excused by actual notice or substantial compliance. *Falcon*, 144 P.3d at 1256, ¶ 10.

The purpose of the notice of claim statute is threefold: (1) it allows the public entity to investigate and assess its potential liability; (2) it permits the entity to consider the possibility of settling the claim before litigation; and (3) it assists the entity in its financial planning and budgeting. *Id.* at 492; *Martineau v. Maricopa Cnty.*, 86 P.3d 912, 915-16, ¶ 19 (Ariz. App. 2004). These underlying purposes help to "ensure that claimants will not demand unfounded amounts that constitute 'quick unrealistic exaggerated demands.'" *Deer Valley*, 152 P.3d at 493, ¶ 9. Absent a factual explanation of how the claimant supports his claims and settlement demand, public entities like the school district in *Deer Valley* are unable to realistically evaluate the claim and determine whether to settle or proceed with litigation.

### 1.    The Sum Certain and the Facts Supporting It Were Deficient.

Plaintiff's NOC was directed to three separate entities (City of Phoenix ("COP"), Maricopa County, and Tempe) and their employees. Despite advancing differing facts and legal theories of liability on claims that are subject to comparative fault as between different agencies' employees, Plaintiff made a single demand of $1,750,000.00 to settle his claims against the "offenders." This is clearly insufficient. Plaintiff was required to separate out his demand to provide sufficient notice to each agency. Unlike in *Donovan v. Yavapai Cty. Cmty. College Dist*. 244 Ariz. 608. *610 (App. 2018), where a Notice of Claim against different entities was found to be acceptable, in part, because the "letter did not set forth any specific claims against the other recipients," Plaintiff did make specific and distinct legal claims against multiple different entities. Plaintiff then lumped together all claims against these "offenders" in a single demand. *See City of Mesa v. Ryan*, 2023 Ariz. App. LEXIS 418 (App. 2023) (Notice of Claim insufficient and using the analogy of Rule 68 and failure to apportion a sum among the parties renders an offer invalid because it lacks specificity).

Plaintiff's lump sum demand to the different agencies (Tempe and Maricopa County did not even employ him) contains no facts supporting damages on his wrongful termination and breach of contract claims (Counts I & II); *Deer Valley*, 152 P.3d at 493, ¶ 9 (claimants must "explain the amounts identified in the claim by providing the government entity with a factual foundation to permit the entity to evaluate the amount claimed."). Plaintiff fails to set forth any facts supporting the novel theory that the City breached its Memorandum of Understanding (MOU) with Plaintiff's union by terminating his employment. In addition, the FAC alleges economic damages Plaintiff claims to have suffered that are not in his NOC. (FAC ¶¶ 427-455, *Cf.* Ex. 2.). His NOC contains no demand for lost wages; no calculation of lost wages, anticipated years of work, hourly pay, fringe benefits; and no factual information about his anticipated pension and/or DROP benefits.

### 2. Plaintiff Failed to Timely Comply with the Notice of Claim Statute or the One-Year Statute of Limitations Applying to Counts I-II, IV (malicious prosecution-Lee), & VI-VIII, XIV-XVI.

Plaintiff served his NOC on the City Clerk on February 10, 2023. Because the majority of Plaintiff's state law claims accrued more than 180 days before Plaintiff served his NOC, they must be dismissed pursuant to A.R.S. § 12-821.01(A). *Humphrey v. State*, 466 P.3d 368, 375, ¶ 22 (Ariz. App. 2020) ("But the 2010 notice was filed more than two years after the date of the accident, which it was not timely if Plaintiffs cause of action accrued before May 2, 2010."); *Falcon*, 144 P.3d at 1256, ¶ 10 ("Actual notice and substantial compliance do not excuse failure to comply with the statutory requirements of A.R.S. § 12-821.01(A)."). In addition, Plaintiff was required to file suit within one year after the cause of action accrued, so the one-year statute of limitations also bars Counts I-II, IV, VI-VIII, XIV-XVI. *See* A.R.S. § 12-821.

***Wrongful Termination (Count I) and Breach of Good Faith and Fair Dealing (Count II):*** Plaintiff alleges that the City of Phoenix fired him on July 27, 2020. (FAC ¶ 381). Counts I and II are untimely by nearly two years. *See* A.R.S. § 12-821 (one year statute of limitations); A.R.S. §§ 12-541(3) and (4) (same). A wrongful termination claim accrues at the time Plaintiff was terminated. *See Scorzo v. Arizona Medical Board*, No. 1 CA-CV

9

15-0730, 2017 Ariz. App. Unpub. LEXIS 90, at *5, ¶ 9 (Jan. 26, 2017) (concluding that plaintiffs' wrongful termination claim accrued "when the Board terminated their employment in 2011"); *Bresser v. Menta Group*, 934 F. Supp. 2d 1150, 1160 (D. Ariz. 2013) (finding plaintiffs' suit untimely under the discovery rule because they filed suit more than one year after termination). The exception under A.R.S. § 12-821.01(C) for dispute resolution or administrative claim processes only applies when the administrative claims process is mandatory. *See Andress v. City of Chandler*, 7 P.3d 121, 123, ¶ 11 (Ariz. App. 2000) ("[W]e interpret A.R.S. § 12-821.01(C) as merely extending the time to serve a notice of claim when alternative dispute or administrative review procedures must or should be exhausted before the filing of a complaint."). Plaintiff has cited nothing suggesting that his Civil Service appeal was mandatory, and has not explained how that appeal related to his contract claims under the MOU.  Plaintiff's pursuit of his Civil Service appeal did not toll the statute of limitations on his contract claims. *Haggerty v. American Airlines*, 102 F. App'x. 623, 625 (9th Cir. 2004), *cert. denied* 543 U.S. 1161 (2005). Plaintiff's right to sue under Arizona's Employment Protection Act is a statutory right independent of his right to file a Civil Service appeal; his claims under the AEPA were fully available to him upon termination. *Id.* However, A.R.S. §§ 12-541(3) and (4) require actions for breach of contract and wrongful termination to be brought within one year after the cause of action accrues. And these sections do not provide an exception for dispute resolution or administrative claim processes. For all of these reasons, Counts I and II are time-barred under A.R.S. § 12-821 and A.R.S. §§ 12-541(3) and (4).

**Abuse of Process:** Plaintiff's abuse of process claims (Counts VII, VIII, IX) accrued once he knew he had been harmed, even if the process had not yet concluded. *See Cruz v. City of Tucson*, 243 Ariz. 69, 74 ¶¶ 21-22 (App. 2017). Where Plaintiff claims that the process should never have been initiated against him, his claims necessarily accrued at the time of the grand jury indictments—more than 2 ½ years before he served his Notice of Claim and more than three years before he filed suit.

***Intentional Infliction of Emotional Distress ("IIED") (Count XIV):*** Plaintiff's IIED claim is tied to his arrest and assertions that he is innocent.  As a result, his cause of action accrued at the time he was arrested for the crimes—in 2020. Under Arizona law, a claim for false arrest or imprisonment accrues on the date of arrest. *Hansen v. Stoll*, 636 P.2d 1236, 1242 (Ariz. App. 1981); *Rondelli v. County of Pima*, 586 P.2d 1295, 1297 (Ariz. App. 1978). Plaintiff cannot base his IIED on his alleged false arrest and imprisonment because those claims accrued on the date of his March 9, 2020 arrest and July 24, 2020 arrest (additional charges added). (FAC at ¶ 345, 347, 549).

***Aiding and Abetting (Count XV):*** Arizona recognizes aiding and abetting as embodied in Restatement § 876(b), *i.e.*, "that a person who aids and abets a tortfeasor is himself liable for the resulting harm to a third person." *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund*, 38 P.3d 12, 23, ¶ 31 (Ariz. 2002). Claims of aiding and abetting tortious conduct require proof of three elements: "(1) the primary tortfeasor must commit a tort that causes injury to the plaintiff; (2) the defendant must know that the primary tortfeasor's conduct constitutes a breach of duty; and (3) the defendant must substantially assist or encourage the primary tortfeasor in the achievement of the breach." *Id.* at 23, ¶ 34. In Count XV, Plaintiff merely rehashes the torts that were allegedly perpetrated—malicious prosecution, abuse of process, false arrest and imprisonment, and IIED—and claims generically that all of the Defendants aided and abetted one another.  Yet, where the underlying tort is untimely asserted, there cannot be any timely claim of "aiding and abetting" of that same tort.  Notably, none of the City Defendants are alleged to be the primary tortfeasor. Instead, the crux of Plaintiff's claims is that the City and County Defendants should not have believed Gutierrez, Lee, and Ramirez and should have instead believed the Plaintiff. Credibility determinations, however, are to be made by a jury, not by investigators or prosecutors.

To the extent that Plaintiff criticizes the presentation to the grand jury of the accuser's accusations, those claims accrued at the time of the presentation to the grand jury on June 19, 2020—years before the NOC was served and lawsuit filed. (FAC ¶¶ 345, 347).

1   Plaintiff does not and cannot allege that the City Defendants had any ability to read the

2   future to know that there would be future arrests of the accusers, that those arrests would

3   even be admissible in the criminal cases, or that the accusers would allegedly change their

4   testimony years after the arrests. (*See* Ariz. R. Evid. 404(b); FAC ¶¶ 110-111, 190-192).

5   Moreover, to the extent that this claim is based upon any alleged false testimony by anyone,

6   it fails based upon the immunity set forth in *Rehberg* (as discussed in further detail below).

7        ***Malicious Prosecution- Lee (Count IV):*** The prosecution related to Lee terminated

8   on May 19, 2022, yet Plaintiff did not timely file a Notice of Claim within 180 days of the

9   not guilty verdict, nor did he file his lawsuit by May 19, 2023. That Ms. Lee testified in the

10  second criminal trial related to claims by victims Gutierrez and Ramirez is irrelevant to the

11  Malicious Prosecution for her claims. Ms. Lee's testimony at a subsequent trial could not

12  result in an adverse criminal outcome relating to Ms. Lee's allegations. And, such testimony

13  is subject to immunity pursuant to *Rehberg.*

14       **B.     Rule 8 Violations—Improper Reference to Settlements and Other Inflammatory and Irrelevant Allegations.**

15       Plaintiff improperly references the City's settlements with Lee and Gutierrez,

16  occurring nearly a year after the Plaintiff was arrested and wholly irrelevant to probable

17  cause. *See* Fed. R. Evid. 408 (settlement evidence is not admissible "to prove liability or

18  invalidity of the claim or its amount."). Plaintiff has no standing to challenge the

19  settlements—where no liability was admitted—or the City's reasoning for entering into

20  them. *Nordstrom v. Ryan*, No. CV 15-02176-PHX-DGC, 2019 WL 2304039, 2019 U.S.

21  Dist. LEXIS 81730 at *7-8 (D. Ariz. May 15, 2019) (nonparty inmates lacked standing to

22  enforce a settlement agreement between the Arizona Department of Corrections,

23  Rehabilitation, and Reentry and an individual inmate). This is especially true where Plaintiff

24  received a direct benefit from the settlements because they served to limit his own liability,

25  exposure to punitive damages, and ensured that he would not testify during the pendency

26  of the criminal trial. Plaintiff's belief that the City would have won the cases had it elected

27  to try them is (1) entirely conclusory and (2) immaterial to his criminal cases. (FAC ¶ 319).

28

Plaintiff's speculative beliefs about the City's investigation, analysis, and future events (that he would be acquitted verses found guilty) are not relevant to any of the claims and are highly prejudicial. *Dansby v. Buck*, 373 P.2d 1, 8 (Ariz. 1962) ("It has always been the policy of the law to favor compromise and settlement; and it is especially important to sustain that principle in this age of voluminous litigation…"). "Rule 408 prohibits the use of settlement negotiations and agreements as evidence of liability or damages regardless of whether a party or nonparty to the negotiations and settlement seeks its introduction. This prohibition applies even when the settlement evidence favors the settling party." *See* Charles E. Wagner, Federal Rules of Evidence Case Law and Commentary 433 (1999-2000 ed.). All references to the settlements should be rejected as a basis for any claims.

Plaintiff's polygraph allegations should also be rejected. (FAC ¶¶ 7, 257-267, 290, 353, 384). Polygraph examinations are not admissible. *See United States v. Scheffer*, 523 U.S. 303, 317 (1998) (the military's per se rule excluding polygraph evidence does not violate a defendant's rights under the Fifth or Sixth Amendments). In *Hansen v. Chon-Lopez*, the Arizona Court of Appeals noted that "it is well settled in Arizona that polygraph evidence is unreliable and, absent a stipulation by the parties, categorically inadmissible at trial 'for any purpose.'" 501 P.3d at 768, ¶ 18. *Hansen* examined Arizona's historical cases and long-standing recognition that "polygraph tests continue to be 'unreliable and admission of their results risks usurping the role of the jury,' deficiencies that make such evidence inadmissible under *Daubert*." *Id. Hansen* confirmed that polygraph evidence should not be presented at grand jury and disagreed that such evidence is "clearly exculpatory:

> We hold that a species of evidence our courts have deemed both unreliable and persuasive cannot be sufficient to deter a grand jury from finding probable cause, just as the state should not be permitted to use such evidence to establish it. We are not alone in so holding. The majority of states do not permit polygraph evidence to be introduced to grand juries.

*Id.* at 769, ¶ 21. That Plaintiff allegedly passed a polygraph is irrelevant and not "clearly exculpatory." Plaintiff's tort claims cannot be based on failure of the grand jury to be presented with unreliable and inadmissible evidence. That Detective Walker allegedly

referenced a polygraph in interviewing Plaintiff is irrelevant as Plaintiff never submitted to a polygraph administered by the City. *See* A.R.S. § 38-1108(D) (polygraph confidential, has limited uses, and all other uses are prohibited). Similarly, while Plaintiff criticizes the fact that he could not present to the grand jury, there is no statutory right to such presentation. *See* A.R.S. § 21-412.

Similarly, references to the DOJ investigation are irrelevant and inflammatory. Plaintiff was arrested, indicted, and terminated more than a year prior to the DOJ's August 5, 2021 announcement of its investigation. (FAC ¶¶ 268-271). Even if the DOJ investigation was initiated before these events, evidence of it would not be admissible in this case. *See Talley v. Burt*, No. 16-cv-01318, 2019 WL 5842857, 2019 U.S. Dist. LEXIS 194272 (W.D. Pa. Nov. 7, 2019) (granting motion in limine to exclude DOJ memoranda as irrelevant); *Gill v. Magan*, No. C19-860 MJP, 2021 WL 1589521, 2021 U.S. Dist. LEXIS 78744 (W.D. Wash. 2021) (granting motion in *limine* to exclude reference to the DOJ investigation into the Seattle Police Department's practices, findings, and consent decree with the DOJ). The Ninth Circuit's decision in *Yousefian v. City of Glendale*, 779 F.3d 1010 (9th Cir. 2015), supports the City Defendants' position that the after-the-fact events complained of are irrelevant. *Yousefian* involved allegations of officer sexual misconduct and bias occurring after an arrest. *Id.* at 1014. Like in *Yousefian*, none of the after-the-fact events—DOJ investigation, MeToo movement, civil lawsuits, or the victim's alleged changes in their stories after the arrest—have any bearing on the initial investigation, probable cause, grand jury testimony, or police reports.

Finally, Plaintiff refers repeatedly to statements made to Tempe Detective Ratko Aleksis and how Gutierrez's statements to him supposedly differ from statements she made to Detective Walker. (FAC at ¶¶ 225-227, 233-237, 367). But Detective Aleksis worked for the Tempe Police Department and Plaintiff does not allege Detective Walker was somehow aware of these conversations during his investigation. These "facts" are similarly irrelevant.

**C.    Probable Cause Bars Counts III-VII, XIV-XVI, XX-XXI.**

14

Whether a given state of facts constitutes probable cause is always a question of law to be determined by the court. *Slade v. City of Phoenix*, 541 P.2d 550 (Ariz. 1975). Probable cause "is not a high bar," *Kaley v. United States*, 571 U.S. 320, 338 (2014), and "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018). The determination is based on the information the officer had at the time of the arrest, not on facts obtained later. *John v. City of El Monte*, 515 F.3d 936, 940 (9th Cir. 2008). "[It] is not the rule that police must investigate a defendant's legal defenses prior to making an arrest." *O'Doan v. Sanford*, 991 F.3d 1027, 1040 (9th Cir. 2021). Probable cause "does not depend on whether the suspect actually committed a crime," and "can well exist (and often does) even though ultimately, a jury is not persuaded that there is proof beyond a reasonable doubt." *See Yousefian,* 779 F.3d at 1014 (9th Cir. 2015). The probable cause standard is not a subjective standard but an objective one. *See State v. Penderson*, 424 P.2d 810 (Ariz. 1967).

"In deciding whether probable cause exists, an officer is 'not required to sift through conflicting evidence or resolve issues of credibility, so long as the totality of the circumstances present a sufficient basis for believing that an offense has been committed.'" *Ermini v. Scott*, 249 F. Supp. 3d 1253, 1271 (M.D. Fla. 2017); *see also Borgman v. Kedley*, 646 F.3d 518, 523 (9th Cir. 2011) ("Officers may rely on the veracity of information supplied by the victim of a crime."); *Rana v. Jenkins*, No. CV 23-4223 DSF, 2023 U.S. Dist. LEXIS 140007, *6 n.2 (C.D. Cal. Aug. 10, 2023) ("No Ninth Circuit precedent suggests that a witness's testimony can have so many credibility problems as to 'obliterate' probable cause."). "Law enforcement are not required to accept a suspect's story as true, and even a plausible explanation does not 'in any sense require the officer to forego arrest pending further investigation if the facts as initially discovered provide probable cause.'" *Nordlund v. Eubank*, No. 20-cv-00085-JMK, 2021 WL 6050674, 2021 U.S. Dist. LEXIS 242753, *9 (D. Alaska Dec. 21, 2021); *see also Rohde v. City of Roseburg*, 137 F.3d 1142, 1143 (9th Cir. 1998) (probable cause existed for an arrest even though the arrestee protested his innocence and offered a reasonable explanation for the allegedly illegal conduct).

That Plaintiff was not convicted of a crime is irrelevant and inadmissible in this subsequent civil case to prove that probable cause was lacking for his arrest because the burden of proof in a criminal case is entirely different from that in a civil case. *Baker*, 443 U.S. at 145 ("The Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide a cause of action for every defendant acquitted — indeed, for every suspect released."); *In re Pima County Juv. Dependency Action No. 118537*, 185 Ariz. 912 P.2d 1306, 1308 (App. 1994) ("That the father was acquitted of those charges only means that the state failed to establish the elements of the offenses beyond a reasonable doubt. Because the burden of proof in a dependency proceeding is only a preponderance of the evidence, the acquittal is of no consequence."). Notably, a grand jury indictment creates a presumption of probable cause that must be rebutted by Plaintiff. *Anderson,* 2023 U.S.App. LEXIS 17970, *20.

Here, none of the Defendants possessed knowledge of facts or circumstances conclusively establishing that the sexual assaults did not occur and, instead, possessed knowledge that a fair probability existed of criminal activity. (FAC ¶¶ 55 (transported Ramirez alone), 125 (alone with Lee), 248 (alone in a field with Gutierrez). *See Walz v. Randall*, 2 F.4th 1091, 1104 (8th Cir. 2021) (affirming finding of probable cause on claim of sexual assault when "[b]etween the only two firsthand witnesses, the deputies credited [the victim]. We disagree that the deputies in this case failed to conduct 'a reasonably thorough investigation' as required under [*Kuehl v. Burtis*, 173 F.3d 646 (8th Cir. 1999)]."). In *Anderson v. Knox Cnty.*, 2023 U.S.App. LEXIS 17970 (6th Cir. 2023), the Sixth Circuit rejected claims similar to those Plaintiff attempts to assert, including attempting to impute a witness's later lack of honesty to the investigating officers, asserting claims based upon grand jury testimony, and a challenge to credibility of witnesses as a basis for the lack of probable cause. The City Defendants were not present when the events occurred, body camera footage did not exist to document the interactions/transport, and independent third-party witness were not available to corroborate or refute the allegations as described by the victims.

Indeed, this was not a situation where the Plaintiff claimed that he never had any contact with Gutierrez, Lee, or Ramirez; he instead disputed the unlawful nature of the conduct. *United States v. Harness*, 453 F.3d 752 (6th Cir. 2006) (arrest was supported by probable cause where police had spoken directly to the victim, "nothing about the allegation itself cast doubt on the victim's reliability," and other witnesses confirmed that there was a "window of time within which the alleged sexual assault could have occurred."). For example, although Plaintiff claims that the victim's stories were not to be believed because of their relative access to his duty belt (FAC ¶ 135), this does not prove one way or another whether the events occurred. Equally plausible is that a larger man—in a position of authority—would not have a reasonable fear that a smaller woman would choose to risk her life by trying to access the weapons secured on his duty belt.

Likewise, although Plaintiff now contends that Defendant Lee was too intoxicated to believe, he makes a point of explaining that he was willing to release her if she disclosed information about where she obtained the drugs. (FAC ¶¶ 122-125). In other words, she was coherent and reliable enough to provide actionable information to Plaintiff to identify a drug dealer, yet was not to be believed when she reported to other officers that she herself was a victim. *Lallemand v. University of R. I.*, 9 F.3d 214, 216 (1st Cir. 1993) (concluding that the victim's alcohol consumption did not undercut probable cause because her identification of the suspect was positive, and there was "no suggestion that she was incoherent or vague when she gave her statements to police"). Similarly, Plaintiff admits that he called Gutierrez (but did not record the call) and met her in a field (but did not have any type of recording device). Although he now contends that he would not transport a woman alone given Ramirez's previous allegations, the fact that he agreed to meet Gutierrez alone without any form of recording device supports probable cause to arrest.

Plaintiff's allegations boil down to criticisms that the Defendants chose not to believe him over competing evidence, which is insufficient to defeat probable cause. *See Brockinton v. City of Sherwood*, 503 F.3d 667, 672 (8th Cir. 2007) (granting qualified immunity when, in the face of inconsistent accounts, an officer credited an alleged victim's

17

story and made an arrest on that basis); *Hawkins v. Gage Cnty.*, 759 F.3d 951, 957 (8th Cir. 2014) ("False accusations of sexual assault create a difficult situation for police. Just as the officers were required to respect [the suspect's] rights, they also were expected to address [the alleged victim's] allegations and purported threats against her and to respect her rights.").

Plaintiff has not pointed to any available information—<u>at the time of the arrests</u> and grand jury presentations—that was clearly exculpatory. *See Davis v. City of Apopka*, 356 F. Supp. 3d 1366, 1375-76 (M.D. Fla. 2018) (in a murder case where the suspect alleged self-defense, the police chief lacked knowledge of evidence and could not have done more to "obtain easily available information conclusively establishing that Plaintiff's use of force was not unlawful."); *Thorpe v. Duve*, 2020 U.S. Dist. LEXIS 177564 (N.D.N.Y. Sept. 28, 2020) ("And mere inconsistencies between testimony of witnesses and other evidence is not sufficient to overcome the presumption of probable cause, as it is up to the grand jury to assess witness credibility when determining whether the prosecutors have established a prime facie case against a criminal defendant.")

### D.     Immunity For Grand Jury Testimony (Requiring Dismissal of Counts III, IV, V, VI, VII, VIII, XIV, XV, XVI, XX, XXI).

Plaintiff makes numerous assertions that Defendant Walker provided misleading testimony at the grand jury. But Plaintiff merely criticizes the fact that Defendant Walker repeated what the victims told police in their interviews; there is no allegation that he reported what they said incorrectly. (FAC at ¶¶ 476-477, 490-491, 504-505, 622-623, 641-642). Plaintiff also takes issue with the testimony of Lee, Gutierrez and Ramirez at trial.[8] (*Id.* at ¶¶ 61, 67, 77, 79, 193-205, 241, 251-253, 358, 362, 363, 366, 371). The Supreme Court, however, has unambiguously held that witnesses are absolutely immune from liability for grand jury and trial testimony. *Rehberg,* 566 U.S. at 369 ("…a grand jury witness has absolute immunity from any § 1983 claim based on the witness' testimony.");

---

[8] While Defendants do not represent the victims, Plaintiff may not base any of the claims on this testimony and attempt to impute it to the City Defendants because immunity applies to all testimony.

*Malley v. Briggs*, 475 U.S. 335 (1996) (live trial testimony). "This rule may not be circumvented by claiming that a grand jury witness conspired to present false testimony or by using evidence of the witness' testimony to support any other §1983 claim concerning the initiation or maintenance of a prosecution." *Id*. The Arizona Court of Appeals recognized a similar rule under state law. *Spooner v. City of Phoenix*, 435 P.3d 462, 465-66, ¶ 6 (Ariz. App. 2018). *Rehberg* and *Spooner* are fatal not just to Plaintiff's malicious prosecution claims under Counts III, IV, V, XVII, XVIII, and XIX, but to all claims that are based upon testimony.  These include aiding and abetting under Count XV, intentional infliction under Count XIV, abuse of process under counts Vi-VIII, and the civil conspiracy claims under Counts XVI and XXI.

### E.      The Abuse of Process Claims Fail (Counts VI, VII, VIII).

To prove an abuse of process claim, Plaintiff must prove a misuse of a "judicially sanctioned" process. *Crackel v. Allstate Ins. Co.*, 92 P.3d 882, 887, ¶ 14 (Ariz. App. 2004). Proof of abuse of process requires some act beyond the initiation of litigation.  *Joseph v. Markovitz*, 551 P.2d 571, 574 (App. 1976) ("There is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions."); *Fappani v. Bratton*, 407 P.3d 78, 81, ¶ 10 (Ariz. App. 2017) (claim requires that the defendant used a judicial process during civil litigation or criminal prosecution). This tort requires that misuse of the process is "done under the authority of the Court." *See Udd v. City of Phoenix*, 2018 WL 6727267, 2018 U.S. Dist. LEXIS 215872 (D. Ariz. Dec. 21, 2018). The abuse of process claims cannot be based upon reports from victims to police, which is not an act done under the authority of the court.

In addition, Plaintiff must establish (1) primary motive and (2) improper purpose.[9] *Pataky v. City of Phoenix*, No. CV-09-01483-PHX-JAT, 2009 U.S. Dist. LEXIS 114037 (D. Ariz. Dec. 7, 2009). There can be no abuse of process claim when the defendant uses the process for its authorized or intended purpose, "even though with bad intentions, or if

---

[9] Defendants contend that probable cause and the indictment defeat the improper purpose prong.

there is an incidental motive of spite. Or an ulterior purpose to benefit the defendant. Thus, the entirely justified prosecution of another on a criminal charge…does not become abuse of process merely because the instigator dislikes the accused and enjoys doing him harm." *Id*. at *18-19.   For improper purpose, the Plaintiff must show that "in using the court process, the defendant took an action that could not logically be explained without reference to the defendant's improper motives." *Crackel*, 92 P.3d at 889, ¶ 19.

In *Pataky*, the plaintiff alleged that the defendants instigated an investigation and search warrant in retaliation for his First Amendment critical blog postings and his litigation against officers in a separate matter.  The Court held that these allegations failed to satisfy the primary motive requirement because the plaintiff "failed to allege more than mere speculation to support his assertion that Harris or the City used court processes with an improper intent, and that retaliation was not merely an incidental motivation." *Id*. The Court also noted that "allegations of retaliation do not constitute an improper purpose," particularly if supported by probable cause. *See also Iqbal*, 556 U.S. at 678 (labels and conclusions do not meet the requirements of Rule 8).

In *Udd*, the plaintiff made a claim for abuse of process after he was investigated for using a third-party's parking pass, categorized as a suspect in the incident report, referred to the City Prosecutor's Office, and then referred to a different agency for prosecution.  *Id.* In granting the City's motion to dismiss, the Court held that none of the acts alleged were "done under the authority of the court." In reaching this holding, the Court also cited *Fappani*, 407 P.3d at 83, ¶ 15, for the proposition that "[a] prosecutor has discretion to prosecute such cases as he or she deems appropriate…Demanding that the county attorney prosecute a criminal violation without more, does not implicate judicial process."

*Fappani* was a lawsuit between two neighbors alleging that one of the neighbors repeatedly engaged in a "long history of hostility and animosity" culminating in multiple calls to the Sheriff, demands to the County Attorney to prosecute noise violations, and citations that were ultimately part of a bench trial with a not guilty finding. 407 P.3d at 80-81, ¶¶ 3-5. The court upheld a ruling dismissing an abuse of process claim on a Rule

12(b)(6) motion, finding that there was no judicial process involved.  The court made the following findings that are also applicable to this case: (1) pre-prosecution statements to law enforcement officers have absolute immunity—both for defamation claims and for abuse of process, *id.* at 82, ¶ 12; (2) "contacting law enforcement to complain about a neighbor's conduct is not use of a judicial process," *id.*; (3) "the mere report to police of possible criminal activity does not constitute legal process," *id.* at 82, ¶ 14; (4) a prosecutor "has discretion to prosecute such cases as he or she deems appropriate; thus, whether a case is prosecuted is not controlled by the victim or anyone else," *id.* at 83, ¶ 15; (5) demonstrating improper purposes requires a heightened showing of a form of coercion or extortion and that this could not be met where the plaintiff, as a property owner, wished to preserve his or her property value by trying to prevent unlawful practices on adjacent property. *Id.* at 84, ¶ 18.

Here, Plaintiff alleges that the City Defendants engaged in abuse of process because "[t]hey were also motivated to justify COP's payment of hundreds of thousands of dollars to Lee and Gutierrez." (FAC at ¶¶ 514, 526). These allegations are entirely conclusory and disregard the timeline of events in this case—Plaintiff was arrested and criminally charged more than a year prior to the settlements. After-the-fact settlements can hardly be the motivation for prior arrests. Moreover, settling litigation is not an improper purpose, nor is the settlement itself a judicial process. *Moss v. United States Secret Service*, 572 F.3d 962, 970 (9th Cir. 2009) ("The bald allegations of impermissible motive on the Agents' part, standing alone, is conclusory and is therefore not entitled to an assumption of truth.") Finally, the settlements did not adversely impact the criminal trial (and in fact avoided a civil deposition during the pending criminal case).

Plaintiff also bases his abuse of process claim on the allegation that the City Defendants "were all aware of the USDOJ investigation and wanted to demonstrate to the USDOJ that they were taking action to root out 'bad cops.' To that end, Sean's career was sacrificed." (FAC at ¶ 270.) Plaintiff further alleges that "[u]pon information and belief, the USDOJ investigations heavily influenced both the internal investigation and the prosecution

of Sean." (*Id*. at ¶ 271). But the press release related to the DOJ, by Plaintiff's own admission, was dated August 5, 2021. (*Id*. at ¶ 268). This is more than a year after Plaintiff's March 9, 2020 and July 24, 2020 arrests and his July 27, 2020 termination. The DOJ investigation therefore could not possibly have had any impact on the decision to arrest Plaintiff.[10] The DOJ investigation is also not legal process and does not move Plaintiff's claim of motivated activity from "conceivable to plausible" such that Plaintiff may simply rely on "information and belief" to support his allegations. *Park v. Thompson*, 851 F.3d 910, 928-29 (9th Cir. 2017) (civil conspiracy claim plausible on information and belief where plaintiff adequately pled parallel facts indicating collusion between a witness and the district attorney's office).

The only court process that Plaintiff identifies is trial testimony, which is absolutely immune under *Rehberg*. In addition, Plaintiff fails to identify any motive similar to coercion or extortion, which is required to state a claim. Investigating crimes and reports of misconduct by its employees is not coercion or extortion.

### F. The Intentional Infliction of Emotional Distress ("IIED") Claim Fails (Count XIV).

In addition to being barred by *Rehberg* immunity and litigation privilege related to the allegations of settlements in the civil cases, Plaintiff's allegations fail to meet the elements of IIED. Under Arizona law, there are three elements to a claim for IIED: (1) "the conduct by the defendant must be 'extreme' and 'outrageous'"; (2) "the defendant must either intend to cause emotional distress or recklessly disregard the near certainty that such distress will result from his conduct"; and (3) "severe emotional distress must indeed occur as a result of defendant's conduct." *Udd v. City of Phoenix*, 2018 U.S. Dist. LEXIS 215872, *26-27. "[C]onduct necessary to sustain an intentional infliction claim falls at the very extreme edge of the spectrum of possible conduct." It 'must completely violate human dignity. The conduct must strike to the very core of one's being, threatening to shatter the

---

[10] The City Defendants are not responsible for criminal charging decisions, which are made by the prosecutor.

frame upon which one's emotional fabric is hung.'" *Id*.  Arizona courts have noted that "[i]t is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress." *Mintz v. Bell Atl. Sys. Leasing Int'l*, 905 P.2d 559, 563 (Ariz. App. 1995). In the Rule 12(b)(6) context, the "trial court is to act as a gatekeeper" to determine whether the alleged actions meet the standard. *Id.*

In *Udd*, the Court addressed a claim by a former City of Phoenix law enforcement officer that he was subject to improper investigations, referral for prosecution, and false statements about his guilt. The Court found that "[r]easonable persons could not find that investigating and recommending prosecution of individuals, where there is at least a modicum of evidence suggesting they have violated internal policy or law, constitutes conduct that "completely violate[s] human dignity" and "strike[s] to the very core of one's being, threatening to shatter the frame upon which one's emotional fabric is hung.'" 2018 U.S. Dist. LEXIS 215872, *30.  The court further noted that, as in *Mintz*, the Department "arguably had a 'legitimate business purpose' for its actions in ensuring that its employees abide by internal policies and the law and are punished for any violations.'" *Id*.; *Nelson v. Phoenix Resort Corp*., 888 P.2d 1375, 1386 (Ariz. App. 1994) (having armed security escort employee out of premises in middle of night, allowing employee to use bathroom on way out only if accompanied into stall by armed escorts, and firing employee in lobby in front of coworkers and media was not extreme and outrageous).

In assessing whether police conduct is extreme or outrageous, courts recognize that a plaintiff's rights may come secondary to a reasonable exercise of the police power. In *Rosenberg v. Martin*, 478 F.2d 520 (2d Cir. 1973), the court held that a fugitive's privacy rights must yield to the public interest in his apprehension and the consequent publication of anything that might be helpful toward that end. Similarly, in *Rondelli v. Cnty. of Pima*, 120 Ariz. 483 (App. 1978), the court rejected an IIED claim made by a plaintiff who alleged that he was falsely arrested and imprisoned, stereotyped as "Mafiosi," detained with his

1  family for an hour without explanation, searched and handcuffed in full view of motorists

2  on a street frequently used by neighbors and friends, and treated as a dangerous criminal.

3      Here, the City of Phoenix has a legitimate business purpose in ensuring that its

4  employees have not violated the law. Detective Walker's probable cause statement—used

5  to support the initial arrest—was fair and balanced in recounting the allegations and in

6  noting that additional evidence "could not corroborate or refute" the allegations. (FAC ¶

7  330). Plaintiff does not claim that Defendants Ramirez, Gutierrez, and Lee did not actually

8  make the allegations that Detective Walker attributed to them in the police report, or at

9  grand jury. Instead, Plaintiff agrees that the allegations were made, but apparently expected

10 the Defendants to outline the character flaws, sexual proclivities, history of drug use, and

11 prior arrests of the complaining parties. *Cf.* Fed. R. Evid. 404(b); 412.

12     In seeking to impugn the character of the victims, Plaintiff also relies on events

13 occurring months and years after the arrest, criminal charging, and grand jury

14 presentation—which are all irrelevant. (FAC ¶¶ 108-111 (Ramirez criminal history and

15 drug use); 115-116 (Lee child custody and drug use); 163 & 182 (Lee, Dec. 1, 2020 press

16 conference after arrest); 184 (Lee settlement, June 2021); 190-193 (Lee 2023 arrest); 196-

17 187 & 202 (Lee 2022 trial testimony); 207 (Gutierrez deferred prosecution, 2013); 241

18 (Gutierrez 2022 trial testimony); 257-267, 353 (post-arrest inadmissible polygraph); 268-

19 271 (August 2021 DOJ investigation); 304-320 & 355 (settlements); 356-375 (2022

20 criminal trial).

21     Similarly, the civil settlements are also irrelevant and Plaintiff seeks to turn on its

22 head the public policy favoring settlement. Restatement (Second) of Torts § 587 (1977)

23 (absolute privilege in litigation for defamation); *Messina v. Fontana*, 260 F. Supp. 2d 173,

24 179 (D.C. Cir. 2003) ("Private and amicable resolution of disputes is to be encouraged, not

25 discouraged, as would happen if every lawyer's letter could provoke a defamation suit.").

26 Further, Arizona recognizes "absolute immunity for all statements made in furtherance of

27 judicial proceedings," which in a criminal case is guided, in part, by the Victim's Bill of

28 Rights in Article 2, Section 2.1 of the Arizona Constitution. *Ledvina v. Cerasani*, 146 P.3d

70, 73-74, ¶¶ 7, 14 (Ariz. App. 2006); *see also Green Acres Trust v. London*, 688 P.2d 617, 621 (Ariz. 1984) (discussing judicial-proceeding privilege). Thus, Plaintiff cannot base his claims on statements of the victims, which represent the core of his claims.

**G.    The Malicious Prosecution Claims Fail (State Law—Counts III, IV, V; Federal law- Counts XVII, XVIII, XIX, and XX).**

Malicious prosecution claims—under both state and federal law—require Plaintiff to prove that the City Defendants initiated a criminal prosecution without probable cause that terminated in his favor and caused him damages. *See Slade*, 541 P.2d at 552. Even where an officer is involved in investigating a case, "a malicious prosecution action will not lie where a prosecuting attorney is left to judge the propriety of proceeding with the charge and acts on his own initiative in doing so." *Walsh v. Eberlein*, 560 P.2d 1249, 1252 (Ariz. App. 1976). Federal courts have also recognized that "filing a criminal complaint immunizes investigating officers from damages suffered thereafter because it is presumed that the prosecutor filing the complaint exercised independent judgment." *Newman v. County of Orange*, 457 F.3d 991, 993 (9th Cir. 2006) (cleaned up). Thus, "[t]he plaintiff bears the burden of producing evidence to rebut such presumption." *Id.*; *see also Rehberg*, 566 U.S. at 371–72 ("It would thus be anomalous to permit a police officer who testifies before a grand jury to be sued for maliciously procuring an unjust prosecution when it is the prosecutor, who is shielded by absolute immunity, who is actually responsible for the decision to prosecute."). A malicious prosecution claim may be "dismiss[ed]…at the pleading stage where the plaintiff has failed to allege facts sufficient to rebut the presumption of probable cause flowing from a grand jury indictment." *Hadid v. City of N.Y.*, 730 Fed.App'x 68, 71 n. 1 (2nd Cir. 2018).

Here, the City Defendants were not prosecutors and probable cause is established by the grand indictment as set forth above. Indeed, Plaintiff has dismissed the prosecutors and seeks to obtain the anomalous result recognized as impermissible in Rehberg—suing an officer when it is the prosecutor, shielded by immunity, who is responsible for the decision to prosecute.   The City Defendants are not lawyers, prosecutors; they had no decision

making regarding the testimony elicited at grand jury or trial from any witness, or closing arguments made by the prosecution. Plaintiff may not base this claim on the presentation of testimony at the grand jury, or trial, on the failure to present unreliable polygraph evidence at the grand jury (as discussed above), nor on any trial related strategy and presentation made by the prosecutor.

### 1. Because an Adequate Remedy Exists Under State Law, the Federal Claims Fail.

Plaintiff may not assert a Section 1983 claim for malicious prosecution unless there is either not an adequate remedy within the state system, or he asserts that the malicious prosecution was designed to deprive the plaintiff of a constitutional right.[11] *See Brez v. Kelman*, 773 F.2d 1026, 1031 (9th Cir. 1985). "Malicious prosecution, by itself, does not constitute a due process violation; to prevail [a plaintiff] must show the defendants prosecuted [him] with malice and without probable cause, and that they did so for the purpose of denying [him] equal protection or another specific constitutional right." *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir. 1995). Here, there is a state tort of malicious prosecution and Plaintiff has not alleged an equal protection violation. As a result, the MP claim under federal law should be dismissed on this basis alone.[12]

### H. Plaintiff's Federal Malicious Prosecution *Monell* Claim (Count XX) Is Not Properly Pled.

Plaintiff's *Monell* claim against the City is deficient for several reasons. First, "liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). Plaintiff failed to plead practices of sufficient duration, frequency,

---

[11] Plaintiff brings his federal claim under the Fourth, Fifth, and Fourteenth Amendments. It is unnecessary to plead the Fifth and Fourteenth Amendments as a basis of applicability to local governments. These claims may only be brought under the Fourth Amendment.

[12] The victims are not state actors under Section 1983 and the federal claims against them should be dismissed. *See Bollfrass v. City of Phoenix*, No. CV-19-04014, 2020 U.S. Dist. LEXIS 110051 (D. Ariz. June 23, 2020) (*sua sponte* noting the inadequacy of alleging a Section 1983 claim against a victim in a housing complex run by the City who called police to report an altercation and moved to obtain an injunction against harassment).

1    and consistency to constitute a *Monell* claim.

2          First, Plaintiff refers extensively to unproven allegations that Phoenix Police Chief

3    Jeri Williams "participated in a scheme to invent charges against police protestors in 2021."

4    (FAC at ¶ 416). However, these claims postdate Plaintiff's March and July 2020 arrests.

5    Plaintiff does not allege that he was a protester, or engaged in anti-law enforcement speech,

6    or was targeted because of his race and/or speech. The pending litigation regarding these

7    matters bears no relationship to the claims Plaintiff asserts. Because Plaintiff must prove

8    that the alleged policy, practice, or custom was "a moving force behind a violation of

9    constitutional rights," *Doughtery v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011), acts

10   that postdate the events in question necessary cannot establish either (1) the existence of a

11   policy at the time, or (2) that the policy was the "moving force" behind the alleged

12   constitutional violation.

13         Second, Plaintiff suggests that the *Anderson v. Armour* case further shows that the

14   City had a policy of "find[ing] scapegoats to offer to the public to avoid public scrutiny."

15   (FAC at ¶ 423). Yet, as Plaintiff acknowledges, the City did not terminate Armour despite

16   a civil lawsuit filed against him. (*Id.* at ¶ 425). This alone defeats the notion that the City

17   had a policy of offering up officers as scapegoats to the general public; in fact, the City

18   defended that claim at trial and prevailed. *Anderson v. Armour*, 2021 U.S. App. LEXIS

19   37155 (9th Cir. Dec. 16, 2021). Far from establishing a pattern or practice of "offering up

20   scapegoats," the *Armour* case suggests the opposite. And, *Armour* is distinguishable as the

21   County did not bring any criminal charges in that case. Thus, proceeding to defend a case

22   that is civil in nature only, is fundamentally different than the City's evaluation of liability

23   in a civil case involving the potential of a guilty verdict that would operate as a bar to

24   challenging the conduct at issue if there was a guilty plea.

25         Third, the two claimed predicate examples Plaintiff points to for his policy and

26   practice claim are so factually dissimilar that they cannot establish the existence of a policy

27   or custom. *See Hernandez v. City of Napa*, 781 F. Supp. 2d 975, 1002 (N.D. Cal. 2011)

28   (noting "two unrelated, isolated citizen's complaints relating to off-duty officers (both

factually very dissimilar from the circumstances in this case) are insufficient to establish the existence of a municipal policy or custom that led to Plaintiff's arrest.")

In essence, Plaintiff's *Monell* claim amounts to an assertion that the City has a policy of not using inadmissible 404(b) evidence and an accuser's character to pre-judge their assertions of sexual abuse. This is not an actionable *Monell* claim. Under Plaintiff's theory, he would have detectives making credibility determinations based upon the accuser's character, where the rules of evidence sharply curtail what is admissible to rebut sexual assault claims. *Cf. O'Shea v. Augustana Coll.*, 593 F. Supp. 3d 838 (C.D. Ill. 2022) (finding that a plaintiff stated a claim for retaliation based upon her report of sexual harassment where the investigator sought out humiliating information about her past and attempted to discredit her character, noting that this would dissuade a victim from bringing a complaint in the first place); *Doe v. Gwinnet County Pub. Schs.*, No. 18-cv-05278-SCJ, 2019 U.S. Dist. LEXIS 238339 (N.D. Ga. 2019) (finding sufficient allegations of violation of equal protection rights and failure to train where officers failed to address reports of sexual assault and engaged in victim blaming questions and interrogation);

### III.   CONCLUSION

Defendants' Motion to Dismiss should be granted, without leave to amend, based upon the legal bars to proceeding with the claims. Adding facts cannot cure the timeliness problems, NOC deficiencies, immunities existing under the law, or the existence of probable cause as a bar to most of the claims. In addition, Defendants believe that fees are warranted pursuant to 28 U.S.C. § 1927, 42 U.S.C. § 1988, A.R.S. § 12-349, A.R.S. § 12-341.01(A) & (C), because of the legal barriers argued above.[13] *Neeley v. Arizona*, No. CV-19-05899-PHX-DJH, 2021 U.S. Dist. LEXIS 207504 (D. Ariz. Oct. 26, 2021) (awarding fees for claims barred by prosecutorial immunity); *Yates v. Mack*, No. 20-00131-KD-B, 2022 U.S. Dist. LEXIS 112793 (S.D. Ala. June 27, 2022) (awarding fees to defendants in an ADA and Section 1983 claim after ruling in defendants' favor).

---

[13] Should this Court agree that the claims lack merit, Defendants will submit a fee application following any such ruling.

DATED this 22nd day of December 2023.

WIENEKE LAW GROUP, PLC

By:   /s/ Christina Retts
Kathleen L. Wieneke
Christina Retts
1225 West Washington Street, Suite 313
Tempe, Arizona 85288
*Attorneys for Defendants City of Phoenix,
Walker, and Williams*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 22, 2023, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Sean A. Woods
Robert T. Mills
MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, Arizona 85014
*Attorneys for Plaintiff*

I hereby certify that on this same date, I served the attached document by U.S. Mail, postage prepaid, on the following, who is not a registered participant of the CM/ECF System:

Lisa Gutierrez
400 W. Baseline Road
Tempe, Arizona 85283
Defendant Pro Se

By:     */s/ Mica Mahler*