Kathleen L. Wieneke, Bar #011139
Christina Retts, Bar #023798
WIENEKE LAW GROUP, PLC
1225 West Washington Street, Suite 313
Tempe, Arizona 85288
Telephone: (602) 715-1868
Fax: (602) 455-1109
Email: kwieneke@wienekelawgroup.com
Email: cretts@wienekelawgroup.com

*Attorneys for Defendants City of Phoenix, Walker, and Williams*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Sean Pena, an individual; | NO. 2:23-cv-02156-SPL |
| Plaintiff, | **DEFENDANTS CITY OF PHOENIX, WILLIAMS, AND WALKER'S REPLY IN SUPPORT OF MOTION TO DISMISS** |
| vs. | |
| City of Phoenix, a governmental entity; County of Maricopa, a governmental entity; Michael Sullivan, Chief of the Phoenix Police Department; Jeri L. Williams, former Chief of the Phoenix Police Department; Deputy Maricopa County Attorney Jeffrey Roseberry and Jane Doe Roseberry; Maricopa County Deputy Attorney Catherine Fu and John Doe Fu; Maricopa County Deputy Attorney Sandra Anderson and John Doe Anderson; Maricopa County Attorney Samantha Caplinger and John Doe Caplinger; Maricopa County Attorney Michael Baker and Jane Doe Baker; Michael Walker; and Jane Doe Walker; Cynthia Ramirez; Krystoffer Lee; Lisa Gutierrez; Jarrett Maupin and Jane Doe Maupin; and Iesha Stanciel and John Doe Stanciel, | |
| Defendants. | |

Plaintiff improperly attempts to avoid prosecutorial immunity by voluntarily dismissing the County Defendants and blaming the City Defendants for prosecutorial decisions they bear no responsibility for. Plaintiff repeatedly asserts that the City Defendants prosecuted, determined trial strategy, and "knowingly present[ed] and elicit[ed]

[false] testimony during Plaintiff's criminal trials." (Doc. 40, p. 12, ln. 22-26). The City Defendants did no such thing. The City was not the prosecuting entity; Defendant Walker was a testifying witness; and Defendant Chief Williams did not testify at all. None of the City Defendants are attorneys, made appearances on behalf of the State at trial, determined case or trial strategy, presented witnesses for direct testimony, made closing arguments, or had any authority to make any prosecutorial decisions during trial. *Smith v. City of N.Y.*, No. 04-CV-3286, 2010 U.S. Dist. LEXIS 88774, 2010 WL 3397683, at *9 (S.D.N.Y. Aug. 27, 2010) (no initiation of prosecution where officer's "only involvement in the prosecution was relaying to the ADA his observations and the facts known to him regarding plaintiff's arrest and testifying before the grand jury."). Plaintiff cannot concede dismissal of all claims against the prosecuting entity, but then attempt to skirt prosecutorial immunity by claiming that the City Defendants performed such functions. This argument fails legally and factually. *See Newman v. County of Orange*, 457 F.3d 991, 993 (9th Cir. 2006) (in a malicious prosecution claim under 42 U.S.C. § 1983, there is a presumption that a decision by a prosecutor to file and pursue a criminal case breaks the chain of causation and absolves the officers of liability).

Likewise, Plaintiff's reliance on alleged false testimony is barred by absolute immunity. *See Rehberg v. Paulk*, 566 U.S. 356 (2012); *Briscoe v. Lahue*, 460 U.S. 325, at 332-333 (1983) (a trial witness has absolute immunity with respect to any claim based on the witness' testimony); *Franklin v. Terr*, 201 F.3d 1098, 1102 (9th Cir. 2020) (absolute witness immunity also extends to preparatory activities "inextricably tied" to testimony, such as conspiracies to testify falsely). No claims can be based upon Defendant Walker's grand jury testimony where he merely recounted what the victims reported. Nor can the City Defendants be held responsible for later changes in the victim's testimony during the criminal trials. As recognized in *United States v. Burch*, 471 F.2d 1314, 1317 (6th Cir. 1973): "[i]t is generally accepted that a showing of inconsistent statements will not make the testimony incredible as a matter of law." Permitting liability in a case where probable cause is based upon the victim's report in a "he said she said" situation opens the door to

1   unending liability. Officers will either become the guarantors of the veracity of witnesses

2   that they exercise no control over, or be incentivized to let crimes occurring in private

3   languish due to the risk of litigation. "To the extent Plaintiff is suggesting that putting

4   witnesses with credibility issues in the grand jury is improper, the suggestion is farcical...A

5   grand jury is an investigative body entitled to weigh witness credibility...Indeed, even using

6   a witness with credibility issues at trial—which happens every day—is not a constitutional

7   violation unless the prosecutor knows or should know that the witness is lying." *See*

8   *McClean v. Cty. of Westchester*, 2018 U.S. Dist. LEXIS 204269 (S.D.N.Y. 2018).

9       Next, Plaintiff improperly conflates the differing standards applying to probable

10  cause, administrative, civil, and criminal proceedings. These distinctions critically impact

11  the viability of Plaintiff's claims. Use of a polygraph in an administrative proceeding has

12  no bearing on the admissibility in a criminal case. *See Hansen v. Chon-Lopez*, 501 P.3d

13  762, 769, ¶ 21 (Ariz. App. 2021) ("We hold that [polygraph] evidence our courts have

14  determined both unreliable and persuasive cannot be sufficient to deter a grand jury from

15  finding probable cause."). Settlement of a civil case—with a standard of preponderance of

16  the evidence—is not an admission of liability and has no bearing on criminal reasonable

17  doubt. *See Borunda v. Richmond*, 885 F.2d 1384, 1389 & n.3 (9th Cir. 1988) ("The state's

18  failure to prove guilt beyond a reasonable doubt does not mean in connection with the

19  arrests that it did not meet the lesser probable cause standard…"). An acquittal in a criminal

20  case does not preclude civil liability. And events happening months and years after the

21  Plaintiff's arrest—such as the DOJ investigation—are irrelevant to probable cause.

22      Three women, who had no connection to each other, came forward and made

23  allegations of abuse of power and sexual assault. Plaintiff seeks to have this Court overturn

24  decades of public policy favoring settlements of disputed claims and the law affording

25  immunity to victims and testifying witnesses in favor of accepting his credibility attacks on

26  the victims, reliance on inadmissible Rule 404(b) "bad act" evidence, and inadmissible

27  polygraph results. He advocates an outcome that would chill law enforcement officers from

28  investigating and presenting the reports of sexual assault victims to a grand jury based upon

wild speculative conspiracy theories and victim blaming. *McSherry v. City of Long Beach*, 584 F.3d 1129, 1136 (9th Cir. 2009) ("Surmise, conjecture, theory, speculation and an advocate's suppositions cannot do duty for probative facts and valid inferences."). In effect, Plaintiff advocates for a result directly contrary to the Supreme Court's concerns regarding law enforcement liability for testifying expressed in *Rehberg* and *Briscoe*.

## I.      LAW AND ARGUMENT

### A.      Plaintiff Improperly Transposes Claims Against Other Entities onto the City Defendants.

Liability against the City Defendants cannot be based on actions taken by the prosecutors, or the victims. *See Burgess v. Dejoseph*, 2017 U.S. Dist. LEXIS 39995, *16 (N.D.N.Y. 2017) ("the fact that . . . witnesses gave inconsistent statements is not extraordinary," as  inconsistencies do not rebut the presumption of probable cause because "it was the prosecutor, not the Defendant officers, who had the discretion and authority to decide what evidence to present to the grand jury, and [the prosecutor] was under no duty to present every item of arguably exculpatory evidence in seeking an indictment."). Plaintiff's theories run contrary to the holdings and public policy conclusions set forth in *Rehberg* and *Briscoe*. As the Supreme Court noted in *Rehberg*:

> It is of course true that a detective or case agent who has performed or supervised most of the investigative work in a case may serve as an important witness in the grand jury proceeding and may very much want the grand jury to return an indictment. But such a witness, unlike a complaining witness at common law, does not make the decision to press criminal charges.

> Instead, it is almost always a prosecutor who is responsible for the decision to present a case to a grand jury, and in many jurisdictions, even if an indictment is handed up, a prosecution cannot proceed unless the prosecutor signs the indictment. It would thus be anomalous to permit a police officer who testifies before a grand jury to be sued for maliciously procuring an unjust prosecution when it is the prosecutor, who is shielded by absolute immunity, who is actually responsible for the decision to prosecute. *See Albright v. Oliver*, 510 U.S. 266, 279, n. 5, 114 S. Ct. 807, 127 L. Ed. 2d 114 (1994) (Ginsburg, J., concurring) (the prosecutor is the "principal player in carrying out a prosecution")

*Id*. at 371-372. The *Rehberg* Court noted the following public reasons supporting absolute immunity: (1) preventing officers' attention from being diverted from enforcing the criminal law; (2) avoiding adversely influencing decisions on appeal and collateral relief in criminal cases; and (3) as recognized in *Briscoe*— "'the claims of the individual must yield to the dictates of public policy'" as without witness immunity, the truth seeking process at trial would be impaired and a witness testifying "might be inclined to shade his testimony in favor of the potential plaintiff" for "fear of subsequent liability." 566 U.S. 356, at 368-369.

Here, it was the Maricopa County Attorney's Office's decision to convene a grand jury and prosecute Plaintiff: "filing a criminal complaint immunizes investigating officers from damages suffered thereafter because it is presumed that the prosecutor filing the complaint exercised independent judgment." *Newman v. County of Orange*, 457 F.3d 991, 993 (9th Cir. 2006) (cleaned up). Plaintiff does not even address *Newman*. Plaintiff also fails to mention *Walsh v. Eberlein*, 560 P.2d 1249 (Ariz. App. 1976), which explains that, as a matter of state law, "a malicious prosecution claim will not lie where a prosecuting attorney is left to judge the propriety of proceeding with the charge and acts on his own initiative in doing so." *Id*. at 1252. Plaintiff does not allege that MCAO's decision to prosecute him did not reflect the office's independent judgment, or that the City Defendants' role involved anything other than recounting what the victims reported about the sexual assaults. *See State v. Moody*, 208 Ariz. 424 (2004) (rejecting claim of perjury for officer who recounted a witnesses account "while the information that Carlos Logan gave to the arresting officer might have been false, Detective Wright's reporting to a grand jury of that exchange between Logan and the arresting officer was not."). The City Defendants exercised no control over the victim's testimony at trial and cannot be held responsible for any impeachment of their testimony through cross-examination by the criminal defense.

**B.    Plaintiff Failed to Comply with the Notice of Claim Statute: Improper Sum Certain, Lack of Facts Supporting the Sum Certain, and Untimeliness (Requiring Dismissal of Counts I-VIII, XIV, XV, XVI).**

**1.    The Sum Certain and the Facts Supporting it Were Deficient.**

As argued in the Motion to Dismiss, Plaintiff's Notice of Claim ("NOC") is distinguishable from the content of the NOC in *Donovan v. Yavapai Cmty. Coll. Dist.*, 423 P.3d 403 (Ariz. App. 2018). Plaintiff makes no attempt to address the critical differences outlined by Defendants—that Plaintiff's NOC was specifically served on and directed to three separate entities (unlike *Donovan* where the other alleged responsible entities were not served and only mentioned in the body); stated differing facts and legal theories of liability against each separate entity and its employees; and provided a lump sum even though the claims asserted were subject to comparative fault. This type of lump sum demand would be wholly unacceptable in the Rule 68 context and does not enable the entity to evaluate the separate and distinct claims for damages based upon different theories of liability.

Next, Plaintiff is not merely required to provide facts supporting his legal theories, but must also provide facts supporting the sum certain. Plaintiff provided no facts supporting his claimed employment damages, yet he clearly possessed those facts as he outlined them in his complaint.  Plaintiff's citation to *Deer Valley Unified School v. Houser*, 214 Ariz. 293 (Ariz. 2007) is unhelpful, as the Court found the NOC demand insufficient where the plaintiff at least provided some calculation of employment damages. Here, Plaintiff provided absolutely nothing. This deprived the City of the ability to evaluate the employment related claims, which were lumped together with other tort claims subject to various immunities.

**2.    Plaintiff Failed to Timely Comply with the NOC Statute or the One-Year Statute of Limitations Applying to Counts I-II, IV (malicious prosecution-Lee), & VI-VII, XIV-XVI.**

***Wrongful Termination (Count I) and Breach of Good Faith and Fair Dealing (Count II):*** Lawyer argument is not a substitution for case law, nor can it override the plain language of the statutes at issue. *See* A.R.S. § 12-821 and A.R.S. §§ 12-541(3) and (4).

Plaintiff failed to address any of the legal arguments made by Defendants, nor did he distinguish any of the unambiguous case law holding that his wrongful termination was triggered when he was terminated—two years prior to service of the Notice of Claim. *Scorzo v. Arizona Medical Board*, No. 1 CA-CV 15-0730, 2017 Ariz. App. Unpub. LEXIS 90, at *5, ¶ 9 (Jan. 26, 2017); *Bresser v. Menta Group*, 934 F. Supp. 2d 1150, 1160 (D. Ariz. 2013) (finding plaintiffs' suit untimely under the discovery rule because they filed suit more than one year after termination). Plaintiff's request for an extension to engage in a non-mandatory Civil Service appeal process while his criminal cases were pending did not toll the statute of limitations under A.R.S. § 12-821 or A.R.S. §§ 12-541(3) and (4).  Plaintiff's right to sue under Arizona's Employment Protection Act is a statutory right independent of his right to file a Civil Service appeal. Sections 12-541(3) and (4) do not contain any provisions tolling the one-year statute of limitations for bringing a breach of contract/wrongful termination claim. And Plaintiff cites no case law for the proposition that his Civil Service appeal was a mandatory administrative claims process that tolled the one-year statute of limitations under § 12-821.01(C). Instead, he attempts to weaponize the City's agreement to continue the non-mandatory appeal process—one that he lost—until after his criminal cases concluded.

Moreover, Plaintiff's generic reference to the notice of appeal rights attached to the City's discipline notice has no bearing on timeliness. Finally, if Plaintiff's argument is premised upon the incorrect assumption that the Civil Service process is mandatory, he failed to follow that process and sue in the correct forum. He cites to nothing establishing that the next step in his appeal process—following the Civil Service Board's rejection of his arguments—was to file suit in federal court.

***Abuse of Process (Counts VII, VII, IX):***  Plaintiff makes no arguments that the abuse of process claims are timely and waived any arguments to the contrary. Plaintiff fails to address case law directly on point—*Cruz v. City of Tucson*, 243 Ariz. 69 (2017)—which holds that accrual starts once the Plaintiff had reason to know he was harmed—not at the conclusion of the process. The *Cruz* court rejected an argument that accrual was triggered

when a final judgment was issued in the previous case, citing to multiple cases from other jurisdictions concluding that abuse of process accrues upon initiation of the process.[1] *Id*. at 73. Abuse of process does not require favorable termination as an element of the claim. Where Plaintiff claims that he was innocent, the claim accrued at the time of the grand jury indictments—more than 2 ½ years before he served his Notice of Claim and more than three years before he filed suit.

  ***Intentional Inflection of Emotional Distress ("IIED") (Count XIV):*** Because Plaintiff voluntarily dismissed his false arrest and imprisonment claims (that were untimely), all portions of his IIED claim that are based upon these dismissed claims fail. (Doc. 37). Plaintiff asserts that the IIED claim is based on additional actions taken during the trial and up to the final determination on his employment appeal, but he cites no specific <u>City action</u> establishing when any alleged wrongful act took place to establish timeliness. The City is not the tortious actor as it relates to any of the victims' testimony at the criminal trial, or presentation of any of the criminal cases. Likewise, the City is not the tortious actor for purposes of the denial of Plaintiff's employment appeal. Accrual is not determined based on the last possible act, but when Plaintiff had notice to investigate—the date of his termination and the initiation of criminal charges.

  ***Aiding and Abetting (Count XV):*** The strength of a claim is not based upon the number of words—wholly lacking substance or citation to any dates—used to describe it. While Plaintiff repeatedly argues that there is an aiding and abetting claim based upon false arrest and imprisonment, he has voluntarily dismissed these claims. (Doc. 37). False arrest and imprisonment claims accrue at the time of the arrest. *Hansen v. Stoll*, 636 P.2d 1236, 1242 (Ariz. App. 1981). Untimely claims cannot be the basis for this derivative claim. Likewise, the City Defendants cannot be held responsible for aiding and abetting the voluntarily dismissed County Defendants either, particularly where prosecutorial immunity

---

[1] The holding in *Cruz* relating to accrual was later followed in *Lund v. Burch & Cracchiolo P.A.*, 2020 Ariz.App.Unpub.LEXIS 1241 (App. 2020).

applies, and the initiation of the criminal cases began at the time of the grand jury indictments (rendering all allegations untimely).

*Malicious Prosecution- Lee (Count IV):* Plaintiff engages in a frolic and detour in addressing the claims against Ramirez and Gutierrez, which Defendants did not argue were untimely for purposes of the Motion to Dismiss.  The City Defendants acknowledge that a claim for malicious prosecution "accrues only once the underlying criminal proceedings have resolved in the Plaintiff's favor." (Doc. 78, p. 7). However, the criminal case involving Lee terminated on May 19, 2022; Plaintiffs NOC was not timely served for this claim, nor was suit timely filed within one year. (FAC ¶ 195; Doc. 1-1 at 168). The 180-day NOC timeline and one-year statute of limitations was not extended based upon Lee's later testimony in Ramirez and Gutierrez' criminal case. Plaintiff cites no case law to support such an argument. Where witness testimony is subject to *Rehberg* absolute immunity, there is no basis for tolling because the alleged tortious testimony can never form the basis of a legal claim. In addition, Lee's later testimony cannot be ascribed to the City Defendants, who: (1) had no agency over the presentation of the second criminal case; (2) did not control the substance of Lee's testimony; and (3) are not prosecutors so did not elicit any testimony. There are no facts alleging that the City Defendants pressured the prosecutor in any manner. Indeed, Plaintiff alleges no facts overcoming the presumption of probable cause created by the grand jury indictment.  *Thorpe v. Duve*, 2020 U.S. Dist. LEXIS 177564 (N.D.N.Y. Sept. 28, 2020) ("And mere inconsistencies between testimony of witnesses and other evidence is not sufficient to overcome the presumption of probable cause, as it is up to the grand jury to assess witness credibility when determining whether the prosecutors have established a prime facie case against a criminal defendant.")

**C.    Rule 8 Violations- Improper Reference to Settlements and Other Inflammatory and Irrelevant Allegations.**

Plaintiff attempts to create false outrage by artificially broadening Defendants' request for Rule 8 dismissal, which only addressed discrete issues of improper reference to after-the-fact settlements, inadmissible polygraph evidence, the after-the-fact DOJ

investigation and MeToo movement, and Chief Williams use of Signal years after the arrest (but not tied in any way to Plaintiff). Plaintiff's wild speculative theories on these fronts fail and violate Rule 8. Plaintiff's arguments relating to the "voluminous mountains of evidence" and "highly technical" evidence relating to the criminal cases have nothing to do with these insular Rule 8 issues. (Doc. 78, p. 9). These extraneous arguments, however, support Defendants' arguments regarding the existence of probable cause.

### 1.      Polygraph Evidence is Inadmissible in a Criminal Case.

There is no dispute that the law precludes polygraph evidence from being utilized to determine probable cause, or in a criminal case in any capacity.  *See Hansen v. Chon-Lopez*, 501 P.3d 762, 769, ¶ 21 (Ariz. App. 2021). Rather than confront the law, Plaintiff points to Detective Walker's reference to a polygraph in conjunction with an administrative employment investigation. The quoted passage from Detective Walker specifically refers to "a big thumbs up from the department…that's going to help them look at this administratively…" (Doc. 78, p. 19).   Whether or not a polygraph can be used in an administrative investigation is wholly irrelevant to its admissibility in a criminal case or its alleged "exculpatory nature." Plaintiff improperly conflates an administrative proceeding with a criminal proceeding and probable cause, which runs contrary to *Garrity v. New Jersey*, 385 U.S. 493, 497 (1967). Detective Walker unambiguously referred to an administrative proceeding and Plaintiff's attempt to twist his words to falsely claim that he was referencing criminal liability should not be countenanced. Moreover, Plaintiff's frolic and detour has no relevance as he never took a polygraph offered by the City—he took one arranged by his criminal attorney.

### 2.      After-The-Fact Settlements are Inadmissible and Irrelevant.

Plaintiff derived a direct benefit from the settlements he criticizes, which limited his liability, exposure to punitive damages, and prevented him from having to choose between testifying in the civil case or asserting his Fifth Amendment rights. Without foundation, he now claims that the City should not have attempted to mitigate its risk given an unknown future outcome in Plaintiff's criminal trials. Plaintiff has no standing to challenge the City's

attorney-client privileged investigation or decision-making process relating to the settlement. He cannot litigate the propriety of the settlement and his back-door challenge is improper and must be rejected.

One need only look at the O.J. Simpson civil verdict to appreciate the absurdity of the settlement theory. Although O.J. Simpson was acquitted, a civil jury rendered a verdict against him to the tune of multiple millions of dollars. *See Ruvo v. Simpson*, 86 Cal. App. 4th 581 (Second Dist., Div. Two. Jan. 26, 2001). Plaintiff's acquittal has no bearing on a civil verdict as the burden of proof is far lower than reasonable doubt. Indeed, in his employment proceedings—using a lower standard—Plaintiff's termination was upheld. The City did not need to justify its settlements, which were not an admission of liability.

Next, Plaintiff misinterprets the limited exceptions to Fed.R.Evid. 408, which bars the use of settlements as substantive evidence of liability:

> Rule 408 prohibits the use of settlement negotiations and agreements as evidence of liability or damages regardless of whether a party or nonparty to the negotiations and settlement seeks its introduction. This prohibition applies even where the settlement evidence favors the settling party.

*See* Charles E. Wagner, Federal Rules of Evidence Case Law and Commentary 433 (1999-2000 ed.). Rule 408's exceptions are limited to exposing bias or prejudice in a witness—a motive to fabricate based upon the settlement. Here, the exceptions plainly do not apply as none of the City Defendants were present at the sexual assaults and their credibility is not in question. This case revolves around victim credibility and reliability, not the credibility of any of the City Defendants.

Plaintiff fails to connect the settlements to any of the individual City Defendants, or any claims of bias or prejudice. Defendant Walker: (1) invested well before the civil lawsuits were filed; (2) was not a party to the civil cases and did not participate in the settlement process; and (3) received no benefit from the settlement personally—he was not paid any money, nor did the settlement relate to any liability claimed against him. Moreover, the settlement cannot be used to impeach Detective Walker's testimony at the grand jury,

11

1    or at trial, because immunity applies to his testimony. Defendant Williams never testified
2    at the grand jury or at trial.

3         The settlements did not obstruct the criminal case either. Instead, settlement ensured
4    that Plaintiff did not testify in the civil cases. Had the victims demanded Plaintiff's
5    deposition he had two options: (1) testify and waive his Fifth Amendment Rights giving the
6    prosecution a "free look" before trial; or (2) assert his Fifth Amendment rights and be
7    subject to an adverse inference. Because there was no independent evidence directly
8    establishing the events alleged, an invocation would reasonably lead to an adverse
9    inference—dramatically driving up the settlement value.

10        Finally, without legal support, Plaintiff argues that the City improperly ratified the
11   victims' criminal testimony. (Doc. 78, p. 12, ln. 1-5). Once again, the City Defendants are
12   not prosecutors and did not elicit any testimony at the criminal trial.  Ratification does not
13   apply to third parties that the City Defendants exercise no control over.

14        **3.      Irrelevant After-the-Fact DOJ Investigation and MeToo.**

15        Once again, Plaintiff's conspiracy theory is based upon the false notion that Defendants
16   were prosecutors, which they were not. No alleged facts evidence that the Defendants
17   influenced the prosecutor in any way or made any prosecutorial decisions. Plaintiff cannot
18   be a "sacrificial lamb" when he was arrested more than a year prior to the DOJ's August 5,
19   2021 announcement of its investigation. (FAC ¶¶ 268-271). Plaintiff does not address any
20   of the case law cited by Defendants excluding reference to DOJ investigations, and other
21   after-the-fact events, that fail to causally connect to the claims made.  *Gill v. Magan*, No.
22   C19-860 MJP, 2021 WL 1589521, 2021 U.S. Dist. LEXIS 78744 (W.D. Wash. 2021)
23   (granting motion in *limine* to exclude reference to the DOJ investigation into the Seattle
24   Police Department's practices, findings, and consent decree with the DOJ); *Yousefain v.*
25   *City of Glendale*, 779 F.3d 1010 (9th Cir. 2015).

26        Moreover, these conspiracy theories are barred by the intracorporate conspiracy
27   doctrine. *Ziglar v. Abbasi,* 582 U.S. 120, 153 (2017) ("an agreement between or among
28   agents of the same legal entity, when the agents act in their official capacities, is not an

unlawful conspiracy."). The City Defendants cannot conspire within their own agency to act based upon the MeToo movement or later DOJ investigation.

### D. Probable Cause Bars Counts III-VII, XIV-XVI, XX-XXI.

Plaintiff does not address the Supreme Court's most recent decisions discussing the probable cause standard: *District of Columbia v. Wesby*, 583 U.S. 48 (2018), and *Kaley v. United States*, 571 U.S. 320 (2014). *Wesby* clarifies that probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." 583 U.S. at 57; *Yousefian v. City of Glendale*, 779 F.3d 1010, 1014 (9th Cir. 2015) (Probable cause "does not depend on whether the suspect actually committed a crime," and "can well exist (and often does) even though ultimately, a jury is not persuaded that there is proof beyond a reasonable doubt."). *Kaley* holds that probable cause "is not a high bar." 571 U.S. at 338. The inquiry focuses on what the arresting officer knew at the time of the arrest, not what they learned afterwards. *John v. City of El Monte*, 515 F.3d 936, 940 (9th Cir. 2008).

Plaintiff's argument against probable cause boils down to his belief that Detective Walker was obligated to credit his version of events over Ramirez, Lee, and Gutierrez. (Doc. 38 at 15-19). But "it is not the rule that police must investigate a defendant's legal defenses prior to making an arrest." *O'Doan v. Sanford*, 991 F.3d 1027, 1040 (9th Cir. 2021); *Ermini v. Scott*, 249 F. Supp. 3d 1253, 1271 (M.D. Fla. 2017) ("In deciding whether probable cause exists, an officer is not required to sift through conflicting evidence or resolve issues of credibility, so long as the totality of the circumstances present a sufficient basis for believing that an offense has been committed."); *Rana v. Jenkins*, 2023 U.S. Dist. LEXIS 140007, *6 n.2 (C.D. Cal. Aug. 10, 2023) ("No Ninth Circuit precedent suggests that a witness's testimony can have so many credibility problems as to 'obliterate' probable cause."). Probable cause does not require a conclusive determination that Plaintiff committed a crime and Walker was not obligated to credit Plaintiff's denials, or discredit Ramirez, Gutierrez, and Lee. Indeed, in *Anderson v. Knox Cnty.*, the Sixth Circuit rejected arguments similar to those made by Plaintiff regarding lack of probable cause, holding that:

1   (1) "[i]t's not enough that an officer is mistaken or negligent in determining witness

2   credibility; (2) "[a]n officer can rely on 'eye witness' statements' because they are 'first

3   hand observations' and so 'entitled to a presumption of reliability and veracity;'"; and (3) a

4   reporting witness's "lack of honesty can't be imputed to officers." 2023 U.S. App. LEXIS

5   17970, *14-16 (6th Cir. July 13, 2023).

6        Plaintiff also glosses over the fact that, in the probable cause statement incorporated

7   into the FAC at Paragraph 330, Detective Walker *told* the court that "Pena's DNA profile

8   was excluded from the profiles found on the evidence swabs," that "Pena adamantly denied

9   the allegations of sexual assault or having any sexual contact with [Ramirez]," and that

10  "[t]he video surveillance obtained from multiple locations could not corroborate or refute

11  the allegations." (FAC ¶ 330). At a preliminary hearing, the judge still found probable cause

12  to be established: '[a] magistrate's 'determination of probable cause should be paid great

13  deference by reviewing courts.'" *Illinois v. Gates*, 462 U.S. 213, 236 (1983). Thereafter,

14  Plaintiff was indicted by grand jury, which creates a presumption of probable cause that

15  must be rebutted by Plaintiff.  *Anderson v. Knox Cnty.*, 2023 U.S.App. LEXIS 17970 (6th

16  Cir. 2023); Maricopa County Superior Court criminal cases, CR2020-001770 & CR2020-

17  12897.

18       The facts, as alleged by Plaintiff, are that Detective Walker knew that Plaintiff

19  transported Ramriez alone (FAC ¶ 55), transported Lee alone (FAC ¶ 125), and was alone

20  in a field with Gutierrez. (FAC ¶ 248). As Defendants noted in their Motion (Doc. 33 at

21  16), the Eighth Circuit upheld a probable cause finding based solely on the accounts of the

22  alleged victim and the defendant. *Walz v. Randall*, 2 F.4th 1091, 1104 (8th Cir. 2021)

23  ("Between the only two firsthand witnesses, the deputies credited [the victim]. We disagree

24  that the deputies in this case failed to conduct a reasonably thorough investigation.")

25  (quotations omitted). Plaintiff does not address *Walz* in his Response either.

26       To sidestep this problem, Plaintiff relies heavily on admissions Ramirez allegedly

27  made at the criminal trial. (Doc. 38 at 5-6, citing FAC ¶¶ 72-74, 77, 84). But those

28  statements are irrelevant to the probable cause determination at the time of arrest because

they occurred years later. To the extent that Plaintiff relies on contemporaneous statements Ramirez supposedly made to Walker (Doc. 38 at 5-6, citing FAC ¶¶ 46, 52, 54, 72), he fails to plead facts demonstrating that Walker knew those statements were all false at the time of the grand jury. Plaintiff also relies heavily on the fact that the City closed an administrative investigation into Plaintiff's initial conduct with Ramirez. (Doc. 38 at 18; FAC ¶ 100). But the administrative inquiry is not subject to the same low standard that probable cause is.

Plaintiff argues that he plausibly alleged that Lee "had motive to lie and was angry at Plaintiff for preventing her from buying more drugs," and that "the City all knew these facts." (Doc. 38 at 19). Tellingly, Plaintiff does not cite any portion of his First Amended Complaint to support his assertion that the City knew Lee "had motive to lie" and "was angry at Plaintiff for preventing her from buying more drugs." Plaintiff did not even arrest Lee for drugs.

Plaintiff also relies heavily on *Donahoe v. Arpaio*'s statement that the existence or absence of probable cause is a jury question where the evidence is conflicting. (Doc. 38 at 19-20, citing *Donahoe*, 986 F. Supp. 2d 1091, 1104 (D. Ariz. 2013)). But critically, in *Arpaio*, the defendants either failed to include evidence or misrepresented the evidence they included in their probable cause statement, so all that remained would not have supported criminal activity at all, let alone probable cause. *Id*. at 1116-17. Here by contrast, Plaintiff acknowledges that Detective Walker's probable cause affidavit included the supposedly exculpatory evidence Plaintiff claims defeated probable cause. (FAC at ¶¶ 330, 332 ("Both PC statements for Ramirez and Lee state that there was no DNA or other evidence to corroborate the allegations made against Sean.").

**E.    Testimony at Trial and Grand Jury are Absolutely Immune (Requiring Dismissal of Counts III, IV, V, VI, VII, VIII, XIV, XV, XVI, XX, XXI).**

Plaintiff fails to acknowledge that the Supreme Court in *Rehberg v. Paulk*, 566 U.S. 356 (2012) unambiguously held that "a grand jury witness has absolute immunity from any §1983 claim based on the witness' testimony." *Id*. at 369. Bizarrely, Plaintiff claims he is not relying on Walker's grand jury testimony as a basis for his claims, rather that Walker's

absolutely immune testimony shows that "the City relied upon the facts giving rise to the lack of probable cause as part of their continued malicious prosecution." (Doc. 38 at 22-23). That amounts to a distinction without a difference which the Supreme Court expressly rejected. *Rehberg*, 566 U.S. at 369 ("[T]his rule may not be circumvented by claim that a grand jury witness conspired to present false testimony or by using evidence of the witness' testimony to support any other §1983 claim **concerning the initiation or maintenance of a prosecution**.") (emphasis added). If a witness is absolutely immune for statements made to a grand jury, those statements cannot be used against them *in any capacity*. Similarly, *Briscoe* bars any claims based upon trial testimony.

**F.      The Abuse of Process Claims Fail (Counts VI, VII, VIII).**

Plaintiff fails to establish the elements of this claim, which as a threshold matter requires actions taken under the authority of the court. *Fappani v. Bratton*, 407 P.3d 78, 81, ¶ 10 (Ariz. App. 2017). Once again, Plaintiff relies upon speculative theories relating to the MeToo movement, DOJ, and civil settlements, but as Defendants argued, none of these allegations relate to a judicial process. While Plaintiff attempts to distinguish *Fappani* on the basis that the claims at issue are "not against private citizens making complaints to them," this is exactly what this case is about. (Doc. 78, p. 24). Plaintiff sued the sexual assault victims, based upon their complaints to law enforcement, and he criticizes law enforcement's reporting and recounting of these complaints. Law enforcement investigation of the sexual assault allegations is not a judicial process.  The only judicial process at issue involves grand jury and trial testimony, for which immunity applies pursuant to *Briscoe* and *Rehberg*. Similarly, the settlements, the MeToo movement, and the DOJ announcement of an investigation—a year after the initial investigation and grand jury testimony—do not involve legal process either.  Plaintiff fails to cite any case supporting his theories, which seek to undermine public policy encouraging settlements and the finality they achieve. He urges this Court to upend decades of case law encouraging settlement to create a new category of litigation wherein a party benefitting from a settlement agreement can seek to collaterally attack it through satellite litigation.

Plaintiff has not established the "improper motive" prong either. Settling disputed claims is not an improper motive, nor is seeking to secure a conviction. *See Malibu Media, LLC v. Cuddy*, 2015 U.S. Dist. LEXIS 27713 (D.Co. 2015) (identifying courts holding that attempting settlement does not support a claim for abuse of process regardless of the parties' motivations); *Hampton v. Nustar Mgt. Fin. Group*, 2007 U.S. Dist. LEXIS 2072 (D.Nev. 2007) (using litigation as "a lever to obtain settlement is not an improper motive and would not demonstrate ulterior purpose other than resolution or settlement of the suit which is an acceptable use of the process."). As the Court noted in *McClean v. City of Westchester*:

> But it does not plausibly follow that merely losing evidence or eliciting testimony from a witness with credibility problems indicates that a defendant acted with the intent to do harm. Likewise, "tampering with evidence is not considered abuse of process because the goal or purpose — convicting the defendant — is a legitimate use of process." *Kraft v. City of N.Y.*, 696 F. Supp. 2d 403, 416 (S.D.N.Y. 2010), aff'd, 441 F. App'x 24 (2d Cir. 2011) (summary order). Thus, even intentionally losing evidence or suborning perjury, absent a collateral purpose beyond the desire to convict Plaintiff, is insufficient to state a claim for abuse of process.

2018 U.S. Dist. LEXIS 204269, *42-43 (S.D.N.Y. 2018). The abuse of process claim fails.

**G.      The IIED Claim Fails (Count XIV).**

Plaintiff only addressed the timeliness of his IIED claim, not the substantive failures outlined in Section F of the Motion to Dismiss. He fails to distinguish his claim from the case law cited by Defendants relating to arrests: *Rondelli, Rosenburg*, and *Nelson*. As a result, Plaintiff concedes that the claim fails on the merits. The IID claim cannot be based on actions taken by third-parties who were not agents of Defendants, testimony subject to absolute immunity, settlements that are encouraged by public policy, and the investigation of allegations of wrongdoing by a public employee. *Udd v. City of Phoenix*, 2018 U.S. Dist. LEXIS 215872, *26-27 (D.Ariz. 2018).

**H.      The Malicious Prosecution Claims Fail (State Law- Counts III, IV, V; Federal law- Counts XVII, XVIII, XIX, and XX).**

The malicious prosecution claim fails because the City Defendants were not prosecutors and probable cause is established by the grand jury indictment. *Hadid v. City*

*of N.Y.*, 730 Fed.App'x 68, 71, n. 1 (2nd Cir. 2018). As argued above, Plaintiff improperly seeks to attribute conduct of the MCAO to the City Defendants, which is impermissible.

In addition, the City Defendants argued that Plaintiff could not assert a Section 1983 claim for malicious prosecution unless Plaintiff had an inadequate remedy under state law or the malicious prosecution was designed to deprive Plaintiff of a constitutional right. (Doc. 33 at 25-26, citing *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir. 1995); *Brez v. Kelman*, 773 F.2d 1026, 1031 (9th Cir. 1985)). Plaintiff does not address this argument in his Response. He therefore concedes that dismissal is appropriate. LRCiv 7.2(i).

## I.  Plaintiff's Federal Malicious Prosecution *Monell* Claim (Count XX) Is Not Properly Pled.

Plaintiff's *Monell* claim relates only to <u>his</u> arrest and prosecution. *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). He identifies no prior similar alleged malicious prosecution that involves a conspiracy related to settlements and a later DOJ investigation. Indeed, the bizarre theories asserted by Plaintiff have no likelihood of ever repeating themselves. Plaintiff relies upon retired Chief Williams use of Signal, but in no way connects it to his arrest and prosecution.  Similarly, he claims there is a policy relating to "inventing" criminal charges, yet the City Defendants do not make charging decisions. His sole allegation relates to protester arrests in October of 2020 that have nothing to do with the investigation of employee misconduct and sexual assault. *Wettstein v. City of Riverside*, 2020 WL 2199005, *5 (C.D. Cal. 2020) ("While there is no per se rule for the amount of unconstitutional incidents required to establish a custom under *Monell*, one or two incidents ordinarily cannot establish a custom, while more incidents may permit the inference of a custom, taking into account their similarity, their timing, and subsequent actions by the municipality. The Ninth Circuit and district courts within the Ninth Circuit have repeatedly declined to infer a custom of constitutional violations based on two unconstitutional incidents alone.") (cleaned up) (collecting cases); *Wondie v. King County*, 2023 WL 22058, *3 (W.D. Wash. 2023) ("Typically, one or two instances of prior misconduct cannot

demonstrate a widespread custom or policy. . . And while prior cases of similar conduct may provide some evidence that a practice is so ubiquitous that it amounts to official policy, such cases are less helpful when they do not result in an adjudication of wrongdoing.") (citations omitted).

Plaintiff similarly fails to connect the *Armour* case in any meaningful way to his case. *Armour* was successfully defended and was not factually similar to the allegations made against Plaintiff by three separate women, who he admitted to transporting alone. Officer Armour was never criminally charged and the plaintiff in his civil suit made shifting allegations regarding his 2015 physical contact with her body during a search. *See Anderson v. Armour*, 2019 U.S. Dist. LEXIS 11606 (D.Ariz. 2019). The victim never alleged that Officer Armour forced her to masturbate his penis, or asked for oral sex. There were not multiple victims who claimed strikingly similar conduct during their interactions with the officer. Officer Armour was not alleged to have transported the victims to a different location, or come back to have secondary contact with the victim. The jury found in favor of Armour and answered special interrogatories indicating no findings of sexual assault and the Ninth Circuit upheld the verdict. *Anderson v. Armour*, 2021 U.S. App. LEXIS 37155 (9th Cir. 2021). The successful defense of the Armour does not establish any policy and procedure, and directly refutes a claim that the City was "under pressure" based upon the successful defense. Plaintiff's bare assertion that he was a solitary "scapegoat" cannot state a *Monell* claim.

**II.     CONCLUSION**

Defendants' Motion to Dismiss should be granted in its entirety.

1    DATED this 30th day of January 2024.

2                                    WIENEKE LAW GROUP, PLC

3
                              By:    /s/ Christina Retts
4                                    Kathleen L. Wieneke
                                     Christina Retts
5                                    1225 West Washington Street, Suite 313
                                     Tempe, Arizona 85288
6                                    *Attorneys for Defendants City of Phoenix,*
                                     *Walker, and Williams*
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

<u>**CERTIFICATE OF SERVICE**</u>

2

3

I hereby certify that on January 30, 2024, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

4

5

6

7

8

9

Sean A. Woods
Robert T. Mills
MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, Arizona 85014
*Attorneys for Plaintiff*

10

I hereby certify that on this same date, I served the attached document by U.S. Mail, postage prepaid, on the following, who is not a registered participant of the CM/ECF System:

11

12

13

14

15

Lisa Gutierrez
400 W. Baseline Road
Tempe, Arizona 85283
*Defendant Pro Se*

16

By:     */s/ Mica Mahler*

17

18

19

20

21

22

23

24

25

26

27

28