**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sean Pena,<br><br>                  Plaintiff,<br><br>vs.<br><br>City of Phoenix, et al.,<br><br>                  Defendants. | No. CV-23-02156-PHX-SPL<br><br>**ORDER** |

Before the Court is Defendants City of Phoenix, Jeri L. Williams, and Michael Walker's (the "City Defendants") Motion to Dismiss (Doc. 67). The Court rules as follows.

## I.   BACKGROUND

Plaintiff Sean Pena is a former police officer for the City of Phoenix Police Department. (Doc. 1-1 at 82, ¶ 12). On August 26, 2018, Plaintiff arrested Defendant Cynthia Ramirez ("Defendant Ramirez") after he found her having sex in a vehicle. (Doc. 1-1 at 87, ¶¶ 45–46). Plaintiff transported her to jail, and upon arrival, Defendant Ramirez reported to jail staff that Plaintiff had sexually assaulted her. (Doc. 1-1 at 89, ¶ 69). Defendant Ramirez also provided details of the assault to Defendant Michael Walker ("Defendant Walker"), a Phoenix Police Detective. (Doc. 1-1 at 89, ¶ 72). In the probable cause statement, Defendant Walker noted that Plaintiff was excluded from the results of a DNA test taken after Defendant Ramirez's sexual assault examination. (Doc. 1-1 at 118, ¶ 330).

On June 1, 2019, Plaintiff had police contact with Defendant Krystoffer Lee

("Defendant Lee") and found drug paraphernalia in her purse. (Doc. 1-1 at 95, ¶¶ 116, 120). Plaintiff told Defendant Lee that he would let her go if she showed him where she bought drugs. (Doc. 1-1 at 95, ¶ 122). After Defendant Lee led Plaintiff to the drug house, Plaintiff let her out of the vehicle. (Doc. 1-1 at 95, ¶¶ 123–125). On November 20, 2019, Defendant Lee reported to a Phoenix police officer that Plaintiff sexually assaulted her during that encounter. (Doc. 1-1 at 97, ¶ 134).

On August 5, 2019, Plaintiff responded to a call involving Defendant Lisa Gutierrez ("Defendant Gutierrez") who contacted the police to report that she was being threatened. (Doc. 1-1 at 104, ¶ 208). Plaintiff admits to transporting Defendant Gutierrez so that she could help him locate the suspect but claims he did so after voicing his opposition because of the earlier accusations that had been made against him. (Doc. 1-1 at 105, ¶ 212). Later, Plaintiff attempted to contact Defendant Gutierrez for additional information but when she did not answer his call, he traveled back to her home alone. (Doc. 1-1 at 105, ¶¶ 217–219). Plaintiff claims that after speaking with Defendant Gutierrez, she reported abuse by her fiancé and told Plaintiff to meet her later in an empty lot so that she could give him more details about the abuse. (Doc. 1-1 at 105, ¶ 220).

On March 9, 2020, Plaintiff was arrested and charged with the sexual assault of Defendant Lee. (Doc. 1-1 at 143, ¶ 549). On June 19, 2020, the first grand jury convened and indicted Plaintiff on the sexual assault charges related to Defendants Ramirez and Lee. (Doc. 1-1 at 106 and 120, ¶¶ 229, 345). On July 23, 2020, Defendant Gutierrez reported that Plaintiff sexually assaulted her and threatened to arrest her fiancé on an outstanding warrant. (Doc. 1-1 at 107, ¶¶ 233, 237). During an interview with Defendant Walker, Defendant Gutierrez explained that Plaintiff called her and asked her to meet him in the empty field, and then when she did, Plaintiff sexually assaulted her there. (Doc. 1-1 at 108, ¶¶ 244–249). Plaintiff was arrested and charged with the sexual assault of Defendant Gutierrez on July 24, 2020. (Doc. 1-1 at 143, ¶ 559). On July 27, 2020, Defendant City of Phoenix terminated Plaintiff's employment. (Doc. 1-1 at 125, ¶ 381). On August 12, 2020, the second grand jury convened to consider charges based on the accusations of Defendants

Ramirez, Lee, and Gutierrez. (Doc. 1-1 at 121, ¶ 347). On May 19, 2022, Plaintiff was found not guilty of the sexual assault charges related to Defendant Lee. (Doc. 1-1 at 103, ¶ 195). And on August 15, 2022, Plaintiff was acquitted of all charges for the allegations related to Defendants Ramirez and Gutierrez. (Doc. 1-1 at 149 and 154, ¶¶ 614, 652).

On February 10, 2023, Plaintiff served his Notice of Claim on the City Defendants. (Doc. 67-1 at 17–29). On August 8, 2023, Plaintiff filed his lawsuit in Maricopa County Superior Court. (Doc. 1-1 at 2–78). On September 7, 2023, Plaintiff filed the operative First Amended Complaint ("FAC") alleging several claims against several entities and individuals. (Doc. 1-1 at 80–159). On December 6, 2023, Plaintiff voluntarily dismissed all claims against the Chief of the Phoenix Police Department Michael Sullivan, the County of Maricopa, and each of the trial and grand jury prosecutors. (Doc. 37 at 1–2). Plaintiff also dismissed his claims related to false imprisonment and arrest, the conspiracy to violate his civil rights, and defamation. (Doc. 37 at 2). Now, Plaintiff only seeks claims against Defendants City of Phoenix, Jeri L. Williams, and Michael Walker (the "City Defendants") and Defendants Lee, Ramirez, and Gutierrez. (*See* Doc. 37).

On January 9, 2024, the City Defendants filed the instant Motion to Dismiss requesting that this Court grant the Motion in their favor.[1] This Motion has been fully briefed and is ready for review. (Docs. 67, 78, 82).

## II.   LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court may dismiss a complaint for failure to state a claim under Rule 12(b)(6) for two reasons: (1) lack of a cognizable legal theory, or (2) insufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696,

---

[1] Plaintiff asserts a claim for tortious interference with contract and reasonable business expectancy under Count X against all Defendants except City of Phoenix. (Doc. 1-1 at 142). Because the City Defendants did not move to dismiss Count X, the Court will not address it in this Order. Accordingly, Court X will not be dismissed.

699 (9th Cir. 1990). A claim is facially plausible when it contains "factual content that allows the court to draw the reasonable inference" that the moving party is liable. *Ashcroft*, 556 U.S. at 678. Factual allegations in the complaint should be assumed true, and a court should then "determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. Facts should be viewed "in the light most favorable to the non-moving party." *Faulkner v. ADT Sec. Servs., Inc.*, 706 F.3d 1017, 1019 (9th Cir. 2013).

On a motion to dismiss, it is the defendant's burden to demonstrate that the plaintiff has failed to state a claim. *See Avalanche Funding, LLC v. Five Dot Cattle Co.*, No. 2:16-cv-02555-TLN-KJN, 2017 WL 6040293, at *3 (E.D. Cal. Dec. 6, 2017) ("In the context of a motion to dismiss, the burden is on the defendant to prove that the plaintiff failed to state a claim."); *see also Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (on a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented."); *Bangura v. Hansen*, 434 F.3d 487, 498 (6th Cir. 2006) ("district court erroneously placed the burden on Plaintiffs to demonstrate that they stated a claim for relief" and "[b]ecause . . . Defendants failed to meet their burden of proof, . . . the district court should have dismissed Defendants' motion.").

### III.   DISCUSSION

#### a.  Notice of Claim Statute

Pursuant to A.R.S. § 12-821.01(A), any party with a claim against a public entity must file a notice of claim with the public entity within 180 days after the cause of action accrues. Similarly, A.R.S. § 12-821 provides that parties must bring all actions against public entities within one year after the cause of action accrues. For both statutes, "a cause of action accrues when the damaged party realizes he or she has been damaged and knows or reasonably should know the cause, source, act, event, instrumentality or condition that caused or contributed to the damage." A.R.S. § 12-821.01(B). Plaintiff "need not know all the facts underlying a cause of action" because accrual is triggered when Plaintiff possesses at least a "minimum requisite of knowledge sufficient to identify that a wrong occurred and caused injury." *Cruz v. City of Tucson*, 401 P.3d 1018, 1021 (Ariz. Ct. App. 2017)

(quoting *Doe v. Roe*, 955 P.2d 951, 961 (Ariz. 1998)).

To comply with A.R.S. § 12-821.01(A), the notice of claim "shall contain facts sufficient to permit the public entity . . . to understand the basis on which liability is claimed. The claim shall also contain a specific amount for which the claim can be settled and the facts supporting that amount." *Caughlin v. State*, No. 1 CA-CV 14-0757, 2015 WL 9450377, at *1 (Ariz. Ct. App. Dec. 24, 2015) (quoting A.R.S. § 12-821.01(A)). "As long as the claimant states a definite and exact amount, and the government may completely satisfy its liability by paying that sum, the claim letter satisfies the sum certain requirement." *Yollin v. City of Glendale*, 191 P.3d 1040, 1045 (Ariz. Ct. App. 2008). Under Arizona law, there is no requirement to separate settlement demands in a case that involves multiple claims against multiple defendants. *See Donovan v. Yavapai Cnty. Cmty. Coll. Dist.*, 423 P.3d 403, 404 (Ariz. Ct. App. 2018). The notice of claim must only unequivocally set forth a definite and exact amount by which *any* of the entities could completely satisfy its liability. *Id.* If the claimant fails to meet these statutory requirements, however, the claim is barred. *Deer Valley Unified Sch. Dist. No. 97 v. Houser*, 152 P.3d 490, 492 (Ariz. 2007).

Defendant argues that Plaintiff's Notice of Claim ("NOC") (Doc. 67-1 at 17–29) failed to comply with the notice of claim statute because it included an improper sum certain amount that lacked supporting facts and it was untimely. (Doc. 67 at 6–7). The Court addresses these arguments below.

i. Sum Certain Amount and Supporting Facts

First, Defendant argues that Plaintiff's NOC was improper because it included a single settlement demand that was directed at three separate entities. (Doc. 67 at 8). In *Donovan v. Yavapai Cnty. Cmty. Coll. Dist.*, the Arizona Court of Appeals held that "notwithstanding the multiple causes of action against multiple entities, [the plaintiff's] notice of claim unequivocally offered to settle for a specific amount" because the notice stated that the plaintiff "will accept the sum of $450,000 as full and final settlement." 423 P.3d at 405. It rejected the defendant's argument that rather than providing a total

5

settlement offer, the plaintiff should have provided a lesser amount for each entity to settle on its own. *Id.* at 406.

Here, Plaintiff's NOC alleged multiple claims against multiple entities and their employees and collectively referred to the entities and the individual employees as the "Offenders." (Doc. 67-1 at 18). The NOC provided that "[e]ach and every one of the Offenders participated in a civil conspiracy resulting in intentional emotional distress to [Plaintiff], causing him to become falsely imprisoned, maliciously prosecuted him, abused Court Process, defamed him, and violated [Plaintiff's] constitutional rights as well as causing his wrongful termination." (Doc. 67-1 at 19). The NOC also disclosed that Plaintiff was "willing to settle any and all claims he has or may have against the [O]ffenders in return for a payment of $1,750,000." (Doc. 67-1 at 29). This Court finds that Plaintiff's settlement offer was definite and exact, and therefore, it satisfies the statutory requirements. *See id.* (holding that proffering an objectively reasonable settlement for each entity was not required). Because the City Defendants knew the specific settlement amount to satisfy liability, the NOC was proper.

The City Defendants also argue that Plaintiff failed to provide sufficient facts to support the sum certain for his claim for employment damages. (Doc. 82 at 6). "Section 12–821.01 says only that a claimant must provide 'the facts supporting' the settlement demand; it does not say 'all the facts supporting' the settlement demand or even 'all the known facts supporting' the settlement demand." *Havasupai Tribe of Havasupai Rsrv. v. Arizona Bd. of Regents*, 204 P.3d 1063, 1074 (Ariz. Ct. App. 2008). Here, the NOC states that Plaintiff "lost out on his salary, his career, and his retirement benefits." (Doc. 67-1 at 28). The Court finds that these facts are sufficient to notify the City Defendants of Plaintiff's claim for employment damages. *See id.* ("[B]ecause the legislature omitted a requirement that the 'facts supporting' the settlement demand must be 'sufficient,' it did not intend that a notice would fail without 'facts sufficient to support' the settlement demand."). Thus, the Court finds no error here. *See id.* at 1077 (concluding that A.R.S. § 12–821.01 does not require "a precise accounting for each possible basis for damages" but

"instead requires only that the claimant provide the facts supporting a lump sum award for those damages") (quoting *Jones v. Cochise County,* 187 P.3d 97, 103 (Ariz. App. 2008)).

## ii. Statutes of Limitations

The parties agree that Plaintiff had only 180 days from the date of accrual to serve the City Defendants his NOC and only one year from the date of accrual to file this lawsuit. (Doc. 67 at 7, 9; Doc. 78 at 7). The accrual date is subject to the discovery rule, meaning the limitations period does not begin running until "the plaintiff knows or, in the exercise of reasonable diligence, should know the facts underlying the cause." *Gust, Rosenfeld & Henderson v. Prudential Ins. Co. of Am.*, 898 P.2d 964, 966 (Ariz. 1995). Generally, determining whether an action has accrued is a question of fact, however, "[a]ccrual can be decided as a matter of law when 'there is no genuine dispute as to facts showing the plaintiff knew or should have known the basis for the claim.'" *Strojnik v. State ex rel. Brnovich*, No. 1 CA-CV 20-0423, 2021 WL 3051887, at *3 (Ariz. Ct. App. July 20, 2021) (quoting *Humphrey v. State*, 466 P.3d 368, 375 ¶ 25 (Ariz. Ct. App. 2020)).

The City Defendants move to dismiss Plaintiff's claims by asserting that majority of Plaintiff's state law claims accrued more than 180 days before Plaintiff served his NOC. (Doc. 67 at 9). Additionally, the City Defendants argue that several of Plaintiff's claims are barred by the one-year statute of limitations because the claims were filed more than one year after the accrual date. (Doc. 67 at 9).

*1. Wrongful Termination (Count I) and Breach of Good Faith and Fair Dealing (Count II)*

The City Defendants argue that Counts I and II are untimely by nearly two years because these claims began to accrue on July 27, 2020, the day Plaintiff was terminated from his employment. (Doc. 67 at 9). Plaintiff does not dispute that he was terminated on July 27, 2020. (Doc. 1-1 at 125, ¶ 381). Under Arizona law, a claim for wrongful termination accrues upon termination of employment. *Scorzo v. Arizona Med. Bd.*, No. 1 CA-CV 15-0730, 2017 WL 371336, at *2 (Ariz. Ct. App. Jan. 26, 2017); *see also Delaware State Coll. v. Ricks,* 449 U.S. 250, 258 (1980) (holding that a cause of action for wrongful

termination accrues when the operative decision is made, not when the decision is carried out). The Ninth Circuit has also held that an employee is alerted of the accrual of his wrongful termination claim if he receives notice that is unequivocal and communicated in a manner such that no reasonable person could think there might be a retreat or change in position *prior* to the termination of the employment decision. *Hoesterey v. City of Cathedral City*, 945 F.2d 317, 320 (9th Cir. 1991) (emphasis added). Accordingly, Plaintiff's claims related to his termination began to accrue on July 27, 2020, when he learned that he was terminated.

Plaintiff, however, asserts that the accrual date should be delayed pursuant to A.R.S. § 12-821.01(C). (Doc. 78 at 6–7). That provision provides that any claim that is subject to an administrative claims process or review process pursuant to an administrative or governmental rule or regulation or a contractual term shall not accrue until all procedures, processes, or remedies have been exhausted. A.R.S. § 12-821.01(C). Plaintiff contends that because he appealed his termination, his claims did not accrue until February 2023, when the City determined with finality that his employment was terminated. (Doc. 78 at 6). But Plaintiff does not allege that he was procedurally *required* to appeal his termination prior to filing suit, so this exception is not applicable. *See Jonovich as trustee of Daniel & Olive Darlene Jonovich Tr. v. City of Globe*, No. 2 CA-CV 2023-0136, 2023 WL 8086753, at *2 (Ariz. Ct. App. Nov. 21, 2023) ("Although § 12-821.01(C) delays the accrual date for the exhaustion of an administrative claims process, it only applies to 'any claim that *must be submitted* to . . . an administrative claims process . . . pursuant to a statute, ordinance, resolution, administrative or governmental rule or regulation, or contractual term.'"). Thus, Counts I and II are barred by the statute of limitations.

*2. Malicious Prosecution–Lee (Count IV)*

With respect to Plaintiff's malicious prosecution claims, the City Defendants only seek to dismiss Count IV (Doc. 1-1 at 135–36, ¶¶ 482–495) as untimely. This claim alleges that the City Defendants engaged in malicious prosecution by instituting criminal proceedings against Plaintiff based on Defendant Lee's false accusations of sexual

8

misconduct. (Doc. 67 at 12). The City Defendants argue that Count IV is untimely because the prosecution related to Defendant Lee terminated on May 19, 2022, and Plaintiff's NOC was not filed within 180 days of this date and his claim was not filed within a year of this date. (Doc. 67 at 12). Plaintiff agrees that the first trial was terminated on May 19, 2022, when the jury found him not guilty of the accusations raised by Defendant Lee. (Doc. 78 at 7; Doc. 1-1 at 103, ¶ 195). But Plaintiff claims that the accrual date should be extended to the termination of his second trial on August 15, 2022, when Plaintiff was found not guilty of the accusations raised by Defendants Ramirez and Gutierrez. Plaintiff argues that an extension is appropriate because Defendant Lee testified at the second trial. The Court disagrees. Plaintiff's claim for malicious prosecution of the criminal proceedings based on the allegations raised by Defendant Lee began to accrue once the verdict was entered on May 19, 2022. Accordingly, the Court finds that Count IV is untimely.

### 3. *Abuse of Process (Counts VI–IX)*

The City Defendants move to dismiss Plaintiff's abuse of process claims. (Doc. 67 at 7, 9–10; Doc. 67-1 at 31–32; Doc. 82 at 6–8). Plaintiff alleges that the City Defendants are liable for abuse of process because they "used the criminal proceedings primarily to accomplish a purpose for which the process was not designed." (Doc. 1-1 at 138–140 ¶¶ 512, 518, 524). In their briefings, the City Defendants assert that Plaintiff's claims for abuse of process are untimely because these claims began to accrue at the time of the grand jury indictments—more than two and a half years before Plaintiff served his NOC and more than three years before he filed suit. (Doc. 67 at 7, 9–10; Doc. 82 at 6–8). Plaintiff does not address the City Defendants' argument challenging the timeliness of his abuse of process claims. (Doc. 78). Even so, Plaintiff's FAC alleges that on June 19, 2020, the City Defendants publicly announced that Plaintiff had been indicted for the alleged sexual assaults of Defendants Lee and Ramirez. (Doc. 1-1 at 106, ¶ 229). The FAC also alleges that "[t]he indictment and the allegations received widespread coverage in the press and quickly became common knowledge." (Doc. 1-1 at 106, ¶ 230). Because the parties do not dispute that Plaintiff had knowledge of the grand jury indictments well before he served

his NOC or filed suit, his claims for abuse of process are barred for untimeliness. *See Cruz*, 401 P.3d at 1021 (finding that accrual is triggered when Plaintiff possesses at least a "minimum requisite of knowledge sufficient to identify that a wrong occurred and caused injury."). Accordingly, Plaintiff's abuse of process claims—Counts VI, VII, VIII, and IX[2]—are dismissed.

### 4. Intentional Infliction of Emotional Distress (Count XIV)

The City Defendants move to dismiss Plaintiff's claim for intentional infliction of emotional distress ("IIED") because it is based on claims that have since been dismissed and is also untimely. (Doc. 67 at 11; Doc. 82 at 8). The City Defendants argue that "Plaintiff cannot base his IIED [claim] on his alleged false arrest and imprisonment because those claims accrued on the date of his March 9, 2020 arrest and July 24, 2020 arrest (additional charges added)" and Plaintiff voluntarily dismissed those claims. (Doc. 67 at 11; Doc. 82 at 8). In response, Plaintiff argues that "Plaintiff pled his IIED claim such that it is tied to the entirety of the actions taken place by City Defendants." (Doc. 78 at 25). Plaintiff further argues that "his nightmare continued up to and including when his final determination was received on his appeal of his wrongful termination." (Doc. 78 at 25). Plaintiff argues that "[a]t most, [the accrual date] relates back to his acquittal date of August 15, 2022." (Doc. 78 at 25).

In a claim for IIED, the accrual date will not be extended when each instance of "extreme and outrageous" conduct is caused by a single set of damages. *Franklin v. City of Phoenix*, No. CV-06-02316-PHX-NVW, 2007 WL 1463753, at *2 (D. Ariz. May 17, 2007); *see also Mohajerin v. Pinal Cnty.*, No. CV-07-1746-PHX-DGC, 2007 WL 4358254, at *5 (D. Ariz. Dec. 7, 2007). Here, Plaintiff's IIED claims are based on his termination

---

[2] The Court notes that although the City Defendants move to dismiss Count IX – Abuse of Process, it is only asserted against Defendants Lee and Gutierrez who have not joined in this Motion. (Doc. 1-1 at 140–41, ¶¶ 528–539). However, because the same analysis applies, Count IX is also subject to dismissal. *See Omar v. Sea-Land Serv., Inc.*, 813 F.2d 986, 991 (9th Cir. 1987) ("A trial court may dismiss a claim sua sponte under Fed.R.Civ.P. 12(b)(6). Such a dismissal may be made without notice where the claimant cannot possibly win relief.") (citations omitted).

which occurred on July 27, 2020 and his arrests on March 9, 2020 and July 24, 2020. Although Plaintiff alleges to have been damaged by a continued nightmare, the accrual date will not be extended because the "nightmare" was the result of damages that occurred outside of the limitation period. *See Franklin*, 2007 WL 1463753 at *2 ("While [the plaintiff] did not know the full extent of his damages at the time of his encounter with the Phoenix police, he realized that he had been damaged, and he knew the cause of that damage at the time of his arrest."). Accordingly, Plaintiff's IIED claim is dismissed.

### 5. *Aiding and Abetting (Count XV)*

The City Defendants argue that Plaintiff's claims for aiding and abetting are untimely because the underlying torts they are derived from are all untimely. (Doc. 67 at 11; Doc. 82 at 8). In the FAC, Plaintiff alleges that all Defendants are liable for aiding and abetting with each other because they knowingly engaged in "malicious prosecution, abuse of process, . . . and intentional infliction of emotion distress." (Doc. 1-1 at 145–46, ¶¶ 582–583). Under Arizona law, the limitation period on a cause of action for aiding and abetting a tort is the same as that for the underlying tort. *See YF Tr. v. JP Morgan Chase Bank, N.A.*, No. CV07-567-PHX-MHM, 2008 WL 821856, at *7 (D. Ariz. Mar. 26, 2008) ("With respect to Plaintiff's claims for aiding and abetting fraud and breach of fiduciary duty, the statute of limitations is the same as for the underlying actions."); *see Chonczynski v. Aguilera*, No. 1 CA-CV 13-0728, 2014 WL 6790738, at *5 (Ariz. Ct. App. Dec. 2, 2014) ("The limitations period on a cause of action for aiding and abetting a tort is the same as that for the underlying tort.") (internal quotation and citation omitted). Accordingly, for the reasons mentioned above, Plaintiff's aiding and abetting claims with respect to the underlying torts of abuse of process and intentional infliction of emotion distress are barred by the statute of limitations. Additionally, because the Court rejects Plaintiff's malicious prosecution claims for the reasons discussed below, Plaintiff's claims for aiding and abetting malicious prosecution also fail. *See Avrahami v. Clark*, No. CV-19-04631-PHX-SPL, 2020 WL 2319922, at *5 (D. Ariz. May 8, 2020) ("In Arizona, both aiding and abetting and civil conspiracy are derivative causes of action that first require the finding of

an underlying violation."). Therefore, Count XV–Aiding and Abetting is dismissed.

### b. Federal Rule of Civil Procedure 8

The City Defendants allege that Plaintiff violated Federal Rule of Civil Procedure 8 because the FAC references settlements, polygraph evidence, the Department of Justice investigation, the MeToo movement, statements made to Detective Ratko Aleksis, and the Jeri Williams Signal scandal. (Doc. 67 at 12–14; Doc. 82 at 9–13). Under Rule 8, a pleading that states a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. To satisfy this standard, a complaint must "simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) (internal quotation marks and citation omitted).

Here, the City Defendants do not challenge whether Plaintiff has provided them with sufficient details to understand the claims asserted against them. Instead, the City Defendants only argue that certain allegations in Plaintiff's FAC are improper or irrelevant. However, the City Defendants fail to articulate the relief they are seeking with respect to these arguments. (Doc. 67 at 12–14; Doc. 82 at 9–13). The City Defendants also fail to provide legal authority that suggests that all allegations raised in a complaint must be relevant and proper to survive dismissal. *See Zimmerman v. City of Oakland*, 255 F.3d 734, 737 (9th Cir. 2001) ("accepting as true all well-pleaded allegations of fact in the complaint and construing them in the light most favorable to the plaintiffs"). Regardless, the City Defendants' evidentiary concerns are not appropriate at the motion to dismiss stage. *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002) ("Ordinarily, a court may look only at the face of the complaint to decide a motion to dismiss."). Thus, the Court rejects the City Defendants' arguments and finds that Plaintiff's allegations at this stage is appropriate.

### c. Malicious Prosecution Claims

The City Defendants move to dismiss Plaintiff's state law and § 1983 malicious prosecution claims. Under Arizona law, "'the elements of a malicious prosecution claim

are: (1) a criminal prosecution, (2) that terminates in favor of the plaintiff, (3) with the defendants as prosecutors, (4) actuated by malice, (5) without probable cause, and (6) causing damages.'" *Donahoe v. Arpaio*, 869 F. Supp. 2d 1020, 1059 (D. Ariz. 2012), *aff'd sub nom. Stapley v. Pestalozzi*, 733 F.3d 804 (9th Cir. 2013) (quoting *Slade v. City of Phoenix,* 541 P.2d 550, 552 (Ariz. 1975)). With respect to a § 1983 claim of malicious prosecution, "a plaintiff must show that the defendants prosecuted [him] with malice and without probable cause, and that they did so for the purpose of denying [him] equal protection or another specific constitutional right." *Awabdy v. City of Adelanto,* 368 F.3d 1062, 1066 (9th Cir. 2004) (citation and quotation omitted). There is no dispute that Plaintiff was acquitted of all charges in his underlying criminal prosecution. However, the City Defendants argue that Plaintiff's claims are subject to dismissal because the City Defendants were not the prosecutors in Plaintiff's criminal cases and the grand jury indictment established probable cause. (Doc. 67 at 25).

In a claim for malicious prosecution there is a presumption of prosecutorial independence which immunizes investigating officers from liability. *Newman v. Cnty. of Orange*, 457 F.3d 991, 993 (9th Cir. 2006). "However, the presumption of prosecutorial independence does not bar a subsequent § 1983 claim against state or local officials who improperly exerted pressure on the prosecutor, knowingly provided misinformation to him, concealed exculpatory evidence, or otherwise engaged in wrongful or bad faith conduct that was actively instrumental in causing the initiation of legal proceedings." *Awabdy v. City of Adelanto*, 368 F.3d at 1067.

Here, the Court finds that the presumption of prosecutorial independence immunizes the City Defendants from liability. First, Plaintiff argues that the City Defendants should be held liable for malicious prosecution because they knowingly provided misleading and false information to obtain the grand jury indictment. (Doc. 78 at 17). This argument is not consistent with the FAC—which alleges that the prosecutors had access to the City Defendants' probable cause statement which stated that there was no DNA or other evidence to corroborate the allegations made against Plaintiff. (Doc. 1-1 at 118–119, ¶¶

330, 332). The FAC also alleges that "[t]he Grand Jury *Prosecutors* did not present to the Grand Jury clearly exculpatory evidence of *which the State was aware*." (Doc. 1-1 at 121, ¶ 353) (emphasis added). There were no allegations raised in the FAC to suggest that the City Defendants omitted any evidence from the prosecutors or provided the prosecutors with misleading or false information. Because the City Defendants provided the prosecutors the full details from their investigation, they did not interfere with the prosecutors' judgment in any way. Moreover, the FAC alleges that "[t]he Prosecutors were motivated by the need to justify COP's settlements with [Plaintiff]'s Accusers, by the Me Too movement, and by the USDOJ's investigation." (Doc. 1-1 at 122, ¶ 355). The FAC, however, does not allege that the City Defendants were responsible for improperly exerting any pressure on the prosecutors. Thus, the City Defendants may not be held liable for the prosecutors' independent decision to pursue criminal charges against Plaintiff.

The Court also rejects Plaintiff's argument that the grand jury indictment did not establish probable cause. "In Arizona, a grand jury must return an indictment 'if, from all the evidence taken together, it is convinced that there is probable cause to believe the person under investigation is guilty of [a] public offense.'" *Merritt v. Arizona*, 425 F. Supp. 3d 1201, 1210 (D. Ariz. 2019), *aff'd*, No. 21-15833, 2022 WL 3369529 (9th Cir. Aug. 16, 2022) (quoting A.R.S. § 21-413). So, in a claim for malicious prosecution, a grand jury indictment creates a presumption of probable cause which serves as a complete defense against the claim. *Id.* at 1218. Because the indictment raises a presumption of probable cause, a plaintiff cannot succeed on post-indictment claims without showing that the indictment "was induced by fraud, corruption, perjury, fabricated evidence, or other wrongful conduct undertaken in bad faith." *Id.* (quotation and citation omitted).

In his Response, Plaintiff argues that the City Defendants knowingly presented misleading testimony to the grand jury. (Doc. 78 at 18). However, the FAC alleges that the only witness at the grand jury indictment was Defendant Walker who recounted his investigation and the information that Defendants Ramirez, Lee, and Gutierrez shared with him. (Doc. 1-1 at 121, ¶¶ 351–352). The Court is not convinced Defendant Walker

committed any wrongdoing by repeating the information he gathered from his investigation to the grand jury. Additionally, Plaintiff heavily relies on the events following the grand jury indictment to argue that the information that the Defendant Walker provided to the grand jury was misleading and false. (Doc. 78 at 15). Plaintiff, however, is not permitted to use the statements made after the indictment to show malice. *Merritt*, 425 F. Supp. 3d at 1223 ("In any event, malice is not a state of mind that exists four years after the fact."). Accordingly, the Court finds that the indictment raises a presumption of probable cause and Plaintiff's malicious prosecution claims fail. Thus, Plaintiff's malicious prosecution and § 1983 claims are dismissed.

### d. Civil Conspiracy Claims

The City Defendants move to dismiss Count XVI–Conspiracy for several reasons. (*See* Doc. 67 at 7, 9, 18–19; Doc. 67-1 at 32; Doc. 82 at 6). Because Plaintiff's conspiracy claims are derived from underlying torts that have all been dismissed, the Court finds that Plaintiff's conspiracy claim must also be dismissed. (*See* Doc. 1-1 at 146, ¶ 587 (Plaintiff alleges that his claim for conspiracy derives from his claims for wrongful termination, malicious prosecution, defamation, and intentional infliction of emotional distress)). *See Avrahami*, 2020 WL 2319922, at *5 ("In Arizona, both aiding and abetting and civil conspiracy are derivative causes of action that first require the finding of an underlying violation."). Accordingly, the Court grants the City Defendants' Motion with respect to Count XVI.

### IV.   CONCLUSION

All told, "whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. A district court should normally grant leave to amend unless it determines that the pleading could not possibly be cured by allegations of other facts. *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990).

Some of Plaintiff's claims cannot be cured with further amendment and are thus

futile. *See Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995) ("Futility of amendment can, by itself, justify the denial of a motion for leave to amend."). Specifically, Plaintiff's claims for wrongful termination and breach of the covenant of good faith and fair dealing under Counts I and II, malicious prosecution under Count IV, abuse of process under Counts VI, VII, VIII, and IX, and intentional infliction of emotional distress under Count XIV all fall outside of the statute of limitations pursuant to A.R.S. § 12-821.01. Therefore, these claims cannot be cured and are dismissed with prejudice.

This leaves Plaintiff's claims for malicious prosecution under Counts III, V, XVII, XVIII, XIX, and XX, conspiracy under Count XV, and aiding and abetting under Count XVI. Because Plaintiff could potentially cure these claims with additional factual allegations, he shall be granted leave to file a Second Amended Complaint that is consistent with this Order. Plaintiff is advised, however, that failure to meaningfully address the deficiencies pointed out by this Order will result in a dismissal of Plaintiff's Second Amended Complaint without leave to amend.

The City Defendants' request for attorney's fees and costs is denied. *See Feezor v. Lopez De-Jesus*, 439 F. Supp. 2d 1109, 1111 (S.D. Cal. 2006) ("Attorney's fees and costs may only be awarded where the court has entered judgment on the merits of the litigation."); *see also Jerome v. Astrue*, No. CV-09-20-GF-SEH, 2010 WL 1005047, at *1 (D. Mont. Mar. 16, 2010) ("In the absence of any final judgment on the merits, and as the record now stands, an award of attorney's fees would be premature.").

Accordingly,

**IT IS ORDERED** that Defendants City of Phoenix, Jeri L. Williams and Michael Walker's Motion to Dismiss (Doc. 67) is **granted in part** and **denied in part** as follows:

1. The Motion is **granted** as to Counts I, II, IV, VI, VII, VIII, IX, and XIV alleged in the First Amended Complaint (Doc. 1-1). These claims are **dismissed with prejudice**.
2. The Motion is **granted** as to Counts III, V, XV, XVI, XVII, XVIII, XIX, and XX alleged in the First Amended Complaint (Doc. 1-1). These claims are

   **dismissed without prejudice**.

3. The Motion is **denied** as to Count X alleged in the First Amended Complaint (Doc. 1-1).
4. The Motion is **denied** as to the City Defendants' request for attorney's fees and costs.

**IT IS FURTHER ORDERED** that Plaintiff is granted leave to amend. Should he choose to do so, Plaintiff shall file a Second Amended Complaint—sufficiently addressing the concerns identified in this Order—by no later than **May 20, 2024**. Plaintiff is advised that his claims will be dismissed with prejudice if his Second Amended Complaint fails to address the deficiencies pointed out by this Order.

Dated this 22nd day of April, 2024.

                Honorable Steven P. Logan
                United States District Judge