Your Name: Lisa Gutierrez
Address: 400 W Baseline Rd lot #330
City, State, Zip: Tempe, AZ, 85283
Phone Number: (480) 294-8236

FILED ✓   LODGED ___
RECEIVED ___   COPY ___
JAN 30 2026
CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY _____ DEPUTY

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

Sean Pena,
　　　Plaintiff,
v.
Lisa Gutierrez,
　　　Defendant(s).

Case No: CV-23-02156-PHX-SPL

THIS DOCUMENT IS NOT IN PROPER FORM ACCORDING TO FEDERAL AND/OR LOCAL RULES AND PRACTICES AND IS SUBJECT TO REJECTION BY THE COURT.

REFERENCE _LRCwP 5.4_

# AFFIDAVIT OF TRUTH

(Lisa Gutierrez Response)

### INTRODUCTION

I, Defendant (Lisa Gutierrez), representing self, answer the complaint brought forth by Plaintiff (Sean Pena) and Attorneys Mills + Woods Law PLLC.

Lisa Gutierrez asks this court to **Dismiss with Prejudice**, the complaint brought forth by the plaintiff. I write within this answer, correspondence to the allegations/accusations that are **FALSELY** placed upon me also each count which is **BLATANT** revenge for speaking truth to the fiction concocted by the Plaintiff and Defense Attorneys at trial case# CR2020-128297-001.

Ref.

To survive a Motion of Dismiss under Rule 12(b)(6) of the Federal Law of Civil Procedures, the complaint must "state a claim to relief that is plausible on its face". *Bell Atlantic corp.* v. *Twombly*, 550 U.S 544 570 (2007). A motion to dismiss should only be granted if there is "no set of facts" to support (the plaintiff's) claims which would entitle (the plaintiff) to relief". *Conley* v. *Gibson*, 355 U.S 41 45-46 (1957). The seventh circuit court of appeals has interpreted this standard to mean that, to survive a motion to dismiss for failure to state claim, the plaintiff's complaint "must contain either direct or respiting all the material elements necessary to sustain a recovery under same viable legal theory". *Car carriers, Inc.* v. *Ford Motor co.*, 745 F.2d 1101 (7th Cir. 1984) (quoting *Sutliff, Inc.* v. *Donovan cos.*, 1989)

## LISA GUTIERREZ' FALSE ACCUSATION (RESPONSE)

**207.** In regard to this statement: In 2013 I was a victim of fraud; I made a police report stating my wallet (which had all my personal information in it) was stolen while at a casino (I mistakenly left it in the bathroom). Months later, 15 task force agents came to my elderly grandmother's house and "snatched me out like I was a criminal", took me to jail for a crime I did not commit. Being uneducated in law and in fear of my freedom, I took the deal that was presented to me. I was told if the 50 hours of community service was completed that the case will be dismissed (which it was) and no prison time. Before any of this ever occurred, I had no record or jail time for anything, just tickets for speeding.

### *A Routine Call* (Response)

**208, 209, 210 and 211**   All of these statements are true, no denying.

**212.**   True to the best of my knowledge; no denying.

**213, 214**   All of these statements are true, no denying.

**215 and 216**   As officer Felix proceeded to go knock at the door, the Plaintiff (Pena) and Defendant (Gutierrez) drove back to her home to be dropped off. After the Plaintiff opened and let the Defendant out of the patrol vehicle (back prisoner compartment), the plaintiff then said, "Do you know your shirt is see through", the defendant responded, "I appreciate the skin I am in". Then the plaintiff proceeded to tell the defendant that her fiancé had a warrant (insinuating he could arrest him if he wanted), instead of just focusing on the crime that the plaintiff and partner were called for.

**217, 218, 219 and 220**   Later on after walking home from the store the defendant saw a patrol vehicle parked directly across the street from the defendant's home. Walking with milk in her hand the officer called out her name and invited her to the patrol vehicle. Approaching the

patrol vehicle, the defendant noticed it was the officer from earlier that day (the plaintiff). The defendant asked the plaintiff has he and his backup patrol officer caught the guy that committed the crime earlier. The plaintiff replied "no", then he commented on the dress the defendant was wearing. The plaintiff proceeded to grab the defendants' hand and placed it on his bare penis. The defendant yanked her hand back in shock. The plaintiff continued to say that he will be calling her later to meet him in the field. Not knowing that the plaintiff jotted the defendant's phone number down off the police report from earlier, really placed a shriek of fear within the defendant.

Regarding **220**: This whole statement was fiction created by the plaintiff and his attorneys, there wasn't any conversation about the defendant's fiancé at all on August 5, 2019. F.Y.I The defendant's fiancé wasn't a drug dealer (he collected cans and bottles for a living). Yes, during the trial on stand the defendant said that her fiancé was abusive, but she did not say this to the plaintiff throughout their interactions on August 5, 2019.

## *The Tempe Investigation* (Response)

**221.** This statement is partially true: The defendant (Gutierrez) found a red phone after picking up her niece at her friend's house in the complex parking lot. Being the thoughtful individual she is, she wanted to give it back to its rightful owner. The defendant waited, when someone called looking for the phone, she said she was willing to meet up with them to return it. The phone started to alert (loud buzzing/find your phone) sound (There was a text that came also stating "Don't call the police Bitch, coming over with a gun"). She went outside called the police and told them she had found the phone (didn't want the police to think she stole it, scared), as she was on the phone with the police (being recorded), the

owner of the phone with two others pulled up and brandished a gun. The guy tried to pull her into the car (pulling the hand that was holding the phone holding it so tightly she couldn't let it go to give it to him), meanwhile the operator was still on the phone (she called 911 on the found phone). The defendant did not know who the phone belonged to that she had found.

**222.** All of this statement is true, no denying.

**223.** After the three suspects were arrested one of the suspects gave the detective on the scene a written statement apologizing for what had just transpired.

**224.** This statement is not true; The defendant did not know any of them at all. Earlier that day she was in class for DCS. Why would the defendant jeopardize her DCS case (involving her child) with this nonsense about a phone?

**225.** This statement is true, no denying.

**226 and 227** This statement is partially true: The Defendant had only spoken to Det. Ratko Aleksis once (about the case with the three suspects ONLY) before she met with him for an interview in person about the case involving the three suspects ONLY, then spoke over the phone two more times after the meet. During the third and final phone call with Det. Aleksis the Defendant was so distraught, upset and feeling unjust because one of the suspects was granted leave to go out of state to be with his family. She felt the urge to say how she felt about an officer who assaulted her a year prior to Det. Aleksis (according to the Defendant at this time that statement "really slipped out" due to how she was feeling at that time). Detective Aleksis stated he would speak to his sergeant about the information the defendant had slipped up and told him, so he asked basic questions about the incident between the Defendant (Gutierrez) and the Plaintiff (Pena). The next day Detective Walker called the Defendant.

**228.** This statement is only true to the extent of the Defendant having to speak with whomever the detective was investigating the case with the three suspects. she only spoke to three Det. Aleksis, Det. Walker, and Det. Jansen (Walker's partner)

### *Sean's Indictment Goes Public* (Response)

**229 and 230**   The Defendant (Gutierrez) at the time the Plaintiff (Pena) is stating that his indictment went public, the defendant did not have a TV to watch anything plus she did not like to watch the news because she was so free minded that any bad news would distract her from her spiritual path she was enduring. At that point the defendant had just moved out of a hotel into her new boyfriend's home (he didn't have a TV when she moved there). After the interview with Walker about the plaintiff the defendant found out from Walker that the plaintiff was on the news the night prior.

**231 and 232**   The Defendant does not know if these statements are true or false because she never knew of this information regarding the allegations against the Plaintiff until after she was interviewed by Det. Walker. She did not know the details as far as KTAR goes, cause Walker said the indictment was aired the night prior, the Defendant told him she couldn't have known this because she doesn't have a TV and doesn't watch the news.

**233 and 234**   These statements are partially true. The Defendant did tell Aleksis about the incident with the Plaintiff but as far as that time she doesn't recollect. Though she didn't know about the arrest of the plaintiff before.

**235.**     This statement is true because it was a domestic violence situation with the Defendants fiancé's friend.

**236.**     This statement is true. The Defendant knew that the plaintiff was new to the police department, cause the plaintiff told the defendant this: "while I was masturbating his penis, I asked questions, because I was so in fear of my life, I wanted to divert the Plaintiff's thoughts from potentially killing me, becoming another minority statistic.

**237.**     This statement is false. The Defendant said to Aleksis: "the Plaintiff insinuated that he would take the Defendant's fiancé to jail (only by frequently mentioning the fact of her fiancé had a warrant), she also thought because of the plaintiff frequently mentioning the warrant, had parked directly across the street from her home the plaintiff would arrest her fiancé if she didn't cooperate meeting him in the field. The last part of this statement involving the mention of "unless she performed a sex act on Sean" is totally false, concocted by the Plaintiff and his Attorneys.

**238,239,240 and 241**     These statements are partially false. Yes, the defendant hired the same civil lawyer as Lee this is true, but she was referred to that lawyer by a friend that is a lawyer (Alex Bergener) who could not handle her case because he is an accident lawyer. The Defendant, before contacting the referred civil lawyer, did not know of, see nor contact Maupin or Lee. She knew of them ONLY by attending the trial case# CR2020-128297-001. FYI: In a civil case it is against the law for a lawyer to give any information about other clients. The defendant never lied under oath; she doesn't know Maupin nor Lee till this day.

Below is a screenshot of the fee agreement dated October 7, 2020, between the (Gutierrez) and Defendant Alex Bergener:



## COP *Investigates Gutierrez' Accusations* (Response)

**242.** **This statement is true.**

**243.** This is true ONLY because the defendant gave as an initial statement to Aleksis: refer to **226 and 227**(Detective Aleksis stated he would speak to his sergeant about the information the defendant had slipped up and told him, so **he asked basic questions** about the incident between the Defendant (Gutierrez) and the Plaintiff (Pena))

**244.** This statement is partially true. The defendant did leave her infant home with the child's father (although the defendant and fiancé had their differences) at that time the defendant went to the store, her fiancé was cooking dinner, and the baby was asleep; she needed milk for when she wakeup plus the fiancé wouldn't harm his child.

**245,246,247,248,249,250,251,252 and 253**

These statements are all true as said by the defendant.

**254,255 and 256**   According to the DCFS case (there was an incident where the defendants another one of the fiancé's friends (kicked in the door to the home running from the police) that arose post the assault by the Plaintiff, the Defendant was prohibited from returning to the home with or with out the child during this time. The fiancé was asked to bring

over the Defendants and child's clothes etc. but he was very negligent in doing so. This DCFS case lasted about 1year, which basically left her starting over with clothes/personal information (birth certificate, social security card etc.) for her and the child. The fiancé visited the child a few times but still failed to bring over any clothing, documents etc. Regarding the fiancé making a report: Refer to **251**(her fiancé did not believe her and called her a "ho.") The fiancé wouldn't make a report, especially when he did not initially believe her anyway.

## THE COUNTS (Response)

### Count 5 - Malicious Prosecution: "I deny all of these allegations."

The Defendant was never malicious with her testimony against the Plaintiff. She told the truth about everything that occurred that evening on or about August 5, 2019.

### Count 8 – Abuse of Process (Gutierrez): "I deny all of these allegations."

The Defendant never abused any process, she told the truth about the incident that happened to her: "I don't have to lie about anything, it just absolutely "sucks" being victimized by a so-called decorated officer of the law".

### Count 9 - Abuse of Process (Gutierrez and Lee): "I deny all of these allegations."

The Defendant did not abuse nor conspire with any process with Lee: "I never knew of or met Kristopher Lee before being involved in the criminal trial case# CR2020-128297-001. This is a truly false allegation on the

Plaintiff (Pena) and his Attorneys behalf. My testimony wasn't by far motivated by malice nor by money. My true motivation was just to help subside a huge traumatic burden in my life (why I am still attending therapy today and started post the incident with the Plaintiff (Pena)". "To be honest for a year I didn't want to come forward with the assault in fear of retaliation, knowing he was an officer, and he knew where I lived at that time or have the ability/authority to come to my house or find me when I moved away. I was shaken even after I spoke to the Detectives about the incident when finally, I did gain the courage".

### *Count 10 – Tortious interference with contract and reasonable business expectancy: "I deny all of these allegations."*

The Defendant didn't interfere with the employment of the Plaintiff. According to case# CR2020-128297-001, it clearly states the Plaintiff was already terminated from his position as an officer before she spoke to the detective about what transpired on or around August 5, 2019.

### *Count 12 – False arrest and imprisonment: "I deny all of these allegations."*

There is no way that there were any false allegations against the Plaintiff, everything she said was the truth. "I have no reason to take time out of my day/life as a mother of two (also pregnant) to attend trial after trial, fighting for and stating the truth and he still got acquitted. There were GPS records showing where the Plaintiff was located every second, that I told to detectives. Also, what officer calls a victim eight times? Really the plaintiff is the one who lied under oath, saying that he called me because of fentanyl leads. This was never the reason why I initially called the police. I dialed 911 for help to remove someone from my home.

*Count 13 – Instigating or participating in false arrest and imprisonment: "I deny all of these allegations."*

The defendant kept speaking the truth this all she can say, no reason to lie. She went through two pregnancies while dealing with the trials. The plaintiff and his attorneys constantly implying "the ME-TOO movement", whilst this incident (on or around August 5, 2019) factually occurred. Before the trials I hadn't heard of the Me-Too movement.

*Count 14 – Intentional infliction of emotional distress: "I deny all of these allegations."*

"It was never my intention to create emotional distress in the Plaintiff's life by telling the truth. I struggled through two pregnancies involving myself in the trials by speaking facts, postpartum depression, PTSD, insomnia, anxiety, and therapy which I was attending. I have had suicidal thoughts, feeling of just ending my life so I will not have to sustain the pain and embarrassment of my name being slandered/being called a liar."

*Count 15 – Aiding and Abetting: "I deny all of these allegations."*

"I remain firm in telling the truth". During the trials the Defendant told the State and Defense about her witnesses. The witnesses were never subpoenaed to come to court. Her witnesses told the defendant the police came by their homes and took audio statements from them. These statements were never released/added to the case for the jury to hear.

*Count 16 – Conspiracy: "I deny all of these allegations."*

For a conspiracy to take place, it would have had to be one or more people involved doing something unlawful or harmful to an individual or many. The action of plotting or conspiring. To maintain this definition, you would have known the people you are allegedly conspiring with. In turn "I do not know Ramirez, Lee nor Maupin". "I don't know anyone the Plaintiff and his Attorneys are accusing me of plotting with".

### Count 19 – Malicious prosecution and violation of Penas 14th Amendment and 42 USC 1983: *"I deny all of these allegations."*

"I am not the cause of the Plaintiffs (Pena) incarceration. The cause of the Plaintiff's incarceration was of his own accord/actions. Even though the plaintiff was found not guilty this doesn't mean he is NOT GUILTY."

Signed: _____
Lisa Gutierrez

ACKNOWLEDGEMENT

On this  30th  day of January 2026, before me, the undersigned, a Notary Public in and for Maricopa County, personally appeared the above-signed, known to me to be the one whose name is sealed by signature on this document, and has acknowledged to me that she has executed the same.

Notary Signature: _____

My Commission: __03/31/2027__

Seal: _____



MICHAEL MENZIE DOUGLAS
Notary Public - Arizona
Maricopa County
Commission # 644900
My Commission Expires March 31, 2027